UNITED STATES COURT OF INTERNATIONAL TRADE

AMSTED RAIL COMPANY, INC.,
ASF-K DE MEXICO S. DE R.L. DE C.V.,
STRATO, INC., WABTEC CORP., and
TTX COMPANY, and

          Plaintiffs,

v.

UNITED STATES INTERNATIONAL
TRADE COMMISSION,

          Defendant.

Case No. 22-00307

**VERIFIED COMPLAINT**

Plaintiffs Amsted Rail Company, Inc. ("ARC"), ASF-K de Mexico S. de R.L. de C.V. ("ASF-K"), Strato, Inc. ("Strato"), Wabtec Corp. ("Wabtec"), and TTX Company ("TTX" and, collectively with ARC, ASF-K, Strato, and Wabtec, "Plaintiffs"), by and through their respective attorneys, bring this action against defendant United States International Trade Commission ("Commission") for injunctive and declaratory relief from the Commission's disclosure of Plaintiffs' business proprietary information ("BPI") submitted under the Administrative Protective Order ("APO") in an ongoing set of antidumping and countervailing duty investigations, *Freight Rail Couplers and Parts Thereof from China and Mexico*, USITC Inv. Nos. 701-TA-682 and 731-TA-1592-1593 (Preliminary) ("Current Investigations"). Plaintiffs allege and state as follows:

**Jurisdiction**

1.    This Court has subject-matter jurisdiction over this matter under 28 U.S.C. §§ 1581(i)(1) and 1585, and the Administrative Procedure Act ("APA"), 5 U.S.C. § 702, 704, & 706.

1

2. Section 1581(i)(1) provides, in relevant part, that "the Court of International Trade shall have exclusive jurisdiction of any civil action commenced against the United States, its agencies, or its officers, that arises out of any law of the United States providing for

> \*\*\*
> (2) tariffs, duties, fees, or other taxes on the importation of merchandise for reasons other than the raising of revenue;
> \*\*\*
> (4) administration and enforcement with respect to the matters referred to in paragraphs (1)-(3) of this subsection and subsections (a)-(h) of this section.

28 U.S.C. § 1581(i)(1).

## Timeliness of the Action

3. An action under 28 U.S.C. § 1581(i) must be commenced within two years after the cause of action first accrues. 28 U.S.C. § 2636(i).

4. The cause of action in this matter accrued October 13, 2022, which is the date that, as described in further detail below, the Commission informed Plaintiffs that it intended to release Plaintiffs' BPI in the Current Investigations to attorneys that Plaintiffs allege may have breached their ethical conflict-of interest obligations and violated the APO issued by the Commission in *Certain Freight Rail Coupler Systems and Components from China*, DOC Inv. Nos. A-570-143, C-570-144; USITC Inv. Nos. 701-TA-670, 731-TA-1570 ("Predecessor Investigations").

## Parties

5. Plaintiff ARC is a U.S. producer of freight rail coupler systems and components thereof ("FRCs"), which include E, F, and E/F couplers and E and F knuckles. ARC is also a U.S. importer of FRCs subject to the Commission's Current Investigations.

6. Plaintiff ASF-K is ARC's affiliated *maquiladora* and a Mexican producer of FRCs subject to the Current Investigations. Upon information and belief, ASF-K is the only producer of FRCs in Mexico.

7. Plaintiff Strato is a U.S. importer of FRCs subject to the Current Investigations.

8. Plaintiff TTX is a freight railcar pooling company and a purchaser of FRCs subject to the Current Investigations.

9. Plaintiff Wabtec is a U.S. importer of FRCs subject to the Current Investigations.

10. Defendant Commission is conducting the pending Current Investigations. The Commission is an independent, quasi-judicial federal agency that fulfills a range of trade-related mandates.

**Standing**

11. Plaintiffs have standing to sue because they are "adversely affected or aggrieved by agency action within the meaning of" the APA. 5 U.S.C. § 702; *see* 28 U.S.C. § 2631(i) ("Any civil action of which the Court of International Trade has jurisdiction . . . may be commenced in the court by any person adversely affected or aggrieved by agency action within the meaning of Section 702 of title 5.").

12. As discussed further below, the Commission's plan to release Plaintiffs' BPI to attorneys that may have breached their ethical conflict-of-interest obligations and may have violated an APO in the substantially related Predecessor Investigations prior to any determination of whether those attorneys did indeed breach their ethical obligations and violate the APO, adversely affects and aggrieves Plaintiffs because of the risk that those attorneys may misuse or reveal sensitive BPI of the Plaintiffs.

**The Predecessor Investigations**

13. On June 17, 2021, ARC engaged the law firm of Wiley Rein LLP ("Wiley") "to provide legal services in connection with advice regarding the elevation and potential prosecution of antidumping of imports of certain couplings and related rail products."

14. ARC and Wiley formalized this engagement in a letter expressly naming ARC as the client.

15. A Wiley partner, Daniel B. Pickard, executed the engagement letter on the firm's behalf.

16. The engagement letter elaborated on the representation's "purpose":

> The purpose of this representation is to evaluate and pursue as appropriate a trade remedy investigation, specifically including any antidumping and/or countervailing duty proceeding filed on behalf of the domestic manufacturing industry, including any petition filed with the U.S. Department of Commerce and the U.S. International Trade Commission, and any subsequent litigation, as well as other litigation and lobbying services related to this investigation.

17. Through Mr. Pickard, on September 29, 2021, Petitioner filed its petition with the Commission and the U.S. Department of Commerce ("Department"), commencing the Predecessor Investigations.

18. At the time, Petitioner was composed of two members: ARC and McConway and Torley, LLC ("M&T"), a domestic producer of FRCs.

19. The petition principally alleged that certain FRCs imported from China were being subsidized by the Government of China within the meaning of section 701 of the Tariff Act of 1930, *codified as amended at* 19 U.S.C. § 1671 ("Tariff Act"), and were being or were likely to be sold at less than normal value within the meaning of section 731 of the Tariff Act, *codified as amended at* 19 U.S.C. § 1673, and these unfairly traded imports materially injured the domestic industry producing FRCs.

20. In the Predecessor Investigations, the period of investigation at the Commission was 2019 through 2021, with the record remaining open until June 8, 2022.

21. On October 6, 2021, ARC, again through Mr. Pickard, filed a letter in the Predecessor Investigations withdrawing from the petition. The letter explained that ARC would no longer participate as a petitioning party and the United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union, AFL-CIO, CLC ("USW") would replace ARC as a member of Petitioner.

22. On October 14, 2021, ARC's current legal counsel, the law firm of Faegre Drinker Biddle & Reath LLP ("Faegre"), entered an appearance in the Predecessor Investigations.

23. Until its withdrawal, ARC supervised and materially contributed to Mr. Pickard's preparation for the Predecessor Investigations.

24. Both before and after the petition's filing, ARC confided in Mr. Pickard its legal strategy for prosecuting FRC-related trade investigations, competitive decision-making processes, and extensive FRC-related BPI relevant to establishing the scope of domestic like product, the domestic industry, and the conditions of competition.

25. ARC disclosed this confidential information, including via telephone calls, in the reasonable expectation and belief that Mr. Pickard would preserve it within the confines of the attorney-client relationship.

26. Mr. Pickard's emails to ARC described themselves as "Attorney Client Communication – Privileged & Confidential," or variants of that description.

27. Even after Faegre entered its appearance for ARC, Mr. Pickard attempted to coach ARC into taking positions he would later use against ARC in the Current Investigations. For instance, in March 2022, Mr. Pickard told ARC it would be "very helpful" if ARC took the position, "to the extent that it is factually correct," that "a significant part of the decision to move production to Mexico was due to competition with low priced imports from China."

28. For Wiley's legal services, ARC paid substantial attorneys' fees and costs. On information and belief, it shared these expenses equally with M&T.

29. The Commission issued an APO in the Predecessor Investigations on October 12, 2021 ("Predecessor APO").

30. By its terms, the Predecessor APO requires authorized applicants to use BPI "solely for the purposes of the above-captioned Commission investigation or for U.S. judicial review or review pursuant to the North American Free Trade Agreement the determination resulting from such investigation of such Commission investigation."

31. On March 1, 2022, Mr. Pickard amended his entry of appearance on Petitioner's behalf to reflect that he had changed law firms. Mr. Pickard's amended entry of appearance advised that he is now a shareholder with Buchanan and no longer with Wiley.

32. Milton I. Koch—a certified public accountant—accompanied Mr. Pickard in his move from Wiley to Buchanan. As reflected on the petition's cover page, Mr. Koch was one of Petitioner's representatives in the Predecessor Investigations.

33. The Commission scheduled the final phase of the Predecessor Investigations following notification of preliminary determinations by the Department that imports of FRCs from China were subsidized within the meaning of section 703(b) of the Tariff Act, 19 U.S.C. § 1671b(b), and sold at less than fair value within the meaning of 733(b) of the Tariff Act, 19 U.S.C. § 1673b(b). Notice was given of the scheduling of the final phase and of a public hearing to be held.

34. The Commission conducted its hearing on May 12, 2022. Representatives for Petitioner appeared at the hearing accompanied by counsel and submitted pre-hearing and post-

hearing briefs, and final comments. Three respondent entities—Strato, Wabtec, and TTX—participated in the final phase.

35. The Commission announced its unanimous negative vote on June 14, 2022, thus terminating the Predecessor Investigations and denying the Coalition its requested relief.

36. In early July 2022, the Commission issued its determinations and released its final report.

37. Based on the record in the Predecessor Investigations' final phase, the Commission determined that an industry in the United States was not materially injured or threatened with material injury by reason of FRC imports found by the Department to be sold in the United States at less than fair value and to be subsidized by the Government of China.

38. One reason for the negative injury determination was that Chinese FRCs could not be considered a cause of the alleged injury because of significant non-subject FRC imports from Mexico.

39. Until July 2022, the Predecessor APO covered only Mr. Pickard and two non-attorneys, Mr. Koch and Samuel Falzarano.

40. On July 18, 2022, however, after the Commission issued its determinations—effectively concluding the Predecessor Investigations—Buchanan filed an amendment to the Predecessor APO adding attorney applicants Amanda Wetzel, Ashley Jones, Jordan Yeagley, Karima Tawfik, David Sessions, Mert Arkan, and Melissa Ihnat and non-attorney applicants Sandy Saly and Clayton Kaier.

41. More than two months later, on September 26, 2022, Buchanan certified its destruction of Predecessor APO-covered materials.

**The Current Investigations**

42.     Just days later, on September 28, 2022, Petitioner filed a second petition commencing the Current Investigations. The Current Investigations are a reprise of the Predecessor Investigations. Both sets of investigations were and are quasi-adjudicative antidumping and countervailing duty investigations before the Commission and the Department pursuant to the same body of statutory and regulatory provisions. The petitioning party in each investigation was Petitioner, of which ARC is a former member. The FRCs covered by the investigations include E, F, and E/F couplers and E and F knuckles. ARC's BPI concerning its FRCs was used in the Predecessor Investigations; much of that same BPI will be the focus of the Current Investigations. The petitions in both commonly allege that FRCs are being or are likely to be sold at less than normal value within the meaning of section 731 of the Tariff Act. In the Current Investigations, the period of investigation is the full years of 2019 through 2021 plus the first half of 2022.

43.     On September 29, 2022, Buchanan filed an APO application in the Current Investigations ("Current APO") covering the same set of Buchanan lawyers and staff covered under the Predecessor APO.

44.     At the Current Investigations' outset, the Commission sent questionnaires to solicit from U.S. producers, U.S. importers, and foreign producers the information required by the Commission to make its determinations.

45.     Plaintiffs each submitted significant amounts of extraordinarily detailed BPI in response to the Commission's questionnaires.

46.     Petitioner's two members are M&T and USW.

47.     M&T is ARC's industry competitor.

48.     The USW represents unionized workers at ARC.

49. Petitioner contends that the USW became a member "because of the impact of subject imports on USW workers," including purported job losses "in the domestic FRC industry."

50. In the Current Investigations, Petitioner hopes to "fix" the negative injury determination in the Predecessor Investigations by adding imports from Mexico to the Investigations' scope.

51. To do this, Petitioner paints a target on ARC. ARC, the petition asserts, "which was formerly a major producer of FRCs in the United States, relocated substantially all of its FRC production to Mexico and is now an importer of in-scope FRCs that are produced at its Mexican location." "The AAR certified manufacturing plant in Mexico that manufactures FRC products is ASF-K de Mexico, S. de R. L. de C.V. Sahagun, which is owned by ASF-Keystone, a division of Amsted Industries' Amsted Rail Group." This is the same scenario that existed during the Predecessor Investigations, yet Petitioner did not include Mexican imports there.

52. In the new petition's telling, the "shift to production in Mexico by [ARC] has resulted in a significant market share decrease for domestic producers that chose not to abandon their U.S. employees and to continue their FRC production in the United States."

53. ARC "relocated its production to Mexico," the petition posits, "to offer prices in the U.S. market for its imported FRCs from Mexico that are competitive with Chinese FRCs."

54. Immediately upon learning of Mr. Pickard's participation in the Current Investigations as Petitioner's lead counsel, ARC moved to protect itself from Mr. Pickard's betrayal. It directed Faegre to send a letter to Mr. Pickard detailing his ethical violation and requesting Buchanan's withdrawal from further representation of Petitioner in the Current Investigations. Faegre sent Mr. Pickard a letter to that effect on October 6, 2022.

55.     Buchanan's general counsel responded by letter on October 11, 2022. Ignoring that ARC is the importer of record and would be harmed by the trade relief requested in the Current Investigations, Buchanan asserted that ARC actually "stands to benefit" if the Current Investigations succeed. Buchanan further asserted that Wiley negotiated a "robust advance waiver" in the June 2021 engagement letter. The advance waiver applies only to Wiley itself and, further, excludes "matters that are substantially related to our work for you."

56.     On October 13, 2022, ARC and ASF-K filed a letter with the Commission asking it to: (i) disqualify Buchanan from further participation as counsel for Petitioner in the Current Investigations; (ii) rescind Buchanan's authorization to receive BPI under the APO in the Current Investigations ("Current APO"); and (iii) require neither ARC nor ASF-K to serve BPI questionnaire responses on Buchanan until the Commission determines whether Buchanan should be disqualified from practicing in the Current Investigations and/or excluded from the Current APO. One basis for these requests was Mr. Pickard's violation of Rule 1.9.

57.     Another basis was Mr. Pickard's potential violation of the Predecessor APO. On information and belief, Buchanan abused the Predecessor APO by using ARC's and others' BPI as a springboard for the Current Investigations. Buchanan added nine attorneys and non-attorneys to the Predecessor APO *after* the Commission had already issued its determinations in the Predecessor Investigations.

58.     Buchanan's post-determinations use of the BPI was to advance the Current Investigations, not the Predecessor Investigations. In their October 13 letter, therefore, ARC and ASF-K urged the Commission to investigate this potential APO violation.

59.     Strato, TTX, and Wabtec filed letters with the Commission on October 12, 2022, objecting to the disclosure of BPI to Buchanan before the Commission resolved ARC's allegations

against Buchanan. The Commission has not placed those letters on its public docket, in effect denying the requested relief.

60. On October 13, 2022, the Commission's Acting Secretary, Katherine M. Hiner, made a telephone call to ARC's counsel at Faegre.

61. Acting Secretary Hiner explained that the Commission will not act immediately on the concerns expressed in ARC's and ASF-K's October 13 letter.

62. Instead, she said, the Commission will resolve the allegations concerning the Predecessor APO violations in the ordinary course pursuant to its breach investigation procedures at 19 C.F.R. § 207.7(e). She offered no timetable for this future resolution.

63. Acting Secretary Hiner continued, the Commission will separately respond to the ethical violation allegations in the ordinary course. Again, she offered no timetable for the Commission's future response.

64. In the meantime, Acting Secretary Hiner said, the Commission will release Plaintiffs' BPI to Mr. Pickard and Buchanan before the public Title VII preliminary staff conference, which is scheduled to occur on October 19, 2022.

65. On October 14, 2022, counsel for Plaintiffs provided notice via telephone to Acting Secretary Hiner that Plaintiffs intended to file a motion for a temporary restraining order concerning the subject-matter alleged herein.

### Statement of Claims

### Count One

### Violation of the Administrative Procedures Act

66. Paragraphs 1 through 64 are incorporated herein by reference.

67. The APA authorizes the Court to hold unlawful and set aside agency action that is: "(A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (B) contrary to constitutional right, power, privilege, or immunity; (C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right; (D) without observance of procedure required by law; [or] (E) unsupported by substantial evidence." 5 U.S.C. § 706(2).

68. The Commission has before it pending requests to disqualify Mr. Pickard and Buchanan from further participation as counsel in the trade investigations, as well as to prevent Buchanan from receiving Plaintiffs' highly-sensitive business proprietary information ("BPI"), which Plaintiffs provided in response to Commission questionnaires. The Commission, however, has turned a blind eye to Plaintiffs' concerns.

69. The Commission's announcement that, *in a matter of days*, it will release Plaintiffs' BPI questionnaire responses to Buchanan, is arbitrary, capricious, and an abuse of discretion.

## Count Two

## Violation of Due Process

70. Paragraphs 1 through 68 are incorporated herein by reference.

71. The Fifth Amendment of the U.S. Constitution requires that no person be deprived of their property without due process of law. *Mathews v. Eldridge*, 424 U.S. 319, 332-36 (1976); *Young v. Dep't of Housing and Urban Development*, 706 F.3d 1372, 1376 (Fed. Cir. 2013).

72. Procedural due process requires that certain substantive rights, such as a property interest, cannot be deprived unless constitutionally adequate procedures are followed. *See 2910 Georgia Avenue LLC v. District of Columbia*, 234 F. Supp. 3d 281 (D.D.C. 2017).

73. To assert a procedural due process claim, a plaintiff needs to show that there has been (1) a deprivation of (2) life, liberty, or property (3) without due process of law. *Id*.

74. "A company's confidential information ... qualifies as property to which the company has a right of exclusive use." *United States v. O'Hagan*, 51 U.S. 642, 654 (1997); *see also Carpenter v. United States*, 484 U.S. 19, 26 (1987) ("Confidential business information has long been recognized as property."); *Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 1003-04 (1984) (company had property right in the health, safety, and environmental data it submitted to agency).

75. Defendant's disclosure of Plaintiffs' BPI *before* completion of its ethical conflict and APO investigations amounts to a deprivation of Plaintiffs' property interest.

76. Due process requires that the party being deprived of their property have a meaningful opportunity to be heard by the decision-maker, at a meaningful time, and in a meaningful manner. *Mathews*, 424 U.S. at 332-33; *Kelley v. District of Columbia*, 893 F. Supp. 2d 115, 123 (D.D.C. 2012). The Federal Circuit has explained that notice and an opportunity to be heard are the essential requirements of due process. *Young*, 706 F.3d at 1376.

77. By disclosing Plaintiffs' BPI *before* completion of its ethical conflict and APO investigations and giving Plaintiffs an opportunity to be heard, the Commission is violating Plaintiffs' procedural due process rights in violation of the Fifth Amendment of the U.S. Constitution.

**Prayer for Relief**

Wherefore, Plaintiffs pray that this Court will provide them relief from the Commission's unlawful violation of the Administrative Procedures Act and Fifth Amendment of the U.S. Constitution, by:

1. Declaring arbitrary, capricious, and an abuse of discretion and denial of due process the Commission's decision to release Plaintiffs' BPI in the Current Investigations before the Commission renders a final decision: (i) under 19 C.F.R. §§ 207.7(d)-(e), as to alleged Predecessor

APO violations by Buchanan; and (ii) under 19 C.F.R. § 201.15(a), as to whether Buchanan should be disqualified from participation as counsel for Petitioner in the Current Investigations; and

2. Preliminarily and permanently enjoining the Commission, its agencies, officers, employees, and agents, and others who are in active concert or participation with them, from disclosing, or requiring Plaintiffs to disclose, to Mr. Pickard and Buchanan in the Current Investigations BPI submitted by Plaintiffs until such time as the Commission renders a final decision: (i) under 19 C.F.R. §§ 207.7(d)-(e), as to alleged Predecessor APO violations by Buchanan; and (ii) under 19 C.F.R. § 201.15(a), as to whether Buchanan should be disqualified from further participation as counsel for Petitioner in the Current Investigations; and

3. Providing Plaintiffs such further and additional relief as may be just.

Dated: October 14, 2022                                         Respectfully submitted,

Andrew T. Schutz  
Ned H. Marshak  
GRUNFELD, DESIDERIO, LEBOWITZ,  
SILVERMAN & KLESTADT LLP  
599 Lexington Avenue, 36th Floor  
New York, NY 10022  
(212) 557-4000

*Counsel for Plaintiff*  
*Strato, Inc.*

David M. Morrell  
Ryan M. Proctor  
JONES DAY  
51 Louisiana Avenue, NW  
Washington, DC 20001  
(202) 879-3939

*Counsel for Plaintiff Wabtec Corp.*

*/s/ Richard P. Ferrin*  
Douglas J. Heffner  
Brian P. Perryman  
Richard P. Ferrin  
Carolyn Bethea Connolly  
FAEGRE DRINKER  
BIDDLE & REATH LLP  
1500 K Street, NW, Suite 1100  
Washington, DC 20005  
(202) 230-5803

*Counsel for Plaintiffs*  
*Amsted Rail Company, Inc. and*  
*ASF-K de Mexico S. de R.L. de C.V.*

James M. Smith  
Shara L. Aranoff  
Sooan (Vivian) Choi  
COVINGTON & BURLING LLP  
One City Center  
850 Tenth Street, NW  
Washington, DC 20001  
(202) 662-5550  
*Counsel for TTX Company*

## Verification

I, James Allan, LCB, declare as follows:

1.      I am the Director of Trade Compliance for Amsted Industries Incorporated, an affiliate of Amsted Rail Company, Inc. ("ARC"). I have held this position since November 2019. As the Director of Trade Compliance, I am responsible for, among other things, setting global policy for all ARC trade compliance activities and managing communications to and from government agencies. I am also a licensed U.S. Customs Broker.

2.      I have personal knowledge of ARC's activities and affairs as set forth in the foregoing Verified Complaint and, if called on to testify, I would competently testify as to those factual matters stated herein.

I verify under penalty of perjury that the foregoing is true and correct. Executed on October 14, 2022.

*Jay Allan*

Digitally signed by Jay Allan
Date: 2022.10.14 14:11:41 -07'00'

James Allan, LCB

## Verification

I, Douglas J. Heffner, declare as follows:

1. I am a partner at Faegre Drinker Biddle & Reath LLP and counsel for Amsted Rail Company, Inc. ("ARC"), ASF-K de Mexico S. de R.L. de C.V. ("ASF-K").

2. I have personal knowledge of the docket and filings in the following antidumping and countervailing duty investigations before the U.S. International Trade Commission and U.S. Department of Commerce in these investigations:

- *Certain Freight Rail Coupler Systems and Components from China*, DOC Inv. Nos. A-570-143, C-570-144; USITC Inv. Nos. 701-TA-670, 731-TA-1570

- *Certain Freight Rail Couplers and Parts Thereof from China and Mexico*, DOC Inv. Nos. A-570-145, A-201-857, C-570-146; USITC Inv. Nos. 701-TA-682, 731-TA-1593-1593

3. If called on to testify, I would competently testify as to those factual matters stated herein.

I verify under penalty of perjury that the foregoing is true and correct. Executed on October 14, 2022.

*{signature}*

_____
Douglas J. Heffner

US.352984601.02