*NON-CONFIDENTIAL VERSION*

## UNITED STATES COURT OF INTERNATIONAL TRADE
## BEFORE: THE HONORABLE GARY S. KATZMAN

|  |  |
|---|---|
| **AMSTED RAIL COMPANY, INC.,** <br> **ASF-K DE MEXICO S. DE R.L. DE C.V.,** <br> **STRATO, INC., WABTEC CORP.** <br> **AND TTX COMPANY,** <br><br>         **Plaintiffs,** <br><br>     **v.** <br><br> **UNITED STATES INTERNATIONAL** <br> **TRADE COMMISSION,** <br><br>         **Defendant,** <br><br> **and** <br><br><br> **COALITION OF FREIGHT RAIL** <br> **COUPLER PRODUCERS,** <br><br>         **Defendant-Intervenor.** | **Court No. 22-00307** |

## DEFENDANT'S RESPONSE TO PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION

**JANE C. DEMPSEY**
   Attorney-Advisor
Jane.Dempsey@usitc.gov
Telephone: (202) 205-3142

**DAVID A.J. GOLDFINE**
   Attorney-Advisor
David.Goldfine@usitc.gov
Telephone: (202) 708-5452

**ANDREA C. CASSON**
   Assistant General Counsel for Litigation
Andrea.Casson@usitc.gov
Telephone: (202) 205-3105
Office of the General Counsel
U.S. International Trade Commission
500 E Street, SW
Washington, DC 20436

*Attorneys for Defendant*
*U.S. International Trade Commission*

**DATED: OCTOBER 21, 2022**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................ iii

**FACTUAL AND PROCEDURAL HISTORY** ...........................................................**2**

    I.     The Prior Related Investigations........................................................ 2

    II.    The Current Investigations................................................................. 4

**ARGUMENT** .................................................................................................**7**

    I.     Standard of Review............................................................................. 7

    II.    Plaintiffs Have Failed to Establish a Likelihood of Success on the Merits ................. 8

          A.     Plaintiffs' First Claim Fails Because Releasing BPI to the Attorney and His Firm Would not be Arbitrary, Capricious, or an Abuse of Discretion .............................................................. 11

               1.     The Commission Reasonably Exercised its "Considerable" Discretion in Administering the APO ...................... 13

               2.     No Basis Exists at This Time for the Commission to Disqualify or to Withhold BPI from the Attorney and Firm .............. 16

          B.     Plaintiffs' Second Claim Fails Because Releasing Business Proprietary Information to Attorney and His Firm Would Not Deprive Plaintiffs of their Procedural Due Process, But Could Deprive Petitioners of Their Due Process........................................ 18

    III.    Plaintiffs Have Failed to Demonstrate Immediate, Irreparable Harm Before a Decision Can be Rendered ....................................................... 20

    IV.    The Balance of Hardships and Public Interest Weigh in Favor of Denial................. 23

    **CONCLUSION** ......................................................................................**25**

# TABLE OF AUTHORITIES

**Cases**                                                                 **Page(s)**

*Amazon.com, Inc. v. Barnesandnoble.com, Inc.*,
   239 F.3d 1343 (Fed. Cir. 2001)..........................................................................8

*Am. Inst. for Imported Steel Inc. v. United States*,
   600 F. Supp. 204 (Ct. Int'l Trade 1984) ......................................................20

*Elkem Metals Co. v. United States*,
   135 F. Supp. 2d 1324 (Ct. Int'l Trade 2001) .............................................20

*Gerdau Ameristeel Corp. v. United States*,
   519 F.3d 1336 (Fed. Cir. 2008)....................................................................18

*Hyundai Pipe Co. v. U.S. Dep't of Comm.*,
   11 C.I.T 238 (1987) ..............................................................13, 14, 15, 21

*J. Conrad LTD v. United States*,
   457 F. Supp. 3d 1365 (Ct. Int'l Trade 2020) ..............................................8

*Kwo Lee, Inc. v. United States*,
   24 F. Supp. 3d 1322 (Ct. Int'l Trade 2014) ..............................................20

*Makita Corp. v. United States*,
   819 F. Supp. 1099 (1993) ...........................................................21, 22, 23

*Mathews v. Eldridge*,
   424 U.S. 319 (1976)......................................................................................18

*Mazurek v. Armstrong*,
   520 U.S. 968 (1997)........................................................................................7

*McCarthy v. Madigan*,
   503 U.S. 140 (1992)......................................................................................10

*Metallverken Nederland B.V. v. United States*,
   13 C.I.T. 417 (1989) ....................................................................................21

*Munaf v. Geren*,
   553 U.S. 674 (2008) ..................................................................................7, 8

*Nippon Steel Corp. v. United States*,
   219 F.3d 1348 (Fed. Cir. 2000)....................................................................8

*N. Am. Butterfly Ass'n. v. Wolf*,
   977 F.3d 1244 (D.C. Cir. 2020) ................................................................18

## TABLE OF AUTHORITIES (cont'd)

**Cases (cont'd)**                                                                                  **Page(s)**

*Otter Prods., LLC v. United States,*
   37 F. Supp. 3d 1306 (Ct. Int'l Trade 2014) .............................................................20

*Pepper v. United States,*
   794 F.2d 1571 (Fed. Cir. 1986)...............................................................................19

*Shakeproof Indus. Prods., Div. of Ill. Tool Works, Inc. v. United States,*
   104 F.3d 1309 (Fed. Cir. 1997)..........................................................................8, 17

*Shandong Huarong Gen'l Grp. v. United States,*
   122 F. Supp. 2d 143 (Ct. Int'l Trade 2000) .............................................................20

*Shandong Rongxin Import & Export Co. v. United States,*
   331 F. Supp. 3d 1380 (Ct. Int'l Trade 2018) ...........................................................13

*S.J. Stile Assoc. v. Snyder,*
   646 F.2d 522 (C.C.P.A. 1981) ................................................................................20

*Sumecht NA, Inc. v. United States,*
   331 F. Supp. 3d 1408 (Ct. Int'l Trade 2018) *aff'd*, 923 F.3d 1340
   (Fed. Cir. 2019)..................................................................................................8, 20

*U.S. Ass'n of Importers of Textiles & Apparel v. United States,*
   413 F.3d 1344 (Fed. Cir. 2005).................................................................................7

*Winter v. Natural Res. Def. Council, Inc.,*
   555 U.S. 7 (2008)..........................................................................................7, 8, 23, 24

*Weinberg v. Romero-Barcelo,*
   456 U.S. 305 (1992) ...............................................................................................24

*Zenith Radio Corp. v. United States,*
   710 F.2d 806 (Fed. Cir. 1983)................................................................................20

**Statutes**

5 U.S.C. § 706.............................................................................................................10

19 U.S.C. § 1516(a)(1)(C) .............................................................................................4

19 U.S.C. § 1673b(a) ...................................................................................................12

19 U.S.C. § 1677f(c)(1) ................................................................................................19

## TABLE OF AUTHORITIES (cont'd)

**Statutes (cont'd)**                                                                 **Page(s)**

19 U.S.C. § 1677f(c)(1)(A) .........................................................................14, 15

28 U.S.C. § 1581(i) ...........................................................................................8

**Regulations**

19 C.F.R. § 201.6 .............................................................................................14

19 C.F.R. § 206.8 .............................................................................................14

19 C.F.R § 206.17 ......................................................................................14, 19

19 C.F.R. § 206.17(f)(1) ..................................................................................19

19 C.F.R. § 207.3 .............................................................................................14

19 C.F.R. § 207.7 .............................................................................................14

19 C.F.R. § 208.22 ...........................................................................................14

19 C.F.R. § 351.203 ...........................................................................................2

**Legislative History**

H. Rpt. 100-576 (1988) ....................................................................................16

H.R. 4848, 100th Cong. § 1332(2) (1988) (*Omnibus Trade and
    Competitiveness Act of 1988)* ...............................................................14, 15

H. Rpt. 100-71 (1987) ......................................................................................16

U.S. Const, amend. 5 ..................................................................................10, 18

**Rules**

Commission Rule 201.15(a) .............................................................6, 7, 13, 17

CIT Rule 65 ........................................................................................................1

**U.S. International Trade Commission Publications**

*Certain Freight Rail Couplers and Parts Thereof from China*, Inv. Nos. 701-TA-
    670 and 731-TA-1570 (Preliminary), USITC Pub. 5243 (Nov. 2021) .....................3

*Certain Freight Rail Couplers and Parts Thereof from China,* Inv. Nos. 701-TA-
    670 and 731-TA-1570 (Final), USITC Pub. 5331 (July 2022) .............................2, 4

Pursuant to Rule 65 of the Rules of the Court and this Court's scheduling order dated October 18, 2022, defendant, U.S. International Trade Commission ("Commission" or "ITC") respectfully submits this response in opposition to the motion for a temporary restraining order ("TRO") filed by plaintiffs, Amsted Rail Company, Inc. ("Amsted"), ASF-K de Mexico S. de R.L. de C.V. ("ASF-K"), Strato, Inc. ("Strato"), Wabtec Crop. ("Wabtec"), and TTX Company ("TTX") (collectively "Plaintiffs"), on October 14, 2022.[1]   This case is about preservation of the integrity of the agency's statutory and regulatory process for oversight of access to business proprietary information under the APOs it issues and administers.  Plaintiffs' motion seeks to enjoin the Commission from disclosing, or requiring Plaintiffs to disclose, business proprietary information ("BPI") to the Attorney and his Firm under the Administrative Protective Order ("APO") in the underlying investigations, *Certain Freight Rail Couplers and Parts Thereof from China and Mexico*, USITC Inv. Nos. 701-TA-682 and 731-TA-1592-1593 (Preliminary) ("*FRC II*").  As demonstrated below, Congress afforded the Commission broad discretion in administering APOs, and the Commission reasonably exercised that discretion in the underlying investigations.  Because Plaintiffs cannot establish the requirements necessary for extraordinary injunctive relief, we respectfully request that the Court reject Plaintiffs' motion.

---

[1] As indicated in the Court's scheduling order, the Court deemed Plaintiffs' TRO motion to be a motion for a preliminary injunction.

## FACTUAL AND PROCEDURAL HISTORY

**I.      The Prior Related Investigations**

On September 28, 2021, the Attorney, on behalf of the Coalition of Freight Rail Coupler

Producers ("Coalition"), filed antidumping and countervailing duty petitions covering imports of

certain freight rail coupler systems and components thereof imported from China.  The next day,

the Attorney filed an application for access to BPI under the Commission's APO.  Exhibit 1,

EDIS Doc. 752932 (Attorney APO Request).  The Commission Secretary docketed the

investigations as *Freight Rail Coupler Systems and Components from China*, Inv. Nos. 701-TA-

670 and 731-TA-1570 ("*FRC I*").  The petitioning Coalition originally consisted of domestic

producers McConway & Torley LLC ("M&T") and Amsted.  *See FRC I,* Inv. Nos. 701-TA-670

and 731-TA-1570 (Final), USITC Pub. 5331 at I-1 (July 2022).  On October 6, 2021, seven days

after the filing of the petitions, and within the 20-day period for the U.S. Department of

Commerce ("Commerce") to determine whether to initiate the petition, Amsted withdrew from

the petitioning coalition and was replaced by the United Steel, Paper and Forestry, Rubber,

Manufacturing, Energy, Allied Industrial and Service Workers International Union AFL-CIO,

CLC ("USW"), an association representing unionized workers at Amsted.[2]  *See* Exhibit 2, EDIS

Doc. 753535 (Amendment I to APO Application).  Amsted hired new counsel, who filed an

entry of appearance as "a U.S. producer of the domestic like product *and a U.S. importer of the

subject merchandise*," on October 14, 2021.  *See* Exhibit 3, EDIS Doc. 754220 (Faegre EOA)

(emphasis added).  On October 12, 2021, the Commission Secretary approved Attorney's APO

application.  *See* Exhibit 4, EDIS Doc. 753948 (Approval of APO Application).  On October 14,

---

[2] After a petition is filed, Commerce has no later than 20 days to examine the accuracy and
adequacy of the evidence provided in the petition and determine whether to initiate an
investigation.  19 C.F.R. § 351.203.

2021, the Commission issued an APO, which included the Attorney and his prior law firm[3] as well as counsel for respondent interested parties, importers Wabtec and Strato (also Plaintiffs in this case).[4]  *See* Exhibit 5, EDIS Doc. 754177 (*FRC I* APO).  Not then, nor at any time during the *FRC I* proceedings did Amsted or any other party object to Attorney's access to BPI under the APO.

In November 2021, the Commission issued its preliminary determinations ("Views"), finding that there was a reasonable indication that an industry in the United States was being materially injured by freight rail coupler systems and components from China.  *Freight Rail Coupler Systems and Components from China,* 86 Fed. Reg. 64958 (Nov. 19, 2021).  In its Views, the Commission discussed that nonsubject imports were generally the largest source of supply to the U.S. market during the POI with Mexico being the largest source of nonsubject imports during 2020.  It further stated that in any final phase of the investigations, it intended to investigate amongst other things, the relationship between Amsted and its respective affiliate in Mexico and to what degree Amsted shifted production to Mexico at the expense of its domestic production operations.  *FRC I*, Inv. Nos. 701-TA-670 and 731-TA-1570 (Preliminary), USITC Pub. 5243 at 23, 35 n.207 (Nov. 2021).

The Commission subsequently scheduled the final phase of its investigations, and a hearing was conducted in May 2022.  Plaintiffs Strato, Wabtec, and TTX actively participated in the final phase as respondent interested parties while Amsted did not file any briefs.  Nor did it

---

[3] On March 1, 2022, the Attorney amended his entry of appearance to reflect his new employment with the current Firm.  Pl. Motion at 5.

[4] Amsted's new counsel did not request to be placed on the APO during the preliminary or final phases of *FRC I.*

3

appear at the Commission hearing.[5]  In July 2022, the Commission issued its final determinations, finding that an industry in the United States was not materially injured or threatened with material injury by reason of imports of freight rail coupler systems and components from China.  Despite finding subject import volume and the increase in that volume to be significant, the Commission did not find significant price effects or a causal nexus between subject imports and the domestic industry's declining performance.  In particular, the Commission noted petitioner's argument that Amsted had outshored some of its production operations to Mexico and found that nonsubject imports correlated with meaningful decreases in domestic prices to a greater degree than did subject imports.  *FRC I*, Inv. Nos. 701-TA-670 and 731-TA-1570 (Final), USITC Pub. 5331 at 29 n.149 (July 2022).

Subsequently, and within the 30-day period to file an appeal challenging the Commission's negative determinations with this Court, the Attorney amended the APO to add other attorney applicants.  *See* Exhibit 6, EDIS Docs. 775848, 776861, & 776869 (Amendments II to APO Application); *see also* 19 U.S.C. § 1516(a)(1)(C).  No appeal was filed, however, and the Attorney later certified destruction of all BPI released to the Firm under the APO.  *See* Exhibit 7, EDIS Doc. 781049 (Certification of Destruction).

## II.    **The Current Investigations**

On September 28, 2022, the Attorney, again on behalf of the Coalition (specifically, M&T and USW), filed petitions covering freight rail coupler imports from China and Mexico, commencing *FRC II*.  According to Amsted:

> In the new petition's telling, the "shift to production in Mexico by {ARC} has resulted in a significant market share decrease from domestic producers that chose not to abandon their U.S. employees

---

[5] *FRC I*, Inv. Nos. 701-TA-670 and 731-TA-1570 (Final), USITC Pub. 5331 at Appendix B (July 2022).

> and to continue their FRC production in the United States." *Id.* ¶
> 52. ARC "relocated its production to Mexico," the petition posits,
> "to offer prices in the U.S. market for its imported FRCs from
> Mexico that are competitive with Chinese FRCs." *Id.* ¶ 53. As
> discussed, this was the theory of the case in the Predecessor
> Investigations that {Attorney} urged ARC to adopt. Now, however,
> the ***petition targets ARC on that same theory of the case {as in FRC
> I}***.

Pl. Motion at 7 (emphasis added).

On October 12, 2022, Amsted, Strato, and TTX filed letters with the Commission

requesting it to deny the Attorney and Firm access to BPI under the *FRC II* APO based on

allegations that they had "potentially" violated the *FRC I* APO and their ethical obligations. Pl.

Motion at 8. The next day, October 13, 2022, the Commission's Acting Secretary notified

counsel that the letters were improperly filed and were not being placed on the public docket.

She informed that Commission policy requires keeping all correspondence between the

Commission and an alleged APO breaching party confidential. *See* Exhibit 8, K. Hiner

Declaration; Exhibit 9, Commission's Administrative Protective Order Handbook at 12 (Jan.

2022). She advised that in order to be considered on the record, counsel would need to segregate

the APO breach allegation from the ethics violation, with the former being emailed to the

Secretary directly.

Notably, when asked what specific information existed with respect to an APO violation,

counsel was unable to provide any evidence aside from their opinion that the timeline of the *FRC

I* APO application and the filing of the new petition "smelled untoward." *See* Exhibit 8, K. Hiner

Declaration. She again stressed that the Commission could not consider the improperly filed

requests, and therefore would be issuing the APO service list as scheduled, but that the

Commission would work to resolve the issues once the requests were properly filed. *See* Exhibit

8, K. Hiner Declaration.

The Commission subsequently issued the APO service list, which included the Attorney and Firm and counsel for respondent interested parties, Amsted, Wabtec, and Strato.  *See* Exhibit 10, EDIS Doc. 782251 (*FRC II* APO).

Pursuant to the Acting Secretary's direction, on the morning of Friday, October 14, 2022, Amsted filed a letter with the Commission requesting the agency to disqualify Attorney and Firm from any further participation in the current Commission investigations based on alleged ethical violations under the American Bar Association's Model Rules of Professional Conduct and the District of Columbia Rules of Professional Conduct ("disqualification request").  *See* Exhibit 11, EDIS Doc. 782283 (Disqualification Request).  Amsted also separately emailed to the Acting Secretary a request that the Commission rescind the Attorney's and Firm's access to BPI under the *FRC II* APO based on allegations that they violated the APO in *FRC I* ("exclusion request").  *See* Exhibit 8, K. Hiner Declaration.  Before the Commission could respond to the filings, Plaintiffs commenced this action that same evening, filing a Complaint and TRO motion that is the subject of this response.  On Monday, October 17, 2022, the Court conducted a status conference, and the next morning granted Plaintiffs' TRO motion for a period not to exceed 14 days.  *Amsted Rail Co. v. U.S. Int'l Trade Comm'n*, Court No. 22-00307, ECF 20 & 28.

On Tuesday, October 18, 2022, the Attorney and Firm filed with the Commission a response to the disqualification request on behalf of the petitioning Coalition.  *See* Exhibit 12, EDIS Doc. 782496 (Coalition Response to Disqualification Request).  They claimed that no conflict exists, and that in any event, Amsted expressly waived any conflict, and that the Firm and petitioner have relied on that waiver in good faith.

On October 21, 2022, the Commission responded to Amsted's disqualification request, informing that it determined that "there {wa}s not good cause under Rule 201.15(a), at this time,

to disqualify {Attorney and his Firm} from participation" in *FRC II* based on the ethical issues Amsted raised.  The Commission explained that it "does not adjudicate alleged violations of the Rules of Professional Conduct of a state Bar, nor does it determine whether conduct has violated the Model Rules of Professional Conduct of the American Bar Association, such as those described in {its} request."  The Commission further explained that such determinations fell within the purview of the relevant state bar association, and noted that no such determination has been made.  *See* Exhibit 13, EDIS Doc. 782848 (Commission Response to Disqualification Request).  Regarding the alleged APO violation, the Acting Secretary determined that the evidence was insufficient to warrant institution of an APO breach investigation at this time.  *See* Exhibit 8, K. Hiner Declaration.

## **ARGUMENT**

### I.   **Standard of Review**

A preliminary injunction is "an extraordinary and drastic remedy, one that should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (emphasis added) (citation omitted).  A preliminary injunction is "never awarded as of right."  *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008) (citing *Munaf v. Geren*, 553 U.S. 674, 689-90 (2008)).  To prevail on their application for a preliminary injunction, Plaintiffs bear the burden of demonstrating that (1) they will suffer immediate and irreparable injury, (2) they are likely to succeed on the merits, (3) the public interest is served by issuance of a preliminary injunction, and (4) the balance of hardship weighs in their favor.  *See U.S. Ass'n of Importers of Textiles & Apparel v. United States*, 413 F.3d 1344, 1346 (Fed. Cir. 2005).

The Supreme Court has made clear, contrary to Plaintiffs' contention that ignore key holdings of *Winter* and *Munaf* (Pl. Motion at 10), that to prevail, Plaintiffs must show that each prong of the test is "likely," as opposed to a balancing or sliding-scale test. *Winter*, 555 U.S. at 20, 21; *see also J. Conrad LTD v. United States*, 457 F. Supp. 3d 1365, 1374 (Ct. Int'l Trade 2020) (observing that a "sliding scale standard" that "relaxes the necessary showing of irreparable harm to something less than a likelihood is "no longer viable"). Instead, Plaintiffs' failure to demonstrate any of the four factors compels the denial of injunctive relief. *Winter*, 555 U.S. 7 (denying injunctive relief solely on basis of public interest); *Sumecht NA, Inc. v. United States*, 331 F. Supp. 3d 1408, 1412 (Ct. Int'l Trade 2018), *aff'd*, 923 F.3d 1340 (Fed. Cir. 2019) (failure to demonstrate immediate irreparable harm compels rejection of preliminary injunction); *Amazon.com, Inc. v. Barnesandnoble.com, Inc.*, 239 F.3d 1343, 1350 (Fed. Cir. 2001) (plaintiff cannot be granted preliminary relief "unless it establishes *both* of the first two factors, *i.e.*, likelihood of success on the merits and irreparable harm.") (emphasis in original) (citation omitted).

## II.     Plaintiffs Have Failed to Establish a Likelihood of Success on the Merits

As an initial matter, Plaintiffs' likelihood of success on the merits cannot be considered apart from intertwined jurisdictional issues. *E.g.*, *Nippon Steel Corp. v. United States*, 219 F.3d 1348, 1351-52 (Fed. Cir. 2000). As will be detailed in the Commission's forthcoming motion to dismiss, the Court does not have jurisdiction under 28 U.S.C. § 1581(i) under the plain language of the statute and because Plaintiffs brought this action before any final agency action. *See Shakeproof Indus. Prods., Div. of Ill. Tool Works, Inc. v. United States*, 104 F.3d 1309, 1313 (Fed. Cir. 1997) (finding "substantial force" to the government's suggestion that an action seeking to compel the Commerce Department to disqualify a law firm in an antidumping

proceeding was premature).  Amsted filed its disqualification request and letter regarding a

potential breach violation with the Commission on October 14, 2022.  *See* Exhibit 11, EDIS Doc.

782283 (Disqualification Request).  That evening, without affording any time for the

Commission to consider those submissions, Plaintiffs prematurely filed the Complaint and TRO

motion with this Court, thereby failing to exhaust their administrative remedies.  *Amsted Rail Co.*

*v. U.S. Int'l Trade Comm'n*, Court No. 22-00307, ECF 14-17.  Plaintiffs also fail to state a

cognizable claim for which relief can be granted as there has been no final agency action and no

concrete harm.  Consequently, the Complaint should be dismissed in its entirety.

Even if the Court were to find that it has jurisdiction to consider Plaintiffs' request for

emergency relief, however, no such relief is warranted because Plaintiffs cannot demonstrate a

likelihood of success on the merits on either of the two counts set forth in their Complaint.  As an

initial matter, it is important to stress that while Plaintiffs' Memorandum in Law in Support of

their TRO Motion ("Memorandum") goes into detail about the alleged APO breach and ethical

violations, *see* Pl. Br. at 14-18, the merits of those violations are not before this Court.  Rather,

the focus of this Court's inquiry is what Plaintiffs alleged in the Complaint, which is whether the

Commission acted lawfully by disclosing BPI before completion of its APO breach investigation

or responding to the disqualification request.

Specifically, under Count I (Violation of the Administrative Procedures Act ("APA")),

Plaintiffs allege that the Commission will be acting arbitrarily and capriciously by releasing BPI

to the Attorney and Firm while it has pending disqualification and exclusion requests.  Compl.

§§ 67-69.  In the first instance, as explained above, this claim must be dismissed for failure to

exhaust administrative remedies.  Plaintiffs failed to give the Commission an opportunity to

consider the alleged APO breach and ethical violations, which were only properly filed on

October 14, 2022, the same day that Plaintiffs filed the Complaint.  *See McCarthy v. Madigan,*
503 U.S. 140, 144-45 (1992) (acknowledging the "general rule that parties exhaust prescribed
administrative remedies before seeking relief from the federal courts…protecting administrative
agency authority and promoting judicial efficiency").  In any event, the Commission has since
considered and made determinations on Plaintiffs' requests, rendering this claim moot.

Under Count II (Violation of the Fifth Amendment of the U.S. Constitution), Plaintiffs
allege that by disclosing Plaintiffs' BPI before completion of its ethical conflict and APO
investigation and giving Plaintiffs an opportunity to be heard, the Commission is depriving
Plaintiffs of their right to procedural due process.  Compl. §§ 70-77.  This claim ignores the
notice given by the governing statute and regulations and is based on an erroneous view that
anytime a mere allegation is made with respect to an APO or ethics violation, no matter how
frivolous, the Commission must essentially treat those allegations as true and suspend its APO
release until finding otherwise.  Such a regime would not only be extraordinarily disruptive to
the Commission's investigative process that is subject to strict statutory deadlines, but it would
also be prejudicial to parties whose counsel are the target of such allegations, precluding them
from receiving effective assistance of counsel through premature disqualification or exclusion
from the APO.

Plaintiffs have failed to show that they are likely to prevail on the merits on either of
these counts in the Complaint, and therefore, cannot established entitlement to relief under the
first factor of the preliminary injunction standard.

A.   **Plaintiffs' First Claim Fails Because Releasing BPI to the Attorney and His Firm Would not be Arbitrary, Capricious, or an Abuse of Discretion**

Plaintiffs' allegation supporting its first claim is that:

> The Commission has pending requests before it to disqualify {Attorney and Firm} from further participation as counsel in the trade investigations, as well as to prevent {the Firm} from receiving Plaintiffs' highly-sensitive business proprietary information ("BPI"), which Plaintiffs provided in response to Commission questionnaires.   The Commission has turned a blind eye to Plaintiffs' concerns.

Compl. ¶ 68.

Contrary to Plaintiffs' claims, the Commission did not "turn a blind eye to Plaintiffs' concerns."  Compl. ¶ 68.  Nor did it, as Plaintiffs suggest, "in effect deny{} the requested relief" by not putting Plaintiffs' letters dated October 12, 2022, which objected to the disclosure of BPI to the Attorney and Firm, on the public docket.  Pl. Motion at 9 n.3.

On October 13, 2022, the very next day after receiving the letters, the Commission's Acting Secretary notified counsel that the letters were not being placed on the public docket because Commission policy requires keeping all correspondence between the Commission and an alleged APO breaching party confidential – *not* because it was denying the requested relief. *See* Exhibit 8, K. Hiner Declaration; Exhibit 9, Commission's Administrative Protective Order Handbook at 12 (Jan. 2022).  She advised that in order to be considered on the record, counsel would need to segregate the APO breach allegation from the ethics violation, with the former being emailed to the Secretary directly.  She further stated that the Commission could not consider the improperly filed request and would be issuing the APO service list as scheduled, but that the Commission would work to resolve the issues once the requests were properly filed.  *See* Exhibit 8, K. Hiner Declaration.

Consequently, it was not until Friday, October 14, 2022, that Amsted filed an appropriate disqualification request based on ethical violations under the American Bar Association's Model Rules of Professional Conduct and the District of Columbia Rules of Professional Conduct that was placed on EDIS (the Commission's public docket).  *See* Exhibit 11, EDIS Doc. 782282 (Disqualification Request).  Amsted also separately emailed an exclusion request regarding the potential APO violation to the Acting Secretary, which was not placed on EDIS.  *See* Exhibit 8, K. Hiner Declaration.  Without allowing the Commission time to consider the filed requests, however, Plaintiffs commenced this action that Friday evening.

As of last Friday, several of Commission Staff have been working expeditiously and long hours in not only considering Plaintiffs' requests and litigation filings, but also in continuing forward with the investigations to meet the Commission's tight statutory deadline in issuing its preliminary determinations.[6]  Any perceived delay in issuance of decisions on these violations was attributable only to Plaintiffs themselves in failing to bring this matter to the Commission's attention until two weeks after the petitions were filed and to this Court, the Friday before the scheduled date of the Commission's release of APO information.  Plaintiff's mischaracterization of the facts should not inform this Court's decision.

The Commission has now considered and made determination on Amsted's requests.  In its response to the disqualification request, the Commission explained that it "does not adjudicate alleged violations of the Rules of Professional Conduct of a state Bar, nor does it determine whether conduct has violated the Model Rules of Professional Conduct of the American Bar

---

[6] For a preliminary investigation such as the one at issue, the Commission has a statutory obligation to complete its investigation and determine whether there is a reasonable indication that an industry in the United States is materially injured, or is threatened with material injury, by reason of imports of the subject merchandise, within 45 days after a petition is filed.  19 U.S.C. § 1673b(a).

Association, such as those described in {its} request." The Commission further informed that such determinations fell within the purview of the relevant state bar association and noted that no such determination has been made. The Commission also stated that it had determined that "there {wa}s not good cause under Rule 201.15(a), at this time, to disqualify {Attorney and his Firm} from participation" in *FRC II* based on the ethical issues Amsted raised. *See* Exhibit 13, EDIS Doc. 782848 (Commission Response to Disqualification Request). Plaintiffs can, of course, raise their concerns directly with those authorities. With respect to its exclusion request, Amsted relied on its allegations of a breach of the APO in *FRC I*. The breach allegations, however, are based on pure speculation rather than on any probative evidence. As indicated in the attached declaration from the Acting Secretary, the scant evidence provided is insufficient to warrant institution of an APO breach at this time. *See* Exhibit 8, K. Hiner Declaration.

1. **The Commission Reasonably Exercised its "Considerable" Discretion in Administering the APO**

Plaintiffs claim that like in *Hyundai Pipe Co. v. U.S. Dep't of Commerce*, 11 C.I.T. 238 (Ct. Int'l Trade 1987), the Commission's planned release of BPI without completing its APO breach investigation or responding to the ethical violation is "arbitrary," "capricious," and an "abuse of discretion." Pl. Motion at 11-13. Not only did the decision in *Hyundai Pipe* precede the pertinent statutory amendments that govern APO access today, it also involves distinct facts and circumstances that are not present in this case.[7]

In *Hyundai Pipe*, the Court enjoined Commerce from disclosing BPI submitted by plaintiffs to certain counsel that were being investigated for violating the terms of the APO in a

---

[7] Additionally, as the Court noted during the Status Conference, Court of International Trade Court decisions are not binding precedent. *See, e.g., Shandong Rongxin Import & Export Co. v. United States*, 331 F. Supp. 3d 1380, 1407 (Ct. Int'l Trade 2018) (noting that a decision by this Court is not binding authority controlling the disposition in another case).

separate prior investigation.  While the Court stated that "revelation of a secret is an irrevocable act," it was within the context of concerns raised by it that "Commerce ha{d} not promulgated procedures for resolving allegations of violation of APOs" and there had "been an inability or unwillingness to state how much additional time {wa}s required for the Department to reach a final decision." *Hyundai Pipe*, 11 C.I.T. at 240-241.  Moreover, there had been a delay in initiating the investigation on the APO violation (the request was filed on September 25, 1985, but was not initiated by Commerce until July 9, 1986), and the Court explained that "in taking time to deal with the lawyers in question, the Department cannot act in haste to disclose the other side's secrets." *Id.* at 243.  Unlike Commerce in *Hyundai*, the Commission here currently has a statute, rules, and procedures in place in administering APOs, including an established process under which it evaluates potential breaches of an APO.  *See* 19 U.S.C. § 1677f(c)(1)(A); 19 C.F.R. §§ 201.6, 206.8, 206.17, 207.3, 207.7, and 208.22; Exhibit 9, Commission's Administrative Protective Order Handbook at 11-12 (Jan. 2022).   And as described above, the Commission followed this process in reviewing Plaintiffs' claims against Attorney and his Firm and did so without any delay.

Moreover, the Commission's planned release of BPI without completing an APO breach investigation or responding to the ethical violation was not "arbitrary," "capricious," or an "abuse of discretion."  Rather, the Commission's actions were reasonable, and in accord with the "considerable discretion" afforded to it by Congress and the specific aims of post-*Hyundai* statutory amendments intended to ensure that parties in Commission investigations would mandatorily receive all information under an APO (with extremely limited exceptions).

Under the 1988 Act:

> Upon receipt of an application (before or after receipt of the information requested) which describes in general terms the

> information requested and sets forth the reasons for the request, the administering authority or the **Commission shall make all business proprietary information presented to, or obtained by it, during a proceeding (except privileged information, classified information, and specific information of a type for which there is a clear and compelling need to withhold from disclosure) available to interested parties who are parties to the proceeding under a protective order** described in subparagraph (B), regardless of when the information is submitted during a proceeding.

*Omnibus Trade and Competitiveness Act of 1988*, H.R. 4848, 100th Cong. § 1332 (1988) ("1988 Act") (emphasis added).  This provision continues to form the basis of present law, as set forth in 19 U.S.C. § 1677f(c)(1)(A).

The context is crucial in understanding Congress' amendments to APO procedures in 1988 (a year after *Hyundai* was decided), which form the basis of the "shall" language in the statute.  *See* 1988 Act, §1332; 19 U.S.C. § 1677f(c)(1)(A).  The Senate Finance Committee Report concerning these 1988 amendments indicated that under the 1979 Act, the Commission's approach was not to release to parties the "bulk" of confidential information encompassing the Commission record.  S. Rpt. 100-71, at 111-112 (1987).  The report indicated concern that this approach "create{ed} difficulties for parties to ITC investigations," and the Committee proposed amendments whose:

> …principal change from current law is that the provisions of section 777(c)(1)(A) of the Tariff Act of 1930, which permits the administering authority and the ITC to issue protective orders, are made mandatory for the ITC and require the ITC to release all confidential information under protective order…

*Id*. at 111.  Thus, Congress' intent was that the Commission's APO procedure would change from one in which release of confidential information under APO was discretionary and piecemeal, to one in which an APO would be created in every proceeding and all confidential information on record would generally be released under the APO, with only limited exemptions

for certain types of information.  The House expanded the Senate's proposed amendments to apply to both the Commission and Commerce, but they were otherwise adopted as proposed.  H. Rpt. 100-576, at 622-623 (1988).

Taken in view of the statute and its legislative history, which was designed to ensure that parties to an APO received BPI, the Commission acted reasonably here in its planned release of BPI to Attorney and Firm.  At the time of its scheduled APO release, all that the Commission had before it were mere allegations of an APO breach and ethical violation that Plaintiffs had filed in their disqualification and exclusion requests (the Friday before the scheduled APO release on Monday, no less).  The reasonableness of the Commission's actions is particularly true in light of the "considerable discretion" afforded to it by Congress in administering APOs. Indeed, the Senate Finance Committee explicitly stated:

> The ITC would have *considerable discretion* in determining how to frame and administer these protective orders, so long as disclosure of all information occurs in an expeditious manner, *so long as the terms and conditions of such protective orders are reasonably calculated to accomplish legitimate purposes and so long as such terms and conditions are not onerous or overly burdensome so as to defeat the intent and purpose of this section*.

S. Rpt. 100-71, at 111 (1987) (emphasis added).

## 2.   No Basis Exists at This Time for the Commission to Disqualify or to Withhold BPI from the Attorney and Firm

In any event, the Acting Secretary has now determined that the evidence is insufficient to warrant institution of an APO breach at this time.  *See* Exhibit 8, K. Hiner Declaration. Plaintiffs failed to provide any concrete evidence regarding a potential breach of the APO. Rather, in a discussion with the Commission's Acting Secretary, counsel informed that they did not have any specific information, but that the circumstances regarding the addition of attorneys to the APO after the Commission issued its final negative determinations in *FRC I* and the filing

of the new petition in *FRC II* "smelled untoward." *See id.* Plaintiffs' October 14, 2022 letter to

the Acting Secretary as well as the Complaint and TRO motion likewise offer nothing aside from

pure speculation with respect to a potential APO breach by the Attorney and Firm. The

documents simply hypothesize a breach stemming from the fact that the Attorney added new

counsel to the APO after the Commission issued its determinations in *FRC I*, and that days after

certifying destruction of BPI in that matter, the Attorney filed the petitions in *FRC II*. Compl. ¶¶

40, 42; Pl. Motion at 14. Plaintiffs, in fact, concede that their APO breach allegation is one

based on "inference." Motion at 14. Although the Commission makes every effort to preserve

the confidentiality of BPI and regards any breach of an APO as a serious matter, mere inference

is not the type of evidence upon which the Commission opens an investigation.

In addition, on October 21, 2022, the Commission responded to Amsted's

disqualification request. As indicated above, the Commission informed that it found no "good

cause under Rule 201.15(a), at this time, to disqualify {Attorney and his Firm} from

participation" in *FRC II* based on the ethical issues Amsted raised. It explained that it "does not

adjudicate alleged violations of the Rules of Professional Conduct of a state Bar, nor does it

determine whether conduct has violated the Model Rules of Professional Conduct of the

American Bar Association, such as those described in {its} request." The Commission further

informed that such determinations fell within the purview of the relevant state bar association,

and noted that no such determination has been made. The Commission also stated that it had

determined that *See* Exhibit 13, EDIS Doc. 782848 (Commission Response to Disqualification

Request); *see also Shakeproof Indus. Prods., Div. of Ill. Tool Works, Inc. v. United States*, 104

F.3d 1309, 1313 (Fed. Cir. 1997).

Because the Commission has now completed its review and made determination on Plaintiffs' disqualification and exclusion requests, Plaintiffs' claim that the Commission will act unlawfully by releasing BPI to Attorney prior to completing its APO investigation or responding to the ethical violation are now moot.  *Gerdau Ameristeel Corp. v. United States*, 519 F.3d 1336, 1340 (Fed. Cir. 2008) (explaining that a case becomes moot when it has lost its character as a present, live controversy).

    **B.**    **Plaintiffs' Second Claim Fails Because Releasing Business Proprietary Information to Attorney and His Firm Would Not Deprive Plaintiffs of Their Procedural Due Process, But Could Deprive Petitioners of Their Due Process**

Plaintiffs also err in arguing that the disclosure of "Plaintiffs' BPI before completion of its ethical conflict and APO investigation and giving Plaintiffs an opportunity to be heard, the Commission is violating Plaintiffs' procedural due process rights in violation of the Fifth Amendment of the U.S. Constitution."  Compl. ¶ 77.

A governmental taking of property can give rise to a Fifth Amendment due process claim only if Plaintiffs can establish three elements:  (1) a property interest; (2) a deprivation under color of law; and (3) lack of notice and an opportunity to be heard.  *See, e.g., Mathews v. Eldridge*, 424 U.S. 319, 332-36 (1976).  A principal focus of procedural due process protection is the adequacy of governmental process "before the owner is finally deprived of a protected property interest."  *North Am. Butterfly Ass'n. v. Wolf*, 977 F.3d 1244, 1265-66 (D.C. Cir. 2020).

Plaintiffs, while asserting a cognizable interest in its confidential information, fail to demonstrate that the Commission has or will deprive Plaintiffs of that property interest.  Nor do they show how there has been a lack of notice and opportunity to be heard before release of their information.  The governing statute – which Plaintiffs do not even cite in their Memorandum – explicitly requires the Commission to release all BPI obtained during its antidumping and

countervailing duty investigations to interested parties who are parties to the proceeding and subject to the APO.  19 U.S.C. § 1677f(c)(1).  Likewise, the Commission's regulations set out in detail the procedures and conditions for "limited disclosure of certain confidential business information under protective order."  *See* 19 C.F.R § 206.17.  Indeed, the *FRC I and FRC II* APOs themselves, which many of Plaintiffs' counsel signed, specifies when and how such information will be disclosed.

Moreover, all of the Plaintiffs submitted their BPI to the Commission during *FRC I*, knowing full well that Attorney was a signatory to the APO and would therefore be granted access to that BPI.  In fact, Plaintiffs presumably served their confidential questionnaire responses, which contained their BPI, upon the Attorney, pursuant to the requirements of the Commission's Rules.  19 C.F.R. § 206.17(f)(1).  Yet, Plaintiffs failed to object, and the Attorney and his Firm remained on the *FRC I* APO throughout the entire investigations, notwithstanding Amsted's early withdrawal as petitioner in *FRC I* and Plaintiff's knowledge of Attorney's theory of the case in those prior proceedings regarding Amsted's shift in production to Mexico and importation of freight rail couplers, Pl. Motion at 7.  And Plaintiffs' emphasis on the fact that "M&T is ARC's industry competitor," Compl. § 47, was just as true in *FRC I*.  Plaintiffs' delay is inexcusable and their due process claim should be barred.  *See Pepper v. United States*, 794 F.2d 1571 (Fed. Cir. 1986) (barring plaintiff's claim based on the affirmative defense of laches).

In addition, with respect to the current investigations, the Commission provided sufficient notice to all parties that Attorney and his Firm were included on the APO service list, which was issued prior to the first scheduled APO release in *FRC II*.  *See* Exhibit 10, EDIS Doc. 782251 (*FRC II* APO).  Plaintiffs had an opportunity to be heard through their submissions with the Commission, voicing their objection over the release of such information to Attorney and Firm,

and the Commission carefully considered those claims in rendering its decisions.  Within this

context, Plaintiffs cannot satisfy the requirements to establish a violation of their procedural due

process.

### III.    Plaintiffs Have Failed to Demonstrate Immediate, Irreparable Harm Before a Decision Can be Rendered

Turning to the irreparable harm prong, a plaintiff seeking an injunction bears an

"extremely heavy burden" to establish irreparable injury.  *Shandong Huarong Gen'l Grp. v.*

*United States*, 122 F. Supp. 2d 143, 146 (Ct. Int'l Trade 2000).  To satisfy this standard,

plaintiffs must offer more than "speculative" evidence; they must demonstrate that they face an

"immediate and viable" threat of irreparable harm.  *Otter Prods., LLC v. United States*, 37 F.

Supp. 3d 1306, 1315 (Ct. Int'l Trade 2014) (quoting *Kwo Lee, Inc. v. United States*, 24 F. Supp.

3d 1322, 1326 (Ct. Int'l Trade 2014)); *Sumecht*, 331 F. Supp. 3d at 1412 (citing *Zenith Radio*

*Corp. v. United States*, 710 F.2d 806, 809 (Fed. Cir. 1983)).  As the Federal Circuit explained in

*Zenith*: "A preliminary injunction will not issue simply to prevent a mere possibility of injury,

even where prospective injury is great.  A presently existing actual threat must be shown."

*Zenith*, 710 F.2d at 809 (citing *S.J. Stile Assoc. v. Snyder*, 646 F.2d 522, 525 (C.C.P.A. 1981)).

And, as *Otter* recognized, "{t}he threat of irreparable harm must be 'demonstrated by probative

evidence,'" and "'cannot be determined by surmise.'" 37 F. Supp. 3d at 1315 (quoting *Am. Inst.*

*for Imported Steel Inc. v. United States,* 600 F. Supp. 204, 209 (Ct. Int'l Trade 1984) and *Elkem*

*Metals Co. v. United States,* 135 F. Supp. 2d 1324, 1331 (Ct. Int'l Trade 2001)). Thus, "{t}he

court must deny a preliminary injunction where the plaintiff fails to present evidence that the

alleged injuries are likely to occur." *Otter*, 37 F. Supp. 3d at 1315.

Plaintiffs fail to meet their "extremely heavy burden" to establish irreparable injury.  In

their motion, Plaintiffs assert that they will suffer immediate irreparable harm, but fail to provide

any probative evidence to support their contention.  Instead, Plaintiffs simply recite language

from three Court decisions regarding "inadvertent disclosure of business proprietary

information," "revelation of a trade secret," and "unfair advantage."  They do so without

expounding on how these prior cases demonstrate threat of irreparable harm specifically to

Plaintiffs in this case.  Pl. Motion at 19 (quoting *Metallverken Nederland B.V. v. United States*,

13 C.I.T. 417, 418 (1989), *Hyundai Pipe*, 11 C.I.T. at 243, and *Makita Corp. v. United States*,

819 F. Supp. 1099, 1108 (1993)).  These cases, in fact, are distinguishable.

As discussed in detail above, unlike in *Hyundai Pipe*, in which Commerce had not yet

promulgated procedures for resolving APO breaches and there had been a long delay in initiating

the review of the counsel's APO breach, 11 C.I.T. at 243, the Commission in this case has acted

quickly and in accordance with written regulations and procedures that are currently in place for

administering APOs.  *See* Exhibit 9, Commission's Administrative Protective Order Handbook

at 12 (Jan. 2022).

And in *Metallverken*, the Court considered whether attorneys could be granted access to

confidential information without formally signing a protective order.  13 C.I.T. 417.  It was

within this context that the Court explained that antidumping and countervailing duty actions

require information be accorded confidential status because even inadvertent disclosure of BPI

"can" be damaging and irreparable.  The Court nonetheless recognized that release of BPI to

attorneys under a protective order provided sufficient deterrence against disclosure because of

the associated potential sanctions.  *See id.* at 418-419.  Here, unlike the non-signatory attorneys

at issue in *Metallverken*, the Attorney and his Firm are operating under an APO.  *See* Exhibit 10,

EDIS Doc. 782251 (*FRC II* APO).  Whether it be Attorney and his Firm or other counsel, there

is no irreparable harm in releasing BPI to attorneys under the APO, allowing for effective

representation while at the same time subjecting them to sanctions and other disciplinary action in the event of a breach.

Finally, *Makita* is also distinguishable in many ways.  This case involved an attorney that had represented plaintiff before the Commission in a section 1337 proceeding, and later, its adversary, before Commerce in an antidumping investigation.  819 F. Supp. 1099.  The Court found that the attorney's "participation in the {Commerce} investigations…would be constricted by the prior {Commission} section 1337 protective order," which would result in the attorney "being unable to give his complete best efforts" in the later Commerce proceeding.  *Id*. at 1106-1107.  Unlike the attorney in *Makita*, the Attorney here has represented the same client – a coalition consisting of domestic producer(s) and union workers – across the prior investigations, *FRC I*, as well as the current investigations, *FRC II*, and there is no question regarding whether the Attorney's overlapping work is tenable without additional precautions.

This matter also differs from the conflict-of-interest issue presented in *Makita* in that Amsted is a domestic producer and U.S. importer that withdrew as a petitioner one week after the petitions were filed in the prior investigations and hired new counsel to replace the Attorney because its interests were different from that of petitioner.  Pl. Motion at 7 (The theory of a shift in domestic production to Mexico was one proposed by the Attorney in *FRC I* and which was opposed by Amsted).  Yet, Amsted did not object to the Attorney's and his Firm's access to the APO throughout the remainder of the preliminary and final phases of those prior investigations.  Pl. Motion at 2-6.  Plaintiffs claim that the conflict itself pertains to the accumulated information gained by Attorney and his firm in *FRC I* in filing petitions in *FRC II*.  If that were true, however, Plaintiffs fail to explain how there would be immediate irreparable harm in releasing information in *FRC II,* when the conflict of interest pertains to information gained during *FRC I.*

Moreover, even to the extent Plaintiffs rely on some inherent harm to a former client emanating from an alleged client conflict, that principle would not apply to any Plaintiffs other than Amsted.  Plaintiffs Strato, Wabtec, and TTX had no prior attorney-client relationship with the Attorney under which they could assert any plausible claim of irreparable harm under *Makita*.

In any event, Plaintiffs themselves undermine their irreparable harm stance in light of their own statements that the current investigation is a "substantially related matter" based on the "same theory of the case" and is a "reprise of the Predecessor Investigation," covering the same product and players and overlapping with respect to their time periods with *much of the same BPI* from *FRC I* being the focus in *FRC II. See id.* at 16-17.  Consequently, any release of BPI to the Attorney and his Firm would overlap in many respects with the information, knowledge, and expertise gained without any objection by the Attorney and his Firm in *FRC I.*

## IV.   The Balance of Hardships and Public Interest Weigh in Favor of Denial

Finally, even if Plaintiffs could somehow establish irreparable harm and show that they are likely to succeed on the merits, that showing may still be "outweighed" by the balance of equities and the public interest, *Winter*, 555 U.S. at 23.  These factors provide another independent reason why emergency injunctive relief should be denied.

The Supreme Court's decision in *Winter* illustrates why.  There, the lower courts entered a preliminary injunction after holding that the plaintiffs were likely to succeed on the merits in challenging the Navy's use of certain sonar technology in training exercises and that they were suffering irreparable injury. 555 U.S. at 17-20, 23-24.  The Supreme Court reversed, concluding that, even if petitioners were likely to succeed on the merits and had shown irreparable harm, the public interest and balance of equities weighed decisively against injunctive relief.  *See id*. at 23-

31. As the Court explained, "{a}n injunction is a matter of equitable discretion; it does not follow from success on the merits as a matter of course." *Id*. at 32.

Independently of the merits, "the balance of equities and consideration of the public interest . . . are pertinent in assessing the propriety of any injunctive relief." *Id*. Applying that principle, the Court declined to "address the lower courts' holding" because it determined that, "even if plaintiffs have shown irreparable injury from the Navy's training exercises, any such injury is outweighed by the public interest and the Navy's interest in effective, realistic training of its sailors." *Id.* at 23-24. "A proper consideration of these factors alone," the Court held, "requires denial of the requested injunctive relief." *Id.* at 23; *accord, e.g.*, *Weinberg v. Romero-Barcelo*, 456 U.S. 305, 313 (1992) (courts are "not mechanically obligated to grant an injunction for every violation of law," and evaluating "commonplace considerations" beyond the merits is "a practice with a background of several hundred years of history" (citation omitted)).

Plaintiffs' bald assertion of irreparable harm here is far outweighed by the public interest in ensuring that the Commission's investigations are conducted fairly and efficiently. Plaintiffs had full knowledge of the Attorney's representation in *FRC I* and his involvement in the filing of the petitions in *FRC II* on September 28, 2022. However, rather than acting expeditiously in these fast-paced preliminary investigations, Plaintiffs waited over two weeks to contact the Commission regarding the Attorney's potential breach. They then filed this instant action the evening of Friday, October 14, 2022, only days before the scheduled APO release the following Monday, October 17, 2022. The timing of Plaintiffs' Complaint and TRO motion was not only unfair to the Attorney and Firm, stripping them of their due process rights before action was taken against them, but it has deprived petitioner from effective assistance of counsel. Indeed, the Staff conference in *FRC II* proceeded on Wednesday, October 19, 2022 without the Attorney having access to Plaintiffs'

24

BPI pursuant to the Court's TRO order.  Nor will the Attorney have access to such information in preparing petitioner's post-conference brief, which is required to be filed on Monday, October 24, 2022.  Plaintiffs' delay in filing this case belies any urgent need for speedy and extraordinary action.

## **CONCLUSION**

For these reasons, we respectfully request that the Court deny Plaintiffs' request for a preliminary injunction.

Respectfully submitted,

/s/ ANDREA C. CASSON
Andrea C. Casson
Assistant General Counsel for Litigation
Andrea.Casson@usitc.gov
Telephone: (202) 205-3105

/s/ JANE C. DEMPSEY
Jane C. Dempsey
David A.J. Goldfine
Attorney-Advisors
Office of the General Counsel
U.S. International Trade Commission
500 E Street, SW
Washington, DC 20436
Jane. Dempsey@usitc.gov
Telephone: (202) 205-3142
David.Goldfine@usitc.gov
Telephone: (202) 205-5452
Facsimile:  (202) 205-3111

*Attorneys for Defendant*

Dated: October 21, 2022

## CERTIFICATE OF COMPLIANCE

Pursuant to Chambers Procedures 2(B)(1) and (2), I hereby certify that the attached

**DEFENDANT'S RESPONSE TO PLAINTIFFS' MOTION FOR A PRELIMINARY**

**INJUNCTION** contains 8,513 words, according to the word-count function of the word

processing system used to prepare this brief (Microsoft Office 365 ProPlus).

Date:  October 21, 2022

/s/ JANE C. DEMPSEY
Jane C. Dempsey
Office of the General Counsel
U.S. International Trade Commission
500 E Street, SW
Washington, DC 20436
Jane. Dempsey@usitc.gov
Telephone: (202) 205-3142