## UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| AMSTED RAIL COMPANY, INC., ASF-K DE MEXICO S. DE R.L. DE C.V., STRATO, INC., WABTEC CORP., and TTX COMPANY, | |
| Plaintiffs, | |
| v. | Before: Judge Gary S. Katzmann Case No. 22-00307 |
| UNITED STATES INTERNATIONAL TRADE COMMISSION and ACTING SECRETARY KATHERINE M. HINER, in her official capacity, | |
| Defendants, | |
| and | |
| COALITION OF FREIGHT RAIL PRODUCERS, | |
| Defendant-Intervenor. | |

## REPLY IN SUPPORT OF PLAINTIFFS' FIRST MOTION FOR PRELIMINARY INJUNCTION

## TABLE OF CONTENTS

I.      INTRODUCTION ..................................................................................................1

II.     ARGUMENT .......................................................................................................2

        A.      Plaintiffs Are Likely To Succeed On The Merits Of Their BPI Claims.................2

                1.      The Court has jurisdiction over Plaintiffs' claims ......................................2

                2.      The Commission's decision to release Plaintiffs' BPI is
                        arbitrary, capricious, and an abuse of discretion...........................................6

                        a.      The Commission failed to reasonably explain its
                                decision to release the BPI without investigating the
                                alleged APO violation...................................................................7

                        b.      The Commission failed to reasonably explain its
                                decision to release the BPI without determining whether
                                the Attorney and the Firm violated ethical rules............................9

                        c.      The Commission failed to follow its own rules and
                                precedent ....................................................................................11

                3.      The Court should follow *Hyundai Pipe* .......................................................13

                4.      The Commission's decision to release Plaintiffs' BPI also
                        denies Plaintiffs a meaningful opportunity to be heard ............................14

        B.      Without The Requested Relief, Plaintiffs Will Suffer Immediate
                Irreparable Harm .......................................................................................15

        C.      The Balance Of Hardships And Public Interest Favors Plaintiffs .........................18

        D.      The Commission's Motion To Dismiss Has Been Rendered Moot.....................19

III.    CONCLUSION....................................................................................................20

## TABLE OF AUTHORITIES

**Cases**                                                                                                              **Pages**

*Armstrong v. Manzo*,
    380 U.S. 545 (1965) ...................................................................................14

*Aspects Furniture International, Inc. v. United States*,
    469 F. Supp. 3d 1359 (C.I.T. 2020) ...................................................20

*Bennett v. Spear*,
    520 U.S. 154 (1997) .....................................................................3

*Confederacion de Asociaciones Agricolas del Estado de Sinaloa, A.C.
    v. United States*, 32 F.4th 1130 (Fed. Cir. 2022)...................................4

*Cord v. Smith*,
    338 F.2d 516 (9th Cir. 1959).........................................................5, 6

*Cleveland Board of Education v. Loudermill*,
    470 U.S. 532 (1985) ...................................................................14

*Department of Commerce v. New York*,
    139 S. Ct. 2551 (2019) ..................................................................6

*Department of Homeland Security v. Regents of the University of California*,
    140 S. Ct. 1891 (2020) ..................................................................9

*Dofasco Inc. v. United States*,
    28 C.I.T. 263, 326 F. Supp. 2d 1340 (C.I.T. 2004) .................................5

*FCC v. Prometheus Radio Project*,
    141 S. Ct. 1150 (2021) ..................................................................6

*Genuine Parts Co. v. EPA*,
    890 F.3d 304 (D.C. Cir. 2018) ........................................................8

*Gerdau Ameristeel Corp. v. United States*,
    519 F.3d 1336 (Fed. Cir. 2008) .......................................................4

*Goldsmith v. United States Board of Tax Appeals*,
    270 U.S. 117 (1926) ...................................................................10

*Herman v. Acheson*,
    108 F. Supp. 723 (D.D.C. 1952) .....................................................11

*Herman v. Dulles*,
    205 F.2d 715 (D.C. Cir. 1953) .......................................................11

*Hyundai Pipe Co. v. U.S. Department of Commerce,*
  11 C.I.T. 238 (1987) ................................................................ *passim*

*Local 23, American Federation of Musicians v. NLRB,*
  12 F.4th 778 (D.C. Cir. 2021) ........................................................ 7

*Makita Corp. v. United States,*
  17 C.I.T. 240, 819 F. Supp. 1099 (1993) .................................... 4, 5, 6

*Mine Reclamation Corp. v. FERC,*
  30 F.3d 1519 (D.C. Cir. 1994) ............................................. 7, 11, 13

*Motor Vehicle Manufacturers Association of United States*
  *v. State Farm Mutual Automobile Insurance Co.,* 463 U.S. 29 (1983) ........... 6, 9

*Reliance Electric Co. v. Consumer Product Safety Commission,*
  924 F.2d 274 (D.C. Cir. 1991) ....................................................... 3

*SEC v. Chenery Corp.,*
  332 U.S. 194 (1947) ............................................................... 3, 7

*Shakeproof Industrial Products Division of Illinois Tool Works, Inc.*
  *v. United States,* 104 F.3d 1309 (Fed. Cir. 1997) ................................ 6

*SNR Roulements v. United States,*
  13 C.I.T. 1, 704 F. Supp. 1103 (1989) ............................................ 4

*Snyder v. McDonough,*
  1 F.4th 996 (Fed. Cir. 2021) ...................................................... 6

*In re Vivint, Inc.,*
  14 F.4th 1342 (Fed. Cir. 2021) ............................................... 10, 13

*VoestAlpine USA Corp. v. United States,*
  578 F. Supp. 3d 1263 (C.I.T. 2022) .............................................. 20

*Winter v. Natural Resources Defense Council, Inc.,*
  555 U.S. 7 (2008) ................................................................ 19

*Yablonski v. United Mine Workers of America,*
  454 F.2d 1036 (D.C. Cir. 1971) ................................................. 5, 6

**Agency Decisions**

*Certain Electronic Imaging Devices,*
  USITC Inv. No. 337-TA-726, Order No. 6,
  2010 WL 4786589 (Sept. 1, 2010) ............................................... 10

*Certain Laser Abraded Denim Garments*,
  USITC Inv. No. 337-TA-930, Commission Op.,
  2016 WL 11603662 (May 16, 2016) ................................................................10

*Certain Network Interface Cards & Access Points*,
  USITC Inv. No. 337-TA-455, Commission Op.,
  2001 WL 1646394 (Dec. 18, 2001) ..................................................................10

*Certain Personal Data & Mobile Communications Devices
  & Related Software*, USITC Inv. No. 337-TA-710,
  Order No. 10, 2010 WL 2915587 (June 10, 2010) ...........................................10

**Statutes and Rules**

19 U.S.C. § 1671b ...............................................................................................18

19 U.S.C. § 1677f ........................................................................................13, 14

28 U.S.C. § 1361 ..................................................................................................6

28 U.S.C. § 1581 ..................................................................................................4

28 U.S.C. § 1585 ..................................................................................................6

28 U.S.C. § 2643 ..................................................................................................6

19 C.F.R. § 201.15 ..........................................................................................9, 15

19 C.F.R. § 206.17 ..............................................................................................13

19 C.F.R. § 207.7 ...........................................................................7, 11, 13, 14

C.I.T. R. 65 .........................................................................................................20

## I.    INTRODUCTION

Rather than address the serious ethical and administrative violations Plaintiffs have raised, the Commission has swept them under the rug. Just days after the Court entered its temporary restraining order, the Commission filed a declaration in this action tersely asserting that the evidence is "insufficient" to warrant undertaking an APO breach investigation, ECF No. 41-9, and issued a letter refusing to disqualify Petitioner's counsel from further participation in the Current Investigations, ECF No. 41-14.

It is plain what the Commission hopes to accomplish. It is rushing its decision-making process in an attempt to moot Plaintiffs' claims, rather than deliberating to reach reasoned decisions. Judicial review cannot be so easily thwarted. The Court can and should set aside the Commission's decision to release Plaintiffs' BPI and enjoin the Commission from releasing that BPI in the Current Investigations. That is precisely the relief requested in Plaintiffs' recently filed Amended Verified Complaint or, in the Alternative, Petition for Writ of Mandamus ("Am. Compl."), ECF No. 43.

The Commission's latest actions do not moot this case. They form and amplify the Commission's errors. Plaintiffs continue to state live claims on which they are likely to succeed because the Commission made a final decision to release their BPI after overruling their objections to disclosure. The Commission acted arbitrarily and capriciously by, among other things, deciding to release Plaintiffs' BPI questionnaire responses without conducting a Predecessor APO investigation or assessing the Attorney's ethical violation. In doing so, the Commission also acted arbitrarily and capriciously by disregarding its own regulations and administrative precedents.

The Commission says it retains "considerable" discretion over BPI releases. Plaintiffs agree. That discretion includes deciding whether, when, and to whom to release BPI. Plaintiffs

have shown that the Commission abused its discretion by acting in haste, just as the trade agency did in *Hyundai Pipe Co. v. U.S. Department of Commerce*, 11 C.I.T. 238 (1987). Certainly the statutory provision the Commission invokes does not demand haste. The Commission's hands, therefore, are not tied by the artificial deadlines it perceives.

The other requirements for interim relief continue to be met too. In its temporary restraining order, the Court correctly determined that if their BPI is released prematurely "Plaintiffs will incur irreparable harm," "the balance of hardships favors" interim relief, and such relief "is in the public interest." In the intervening time, nothing has changed. The Commission's see-no-evil approach notwithstanding, Plaintiffs will suffer the same irremediable injury the *Hyundai Pipe* plaintiff would have suffered—revelation of secrets to persons unqualified to receive them. To be sure, in the Predecessor Investigations, Petitioner's counsel possessed Plaintiffs' voluminous BPI and likely retains a general impression of its contents. But counsel certified the BPI's destruction before the new petition was filed in the Current Investigations. Petitioner wants the BPI released for the same reason Plaintiffs want it withheld—the BPI's exact data and other details are unknown to the Attorney and his Firm.

The relative hardships and public interest also continue to favor interim relief. The Commission itself has the BPI and is in a position to make its own preliminary determinations. The public, too, will be served by a preliminary injunction. Public perception of the Commission's care in handling BPI hangs in the balance.

## II.   ARGUMENT

### A.   Plaintiffs Are Likely To Succeed On The Merits Of Their BPI Claims.

#### 1.   The Court has jurisdiction over Plaintiffs' claims.

The Commission's drive-by jurisdictional arguments are meritless.

*First*, the Commission strangely claims that Plaintiffs "fail[ed] to exhaust their administrative remedies" by filing this lawsuit without first affording the Commission time to consider its claims. ECF No. 41 at 9. But Plaintiffs did exhaust their claims, which the Commission rejected. Am. Compl. ¶¶ 85, 102. Plaintiffs specifically objected to the disclosure of their BPI on the basis of the alleged APO breach and ethical violation. *Id*. ¶¶ 64-72, 84, 101. In deciding to release Plaintiffs' BPI, the Commission overruled those objections on the merits. *Id*. ¶¶ 73, 79-80. The Commission thus has no basis to raise an exhaustion defense. It squarely rejected Plaintiffs' objections. Nor does the Court have any basis to dismiss Plaintiffs' claims for procedural reasons the agency itself did not invoke. *See SEC v. Chenery Corp*., 332 U.S. 194, 196 (1947).

*Second*, the Commission's related suggestion that it has not taken "final agency action" is equally head scratching. ECF No. 41 at 9. Agency action is final if it "mark[s] the 'consummation' of the agency's decisionmaking process," and "the action must be one by which 'rights or obligations have been determined,' or from which 'legal consequences will flow.'" *Bennett v. Spear*, 520 U.S. 154, 177-78 (1997) (citations omitted). "Agency decisions to release information" are final agency actions subject to review under the APA. *Reliance Elec. Co. v. Consumer Prod. Safety Comm'n*, 924 F.2d 274, 277 (D.C. Cir. 1991). Despite claiming a lack of finality, the Commission acknowledges that it decided to share Plaintiffs' BPI with the Firm and squarely rejected all of Plaintiffs' objections to that decision. *See* ECF No. 41 at 6-7, 12-13, 17-18. Its decision to release Plaintiffs' BPI is obviously final because it marks the consummation of the Commission's decision-making process regarding the release, *see* Am. Compl. ¶¶ 73, 79, and it affects legal rights and obligations by giving the Firm the right to Plaintiffs' confidential information and imposing a duty on Plaintiffs to share it, *id*. ¶ 102. The release of BPI to attorneys

who may have breached their ethical obligations and violated the Predecessor APO unquestionably constitutes a concrete harm. *See Hyundai Pipe*, 11 C.I.T. at 243.

*Third*, there remains a "live controversy" regarding the Commission's decision to share Plaintiffs' BPI. *Gerdau Ameristeel Corp. v. United States*, 519 F.3d 1336, 1340 (Fed. Cir. 2008). The Commission argues that, because it "has now completed its review and made determination on Plaintiffs' disqualification and exclusion requests," Plaintiffs' claim is now moot. ECF No. 41 at 18. But a "case becomes moot and must be dismissed only when 'it is impossible for a court to grant any effectual relief whatever' to [the plaintiff] assuming it prevails.'" *Confederacion de Asociaciones Agricolas del Estado de Sinaloa, A.C. v. United States*, 32 F.4th 1130, 1139 (Fed. Cir. 2022) (quotation omitted). When Plaintiffs filed their original Complaint on October 14, the Commission had not yet ruled on Plaintiffs' objections to disclosure of their BPI. The Commission has since overruled Plaintiffs' objections. Plaintiffs have now filed an Amended Complaint challenging the validity of the Commission's final decisions. *See* Am. Compl. ¶¶ 81-123. This Court can grant effectual relief to Plaintiffs by setting aside the Commission's decision to release Plaintiffs' BPI and enjoining the Commission from releasing the BPI to the Firm. *See* Am. Compl. ¶ 107; *see also id.*, Prayer For Relief items 5-6. That relief would prevent Plaintiffs from suffering irreparable harm from the disclosure of their confidential information.

*Finally*, this Court has held that on numerous occasions it has jurisdiction under § 1581(i) to review decisions regarding the release of confidential information and conflicts of interest. *See, e.g.*, *Makita Corp. v. United States*, 17 C.I.T. 240, 819 F. Supp. 1099, & 1103-04 & n.6 (1993) (under § 1581(i), "[t]his is a forum which has jurisdiction over" matters "regarding actual or potential breaches of conflict of interest" in antidumping and countervailing duty investigations); *SNR Roulements v. United States*, 13 C.I.T. 1, 704 F. Supp. 1103, 1107 (1989) (where trade agency

"*allows* the release of confidential information under a protective order," "this Court's jurisdiction to review that action is based on 28 U.S.C. § 1581(i)") (emphasis in original); *Hyundai Pipe*, 11 C.I.T. at 240, 242 (although trade agency "has the responsibility to police its protective orders," "[n]evertheless, this court has jurisdiction" pursuant to 28 U.S.C. § 1581(i) to forbid BPI release). As Plaintiffs will develop in their opposition to the motion to dismiss, ECF No. 45, contrary to the Commission's view, Plaintiffs need "not challenge an underlying antidumping duty order" to properly invoke § 1581(i). *Dofasco Inc. v. United States*, 28 C.I.T. 263, 326 F. Supp. 2d 1340, 1345 (C.I.T. 2004). In *Dofasco*, the Court held that jurisdiction under § 1581(i) was proper because forcing the plaintiff to await the end of an allegedly illegal antidumping investigation and then seeking judicial review under a different subsection of § 1581 would offer a manifestly inadequate remedy. *Id.* ("[F]orcing Dofasco to wait until a final determination has been issued before it may challenge the lawfulness of the administrative review, would mean that Dofasco's opportunity for full relief—*i.e.*, freedom from participation in the administrative review—would be lost.").

"This Court has repeatedly found section 1581(i) jurisdiction in cases where" that which the plaintiff "seeks to prevent will have already occurred by the time relief under another provision of section 1581 is available, rendering such relief manifestly inadequate." *Id.* at 1346. A manifestly inadequate remedy is exactly what ARC and the other Plaintiffs will suffer here. If their BPI is wrongfully released, "any rights of a party injured by either advertent or inadvertent use of confidential information in violation of a protective order could not redress that particular, irreparable harm." *Hyundai Pipe*, 11 C.I.T. at 243. So, too, if the ethical violation is tolerated. "'Continued participation as an attorney, by one who is disqualified by conflict of interest from so doing, will bring about the very evil which the rule against his participation is designed to prevent, and a subsequent reversal based upon such participation cannot undo the damage that will have

been done as a result of such participation.'" *Yablonski v. United Mine Workers of Am.*, 454 F.2d 1036, 1039 (D.C. Cir. 1971) (quoting *Cord v. Smith*, 338 F.2d 516, 521-22 (9th Cir. 1959)); *see also Makita*, 819 F. Supp. at 1108 (with a conflicted attorney involved in the case, "it cannot be said with certainty that any taking of unfair advantage could be remedied *ex post facto*").[1]

Finally, there is no reason for this Court to doubt its jurisdiction under § 1581(i), but even if there were reason for doubt, then the Court plainly has jurisdiction to grant mandamus relief. *See* 28 U.S.C. §§ 1361, 1585 & 2643(c)(1); Am. Compl. ¶¶ 118-23.

### 1. The Commission's decision to release Plaintiffs' BPI is arbitrary, capricious, and an abuse of discretion.

The APA's arbitrary-and-capricious standard requires an agency to articulate "'a satisfactory explanation'" for any decision, "'including a rational connection between the facts found and the choice made.'" *Dep't of Commerce v. New York*, 139 S. Ct. 2551, 2569 (2019) (quoting *Motor Vehicle Mfrs. Ass'n of U.S. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)); *see also Snyder v. McDonough*, 1 F.4th 996, 1005 (Fed. Cir. 2021) (arbitrary-and-capricious standard "requires the agency's action to 'be reasonable and reasonably explained'") (quoting *FCC v. Prometheus Radio Project*, 141 S. Ct. 1150, 1158 (2021)). The Commission's

---

[1] The Commission cites to dicta from *Shakeproof Industrial Products Division of Illinois Tool Works, Inc. v. United States*, 104 F.3d 1309 (Fed. Cir. 1997), in which the court expressed "serious doubts" that interlocutory review of a disqualification issue was available under § 1581(i) because it was not convinced that post-decision review would be "manifestly inadequate." *Id.* at 1313. But, in that case, the appellant sought to disqualify an attorney's law firm based on the attorney's former employment at the Department of Commerce during a previous antidumping investigation. The attorney was involved neither in the original antidumping investigation nor in the antidumping investigation that was then currently under review. *Id.* at 1312. In those circumstances, post-decision review may not have been "manifestly inadequate" to provide relief. Here, by contrast, the Attorney was not only involved in the Predecessor Investigations but represented ARC. And, of course, the Attorney and his Firm are prosecuting the Current Investigations. Under these circumstances, there is a substantial risk that the Attorney and his Firm may use Plaintiffs' confidences and BPI to Plaintiffs' detriment, a risk that was not present in *Shakeproof*. The Attorney's continued participation will bring about the very evil the rule against his participation is designed to prevent. *See Yablonski*, 454 F.2d at 1039; *Cord*, 338 F.2d at 521-22; *Makita*, 819 F. Supp. at 1108.

decision to release Plaintiffs' BPI is arbitrary, capricious, and an abuse of discretion for three reasons. *See* Am. Compl. ¶¶ 103-06; *see also Hyundai Pipe*, 11 C.I.T. at 243.

<blockquote>

a.    **The Commission failed to reasonably explain its decision to release the BPI without investigating the alleged APO violation.**

</blockquote>

The Commission's entire explanation for releasing Plaintiffs' BPI without investigating the alleged APO violation is "that the evidence is insufficient to warrant institution of an APO breach at this time." ECF No. 41-9 ¶ 16. But the Commission's *ipse dixit* fails to explain why the evidence is insufficient to conduct even a minimal investigation. This failure to offer *any* explanation, let alone a satisfactory one, renders the Commission's decision to release Plaintiffs' BPI without investigating the alleged APO violation arbitrary and capricious. The "post hoc justification[s]" offered by the Commission's counsel in their litigation filings, moreover, cannot support the Commission's decision either. *Local 23, Am. Fed'n of Musicians v. NLRB*, 12 F.4th 778, 784 (D.C. Cir. 2021) (citing *Chenery*, 332 U.S. at 194).

On top of its paltry explanation, the Commission failed to follow its own regulations and procedures governing investigations of APO breaches. *See Mine Reclamation Corp. v. FERC*, 30 F.3d 1519, 1524 (D.C. Cir. 1994) ("It is a well-settled rule that an agency's failure to follow its own regulations is fatal to the deviant action.") (cleaned up). The Commission's regulations state that "[t]he Commission *shall* determine whether any person has violated an administrative protective order." 19 C.F.R. § 207.7(e)(1) (emphasis added). And its Administrative Protective Order Handbook states that the first step "for investigating alleged breaches of APOs" is "determin[ing] whether a breach has occurred." ECF No. 41-10 at 12. Here, the Commission did not even take that preliminary step to determine whether a breach in fact occurred. At a minimum, the Commission should have simply asked the Firm whether it had accessed BPI from the previous investigation after the deadline for filing an appeal had passed or to advance the Current

Investigations. The Commission's decision to bury its head in the sand—rather than investigate—in the face of serious allegations was the antithesis of reasoned decision-making. *See Genuine Parts Co. v. EPA*, 890 F.3d 304, 341, 346 (D.C. Cir. 2018) (explaining that it is arbitrary and capricious for an agency not "to address evidence that runs counter to the agency's decision" because "an agency cannot ignore evidence that undercuts its judgment").

Contrary to the Commission's *post hoc* assertion, Plaintiffs have offered "specific information" that suggests the Attorney and his Firm abused the Predecessor APO by using Plaintiffs' BPI to launch the Current Investigations. ECF No. 41 at 16. After the Commission had already issued its determinations in the Predecessor Investigations, the Firm added nine attorneys and non-attorneys to the Predecessor APO, kept that full group on the Predecessor APO for nearly seven full weeks after the deadline for filing a summons passed without action, then certified destruction of the record from the Predecessor Investigations and two days later filed the petition in the Current Investigations. Am. Compl. ¶¶ 70-71. Once the new petition was filed, it should have prompted alarm bells. Yet the Commission failed to address the irregularity of the Firm's actions or the plausible inference that the Firm misused BPI and breached the Predecessor APO.

Moreover, the Commission does not attempt to explain its apathetic position that it will not investigate allegations based on "inference." ECF No. 41 at 17. Parties rarely have direct access to the inner workings of opposing parties' law firms, so the Commission's position will hamper its mandate to administer APOs and investigate alleged breaches. Indeed, unlike simple cases in which attorneys self-report an inadvertent disclosure, serious breaches of APOs—such as misuse of BPI for an unauthorized purpose or disclosure of BPI to a client who relies on it in the marketplace—are likely to rest on "inference." Absent a whistleblower, the *only* evidence may be circumstantial. If the Commission is willing to investigate the easy cases, where negligence is self-

reported and definitive proof is presented on a platter, but refuses even to ask questions in cases where more serious, intentional violations are alleged, it will be more difficult for counsel to assure clients that their BPI will be protected because the Commission takes enforcement seriously. Such a stance defies any concept of "investigation." It also threatens to result in less cooperation with the Commission's data requests, undermining the aim of Congress in authorizing the APO system, which is to ensure that the Commission has a robust factual record for its injury determinations. The Commission's explanation utterly fails to account for these issues. *See Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 140 S. Ct. 1891, 1913 (2020) (decision is arbitrary and capricious if it "'fail[s] to consider [an] important aspect of the problem'") (quoting *Motor Vehicle Mfrs.*, 463 U.S. at 43).

> **b.    The Commission failed to reasonably explain its decision to release the BPI without determining whether the Attorney and the Firm violated ethical rules.**[2]

In addition to ignoring the alleged APO violation, the Commission refused to consider the ethical charges against the Attorney and the Firm on the basis that it has no authority to adjudicate ethical violations. The Commission did not explain why violations of the rules of professional conduct cannot amount to "good cause" for disqualification of an attorney under its own rules. *See* 19 C.F.R. § 201.15(a). If violating the rules of professional responsibility cannot rise to the level of "good cause" for disqualification, it is hard to imagine what type of attorney misconduct would fall within the Commission's disqualification rule. The rules of professional responsibility set the baseline—the bare minimum—expected of practicing attorneys.

---

[2] Wabtec does not join this portion of the reply (or any other portion of the reply) to the extent that the reply asserts a conflict of interest or that a disqualification would be appropriate for any proven violation of the Rules of Professional Responsibility, which is others' claim to prove.

The Commission's own practice and precedent obliterates the agency's decision here. In fact, the Commission regularly "look[s] to the ABA Model Rules of Professional Conduct for guidance in determining whether to disqualify counsel." *Certain Electronic Imaging Devices*, USITC Inv. No. 337-TA-726, Order No. 6 at 3, 2010 WL 4786589 (Sept. 1, 2010). In adjudicative proceedings under section 337 of the Tariff Act, for example, the Commission's administrative law judges entertain and rule on motions to disqualify lawyers and law firms, including ruling on motions alleging violations of the ABA Model Rules, invoking 19 C.F.R. § 201.15(a) as the legal basis for their disqualification authority. *See, e.g.*, *id.* (disqualifying law firm based on violation of Rule 1.7); *Certain Personal Data & Mobile Commc'ns Devices & Related Software*, USITC Inv. No. 337-TA-710, Order No. 10, 2010 WL 2915587 (June 10, 2010) (disqualifying law firm based on violation of Rule 1.9). The Commission itself has endorsed this approach. *See, e.g.*, *Certain Laser Abraded Denim Garments*, USITC Inv. No. 337-TA-930, Commission Op., 2016 WL 11603662 (May 16, 2016) (stating the Commission "could initiate further proceedings to resolve the disqualification issue," which implicated Rules 1.0 and 1.7, but electing not to do so because the issue was moot); *Certain Network Interface Cards & Access Points*, USITC Inv. No. 337-TA-455, Commission Op., 2001 WL 1646394 (Dec. 18, 2001) (affirming denial of law firm disqualification based on application of Rule 1.7).

The Commission failed to justify its inconsistent approach here. *In re Vivint, Inc.*, 14 F.4th 1342, 1352 (Fed. Cir. 2021) ("Agency action that departs from established precedent without a reasoned explanation is arbitrary and capricious.") (cleaned up). There is no rational reason for the Commission to interpret and enforce the rules of professional responsibility in the context of adjudicative proceedings under section 337 but not in the context of quasi-adjudicative antidumping and countervailing duty investigations. *See Goldsmith v. U.S. Bd. of Tax Appeals*,

10

270 U.S. 117, 121 (1926) (in light of "the quasi judicial nature of its duties," an agency may require representatives to "be persons whose qualities as lawyers or accountants will secure proper service to their clients and to help the [agency] in the discharge of its important duties"); *Herman v. Acheson*, 108 F. Supp. 723, 725 (D.D.C. 1952), *aff'd sub nom. Herman v. Dulles*, 205 F.2d 715 (D.C. Cir. 1953) (agency may enforce standards of professional conduct in quasi-judicial administrative proceedings). The Commission's failure to explain its decision to disclose Plaintiffs' BPI without assessing whether the Attorney and Firm violated their ethical obligations is arbitrary and capricious.

### c.   The Commission failed to follow its own rules and precedent.

In its haste to dispense with Plaintiffs' objections, the Commission also failed to apply 19 C.F.R. § 207.7(a)(3)(ii) and follow its own administrative precedent that would have barred the Firm from accessing Plaintiffs' BPI. *See Mine Reclamation*, 30 F.3d at 1524; *Vivint*, 14 F.4th at 1352. These failures highlight the arbitrary and capricious nature of the Commission's rush to release Plaintiffs' BPI.

The Commission's APO-related regulations provide that "an authorized applicant must not be involved in competitive decisionmaking for an interested party which is a party to the investigation." 19 C.F.R. § 207.7(a)(3)(ii). "Involvement in 'competitive decisionmaking' includes past, present, or likely future activities, associations, and relationships with an interested party which is a party to the investigation that involve the prospective authorized applicant's advice or participation in any of such party's decisions made in light of similar or corresponding information about a competitor (pricing, product design, etc.)." *Id.*

In its administrative precedent, the Commission has interpreted "competitive decisionmaking" in § 207.7(a)(3)(ii) to mean assisting with trade investigations. For example, in *Common Alloy Aluminum Sheet from China*, USITC Inv. Nos. 701-TA-591 and 731-TA-1399,

citing that regulation, the Commission precluded an economic consultant from accessing BPI under an APO based on the consultant's prior work for a trade association in earlier evaluation of possible antidumping and countervailing duty investigations. In later investigations, the association alleged that, during the consultant's engagement, it had access to BPI from the association's member companies, so that it would amount to a conflict of interest if the consultant were to represent an adverse party in the later investigations. Notably, that BPI was not released to the consultant under APO, nor was there any alleged APO violation. Nonetheless, the Commission stated in a letter dated April 27, 2018,[3] that the consultant's prior work "involved the confidential business information pertaining to company-specific trade and financial information and analysis for an interested parties decisionmaking with respect to unfair trade cases on certain aluminum products, including the aluminum sheet at issue here." *Id.* The consultant's "present or likely future activities" in the later investigations "likely would involve advice or participation in such party's decisions on this unfair trade matter made in light of similar or corresponding information previously made to a competitor." *Id.* On that basis, the consultant was precluded from subscribing to the APO in the later investigations on behalf of a party adverse to the association that he previously assisted.

The Commission should have similarly decided that the Attorney's, the Accountant's, and the Firm's access to Plaintiffs' BPI under the Current APO is precluded by their prior work in the Predecessor Investigations. Petitioner's counsel was and is involved in "competitive decisionmaking" within the meaning of the Commission's precedent interpreting its regulations because they assisted ARC in the Predecessor Investigations before the Commission. *See* Am. Compl. ¶¶ 20-35. The Commission's failure to apply 19 C.F.R. § 207.7(a)(3)(ii) and follow its

---

[3] A copy of the Commission's April 27, 2018 letter is attached hereto as Exhibit A. This public document was retrieved from the Commission's online Electronic Document Information System (EDIS).

own precedent in barring the Firm from accessing Plaintiffs' BPI is thus arbitrary and capricious. *See Mine Reclamation*, 30 F.3d at 1524; *In re Vivint, Inc.*, 14 F.4th at 1352.

### 3.    The Court should follow *Hyundai Pipe*.

In light of the Commission's arbitrary and capricious decision to disclose Plaintiffs' BPI, the Court should follow *Hyundai Pipe* by entering a preliminary injunction preventing the Commission from disclosing Plaintiffs' BPI given the ethical "cloud" that hangs over the Firm. *See* 11 C.I.T. at 243. As in *Hyundai Pipe*, the Commission decided to release BPI to attorneys who are alleged to have violated an APO, and made that decision without investigating an alleged APO breach. The Commission's argument that its decision to release BPI is reasonable because "all that the Commission had before it were mere allegations of an APO breach and ethical violation," ECF No. 41 at 16, was squarely rejected in *Hyundai Pipe*.

The Commission therefore urges the Court ignore *Hyundai Pipe* because the Commission now has a "statute, rules, and procedures in place in administering APOs." *Id.* at 14. That may be true, but the Commission arbitrarily and capriciously failed to follow its own rules and procedures here. Although the Commission argues that 19 U.S.C. § 1677f(c)(1)(A) "requires the Commission to release all BPI obtained during its antidumping and countervailing duty investigations to interested parties who are parties to the proceeding and subject to the APO," ECF No. 41 at 18-19, nothing in that statute requires release to unqualified persons, *see id.* § 1677f(c)(1)(B), either at a particular time or at all, *see id.* § 1677f(c)(1)(C) (within a specified timeframe, the Commission "shall determine *whether* to make information available") (emphasis added). The Commission's own regulations, 19 C.F.R. § 207.7,[4] moreover, expressly authorize the Commission to withhold

---

[4] Curiously, in referencing its own regulations, the Commission cites to 19 C.F.R. § 206.17. *See* ECF No. 41 at 14, 19. As its subpart's title indicates, that provision concerns "Investigations Relating to Global Safeguard Actions." The provision has nothing to do with BPI releases in antidumping and countervailing duty investigations, which are instead governed by 19 C.F.R. § 207.7.

BPI if there is an APO violation. One such sanction for breach of an APO is the "denial of further access to business proprietary information in the current or any future investigations before the Commission." *Id.* § 207.7(d)(4). That sanction logically presupposes that the Commission may investigate an alleged APO violation before releasing BPI. The Commission may also disqualify or otherwise sanction an attorney for "good cause." *Id.* § 201.15(a). Although the Commission baldly asserts it "followed this process" in reviewing Plaintiffs' claims, ECF No. 41 at 14, the Commission failed to do so because it refused to investigate the alleged APO breach, refused to consider the ethical charges against the Firm, and refused to apply its own rules and precedent preventing BPI disclosure to a representative previously involved in competitive decisionmaking.

Nor does the statute compel the Commission to release BPI to the Firm. The Commission claims that Congress intended "that parties in Commission investigations would mandatorily receive all information under an APO." *Id.* at 14-15 (citing § 1677f(c)(1)(A)). But, as the Commission admits, there are "exceptions" to the general rule of disclosure, *id.* at 14. That understates things. The Commission's blinkered reliance on § 1677f(c)(1)(A) ignores that, in neighboring statutory provisions, § 1677f(c)(1)(B) and (C), Congress gave the Commission express authority to decide whether to release BPI, when BPI should be released, and who should receive it. The Commission cannot hide behind rules and procedures that the agency arbitrarily and capriciously ignored in its rush to share Plaintiffs' BPI with the Firm.

### 4. The Commission's decision to release Plaintiffs' BPI also denies Plaintiffs a meaningful opportunity to be heard.

For many of the same reasons, Plaintiffs also are likely to succeed on their due process claim. "The Due Process Clause requires provision of a hearing 'at a meaningful time.'" *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 547 (1985) (quoting *Armstrong v. Manzo*, 380 U.S. 545,

552 (1965)). To state the obvious, any meaningful consideration of whether BPI should be released to persons unqualified to receive it cannot occur *after* the BPI is released to the unqualified persons.

The Commission argues that Plaintiffs did not object to release of their BPI in the Predecessor Investigations, and so "their due process claim should be barred." ECF No. 41 at 19. That makes no sense. Of course Plaintiffs did not object during the Predecessor Investigations— throughout those earlier proceedings, there was nothing to which to object. The bases for Plaintiffs' objections first appeared when the petition in the Current Investigations was filed, on September 28, 2022. That is when the Firm's apparent abuse of their BPI access in the Predecessor Investigations for the purpose of launching the Current Investigations became knowable. Likewise, with respect to the ethical violation, neither ARC nor any other Plaintiff could have objected to a "substantially related" matter that did not then exist.

Plaintiffs are not soothsayers. They could not have known the Attorney would file a second round of antidumping and countervailing duty investigations apparently based on the confidential record from the Predecessor Investigations and targeting a former client in a related case until counsel actually did so. That is not a basis for barring the due process claim.

## B.    Without The Requested Relief, Plaintiffs Will Suffer Immediate Irreparable Harm.

Repeating history, the Commission makes the same arguments against irreparable harm rejected in *Hyundai Pipe*. The Commission says "that release of BPI to attorneys under a protective order provide[s] sufficient deterrence against disclosure because of the associated potential sanctions." *Id.* at 21. It also says that withholding Plaintiffs' BPI "has deprived petitioner from effective assistance of counsel." *Id.* at 24. In *Hyundai Pipe*, the trade agency likewise argued that the "accused attorneys" were "likely to take extreme precautions to protect the proprietary

information," the agency "has adequate sanctions to protect the information from disclosure," and "counsel have demonstrated need for access to the proprietary information." 11 C.I.T. at 241.

As the *Hyundai Pipe* court explained, all of this misses the point. "Whatever the degrees of truth of those arguments, they skirt the problem the plaintiffs face, namely, the sharing … of their commercial secrets in the interest of intelligent analysis and fair enforcement of the trade laws but without firm expectation that utmost efforts will be undertaken to safeguard this information." *Id.* "Clearly, the plaintiffs are faced with a threat of immediate irreparable harm. Not only is the revelation of a secret an irrevocable act, but this and other courts have concluded that any rights of a party injured by either advertent or inadvertent use of confidential information in violation of a protective order could not redress that particular, irreparable harm." *Id.* at 243.

The Commission struggles, unsuccessfully, to distinguish *Hyundai Pipe*. In that case, the Commission asserts, "Commerce had not yet promulgated procedures for resolving APO breaches and there had been a long delay in initiating the review of the counsel's APO breach." ECF No. 41 at 21. That is not quite true. *See* 11 C.I.T. at 240 (noting "there is some indication, though not clearly articulated," that the parties were "already intertwined in this new regime," the "Procedures for Imposing Sanctions for Violation of an Antidumping or Countervailing Duty Protective Order"). More important, the Commission fails to explain the relevance of "promulgated procedures" here. Procedures cannot aid Plaintiffs if they are flouted. Even if the Commission has purported to invoke its APO breach investigation procedures, it acted arbitrarily and capriciously in doing so, including by failing to faithfully apply the regulations and its own administrative precedent. And, although in *Hyundai Pipe* delay was part of the problem, timing is equally problematic here. Rather than delay wherein "caution has led Commerce to prolong its consideration of the alleged violations," *id.* at 243, here the problem is the Commission's *in*caution

16

and rush to judgment. Hasty consideration of the alleged violation is as bad as delayed consideration, perhaps worse.

The Commission makes the additional argument that "Plaintiffs fail to explain how there would be immediate irreparable harm in releasing information in [the Current Investigations], when the conflict of interest pertains to information gained during [the Predecessor Investigations]." ECF No. 41 at 22. Continuing, the Commission asserts that "any release of BPI to the Attorney and his Firm would overlap in many respects with the information, knowledge, and expertise gained" by the Attorney and his Firm in the Predecessor Investigations. *Id.* at 23. The Commission's arguments are incoherent. If, in fact, the Attorney and the Firm already have all "the information, knowledge, and expertise gained" from Plaintiffs' BPI in the Predecessor Investigations, then it is nonsensical to further argue—as the Commission nonetheless does—that withholding the BPI in the Current Investigations "has deprived petitioner from effective assistance of counsel." *Id.* at 24. Which is it: Petitioner needs the BPI or does not need the BPI?

Of course, there is no true conundrum. The issue is not painted black and white. The Attorney and his Firm do not have all the necessary "information" from Plaintiffs' BPI, which is why they requested access under the Current APO. The Attorney and the Firm likely recall general "knowledge" and "expertise" of FRC-related business trends but, without the granular data, that recollection only gets them so far. They certified the BPI's destruction before filing the petition in the Current Investigation. Releasing Plaintiffs' BPI now would thus do real harm to Plaintiffs, as the Commission all but admits in suggesting that Petitioner is worse off without the BPI.

The Commission next argues that, even if ARC and ASF-K would be irreparably harmed, Strato, Wabtec, and TTX cannot "assert any plausible claim of irreparable harm." *Id.* at 23. Wrong again. Absent relief, their confidential questionnaire responses and other BPI will be disclosed to

the Attorney and the Firm alongside the BPI of ARC and ASF-K notwithstanding the serious misconduct presented to the Commission. Plaintiffs have plausibly alleged that the Firm improperly used the BPI of *all* the respondents in the Predecessor Investigations, including Strato, Wabtec, and TTX, to launch the Current Investigations. All Plaintiffs thus face the threat of irreparable harm in the Current Investigations from the compelled disclosure of their confidential information to a party that is willing to misuse it. *Hyundai Pipe*, 11 C.I.T. at 243.

    **C.**    **The Balance Of Hardships And Public Interest Favors Plaintiffs.**

Finally, the Commission urges that the public interest lies "in ensuring that the Commission's investigations are conducted fairly and efficiently." ECF No. 41 at 24. Plaintiffs agree. *See Hyundai Pipe*, 11 C.I.T. at 243-44. The Commission's decisions, however, jettison fairness for efficiency. The Commission contends the Current Investigations must move at breakneck speed, without due consideration, either at the agency level or in this Court, of Plaintiffs' property rights in their BPI and right to a legal proceeding untainted by attorney misconduct. The *Hyundai Pipe* court, however, ruled that efficiency cannot trump fairness, finding that a trade agency "cannot act in haste to disclose the other side's secrets" to a petitioner's counsel in an antidumping investigation. *Id.* at 243. If there are "doubts about the mechanism" for protecting a party's rights—and here the doubts are indeed substantial—then the agency's "task becomes much more difficult, and the public interest suffers." *Id.* at 244.

The Commission cannot, and does not, point to any real hardship that *it* will suffer. The Commission itself has the BPI in question and can make its own preliminary determination "based on the information available to it at the time of the determination." 19 U.S.C. § 1671b(a)(1). "Indeed, grant of this relief will have the effect of leaving the matter squarely where it belongs—

in the hands of [the Commission], albeit preliminarily enjoined from extending plaintiffs' confidential data to the petitioners' counsel." *Hyundai Pipe*, 17 C.I.T. at 244.

Instead of complaining about hardship to its internal agency processes, the Commission complains that Plaintiffs' "TRO motion"—a motion the Court *granted*—"was not only unfair to the Attorney and Firm, stripping them of their due process rights before action was taken against them, but it has deprived petitioner from effective assistance of counsel." ECF No. 41 at 24. This line of reasoning is misguided, as the Court recognized in issuing the very order the Commission calls "unfair." An attorney operating under a disabling conflict of interest, having betrayed his former client and having potentially violated an APO, has no "due process rights" to receive BPI or to represent a current client against the former client in a substantially related matter. Determining the attorney's qualifications to represent the current client and receive an opposing party's BPI must logically precede allowing him to do so.

In this light, the Commission's reliance on *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7 (2008), is unhelpful. The Commission cites *Winter* for the unremarkable proposition that, even if a party demonstrates it is likely to succeed on the merits, a court may nonetheless decline to issue a preliminary injunction. *See* ECF No. 41 at 23-24. That may be true, but it is irrelevant here. Not only have Plaintiffs demonstrated a likelihood of succeeding on the merits and the imminence of irreparable harm, the balance of hardships and public interest also militate in favor of preliminary injunctive relief.

### D.      The Commission's Motion To Dismiss Has Been Rendered Moot.

On October 24, 2022, Plaintiffs filed their Amended Complaint, adding factual allegations, new claims, and a request (in the alternative) to treat the Amended Complaint as a petition for writ of mandamus. *See* ECF No. 43. Thereafter, the Commission filed a Motion to Dismiss targeting

the original Complaint and making no reference to the Amended Complaint or its new material. *See* ECF No. 45. On October 25, 2022, Plaintiffs' counsel asked the Commission's counsel to advise whether the Motion to Dismiss would be re-filed in light of the Amended Complaint. At the time of filing, the Commission's counsel had not responded to the inquiry.

Ordinarily, an amended complaint supersedes the original complaint, and a motion targeting the sufficiency of the original pleading is rendered moot. *VoestAlpine USA Corp. v. United States*, 578 F. Supp. 3d 1263, 1275 (C.I.T. 2022); *Aspects Furniture Int'l, Inc. v. United States*, 469 F. Supp. 3d 1359, 1362, 1366-67 (C.I.T. 2020). Because the Amended Complaint is not substantially identical to the original Complaint, Plaintiffs ask the Court to treat the Motion to Dismiss as having been rendered moot by the Amended Complaint.

## IV.    CONCLUSION

Consistent with *Hyundai Pipe*, to preserve the *status quo* until a final judgment is entered, the Court should preliminarily enjoin the Commission, its agencies, officers, employees, and agents, and others who are in active concert or participation with them, from releasing Plaintiffs' BPI to the Firm in the Current Investigations. At a minimum, the Court should extend the temporary restraining order for another 14 days, for good cause shown herein, to afford the Court sufficient time to rule on the pending motion for a preliminary injunction. *See* C.I.T. R. 65(b)(2).

Dated: October 26, 2022

Andrew T. Schutz
Ned H. Marshak
GRUNFELD, DESIDERIO, LEBOWITZ,
SILVERMAN & KLESTADT LLP
599 Lexington Avenue, 36th Floor
New York, NY 10022
(212) 557-4000

*Counsel for Plaintiff
Strato, Inc.*

Respectfully submitted,

/s/ Richard P. Ferrin
Douglas J. Heffner
Brian P. Perryman
Richard P. Ferrin
Carolyn Bethea Connolly
FAEGRE DRINKER
BIDDLE & REATH LLP
1500 K Street, NW, Suite 1100
Washington, DC 20005
(202) 230-5000

James M. Smith
Shara L. Aranoff
Sooan (Vivian) Choi
COVINGTON & BURLING LLP
One City Center
850 Tenth Street, NW
Washington, DC 20001
(202) 662-6000

*Counsel for Plaintiff*
*TTX Company*

*Counsel for Plaintiffs*
*Amsted Rail Company, Inc. and*
*ASF-K de Mexico S. de R.L. de C.V.*

David M. Morrell
JONES DAY
51 Louisiana Avenue, NW
Washington, DC 20001
(202) 879-3939

*Counsel for Plaintiff*
*Wabtec Corp.*

## CERTIFICATE OF COMPLIANCE

Pursuant to Chambers Procedures 2(B)(1) and (2), I hereby certify that the attached

**REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**

contains 6,487 words, according to the word-count function of the word processing system used

to prepare this brief (Microsoft Office for Microsoft 365).

Dated: October 26, 2022                                        */s/ Richard P. Ferrin*
                                                               Richard P. Ferrin

US.353220554.01

# EXHIBIT A

**Office of the Secretary**



## UNITED STATES INTERNATIONAL TRADE COMMISSION

Washington, D.C. 20436

April 27, 2018

Kristin H. Mowry, Esq.
Mowry & Grimson, PLLC
5335 Wisconsin Avenue, NW
Suite 810
Washington, D.C. 20015

John M. Herrmann, Esq.
Kelley Drye & Warren LLP
3050 K Street, NW
Washington, DC 20007-5108

Re:   Amended Administrative Protective Order Application; *Common Alloy Aluminum Sheet from China,* Inv. Nos. 701-TA-591 and 731-TA-1399 (Final)

Dear Ms. Mowry and Mr. Herrmann:

The Secretary is in receipt of your submissions[1] related to the request to amend the Administrative Protection Order ("APO") application on behalf of C.E. Smith Company, Inc. in the above-referenced investigations. At issue is whether Economic Consulting Services, LLC ("ECS") should be precluded from access to APO information based on the prior engagement of ECS and its employee James Dougan with the Aluminum Association. The Aluminum Association alleges that during this engagement, ECS and Mr. Dougan had access to confidential business information from Aluminum Association member companies that would amount to a conflict of interest if ECS were to represent an adverse party in the present investigation.

---

[1] *Entry of Appearance and APO Application Amendment* filed by Jeffrey Grimson of Mowry & Grimson PLLC on behalf of C.E. Smith Company, Inc., EDIS Doc ID 640378; *Objection to Economic Consulting Services' EOA and Amended APO Application* filed by John M. Herrmann of Kelley Drye & Warren LLP on behalf of Aluminum Association Common Alloy Aluminum Sheet Trade Enforcement Working Group, EDIS Doc ID 641230 ("Aluminum Working Group Letter"); and *Response to Objection to EOA and APO Application,* filed by Kristin Mowry of Mowry & Grimson PLLC on behalf of C.E. Smith Company, Inc., EDIS Doc ID 641672.

Commission Rule 207.7(a)(3)(ii) prohibits an authorized applicant from participating in "competitive decisionmaking," which includes "past, present, or likely future activities, associations, or relationships with an interested party which is a party to the investigation that involve the prospective authorized applicant's advice or participation in any of such party's decisions made in light of similar or corresponding information about a competitor." The prior work performed by Mr. Dougan and the staff at ECS for the Aluminum Association involved the confidential business information pertaining to company-specific trade and financial information and analysis for an interested parties decisionmaking with respect to unfair trade cases on certain aluminum products, including the aluminum sheet at issue here.[2] The present or likely future activities by Mr. Dougan and ECS for C.E. Smith Company, Inc., an interested party in the proceeding at issue, likely would involve advice or participation in such party's decisions on this unfair trade matter made in light of similar or corresponding information previously made to a competitor. Accordingly, they are precluded from subscribing to the APO in this investigation on behalf of C.E. Smith Company, Inc.

Should you have any questions, please contact me at (202) 205-2000.

Sincerely,

Lisa R. Barton
Secretary to the Commission

---

[2] Aluminum Working Group Letter at 2-3 ("ECS prepared and issued questionnaires to certain Aluminum Association member companies. In response to those questionnaires, Aluminum Association member companies provided highly sensitive, company-specific trade and financial information to ECS relating to their aluminum sheet-related operations. Mr. Dougan and others at ECS interacted directly with member company officials and were able to ask follow-up questions and gain detailed insights into those companies' operational and business strategies. After obtaining and refining trade and financial information from certain Aluminum Association member companies, ECS and Mr. Dougan prepared a lengthy, highly-specific written report analyzying the prospects for pursuing unfair trade cases on certain aluminum products – specifically including aluminum sheet.").

**Common Alloy Aluminum Sheet from China**

701-TA-591 and 731-TA-1399 (Final)

## AMENDED PUBLIC SERVICE LIST

I, Lisa R. Barton, hereby certify that the attached LETTER  was served upon the following parties via first class mail and air mail where necessary. **Only Public Information is to be served on the Parties Listed Below**.  Served April 27, 2018.

/s/
_____

Lisa R. Barton, Secretary
U.S. International Trade Commission
500 E Street, S.W.
Suite 112
Washington, D.C. 20436

**On behalf of Valeo North America, Inc.:**

Daniel J. Cannistra, Esq.
**Crowell & Moring LLP**
1001 Pennsylvania Avenue, NW
Washington, DC  20004-2295
202-624-2500 – voice
202-628-5116 – fax
dcannistra@crowell.com
intltrade@crowell.com

**On behalf of Oracle Flexible Packaging, Inc. and LLFLEX, LLC:**

Felicia L. Nowels, Esq.
**Akerman LLP**
106 E. College Avenue
Suite 1200
Tallahassee, FL  32301
850-425-1661 – voice
Felicia.nowels@akerman.com

**On behalf of the Aluminum Association Common Alloy Aluminum Sheet Trade Enforcement Working Group:**

John M. Herrmann, Esq.
**Kelley Drye & Warren LLP**
3050 K Street, NW
Washington, DC  20007
202-342-8400 – voice
202-342-8451 – fax
jherrmann@kelleydrye.com
tradenotifications@kelleydrye.com

**On behalf of C.E. Smith Company, Inc., the National Marine Manufacturers Association, the Recreational Vehicles Industry Association and *the National Association of Trailer Manufacturers:**

Jeffrey S. Grimson, Esq.
**Mowry & Grimson, PLLC**
5335 Wisconsin Avenue, NW, Suite 810
Washington, DC  20015
202-688-3610 – voice
202-595-8968 – fax
trade@mowrygrimson.com