## UNITED STATES COURT OF INTERNATIONAL TRADE

AMSTED RAIL COMPANY, INC.,
ASF-K DE MEXICO S. DE R.L. DE C.V.,
STRATO, INC., WABTEC CORP., and
TTX COMPANY,

        Plaintiffs,

    v.

UNITED STATES INTERNATIONAL
TRADE COMMISSION and ACTING
SECRETARY KATHERINE M. HINER,
in her official capacity,

        Defendants,

    and

COALITION OF FREIGHT RAIL
PRODUCERS,

        Defendant-Intervenor.

Before: Judge Gary S. Katzmann
Case No. 22-00307

**PUBLIC VERSION**

## PLAINTIFFS' OPPOSITION TO
## DEFENDANT'S MOTION TO DISMISS

# TABLE OF CONTENTS

I.    INTRODUCTION .................................................................................................1

II.   STATEMENT OF FACTS .................................................................................3

      A.    The Predecessor Investigations..............................................................3

      B.    The Current Investigations.....................................................................5

      C.    Procedural History .................................................................................9

III.  ARGUMENT ....................................................................................................10

      A.    The Commission's Motion To Dismiss Is Moot...................................10

      B.    Applicable Legal Standards ..................................................................11

      C.    The Court Has Subject-Matter Jurisdiction Over The Action ..............11

            1.    Jurisdiction lies under 28 U.S.C. § 1581(i)................................11

                  a.    19 U.S.C. § 1677f(c)(2) does not imply a lack of
                        jurisdiction to review the Commission's decision to
                        release BPI ...................................................................12

                  b.    Plaintiffs' claims concern the investigations'
                        administration ..............................................................15

                  c.    Judicial review is not premature because Plaintiffs'
                        remedies under other subsections of § 1581 are
                        manifestly inadequate ...................................................17

            2.    In the alternative, jurisdiction lies under 28 U.S.C. §§ 1361,
                  1585, and 2643(c)(1) to issue mandamus relief..........................20

      D.    Plaintiffs' Claims Are Not Moot..........................................................21

      E.    Plaintiffs Have Not Failed To Exhaust Administrative Remedies ........23

      F.    Plaintiffs Have Challenged Final Agency Actions ...............................27

      G.    Plaintiffs Are Aggrieved By The Commission's Final Decisions .........29

      H.    Plaintiffs Have Plausibly Alleged Claims For Relief ...........................32

III.  CONCLUSION.................................................................................................33

# TABLE OF AUTHORITIES

**Cases**                                                                 **Pages**

*In re American Airlines, Inc.*,
   972 F.2d 605 (5th Cir. 1992)................................................................20

*Aspects Furniture International, Inc. v. United States*,
   469 F. Supp. 3d 1359 (C.I.T. 2020) ......................................................10

*Atasi Corp. v. Seagate Technology*,
   847 F.2d 826 (Fed. Cir. 1988)..............................................................31

*Baude v. United States*,
   955 F.3d 1290 (Fed. Cir. 2020)........................................................27, 33

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544 (2007) .............................................................................11

*Bennett v. Spear*,
   520 U.S. 154 (1997) .............................................................................27

*Black v. Secretary of HHS*,
   93 F.3d 781 (Fed. Cir. 1996)................................................................25

*Bolton v. Crowley, Hoge & Fein, P.C.*,
   110 A.3d 575 (D.C. 2015) ....................................................................30

*Bowsher v. Synar*,
   478 U.S. 714 (1986) .............................................................................30

*Brother Industries, Ltd. v. United States*,
   15 C.I.T. 387, 769 F. Supp. 374 (1991) ...............................................18

*California v. United States*,
   271 F.3d 1377 (Fed. Cir. 2001)............................................................13

*Cedars-Sinai Medical Center v. Watkins*,
   11 F.3d 1573 (Fed. Cir. 1993)..............................................................11

*CEMEX, S.A. v. United States*,
   19 C.I.T. 587 (1995).............................................................................24

*Chafin v. Chafin*,
   568 U.S. 165 (2013) ........................................................................21, 22

*Chugach Electric Association v. U.S. District Court*,
    370 F.2d 441 (9th Cir. 1966) ..................................................................21

*Collins v. Yellen*,
    141 S. Ct. 1761 (2021) ........................................................................31

*Connecticut National Bank v. Germain*,
    503 U.S. 249 (1992) ............................................................................14

*Conoco, Inc. v. U.S. Foreign-Trade Zones Board*,
    18 F.3d 1581 (Fed. Cir. 1994) ............................................................15

*Cord v. Smith*,
    338 F.2d 516 (9th Cir. 1959) .....................................................18, 19, 21

*Detroit Zoological Society v. United States*,
    10 C.I.T. 133, 630 F. Supp. 1350 (1986) ...........................................25

*Dr. Falk Pharma GmbH v. GeneriCo, LLC*,
    916 F.3d 975 (Fed. Cir. 2019) ............................................................30

*Dofasco Inc. v. United States*,
    28 C.I.T. 263, 326 F. Supp. 2d 1340 (2004) .................................16, 17

*Dynamic 3D Geosolutions LLC v. Schlumberger Ltd.*,
    837 F.3d 1280 (Fed. Cir. 2016) ..........................................................30

*FCC v. Prometheus Radio Project*,
    141 S. Ct. 1150 (2021) ........................................................................33

*Galveston, Harrisburg & San Antonio Railway v. Wallace*,
    223 U.S. 481 (1912) ............................................................................13

*Gerdau Ameristeel Corp. v. United States*,
    519 F.3d 1336 (Fed. Cir. 2008) .....................................................22, 23

*Heckler v. Chaney*,
    470 U.S. 821 (1985) ............................................................................15

*Hor Liang Industrial Corp. v. United States*,
    337 F. Supp. 3d 1310 (C.I.T. 2018) ...................................................24

*Hyundai Pipe Co. v. U.S. Department of Commerce*,
    11 C.I.T. 238 (1987) ..................................................................... *passim*

*Jones v. Bock,*
    549 U.S. 199 (2007) ........................................................................24

*Kannuu Pty Ltd. v. Samsung Electronics Co.,*
    15 F.4th 1101 (Fed. Cir. 2021) .......................................................16

*Kellogg v. Watts Guerra LLP,*
    41 F.4th 1246 (10th Cir. 2022) ................................................28, 30

*In re Killian,*
    45 F.4th 1373 (Fed. Cir. 2022) ...............................................26, 32

*Knox v. Service Employees International Union, Local 1000,*
    567 U.S. 298 (2012) ........................................................................22

*Lujan v. Defenders of Wildlife,*
    504 U.S. 555 (1992) ................................................................30, 31

*Makita Corp. v. United States,*
    17 C.I.T. 240, 819 F. Supp. 1099 (1993) ................................*passim*

*Massachusetts v. EPA,*
    549 U.S. 497 (2007) ................................................................30, 31

*Merle Norman Cosmetics, Inc. v. U.S. District Court,*
    856 F.2d 98 (9th Cir. 1988) .....................................................18, 19

*Mims v. Arrow Financial Services, LLC,*
    565 U.S. 368 (2012) ........................................................................13

*National Fisheries Institute v.*
*U.S. Bureau of Customs & Border Protection,*
    30 C.I.T. 1838, 465 F. Supp. 2d 1300 (2006) ...............................15

*NEC Corp. v. United States,*
    151 F.3d 1361 (Fed. Cir. 1998) ..............................................17, 20

*Nissan Motor Corp. v. United States,*
    10 C.I.T. 820, 651 F. Supp. 1450 (1986) .......................................16

*Parkdale International, Ltd. v. United States,*
    31 C.I.T. 720, 491 F. Supp. 2d 1262 (2007) ..............................11, 17

*Philipp Brothers v. United States,*
    10 C.I.T. 76, 630 F. Supp. 1317 (1986) .........................................24

iv

*Reliance Electric Co. v. Consumer Product Safety Commission*,
924 F.2d 274 (D.C. Cir. 1991) ....................................................28

*Sacilor, Acieries et Laminoirs de Lorraine v. United States*,
3 C.I.T. 191, 542 F. Supp. 1020 (1982) ........................15, 17, 18, 30

*Scanlan v. Eisenberg*,
669 F.3d 838 (7th Cir. 2012)........................................................30

*SeAH Steel Corp. v. United States*,
35 C.I.T. 326, 764 F. Supp. 2d 1322 (2011) ...............................24

*Shakeproof Industrial Products Division of Illinois Tool Works, Inc.
v. United States*, 104 F.3d 1309 (Fed. Cir. 1997)........................17, 19

*In re Shared Memory Graphics LLC*,
659 F.3d 1336 (Fed. Cir. 2011)..................................................20, 21

*Sioux Honey Association v. Hartford Fire Insurance Co.*,
672 F.3d 1041 (Fed. Cir. 2012) ..................................................15

*SNR Roulements v. United States*,
13 C.I.T. 1, 704 F. Supp. 1103 (1989) ...............................12, 14, 29

*Steel Co. v. Citizens for a Better Environment*,
523 U.S. 83 (1998) .....................................................................11

*Ta Chen Stainless Steel Pipe, Ltd. v. United States*,
28 C.I.T. 627, 342 F. Supp. 2d 1191 (2004) ...............................24

*TransUnion LLC v. Ramirez*,
141 S. Ct. 2190 (2021) ..............................................................28, 29

*Ultimax Cement Manufacturing Corp. v.
CTS Cement Manufacturing Corp.*,
587 F.3d 1339 (Fed. Cir. 2009).....................................................30

*U.S. Army Corps of Engineers v. Hawkes Co.*,
578 U.S. 590 (2016) ...................................................................27, 28

*United States v. Nitek Electronics, Inc.*,
806 F.3d 1376 (Fed. Cir. 2015).....................................................23

*University of West Virginia Board of Trustees v. VanVoorhies*,
278 F.3d 1288 (Fed. Cir. 2002).....................................................31

*In re Vivint, Inc.*,
    14 F.4th 1342 (Fed. Cir. 2021) ........................................................33

*VoestAlpine USA Corp. v. United States*,
    578 F. Supp. 3d 1263 (C.I.T. 2022) ...............................................10

*Weishan Hongda Aquatic Food Co. v. United States*,
    917 F.3d 1353 (Fed. Cir. 2019) .......................................................23

*Woodford v. Ngo*,
    548 U.S. 81 (2006) ............................................................................25

*Yablonski v. United Mine Workers of America*,
    454 F.2d 1036 (D.C. Cir. 1971) ...........................................18, 19, 21

**Statutes and Rules**

5 U.S.C. § 702 .........................................................................................29

5 U.S.C. § 704 .........................................................................................27

19 U.S.C. § 1677f ...............................................................12, 13, 14, 29

28 U.S.C. § 1361 ..............................................................................12, 20

28 U.S.C. § 1581 ........................................................................... *passim*

28 U.S.C. § 1585 ..............................................................................12, 20

28 U.S.C. § 2631 .....................................................................................29

28 U.S.C. § 2637 .....................................................................................23

28 U.S.C. § 2643 ..............................................................................12, 20

19 C.F.R. § 201.12 ..................................................................................27

19 C.F.R. § 201.15 ..................................................................................31

19 C.F.R. § 207.7 ....................................................................................33

Pub. L. No. 100-449, § 403, 102 Stat. 1851 (1988) ..............................12

Pub. L. No. 96-39, § 777, 93 Stat. 144 (1979) .......................................12

C.I.T. R. 8 ...............................................................................................24

D.C. R. Prof'l Conduct 1.7 ..................................................................................30

Model R. Prof'l Conduct 1.7....................................................................................30

**Legislative History**

S. Rep. No. 100-509 (1988), *reprinted in* 1988 U.S.C.C.A.N. 2395.............................................12

H.R. Rep. No. 96-1235 (1980), *reprinted in* 1980 U.S.C.C.A.N. 3729 ......................................16

**Agency Materials**

Office of the Sec'y, U.S. Int'l Trade Comm'n,
   *An Introduction to Administrative Protective Order*
   *Practice in Import Injury Investigations* (6th ed. 2022)......................................27

**Miscellaneous**

*The First Annual Judicial Conference of the United*
   *States Court of Appeals for the Federal Circuit,*
   100 F.R.D. 499 (1983) ...........................................................................................14

## I.      INTRODUCTION

The U.S. International Trade Commission ("Commission") filed a motion to dismiss the original Complaint after Plaintiffs[1] filed their Amended Complaint or, in the Alternative, Petition for Writ of Mandamus ("Amended Complaint"). With its new claims, allegations, and jurisdictional bases, the Amended Complaint superseded Plaintiffs' earlier pleading and rendered moot the motion to dismiss. It is unclear, therefore, why the Commission has not withdrawn and re-filed its motion. Plaintiffs' counsel inquired, but received no answer. In the interest of expedience, Plaintiffs will nonetheless respond to the Commission's arguments, none of which presents a valid basis on which to dismiss the Amended Complaint, in whole or in part.

To begin with, the arguments against subject-matter jurisdiction are meritless. Jurisdiction is proper under 28 U.S.C. § 1581(i). Because jurisdiction is not defeated by mere implication, 19 U.S.C. § 1677f(c)(2) does not abridge the Court's jurisdiction to review the Commission's decision to allow a release of Plaintiffs' business proprietary information ("BPI"). Nothing in § 1581(i)'s text, moreover, precludes this action, which relates to the administration of *Certain Freight Rail Couplers and Parts Thereof from China and Mexico*, USITC Inv. Nos. 701-TA-682 and 731-TA-1592-1593 (Preliminary) ("Current Investigations"). Nor is judicial review premature. Plaintiffs' other jurisdictional avenues are manifestly inadequate. ███████████ ("Attorney") and his law firm, ████████████████████ ("Firm"), are operating under a disabling conflict of interest. The Attorney's and his Firm's continued participation in the Current Investigations will bring about the very evil the rules against their participation are designed to prevent. In addition,

---

[1] Plaintiffs are Amsted Rail Company, Inc. ("ARC"), ASF-K de Mexico S. de R.L. de C.V. ("ASF-K"), Strato, Inc. ("Strato"), Wabtec Corp. ("Wabtec"), and TTX Company ("TTX" and, together with ARC, ASF-K, Wabtec, and Strato, "Plaintiffs"). Wabtec does not join this opposition to the extent the opposition asserts a conflict of interest or that a disqualification would be appropriate for any proven violation of the Rules of Professional Responsibility, which is others' claim to prove.

any release of Plaintiffs' BPI now cannot be judicially reviewed later in a meaningful way. For the same reasons, the Court could, in the alternative, grant mandamus relief.

The Commission's other threshold objections are unpersuasive. Its refusals to disqualify the Firm and to withhold Plaintiffs' BPI do not moot the case. They are the unlawful actions that give rise to Plaintiffs' injuries, which the Court can remedy by setting the refusals aside and directing the Commission to disqualify the Firm and not disclose Plaintiffs' BPI. Plaintiffs exhausted their administrative remedies by asking the Commission to disqualify the Firm and withhold their BPI, but the Commission has refused. Plaintiffs challenge final agency actions because the Commission has conclusively determined that it will release Plaintiffs' BPI and will not disqualify the Firm. By giving the Firm the right to participate in the Current Investigations, these final decisions nullify Plaintiffs' rights to protection of their confidential information and ARC's right to the Attorney's loyalty. Plaintiffs are aggrieved by the Commission's final actions because release of their BPI would harm their concrete interest in "the preservation of confidentiality." *Hyundai Pipe Co. v. U.S. Dep't of Commerce*, 11 C.I.T. 238, 240, 241 (1987). And the Firm's continued participation would violate ARC's right to the Attorney's loyalty and give the Coalition an "unfair advantage" over all Plaintiffs. *Makita Corp. v. United States*, 17 C.I.T. 240, 819 F. Supp. 1099, 1108 (1993).

Finally, the Amended Complaint plausibly alleges four viable claims for relief. The Commission attacks only Count II—which challenges the Commission's decision that it is prepared to release Plaintiffs' BPI to the Firm without investigating the Firm's potential administrative protective order ("APO") violation or ethical conflict. The Commission thus forfeits at this stage any objection to the other three claims for relief. As for Count II, Plaintiffs identified a credible basis for suspecting that the Firm had violated the terms of the APO in *Certain Freight*

*Rail Coupler Systems and Components from China*, USITC Inv. Nos. 701-TA-670 and 731-TA-1570 ("Predecessor Investigations"), and that it was acting under a disabling conflict of interest. Despite this evidence, the Commission is prepared to release Plaintiffs' BPI without conducting an APO breach investigation or considering the ethical violation. The Commission gave no explanation for this, which violated its own regulations. That is not reasoned decisionmaking.

## II.   STATEMENT OF FACTS

### A.   The Predecessor Investigations.

ARC is a producer of, among other things, freight rail coupler systems and components thereof ("FRCs"). Am. Compl. ¶ 9. On June 17, 2021, ARC engaged the law firm of Wiley Rein LLP ("Wiley") "to provide legal services in connection with advice regarding the elevation and potential prosecution of antidumping of imports of certain couplings and related rail products." *Id.* ¶ 20. ARC and Wiley formalized this engagement in a letter expressly naming ARC as the client. *Id.* ¶ 21. The Attorney, then a Wiley partner, executed the engagement letter on the firm's behalf. *Id.* ¶ 22. The engagement letter stated that the scope of the representation included "any antidumping and/or countervailing duty proceeding filed on behalf of the domestic manufacturing industry." *Id.* ¶ 23. On September 29, 2021, the Coalition, which at that time included ARC, filed through the Attorney its petition with the Commission and the U.S. Department of Commerce ("Department"), commencing the Predecessor Investigations. *Id.* ¶¶ 25-26.

The petition principally alleged that certain FRCs imported from China were being subsidized by the Government of China within the meaning of section 701 of the Tariff Act of 1930, *codified as amended at* 19 U.S.C. § 1671 ("Tariff Act"), and were being or were likely to be sold at less than normal value within the meaning of section 731 of the Tariff Act, *codified as amended at* 19 U.S.C. § 1673, and these unfairly traded imports materially injured the domestic

industry producing FRCs. *Id.* ¶ 27. The period of investigation at the Commission was 2019 through 2021, with the record remaining open until June 8, 2022. *Id.* ¶ 28.

On October 6, 2021, ARC, again through the Attorney, filed a letter in the Predecessor Investigations withdrawing from the petition. *Id.* ¶ 29. On October 14, 2021, ARC's current counsel, the law firm of Faegre Drinker Biddle & Reath LLP ("Faegre"), entered an appearance in the Predecessor Investigations. *Id.* ¶ 30.

Until its withdrawal, ARC supervised and materially contributed to the Attorney's preparation for the Predecessor Investigations. *Id.* ¶ 31. ARC confided in the Attorney its legal strategy for prosecuting FRC-related trade investigations, competitive decisionmaking processes, and extensive FRC-related BPI relevant to establishing the scope of domestic like product, the domestic industry, and the conditions of competition. *Id.* ¶ 32. ARC disclosed this confidential information, including via telephone calls, in the reasonable expectation and belief that the Attorney would preserve it within the confines of the attorney-client relationship. *Id.* ¶ 33. The Attorney's emails to ARC described themselves as "Attorney Client Communication – Privileged & Confidential," or variants of that description. *Id.* ¶ 34.

The Commission issued an APO in the Predecessor Investigations on October 12, 2021 ("Predecessor APO"). *Id.* ¶ 37. By its terms, the Predecessor APO requires authorized applicants to use BPI "solely for the purposes of the above-captioned Commission investigation or for U.S. judicial review or review pursuant to the North American Free Trade Agreement the determination resulting from such investigation of such Commission investigation." *Id.* ¶ 38.

On March 1, 2022, the Attorney amended his entry of appearance on the Coalition's behalf to reflect that he had changed law firms. *Id.* ¶ 39. The Attorney's amended entry of appearance advised that he is now a shareholder in a new firm, the Firm, and no longer with Wiley.

The Commission conducted its hearing for the Predecessor Investigations on May 12, 2022. *Id.* ¶ 42. Representatives for the Coalition appeared at the hearing accompanied by counsel and submitted pre-hearing and post-hearing briefs, and final comments. *Id.* Three respondent entities—Plaintiffs Strato, Wabtec, and TTX—participated in the final phase. *Id.* The Commission announced its unanimous negative vote on June 14, 2022, thus terminating the Predecessor Investigations and denying the Coalition its requested trade relief. *Id.* ¶ 43.

In early July 2022, the Commission issued its determinations and released its final report. *Id.* ¶ 44. Based on the record in the Predecessor Investigations' final phase, the Commission determined that an industry in the United States was not materially injured or threatened with material injury by reason of FRC imports found by the Department to be sold in the United States at less than fair value and to be subsidized by the Government of China. *Id.* ¶ 45. One reason for the negative injury determination was that Chinese FRCs could not be considered a cause of the alleged injury because of significant non-subject FRC imports from Mexico. *Id.* ¶ 46.

Until July 2022, the Predecessor APO covered only the Attorney and two non-attorneys. *Id.* ¶ 47. On July 18, 2022, however, after the Commission issued its determinations—effectively concluding the Predecessor Investigations—the Firm filed an amendment to the Predecessor APO adding numerous attorney and non-attorney applicants. *Id.* ¶ 48. Two months later, on September 26, 2022, the Firm certified its destruction of Predecessor APO-covered materials. *Id.* ¶ 49.

### B. The Current Investigations.

Just two days later, on September 28, 2022, the Coalition filed a second petition commencing the Current Investigations. *Id.* ¶ 50. The Current Investigations are a reprise of the Predecessor Investigations. *Id.* Both sets of investigations were and are quasi-adjudicative antidumping and countervailing duty investigations before the Commission and the Department

pursuant to the same body of statutory and regulatory provisions. *Id.* The petitioning party in each investigation was the Coalition, of which ARC is a former member. *Id.* The FRCs covered by the investigations include E, F, and E/F couplers and E and F knuckles. *Id.* ARC's BPI concerning its FRCs was used in the Predecessor Investigations; much of that same BPI will be the focus of the Current Investigations. *Id.* The petitions in both commonly allege that FRCs are being or are likely to be sold at less than normal value within the meaning of section 731 of the Tariff Act. *Id.* Before, the period of investigation was 2019 through 2021, with the record remaining open until June 8, 2022. *Id.* In the Current Investigations, the period of investigation is the full years of 2019 through 2021 plus the first half of 2022. *Id.*

On September 29, 2022, the Firm filed with the Commission an APO application in the Current Investigations ("Current APO") covering the same set of lawyers and staff covered under the Predecessor APO. *Id.* ¶ 51.

At the Current Investigations' outset, the Commission sent questionnaires to solicit from U.S. producers, U.S. importers, and foreign producers the information required by the Commission to make its determinations. *Id.* ¶ 52. Plaintiffs each submitted significant amounts of extraordinarily detailed BPI in response to the Commission's questionnaires. *Id.* ¶ 53.

In the Current Investigations, the Coalition hopes to "fix" the negative injury determination in the Predecessor Investigations by adding imports from Mexico to the Current Investigations' scope. *Id.* ¶ 58. To do this, the Coalition paints a target on ARC. ARC, the petition asserts, "which was formerly a major producer of FRCs in the United States, relocated substantially all of its FRC production to Mexico and is now an importer of in-scope FRCs that are produced at its Mexican location." *Id.* ¶ 59. "The AAR certified manufacturing plant in Mexico that manufactures FRC products is ASF-K de Mexico, S. de R. L. de C.V. Sahagun, which is owned by ASF-Keystone, a

division of ARC Industries' ARC Rail Group." *Id.* This is the same scenario that existed during the Predecessor Investigations, yet the Coalition did not include Mexican imports. *Id.*

In the new petition's telling, the "shift to production in Mexico by [ARC] has resulted in a significant market share decrease for domestic producers that chose not to abandon their U.S. employees and to continue their FRC production in the United States." *Id.* ¶ 60. ARC "relocated its production to Mexico," the petition posits, "to offer prices in the U.S. market for its imported FRCs from Mexico that are competitive with Chinese FRCs." *Id.* ¶ 61.

Immediately upon learning of the Attorney's participation in the Current Investigations as the Coalition's lead counsel, ARC moved to protect itself from the Attorney's betrayal. *Id.* ¶ 62. It directed Faegre to send a letter to the Attorney detailing his ethical violation and requesting the Firm's withdrawal from further representation of the Coalition in the Current Investigations. *Id.* Faegre sent a letter to that effect on October 6, 2022. *Id.* The Firm's general counsel sent a letter rejecting this request on October 11, 2022. *Id.* ¶ 63.

On October 11 and 13, 2022, ARC and ASF-K filed letters with the Commission asking it to: (i) disqualify the Firm from further participation as counsel for the Coalition in the Current Investigations; (ii) rescind the Firm's authorization to receive BPI under the Current APO; and (iii) require neither ARC nor ASF-K to serve BPI questionnaire responses on the Firm until the Commission determines whether the Firm should be disqualified from practicing in the Current Investigations and/or excluded from the Current APO. *Id.* ¶ 64.

One basis for these requests was the Attorney's violation of Rule 1.9(a) of the American Bar Association's ("ABA") Model Rules of Professional Conduct and its analogue, Rule 1.9(a) of the District of Columbia Rules of Professional Conduct, *id.* ¶ 65, which both provide that "[a] lawyer who has formerly represented a client in a matter shall not thereafter represent another

person in … a substantially related matter in which that person's interests are materially adverse to the interests of the former client."

Another basis for the requests was the Firm's potential violation of the Predecessor APO. Am. Compl. ¶ 68. Again, the Predecessor APO requires authorized applicants to use BPI "solely for the purposes of the above-captioned Commission investigation or for U.S. judicial review or review pursuant to the North American Free Trade Agreement the determination resulting from such investigation of such Commission investigation." *Id.* ¶ 70; *see also* 19 C.F.R. § 207.7(b)(2) (a person covered by an APO may "[u]se such business proprietary information solely for the purposes of representing an interested party in the Commission investigation *then in progress*") (emphasis added). On information and belief, the Firm abused the Predecessor APO by using ARC's and others' BPI as a springboard for the Current Investigations. Am. Compl. ¶ 71. The Firm added numerous attorneys and non-attorneys to the Predecessor APO *after* the Commission had already issued its determinations in the Predecessor Investigations. *Id.* On information and belief, the Firm's post-determinations use of the BPI advanced the Current Investigations, not the Predecessor Investigations. *Id.* ¶ 72. In their letters to the Commission, therefore, ARC and ASF-K urged the Commission to investigate this potential APO violation. *Id.*

Strato, TTX, and Wabtec filed letters with the Commission on October 12, 2022, objecting to the disclosure of BPI to the Firm before the Commission resolved ARC's allegations against the Firm. *Id.* ¶ 73. The Commission has not placed those letters on its public docket. *Id.*

On October 13, 2022, the Commission's Acting Secretary, Katherine M. Hiner, announced that the Commission had decided to release Plaintiffs' BPI to the Attorney and the Firm before the preliminary staff conference, which was then scheduled to occur on October 19, 2022. *Id.* ¶ 74.

### C.    Procedural History.

Plaintiffs filed this action and moved for a temporary restraining order on October 14, 2022. *Id.* ¶ 75. Plaintiffs' initial complaint ("Complaint") sought an injunction preventing the Commission from disclosing BPI to the Attorney and Firm. ECF No. 14, Prayer for Relief item 2.

The Court issued a temporary restraining order on October 18, 2022. ECF No. 27. Among other things, the order temporarily restrained the Commission from disclosing, or requiring disclosure of, BPI submitted in the Current Investigations. Am. Compl. ¶ 77. The Court expressly determined that: (i) irreparable harm would be incurred; (ii) there was a likelihood of success on the merits; (iii) the balance of hardships favors the imposition of the temporary restraining order; and (iv) the temporary restraining order is in the public interest. ECF No. 27; Am. Compl. ¶ 78.

On October 21, 2022, Acting Secretary Hiner rejected Plaintiffs' request to investigate serious allegations of an APO breach because the evidence was "insufficient to warrant institution of an APO breach at this time." Am. Compl. ¶ 80; *see* ECF No. 42-9 ¶ 16. That same day, Acting Secretary Hiner also rejected ARC's request to disqualify the Firm, stating that there was "not good cause at this time to disqualify" the Firm, because the Commission "does not adjudicate" violations of the Model or District of Columbia Rules of Professional Conduct. Am. Compl. ¶ 81.

Plaintiffs filed an Amended Complaint on October 24, 2022, asserting four counts. Count I alleges the Commission's refusal to disqualify the Firm was arbitrary and capricious in violation of the Administrative Procedure Act ("APA"), 5 U.S.C. § 551 *et seq.* Am. Compl. ¶¶ 82-99. Count II alleges the Commission's decision that it is prepared to release Plaintiffs' BPI to the Firm without investigating the Firm's potential APO violation or ethical conflict was arbitrary and capricious. *Id.* ¶¶ 100-08. Count III alleges the decision to disclose Plaintiffs' BPI without affording Plaintiffs a meaningful opportunity to be heard violated constitutional due process. *Id.*

¶¶ 109-18. Count IV alleges that, if APA review is unavailable, the Commission is properly subject to a writ of mandamus directing it to disqualify the Firm. *Id.* ¶¶ 119-24. The Complaint asks the Court to direct the Commission to disqualify the Firm, prohibit the Commission from disclosing Plaintiffs' BPI to the Firm or requiring Plaintiffs to do so, and dismiss the petition in the Current Investigations. *Id.*, Prayer for Relief, items 2, 5-6. The Amended Complaint included a new request for relief: that the Court direct the Commission to disqualify the Attorney and Firm from representing the Coalition in the Current Investigations. Am. Compl., Prayer for Relief, item 1.

On October 27, 2022, the Court extended the temporary restraining order until November 15, 2022. ECF No. 54.

## III.   ARGUMENT

### A.   The Commission's Motion To Dismiss Is Moot.

After Plaintiffs filed their Amended Complaint, the Commission filed its motion to dismiss targeting the original Complaint and making no reference to the Amended Complaint or its new content. ECF No. 45. On October 25, 2022, Plaintiffs' counsel asked the Commission's counsel to advise whether the motion to dismiss would be re-filed in light of the Amended Complaint. The Commission's counsel never responded to the inquiry.

Ordinarily, an amended complaint supersedes the original complaint and a motion targeting the original pleading's sufficiency is rendered moot. *See VoestAlpine USA Corp. v. United States*, 578 F. Supp. 3d 1263, 1275 (C.I.T. 2022); *Aspects Furniture Int'l, Inc. v. United States*, 469 F. Supp. 3d 1359, 1362, 1366-67 (C.I.T. 2020). Because the Amended Complaint is not substantially identical to the original Complaint, the motion to dismiss has been rendered moot by the Amended Complaint. Plaintiffs will nonetheless address the motion's substance.

10

**B.      Applicable Legal Standards.**

The Commission moves to dismiss for lack of subject-matter jurisdiction under C.I.T. R. 12(b)(1). The Court's determination of its subject-matter jurisdiction is a threshold inquiry. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94-95 (1998). Where, as here, the motion "simply challenges the court's subject matter jurisdiction based on the sufficiency of the pleading's allegations—that is, the movant presents a 'facial' attack on the pleading—then those allegations are taken as true and construed in a light most favorable to the complainant." *Cedars-Sinai Med. Center v. Watkins*, 11 F.3d 1573, 1583 (Fed. Cir. 1993).

The Commission also moves to dismiss for failure to state a claim upon which relief can be granted under C.I.T. R. 12(b)(6). In deciding such a motion, the Court must assume all factual allegations to be true and draw all reasonable inferences in Plaintiffs' favor. *Id.* at 1573 n.13. The factual allegations must be "enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

**C.      The Court Has Subject-Matter Jurisdiction Over The Action.**

**1.      Jurisdiction lies under 28 U.S.C. § 1581(i).**

The Court has subject-matter jurisdiction over this action "under the broad residual jurisdiction of § 1581(i)." *Parkdale Int'l, Ltd. v. United States*, 31 C.I.T. 720, 491 F. Supp. 2d 1262, 1267 (2007). The Commission's arguments to the contrary are three-fold: (i) the positive grant of authority in 19 U.S.C. § 1677f(c)(2) to judicially review agency decisions *denying* BPI access negatively implies a lack of jurisdiction to judicially review agency decisions *granting* BPI access; (ii) this action does not fall within § 1581(i) because it does not directly concern tariffs,

duties, fees, or taxes; and (iii) judicial review is premature because Plaintiffs do not have a

"manifestly inadequate" remedy if that review is postponed. Each argument is misguided.[2]

> **a.** **19 U.S.C. § 1677f(c)(2) does not imply a lack of jurisdiction to review the Commission's decision to release BPI.**

"In cases where [a trade agency] *allows* the release of confidential information under a

protective order, as it did in this case, this Court's jurisdiction to review that action is based on 28

U.S.C. § 1581(i)." *SNR Roulements v. United States*, 13 C.I.T. 1, 704 F. Supp. 1103, 1107 (1989)

(emphasis in original). This clear statement notwithstanding, the Commission argues that 19

U.S.C. § 1677f(c)(2) "clarifies Congress' intent to limit judicial review of the Commission's

decisions about APO access." ECF No. 45 at 3. The Commission is wrong, in multiple respects.

To begin with, the Commission is wrong that § 1677f(c)(2) was "added to the statute in

1988." *Id.* That provision has existed in § 1677f since 1979, not 1988. *See* Pub. L. No. 96-39, §

777(c)(2), 93 Stat. 144 (1979). The Commission has apparently confused § 1677f(c)(2), which was

original to the Trade Agreement Act of 1979, with § 1677f(f)(1)(C), which was added by

amendment in 1988. *See* Pub. L. No. 100-449, § 403(c), 102 Stat. 1851 (1988). Although §

1677f(f)(1)(C) does strip this Court of jurisdiction to judicially review BPI disclosures in certain

circumstances, as subsection's (f) heading makes clear, that provision solely concerns "Disclosure

of proprietary information under protective orders issued pursuant to the United States-Canada

Agreement or the USMCA." *See also* S. Rep. No. 100-509, at 35 (1988), *reprinted in* 1988

U.S.C.C.A.N. 2395, 2430 ("New section 777(d) is added to the Tariff Act of 1930 by section 403

of this Act for the purpose of protecting proprietary information made available in binational panel

---

[2] The Commission also attacks two strawmen—that jurisdiction does not lie under either the APA or 28 U.S.C. § 1585. *See* ECF No. 45 at 9-12. The Amended Complaint, however, does not invoke the APA as a jurisdictional basis. And it invokes § 1585 as a companion to 28 U.S.C. §§ 1581(i), 1361, and 2643(c)(1), not as an independent jurisdictional basis.

proceedings."). Neither of those Agreements nor protective orders issued pursuant to those Agreements are implicated here. In any event, the Commission does not rely on § 1677f(f)(1)(C).

The Commission also is wrong that § 1677f(c)(2) implies a lack of jurisdiction to review agency decisions allowing access to BPI. By its terms, § 1677f(c)(2) allows that "application may be made to the United States Customs Court for an order directing the administering authority or the Commission to make the information available." From this, the Commission infers that Congress intended judicial review to be available only "when the Agency '*denies* request for information.'" *Id.* at 3 (quoting § 1677f(c)(2)) (emphasis added). A negative implication from the right to seek judicial review under § 1677f(c)(2) is the only basis—textual or extra-textual—on which the Commission relies. It cites no language expressly foreclosing jurisdiction, no legislative history, and no decisional authority to support the notion that § 1677f(c)(2) abridges jurisdiction under § 1581(i) to judicially review decisions allowing BPI access.

The Commission's negative implication is not well-taken. The U.S. Supreme Court has long explained that "jurisdiction is not defeated by implication." *Galveston, Harrisburg & San Antonio Ry. v. Wallace*, 223 U.S. 481, 490 (1912); *see also Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 376, 382 (2012) (federal statute's express jurisdictional grant to state courts did not negatively imply that federal courts lack jurisdiction under 28 U.S.C. § 1331); *California v. United States*, 271 F.3d 1377, 1382-83 (Fed. Cir. 2001) (provision in Flood Control Act of 1928 prohibiting liability from attaching to or resting upon the United States for flood damage did not impliedly repeal jurisdiction under Tucker Act). Accordingly, a grant of judicial review for one category of orders is, by itself, insufficient to negatively imply a denial of jurisdiction for another category. In *Connecticut National Bank v. Germain*, for instance, the Supreme Court held that a statute allowing jurisdiction over appeals from all final orders of district courts sitting as appellate

courts in bankruptcy, 28 U.S.C. § 158(d), did not limit courts of appeals' jurisdiction by negative implication from statutes providing for appellate review of final and interlocutory orders of district courts, 28 U.S.C. §§ 1291 and 1292. 503 U.S. 249, 252-54 (1992). "Because giving effect to both §§ 1291 and 158(d) would not render one or the other wholly superfluous," the court did "not have to read § 158(d) as precluding courts of appeals, by negative implication," from exercising jurisdiction under §§ 1291 and 1292. *Id.* at 253.

So too here. The statutes are easily reconciled through concurrent application. Because giving effect to the Court's power under § 1581(i) to review decisions to release BPI would not render § 1677f(c)(2) "wholly superfluous," the Court should not read the latter as abridging, by negative implication, jurisdiction under the former. *See The First Annual Judicial Conference of the United States Court of Appeals for the Federal Circuit*, 100 F.R.D. 499, 582 (1983) (statement of Prof. Peter Gerhart) (regarding the Court's "jurisdiction to prevent the disclosure of confidential information," "the mere fact that Congress enacted an explicit provision governing review of one type of issue does not impliedly limit the Court's residual jurisdiction over a related issue"). This is particularly true because § 1677f(c)(2) serves a non-jurisdictional purpose. In addition to stating that aggrieved parties may apply for an order "to make the information available," § 1677f(c)(2) establishes a judicial procedure and *de novo* standard of review to obtain the order. *See SNR Roulements*, 704 F. Supp. at 1107.

The Commission's divination of congressional intent also is refuted by this Court's decisions. The Court has consistently confirmed its jurisdiction under § 1581(i) to review BPI releases. *See id.* at 1106-07 (acknowledging § 1677f(c)(2)); *Hyundai Pipe*, 11 C.I.T. at 240, 242 (although agency "has the responsibility to police its protective orders," "[n]evertheless, this court

14

has jurisdiction" under 28 U.S.C. § 1581(i) to enjoin BPI releases); *Sacilor, Acieries et Laminoirs de Lorraine v. United States*, 3 C.I.T. 191, 542 F. Supp. 1020, 1022 (1982) (same).

The Commission's cryptic reliance on *Heckler v. Chaney*, 470 U.S. 821 (1985), and *Sioux Honey Association v. Hartford Fire Insurance Co.*, 672 F.3d 1041 (Fed. Cir. 2012), *see* ECF No. 46 at 3, is strained. Those cases stand for the proposition, irrelevant here, that "in situations where an agency invokes its discretion to refuse to take enforcement steps, 'the presumption is that judicial review is not available.'" *Id.* at 1060 (quoting *Chaney*, 470 U.S. at 1060); *see Nat'l Fisheries Inst. v. U.S. Bur. of Customs & Border Protection*, 30 C.I.T. 1838, 465 F. Supp. 2d 1300, 1322 (2006) (the "analysis" and "holding" in *Chaney* "is confined to the question of whether and how a court should review an agency's refusal to exercise its enforcement authority"). It is unclear whether the Commission believes a refusal to take "enforcement steps" is somehow involved here—it is not[3]—but, even if it were, it has nothing to do with jurisdiction under § 1581(i).

### b.    Plaintiffs' claims concern the investigations' administration.

The Commission's second argument fares no better than its first. It asserts that Plaintiffs' claims "do not concern 'tariffs, duties, fees, or other taxes on the importation of merchandise'" which, the Commission says, "is a necessary predicate to invoke the claimed jurisdiction under 28 U.S.C. § 1581(i)." ECF No. 45 at 4. The claims, it continues, "do not bear any substantive connection" to the "matters specified in sections 1581(i)(1)(A)-(C)." *Id.* at 7.

Nothing in § 1581(i) precludes judicial review here. "On its face, subsection (i) is straightforward and comprehensive." *Conoco, Inc. v. U.S. Foreign-Trade Zones Bd.*, 18 F.3d 1581,

---

[3] Plaintiffs' claims do not challenge any determination by the Commission not to exercise enforcement authority but involve, instead, the manner in which the Commission exercised its discretion to release Plaintiffs' BPI and to allow the Firm's continued participation in the Current Investigations. *See Nat'l Fisheries*, 465 F. Supp. 2d at 1322 ("Plaintiffs' claims do not challenge any determination by Customs not to exercise enforcement authority but involve, instead, the manner in which Customs exercised its discretion to set the limits of liability for plaintiffs' continuous bonds under 19 U.S.C. § 1623.").

1588 (Fed. Cir. 1994). The Court has "exclusive jurisdiction of any civil action commenced against the United States, its agencies, or its officers, that arises out of any law of the United States providing for … tariffs, duties, fees, or other taxes on the importation of merchandise for reasons other than the raising of revenue" or "administration and enforcement with respect to" such matters. 28 U.S.C. § 1581(i)(1)(B) & (D). The term "with respect to" expands the jurisdictional grant to administrative matters relating to antidumping and countervailing duty investigations. The term "with respect to" is synonymous with "relating to." *Kannuu Pty Ltd. v. Samsung Electronics Co.*, 15 F.4th 1101, 1106 (Fed. Cir. 2021). To be sure, this grant does "not confer jurisdiction over an antidumping or countervailing duty determination which is reviewable by" the Court under 19 U.S.C. § 1516a(a). *Id.* § 1581(i)(2)(A). Such a determination, however, does not yet exist here.

Putting this together, "subsection (i), and in particular paragraph [(1)(D)], makes it clear that the court is not prohibited from entertaining a civil action *relating to* an antidumping or countervailing duty proceeding so long as the action does not involve a challenge to a determination specified in section 516A of the Tariff Act of 1930." H.R. Rep. No. 96-1235, at 48 (1980), *reprinted in* 1980 U.S.C.C.A.N. 3729, 3760 (emphasis added). Plaintiffs thus need "not challenge an underlying antidumping duty order" to properly invoke § 1581(i). *Dofasco Inc. v. United States*, 28 C.I.T. 263, 326 F. Supp. 2d 1340, 1345 (2004). "Section 1581(i) enables this court to entertain actions pertaining to preliminary administrative decisions related to antidumping duty proceedings provided there is no challenge to a determination specified in 19 U.S.C. § 1516a." *Nissan Motor Corp. v. United States*, 10 C.I.T. 820, 651 F. Supp. 1450, 1453 (1986).

For instance, although it has nothing to do with "tariffs, duties, fees or other taxes" *per se* and precedes "the conclusion of an investigation," a claim of administrative prejudgment falls within § 1581(i) because it raises "an issue that goes to the very heart of the administrative system."

*NEC Corp. v. United States*, 151 F.3d 1361, 1368-69 (Fed. Cir. 1998). Other examples of judicially reviewable preliminary administrative decisions abound. *See, e.g.*, *Dofasco*, 326 F. Supp. 2d at 1345 (invoking § 1581(i) in challenge to allegedly untimely agency review); *Makita*, 819 F. Supp. at 1103-04 (invoking § 1581(i) to review agency decision not to disqualify conflicted attorney); *Hyundai Pipe*, 11 C.I.T. at 240, 242 & n.10 (invoking § 1581(i) during antidumping investigation to enjoin BPI disclosure); *Sacilor*, 542 F. Supp. at 1022 (same).

Plaintiffs' claims fall comfortably within § 1581(i) because they relate to the administration of the underlying antidumping and countervailing duty investigations. Among other things, Plaintiffs seek dismissal of the petitions in the Current Investigations, disqualification of petitioner's counsel, and prevention of a BPI release in the Current Investigations. Individually or collectively, this relief plainly relates to the Current Investigations' administration.

### c.   Judicial review is not premature because Plaintiffs' remedies under other subsections of § 1581 are manifestly inadequate.

The Commission offers one last argument against subject-matter jurisdiction. Judicial review under § 1581(i) is premature, it says, because post-determination judicial review would not be "manifestly inadequate." *See* ECF No. 45 at 7-9. The Federal Circuit interprets "the jurisdiction provided by subsection (i) to be available only when jurisdiction under another subsection of 1581 is either unavailable or, if available, 'manifestly inadequate.'" *NEC*, 151 F.3d at 1368 (citing *Shakeproof Indus. Prods. Div. of Ill. Tool Works, Inc. v. United States*, 104 F.3d 1309, 1312 (Fed. Cir. 1997)). Under this principle, "where the core of a dispute is within § 1581(i), *i.e.*, it relates to a general issue of administration and enforcement policy as to the matters listed in § 1581(i)(1)-(3), § 1581(i) should function according to its terms, unless it is *clear* that another provision of § 1581 applies." *Parkdale*, 491 F. Supp. 2d at 1268 (emphasis in original).

Subsection 1581(i) is Plaintiffs' only available and adequate option. Plaintiffs cannot invoke another provision of § 1581 because the Current Investigations have not yet concluded. And awaiting their conclusion would be manifestly inadequate. The right to a proceeding untainted by an attorney's conflict of interest would be destroyed if its vindication is postponed. "'Continued participation as an attorney, by one who is disqualified by conflict of interest from so doing, will bring about the very evil which the rule against his participation is designed to prevent, and a subsequent reversal based upon such participation cannot undo the damage that will have been done as a result of such participation.'" *Yablonski v. United Mine Workers of Am.*, 454 F.2d 1036, 1039 (D.C. Cir. 1971) (quoting *Cord v. Smith*, 338 F.2d 516, 521-22 (9th Cir. 1959)); *see also Merle Norman Cosmetics, Inc. v. U.S. Dist. Ct.*, 856 F.2d 98, 101 (9th Cir. 1988) (in challenge to order denying motion to disqualify counsel, "if petitioners' claims were wellfounded, the damage would be irremediable"); *Makita*, 819 F. Supp. at 1108 (with a conflicted attorney involved, "it cannot be said with certainty that any taking of unfair advantage could be remedied *ex post facto*").

So too if Plaintiffs' BPI is wrongfully released before judicial review. Then "any rights of a party injured by either advertent or inadvertent use of confidential information in violation of a protective order could not redress that particular, irreparable harm." *Hyundai Pipe*, 11 C.I.T. at 243; *see also Sacilor*, 542 F. Supp. at 1023 (agency's BPI release "cannot be reviewed in a meaningful way in a judicial review at a later stage of the administrative proceedings").

The Commission attempts to distinguish *Hyundai Pipe* and *Makita* because, in those cases, the trade agency (correctly) did not contest jurisdiction under § 1581(i). *See* ECF No. 45 at 8-9. "Nevertheless, the court always has an obligation to satisfy itself on jurisdiction." *Brother Indus., Ltd. v. United States*, 15 C.I.T. 387, 769 F. Supp. 374, 376 (1991). That is exactly what happened in both *Hyundai Pipe*, 11 C.I.T. at 240, 242 & n.10 (finding that "jurisdiction is sound" and "this

court has jurisdiction over this action"), and *Makita*, 819 F. Supp. at 1103-04 & n.6 ("This is a forum which has jurisdiction over such matters."). Neither the *Hyundai Pipe* nor the *Makita* court casually assumed the existence of jurisdiction under § 1581(i).

The Commission also relies on *dicta* from *Shakeproof*, in which the court expressed "serious doubts" that interlocutory judicial review of an agency order denying attorney disqualification was available under § 1581(i) because it was unconvinced that post-determination review would be "manifestly inadequate." 104 F.3d at 1313. In addition to offering mere *dicta*, *Shakeproof* does not posit a categorical rule against jurisdiction under § 1581(i) where an attorney operates under a disabling conflict of interest. To the contrary, *Shakeproof* is distinguishable on its facts. There, the appellant sought to disqualify an attorney's law firm from participating in an antidumping investigation based on the attorney's former employment at the Department during an earlier antidumping investigation. The attorney was involved in neither investigation. *Id.* at 1312. Post-determination review may not have been inadequate. *Id.* at 1313.

Here, by contrast, the Attorney was not only involved in the Predecessor Investigations but represented ARC. And the Attorney and his Firm are prosecuting the Current Investigations. There is a substantial risk they will use client confidences and BPI to Plaintiffs' detriment, a risk absent from *Shakeproof*. Again, the Attorney's and his Firm's continued participation in the Current Investigations will bring about the very evil which the rule against their participation is designed to prevent. *See Merle Norman*, 856 F.2d at 101; *Yablonski*, 454 F.2d at 1039; *Cord*, 338 F.2d at 521-22; *Makita*, 819 F. Supp. at 1108.

If any Federal Circuit decision applies here, it is *NEC's* holding, not *Shakeproof's dicta*. Invoking jurisdiction under § 1581(i), the *NEC* plaintiff asserted that an antidumping investigation's conclusion was "preordained because of impermissible prejudgment" by the trade

agency. 151 F.3d at 1368. When the plaintiff filed its complaint, "it could not invoke the trial court's § 1581(c) jurisdiction because the antidumping investigation had not yet been completed." *Id.* The *NEC* court held this was "a classic example of a remedy that was 'manifestly inadequate'" because waiting until the agency completed its investigation before allowing the plaintiff to raise its due process concerns in court was a "fool's errand." *Id.*

So too here. If Plaintiffs must endure investigations tainted by attorney misconduct, then waiting until the Commission issues its final determinations would be a "fool's errand." Plaintiffs are attempting to adjudicate an issue going to the very heart of the administrative system—"unfair advantage," *Makita*, 819 F. Supp. at 1108. Accordingly, jurisdiction is proper under § 1581(i).

### 2. In the alternative, jurisdiction lies under 28 U.S.C. §§ 1361, 1585, and 2643(c)(1) to issue mandamus relief.

There is no reason for this Court to doubt its jurisdiction under § 1581(i), but even if there were reason for doubt, then the Court has jurisdiction to grant mandamus relief. *See* 28 U.S.C. §§ 1361, 1585 & 2643(c)(1); Am. Compl. ¶¶ 118-23. "The remedy of mandamus is available in extraordinary situations to correct a clear abuse of discretion or usurpation of judicial power." *In re Shared Memory Graphics LLC*, 659 F.3d 1336, 1339 (Fed. Cir. 2011). "This court has thus held that a party seeking a writ bears the burden of proving that it has no other means of obtaining the relief desired and that the right to issuance of the writ is clear and indisputable." *Id.* (cleaned up).

These requirements are satisfied here. Without another jurisdictional basis, Plaintiffs will have no other adequate means of obtaining relief. They will suffer irremediable damage if forced to wait to appeal. Any advantage the Coalition and its counsel possess as a result of counsel's prior representation of ARC could be put to use in the Current Investigations. And public perception of the legal profession could be damaged. Under these circumstances, courts grant mandamus relief to compel attorney disqualification. *See In re Am. Airlines, Inc.*, 972 F.2d 605, 608-09 (5th Cir.

1992); *Yablonski*, 454 F.2d at 1039; *Chugach Elec. Ass'n v. U.S. Dist. Ct.*, 370 F.2d 441, 443-44 (9th Cir. 1966); *Cord*, 338 F.2d at 521; *cf. Shared Memory Graphics*, 659 F.3d at 1340 (party whose counsel was disqualified could not "meaningfully obtain this relief other than by seeking a writ of mandamus" because, "[b]y the time an appeal here could be taken, the trial would be over, and [the party] would have gone through the litigation without the counsel of its choice").

In addition, as set forth in its motions for preliminary injunctions, Plaintiffs' right to proceedings untainted by attorney misconduct is clear and indisputable. *See* ECF No. 47-1 at 15-28; ECF No. 50 at 2-15; *Makita*, 819 F. Supp. at 1107-08; *Hyundai Pipe*, 11 C.I.T. at 243-45. The Firm's participation in the Current Investigations is a textbook case of a conflict of interest that demands disqualification. There is no question that the Attorney represented ARC before and is adverse to it now. Am. Compl. ¶¶ 22, 62. And all agree that the Current Investigations are a reprise of the Predecessor Investigations. *Id.* ¶ 50; ECF No. 46 at 13.

Mandamus is particularly appropriate here, given that the Commission has utterly abdicated its responsibility to maintain the integrity of its proceedings by insisting that it has "zero authority" to address conflict of interest. Am. Compl. ¶¶ 75-76. Having abjured the power to decide ethical violations, the Commission can hardly contend the conflict here is not disabling.

### D.    Plaintiffs' Claims Are Not Moot.

The Commission's contention that the original "Complaint is moot because the Commission has now responded to ARC's requests," ECF No. 46 at 2, ignores the live claims raised in the operative Amended Complaint.

Because a case or controversy must exist throughout the entirety of a suit, an action "becomes moot" and must be dismissed "when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Chafin v. Chafin*, 568 U.S. 165, 172

(2013). But a case "becomes moot only when it is impossible for a court to grant any effectual relief whatever to the prevailing party." *Knox v. Serv. Emps. Int'l Union, Local 1000*, 567 U.S. 298, 307 (2012) (internal quotation marks omitted). "As long as the parties have a concrete interest, however small, in the outcome of the litigation, the case is not moot." *Chafin*, 568 U.S. at 172.

This case is not moot because there is a live controversy regarding the validity of the Commission's decisions to: (i) release Plaintiffs' BPI to the Firm; and (ii) refuse to disqualify the Firm on the basis of the ethical violation and alleged APO breach. Plaintiffs retain a concrete interest in the Court's review of the Commission's decisions because the Commission has not yet released Plaintiffs BPI to the Firm, and the Attorney continues to represent the Coalition in the Current Investigations. If Plaintiffs prevail, the Court can award effectual relief by preventing the Commission from releasing Plaintiffs' BPI to the Firm and directing the Commission to disqualify the Attorney and the Firm, which would prevent Plaintiffs from suffering the harm they would otherwise experience. Am. Compl. ¶¶ 99, 108, 118, 124; *id.*, Prayer for Relief.

The Commission's argument that Plaintiffs' claims are moot now that it has denied their requests to disqualify the Attorney and the Firm and to deny the access to Plaintiffs' BPI, ECF No. 46 at 2, is misguided because the Commission's denials are the basis of Plaintiffs' claims for relief in the Amended Complaint. The Commission's denials permit the disclosure of Plaintiffs' BPI and the continued participation of the Attorney and the Firm in the Current Investigations, both of which concretely harm Plaintiffs. Plaintiffs allege that the denials were unlawful under the APA and the Due Process Clause. Am. Comp. ¶¶ 82–124. Plaintiffs' claims thus remain live.

The only mootness case cited by Commission is *Gerdau Ameristeel Corp. v. United States*, 519 F.3d 1336 (Fed. Cir. 2008), but *Gerdau* only reinforces that this case remains live. *Gerdau* involved a challenge by a domestic industry to a finding of a *de minimis* dumping margin in an

annual administrative review of an antidumping order. *Id.* at 1338-39. While the suit was pending, the Department liquidated the entries subject to review, making it impossible to obtain duties on them. *Id.* at 1339-40. Still, that did not moot the case, because in the next review the Department relied on the *de minimis* finding to revoke the antidumping order altogether. *Id.* at 1341. The case remained live because "liquidation [did] not eliminate the *only* remedy for the plaintiffs' challenge." *Id.* (emphasis added). So too here. Although the Commission has now formally denied both of Plaintiffs' requests, that does not eliminate their *only* remedy: this Court can still set aside those denials as unlawful under the APA.

### E.    Plaintiffs Have Not Failed To Exhaust Administrative Remedies.

Next, the Commission contends that the Amended Complaint should be dismissed for failure to exhaust administrative remedies because Plaintiffs did not give "the Commission the opportunity to consider and respond to the letters" before filing the complaint. ECF No. 46 at 1. The Commission's exhaustion defense fails for three independent reasons, but the most obvious is that Plaintiffs did in fact give the Commission an opportunity to rule on their claims, which the Commission overruled on the merits.

*First*, failure to exhaust is an affirmative defense, not a basis for dismissal under Rule 12(b). This Court "shall, where appropriate, require the exhaustion of administrative remedies." 28 U.S.C. § 2637(d). This "requirement … is *not* jurisdictional." *Weishan Hongda Aquatic Food Co. v. United States*, 917 F.3d 1353, 1363 (Fed. Cir. 2019). Indeed, given the qualifier "where appropriate," it is not even strictly mandatory. Indeed, the Court "may waive the requirement at the court's discretion," although there is a default presumption that it applies. *United States v. Nitek Electronics, Inc.*, 806 F.3d 1376, 1381 (Fed. Cir. 2015).

Because exhaustion is not jurisdictional, failure to exhaust is not properly the subject of a motion to dismiss the complaint under Rule 12(b). The "failure to exhaust is an affirmative defense." *Jones v. Bock*, 549 U.S. 199, 216 (2007); *see CEMEX, S.A. v. United States*, 19 C.I.T. 587, 594 (1995) ("The failure to exhaust administrative remedies [under section 2637(d)] is an affirmative defense that must be presented in the pleadings."). Hence, plaintiffs "are not required to specially plead or demonstrate exhaustion in their complaints." *Jones*, 549 U.S. at 216. Because a plaintiff need not plead *the absence* of such a defense, a defendant "must affirmatively state any … affirmative defense" in its responsive pleading. C.I.T. R. 8(d)(1).

*Second*, even if it were proper for the Commission to raise an exhaustion defense in a motion to dismiss, Plaintiffs did not need to exhaust their claims to bring this suit. The exhaustion requirement does not apply where the plaintiffs "charge that the agency failed to adhere to [a] clearly applicable precedent." *Ta Chen Stainless Steel Pipe, Ltd. v. United States*, 28 C.I.T. 627, 342 F. Supp. 2d 1191, 1206 n.18 (2004); *accord Hor Liang Indus. Corp. v. United States*, 337 F. Supp. 3d 1310, 1328 (C.I.T. 2018); *SeAH Steel Corp. v. United States*, 35 C.I.T. 326, 764 F. Supp. 2d 1322, 1325-26 (2011). The precedent in question need not be an appellate decision; *Philipp Brothers v. United States*, the first case to recognize this exception to the exhaustion requirement, involved a precedent of this Court. 10 C.I.T. 76, 630 F. Supp. 1317, 1320-21 (1986). Here, *Hyundai Pipe*, 11 C.I.T. at 241-44, clearly established that the Commission must not disclose BPI to a party credibly suspected to have committed an APO violation, and *Makita*, 17 C.I.T. 240, 819 F. Supp. 1099, clearly established that conflicted counsel in antidumping and countervailing duty investigations must be disqualified. Plaintiffs were "entitled to rely on the expectation that [the Commission] would act in accordance with this court's decision[s]" and so did not need to exhaust." *Philipp Bros.*, 630 F. Supp. at 1320.

24

*Third*, Plaintiffs have in fact exhausted their administrative remedies, even though they were not even required to do so. To exhaust administrative remedies, a plaintiff "must complete the administrative review process in accordance with the applicable procedural rules," "so that the agency addresses the issues on the merits." *Woodford v. Ngo*, 548 U.S. 81, 88, 90 (2006). The Commission concedes that ARC "properly filed its requests for Commission consideration of its allegations on October 14, 2022." ECF No. 46 at 1. The Commission also concedes that it "has now completed its review and made determination on Plaintiffs' disqualification and exclusion requests." ECF No. 42 at 18; *accord* ECF No. 46 at 2 ("the Commission has now responded to ARC's requests"); *see also id.* at 1 n.1 (noting that "Commerce responded to Plaintiffs' requests" as well). Specifically, Acting Secretary Hiner has determined in writing that "the evidence is insufficient to warrant institution of an APO breach" and that "there is not good cause" to disqualify the Firm because the Commission "does not adjudicate" violations of ethical rules. Am. Compl. ¶¶ 80-81. The Commission has had "a fair and full opportunity to adjudicate [Plaintiffs'] claims," and there are no more "steps that [it] holds out" for Plaintiffs to pursue. *Woodford*, 548 U.S. at 90. Plaintiffs' administrative remedies have been exhausted.

Despite its concessions, the Commission asserts that Plaintiffs have not exhausted because it did not have a reasonable opportunity to consider Plaintiffs' requests before Plaintiffs filed their *initial* Complaint on October 14. ECF No. 46 at 1. Plaintiffs, however, have now filed an *Amended* Complaint, which makes the allegations in the initial Complaint irrelevant. An amended complaint "that recites facts occurring after the [original] complaint was filed … can be relied upon to cure what would have been a defect in the plaintiff's case." *Black v. Sec'y of HHS*, 93 F.3d 781, 789-90 (Fed. Cir. 1996); *see Detroit Zoological Soc'y v. United States*, 10 C.I.T. 133, 630 F. Supp. 1350, 1354 (1986) ("A party may file a supplemental complaint to cure a … failure to exhaust

administrative remedies if the requisite actions are taken after filing a complaint."). The Amended Complaint pleads that the Commission formally rejected Plaintiffs' disqualification and exclusion requests on the merits seven days after the commencement of this suit. Am. Compl. ¶¶ 80-81. Exhaustion clearly poses no barrier to relief *now*, even if the Commission might have had a colorable objection at the outset of the litigation.

In any event, Plaintiffs had properly exhausted at the time they filed the initial Complaint given the exigencies that the Commission itself created in the Current Investigations. ARC filed its requests with the Commission on October 11, 2022. *Id.* ¶ 64. That was the earliest it reasonably could have, since it was only on that very day that the Firm rejected ARC's request to withdraw from the adverse representation. *Id.* ¶ 63. Strato, TTX, and Wabtec filed their requests the next day. *Id.* ¶ 73. The Commission rejected the requests on October 13, when Acting Secretary Hiner informed ARC's counsel via telephone that, despite the requests, the Commission would allow the Firm to participate and have access to Plaintiffs' BPI. *Id.* ¶ 74; *see also* ECF No. 42-9 ¶¶ 5-6. Plaintiffs filed suit the next day after the Commission had announced its final decision. Am. Compl. ¶ 75. The Commission objects that Plaintiffs' October 11 and 12 requests were not "properly filed" and that it did not receive a properly filed request until October 14. ECF No. 46 at 1. But the Commission offers no reasons for this objection, so the objection is forfeited. *See In re Killian*, 45 F.4th 1373, 1386 (Fed. Cir. 2022) ("a conclusory, skeletal argument" is forfeited).

Moreover, Plaintiffs' requests were properly filed. Under the Commission's regulations, requests for "the Commission to take particular action with respect to [an] investigation … shall be made by letter addressed to the Secretary, shall be placed by him in the record, and shall be

served on all parties." 19 C.F.R. § 201.12. Plaintiffs adhered to these requirements when they filed

their requests. Am. Compl. ¶¶ 64, 73.[4]

### F.      Plaintiffs Have Challenged Final Agency Actions.

The Commission asserts without explanation that "Plaintiffs have failed to identify a final

agency action," ECF No. 46 at 12, but the Amended Complaint identifies two final agency actions

subject to judicial review: (i) the decision to release Plaintiffs' BPI to the Firm; and (ii) the refusal

to disqualify the Firm on the basis of the ethical violation and alleged APO breach.

The APA permits review of "final agency action." 5 U.S.C. § 704. An action must meet

two conditions to qualify as "final." "First, the action must mark the 'consummation' of the

agency's decisionmaking process—it must not be of a merely tentative or interlocutory nature."

*Bennett v. Spear*, 520 U.S. 154, 177-78 (1997) (citation omitted). "And second, the action must be

one by which rights or obligations have been determined, or from which legal consequences will

flow." *Id.* at 178 (internal quotation marks omitted). In applying these conditions, courts have long

adopted "a 'pragmatic' approach" over a rigidly formal one. *U.S. Army Corps of Engineers v.*

*Hawkes Co.*, 578 U.S. 590, 599 (2016). The Commission's decisions to disclose BPI to the Firm

and not to disqualify it are both final under this test.

---

[4] Elsewhere in this litigation, the Commission has asserted that Plaintiffs' filings were improper because it "is against Commission Policy" to "refer[] to an allegation of breach of the APO" in the public record. ECF No. 42-9 ¶ 5. But whatever subregulatory policy the Commission may profess to have, it cannot abrogate the Commission's regulations, which *required* Plaintiffs to prepare their filing for the public record and serve it on all parties, 19 C.F.R. § 201.12, and which contain no exception for allegations of an APO breach, *id.* § 207.7(d)-(e). *See Baude v. United States*, 955 F.3d 1290, 1304 (Fed. Cir. 2020) ("government officials must follow their own regulations"). Moreover, Plaintiffs are not aware of any public Commission policy requiring requests to exclude an attorney from an APO to be confidential. Commission guidance does say that "correspondence relating to APO breaches" should not be made publicly available, but only in the context of discussing "correspondence between the Commission *and an alleged breaching party*." Office of the Sec'y, U.S. Int'l Trade Comm'n, *An Introduction to Administrative Protective Order Practice in Import Injury Investigations* 12 (6th ed. 2022) (emphasis added).

*First*, the decisions mark the consummation of the Commission's decisionmaking process on whether to disclose BPI and whether to disqualify. Both decisions are formal, written rejections of Plaintiffs' requests that contain no indication that the Commission is still making up its mind or intends to revisit the question later. Am. Compl. ¶¶ 80-81. Indeed, the Commission admits that it "has now *completed its review* and made determination on Plaintiffs' disqualification and exclusion requests." ECF No. 42 at 18 (emphasis added).

*Second*, both decisions "give rise[] to direct and appreciable legal consequences." *Hawkes*, 578 U.S. at 598. The decision to disclose, absent continuation of injunctive relief, would give the Firm the right to access Plaintiffs' BPI and imposes a corresponding duty on Plaintiffs to share it. Am. Compl. ¶ 102; *see Reliance Elec. Co. v. Consumer Prod. Safety Comm'n*, 924 F.2d 274, 277 (D.C. Cir. 1991) (explaining that "[a]gency decisions to release information" are subject to judicial review "pursuant to section 706 of the Administrative Procedure Act"). Rights and duties in "private information" of this kind are concrete legal interests. *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2204 (2021). The decision not to disqualify gives the Firm the right to participate in the Current Investigations, and—although the Commission does not purport to define the Firm's ethical duties to ARC—it necessarily has the *consequence* of nullifying ARC's "right to [its] attorney's loyalty." *Kellogg v. Watts Guerra LLP*, 41 F.4th 1246, 1264 (10th Cir. 2022).

These effects are not "the mere burden of waiting until the conclusion of administrative proceedings." ECF No. 46 at 10. The harms in question are distinct from the harm of increased duties and are not reparable by judicial review of the Commission's final injury determination in the Current Investigations. Naturally, "the revelation of a secret [is] an irrevocable act." *Makita*, 819 F. Supp. at 1107. And once the investigations conclude, a court cannot change the fact that

the Attorney and the Firm participated in them. Hence, the decisions at issue here are distinct final agency actions subject to judicial review now.

### G.       Plaintiffs Are Aggrieved By The Commission's Final Decisions.

The APA also limits review to persons "suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute." 5 U.S.C. § 702; *accord* 28 U.S.C. § 2631(i). The Commission's argument that Plaintiffs "have not demonstrated a concrete way in which they are aggrieved" is meritless. ECF No. 46 at 12.

All Plaintiffs are aggrieved by the Commission's decision that it is prepared to disclose their BPI. The "disclosure of private information" imposes legally cognizable harm. *TransUnion*, 141 S. Ct. at 2204. Plaintiffs' BPI is private information: each Plaintiff revealed "extraordinarily detailed" information about its internal operations to the Commission in response to Commission questionnaires, information that is not otherwise known to the public. Am. Compl. ¶¶ 44-45. The Tariff Act recognizes as much, which is why it provides that BPI "shall not be disclosed to any person without the consent of the person submitting the information" outside of the Act's strictly defined exceptions. 19 U.S.C. § 1677f(b)(1)(A). Disclosing Plaintiffs' BPI thus aggrieves each Plaintiff, which is compounded by the fact that the putative recipients represent an industry competitor to Plaintiffs. Am. Compl. ¶¶ 54-55. It is therefore unsurprising that this Court has recognized that wrongful disclosure of BPI causes *irreparable* harm. *See, e.g.*, S*NR Roulements*, 704 F. Supp. at 1107 ("Antidumping and countervailing duty actions require that certain documents, comments, and information be accorded confidential status because even inadvertent disclosure of business proprietary information can be highly damaging and irreparable by conventional legal remedies."); *Hyundai Pipe*, 11 C.I.T. at 243 ("Not only is the revelation of a secret an irrevocable act, but this and other courts have concluded that any rights of a party injured

by either advertent or inadvertent use of confidential information in violation of a protective order could not redress that particular, irreparable harm."); *Sacilor*, 542 F. Supp. at 1025 ("the failure to honor basic statutory safeguards designed to protect information which is of vital importance" is "a serious injury which cannot be repaired by conventional legal remedies").

At a minimum, ARC undoubtedly is aggrieved by the Commission's decision not to disqualify the Attorney and the Firm.[5] ARC is aggrieved in at least two distinct ways.

*First*, the Attorney—and, by imputation, the Firm—violated ARC's right to loyal representation. Attorneys owe a "fiduciary duty of loyalty" to their clients. *Bolton v. Crowley, Hoge & Fein, P.C.*, 110 A.3d 575, 582 (D.C. 2015); *accord* Model R. Prof'l Conduct 1.7 cmt. 14. Clients consequently have "a legally protected interest" in their attorneys' loyalty. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992); *see* D.C. R. Prof'l Conduct 1.7 cmt. 18 ("each client in [a] common representation has the right to loyal and diligent representation and the protection of Rule 1.9 concerning the obligations to a former client"); Model R. Prof'l Conduct 1.7 cmt. 18 (same). An attorney who brings an action against a former client in violation of ethics rules thus imposes an injury-in-fact. *See Kellogg*, 41 F.4th at 1264 ("invasion" of client's "right to an attorney's loyalty" "constituted an injury-in-fact"); *Scanlan v. Eisenberg*, 669 F.3d 838, 846 (7th Cir. 2012) (violation of fiduciary duty of loyalty by trustee imposed an injury-in-fact on trust beneficiary). Courts thus regularly entertain motions by current and former clients to disqualify conflicted counsel without inquiring into the existence of any injury besides the conflict itself. *See, e.g.*, *Dr. Falk Pharma GmbH v. GeneriCo, LLC*, 916 F.3d 975 (Fed. Cir. 2019); *Dynamic 3D Geosolutions LLC v. Schlumberger Ltd.*, 837 F.3d 1280 (Fed. Cir. 2016); *Ultimax Cement Mfg. Corp. v. CTS*

---

[5] This Court need not consider whether other Plaintiffs are injured by the Commission's refusal to disqualify the Firm because at least one Plaintiff—Amsted—has standing to pursue this claim. *Bowsher v. Synar*, 478 U.S. 714, 721 (1986).

*Cement Mfg. Corp.*, 587 F.3d 1339, 1356-57 (Fed. Cir. 2009); *Univ. of W. Va. Bd. of Trs. v. VanVoorhies*, 278 F.3d 1288, 1303-04 (Fed. Cir. 2002); *Atasi Corp. v. Seagate Technology*, 847 F.2d 826 (Fed. Cir. 1988). The Attorney and by imputation the Firm owe ARC a duty of loyalty, so ARC is aggrieved by their participation in the Current Investigations.

*Second*, disqualification of the Attorney and the Firm is also a "procedural right" designed "to protect [ARC's] concrete interests." *Lujan*, 504 U.S. at 572 n.7. Where a litigant alleges the violation of such a right, he need not meet "all the normal standards for redressability and immediacy." *Id.* Instead, he need only establish "some possibility that the requested relief will" prevent harm to his concrete interests. *Massachusetts v. EPA*, 549 U.S. 497, 518 (2007).

In the Current Investigations, ARC faces the prospect of the Commission imposing duties on its imports—a classic "pocketbook injury" that gives rise to standing. *Collins v. Yellen*, 141 S. Ct. 1761, 1779 (2021). As this Court has recognized, conflicted counsel in such an investigation has an "unfair advantage" on account of his "accumulated knowledge" of his former client's inner workings, increasing the chance that the petitioner will prevail and duties will be imposed. *Makita*, 819 F. Supp. at 1108. That is certainly the case here. In the Predecessor Investigations, ARC confided to the Attorney sensitive information about its strategic decisions. Am. Compl ¶¶ 32-35. Those decisions are central to the petition in the Current Investigations, which alleges that ARC's shifting of FRC production to Mexico harms the domestic industry. *Id.* ¶¶ 59-61. Disqualification would lessen or eliminate that unfair advantage. *See Makita*, 819 F. Supp. at 1108. Although the Commission had the power and duty to disqualify, 19 C.F.R. § 201.15(a); Am. Compl. ¶ 66, it unlawfully refused. And because there is "some possibility" that directing the Commission to disqualify would prevent duties from being unfairly imposed on ARC, ARC is aggrieved by the Commission's refusal to disqualify the Firm. *See Massachusetts*, 549 U.S. at 518.

### H.      Plaintiffs Have Plausibly Alleged Claims For Relief.

The Amended Complaint plausibly alleges four viable claims for relief: (i) the Commission's refusal to disqualify the Firm and the Attorney was arbitrary and capricious, Am. Compl. ¶¶ 82-99; (ii) its decision to disclose Plaintiffs' BPI was arbitrary and capricious, *id.* ¶¶ 100-08; (iii) its decision to disclose Plaintiffs' BPI violated constitutional due process, *id.* ¶¶ 109-18; and (iv) the Commission and its Acting Secretary should be subject to a mandamus order directing them to disqualify the Firm and the Attorney, *id.* ¶¶ 119-24. The Commission's motion to dismiss addresses only the claim that is now raised in Count II of the Amended Complaint, thus forfeiting any argument at the Rule 12(b)(6) stage that Plaintiffs have failed to state a claim with respect to Counts I, III, and IV. *See Killian*, 45 F.4th at 1386.

The Commission's attack on Count II is meritless because Plaintiffs have plausibly alleged that the Commission acted arbitrarily and capriciously by deciding to release Plaintiffs' BPI. Plaintiffs have identified a credible basis for suspecting that the Firm violated the terms of the Predecessor APO. The Predecessor APO authorized applicants to use BPI solely for purposes of the Predecessor Investigations. Am. Compl. ¶ 70. Yet the Firm added attorney and non-attorneys to the Predecessor APO *after* the Predecessor Investigations had finished. *Id.* ¶ 71. The Firm then declined to file an appeal challenging the negative injury determination in the Predecessor Investigations, retained access to the BPI from the Predecessor Investigations for seven weeks after the deadline for filing of a summons had passed, and then submitted the petition in the Current Investigations just two days after certifying destruction of their copies of the confidential record. *Id.* ¶ 50. And it applied to add the same individuals to the Current APO. *Id.* ¶ 51. This strongly suggests the Firm unlawfully used BPI released under the Predecessor APO to prepare its petition in the Current Investigations. *Id.* ¶ 70.

Despite these suspicious circumstances, the Commission decided to release Plaintiffs' BPI to the Firm without investigating. The Commission's entire explanation for this decision was that "the evidence is insufficient to warrant institution of an APO breach at this time." *Id.* ¶ 80. For two reasons, that decision was arbitrary and capricious.

*First*, the Commission did not adequately explain its refusal to investigate. The APA requires agency action to "be reasonable and reasonably explained." *FCC v. Prometheus Radio Project*, 141 S. Ct. 1150, 1158 (2021). Yet the Commission did not give *any* explanation as to how it determined that the suspicious circumstances Plaintiffs identified did not merit even a minimal investigation. To make matters worse, the Commission "must follow [its] own regulations." *Baude*, 955 F.3d at 1304. But it paid no heed to its regulation providing that "[t]he Commission *shall* determine whether any person has violated an administrative protective order." 19 C.F.R. § 207.7(e)(1) (emphasis added).

*Second*, the Commission failed to follow another of its regulations and precedents applying it, which together would have barred disclosing BPI to the Firm. *See* 19 C.F.R. § 207.7(a)(3)(ii) (providing that "an authorized [APO] applicant must not be involved in competitive decisionmaking for an interested party which is a party to the investigation"); *Common Alloy Aluminum Sheet from China*, USITC Inv. Nos. 701-TA-591 and 731-TA-1399 (Apr. 27, 2018) (Commission letter interpreting "competitive decisionmaking" in § 207.7(a)(3)(ii) to include assisting with trade investigations) (filed as Exhibit A to ECF No. 50). Agency action that violates the agency's own regulations and departs from its precedents without explanation is arbitrary and capricious. *In re Vivint, Inc.*, 14 F.4th 1342, 1352 (Fed. Cir. 2021); *Baude*, 955 F.3d at 1304.

## IV.   CONCLUSION

The Court should deny the Commission's motion to dismiss.

Dated: November 2, 2022

Respectfully submitted,

/s/ Richard P. Ferrin

Andrew T. Schutz
Ned H. Marshak
GRUNFELD, DESIDERIO, LEBOWITZ,
SILVERMAN & KLESTADT LLP
599 Lexington Avenue, 36th Floor
New York, NY 10022
(212) 557-4000

*Counsel for Plaintiff*
*Strato, Inc.*

James M. Smith
Shara L. Aranoff
Sooan (Vivian) Choi
COVINGTON & BURLING LLP
One City Center
850 Tenth Street, NW
Washington, DC 20001
(202) 662-6000

*Counsel for Plaintiff*
*TTX Company*

Douglas J. Heffner
Brian P. Perryman
Richard P. Ferrin
Carolyn Bethea Connolly
FAEGRE DRINKER
BIDDLE & REATH LLP
1500 K Street, NW, Suite 1100
Washington, DC 20005
(202) 230-5000

*Counsel for Plaintiffs*
*Amsted Rail Company, Inc. and*
*ASF-K de Mexico S. de R.L. de C.V.*

David M. Morrell
JONES DAY
51 Louisiana Avenue, NW
Washington, DC 20001
(202) 879-3939

*Counsel for Plaintiff*
*Wabtec Corp.*

**CERTIFICATE OF COMPLIANCE**

Pursuant to Chambers Procedures 2(B)(1) and (2), I hereby certify that the attached

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS** contains 10,927

words, according to the word-count function of the word processing system used to prepare this

brief (Microsoft Office for Microsoft 365).

Dated: November 2, 2022                              */s/ Richard P. Ferrin*
                                                    Richard P. Ferrin

US.353314155.02

35