UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE: THE HONORABLE GARY S. KATZMANN

---

**AMSTED RAIL COMPANY, INC.,**
**ASF-K DE MEXICO S. DE R.L. DE C.V.,**
**STRATO, INC., WABTEC CORP., and**
**TTX COMPANY,**

               **Plaintiffs,**

   **v.**

**UNITED STATES INTERNATIONAL**
**TRADE COMMISSION,**

               **Defendant,**

**and**

**COALITION OF FREIGHT COUPLER**
**PRODUCERS,**

               **Defendant-Intervenor.**

Court No. 22-00307

---

### DEFENDANT'S NOTICE OF SUPPLEMENTAL AUTHORITY

      Pursuant to the Court's instruction at the closed hearing held Wednesday, November 9, 2022, defendant, U.S. International Trade Commission ("Commission" or "ITC"), respectfully submits the following supplemental authorities to which the Commission referred (attached hereto):

1. *GEO Specialty Chems., Inc. v. Husisian*, 951 F. Supp. 2d 32 (D.D.C. 2013) (decision not appealed).

2. *Investigations Relating to Potential Breaches of Administrative Protective Orders, Sanctions Imposed for Actual Violations*, 56 Fed. Reg. 4846 (Feb. 6, 1991). {PDF ins. p. 1}

3.  *Investigations Relating to Potential Breaches of Administrative Protective Orders; Sanctions Imposed for Actual Violations*, 57 Fed. Reg. 12335 (Apr. 9, 1992). {PDF ins. p. 7}

4.  *Investigations Relating to Potential Breaches of Administrative Protective Orders, Sanctions Imposed for Actual Violations*, 58 Fed. Reg. 21991 (Apr. 26, 1993). {PDF ins. p. 15}

5.  *Practice Relating to Administrative Protective Orders*, 59 Fed. Reg. 16834 (Apr. 8, 1994). {PDF ins. p. 21}

6.  *Investigations Relating to Potential Breaches of Administrative Protective Orders, Sanctions Imposed for Actual Violations*, 60 Fed. Reg. 24880 (May 10, 1995). {PDF ins. p. 28}

7.  *Investigations Relating to Potential Breaches of Administrative Protective Orders, Sanctions Imposed for Actual Violations*, 61 Fed. Reg. 21203 (May 9, 1996). {PDF ins. p. 33}

8.  *Summary of Commission Practice Relating to Administrative Protective Orders*, 62 Fed. Reg. 13164 (Mar. 19, 1997). {PDF ins. p. 38}

9.  *Summary of Commission Practice Relating to Administrative Protective Orders*, 63 Fed. Reg. 25064 (May 6, 1998). {PDF ins. p. 43}

10. *Summary of Commission Practice Relating to Administrative Protective Orders*, 64 Fed. Reg. 23355 (Apr. 30, 1999). {PDF ins. p. 48}

11. *Summary of Commission Practice Relating to Administrative Protective Orders*, 65 Fed. Reg. 30434 (May 11, 2000). {PDF ins. p. 52}

12. *Summary of Commission Practice Relating to Administrative Protective Orders*, 66 Fed. Reg. 27685 (May 18, 2001). {PDF ins. p. 57}

13. *Summary of Commission Practice Relating to Administrative Protective Orders*, 67 Fed. Reg. 39425 (June 7, 2002). {PDF ins. p. 62}

14. *Summary of Commission Practice Relating to Administrative Protective Orders*, 68 Fed. Reg. 28256 (May 23, 2003). {PDF ins. p. 76}

15. *Summary of Commission Practice Relating to Administrative Protective Orders*, 69 Fed. Reg. 29972 (May 26, 2004). {PDF ins. p. 84}

16. *Summary of Commission Practice Relating to Administrative Protective Orders*, 70 Fed. Reg. 42382 (July 22, 2005). {PDF ins. p. 91}

17. *Summary of Commission Practice Relating to Administrative Protective Orders*, 71 Fed. Reg. 39355 (July 12, 2006). {PDF ins. p. 98}

18. *Summary of Commission Practice Relating to Administrative Protective Orders*, 72 Fed. Reg. 50119 (Aug. 30, 2007). {PDF ins. p. 106}

19. *Summary of Commission Practice Relating to Administrative Protective Orders*, 73 Fed. Reg. 51843 (Sept. 5, 2008). {PDF ins. p. 112}

20. *Summary of Commission Practice Relating to Administrative Protective Orders*, 74 Fed. Reg. 54071 (Oct. 21, 2009). {PDF ins. p. 119}

21. *Summary of Commission Practice Relating to Administrative Protective Orders*, 75 Fed. Reg. 66127 (Oct. 27, 2010). {PDF ins. p. 125}

22. *Summary of Commission Practice Relating to Administrative Protective Orders*, 76 Fed. Reg. 78945 (Dec. 20, 2011). {PDF ins. p. 130}

23. *Summary of Commission Practice Relating to Administrative Protective Orders*, 77 Fed. Reg. 76518 (Dec. 28, 2012). {PDF ins. p. 134}

24. *Summary of Commission Practice Relating to Administrative Protective Orders*, 78 Fed. Reg. 79481 (Dec. 30, 2013). {PDF ins. p. 140}

25. *Summary of Commission Practice Relating to Administrative Protective Orders*, 80 Fed. Reg. 1664 (Jan. 13, 2015). {PDF ins. p. 144}

26. *Summary of Commission Practice Relating to Administrative Protective Orders*, 81 Fed. Reg. 17200 (Mar. 28, 2016). {PDF ins. p. 149}

27. *Summary of Commission Practice Relating to Administrative Protective Orders*, 82 Fed. Reg. 29322 (June 28, 2017). {PDF ins. p. 155}

28. *Summary of Commission Practice Relating to Administrative Protective Orders*, 83 Fed. Reg. 17843 (Apr. 24, 2018). {PDF ins. p. 161}

29. *Summary of Commission Practice Relating to Administrative Protective Orders*, 83 Fed. Reg. 42140 (Aug. 20, 2018). {PDF ins. p. 168}

30. *Summary of Commission Practice Relating to Administrative Protective Orders*, 85 Fed. Reg. 7589 (Feb. 10, 2020). {PDF ins. p. 173}

31. *Summary of Commission Practice Relating to Administrative Protective Orders*, 86 Fed. Reg. 71916 (Dec. 20, 2021). {PDF ins. p. 177}

Respectfully submitted,


*/s/ Andrea C. Casson*
Andrea C. Casson
Assistant General Counsel for Litigation
Andrea.Casson@usitc.gov
Telephone: (202) 205-3105

*/s/ Brian R. Allen*

Brian R. Allen
Jane C. Dempsey
David A.J. Goldfine
Attorney-Advisors
Office of the General Counsel
U.S. International Trade Commission
500 E Street, SW
Washington, DC 20436

Brian.Allen@usitc.gov
Telephone: (202) 205-3034

Jane.Dempsey@usitc.gov
Telephone: (202) 205-3142

David.Goldfine@usitc.gov
Telephone: (202) 708-5452

*Attorneys for Defendant*


Dated: November 9, 2022

signed finds that no inference that Defendant submitted a false claim is warranted.

## CONCLUSIONS OF LAW

On the basis of the foregoing findings, the court concludes that Plaintiff's claims cannot be maintained under controlling law. Accordingly, Defendant's motion for judgment on partial findings pursuant to Rule 52(c) of the Federal Rules of Civil Procedure will be granted by separate order, and the Clerk of the Court will be directed to enter judgment in favor of Defendant.[3]



GEO SPECIALTY CHEMICALS,
INC., Plaintiff,

v.

Gregory HUSISIAN, et al., Defendants.

Case No. 12–CV–1819 RJL.

United States District Court,
District of Columbia.

June 24, 2013.

**Background:** Former client, the largest producer of glycine in the United States, brought action against its former outside counsel and his current law firm alleging breach of fiduciary duty. Defendants moved to dismiss.

**Holdings:** The District Court, Richard J. Leon, J., held that:

(1) Court of International Trade (CIT) did not have exclusive jurisdiction;

(2) claims met the amount-in-controversy requirement for diversity jurisdiction;

(3) former client failed to allege that former attorney received information during the representation that might be useful in his current representation of Chinese producers; and

(4) former client failed to allege that attorney's alleged conflict of interest in representing Chinese producers caused any injury.

Motion granted.

**1. Federal Courts ⚷2081, 2082**

When facing a motion to dismiss for lack of subject matter jurisdiction, it is the plaintiff's burden to prove by a preponderance of the evidence that the court does in fact have jurisdiction over the case. Fed. Rules Civ.Proc.Rule 12(b)(1), 28 U.S.C.A.

**2. Federal Civil Procedure ⚷1773, 1824**

Even where a defendant does not move to dismiss for failure to state a claim, courts can still dismiss a complaint sua sponte for failure to state a claim for which relief can be granted if, taking all the material allegations of the complaint as admitted and construing them in the plaintiff's favor, the court determines that the plaintiff's complaint could not possibly entitle him to relief. Fed.Rules Civ.Proc. Rule 12(b)(6), 28 U.S.C.A.

**3. Federal Courts ⚷3901**

Court of International Trade (CIT) did not have exclusive jurisdiction over breach of fiduciary duty claims brought by former client, the largest producer of glycine in the United States, against former attorney and his law firm related to their representation of Chinese glycine producers, where CIT could not award compensa-

---

**3.** After the trial, Defendant moved to dismiss its counterclaim, *see* Record Press Inc.'s Motion to Voluntarily Dismiss its Counterclaim

(Document No. 72); the court, by minute order, granted the motion, *see* 05/21/2013 Minute Order.

tory damages or enjoin attorney or firm from engaging in any conduct outside of the immediate purview of the International Trade Administration's antidumping proceeding. 28 U.S.C.A. § 1581(i).

**4. Federal Courts ⬤2515**

Breach of fiduciary duty claims brought by former client, the largest producer of glycine in the United States, against former attorney and his law firm related to their representation of Chinese glycine producers, in which client sought injunctive relief, met the amount-in-controversy requirement for diversity jurisdiction; business relationship arising from attorney and firm's representation of the Chinese producers appeared to be worth far more than $75,000, and it was alleged that attorney obtained confidential information from client which could possibly be used by foreign glycine producers to lower their tariffs on United States imports. 28 U.S.C.A. § 1332(a)(1).

**5. Federal Courts ⬤2525**

A complaint should not be dismissed for want of the requisite jurisdictional amount unless it appears to a legal certainty that the plaintiff's claim does not amount to the statutory minimum for diversity jurisdiction. 28 U.S.C.A. § 1332(a)(1).

**6. Federal Courts ⬤2531(1)**

In general, a plaintiff's allegation that the matter in controversy exceeds the jurisdictional amount requirement, even when it is in cursory form, is sufficient to evade dismissal for lack of diversity jurisdiction. 28 U.S.C.A. § 1332(a)(1).

**7. Federal Courts ⬤2518**

In evaluating whether the district court has diversity jurisdiction when the plaintiff seeks injunctive relief, the amount in controversy is measured by the value of the object of the litigation, and the court may look either to the value of the right that plaintiff seeks to enforce or to protect, or to the cost to the defendants to remedy the alleged denial; put another way, the value of injunctive relief for determining the amount in controversy can be calculated as the cost to the defendant. 28 U.S.C.A. § 1332(a)(1).

**8. Federal Courts ⬤2518**

Although it is often difficult or impossible to assign precise monetary values to important legal rights, an action seeking an injunction to protect or vindicate those rights can meet the amount-in-controversy requirement for diversity jurisdiction. 28 U.S.C.A. § 1332(a)(1).

**9. Attorney and Client ⬤106**

An attorney violates the District of Columbia Rule of Professional Conduct prohibiting an attorney from representing a client in a matter that is the same or substantially related to a former client's matter only if three elements are established: (1) the attorney accused of the violation is a former attorney with respect to a party presently before the court; (2) the subject matter of the former representation is the same as, or substantially related to, the present matter on which the alleged violation is based; and (3) the interests of the former client are adverse to the interests of the party represented by the attorney who is accused of violating the rule. D.C.Rules of Prof.Conduct, Rule 1.9.

**10. Attorney and Client ⬤113**

Former client, the largest producer of glycine in the United States, failed to allege that former attorney, which represented former client in its opposition to Commerce Department's International Trade Administration's (ITA) adjustment to antidumping duties paid by two existing Chinese glycine shippers, received information during the representation that might be useful in his current representa-

tion of Chinese glycine producers as they entered the United States market and requested "new shipper review" from ITA, as required to state a claim that attorney and his firm violated District of Columbia Rule of Professional Conduct prohibiting an attorney from representing a client in a matter that was the same or substantially related to a former client's matter; while the complaint listed certain confidential information attorney may have learned while representing former client, it never hinted at how that information might be useful to Chinese producers' new shipper review, nothing indicated that information from prior ITA proceedings would have any bearing on future ITA proceedings, and former client failed to allege what, if any, role it would have in the new shipper review. D.C.Rules of Prof.Conduct, Rule 1.9.

**11. Fraud ⊂⊃7, 58(1)**

To recover on a claim for breach of fiduciary duty, under District of Columbia law, the plaintiff must prove by a preponderance of the evidence that a fiduciary duty existed between the parties, that the defendant violated that fiduciary obligation, and that the plaintiff suffered damages as a proximate result of the violation.

**12. Attorney and Client ⊂⊃113**

Former client, the largest producer of glycine in the United States, failed to allege that former attorney's alleged conflict of interest in representing Chinese glycine producers caused any injury, as required

to state a claim for breach of fiduciary duty under District of Columbia law.

———

James L. Defeo, Thomas Feher, Thompson Hine LLP, Cleveland, OH, for Plaintiff.

James N. Markels, Arthur David Burger, Jackson & Campbell, P.C., Washington, DC, for Defendants.

### *MEMORANDUM OPINION*

RICHARD J. LEON, District Judge.

Plaintiff GEO Specialty Chemicals, Inc. ("plaintiff" or "GEO") brings this case against its former outside counsel, Gregory Husisian ("Husisian"), and his current law firm, Foley and Lardner LLP ("Foley") (collectively, "defendants"), alleging breach of fiduciary duty and seeking injunctive relief and monetary damages. *See generally* Compl. [Dkt. # 1]. Before the Court is Defendants' Motion to Dismiss for Lack of Subject Matter Jurisdiction [Dkt. # 10]. The Court finds that it *does* have subject matter jurisdiction, but it will nevertheless DISMISS the complaint *sua sponte* for failure to state a claim.

### BACKGROUND

GEO is the largest producer of glycine in the United States.[1] *See* Compl. ¶ 13. As such, the company benefits greatly

---

1. "Glycine is an amino acid, one of 20 used to make proteins in the human body," and it is used in several medical treatment regimens, including those for schizophrenia, type 2 diabetes, and brain damage caused by stroke. WebMD, http://www.webmd.com/ vitamins-and-supplements/glycine-uses-and-risks (last visited May 9, 2010); *see also* http://en. wikipedia.org/wiki/Glycine (last visited May 9, 2010) ("Glycine (abbreviated as Gly or G) is an organic compound with the formula $NH_2$

$CH_2$ COOH. Having a hydrogen substituent as its side-chain, glycine is the smallest of the 20 amino acids commonly found in proteins." (footnote omitted)). Glycine also has a wide range of non-medicinal uses. For instance, glycine is an additive in both human and animal food products, a buffering agent in cosmetics and toiletries, and a chemical component of rubber sponges and fertilizers. See http://en.wikipedia.org/wiki/Glycine.

from customs tariffs—also called "anti-dumping duties"—that are imposed by the United States Department of Commerce on Chinese glycine producers to prevent them from selling (or "dumping") glycine in the United States at below-market prices. *Id.* ¶¶ 7–8, 11, 13. In 1995, the Commerce Department published the Antidumping Duty Order—or "China Order," as plaintiffs call it—establishing the initial duties, and since then, the Commerce Department's International Trade Administration ("ITA") has reviewed and adjusted the tariffs in various proceedings under the heading "Glycine from the People's Republic of China (A–570–836)," which plaintiffs refer to as "the Glycine Trade Case." *Id.* ¶¶ 7, 10–13.

In 2007 and 2008, Husisian, then an attorney at the law firm of Thompson Hine LLP ("Thompson Hine"), represented GEO before the ITA. *Id.* ¶ 15. At that time, the Commerce Department was considering an adjustment to the antidumping duties paid by two existing Chinese glycine shippers. *Id.* ¶ 14. The Chinese companies favored a reduction; GEO opposed it. *Id.* Husisian worked more than 300 hours on the matter, during which time he had contact with GEO's legal team, consultants, and executives who collected and analyzed data, devised strategy, and monitored progress. *Id.* ¶¶ 15–16. Some of the individuals with whom Husisian interacted had access to GEO's confidential information, strategies, and work product. *Id.* ¶ 17.

Husisian left Thompson Hine in 2009 and is now a partner at Foley. *Id.* ¶ 18. In October 2012, GEO learned that Husisian and Foley are representing two Chinese glycine producers—Hebei Donghua Jiheng Fine Chemical Co., Ltd. and Hebei Donghua Jiheng Chemical Co., Ltd. ("the Hebei Companies")—as they enter the U.S. market and request a "new shipper re-

view" from the ITA. *Id.* ¶ 19. Husisian never communicated with GEO about these new representations, though his success in lowering antidumping duties for the Hebei Companies would harm GEO by allowing cheaper Chinese glycine to enter the United States. *Id.* ¶¶ 20, 22. GEO twice demanded that Husisian and Foley withdraw from their representation of the Hebei Companies; Husisian and Foley have refused, maintaining that there is no conflict of interest. *Id.* ¶¶ 23–25.

On November 8, 2012, after defendants refused for a second time to withdraw, GEO brought this lawsuit, claiming that defendants are violating D.C. Rule of Professional Conduct ("DCRPC") 1.9 and breaching fiduciary duties by representing the Hebei Companies. *Id.* ¶¶ 26–29. Five days later, GEO moved for a temporary restraining order, *see* Mot. for TRO [Dkt. # 4], which I denied and converted into a preliminary injunction motion, *see* Minute Entry (Nov. 19, 2012). Ultimately, I denied the preliminary injunction, finding that GEO had not established that any irreparable harm would result from defendants' conduct. *See* Mem. Op. at 13 [Dkt. # 25].

Now before this Court is Defendants' Motion to Dismiss for Lack of Subject Matter Jurisdiction. Defendants' primary contention is that GEO's claims fall under the exclusive jurisdiction of the Court of International Trade ("CIT"). *See* Mem. in Supp. of Defs.' Mot. to Dismiss ("Defs.' Mem.") at 2–5 [Dkt. # 10–1] ("GEO has filed suit in the wrong court."). They argue in the alternative that GEO has failed to exhaust administrative ITA remedies and that the Court has neither federal question nor diversity jurisdiction. *See id.* at 5–8. Predictably, GEO disagrees and counters with arguments supporting this Court's jurisdiction to hear and decide the

case. *See* Mem. in Opp'n to Defs.' Mot. to Dismiss ("Pl.'s Opp'n") [Dkt. # 15].

## LEGAL STANDARD

**[1]** Defendants argue that this case should be dismissed under Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction. When facing such a motion, it is the plaintiff's burden to prove by a preponderance of the evidence that the court does in fact have jurisdiction over the case. *See Budik v. Dartmouth–Hitchcok Med. Ctr.,* 937 F.Supp.2d 5, 11, 2013 WL 1386211, at *4 (D.D.C. Apr. 5, 2013) (citing *Biton v. Palestinian Interim Self–Gov't Auth.,* 310 F.Supp.2d 172, 176 (D.D.C.2004)). The Court, meanwhile, must construe the complaint liberally, accept all factual allegations as true, and draw all inferences in the plaintiff's favor. *Id.* (citing *Am. Nat'l Ins. Co. v. FDIC,* 642 F.3d 1137, 1139 (D.C.Cir.2011)). In addition, the Court may, if it so chooses, look beyond the complaint and consider material outside of the pleadings. *See Shade v. U.S. Congress,* 942 F.Supp.2d 43, 46–47, 2013 WL 1694462, at *2 (D.D.C. Apr. 19, 2013) (citing *Scolaro v. D.C. Bd. of Elections & Ethics,* 104 F.Supp.2d 18, 22 (D.D.C.2000)).

**[2]** Even where a defendant does not move to dismiss under Rule 12(b)(6), courts in our Circuit can still "dismiss a complaint *sua sponte* for failure to state a claim for which relief can be granted if, 'taking all the material allegations of the complaint as admitted and construing them in the plaintiff's favor,' the court determines that the plaintiff's complaint could not possibly entitle him to relief.'" *Epps v. U.S. Capitol Police Bd.,* 719 F.Supp.2d 7, 12 (D.D.C.2010) (quoting *Razzoli v. Fed. Bureau of Prisons,* 230 F.3d 371, 373–74 (D.C.Cir.2000)); *see also Jaeger v. United States,* No. 06–625(JDB),

2006 WL 1518938, at *1 (D.D.C. May 26, 2006).

Under Rule 12(b)(6), the Court must dismiss plaintiffs' complaint if it does not "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (citation and internal quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.; see also Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) (factual allegations must "be enough to raise a right to relief above the speculative level"). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Iqbal,* 556 U.S. at 679, 129 S.Ct. 1937 (quoting Fed.R.Civ.P. 8(a)(2)).

When analyzing a plaintiff's claims, the Court must "treat the complaint's factual allegations as true" and "grant plaintiff the benefit of all inferences that can be derived from the facts alleged." *Sparrow v. United Air Lines, Inc.,* 216 F.3d 1111, 1113 (D.C.Cir.2000) (citation and internal quotation marks omitted). But "the court need not accept inferences drawn by plaintiff[ ] if such inferences are unsupported by the facts set out in the complaint. Nor must the court accept legal conclusions cast in the form of factual allegations." *Kowal v. MCI Commc'ns Corp.,* 16 F.3d 1271, 1276 (D.C.Cir.1994). Finally, the Court "may consider only the facts alleged in the complaint, any documents either attached to or incorporated in the complaint and matters of which [the Court] may take judicial notice." *E.E.O.C. v. St.*

*Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C.Cir.1997).

## ANALYSIS

The Court finds that the CIT does *not* have exclusive jurisdiction over plaintiff's claims. Regardless of whether the CIT has the authority to disqualify conflicted counsel, defendants cite no authority—and the Court is not aware of any—standing for the proposition that the CIT can hear a breach of fiduciary duty action against a private party or award compensatory damages for a breach. This Court, on the other hand, has subject matter jurisdiction over the entire case pursuant to the diversity statute, 28 U.S.C. § 1332.

Although this Court has jurisdiction over plaintiff's putative claims, the Court cannot overlook that the complaint fails to plead facts supporting a plausible right to relief Indeed, drawing all inferences in plaintiff's favor, a factfinder could not possibly conclude that the Hebei Companies' new shipper review is "the same or [ ] substantially related" to the proceedings in which Husisian represented GEO. Nor are there allegations to support an inference that defendants' representation of the Hebei Companies is the proximate cause of any damages to GEO. Thus, plaintiff has failed to state a claim under either Rule 1.9 or a breach of fiduciary duty theory, and the Court will dismiss the complaint.

## I. This Court Has Subject Matter Jurisdiction Over Plaintiff's Claims.

### A. The CIT Does Not Have Exclusive Jurisdiction.

[3] The parties agree that 28 U.S.C. § 1581(i) is the relevant jurisdictional statute in this case. *See* Def.'s Mem. at 3; Pl.'s Opp'n at 2. It states, in part:

[T]he Court of International Trade shall have exclusive jurisdiction of any civil action commenced against the United States, its agencies, or its officers, that arises out of any law of the United States providing for—

(1) revenue from imports or tonnage;

(2) tariffs, duties, fees, or other taxes on the importation of merchandise for reasons other than the raising of revenue;

(3) embargoes or other quantitative restrictions on the importation of merchandise for reasons other than the protection of the public health or safety; or

(4) administration and enforcement with respect to the matters referred to in paragraphs (1)-(3) of this subsection and subsections (a)-(h) of this section.

In addition, defendants cite § 1581(c) and (i) as conferring on the CIT exclusive jurisdiction over objections to ITA rulings. *See* Def.'s Mem. at 3.[2] On its face, however, § 1581(i) refers to "civil action[s] commenced against the United States, its agencies, or its officers"; it says nothing about tort claims between private parties.

Undaunted, defendants argue that the CIT has, not just jurisdiction, but *exclusive* jurisdiction over this case because that court has addressed conflicts of interest and disqualification issues in the past. *See* Def.'s Mem. at 3–5 (citing *Makita Corp. v. United States*, 819 F.Supp. 1099 (Ct. Int'l Trade 1993); *Shakeproof Indus. Prods. Div. of Ill. Tool Works Inc.*, 104 F.3d 1309 (Fed.Cir.1997)). Please! Neither *Makita* nor *Shakeproof* support defendants' position.

---

**2.** *See also Camargo Correa Metais, S.A. v. United States*, 52 F.3d 1040, 1042–43 (Fed. Cir.1995); *Miller & Co. v. United States*, 824 F.2d 961, 963 (Fed.Cir.1987).

In *Makita*, the plaintiff brought a case against the United States and specifically the U.S. Department of Commerce, claiming that a petitioner in an ITA antidumping proceeding was represented by conflicted counsel, and seeking an injunction to remedy the conflict. 819 F.Supp. at 1100–02. The ITA determined that it did not have jurisdiction to enjoin counsel from participating in the proceeding or accessing documents under an administrative protective order based on an alleged conflict. *Id.* at 1101–02. The CIT disagreed and held that it *did* have jurisdiction, as well as "plenary authority and responsibility to supervise professional conduct." *Id.* at 1104. But it also found that its authority was limited in one key respect: "Since only the ITA is properly before the court, relief can only be granted against it." *Id.* at 1108. The CIT then granted plaintiff's injunction "to the extent that the defendants and their officers, employees, agents, servants, sureties and assigns be, and each hereby is, enjoined from allowing [conflicted counsel] any access to the ITA's investigations of [plaintiff]." *Id.* at 1108. The CIT *did not* hold that its jurisdiction extends to claims for injunctive and compensatory relief between private parties.

The same is true of *Shakeproof.* In that case, the plaintiff brought a claim against United States and the U.S. Department of Commerce claiming that the ITA behaved arbitrarily and capriciously when, over plaintiff's objection, it allowed an allegedly conflicted attorney to access confidential documents relating to an antidumping investigation. 104 F.3d at 1311–12. The CIT denied plaintiff's request for an injunction barring the attorney from participating in the antidumping proceeding, and the Federal Circuit affirmed, both finding that the attorney was not conflicted. *Id.* at 1312–14. The Federal Circuit explicitly bypassed, however, any consideration of

§ 1581(i) and the timing of the CIT's review. *Id.* at 1313. Instead, the court held that it was "unnecessary to decide that issue when it has concluded that the plaintiff was not entitled to relief in any event." *Id.* Because the court found that no conflict existed in the first place, it did not discuss the scope of potential relief, much less suggest that the CIT had jurisdiction to award monetary damages or issue an injunction directly against the law firm or lawyer.

Indeed, the Federal Circuit addressed the CIT's jurisdiction over claims between private parties just last year in *Sioux Honey Ass'n v. Hartford Fire Ins. Co.*, 672 F.3d 1041 (Fed.Cir.2012). There, the court held that the CIT had *no* jurisdiction over claims brought by domestic food producers against private customs bond sureties because " §§ 1581, 1582, and 1584 grant the [CIT] jurisdiction over specific types of claims mostly involving trade law that are ***asserted by or against the United States.***" *Id.* at 1051 (emphasis added). The court also found that supplemental jurisdiction provisions, § 1583 and § 1367, did not apply. *Id.* at 1051–54; *see also Pat Huval Rest. & Oyster Bar, Inc. v. U.S. Int'l Trade Comm'n*, 823 F.Supp.2d 1365, 1380–81 (Ct. Int'l Trade 2012) (denying motion to amend complaint to add claim against private party because claim would be outside of court's subject matter jurisdiction and therefore futile).

Of course, in this case, GEO asks for more than just an injunction directing the ITA to deny Husisian and Foley access to documents under an administrative protective order. *See* Compl. at 7 (seeking compensatory damages); Pl.'s Opp'n at 6 ("[T]he CIT could not do anything to enjoin Husisian and Foley from consulting or advising the Hebei Companies (or other Chinese producers) behind the scenes, using privileged and confidential information

they already have adverse to GEO."). According to *Makita*, such a narrow injunction is the only relief that the CIT could grant under these circumstances, *see* 819 F.Supp. at 1107–08, and that alone would require plaintiff to sue the United States rather than defendants, *see Sioux Honey Ass'n*, 672 F.3d at 1051–54. The CIT cannot award compensatory damages or enjoin Husisian or Foley from engaging in any conduct outside of the immediate purview of the ITA's antidumping proceeding.[3] Our Circuit has recognized that "the federal district courts can assert jurisdiction, under appropriate jurisdictional grants, over customs-related matters in which no adequate remedy exists in the" CIT. *Timken Co. v. Simon*, 539 F.2d 221, 226 n. 7 (D.C.Cir.1976). For the following reasons, the diversity statute is an "appropriate jurisdictional grant[ ]" here.

## B. This Court Has Diversity Jurisdiction,

**[4]** Plaintiff and defendants agree that the parties to this lawsuit are all citizens of different states as required by 28 U.S.C. § 1332(a)(1). *See* Def.'s Mem. at 7; Pl.'s Opp'n at 9; *see also* Compl. ¶¶ 1–3. Defendants contend, however, that GEO's damages are too speculative and therefore do not meet the amount-in-controversy requirement. Defendants are incorrect, and the Court will not dismiss the case on that ground.

**[5, 6]** It is well established in our Circuit that "a complaint should not be dismissed for want of the requisite jurisdictional amount unless it appears 'to a legal certainty' that the plaintiff's claim does not amount to [the statutory minimum]." *Smith v. Washington*, 593 F.2d 1097, 1099 (D.C.Cir.1978) (quoting *Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 346, 97 S.Ct. 2434, 53 L.Ed.2d 383 (1977)); *see also Rosenboro v. Kim*, 994 F.2d 13, 17 (D.C.Cir.1993) ("[T]he Supreme Court's yardstick demands that courts be very confident that a party cannot recover the jurisdictional amount before dismissing the case for want of jurisdiction."). This Court, too, has recognized that "[i]n general, '[a] plaintiff's allegation that the matter in controversy exceeds the jurisdictional amount requirement, even when it is in cursory form,' is sufficient to evade dismissal." *RDP Techs., Inc. v. Cambi AS*, 800 F.Supp.2d 127, 137 (D.D.C.2011) (quoting 14AA Charles Alan Wright et al., *Federal Practice & Procedure* § 3702 (4th ed.)) (collecting cases).

**[7, 8]** When the plaintiff seeks injunctive relief, "the amount in controversy is measured by the value of the object of the litigation." *Hunt*, 432 U.S. at 347, 97 S.Ct. 2434. The Court "may look either to the value of the right that plaintiff seeks to enforce or to protect[,] or to the cost to the defendants to remedy the alleged denial." *Smith*, 593 F.2d at 1099 (footnote and internal quotation marks omitted). Put another way, "[t]he value of injunctive relief for determining the amount in controversy can be calculated as the cost to the defendant." *Wexler v. United Air Lines, Inc.*, 496 F.Supp.2d 150, 153 (D.D.C.2007) (citing *Comm. for GI Rights v. Callaway*, 518

---

**3.** For the same reason, defendants' argument that GEO failed to exhaust administrative remedies is also meritless. *See Stewart v. Evans*, 275 F.3d 1126, 1130 (D.C.Cir.2002) ("[W]e cannot ask [plaintiff] to exhaust an administrative remedy that does not exist."). It bears noting that Thompson Hine attorney Matthew R. Nicely "contacted the Department of Commerce to determine whether the Department had a procedure for disqualifying counsel for conflicts of interest, and was told by Michele Lunch of the Import Administration's Chief Counsel's office that no such process exists." Affidavit of Matthew R. Nicely ("Nicely Aff.") ¶ 88 (Dkt. 18–1).

F.2d 466, 472–73 (D.C.Cir.1975)).[4]  Although it is often difficult or impossible to assign precise monetary values to important legal rights, an action seeking an injunction to protect or vindicate those rights can meet the amount-in-controversy requirement.  *See Comm. for GI Rights*, 518 F.2d at 472 (" 'Absolute certainty as to the amount is not essential; it suffices that there is a present probability that the damages or the right sought to be protected meet the statutory requirement.' " (quoting *Gomez v. Wilson*, 477 F.2d 411, 420 n. 51 (D.C.Cir.1973))).

Whether viewed from plaintiff's or defendants' perspective, there is no way for the Court to find "to a legal certainty" that the amount in controversy in this case is below $75,000.  In fact, there are strong indications that, if plaintiff is entitled to any relief at all, the value of that relief will greatly exceed $75,000.  As I see it, there are two "object[s] of the litigation" in this case: (1) defendants' ongoing representation of the Hebei Companies, which plain-

tiff seeks to enjoin; and (2) plaintiff's confidential information, the disclosure of which might constitute a breach of fiduciary duty and could be remedied by compensatory damages.

As to the first—defendants' representation of the Hebei Companies—from defendants' perspective, this business relationship appears to be worth far more than $75,000.  To say the least, "the cost to the defendant" of terminating that relationship would be substantial.  Indeed, according to his declaration, Husisian is the Hebei Companies' *only* attorney working on trade matters.  Declaration of Gregory Husisian ("Husisian Decl.") ¶ 50 [Dkt. # 16–1].  As of November 2012, he had already spent many hours meeting with his clients, learning about their operations and facilities, overseeing their preparation of a Commerce Department questionnaire, and drafting lengthy narrative portions of the questionnaire himself.  *Id.*  ¶¶ 53–54.  Looking ahead, Husisian anticipates (i)

---

4.  Defendants cite *National Consumers League v. General Mills, Inc.* ("*NCL* "), 680 F.Supp.2d 132, 140 (D.D.C.2010), and *National Organization for Women v. Mutual of Omaha Ins. Co.* ("*NOW* "), 612 F.Supp. 100, 107–08 (D.D.C. 1985), for the proposition that the value of damages must be measured from the plaintiff's view.  Def.'s Mem. at 7.  Yet, defendants ignore a material point of distinction between those cases and the one now before the Court.  Both *NCL* and *NOW* addressed whether the amount in controversy can be calculated by adding up, or aggregating, the values of separate claims brought by or against different parties.  *See NCL*, 680 F.Supp.2d at 139–40; *NOW*, 612 F.Supp. at 107–09.  Their holdings relied on the Supreme Court's decisions in *Snyder v. Harris*, 394 U.S. 332, 335–36, 89 S.Ct. 1053, 22 L.Ed.2d 319 (1969) and *Zahn v. Int'l Paper Co.*, 414 U.S. 291, 293–94, 94 S.Ct. 505, 38 L.Ed.2d 511 (1973), which held that multiple parties' (or class members') damages cannot be aggregated to reach a jurisdictional minimum.

Contrary to the parenthetical accompanying defendants' citation to *NOW*, that case

does not really "reject[ ] defendant's-view calculation of damages for diversity jurisdiction when injunctive and monetary relief has been requested."  Def.'s Mem. at 7.  What *NOW* actually says is:  "[T]o allow the defendant's view test to be used whenever injunctive relief is sought along with damages *in a class action* would undermine the holdings of *Zahn* and *Snyder* " because "viewing the jurisdictional amount issue from the defendant's point of view is simply another way of aggregating [plaintiffs'] claims."  612 F.Supp. at 108 (emphasis added); *cf. Breakman v. AOL LLC*, 545 F.Supp.2d 96, 99, 103–06 (D.D.C. 2008) (rejecting defendant's-view calculation as a form of aggregation when plaintiff was "acting in a representative capacity on behalf of the interests of the general public").

Aggregation is not at issue in this case, so I will follow the line of authorities recognizing defendant's-view damages calculations, even in cases where the plaintiff seeks monetary damages and injunctive relief.  *See Busby v. Capital One, N.A.*, 932 F.Supp.2d 114, 131–32, 2013 WL 1191180, at *10 (D.D.C. Mar. 25, 2013).

briefing a number of issues relating to the questionnaires, (ii) working on an "exhaustive (likely two-week) verification of" questionnaire responses, and (iii) "[a]fter the publication of the preliminary determination, . . . submi[tting] arguments related to the proper calculation of the antidumping duty rate." *Id.* ¶ 56d-e. Husisian's description of the extensive work involved in an antidumping review comports with GEO's allegation that Husisian worked more than 1,400 hours on glycine-related issues for GEO, over 300 of which were spent on the Commerce Department's review of its tariffs on Chinese producers. *See* Compl. ¶ 15; Nicely Aff. ¶¶ 15, 21. It is therefore reasonable to assume that defendants will bill the Hebei Companies upwards of $75,000 legal services, and loss of those fees is the "cost" of an injunction.

Turning to the second "object[ ] of the litigation"—plaintiff's confidential information—the Court is not at all confident, much less "very confident," that its value is less than $75,000. The Court must accept as true GEO's allegations that Husisian obtained confidential information from GEO. *See Budik,* 937 F.Supp.2d at 11, 2013 WL 1386211, at *4; *see also* Compl. ¶¶ 16–17, 20, 26, 31.[5] If the supposed information could be used by foreign glycine producers to lower their tariffs on U.S. imports, it would be extremely valuable both to the foreign producers and to GEO. Relatedly, a breach of fiduciary duty that results in the use of that information by a foreign producer could certainly result in compensatory damages exceeding $75,000. Assuming the alleged information exists and would be useful to the Hebei Companies, there is a very high probability that its value to both plaintiff and defendants far exceeds the statutory minimum for diversity jurisdiction. Accordingly, I find that I have jurisdiction over this matter under 28 U.S.C. § 1332.

## II. Plaintiff's Complaint Fails to State a Claim for which Relief Can Be Granted.

While I disagree with will defendants jurisdictional argument, I will nevertheless exercise my authority to dismiss plaintiff's complaint *sua sponte* because it fails to plead facts sufficient to state a claim for a violation of Rule 1.9 or a breach of fiduciary duty.

### A. The Complaint Does Not Plead a Violation of Rule 1.9 of the District of Columbia Rules of Professional Conduct.

[9] Rule 1.9 states that "[a] lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent." An attorney violates the rule only if three elements are established: (1) "the attorney accused of the violation is a 'former attorney' with respect to a party presently before the court," (2) "the subject matter of the former representation is the same as, or substantially related to, the present matter on which the alleged violation of Rule 1.9 is based," and (3) "the interests of the former client are adverse to the interests of the party represented by the attorney who is accused of violating Rule 1.9." *Paul v. Judicial Watch, Inc.,* 571 F.Supp.2d 17, 21 (D.D.C.2008).

The second element is of particular interest here. The DCRPC define "matter"

---

5. These are just the allegations in the complaint; whether GEO has supported them with sufficient facts to state a plausible claim for relief is another matter, to be taken up in Part II, *infra.*

as including "any litigation, administrative proceeding, lobbying activity, application, claim, investigation, . . . or any other representation, except as expressly limited in a particular rule." DCRPC 1.0(h). The comments to Rule 1.9 elaborate further on the scope of, and relationship between, "matters" in this context:

[2] The scope of a "matter" for purposes of this rule may depend on the facts of a particular situation or transaction. The lawyer's involvement in a matter can also be a question of degree. When a lawyer has been directly involved in a specific transaction, subsequent representation of other clients with materially adverse interests clearly is prohibited. On the other hand, *a lawyer who recurrently handled a type of problem for a former client is not precluded from later representing another client in a wholly distinct problem of that type even though the subsequent representation involves a position adverse to the prior client.* . . . Rule 1.9 is intended to incorporate District of Columbia and federal case law defining the "substantial relationship" test. *See, e.g., Brown v. District of Columbia Board of Zoning Adjustment,* 486 A.2d 37 (D.C.1984) (en banc); *T.C. Theatre Corp. v. Warner Brothers Pictures,* 113 F.Supp. 265 (S.D.N.Y. 1953), and its progeny.

[3] Matters are "substantially related" for purposes of this rule if they involve the same transaction or legal dispute or if there otherwise is *a substantial risk that confidential factual information as would normally have been obtained in the prior representation would materially advance the client's position in the subsequent matter* . . . . A conclusion about the possession of such information may be based on the nature of the services the lawyer provided the former client and

information that would in ordinary practice be learned by a lawyer providing such services.

DCRPC 1.9, cmts. 2, 3 (emphases added). In *Brown,* the District of Columbia Court of Appeals stated that two matters are "substantially related" if "it is reasonable to infer counsel may have received information during the first representation that might be useful to the second." 486 A.2d at 50; *see also Paul,* 571 F.Supp.2d at 25. The Restatement (Third) of the Law Governing Lawyers ("Restatement") § 132 provides a similar definition: matters are "substantially related" if "(1) the current matter involves the work the lawyer performed for the former client; or (2) there is a substantial risk that representation of the present client will involve the use of information acquired in the course of representing the former client, unless that information has become generally known." Under the second part of this definition, a "[s]ubstantial risk exists where it is reasonable to conclude that it would materially advance the client's position in the subsequent matter to use confidential information obtained in the prior representation." *Id.* cmt. d(iii).

GEO alleges that the Hebei Companies' new shipper review is "the same matter" as the Commerce Department's 2007 and 2008 review of two existing glycine producers. Compl. ¶ 26. But GEO fails to provide any support for this "legal conclusion[ ] cast in the form of [a] factual allegation[ ]." *See Kowal,* 16 F.3d at 1276. Upon closer scrutiny, it is clear that these matters are not at all "the same," but are in fact distinct proceedings, linked only at a high level of generality. The Department of Commerce has imposed a tariff on Chinese glycine producers for more than eighteen years, since March 1995, when it published its Antidumping Duty Order: Glycine From the People's Republic of

China, 60 Fed.Reg. 16,035, 16,116 (Mar. 29, 1995). Subsequent reviews are assigned the same identification number (A–570–836), but they are initiated by separate petitions brought by different parties seeking their own individualized relief. *See* Compl. ¶ 12.[6] The Hebei Companies' request for review, for instance, was published in October 2012. *See* Glycine From the People's Republic of China: Notice of Initiation of Antidumping Duty New Shipper Review, 77 Fed.Reg. 65,611, 65,669–70 (Oct. 30, 2012).

Under the DCRPC's definition of the word, each Commerce Department review or proceeding—including a new shipper review—is its own "administrative proceeding, . . . claim, [or] investigation" and therefore qualifies as its own "matter." Rule 1.0(h). It would be contrary to this definition, not to mention common sense, for this Court to lump together every glycine review that has occurred in the past eighteen years and that occurs indefinitely into the future simply because they deal with the same general subject matter under the same administrative I.D. number. GEO's use of the phrase "Glycine Trade Case" does not transform these separate investigative and administrative proceedings into a single "matter" for purposes of applying Rule 1.9.

**[10]** That said, it is possible that separate glycine matters may be "substantially related" under the tests set forth above. In this case, however, GEO has failed to allege facts that would allow a factfinder reasonably to infer that Husisian may have received information during his representation of GEO that might be useful in his representation of the Hebei Companies, as required by Rule 1.9 and *Brown*, 486 A.2d at 50.

The complaint lists certain forms of confidential information that Husisian may have learned while representing GEO ("information regarding GEO's positions, strategies and work product") as well as some information Husisian may have learned that is not alleged to be confidential ("research related to input values for glycine production"), Compl. ¶ 17, the disclosure of which could allegedly harm GEO, *id.* ¶¶ 26, 31. But GEO never even hints at how the information learned in the GEO representation might be useful to Hebei in its new shipper review, nor do the facts alleged in the complaint suggest that information from a 2007 and 2008 proceeding would have any bearing on a new shipper review conducted in 2013.

Even under *Brown's* fairly lax "may have learned information" standard, plaintiff still must plead facts showing that information from the first matter "might be useful in the second." 486 A.2d at 50. Plaintiff's complaint offers no insight into

---

**6.** *See, e.g.,* Glycine From the People's Republic of China: Preliminary Partial Affirmative Determination of Circumvention of the Antidumping Duty Order and Initiation of Scope Inquiry, 77 Fed.Reg. 21,387, 21,532 (Apr. 10, 2012) (preliminary results from review of Salvi Chemical Industries Limited and AICO Laboratories India Ltd., upon petition of U.S. producers); Glycine From the People's Republic of China: Preliminary Results of Antidumping Duty Administrative Review, 70 Fed. Reg. 17,583, 17,649 (Apr. 7, 2005) (preliminary results from review of petitioner-Baod-

ing Mantong Fine Chemistry Co., Ltd.); Notice of Preliminary Results of Antidumping Duty New Shipper Review: Glycine From the People's Republic of China, 68 Fed.Reg. 13,-615, 13,669 (Mar. 20, 2003) (preliminary results from new shipper review of petitioner-Tianjin Tiancheng Pharmaceutical Co. Ltd.). The Commerce Department also conducts its own periodic ''sunset reviews.'' *See, e.g.,* Glycine From the People's Republic of China: Continuation of Antidumping Duty Order, 76 Fed.Reg. 57,897, 57,951 (Sept. 19, 2011).

the nature of *either* proceeding.[7] Nor does the complaint specify what (if any) role GEO will have in the new shipper review. If GEO is uninvolved in that proceeding, then it is implausible that "information regarding GEO's positions, strategies and work product," Compl. ¶ 17, would be of any use whatsoever to the Hebei Companies. Furthermore, the complaint does not allege that the GEO's "research related to input values for glycine production" is confidential, or that knowledge of that information could "materially advance" the Hebei Companies' position. *See* DCRPC 1.9, cmt. 3; Restatement § 132, cmt. d(iii). Absent more fulsome allegations about the subject matter of the 2007 and 2008 GEO representation and the ongoing Hebei Companies representation, it is impossible to infer that the matters are "the same or [ ] substantially related," under Rule 1.9. Thus, the Court cannot find anything "more than the mere possibility of misconduct," and the complaint does not show that GEO is entitled to relief. *Iqbal*, 556 U.S. at 679, 129 S.Ct. 1937.

## B. The Complaint Does Not Plead a Breach of Fiduciary Duty

[11] Finally, the complaint fails to allege a breach of fiduciary duty that would entitle GEO to compensatory damages.

In the District of Columbia and in our Circuit, "[t]o recover on a claim for breach of fiduciary duty, the plaintiff must prove by a preponderance of the evidence that a fiduciary duty existed between the parties, that the defendant violated that fiduciary obligation, ***and that the plaintiff suffered damages as a proximate result of the violation.***" *Gov't of Rwanda v. Rwanda Working Grp.*, 227 F.Supp.2d 45, 64 (D.D.C.2002) (emphasis added) (citing *Landise v. Mauro*, 725 A.2d 445, 450 (D.C. 1998)).[8]

[12] As already discussed, the Court finds that GEO has failed to plead facts from which a factfinder could infer that defendants have violated a fiduciary obligation by engaging in a Rule 1.9 conflict of interest. *See supra* Part II.A. But even if the complaint adequately alleged a breach of duty, plaintiff's claim would still fail because GEO does not allege that the breach has caused any injury. The complaint merely alleges that the disclosure of GEO's confidential information would cause GEO significant harm, *see* Compl. ¶¶ 26, 31, but it does not say that any actual disclosure has occurred or that any harm has been suffered as a result of defendants' work for the Hebei Companies. Plaintiff, therefore, has not pleaded facts showing a plausible cause of action for breach of fiduciary duty.[9]

---

7. Plaintiff obviously need not reveal confidential information in order to plead its case, but it must at least describe "the general features of the matters involved" with enough specificity to establish that Husinian may have obtained information in the 2007 and 2008 representation that would be useful now. Restatement § 132, cmt. d(iii).

8. *See also Hendry v. Pelland*, 73 F.3d 397, 402 (D.C.Cir.1996) ("Compensatory damages make plaintiffs whole for the harms that they ***have suffered as a result*** of defendants' actions. Clients therefore need to prove that their attorney's breach ***caused them injury*** so that the trier of fact can determine whether

they are entitled to any damages." (emphases added)); *Bode & Grenier, L.L.P. v. Knight*, 821 F.Supp.2d 57, 64 (D.D.C.2011) ("In order to state a claim under District of Columbia Law for breach of fiduciary duty, [plaintiffs] must allege . . . [,] to the extent plaintiff seeks compensatory damages[,] ***the breach proximately caused an injury.***" (emphasis added; internal quotation marks omitted)).

9. Despite its flaws, the complaint does not allege facts that *foreclose* plaintiff's entitlement to relief, and it is possible that GEO could amend its allegations to cure the aforementioned defects. *See Epps*, 719 F.Supp.2d at 13.

## CONCLUSION

For all the foregoing reasons, defendant's Motion to Dismiss [Dkt. # 10] is hereby DENIED, but plaintiff's Complaint is DISMISSED for failure to state a claim. An appropriate order shall accompany this Memorandum Opinion.



---

**Mihretu Bulti DASISA, Plaintiff,**

**v.**

**DEPARTMENT OF TREASURY, Defendant.**

**Civil No. 12–cv–1359 (RCL).**

United States District Court, District of Columbia.

June 26, 2013.

**Background:** Taxpayer brought action alleging that Department of Treasury (DOT) improperly offset a portion of his tax refund to collect a debt wrongfully claimed by the Department of Education. DOT moved to dismiss, and taxpayer moved for declaratory judgment and other relief.

**Holding:** The United States District Court for the District of Columbia, Royce C. Lamberth, Chief Judge, held that it lacked jurisdiction.

Defendant's motion granted; plaintiff's motions denied.

---

**1. Administrative Law and Procedure** ⇐663

While the Administrative Procedure Act (APA) creates a general, presumptive right to sue federal agencies, this presumption is overcome by specific statutory language denying jurisdiction. 5 U.S.C.A. § 551 et seq.

**2. Internal Revenue** ⇐4973

District court lacked jurisdiction in taxpayer's action alleging that Department of Treasury (DOT) improperly offset a portion of his tax refund to collect a debt wrongfully claimed by the Department of Education; the agency claiming taxpayer's debt, not the debt collector, was the proper defendant. 26 U.S.C.A. § 6402(g); Fed. Rules Civ.Proc.Rule 12(b)(1), 28 U.S.C.A.; 31 U.S.C.A. §§ 3711(g), 3716(a); 31 C.F.R. § 285.5(d)(6).

**3. Internal Revenue** ⇐4973

Statute under which federal courts are denied jurisdiction in actions challenging offsets of tax overpayments explicitly reserves plaintiff's ability to sue agency-claimants directly, but it prohibits suits against Department of Treasury (DOT) merely for carrying out its statutory obligation to collect debts that agencies refer to it. 26 U.S.C.A. § 6402(g).

---

Mihretu Bulti Dasisa, Washington, DC, pro se.

Matthew E. Maguire, U.S. Attorney's Office, Civil Division, Geoffrey John Klimas, U.S. Department of Justice, Washington, DC, for Defendant.

### MEMORANDUM OPINION AND ORDER

ROYCE C. LAMBERTH, Chief Judge.

Plaintiff Mihretu Bulti Dasisa brings this action against defendant Department of Treasury ("DOT"). Defendant now moves to dismiss the case for lack of subject matter jurisdiction and plaintiff moves for summary judgment. Upon consideration of defendant's motion [10] to dismiss

for Management provides an insider's view of this unique unit of the National Park System, including a description of its purpose and significance, its natural and cultural resources, the laws and policies that guide its management, the internal and external influences that affect its management, and the specific issues that are currently under consideration within its boundaries. Copies of the document are available upon request by writing to General Superintendent, Golden Gate National Recreation Area, Bldg. 201, Fort Mason, San Francisco, California 94123, or by telephoning (415) 556–0111.

This meeting is open to the public. Persons wishing to receive a copy of the draft Statement for Management can write to General Superintendent, Golden Gate National Recreation Area, Bldg. 201, Fort Mason, San Francisco, California 94123, or telephone (415) 556–0111.

Persons wishing to receive the Staff Report for Trail Designations within the Golden Gate National Recreation Area should contact the Staff Assistant, Golden Gate National Recreation Area, Building 201, Fort Mason, San Francisco, California 94123 or telephone (415) 556–4484.

These meetings will be recorded for documentation and transcribed for dissemination. Minutes of the meetings will be available to the public after approval of the full Advisory Commission. Transcripts will be available for the February 21 public meeting after March 14, 1991. For copies of the minutes contact the Office of the Staff Assistant, Golden Gate National Recreation Area, Building 201, Fort Mason, San Francisco, California 94123.

Dated: January 23, 1991.

**Stanley T. Albright,**

*Regional Director, Western Region.*

[FR Doc. 91–2833 Filed 2–5–91; 8:45 am]

**BILLING CODE 4310-70-M**

## INTERNATIONAL TRADE COMMISSION

### Investigations Relating to Potential Breaches of Administrative Protective Orders, Sanctions Imposed for Actual Violations

**AGENCY:** U.S. International Trade Commission.

**ACTION:** Summary of Commission practice relating to administrative protective orders.

**SUMMARY:** This notice provides a summary by the International Trade Commission of its investigations of breaches of Administrative Protective

Orders (APOs) issued in connection with investigations under title VII of the Tariff Act of 1930.

This notice is intended to inform the public of the Commission's experience with APO breaches. The Commission also intends that this notice will educate and alert representatives of parties to Commission proceedings as to some specific types of APO breaches encountered by the Commission and representative of parties before the Commission. This notice is illustrative only and does not limit the Commission's Rules or standard Protective Order, nor does it provide an exclusive list of conduct that will be deemed to be a breach of the Commission's APOs.

**FOR FURTHER INFORMATION CONTACT:** Charles H. Nalls, Esq., Assistant General Counsel for Antidumping and Countervailing Duty Investigations, U.S. International Trade Commission, telephone 202–252–1106.

**SUPPLEMENTARY INFORMATION:** The discussion below illustrates APO breach investigations that the Commission has conducted between August 29, 1988 and the date of issuance of this Notice including a description of sanctions imposed. The Commission will report a summary of its completed investigations of possible breaches of Commission APOs semiannually in an effort to educate those obtaining access under an APO of the common problems encountered in handling business proprietary information (BPI).

Section 1332 of the Omnibus Trade and Competitiveness Act of 1988 requires the Commission to release under APO to the authorized representatives of interested parties in dumping and countervailing duty investigations the business proprietary information (BPI) collected by the Commission in the course of such investigations. 19 U.S.C. 1677f (Supp. 1990). The Commission has implemented procedures governing the release of BPI under APO. 19 CFR 207.7 (1990). The regulations provide that the Secretary of the Commission will provide BPI only to "authorized applicants" who agree to be bound by the terms and conditions of a protective order. The standard administrative protective order form for antidumping and countervailing duty investigations issued by the Commission requires the applicant to swear that he or she will:

(1) Not divulge any of the BPI obtained under the order and not otherwise available to him, to any person other than:
 (i) Personnel of the Commission concerned with the proceeding;
 (ii) The person or agency from whom the information was obtained;

 (iii) An attorney, consultant, or expert who is employed on behalf of the authorized applicant or its client, and who has been granted access by the Secretary to BPI under the APO; or
 (iv) Other persons who are independently contracted with, employed by, or supervised by, the authorized applicant; who have a need thereof in connection with the proceeding and who have furnished a similar statement;

(2) Use such information solely for the purposes of the proceeding or for judicial or Commission review thereof;

(3) Not consult with any person not described in paragraph (iii) or (iv) above concerning such BPI without first having received the written consent of the Secretary and the attorney of the party from whom such BPI was obtained;

(4) Not copy or otherwise reproduce any BPI obtained under the APO except in accordance with the terms of the APO;

(5) Whenever information obtained under the APO is not being used, store such information in a locked file cabinet, vault, safe, or other suitable container;

(6) Serve all documents containing BPI as directed by the Secretary and pursuant to § 207.7(f) of the Commission regulations;

(7) Report promptly to the Secretary any breach of the APO;

(8) Promptly return information obtained under the APO to the submitter or Secretary, if the Secretary so orders;

(9) Return or destroy all copies of information obtained under the APO within seven days of the completion of the investigation or review thereof.

Breach of the protective order may subject an applicant and his "partners, associates, employer, and employees" to administrative sanctions "as the Commission determines to be appropriate" including (1) Forfeiture of practice in any capacity before the Commission for up to seven years; (2) referral to a U.S. Attorney or to the ethics advisor of an appropriate professional organization; (3) public release of or striking from the record any information or briefs submitted by, or on behalf of, the offender or the party represented by the offender, (4) denial of further access to business proprietary information in the current or any future proceedings before the Commission, and (5) any other administrative sanctions as the Commission determines to be appropriate, including public and private reprimands. 19 CFR 207.7(d).

Prior to April of 1989, upon identification of a possible breach, the Commission conducted its breach investigations by a procedure that involved sending one letter to the suspected APO breacher seeking information concerning the alleged breach and comments concerning appropriate sanctions. The letter was in a standard format that cited facts

known to the Commission staff concerning the suspected breach and requested the suspected breacher to provide information and the suspected breacher's views on possible sanctions, including any circumstances that the suspected breacher believed mitigated any breach that may have occurred. The Commission then would determine whether a breach had occurred and what, if any, sanctions should be applied.

In April of 1989, the Commission delegated authority to the Secretary for the issuance of letters of inquiry to suspected breachers of APO orders in Title VII investigations. If, based on the response made to this letter of inquiry, the Commission determines that a breach has occurred, the Commission now issues a second letter asking the breacher to address the question of possible sanctions. The Commission then decides the appropriate sanction. The Commission retains sole authority to make final determinations regarding the existence of a breach and the appropriate sanction if a breach occurred.

The records of Commission investigations of APO breaches are not publicly available and are exempt from disclosure under the Freedom of Information Act, 5 U.S.C. 552.135(b) of the Customs and Trade Act of 1990, 19 U.S.C. 1677f(g).

## I. Breach Investigations Generally

The breach most frequently involved by the Commission involves paragraph (1) of the standard APO which prohibits the dissemination of BPI to unauthorized persons. Such dissemination usually occurs as the result of failure to delete BPI from public versions of documents filed with the Commission. The other most common breaches involve: The failure to properly bracket BPI in proprietary documents filed with the Commission; the failure to immediately report known violations of an APO; improper or inadequate application for access to BPI; failure to adequately supervise junior attorneys or non-legal personnel in the handling of BPI in certain circumstances; and failure to promptly destroy confidential information.

### A. Dissemination of BPI to Unauthorized Persons

The Commission has determined that making BPI available to unauthorized persons may constitute a breach of the APO, regardless of whether the unauthorized recipients actually read the information. The Commission has found several breaches of this sort. Such breaches are typically the result of: (1)

The failure to adequately review the contents of a public version of a document for BPI prior to filing the document with the Commission or sending it to a third party or (2) failure to keep the confidential and public service lists separate when serving documents.

Several attorneys failed to redact BPI from public versions of documents which they have filed with the Commission and served on the public service list. The Commission also has investigated several instances of inadvertent service of a confidential document to someone on the public service list. On at least one occasion, attorneys sent documents containing BPI to their client without thoroughly screening the document for BPI. All of these instances were promptly reported by the breaching party and the documents were retrieved immediately; in some cases the envelopes containing the documents had not yet been opened by the recipient. Nonetheless, all of these instances involved a degree of carelessness in making BPI available to those not entitled to have access and, thus, were breaches of the APOs. In at least two instances, the breaching party, while attempting to mitigate the damage caused by the breach by promptly serving replacement pages on non-APO entities, committed additional breaches by revealing different BPI in the replacement pages.

The Commission has determined that no breach occurred when documents apparently containing BPI were served on those not entitled to access under an APO only when the BPI was otherwise available to the serving party, either because it was BPI submitted by that party or because that party was able to conclusively demonstrate that the alleged BPI was otherwise available to the public before the date of the alleged breach. Waiver of confidential treatment by the submitting party after the alleged breach occurred has not been found to be adequate to excuse the breach.

### B. Failure to Properly Bracket BPI in Confidential Submissions

The Commission considers the omission of appropriate brackets in confidential documents, in most circumstances, to be a breach of the APO, even if the information is deleted from the public version of the document. The Commission has repeatedly observed that failure to bracket BPI promotes inadvertent disclosure of confidential information because recipients are not alerted that the information is BPI and may reasonably rely on the lack of bracketing as an indication that the information is not

confidential and may be disclosed to their client or the public. Commission rule § 207.7(f)(3), incorporated by reference into all APOs, requires BPI to be clearly marked and segregated from other material in confidential submissions. In several instances, attorneys have filed confidential versions of documents in which some BPI was not bracketed and then served those documents on the confidential service list. The only time that such circumstances were determined not to constitute a breach was when the failure to bracket was discovered at the time of filing and proper replacements were served by hand prior to receipt of the unbracketed version.

### C. Failure to Promptly Report A Breach to the Commission

The Commission has found the failure to report a breach to be a separate offense and has sanctioned attorneys who did not report or delayed in reporting a violation once they became aware that it had taken place. Unlike breaches resulting from filing and proofreading mistakes, which are normally inadvertent and the result of some degree of negligence, failure to report a breach may involve a conscious choice by the APO signatory. This failure to report a breach, which is required by the APO, normally has been treated as an intentional breach. Intentional breaches usually are grounds for more severe sanctions.

### D. Failure To Supervise Junior Attorneys and Clerical Personnel

Generally, APO signatories have not been sanctioned for a breach of an order unless they in some way have participated in the breach, or were on notice of the lack of adequate safeguards for handling of BPI at the firms involved or of the lack of due care or training of other APO signatories working with them. For example, the APO signatory responsible for sending confidential documents to unauthorized parties would be responsible for the breach. The other APO signatories at the firm normally would not be liable, assuming that the Commission determines that they did not cause the breach or could not have forestalled the breach, and that the breaching signatory was trained in the handling of APO materials. In contrast, depending upon the circumstances, the APO signatory who was the superior of a breaching APO signatory who either committed a previous APO violation, or who was known to be inexperienced and had not been trained in the handling of APO materials, could be liable for failure to

prevent breaches by that other signatory. The Commission may determine that the supervisor or superior was on notice of the APO signatory's prior breach or inexperience and failed to take adequate precautionary measures to prevent subsequent breaches.

In cases in which clerical employees or support personnel have breached, the APO signatory who vouched for these employees has been held responsible by the Commission for the breaches by staff working under his or her direction and control.

### E. Failure to Promptly Destroy Confidential Information or Misuse of Confidential Information

Commission regulation § 207.7 requires that APO signatories destroy documents containing BPI upon the termination of an antidumping or countervailing duty investigation. The standard APO form allows signatories to retain APO material only during judicial review of a Commission determination, and only in anticipation that the Commission APO will be promptly replaced by a Judicial Protective Order. Although the Commission has not, as yet, conducted inquiries concerning this form of breach in connection with title VII investigations, it has determined that similar APOs in section 337 proceedings were breached by the failure to promptly return or destroy APO material following termination of the section 337 proceeding. As with section 337 APOs, title VII APO material may not be used in collateral proceedings, such as proceedings at the Commerce Department, or other investigations by the Commission, but only in the specified Commission proceedings or judicial review of those determinations for which the information was released.

### II. Sanction Determinations

Sanctions for APO violations serve two basic interests: (a) Preserving the confidence of submitters of BPI in the Commission as a reliable protector of BPI, and (b) disciplining breachers and deterring future violations. As the Conference Report to the Omnibus Trade and Competitiveness Act of 1988 observed, "the effective enforcement of limited disclosure under administrative protective order depends in part on the extent to which private parties have confidence that there are effective sanctions against violation." H.R. Conf. Rep. No. 576, 100th Cong., 1st Sess. 623 (1988). The Commission has worked to develop consistent jurisprudence, not only in determining whether a breach has occurred, but also in selecting an

appropriate sanction. In determining the appropriate sanction, the Commission generally considers mitigating factors such as whether the breach was unintentional, lack of prior breaches committed by the breaching party, the mitigating measures taken by the breaching party, the promptness with which the breaching party reported the violation to the Commission, and any relevant circumstances peculiar to the situation.

The Commission has found aggravating circumstances when APO violations are found to be intentional or repeated, where they cause significant commercial damage to the submitter, and when the violating signatory is grossly negligent. While the Commission takes seriously its obligation to protect the submitter's information, the Commission also must act to protect its ability to obtain BPI, and create confidence in its ability to protect it. Thus, the Commission does not consider factors such as the lack of complaint by or commercial harm to the party whose information was disclosed, the alleged lack of sensitivity of the information disclosed, or the lack of financial benefit to the breaching party as mitigating factors in choosing the appropriate sanction for the breach. The disclosure of highly sensitive information, demonstrated commercial harm to the party whose information was disclosed, or the deriving of a strategic or financial benefit from breach may be circumstantial evidence, of, *inter alia,* an intentional breach, and thus could constitute an aggravating circumstance warranting a more severe sanction.

The Commission's rules, at 19 CFR 207.7(d) indicate that the breacher of an APO is subject to sanctions including being barred from practice before the Commission in any capacity, and that the Commission may also impose this sanction not only on the individual breacher but on "such person's partners, associates, employer, and employees." With respect to the sanctions described in this notice, the Commission has sanctioned a firm when it has been unable to identify specific culpable individuals at the breaching firm. However, this should not be construed as a limitation on the Commission's ability, in other appropriate circumstances, to issue sanctions for breaches of an APO against the firm for which an individual who breached an APO worked.

### III. Specific Breach Investigations by the Commission

The following case studies are presented to illustrate the various types of APO breaches found by the

Commission and the sanctions imposed by the Commission. In addition, the case studies discussed the factors considered by the Commission as mitigating the sanctions imposed in particular instances. While each situation is slightly different, the Commission has pursued a consistent jurisprudence over the period that the new APO procedures have been in effect. The Commission has not included some of the specific facts in the descriptions of investigations where such disclosure would reveal the identity of a particular breacher. Thus, in some cases, apparent inconsistencies in the facts set forth in this Notice result from the Commission's inability to more fully disclose particular facts.

*Cases 1 and 2:* An economist received a private letter of reprimand after he reported to the Commission that he had inadvertently sent documents containing BPI to a law firm not a signatory to the APO. The breaching party apparently was involved in more than one matter before the Commission and mingled APO material, resulting in a law firm on the APO service list in one investigation receiving APO materials from another investigation. The recipient law firm returned the improperly disclosed documents immediately upon learning of their receipt. The Commission chose to issue a private, rather than public, letter of reprimand because: (1) It was the first breach of an APO by the economist; (2) he reported the breach promptly; and (3) the breach was inadvertent. In the letter of reprimand, the Commission noted that even a single inadvertent violation of an APO is a serious matter and that mingling BPI from different investigations so unauthorized persons are given access to APO documents does not demonstrate an appropriate standard of care.

The Commission found that another economist did not breach the APO because he had nothing to do with the mingling and misdirection of the APO materials. Also, the Commission did not sanction the attorney under whose "direction and control" the breaching economist was operating because the economist practiced with regularity before the Commission and was familiar with handling APO materials. Moreover, the attorney could not have prevented the breach in this particular instance.

*Case 3:* The Commission sent a letter of inquiry to certain attorneys after a letter jointly submitted by them contained apparent BPI pertaining to trends in market share. Although the information was bracketed in the letter, the submitters made no request for confidential treatment of the letter, nor did they submit a public version of the

letter. Accordingly, the letter was placed in the public files of the Commission.

The attorneys jointly submitted affidavits demonstrating that the bracketed information had been obtained from public sources (e.g., SEC filings) or non-APO sources, and that brackets therefore had been erroneously placed around non-APO information. The Commission determined that no breach had occurred, but advised the persons involved by letter that in future hearings or written submissions to the Commission where there may be some question whether any information contained in oral or written submissions constitutes BPI under the Commission's administrative protective order, it would be helpful if the attorneys would clearly identify that the information was derived from public or other non-APO sources.

*Case 4:* The Commission found that two attorneys had not breached the APO when the public version of the post-hearing brief contained what appeared to be BPI. The Commission report from the preliminary investigation had treated the information as public.

*Case 5:* Two attorneys included BPI in the public version of a brief as the result of incomplete deletion performed by their word processing software. Although the software deleted all bracketed BPI in text to produce a public version, the software did not delete BPI contained in the footnotes. The attorneys immediately alerted Commission staff and contacted all persons who had received the public version, requesting that all copies be sanitized or destroyed. All such persons destroyed or returned their copies.

The Commission issued private letters of reprimand to both attorneys. The fact that the breach was inadvertent, that this was a first breach, that the Commission staff was notified immediately upon discovery of the breach, and that immediate and effective remedial steps were taken to prevent further disclosure mitigated the sanction. The Commission, however, rejected as a mitigating factor the fact that the disclosure allegedly did not involve particularly sensitive material, viewing this circumstance as purely fortuitous.

*Case 6:* A cover letter transmitting a law firm's confidential post-hearing brief was signed by an attorney who had not applied for access to APO information. This letter and other circumstances of the case led the Commission to believe that personnel who had not signed the APO had had access to BPI and had prepared a confidential exhibit. The attorney at the firm who had signed the APO explained

that the lawyer signing the cover letter had not read the brief, but only prepared the cover letter. In addition, the Commission determined that the personnel who had helped prepare the exhibit consisted of personnel who were covered by the APO. Therefore, the Commission decided no breach had occurred.

*Case 7:* The Commission found a breach of an APO by failure to delete one line of BPI from the "public" version of a brief. A private letter of reprimand was issued to the firm as a whole, since no one individual was solely responsible for the improper disclosure. However, since an individual attorney of that firm voluntarily claimed responsibility, he also was individually sanctioned. The breach was an inadvertent, first-time offense that was promptly reported and corrected. The Commission considered these mitigating circumstances and issued a private letter of reprimand.

*Case 8:* A clerical employee of a law firm inadvertently sent a confidential version of a brief to an attorney on the public service list. This breach was an inadvertent, first-time offense that was promptly reported by the firm and corrected. Since the breach was not the act of any particular individual APO signatory, a private letter of reprimand to the firm as a whole was issued.

*Case 9:* An attorney served a letter containing BPI on a person on the public service list. The law firm had a procedure to prevent disclosure which the attorney had not followed. In mitigation, the Commission took into account the fact that this breach was an inadvertent, first-time offense that was promptly reported by the firm and corrected. A private letter of reprimand was issued to the breaching attorney.

*Case 10:* A law firm incorrectly bracketed public information as BPI and failed to delete the information from the public version of the brief, creating the impression that BPI had been disclosed. The firm demonstrated that the bracketed information was publicly available at the time the brief was submitted and that this information was never treated as confidential by either the Commission or the parties. The Commission found no breach.

*Case 11:* APO signatories failed to bracket BPI in the confidential version of a brief. The BPI was properly deleted from the public version. The failure to bracket was noticed the day of filing and the unbracketed version was replaced prior to receipt by those on the APO service list. No one had the opportunity to rely on the lack of brackets in the confidential version of the brief or to discuss BPI with someone not entitled to access to it. Therefore,

the Commission determined that no breach had occurred.

*Case 12:* An attorney and a supervisory attorney, both APO signatories, twice breached an APO. The junior attorney served a document containing BPI on counsel who was not authorized to see BPI. In attempting to mitigate the first breach, the senior attorney wrote a cover letter explaining the disclosure to the recipients of the first document and offered substitute pages of the document. With knowledge of the junior attorney's first breach, the senior attorney nonetheless relied on the junior attorney to prepare the substitute pages and never reviewed them himself. Those substitute pages also contained BPI. In the second breach there was no evidence that the party served was requested to destroy or return the document containing the BPI.

The Commission disqualified the junior attorney, who admitted primary responsibility for both breaches, from access to BPI in any Commission investigation for six months or until the completion of the investigation in which the breaches had occurred, whichever came later, and published a letter of reprimand in the **Federal Register**. The supervising attorney had no role in the first breach and was not sanctioned for it. However, the Commission did publish a letter of reprimand to the supervisor as to the second breach. Although he did not directly commit the second breach, the attorney admitted supervising the junior attorney. Despite his knowledge of the junior attorney's first breach, the supervisor failed to review the documents which caused the second breach. A more severe sanction for the supervising attorney was not appropriate since the breaches were primarily the result of the conduct of another, they were inadvertent, and they were promptly reported to the Commission.

*Case 13:* Two attorneys committed two breaches. First, a subheading of the public version of petitioner's pre-hearing brief revealed BPI. Second, counsel failed to bracket BPI in the confidential version of petitioner's pre-hearing brief. The Commission noted that failure to bracket BPI in the confidential version of a Commission submission is a breach of the obligation to take due care because failure to identify APO data by bracketing promotes inadvertent disclosure of such information, since recipients are not alerted that the information is BPI.

The Commission considered several factors in determining that a breach occurred and in issuing letters of reprimand to the attorney's involved.

**4850**        **Federal Register** / Vol. 56, No. 25 / Wednesday, February 6, 1991 / Notices

The Commission took into account the fact that the nine members of the public had examined the document in the Commission's public files before it was withdrawn and the BPI deleted. In issuing these sanctions, the Commission considered the fact that the breaches were not reported by counsel but, instead, were discovered by the Commission staff.

The Commission gave careful consideration to the level of culpability of one of the attorneys. Although he admitted principal responsibility for the briefs submitted, it was his first case before the Commission and his first breach of an APO. With regard to the other attorney, the Commission considered a previous incident regarding the attorney's involvement in an APO breach.

*Case 14:* The Commission found no breach where counsel failed to delete information alleged to be BPI from the appendix of the public version of their post-hearing brief because counsel demonstrated that they had obtained the information through non-APO sources.

*Case 15:* The Commission found no breach where counsel made public disclosure of BPI at a Commission hearing because counsel demonstrated that the information was publicly available at the time of the hearing.

*Case 16:* A document containing BPI was sent to two clients of an attorney under the APO. The attorney assigned the task of forwarding to clients a document which was being faxed to the attorney after hours to an untrained paralegal without giving specific instructions for ensuring that APO data were not sent to the client. Upon learning of the breach, the attorney immediately notified the Commission and retrieved the documents from the unauthorized recipients, one of whom had read the BPI.

The Commission found that the serious lack of care demonstrated in the handling of BPI by one familiar with Commission APO practice warranted a more severe sanction, notwithstanding the fact that this was the attorney's first APO breach. While the Commission noted that it took into account that the breach was inadvertent, promptly reported, and that remedial steps were taken to minimize damage, the Commission was troubled by the failure of the attorney to take precautions against the possibility of the very type of disclosure that actually occurred in this case. The Commission noted that it was the insufficient level of care devoted to the safeguarding of APO information that was paramount in the Commission's consideration of the appropriate sanction.

The Commission published a letter of reprimand to the attorney in the **Federal Register** and prohibited the attorney access to information released under any APO until the Commission completed its final investigations. The Commission determined that neither the law firm nor the other attorney at the firm subject to the APO were in any way implicated in the breach.

The Commission also decided not to sanction the economic consultant under the APO who faxed the document containing the APO material to the attorney because the economic consultant was not responsible for forwarding the information to the clients. However, the Commission did caution the economic consultant to mark transmissions containing BPI more clearly in the future

*Case 17:* An economic consultant submitted its original public version of its post-conference brief to the Commission. The consultant immediately realized that some of the confidential information, deleted by a black "maginc marker," might be discernable if the paper were held to the light. The copies of the public version did not reveal BPI, no other party received a copy that disclosed BPI, and only Commission employees had access to the original. Since no one received or had access to confidential information who was not entitled to it, the mistake related only to the original submitted to the Commission, and prompt action was taken by the consultant, correcting the matters so the information was not made available to the public, the Commission did not issue a letter of inquiry.

*Case 18:* A law firm either described or provided to its client arguments made by another party about BPI data the client had submitted during the investigation. The law firm was not charged with a breach since the BPI discussed in the letter was the client's own data. The BPI thus was someting counsel had "otherwise available" to him and no violation of the APO occurred.

*Case 19:* Commission staff raised the possibility of an APO violation based upon the failure of a law firm to bracket certain information in the confidential version of its client's post-hearing brief. No violation had occurred, however, since the information in question (which had been deleted in the public version of the brief) either was not confidential or was information supplied to counsel by his own client and, thus, not obtained under APO.

*Case 20:* Two attorneys improperly included APO information in the public version of the pre-hearing brief which

they filed. The brief contained both bracketed and unbracketed BPI regarding another party's financial condition and sales data. The attorneys filed substitute pages 5 days later in an attempt to mitigate the breach. However, these pages contained an additional item of BPI information. The Commission held that the fact that neither the client nor any member of the public read the improper brief and that some of the BPI later ceased to qualify for confidential treatment did not cure the breach. Further, the Commission was concerned that two consecutive breaches were committed and that BPI bracketed in the Commission's pre-hearing report was not recognized as confidential. The Commission considered several mitigating factors: the breach was accidental; neither attorney had committed a prior violation; and corrective action was taken. Accordingly, the attorneys each received private letters of reprimand.

*Case 21:* An executive of a party made a statement at the Commission's final hearing about another party's market share. There was a possibility that the executive, who was not under the APO, obtained the figure from APO signatories. Since the executive demonstrated that he had heard the number at the public preliminary conference, the Commission did not issue a letter of inquiry.

*Case 22:* A consulting firm issued a press release which included an estimate of annual imports. If the source of the information had been an APO signatory, it might have constituted a breach. However, the consulting firm demonstrated that it derived the figure from the public transcript of the preliminary conference. Therefore, no letter of inquiry was issued.

*Case 23:* The Commission issued a letter of inquiry to an economic consultant after BPI appeared in a section of a post-conference submission which was authored, in part, by an economist not on the APO list. The economic consultant and the two authors of the text submitted affidavits stating that the information was not received under the APO, but obtained from a survey conducted by petitiones before any information was received under the APO. The Commission determined that no breach had occurred.

Issued: January 31, 1991.

By order of the Commission.

**Kenneth R. Mason,**

*Secretary.*

[FR Doc. 91–2792 Filed 2–5–91; 8:45 am]

**BILLING CODE 7020-02-M**

[Investigation No. 337–TA–324]

## Certain Acid-Washed Denim Garments and Accessories; Investigation

**AGENCY:** U.S. International Trade Commission.

**ACTION:** Institution of investigation pursuant to 19 U.S.C. 1337.

**SUMMARY:** Notice is hereby given that a complaint was filed with the U.S. International Trade Commission on January 2, 1991, under section 337 of the Tariff Act of 1930, as amended, 19 U.S.C. 1337, on behalf of Greater Texas Finishing Corporation, 1430 Vanderbilt Drive, El Paso, Texas 79935 and Golden Trade, S.R.L., Via G. De Serravalle, 6 Santarcangelo, Di. R. (FO), Italy. A supplement to the complaint was filed on January 18, 1991. The complaint, as supplemented, alleges violations of subsection (a)(1)(B) of section 337 in the importation into the United States, the sale for importation, and the sale within the United States after importation of certain acid-washed denim garments and accessories, including jeans, jackets, bags, and skirts, which have been processed abroad by a method covered by claim 6 and which infringe claim 14 of U.S. Letters Patent 4,740,213, and that there exists an industry in the United States as required by subsection (a)(2) of section 337.

The complainants request that the Commission institute an investigation and, after a full investigation, issue a permanent exclusion order and permanent cease and desist orders.

**ADDRESSES:** The complaint, except for any confidential information contained therein, is available for inspection during official business hours (8:45 a.m. to 5:15 p.m.) in the Office of the Secretary, U.S. International Trade Commission, 500 E Street, SW., room 112, Washington, DC 20436, telephone 202–252–1802. Hearing-impaired individuals are advised that information on this matter can be obtained by contacting the Commission's TDD terminal on 202–252–1810.

**FOR FURTHER INFORMATION CONTACT:** Deborah J. Kline, Esq., or John R. Kroeger, Esq., Office of Unfair Import Investigations, U.S. International Trade Commission, telephone 202–252–1576 or 202–252–1573, respectively.

**AUTHORITY:** The authority for institution of this investigation is contained in section 337 of the Tariff Act of 1930, as amended, and in § 210.12 of the Commission's Interim Rules of Practice and Procedure, 19 CFR 210.12.

**SCOPE OF INVESTIGATION:** Having considered the complaint, the U.S.

International Trade Commission, on January 28, 1991, Ordered that—

(1) Pursuant to subsection (b) of section 337 of the Tariff Act of 1930, as amended, an investigation be instituted to determine whether there is a violation of subsection (a)(1)(B) of section 337 in the importation into the United States, the sale for importation, or the sale within the United States after importation of certain acid-washed denim garments or accessories, including jeans, jackets, bags, or skirts, which are allegedly processed abroad by a method covered by claim 6 or which allegedly infringe claim 14 of U.S. Letters Patent 4,740,213, and whether there exists an industry in the United States as required by subsection (a)(2) of section 337.

(2) For the purpose of the investigation so instituted, the following are hereby named as parties upon which this notice of investigation shall be served:

(a) The complainants are—

Greater Texas Finishing Corporation, 1430 Vanderbilt Drive, El Paso, Texas 79935.

Golden Trade, S.R.L., Via G. De Serravalle, 6, Santarcangelo, Di. R. (FO), Italy.

(b) The respondents are the following companies alleged to be in violation of section 337, and are the parties upon which the complaint is to be served:

Jordache Enterprises, Inc., 498 Seventh Avenue, New York, New York 10018.

Gitano Group, Inc., 1411 Broadway, New York, New York 10018.

Bugle Boy Industries, Inc., 390 Fifth Avenue, 2nd Floor, New York, New York 10018.

Bon Jour International, Ltd., Inc., 1411 Broadway, New York, New York 10018.

Rio Sportswear, Inc., 1385 Broadway, New York, New York 10018.

(c) Deborah J. Kline, Esq., and John R. Kroeger, Esq., Office of Unfair Import Investigations, U.S. International Trade Commission, 500 E. Street, SW., room 401, Washington, DC 20436, who shall be the Commission investigative attorneys, party to this investigation; and

(3) For the investigation so instituted, Janet D. Saxon, Chief Administrative Law Judge, U.S. International Trade Commission, shall designate the presiding Administrative Law Judge.

Responses to the complaint and the notice of investigation must be submitted by the named respondents in accordance with §§ 210.21 of the Commission's Interim Rules of Practice and Procedure, 19 CFR 210.21. Pursuant to §§ 201.16(d) and 210.21(a) of the Commission's Rules, 19 C.F.R. 201.16(d) and 210.21(a), such responses will be

considered by the Commission if received not later than 20 days after the date of service of the complaint. Extensions of time for submitting response to the complaint will not be granted unless good cause therefor is shown.

Failure of a respondent to file a timely response to each allegation in the complaint and in this notice may be deemed to constitute a waiver of the right to appear and contest the allegations of the complaint and this notice, and to authorize the administrative law judge and the Commission, without further notice to the respondents, to find the facts to be as alleged in the complaint and this notice and to enter both an initial determination and a final determination containing such findings, and may result in the issuance of a limited exclusion order or a cease and desist order or both directed against such respondent.

By order of the Commission.

Issued: January 29, 1991.

**Kenneth R. Mason,**

*Secretary.*

[FR Doc. 91–2789 Filed 2–5–91; 8:45 am]

**BILLING CODE 7020-02-M**

---

[Investigation No. 337–TA–315]

## Certain Plastic Encapsulated Integrated Circuits; Notice of Decision Not To Review an Initial Determination Amending the Complaint and Notice of Investigation and Designating the Investigation as "More Complicated"

**AGENCY:** U.S. International Trade Commission.

**ACTION:** Notice.

**SUMMARY:** Notice is hereby given that the U.S. International Trade Commission has determined not to review an initial determination (ID) issued on January 10, 1991, by the presiding administrative law judge (ALJ) in the above-captioned investigation.

**FOR FURTHER INFORMATION CONTACT:** Andrea C. Casson, Esq., Office of the General Counsel, U.S. International Trade Commission, 500 E Street, SW., Washington, DC 20436, telephone 202–252–1105.

**SUPPLEMENTARY INFORMATION:** On January 10, 1991, the ALJ issued an ID (Order No. 17) ruling on three pending motions in the investigation. The ID granted the motion of complainant Texas Instruments Inc. "(TI") to amend certain domestic industry allegations in its complaint, granted a separate TI motion to amend the complaint and notice of investigation to include claim 1

57 FR 12335-02, 1992 WL 69768(F.R.)

NOTICES

INTERNATIONAL TRADE COMMISSION

Investigations Relating to Potential Breaches of Administrative
Protective Orders; Sanctions Imposed for Actual Violations

Thursday, April 9, 1992

AGENCY: U.S. International Trade Commission.

ACTION: Summary of Commission practice relating to administrative protective orders.

SUMMARY: This notice provides a summary by the International Trade Commission (Commission) of its investigations of breaches of administrative protective orders (APOs) issued in connection with investigations under title VII of the Tariff Act of 1930.

This notice is intended to inform the public of the Commission's experience with APO breaches. The Commission also intends that this notice will educate and alert representatives of parties to Commission proceedings as to some specific types of conduct that have been found by the Commission to constitute an APO breach. This notice is illustrative only and does not limit the Commission's Rules or standard APO. The notice does not provide an exclusive list of conduct that may be deemed to be a breach of the Commission's APOs, and does not indicate how the Commission will rule in future cases.

FOR FURTHER INFORMATION CONTACT: Charles H. Nalls, Esq., Assistant General Counsel for Antidumping and Countervailing Duty Investigations, U.S. International Trade Commission, telephone 202-205-3106.

SUPPLEMENTARY INFORMATION: The discussion below illustrates APO breach investigations that the Commission has conducted during 1991 including a description of sanctions imposed. The Commission will report a summary of its actions in response to violations of Commission APOs periodically in an effort to educate those obtaining access under an APO of the common problems encountered in handling business proprietary information (BPI). This is the second notice of its kind, the first one having been published at 56 FR 4846-4850 (Feb. 6, 1991). The Commission intends to publish summaries at least annually, and more frequently as appropriate.

As part of the effort to educate practitioners about APO practice, the Commission's Secretary issued in September 1991 An Introduction to Administrative Protective Order Practice in Antidumping and Countervailing Duty Investigations. This document is available upon request from the Office of the Secretary, U.S. International Trade Commission, 500 E Street, SW., Washington, DC 20436, telephone 202-205-2000.

Section 1332 of the Omnibus Trade and Competitiveness Act of 1988 requires the Commission to release under APO to the authorized representatives of interested parties in dumping and countervailing duty investigations the business proprietary information (BPI) collected by the Commission in the course of such investigations. 19 U.S.C. 1677f. The Commission has implemented procedures governing the release of BPI under APO. 19 CFR 207.7. The APO rules were amended effective April 1991. 56 FR 11918 (March 21, 1991). Among other changes, those rules amendments provided parties with an extra day in which to file the public version of certain submissions containing BPI. This "one day rule," which also permits correction of the bracketing of BPI during that extra day, was intended to reduce the incidence of APO breaches caused by inadequate bracketing and improper placement of BPI. The Commission urges parties to make use of the rule.

The rules provide that the Secretary of the Commission will provide BPI only to "authorized applicants" who agree to be bound by the terms and conditions of an APO. The standard APO form for antidumping and countervailing duty investigations issued by the Commission requires the applicant to swear that he or she will:

(1) Not divulge any of the BPI obtained under the APO and not otherwise available to him, to any person other than:

(i) Personnel of the Commission concerned with the investigation,

(ii) The person or agency from whom the BPI was obtained,

(iii) A person whose application for disclosure of BPI under the APO has been granted by the Secretary, and

(iv) Other persons, such as paralegals and clerical staff, who (a) are employed or supervised by and under the direction and control of the authorized applicant or another authorized applicant in the same firm whose application has been **\*12336**  granted; (b) have a need thereof in connection with the investigation; (c) are not involved in competitive decisionmaking for an interested party which is a party to the investigation; and (d) have submitted to the Secretary a signed Acknowledgment for Clerical Personnel in the form attached hereto (the authorized applicant shall also sign such acknowledgment and will be deemed responsible for such persons' compliance with the APO);

(2) Use such BPI solely for the purposes of the above-captioned Commission investigation or for judicial or binational panel review of such Commission investigation;

(3) Not consult with any person not described in paragraph (1) concerning BPI disclosed under the APO without first having received the written consent of the Secretary and the party or the attorney of the party from whom such BPI was obtained;

(4) Whenever materials (e.g., documents, computer disks, etc.) containing such BPI are not being used, store such material in a locked file cabinet, vault, safe, or other suitable container (N.B.: storage of BPI on so-called hard disk computer media is to be avoided, because mere erasure of data from such media may not irrecoverably destroy the BPI and may result in violation of paragraph C of the APO);

(5) Serve all materials containing BPI disclosed under the APO as directed by the Secretary and pursuant to § 207.7(f) of the Commission's rules;

(6) Transmit each document containing BPI disclosed under the APO:

(i) With a cover sheet identifying the document as containing BPI,

(ii) With all BPI enclosed in brackets and each page warning that the document contains BPI,

(iii) If the document is to be filed by a deadline, with each page marked "Bracketing of BPI not final for one business day after date of filing," and

(iv) If by mail, within two envelopes, the inner one sealed and marked "Business Proprietary Information—To be opened only by (name of recipient)", and the outer one sealed and not marked as containing BPI;

(7) Comply with the provisions of the APO and § 207.7 of the Commission's rules;

(8) Make true and accurate representations in the authorized applicant's application and promptly notify the Secretary of any changes that occur after the submission of the application and that affect the representations made in the application (e.g., change in personnel assigned to the investigation);

(9) Report promptly and confirm in writing to the Secretary any possible breach of the APO; and

(10) Acknowledge that breach of the APO may subject the authorized applicant and other persons to such sanctions as the Commission deems appropriate, including the administrative sanctions set out in the APO.

Breach of the protective order may subject an applicant to:

(1) Disbarment from practice in any capacity before the Commission along with such person's partners, associates, employer, and employees, for up to seven years following publication of a determination that the order has been breached;

(2) Referral to the United States Attorney;

(3) In the case of an attorney, accountant, or other professional, referral to the ethics panel of the appropriate professional association; and

(4) Such other administrative sanctions as the Commission determines to be appropriate, including public release of or striking from the record any information or briefs submitted by, or on behalf of, the offender or the party represented by the offender, and denial of further access to business proprietary information in the current or any future investigations before the Commission.

Commission employees are not signatories to the Commission's APOs and do not obtain access to BPI through the APO procedure. Consequently, they are not subject to the APOs' requirements with respect to the handling of BPI. However, Commission employees are subject to strict statutory and regulatory constraints concerning BPI, and face severe penalties for noncompliance. See 18 U.S.C. 1905; title 5, U.S. Code; and Commission personnel policies implementing the statutes. Although the Privacy Act (5 U.S.C. 552a) limits the Commission's authority to disclose personnel actions against agency employees, this should not lead the public to conclude that no such actions have been taken.

In April of 1989, the Commission delegated authority to the Secretary for the issuance of letters of inquiry to suspected breachers of APOs in Title VII investigations. If, based on the response made to such a letter of inquiry, the Commission determines that a breach has occurred, the Commission issues a second letter asking the breacher to address the questions of mitigating circumstances and possible sanctions. The Commission then decides the appropriate sanction. The Commission retains sole authority to make final determinations regarding the existence of a breach and the appropriate sanction if a breach occurred.

The records of Commission investigations of APO breaches are not publicly available and are exempt from disclosure under the Freedom of Information Act, 5 U.S.C. 552. Section 135(b) of the Customs and Trade Act of 1990, 19 U.S.C. 1677f(g).

## I. Breach Investigations Generally

The breach most frequently investigated by the Commission involves paragraph (1) of the standard APO which prohibits persons from divulging BPI to unauthorized persons. Such divulgence usually occurs as the result of failure to delete BPI from public versions of documents filed with the Commission. Other types of conduct found to have constituted a breach have involved: The failure to properly bracket BPI in proprietary documents filed with the Commission; the failure to immediately report known violations of an APO; improper or inadequate application for access to BPI; failure

to adequately supervise junior attorneys or non-legal personnel in the handling of BPI in certain circumstances; and failure to destroy confidential information in a timely manner.

### A. Divulgence of BPI to Unauthorized Persons

The Commission has determined that making BPI available to unauthorized persons may constitute a breach of the APO, regardless of whether the unauthorized recipients actually read the information. The Commission has found several breaches of this sort. Such breaches were typically the result of: (1) The failure to adequately review the contents of a public version of a document for BPI prior to filing the document with the Commission or sending it to a third party or (2) failure to keep the confidential and public service lists separate when serving documents.

In some instances, party representatives failed to redact BPI from public versions of documents which they filed with the Commission and served on the public service list. The Commission also has investigated several instances of inadvertent service of a confidential document to someone on the public service list. On at least one occasion, attorneys sent documents containing BPI to their client without thoroughly screening the document for BPI. In general, these instances were promptly reported by the party responsible and the documents were **\*12337** retrieved immediately; in some cases the envelopes containing the documents had not yet been opened by the recipient. Nonetheless, all of these instances involved a degree of carelessness in making BPI available to those not entitled to have access and were found to be breaches of APOs. In one instance discussed below, the breaching party, while attempting to mitigate the damage caused by the breach by promptly filing replacement pages, committed an additional breach by again revealing BPI in the replacement pages.

The Commission has determined that no breach occurred when documents apparently containing BPI were served on those not entitled to access under an APO only when the BPI was otherwise available to the serving party, either because it was BPI submitted by that party or because that party was able to conclusively demonstrate that the alleged BPI was otherwise available to the public before the date of the alleged breach. Waiver of confidential treatment by the submitting party after the alleged breach occurred has not been found to be adequate to excuse the breach.

### B. Failure to Properly Bracket BPI in Confidential Submissions

The Commission has considered the omission of appropriate brackets in confidential documents, in most circumstances, to be a breach of the APO, even if the information is deleted from the public version of the document. The Commission repeatedly has observed that failure to bracket BPI promotes inadvertent disclosure of confidential information because recipients are not alerted that the information is BPI and may reasonably rely on the lack of bracketing as an indication that the information is not confidential and may be disclosed to their client or the public. Commission rule 207.7(f) (3), incorporated by reference into all APOs, requires BPI to be clearly marked and segregated from other material in confidential submissions. In several instances, party representatives have filed confidential versions of documents in which some BPI was not bracketed and then served those documents on the confidential service list.

### C. Failure to Promptly Report A Breach to the Commission

The Commission has found the failure to report a breach to be a separate offense and has sanctioned attorneys who did not report or delayed in reporting a violation once they became aware that it had taken place. Unlike breaches resulting from filing or proofreading mistakes, which are normally inadvertent and the result of some degree of negligence, failure to report a breach may involve a conscious choice by the APO signatory. Thus, failure to report a breach, which is required by the APO, normally has been treated as an intentional breach. Intentional breaches usually have been found to warrant more severe sanctions.

### D. Failure to Supervise Junior Attorneys and Clerical Personnel

Generally, APO signatories have not been sanctioned for a breach of an order unless they in some way have participated in the breach, or were on notice of the lack of adequate safeguards for handling of BPI at the firms involved or of the lack of due care or training of other APO signatories working under their supervision. For example, APO signatories responsible for sending confidential documents to unauthorized parties have been held responsible for the breach. The other APO signatories at the firm normally have not been found liable, where the Commission has determined that they did not cause the breach or could not have forestalled the breach, and that the breaching signatory was trained in the handling of APO materials. In contrast, depending upon the circumstances, the APO signatory who was the superior of a breaching APO signatory who either committed a previous APO violation, or who was known to be inexperienced and had not been trained in the handling of APO materials, could be found liable for failure to prevent breaches by that other signatory. The Commission may determine that the supervisor or superior was on notice of the APO signatory's prior breach or inexperience and failed to take adequate precautionary measures to prevent subsequent breaches.

In cases in which clerical employees or support personnel have breached, the APO signatory who vouched for these employees has been held responsible by the Commission for the breaches by staff working under his or her direction and control.

### E. Failure to Promptly Destroy Confidential Information or Misuse of Confidential Information

Commission rule 207.7 requires that APO signatories destroy documents containing BPI upon the termination of an antidumping or countervailing duty investigation. The standard APO form allows signatories to retain APO material only during judicial or panel review of a Commission determination, and, in judicial proceedings, only in anticipation that the Commission APO will be promptly replaced by a Judicial Protective Order.

Title VII APO material may not be used in collateral proceedings, such as proceedings at the Commerce Department, or other investigations by the Commission, but only in the specified Commission proceedings or judicial or panel review of those determinations for which the information was released.

### II. Sanction Determinations

Sanctions for APO violations serve two basic interests: (a) Preserving the confidence of submitters of BPI in the Commission as a reliable protector of BPI, and (b) disciplining breachers and deterring future violations. As the Conference Report to the Omnibus Trade and Competitiveness Act of 1988 observed, "the effective enforcement of limited disclosure under administrative protective order depends in part on the extent to which private parties have confidence that there are effective sanctions against violation." H.R. Conf. No. 576, 100th Cong., 1st Sess. 623 (1988). The Commission has worked to develop consistent jurisprudence, not only in determining whether a breach has occurred, but also in selecting an appropriate sanction. In determining the appropriate sanction, the Commission has generally considered as mitigating factors the fact that the breach was unintentional, the lack of prior breaches committed by the breaching party, the mitigating measures taken by the breaching party, the promptness with which the breaching party reported the violation to the Commission, and any relevant circumstances peculiar to the situation.

The Commission has found aggravating circumstances when APO violations are found to be intentional or repeated, where they cause significant commercial damage to the submitter, and when the violating signatory is grossly negligent. The Commission takes seriously its obligation to protect each submitter's BPI, and must maintain public confidence in its ability to do so. Thus, in previous breach investigations, the Commission has not considered factors such as the lack of complaint by or commercial harm to the party whose information was disclosed, the alleged lack of sensitivity of the information disclosed, or the lack of financial benefit to the breaching party as mitigating factors in choosing the appropriate sanction for the breach.The disclosure of highly sensitive information, demonstrated commercial harm to the party whose information was disclosed, or the deriving of a strategic or financial **\*12338** benefit from a breach, however, may be circumstantial evidence of, inter alia, an intentional breach, and thus could constitute an aggravating circumstance warranting a more severe sanction.

Commission rule 207.7 indicates that the breacher of an APO is subject to sanctions including being barred from practice before the Commission in any capacity, and that the Commission may also impose this sanction not only on the individual breacher but on "such person's partners, associates, employer, and employees." The Commission has sanctioned a firm when it has been unable to identify specific culpable individuals at the breaching firm. However, this should not be construed as a limitation on the Commission's ability, in other appropriate circumstances, to issue sanctions for breachers of an APO against the firm for which an individual who breached an APO worked.

### III. Specific Breach Investigations by the Commission

The following case studies are presented to illustrate the various types of conduct that have been found by the Commission to constitute a breach and the sanctions imposed by the Commission. In addition, the case studies discuss the factors that have been considered by the Commission as mitigating the sanctions imposed in particular instances. The Commission has not included some of the specific facts in the descriptions of investigations where such disclosure could reveal the identity of a particular breacher. Thus, in some cases, apparent inconsistencies in the facts set forth in this notice result from the Commission's inability to disclose particular facts more fully.

The first APO summary discussed 23 cases, in 9 of which the Commission found that a breach had occurred. The following discussion covers the 7 recent cases in which violations were found. In general, there has been a decline in the number of APO breaches, apparently due to practitioners' increasing familiarity with the Commission's rules and jurisprudence, as well as to the April 1991 rules amendments, including the "one day rule."

### Case 1

The case involved five separate incidents of unbracketed BPI in a post-conference brief. One attorney was found solely responsible for all five separate breaches. The Commission rejected contentions that the improper bracketing, when confined to the confidential version of the brief, does not constitute a breach, although the information was never disclosed to any nonsignatories of the APO. The Commission determined that such facts did not preclude the imposition of sanctions and issued a private letter of reprimand.

### Case 2

The Commission issued private letters of reprimand to four attorneys for failing to bracket BPI in the confidential version of a post-conference brief. The Commission considered the following to be mitigating circumstances: (1) Only one breach occurred, (2) that breach occurred only in copies of the postconference brief served on the Commission staff, (3) the breach was corrected the next day by rebracketing of BPI (the breach having occurred before the issuance of the "one day rule"), (4) the APO information was not disclosed, (5) the error was inadvertent, (6) the violation was technical, (7) the attorney involved had not had any prior APO violations, and (8) the firm had strong internal procedures to guard against release of BPI. Two other attorneys were found not to have breached the APO because they were not involved in preparing the BPI portions of the documents in question.

### Case 3

An attorney improperly: (1) Served a confidential version of a brief on several parties not subject to the APO, and (2) included APO material in the public version of the same brief. The attorney argued that any sanctions levied against him should be minor because he had taken immediate and exhaustive action to have all confidential material returned to him, thereby minimizing the chance of public disclosure. The Commission considered this to be a mitigating circumstance and issued a private letter of reprimand.

### Case 4

An attorney sent the client a post-conference brief containing BPI obtained under APO. The Commission issued a private letter of reprimand because this was the attorney's first APO breach, the breach appeared to have been inadvertent, the attorney appeared to have taken effective and immediate remedial steps to mitigate the effect of the breach, and to have reported the breach to the Commission with reasonable promptness. The fact that the attorney lacked experience both as an attorney and with title VII practice did not mitigate the sanction.

**Case 5**

Three attorneys: (1) Failed to bracket certain BPI in the confidential version of a brief, and (2) failed to delete certain BPI from the public version of that brief. Replacement pages were filed the same day the unbracketed material was discovered. The three attorneys received private letters of reprimand.

**Case 6**

A law firm submitted the public version of a post-conference brief one copy of which contained, in brackets, information released under APO. The Commission held responsible for the breach the attorney who was responsible for the production and filing of the brief. The Commission found that (1) counsel took immediate and effective measures to control the damage of the breach, (2) counsel promptly reported the breach to the Commission, (3) counsel had not breached an APO in the past, and (4) the breach did not appear to be intentional. The attorney received a letter of warning.

**Case 7**

The Commission issued a private letter of reprimand to an attorney who directed the filing of the public version of a post-conference brief which contained BPI. Although the BPI was covered by a piece of paper, the BPI was easily readable through the covering paper. The inadequate covering was brought to the Commission's attention by a researcher from another firm, and was confirmed by Commission personnel. Although it appeared that no unauthorized person had viewed the BPI, the Commission found that a breach had occurred. The breach was found to be inadvertent.

**IV. Investigation in Which no Breach was Found**

During 1991, the Commission completed 19 investigations in which no breach was found. The reasons for a finding of no breach included:

(1) The information allegedly mishandled by the alleged breacher consisted entirely of information pertaining to the alleged breacher's own client;

(2) The information in question was not BPI; and

(3) The information in question was available to the alleged breacher from sources other than disclosure under the APO.

Issued: April 3, 1992.

By order of the Commission.

Kenneth R. Mason,

Secretary.

(FR Doc. 92-8119 Filed 4-8-92; 8:45 am)

BILLING CODE 7020-02-M

---

**End of Document**                                    © 2019 Thomson Reuters. No claim to original U.S. Government Works.

58 FR 21991-02, 1993 WL 128434(F.R.)

NOTICES

INTERNATIONAL TRADE COMMISSION

Investigations Relating to Potential Breaches of Administrative
Protective Orders, Sanctions Imposed for Actual Violations.

Monday, April 26, 1993

**\*21991**  AGENCY: International Trade Commission.

ACTION: Summary of Commission practice relating to administrative protective orders.

SUMMARY: This notice provides a summary by the International Trade Commission (Commission) of its investigations of breaches of administrative protective orders (APOs) issued in connection with investigations under Title VII of the Tariff Act of 1930.

This notice is intended to inform the public of the Commission's experience with APO breaches. The Commission also intends that this notice will educate and alert representatives of parties to Commission proceedings as to some specific types of APO breaches encountered by the Commission. This notice is illustrative only and does not limit the Commission's Rules or standard APO. The notice does not provide an exclusive list of conduct that will be deemed to be a breach of the Commission's APOs, and does not indicate how the Commission will rule in future cases.

FOR FURTHER INFORMATION CONTACT:

Charles H. Nall, Esq., Assistant General Counsel for Antidumping and Countervailing Duty Investigations, U.S. International Trade Commission, telephone 202-205-3106.

SUPPLEMENTARY INFORMATION: The discussion below illustrates APO breach investigations that the Commission has conducted during 1992 including a description of sanctions imposed. The Commission will report a summary of its actions in response to violations of Commission APOs periodically in an effort to educate those obtaining access under an APO of the common problems encountered in handling business proprietary information (BPI). This is the third notice of its kind, the first one having been published at 56 FR 4846-4850 (Feb. 6, 1991), and the second at 57 FR 12335 (Apr. 9, 1992). The Commission intends to publish summaries at least annually, and more frequently as appropriate.

As part of the effort to educate practitioners about APO practice, the Commission's Secretary issued in September 1991 An Introduction to Administrative Protective Order Practice in Antidumping and Countervailing Duty Investigations. This **\*21992**  document is available upon request from the Office of the Secretary, U.S. International Trade Commission, 500 E. Street, SW., Washington, DC 20436, telephone 202-205-2000.

Section 1332 of the Omnibus Trade and competitiveness Act of 1988 requires the Commission to release under APO to the authorized representatives of interested parties in dumping and countervailing duty investigations the business proprietary information (BPI) collected by the Commission in the course of such investigations. 19 U.S.C. 1677f. The Commission has implemented procedures governing the release of BPI under APO. 19 CFR 207.7. The APO rules were amended effective April 1991. 56 FR 11,918 (March 21, 1991). Among other changes, those rules amendments provided parties with an extra day in which to file the public version of certain submissions containing BPI. This "one day rule,"

WESTLAW   © 2019 Thomson Reuters. No claim to original U.S. Government Works.       1

which also permits correction of the bracketing of BPI during that extra day, was intended to reduce the incidence of APO breaches caused by inadequate bracketing and improper placement of BPI. The Commission urges parties to make use of the rule.

The rules provide that the Secretary of the Commission will provide BPI only to "authorized applicants" who agree to be bound by the terms and conditions of an APO. The standard APO form for antidumping and countervailing duty investigations issued by the Commission requires the applicant to swear that he or she will:

(1) Not divulge any of the BPI obtained under the APO and not otherwise available to him, to any person other than

(i) Personnel of the Commission concerned with the investigation,

(ii) The person or agency from whom the BPI was obtained,

(iii) A person whose application for disclosure of BPI under the APO his been granted by the Secretary, and

(iv) Other persons, such as paralegal and clerical staff, who: (a) Are employed or supervised by and under the direction and control of the authorized applicant or another authorized applicant in the same firm whose application has been granted: (b) have a need thereof in connection with the investigation; (c) are not involved in competitive decisonmaking for an interested party which is a party to the investigation; and (d) have submitted to the Secretary a signed Acknowledgment for Clerical Personnel in the form attached hereto (the authorized applicant shall also sign such acknowledgment and will be deemed responsible for such persons' compliance with the APO);

(2) Use such BPI solely for the purposes of the above-captioned Commission investigation or for judicial or binational panel review of such Commission investigation;

(3) Not consult with any person not described in paragraph (1) concerning BPI disclosed under the APO without first having received the written consent of the Secretary and the party or the attorney of the party from whom such BPI was obtained;

(4) Whenever materials (e.g., documents, computer disks, etc.) containing such BPI are not being used, store such material in a locked file cabinet, vault, safe, or other suitable container (N.B.: storage of BPI on so-called hard disk computer media is to be avoided, because mere erasure of data from such media may not irrecoverably destroy the BPI and may result in violation of paragraph C of the APO);

(5) Serve all materials containing BPI disclosed under the APO as directed by the Secretary and pursuant to § 207.7(f) of the Commission's rules;

(6) Transmit each document containing BPI disclosed under the APO:

(i) With a cover sheet identifying the document as containing BPI,

(ii) With all BPI enclosed in brackets and each page warning that the document contains BPI,

(iii) If the document is to be filed by a deadline, with each page marked "Bracketing of BPI not final for one business day after date of filing," and

(iii) If by mail, within two envelopes, the inner one sealed and marked "Business Proprietary Information—To be opened only by (name of recipient)", and the outer one sealed and not marked as containing BPI;

(7) Comply with the provisions of the APO and § 207.7 of the Commission's rules;

(8) Make true and accurate representations in the authorized applicant's application and promptly notify the Secretary of any changes that occur after the submission of the application and that affect the representations made in the application (e.g., change in personnel assigned to the investigation);

(9) Report promptly and confirm in writing to the Secretary any possible breach of the APO; and

(10) Acknowledge that breach of the APO may subject the authorized applicant and other persons to such sanctions as the Commission deems appropriate, including the administrative sanctions set out in the APO.

Breach of the protective order may subject an applicant to:

(1) Disbarment from practice in any capacity before the Commission along with such person's partners, associates, employer, and employees, for up to seven years following publication of a determination that the order has been breached;

(2) Referral to the United States Attorney;

(3) In the case of an attorney, accountant, or other professional, referral to the ethics panel of the appropriate professional association; and

(4) Such other administrative sanctions as the Commission determines to be appropriate, including public release of or striking from the record any information or briefs submitted by, or on behalf of, the offender or the party represented by the offender, and denial of further access to business proprietary information in the current or any future investigations before the Commission.

Commission employees are not signatories to the Commission's APOs and do not obtain access to BPI through the APO procedure. Consequently, they are not subject to the APOs' requirements with respect to the handling of BPI. However, Commission employees are subject to strict statutory and regulatory constraints concerning BPI, and face severe penalties for noncompliance. See 18 U.S.C. 1905; Title 5, U.S. Code; and Commission personnel policies implementing the statutes. Although the Privacy Act (5 U.S.C. 552a) limits the Commission's authority to disclose personnel actions against agency employees, this should not lead the public to conclude that no such actions have been taken.

In April of 1989, the Commission delegated authority to the Secretary for the issuance of letters of inquiry to suspected breachers of APOs in Title VII investigations. If, based on the response made to such a letter of inquiry, the Commission determines that a breach has occurred, the Commission issues a second letter asking the breacher to address the questions of mitigating circumstances and possible sanctions. The Commission then decides the appropriate sanction. However, in two cases in 1992, the Commission determined that breaches had occurred but that sanctions were not warranted, and therefore found it unnecessary to issue a second letter concerning what sanctions might be appropriate. The Commission retains sole authority to make final determinations regarding the existence of a breach and the **\*21993** appropriate sanction if a breach occurred.

The records of Commission investigations of APO breaches are not publicly available and are exempt from disclosure under the Freedom of Information Act, 5 U.S.C. 552. Section 135(b) of the Customs and Trade Act of 1990, 19 U.S.C. 1677f(g).

## I. Breach Investigations Generally

WESTLAW   © 2019 Thomson Reuters. No claim to original U.S. Government Works.

The breach most frequently investigated by the Commission involves paragraph (1) of the standard APO which prohibits the dissemination of BPI to unauthorized persons. Such dissemination usually occurs as the result of failure to delete BPI from public versions of documents filed with the Commission. Other breaches in past years have involved: The failure to properly bracket BPI in proprietary documents filed with the Commission; the failure to immediately report known violations of an APO; improper or inadequate application for access to BPI; failure to adequately supervise junior attorneys or non-legal personnel in the handling of BPI in certain circumstances; and failure to destroy confidential information in a timely manner.

## II. Sanction Determinations

Sanctions for APO violations serve two basic interests: (a) Preserving the confidence of submitters of BPI in the Commission as a reliable protector of BPI, and (b) disciplining breachers and deterring future violations. As the Conference Report to the Omnibus Trade and Competitiveness Act of 1988 observed, "the effective enforcement of limited disclosure under administrative protective order depends in part on the extent to which private parties have confidence that there are effective sanctions against violation." H.R. Conf. Rep. No. 576, 100th Cong., 1st Sess. 623 (1988). The Commission has worked to develop consistent jurisprudence, not only in determining whether a breach has occurred, but also in selecting an appropriate sanction. In determining the appropriate sanction, the Commission generally considers mitigating factors such as whether the breach was unintentional, lack of prior breaches committed by the breaching party, the mitigating measures taken by the breaching party, the promptness with which the breaching party reported the violation to the Commission, and any relevant circumstances peculiar to the situation.

## III. Specific Investigations in Which Breaches Were Found

The following case studies are presented to illustrate the various types of APO breaches found by the Commission and the sanctions imposed by the Commission. In addition, the case studies discuss the factors considered by the Commission as mitigating the sanctions imposed in particular instances. While each situation is slightly different, the Commission has pursued a consistent jurisprudence over the period that the current APO procedures have been in effect. The Commission has not included some of the specific facts in the descriptions of investigations where such disclosure could reveal the identity of a particular breacher. Thus, in some cases, apparent inconsistencies in the facts set forth in this notice result from the Commission's inability to disclose particular facts more fully.

The APO summary for 1991 discussed 26 cases, in 7 of which the Commission found that a breach had occurred. The following discussion covers the 3 cases in 1992 in which violations were found. The discussion also covers one case in 1992 involving a violation of the "one day rule" as well as a breach of the APO. In general, the Commission has experienced a decline in APO breaches, apparently due to practitioners' increasing familiarity with the Commission's rules and jurisprudence, as well as to the April 1991 rules amendments, including the "one day rule."

Case 1: An attorney (1) failed to delete significant amounts of BPI obtained under APO from the public version of a brief, and (2) made BPI available to other attorneys in the same firm who had not applied for or been granted access to BPI under the APO. The breaches were not discovered by the attorney but were found by the Secretary to the Commission. The Commission found that the attorney had breached the APO in an egregious manner, but that mitigating circumstances existed because this was the attorney's first appearance before the Commission, the attorney's firm did not practice regularly before the Commission, and the breaches were not willful. The attorney was given a private letter of reprimand and was instructed that, in the attorney's next appearance before the Commission in a case involving BPI, the attorney would be required to provide a written description of the steps taken to insure that BPI was adequately protected, including (1) reading the APO handbook, (2) requiring the firm's other attorneys to read the handbook, (3) arranging for keeping BPI documents in a locked container, and (4) careful proofreading of documents to insure that all BPI is bracketed in confidential documents and redacted in public versions.

WESTLAW   © 2019 Thomson Reuters. No claim to original U.S. Government Works.

Case 2: Two attorneys filed with the Commission a document that contained BPI obtained under APO but that neither bracketed such BPI nor identified the document as containing BPI. The Commission found the following to be mitigating circumstances: the breach was inadvertent; the document was intended only for use with a confidential brief so that only persons authorized to see the document received copies of it; and the attorneys acted expeditiously to correct their error. The Commission determined that a breach had occurred, but that, in view of the mitigating circumstances in the case, a sanction was not warranted. Both attorneys received letters of warning urging them to use greater caution in the future.

Case 3: An attorney failed to delete BPI obtained under APO from the public version of a brief. The Commission found that the attorney had breached the APO. Two colleagues were not found to have breached, because they apparently had not participated in preparing their brief. Mitigating circumstances were found in the fact that the BPI was subsequently made public by the submitter. The breaching attorney was not sanctioned but received a letter of warning.

Case 4: An attorney violated Commission rule 207.3(c) (the "one day rule") by submitting a "corrected" version of a postconference brief containing numerous substantive and editorial changes from the version filed the previous day. The same attorney and an associate attorney under his supervision also breached the APO by failing to serve the original confidential version of the brief on counsel to the other parties.

As discussed above, the "one day rule" permits correction of the bracketing of BPI the day after the confidential version of the document is filed, but specifically states: "No changes to the document other than bracketing and deletion of business proprietary information are permitted after the deadline." The Commission issued a private letter of reprimand to the attorney for the APO breach and violation of the "one day rule." The Commission also suspended his privilege to use that rule the next time he appears before the Commission in a Title VII investigation. Although violation of the "one day rule" is not an **\*21994** APO breach, the Commission considers it appropriate to report this case here because of the extensive use and important role of the "one day rule" in helping reduce the number of APO breaches. As for the associate attorney, the Commission determined to take no formal disciplinary action against him, although it did issue a warning letter. Among the mitigating factors that the Commission considered was the fact that the associate attorney had been instructed not to serve the original postconference brief on the other parties.

## IV. Investigations in Which No Breach Was Found

During 1992, the Commission completed 11 investigations in which no breach was found. The reasons for a finding of no breach included:

(1) The information allegedly mishandled by the alleged breacher considered entirely of information pertaining to the alleged breacher's own client;

(2) The information in question was not BPI; and

(3) The information in question was available to the alleged breacher from sources other than disclosure under the APO.

By order of the Commission.

Issued: April 19, 1993.

Paul R. Bardos,

Acting Secretary.

(FR Doc. 93-9647 Filed 4-23-93; 8:45 am)

BILLING CODE 7020-02-P

**End of Document**                                        © 2019 Thomson Reuters. No claim to original U.S. Government Works.

59 FR 16834-01, 1994 WL 115014(F.R.)

NOTICES

INTERNATIONAL TRADE COMMISSION

# International Trade Commission, Practice Relating to Administrative Protective Orders

Friday, April 8, 1994

**\*16834**  AGENCY: U.S. International Trade Commission.

ACTION: Summary of Commission practice relating to administrative protective orders.

SUMMARY: This notice provides a summary by the U.S. International Trade Commission (Commission) of its investigations of breaches of administrative protective orders (APOs) issued in connection with investigations under Title VII and section 337 of the Tariff Act of 1930.

This notice is intended to inform the public of the Commission's experience with APO breaches. The Commission also intends that this notice will educate and alert representatives of parties to Commission proceedings as to some specific types of APO breaches encountered by the Commission. This notice is illustrative only and does not limit the Commission's rules or standard APO. The notice does not provide an exclusive list of conduct that will be deemed to be a breach of the Commission's APOs, and does not indicate how the Commission will rule in future cases.

FOR FURTHER INFORMATION CONTACT: Paul R. Bardos, Esq., Office of the General Counsel, U.S. International Trade Commission, telephone 202-205-3102.

SUPPLEMENTARY INFORMATION: The discussion below illustrates APO breach investigations that the Commission has completed including a description of actions taken in response to breaches. The discussion covers breach investigations completed during 1993 with respect to antidumping and countervailing duty cases. Also discussed are the Commission's investigations completed during 1993 of possible violations of Commission rule 207.3, commonly known as the "one day rule." Finally, in the interest of providing as much information to practitioners as possible on APO practice, this notice also discusses breach investigations completed during the period 1988-1993 with respect to investigations under section 337 of the Tariff Act of 1930.

The Commission will report a summary of its actions in response to violations of Commission APOs periodically in an effort to educate those obtaining access under an APO of the common problems encountered in handling business proprietary information (BPI) and confidential business information (CBI). This is the fourth notice of its kind, the previous ones having been published at 56 FR 4846-4850 (Feb. 6, 1991); 57 FR 12335 (Apr. 9, 1992); and 58 FR 21991 (Apr. 26, 1993). The Commission intends to publish summaries at least annually, and more frequently as appropriate.

As part of the effort to educate practitioners about APO practice, the Commission's Secretary issued in September 1991 An Introduction to Administrative Protective Order Practice in Antidumping and Countervailing Duty Investigations. This document is available upon request from the Office of the Secretary, U.S. International Trade Commission, 500 E Street, SW., Washington, DC 20436, telephone 202-205-2000.

# I. Title VII Administrative Protective Orders

## *A. In General*

WESTLAW   © 2021 Thomson Reuters. No claim to original U.S. Government Works.                    1

APOs are issued in Commission investigations under Title VII of the Tariff Act of 1930 to provide access to BPI to certain party representatives under conditions designed to protect the confidentiality of such information. The Commission is required to disclose under APO to the authorized representatives of interested parties who are parties to an investigation BPI collected by the Commission in the **16835** course of such investigations. 19 U.S.C. 1677f. The Commission has implemented procedures governing this disclosure, which is accomplished under an APO issued by the Secretary to the Commission. 19 CFR 207.7. An important provision of the Commission's rules relating to APOs is the "one day rule" that provides parties with an extra day in which to file the public version of certain submissions containing BPI. 19 CFR 207.3. The one day rule, which also permits correction of the bracketing of BPI during that extra day, was intended to reduce the incidence of APO breaches caused by inadequate bracketing and improper placement of BPI. The Commission urges parties to make use of the rule.

The Secretary to the Commission provides BPI only to "authorized applicants" who agree to be bound by the terms and conditions of an APO. The standard APO form for antidumping and countervailing duty investigations issued by the Commission requires the applicant to swear that he or she will:

(1) Not divulge any of the BPI obtained under the APO and not otherwise available to him, to any person other than

(i) Personnel of the Commission concerned with the investigation,

(ii) The person or agency from whom the BPI was obtained,

(iii) A person whose application for disclosure of BPI under the APO has been granted by the Secretary, and

(iv) Other persons, such as paralegals and clerical staff, who (a) are employed or supervised by and under the direction and control of the authorized applicant or another authorized applicant in the same firm whose application has been granted; (b) have a need thereof in connection with the investigation; (c) are not involved in competitive decisionmaking for an interested party which is a party to the investigation; and (d) have submitted to the Secretary a signed Acknowledgment for Clerical Personnel in the form attached hereto (the authorized applicant shall also sign such acknowledgment and will be deemed responsible for such persons' compliance with the APO);

(2) Use such BPI solely for the purposes of the above-captioned Commission investigation or for judicial or binational panel review of such Commission investigation;

(3) Not consult with any person not described in paragraph (1) concerning BPI disclosed under the APO without first having received the written consent of the Secretary and the party or the attorney of the party from whom such BPI was obtained;

(4) Whenever materials (e.g., documents, computer disks, etc.) containing such BPI are not being used, store such material in a locked file cabinet, vault, safe, or other suitable container (N.B.: storage of BPI on so-called hard disk computer media is to be avoided, because mere erasure of data from such media may not irrecoverably destroy the BPI and may result in violation of paragraph C of the APO);

(5) Serve all materials containing BPI disclosed under the APO as directed by the Secretary and pursuant to section 207.7(f) of the Commission's rules;

(6) Transmit each document containing BPI disclosed under the APO:

(i) With a cover sheet identifying the document as containing BPI,

(ii) With all BPI enclosed in brackets and each page warning that the document contains BPI,

WESTLAW  © 2021 Thomson Reuters. No claim to original U.S. Government Works.

(iii) If the document is to be filed by a deadline, with each page marked "Bracketing of BPI not final for one business day after date of filing," and

(iv) If by mail, within two envelopes, the inner one sealed and marked "Business Proprietary Information—To be opened only by (name of recipient)", and the outer one sealed and not marked as containing BPI;

(7) Comply with the provisions of the APO and §207.7 of the Commission's rules;

(8) Make true and accurate representations in the authorized applicant's application and promptly notify the Secretary of any changes that occur after the submission of the application and that affect the representations made in the application (e.g., change in personnel assigned to the investigation);

(9) Report promptly and confirm in writing to the Secretary any possible breach of the APO; and

(10) Acknowledge that breach of the APO may subject the authorized applicant and other persons to such sanctions as the Commission deems appropriate, including the administrative sanctions set out in the APO.

Breach of the protective order may subject an applicant to:

(1) Disbarment from practice in any capacity before the Commission along with such person's partners, associates, employer, and employees, for up to seven years following publication of a determination that the order has been breached;

(2) Referral to the United States Attorney;

(3) In the case of an attorney, accountant, or other professional, referral to the ethics panel of the appropriate professional association; and

(4) Such other administrative sanctions as the Commission determines to be appropriate, including public release of or striking from the record any information or briefs submitted by, or on behalf of, the offender or the party represented by the offender, and denial of further access to business proprietary information in the current or any future investigations before the Commission.

Commission employees are not signatories to the Commission's APOs and do not obtain access to BPI through the APO procedure. Consequently, they are not subject to the APOs' requirements with respect to the handling of BPI. However, Commission employees are subject to strict statutory and regulatory constraints concerning BPI, and face severe penalties for noncompliance. See 18 U.S.C. 1905; Title 5, U.S. Code; and Commission personnel policies implementing the statutes. Although the Privacy Act (5 U.S.C. 552a) limits the Commission's authority to disclose personnel actions against agency employees, this should not lead the public to conclude that no such actions have been taken.

### B. Investigations of Alleged APO Breaches

In an antidumping or countervailing duty investigation, the investigation of an alleged APO breach generally proceeds as follows. The Secretary, acting under delegated authority, issues to the alleged breacher a letter of inquiry to ascertain the alleged breacher's views on whether a breach has occurred. If, based on the response made to such a letter of inquiry, the Commission determines that a breach has occurred, the Commission issues a second letter asking the breacher to address the questions of mitigating circumstances and possible sanctions or other actions. The Commission then determines what action to take in response to the breach. However, in some cases, the Commission has determined that although a breach has occurred sanctions are not warranted, and therefore has found it unnecessary to issue a second letter concerning what sanctions might be appropriate. The Commission retains sole authority to make final determinations regarding the existence of a breach and the appropriate action to be taken if a breach has occurred.

WESTLAW   © 2021 Thomson Reuters. No claim to original U.S. Government Works.   3

The records of Commission investigations of alleged APO breaches in antidumping and countervailing duty **\*16836** cases are not publicly available and are exempt from disclosure under the Freedom of Information Act, 5 U.S.C. 552, section 135(b) of the Customs and Trade Act of 1990, 19 U.S.C. 1677f(g).

The breach most frequently investigated by the Commission involves the APO's prohibition of the dissemination of BPI to unauthorized persons. Such dissemination usually occurs as the result of failure to delete BPI from public versions of documents filed with the Commission or of transmission of proprietary versions of documents to unauthorized recipients. Other breaches have involved: the failure to properly bracket BPI in proprietary documents filed with the Commission; the failure to immediately report known violations of an APO; and the failure to adequately supervise non-legal personnel in the handling of BPI in certain circumstances.

Sanctions for APO violations serve two basic interests: (a) preserving the confidence of submitters of BPI in the Commission as a reliable protector of BPI, and (b) disciplining breachers and deterring future violations. As the Conference Report to the Omnibus Trade and Competitiveness Act of 1988 observed, "the effective enforcement of limited disclosure under administrative protective order depends in part on the extent to which private parties have confidence that there are effective sanctions against violation." H.R. Conf. Rep. No. 576, 100th Cong., 1st Sess. 623 (1988).

The Commission has worked to develop consistent jurisprudence, not only in determining whether a breach has occurred, but also in selecting an appropriate response. In determining the appropriate response, the Commission generally considers mitigating factors such as whether the breach was unintentional, lack of prior breaches committed by the breaching party, the corrective measures taken by the breaching party, the promptness with which the breaching party reported the violation to the Commission, and any relevant circumstances peculiar to the situation.

### *C. Specific Investigations in Which Breaches Were Found*

The following case studies are presented to illustrate the various types of APO breaches found by the Commission and the actions taken by the Commission. In addition, the case studies discuss the factors considered by the Commission as mitigating the offense in particular instances. The Commission has not included some of the specific facts in the descriptions of investigations where such disclosure could reveal the identity of a particular breacher. Thus, in some cases, apparent inconsistencies in the facts set forth in this notice result from the Commission's inability to disclose particular facts more fully.

The following discussion covers the 9 instances in which breaches of APOs and/or violations of the one day rule in antidumping and countervailing duty investigations were found in 1993:

Case 1: Two attorneys failed to bracket BPI in the confidential version of a submission, and three other attorneys acted in a similar fashion with respect to another submission. The Commission found that breaches had occurred, but found that they were mitigated by the facts that (1) the breaches were inadvertent, (2) expeditious action was taken to correct the errors, (3) only persons under the APO and the Commission received the confidential submissions, and (4) there was no public disclosure of BPI. The attorneys were issued warning letters.

Case 2: Two attorneys and their secretary breached an APO by serving a copy of the BPI version of a prehearing brief on a law firm which was on the public service list but not on the APO list. The secretary apparently confused the two lists. One of the attorneys whose firm was responsible for sending the brief had signed the protective order acknowledgement for clerical personnel, agreeing to exercise direction and control over personnel handling BPI. The error was discovered by the attorney who received it. The Commission issued private letters of reprimand to both attorneys and the secretary.

Case 3: An attorney disclosed BPI at a public Commission hearing. While finding a breach of the APO, the Commission considered as mitigating the inadvertence of the breach and the lack of prior breaches by the attorney. The Commission issued a warning letter to the attorney.

WESTLAW   © 2021 Thomson Reuters. No claim to original U.S. Government Works.                    4

Case 4: One attorney telefaxed BPI to his clients' marketing officials who were not covered by the APO. The Commission found that this breach was mitigated by the unintentional nature of the breach, and the attorney's prompt recovery of the data in question. The Commission issued a private letter of reprimand to the attorney, and in addition required that in his next appearance before the Commission, the attorney must work under the supervision of a more senior attorney who would also be responsible for overseeing the attorney's handling of BPI documents.

Case 5: Two attorneys were involved in the unauthorized release of BPI. A paralegal under their supervision picked up documents from opposing counsel that, unbeknownst to her, included BPI. Although opposing counsel warned the first attorney that the material contained BPI, that attorney failed to inform the paralegal and the second attorney of the inclusion of BPI. Unaware of the existence of the BPI, the second attorney directed the paralegal to distribute copies of the material to the attorneys' clients and to hearing witnesses. In addition to the paralegal's disclosure, the first attorney himself distributed copies of the material to his clients without checking for BPI.

The Commission determined that the two attorneys had breached the APO by improperly disclosing BPI. The first attorney, who knew of the presence of BPI, was held responsible both for the unauthorized disclosure of BPI and for the failure to properly supervise the paralegal, in particular the failure to alert her to the existence of the BPI. The Commission found these mitigating factors: (1) The breach was inadvertent, (2) the attorney had not breached an APO previously, and (3) the attorney took expeditious action to retrieve the data and to notify the Commission. The Commission issued a public letter of reprimand to the first attorney. The Commission found similar factors mitigated the second attorney's breach, and that in addition she had no reason to anticipate the existence of the BPI, which was not prominently marked as such on its cover sheet by opposing counsel. The Commission issued a warning letter to the second attorney.

Case 6: Three attorneys failed to delete fully all BPI from the public version of their prehearing brief. The Commission found a breach, but determined it was mitigated because: (1) The attorneys took immediate steps to notify the Commission and retrieve the pages with BPI and to provide the Commission with the corrected pages, (2) the BPI was not disclosed, and (3) this was the attorneys' first breach of APO. The Commission issued warning letters to the attorneys.

Case 7: One attorney and a secretary served on a law firm not covered by the APO a copy of the BPI version of a prehearing brief. The Commission determined that a breach had occurred, but that it was mitigated by (1) the senders' prompt notification of the Commission and attempts to correct the error, (2) the lack of actual disclosure of BPI, and (3) the fact that this was the first time the individuals had breached an APO. The Commission issued warning letters to both the attorney and the secretary.

 *16837  Case 8: Two attorneys violated Commission rules regarding timeliness of changes to submitted documents. The first attorney violated the one day rule by making changes in a post-conference brief beyond the bracketing changes allowed by the rule, and failed to request an extension of time to file additions to the brief. The Commission issued a warning letter to the first attorney. The second attorney filed exhibits four days after the filing of the original brief without requesting an extension of time. Because the submission was made four days after the original filing, this was not technically a violation of the one day rule, but according to the rules the filing should have been accompanied by a request for an extension of time. While finding a violation of the rules, the Commission found as a mitigating circumstance the fact that the late filing was not surreptitious, but the attorney explained in a cover letter that the information submitted was not previously available. The Commission issued a warning letter to the second attorney.

Case 9: Two attorneys were found to have violated an APO and the one day rule by failing to bracket BPI contained in confidential submissions. They also failed to include in the confidential version of a brief a warning that bracketing was not final for one business day. The Commission found as mitigating circumstances that this was the attorneys' first violation and that no disclosure of BPI occurred. Warning letters were issued to both attorneys.

### D. Investigations in Which No Breach Was Found

WESTLAW   © 2021 Thomson Reuters. No claim to original U.S. Government Works.

During 1993, the Commission completed 14 investigations relating to antidumping and countervailing duty cases in which no breach was found. The reasons for a finding of no breach included:

(1) The information allegedly mishandled by the alleged breacher consisted entirely of information pertaining to the alleged breacher's own client;

(2) The information in question was not BPI; and

(3) The information in question was available to the alleged breacher from sources other than disclosure under the APO.

## II. Section 337 Administrative Protective Orders

APOs are issued in section 337 investigations pursuant to statute and the Commission's rules. 19 U.S.C. 1337(n); 19 CFR 210.37. APO practice in section 337 investigations differs in important respects from APO practice in title VII investigations. Notably, in the section 337 context, it is the presiding Administrative Law Judge rather than the Secretary who issues the APO. The terms of the APO may differ from case to case. Further, the one day rule does not apply.

In a section 337 investigation that is no longer before the administrative law judge but is before the Commission, the investigation of an alleged APO breach generally proceeds in the following manner. The Secretary issues a letter of inquiry to ascertain the alleged breacher's views on whether a breach has occurred. If, based on the response made to such a letter of inquiry, the Commission determines that a breach has occurred, the Commission issues a second letter asking the breacher to address the questions of mitigating circumstances and possible sanctions or other actions. The Commission then determines what action to take in response to the breach. The Commission retains sole authority to make final determinations regarding the existence of a breach and the appropriate action to be taken if a breach has occurred.

In section 337 investigations that are before the presiding Administrative Law Judge, it is the judge who presides over the inquiry into any alleged APO breaches.

Breaches have involved the unauthorized dissemination of CBI; the use of CBI for purposes other than the investigation; and the failure to return or destroy CBI in a timely manner. The following are the two instances (of the 8 alleged breaches investigated) in which breaches of APOs in section 337 investigations were found during the period 1988-1993:

Case 10: Eleven attorneys, representing several parties to an investigation, committed a variety of APO breaches. All eleven failed to return or destroy confidential business information after the end of the investigation. The Commission issued private letters of reprimand to the nine attorneys who committed only that breach.

In addition to improperly retaining the confidential business information, two attorneys committed additional violations. The first of the two also used the information in preparing a brief for use in a court action, thus violating the APO's requirement that the information was to be used solely for the purposes of the Commission investigation and any appeals therefrom. The Commission, finding that the first attorney had exhibited a deliberate disregard of his obligations under the APO, issued to the first attorney a public letter of reprimand and barred him from access to confidential business information in any Commission investigation for three months. The second attorney of the two not only improperly retained the confidential business information but also disclosed it to unauthorized persons and failed to report that disclosure promptly to the Commission or the presiding administrative law judge. The Commission found as a mitigating circumstance a terminal illness in his family during the proceedings. The second attorney received a public letter of reprimand.

Case 11: During oral argument before a court, an attorney disclosed confidential business information. The Commission found a breach of APO, although it was mitigated by its inadvertence, the attorney's subsequent cooperation with the Commission to rectify the error, and the fact that this was his first breach of an APO. The Commission issued a private letter of reprimand.

WESTLAW   © 2021 Thomson Reuters. No claim to original U.S. Government Works.

The Commission notes that this breach occurred before the Commission had adopted its policy of issuing warning letters where appropriate mitigating circumstances are present.

By order of the Commission.

Issued: April 4, 1994.

Donna R. Koehnke,

Secretary.


(FR Doc. 94-8472 Filed 4-7-94; 8:45 am)

BILLING CODE 7020-02-P

---

**End of Document**                                    © 2021 Thomson Reuters. No claim to original U.S. Government Works.

**24880**   **Federal Register** / Vol. 60, No. 90 / Wednesday, May 10, 1995 / Notices

Management Officer, Renee Poehls, (202) 736–4743, M/AS/ISS Room 930B, N.S., Washington, D.C. 20523.

*Date Submitted:* April 11, 1995
*Submitting Agency:* U.S. Agency for International Development
*OMB Number:* OMB 0412–0546
*Form Number:* AID 1550–12
*Type of Submission:* Renewal
*Title:* Request for shipment of commodities for Foreign Distribution (Foreign Government)
*Purpose:* An USAID Title III form is needed by which the specific needs of the recipient country can be communicated to U.S. Department of Agriculture by USAID. The form will be used to request food commodities for approved P.L. 480 Title III country programs overseas and to furnish procurement instruction and other pertinent information necessary to ship these commodities to destination ports.
*Annual Reporting Burden:*
 Respondents: 13
 Annual responses: 55
 Annual burden hours: 60
*Reviewer:* Jeffery Hill (202) 395–7340, Office of Management and Budget, Room 3201, New Executive Office Building, Washington, D.C. 20503.

 Dated: May 1, 1995.

**Genease E. Pettigrew,**
*Chief, Information Support Services Division Office of Administrative Service Bureau of Management.*
[FR Doc. 95–11523 Filed 5–9–95; 8:45 am]
**BILLING CODE 6116–01–M**

## Public Information Collection Requirements Submitted to OMB for Review

The U.S. Agency for International Development (USAID) submitted the following public information collection requirements to OMB for review and clearance under the Paperwork Reduction Act of 1980, (44 U.S.C. Chapter 35). Comments regarding these information collections should be addressed to the OMB reviewer listed at the end of the entry. Comments may also be addressed to, and copies of the submissions obtained from the Records Management Officer, Renee Poehls, (202) 736–4743, M/AS/ISS Room 930B, N.S., Washington, D.C. 20523.

*Date Submitted:* April 11, 1995
*Submitting Agency:* U.S. Agency for International Development
*OMB Number:* OMB 0412–0545
*Form Number:* AID 1550–04
*Type of Submission:* Renewal
*Title:* Request for shipment of commodities for Foreign Distribution (Foreign Government)

*Purpose:* Public Law 480 states that the President may utilize nonprofit voluntary agencies (PVOs) registered with and approved by the USAID in furnishing food commodities to needy persons outside the Untied States. The USAID Form No. 1550–4 is an instrument by which the PVOs communicate their specific needs in this regard to the U.S. Government. This form is used by eligible PVOs to request food commodities for approved country programs overseas and to furnish delivery instructions and other information necessary to ship these commodities to destination ports.
*Annual Reporting Burden:*
 Respondents: 19,
 Annual responses: 1,311;
 Annual burden hours: 120 (est.)
*Reviewer:* Jeffery Hill (202) 395–7340, Office of Management and Budget, Room 3201, New Executive Office Building, Washington, D.C. 20503

 Dated: May 1, 1995.

**Genease E. Pettigrew,**
*Chief, Information Support Services Division, Office of Administrative Service, Bureau of Management.*
[FR Doc. 95–11524 Filed 5–9–95; 8:45 am]
**BILLING CODE 6116–01–M**

## INTERNATIONAL TRADE COMMISSION

## International Trade Commission, Investigations Relating to Potential Breaches of Administrative Protective Orders, Sanctions Imposed for Actual Violations

**AGENCY:** U.S. International Trade Commission.

**ACTION:** Summary of Commission practice relating to administrative protective orders.

**SUMMARY:** This notice provides a summary by the International Trade Commission (Commission) of its investigations of (1) breaches of administrative protective orders (APOs) issued in connection with investigations under Title VII and Section 337 of the Tariff Act of 1930, and (2) certain violations of the Commission's rules.

This notice is intended to inform the public of the Commission's experience with APO breaches. The Commission also intends that this notice will educate and alert representatives of parties to Commission proceedings as to some specific types of APO breaches encountered by the Commission. This notice is illustrative only and does not limit the Commission's rules or standard APO. The notice does not

provide an exclusive list of conduct that will be deemed to be a breach of the Commission's APOs, and does not indicate how the Commission will rule in future cases.

**FOR FURTHER INFORMATION CONTACT:** Elizabeth C. Rose, Esq., Office of the General Counsel, U.S. International Trade Commission, telephone 202–205–3113.

**SUPPLEMENTARY INFORMATION:** The discussion below illustrates APO breach investigations that the Commission has completed including a description of actions taken in response to breaches. The discussion covers breach investigations completed during 1994 with respect to antidumping and countervailing duty cases. Also discussed are the Commission's investigations completed during 1994 of possible violations of Commission rule 207.3, commonly known as the ''one day rule.'' In the interest of providing as much information to practitioners as possible on APO practice, this notice also discusses breach investigations completed during 1994 with respect to investigations under section 337 of the Tariff Act of 1930.

The Commission periodically reports a summary of its actions in response to violations of Commission APOs in an effort to educate those obtaining access to business proprietary information (BPI) under an APO of the common problems encountered in handling BPI and confidential business information (CBI). This is the fifth notice of its kind, the previous ones having been published at 56 FR 4846 (Feb. 6, 1991), 57 FR 12335 (Apr. 9, 1992), 58 FR 21991 (Apr. 26, 1993), and 59 FR 16834 (Apr. 8, 1994). The Commission intends to publish summaries at least annually, and more frequently as appropriate.

As part of the effort to educate practitioners about APO practice, the Commission's Secretary issued in September 1991 An Introduction to Administrative Protective Order Practice in Antidumping and Countervailing Duty Investigations. This document is available upon request from the Office of the Secretary, U.S. International Trade Commission, 500 E Street, SW, Washington, DC 20436, telephone 202–205–2000.

## I. Title VII Administrative Protective Orders

### A. In General

APOs are issued in Commission investigations under Title VII of the Tariff Act of 1930 to provide access to BPI to certain party representatives under conditions designed to protect the confidentiality of such information. The

Commission is required to disclose under APO to the authorized representatives of interested parties who are parties to an investigation BPI collected by the Commission in the course of such investigations. 19 U.S.C. 1677f. The Commission has implemented procedures governing this disclosure, which is accomplished under an APO issued by the Secretary to the Commission. 19 CFR 207.7. An important provision of the Commission's rules relating to APOs is the ''one day rule'' that provides parties with an extra day in which to file the public version of certain submissions containing BPI. 19 CFR 207.3. The one day rule, which also permits correction of the bracketing of BPI during that extra day, was intended to reduce the incidence of APO breaches caused by inadequate bracketing and improper placement of BPI. The Commission urges parties to make use of the rule.

The Commission Secretary provides BPI only to ''authorized applicants'' who agree to be bound by the terms and conditions of an APO. The Commission is currently revising its standard APO forms for antidumping and countervailing duty investigations to reflect recent regulatory changes and Commission practice. The Commission has also created a new APO form for use in section 201 investigations. The standard APO form for antidumping and countervailing duty investigations issued by the Commission in 1994 required the applicant to swear that he or she would:

(1) Not divulge any of the BPI obtained under the APO and not otherwise available to him, to any person other than

(i) Personnel of the Commission concerned with the investigation,

(ii) The person or agency from whom the BPI was obtained,

(iii) A person whose application for disclosure of BPI under the APO has been granted by the Secretary, and

(iv) Other persons, such as paralegals and clerical staff, who (a) are employed or supervised by and under the direction and control of the authorized applicant or another authorized applicant in the same firm whose application has been granted; (b) have a need thereof in connection with the investigation; (c) are not involved in competitive decision-making for an interested party which is a party to the investigation; and (d) have submitted to the Secretary a signed Acknowledgment for Clerical Personnel in the form attached hereto (the authorized applicant shall also sign such acknowledgment and will be deemed

responsible for such persons' compliance with the APO);

(2) Use such BPI solely for the purposes of the above-captioned Commission investigation or for judicial or binational panel review of such Commission investigation;

(3) Not consult with any person not described in paragraph (1) concerning BPI disclosed under the APO without first having received the written consent of the Secretary and the party or the attorney of the party from whom such BPI was obtained;

(4) Whenever materials (*e.g.*, documents, computer disks, etc.) containing such BPI are not being used, store such material in a locked file cabinet, vault, safe, or other suitable container (N.B.: storage of BPI on so-called hard disk computer media is to be avoided, because mere erasure of data from such media may not irrecoverably destroy the BPI and may result in violation of paragraph C of the APO);

(5) Serve all materials containing BPI disclosed under the APO as directed by the Secretary and pursuant to section 207.7(f) of the Commission's rules;

(6) Transmit each document containing BPI disclosed under the APO:

(i) with a cover sheet identifying the document as containing BPI,

(ii) with all BPI enclosed in brackets and each page warning that the document contains BPI,

(iii) if the document is to be filed by a deadline, with each page marked ''Bracketing of BPI not final for one business day after date of filing,'' and

(iv) if by mail, within two envelopes, the inner one sealed and marked ''Business Proprietary Information—To be opened only by [name of recipient]'', and the outer one sealed and not marked as containing BPI;

(7) Comply with the provisions of the APO and section 207.7 of the Commission's rules;

(8) Make true and accurate representations in the authorized applicant's application and promptly notify the Secretary of any changes that occur after the submission of the application and that affect the representations made in the application (*e.g.*, change in personnel assigned to the investigation);

(9) Report promptly and confirm in writing to the Secretary any possible breach of the APO; and

(10) Acknowledge that breach of the APO may subject the authorized applicant and other persons to such sanctions as the Commission deems appropriate, including the

administrative sanctions set out in the APO.

The APO further provides that breach of the protective order may subject an applicant to:

(1) Disbarment from practice in any capacity before the Commission along with such person's partners, associates, employer, and employees, for up to seven years following publication of a determination that the order has been breached;

(2) Referral to the United States Attorney;

(3) In the case of an attorney, accountant, or other professional, referral to the ethics panel of the appropriate professional association; and

(4) Such other administrative sanctions as the Commission determines to be appropriate, including public release of or striking from the record any information or briefs submitted by, or on behalf of, the offender or the party represented by the offender, and denial of further access to business proprietary information in the current or any future investigations before the Commission. In addition, as noted in its December 28, 1994 Notice of Final Rulemaking (59 FR 66719, 66720–21), the Commission may take actions other than sanctions, such as the issuance of letters of warning.

Commission employees are not signatories to the Commission's APOs and do not obtain access to BPI through the APO procedure. Consequently, they are not subject to the APOs' requirements with respect to the handling of BPI. However, Commission employees are subject to strict statutory and regulatory constraints concerning BPI, and face potentially severe penalties for noncompliance. See 18 U.S.C. 1905; Title 5, U.S. Code; and Commission personnel policies implementing the statutes. Although the Privacy Act (5 U.S.C. 552a) limits the Commission's authority to disclose any personnel action against agency employees, this should not lead the public to conclude that no such actions have been taken; during 1994, such action was taken.

*B. Investigations of Alleged APO Breaches*

In an antidumping or countervailing duty investigation, the investigation of an alleged APO breach generally proceeds as follows. The Secretary, acting under delegated authority, issues to the alleged breacher a letter of inquiry to ascertain the alleged breacher's views on whether a breach has occurred. If, based on the response made to such a letter of inquiry, the Commission determines that a breach has occurred,

the Commission often issues a second letter asking the breacher to address the questions of mitigating circumstances and possible sanctions or other actions. The Commission then determines what action to take in response to the breach. However, in some cases, the Commission has determined that although a breach has occurred sanctions are not warranted, and therefore has found it unnecessary to issue a second letter concerning what sanctions might be appropriate, and has waived the rule requiring issuance of the second letter. The Commission's December 28, 1994 Notice of Final Rulemaking formally codifies this procedure. See 59 FR 66719, 66721. The Commission retains sole authority to make final determinations regarding the existence of a breach and the appropriate action to be taken if a breach has occurred.

The records of Commission investigations of alleged APO breaches in antidumping and countervailing duty cases are not publicly available and are exempt from disclosure under the Freedom of Information Act, 5 U.S.C. 552. Section 135(b) of the Customs and Trade Act of 1990, 19 U.S.C. 1677f(g).

The breach most frequently investigated by the Commission involves the APO's prohibition on the dissemination of BPI to unauthorized persons. Such dissemination usually occurs as the result of failure to delete BPI from public versions of documents filed with the Commission or of transmission of proprietary versions of documents to unauthorized recipients. Other breaches have involved: the failure to properly bracket BPI in proprietary documents filed with the Commission; the failure to immediately report known violations of an APO; and the failure to adequately supervise non-legal personnel in the handling of BPI in certain circumstances.

Sanctions for APO violations serve two basic interests: (a) Preserving the confidence of submitters of BPI in the Commission as a reliable protector of BPI, and (b) disciplining breachers and deterring future violations. As the Conference Report to the Omnibus Trade and Competitiveness Act of 1988 observed, "the effective enforcement of limited disclosure under administrative protective order depends in part on the extent to which private parties have confidence that there are effective sanctions against violation." H.R. Conf. Rep. No. 576, 100th Cong., 1st Sess. 623 (1988).

The Commission has worked to develop consistent jurisprudence, not only in determining whether a breach has occurred, but also in selecting an

appropriate response. In determining the appropriate response, the Commission generally considers mitigating factors such as whether the breach was unintentional, lack of prior breaches committed by the breaching party, the corrective measures taken by the breaching party, the promptness with which the breaching party reported the violation to the Commission, and any relevant circumstances peculiar to the situation. The Commission also considers aggravating circumstances, especially whether persons not under the APO actually read the BPI.

The Commission notes that Commission rules permit economists or consultants to obtain access to BPI under the APO under the direction and control of an attorney under the APO, or upon their own responsibility, if the economist or consultant appears regularly before the Commission and represents an interested party who is a party to the investigation. See 19 C.F.R. 207.7(a)(3) (B) and (C). The Commission cautions that economists or consultants who obtain access to BPI under the APO under the direction and control of an attorney nonetheless remain individually responsible for complying with the APO. In appropriate circumstances, for example, an economist under the direction and control of an attorney may be held responsible for a breach of the APO by failing to redact APO information from a document that is subsequently filed with the Commission and served as a public document. This is so even though the attorney exercising direction or control over the economist or consultant may also be held responsible for the breach of the APO.

## C. Specific Investigations in Which Breaches Were Found

The following case studies are presented to educate users about the types of APO breaches found by the Commission and the sanctions imposed and other actions taken by the Commission. In addition, the case studies discuss the factors considered by the Commission as mitigating the sanctions imposed in particular instances. The Commission has not included some of the specific facts in the descriptions of investigations where disclosure could reveal the identity of a particular breacher. Thus, in some cases, apparent inconsistencies in the facts set forth in this notice result from the Commission's inability to disclose particular facts more fully.

The following discussion covers the 8 instances in which breaches of APOs in antidumping and countervailing duty investigations were found in 1994:

Case 1: An attorney (1) failed to redact BPI in the public version of a brief, and (2) subsequently served that version on persons not subject to the APO. The public version of the brief filed with the Commission was placed in the public file and was signed out and reviewed by a person not subject to the APO. The failure to redact the BPI from the brief was not discovered by the attorney but was found by the Secretary to the Commission. After being notified, counsel retrieved copies of the document containing the confidential information and sent replacement pages to the Commission. The Commission found that the attorney had breached the APO, but that mitigating circumstances existed because the attorney had committed no prior breaches and the breaches were unintentional. The attorney was given a private letter of reprimand.

Case 2: An attorney failed to redact BPI in the public version of a brief. The Commission was informed of the incident the next day and the attorney filed corrected pages of the brief with the Commission. The public version of the brief was immediately removed from the Commission files. No one other than the Commission staff had seen the public version. The defective public version of the brief was only sent to the attorneys subject to the APO and was recovered without being disseminated to anyone not subject to the protective order. The Commission found that the attorney had breached the APO, but did not sanction the attorney because of the following mitigating circumstances: the breach was not intentional; the attorney had committed no prior breaches; when notified of the defective brief the attorney promptly retrieved the defective documents so no BPI was actually released to any unauthorized persons; and the firm immediately revised and strengthened its previously established procedures for safeguarding against the unintentional release of BPI. Two colleagues were found not to have breached, because they were not directly involved in the preparation of the public version of the brief. The breaching attorney received a warning letter.

Case 3: An attorney filed with the Commission and served upon parties a copy of the public version of a brief in which certain bracketed BPI was not deleted and other BPI was neither bracketed nor deleted. The public version of the brief filed with the Commission was placed in the public file and was signed out and reviewed by persons not subject to the APO. The failure to redact the BPI from the brief was brought to the attorney's attention

by the Secretary of the Commission. The Commission found that a breach of the APO had occurred, but that mitigating circumstances existed because the breaches were unintentional, the attorney had not previously been charged by the Commission with an APO violation, and the attorney acted promptly to mitigate the breach when notified by the Commission that the breach had occurred. However, aggravating circumstances included the fact that members of the public actually reviewed the improperly redacted documents on several occasions, the breach was not discovered by the attorney or by the attorney's firm, but by the Commission, and the attorney appeared not to have reviewed the work of a paralegal who created the public version of the brief. With respect to this last item, we note that the Commission has no specific requirement that attorneys review the work of paralegals, but attorneys are held responsible for APO breaches by their staff who are APO signatories. The attorney was given a private letter of reprimand.

Case 4: An attorney served the public version of a brief on persons on the public service list and filed it with the Commission. However, BPI was contained in an appendix to the brief. The public version of the brief was not placed in the Commission's public files and the copies of the brief that were served on attorneys on the public service list were destroyed before dissemination to the attorneys' clients. The Commission found that a breach had occurred, but mitigating circumstances were found in that the attorney had committed no prior APO violation, the attorney took immediate steps to "cure" the breach by seeking the removal of the brief from the Commission's public file before it could be reviewed by members of the public (although the brief had not yet been placed in the public file), and the attorney notified other counsel participating in the investigations of the problem before they released the information to their clients. The breaching attorney was not sanctioned but received a warning letter.

Case 5: An attorney filed the public version of a brief in which bracketed BPI was not redacted. The brief was filed with the Commission and served on persons on the public service list, several of whom were not signatories to the APO. The attorney learned of the error that same day and immediately retrieved all copies of the defective public version of the brief from the parties on whom it had been served. The brief was retrieved before it was viewed by any non-signatories to the

APO. The brief was never placed in the Commission's public file. The Commission found that the attorney had breached the APO, but decided not to sanction the attorney because of mitigating circumstances including that the breach was inadvertent, the attorney had never been sanctioned by the Commission in the past for APO breaches, immediate steps to mitigate any harm arising from the breach, and no non-APO signatories viewed the confidential information. The breaching attorney received a warning letter. Three colleagues were found not to have breached the APO because they did not participate in the preparation of the public version of the brief.

Case 6: A paralegal assigned to remove bracketed BPI from the public version of a brief failed to do so, and the brief was submitted to the Commission, and served on a signatory to the APO. The error was discovered and reported to the Commission before the brief was placed in the public file. The Commission found that two attorneys responsible for supervising the paralegal breached the APO, but that there were mitigating circumstances including the facts the breach was inadvertent, none of the persons involved had been previously sanctioned by the Commission for APO breaches, steps were taken to mitigate any harm arising from the breach, and no BPI was disclosed. The attorneys were not sanctioned, but received warning letters. Two colleagues were found not to have breached the APO because they were not directly involved with the production of the document in question.

Case 7: Two attorneys served the business proprietary version of a brief on a non-APO signatory due to an error in the certificate of service. Two non-APO signatories actually viewed the defective brief before the attorneys could retrieve it. In a related incident, three attorneys also disclosed information in the public version of a brief from which BPI could be derived, but retrieved it before service was complete. That brief also was filed with the Commission's Secretary, but had not yet been placed in the public file when the attorneys reported the incident. The Commission found breaches in both incidents, but determined not to sanction the attorneys. Mitigating circumstances included the facts that the breaches were unintentional, none of the attorneys involved had been previously sanctioned by the Commission for an APO breach, the attorneys promptly reported both breaches to the Commission and took immediate action to mitigate the

breaches, and no non-APO signatories viewed the brief in the second incident. The attorneys received warning letters.

Case 8: Two attorneys mistakenly served replacement pages containing BPI for the confidential version of a brief on an attorney at another law firm. Neither the law firm to which the APO material was sent, nor any of its attorneys, was included in the APO service list. The attorneys waited several days to inform the Commission of the breach. The Commission found that a breach had occurred, but that mitigating circumstances included the following: the breach was unintentional; the attorneys had no prior APO sanctions; prompt and effective measures were taken to minimize any harm resulting from the breach; and the firm conducted more training of its personnel and instituted new procedures to guard against future breaches. Aggravating circumstances included the fact that non-APO signatories of the law firm that received the misdirected copies viewed the information. The breaching attorneys received private letters of reprimand.

## D. Investigations Involving the "One Day Rule"

During 1994, the Commission completed the following investigations of changes to briefs that were not in compliance with the one day rule. The Commission found no violations in these investigations. The reasons for finding no violation include:

(1) Attorneys representing two parties in the same investigation made and submitted substantive corrections to their briefs along with bracketing corrections. The attorneys were found not to be in violation because a representative of the Commission had suggested that the corrections be made and there was a misunderstanding as to the appropriate means to make such changes; and

(2) An attorney submitted bracketing changes to a brief in one letter and correction of a typographical error in the brief in a separate letter. The Commission determined that because the correction was filed separately, and not along with the bracketing changes, there was no violation of the one day rule.

## E. Investigations in Which No Breach Was Found

During 1994, the Commission completed 4 additional investigations in which no breach was found. The reasons for a finding of no breach included:

(1) The information allegedly mishandled was not BPI;

**24884**   **Federal Register** / Vol. 60, No. 90 / Wednesday, May 10, 1995 / Notices

(2) Partially redacted BPI was largely illegible; and

(3) The information allegedly mishandled by the alleged breacher consisted entirely of information pertaining to the alleged breacher's own client.

## II. Section 337 Administrative Protective Orders

APOs are issued in section 337 investigations pursuant to the statute and the Commission's rules. 19 U.S.C. § 1337(n); 19 CFR 210.37. APO practice in section 337 investigations differs in important respects from APO practice in title VII investigations. Notably, in the section 337 context, it is the presiding Administrative Law Judge rather than the Secretary who issues the APO. The terms of the APO may differ from case to case. Further, the one day rule does not apply.

In a section 337 investigation that is no longer before the administrative law judge but is before the Commission, the investigation of an alleged APO breach generally proceeds in the following manner. The Secretary issues a letter of inquiry to ascertain the alleged breacher's views on whether a breach has occurred. If, based on the response made to such a letter of inquiry, the Commission determines that a breach has occurred, the Commission issues a second letter asking the breacher to address the questions of mitigating circumstances and possible sanctions or other actions. The Commission then determines what action to take in response to the breach. The Commission retains sole authority to make final determinations regarding the existence of a breach and the appropriate action to be taken if a breach has occurred.

In section 337 investigations that are before the presiding Administrative Law Judge, it is the judge who presides over the inquiry into any alleged APO breaches.

Breaches have involved the unauthorized dissemination of CBI; the use of CBI for purposes other than the section 337 investigation; and the failure to return or destroy CBI in a timely manner. The following is a summary of the one case in which a breach of the APO in a section 337 investigation was found in 1994:

Case 9: An attorney failed to destroy CBI in a timely manner after the termination of the investigation and after the determination was no longer appealable. The Commission determined that the attorney had breached the APO after written and oral requests by the supplier for return of the information were denied. Mitigating circumstances included the facts that

this was the first APO breach by the attorney, and that while the attorney failed to return or destroy the CBI, no CBI was disclosed. The attorney received a private letter of reprimand.

Issued: May 2, 1995.

By order of the Commission.

**Donna R. Koehnke,**
*Secretary.*

[FR Doc. 95–11492 Filed 5–9–95; 8:45 am]

**BILLING CODE 7020–02–P**

---

**[Investigation 332–362]**

## U.S.-Africa Trade Flows and Effects of the Uruguay Round Agreements and U.S. Trade and Development Policy

**AGENCY:** United States International Trade Commission.

**ACTION:** Institution of investigation and request for written submissions.

---

**EFFECTIVE DATE:** April 27, 1995.

**SUMMARY:** Following receipt on March 31, 1995, of a request from the United States Trade Representative (USTR), the Commission instituted investigation No. 332–362, U.S.-Africa Trade Flows and Effects of the Uruguay Round Agreements and U.S. Trade and Development Policy. The USTR letter also requested that the Commission prepare its first annual report under this investigation not later than November 15, 1995, and provide an update of the report annually thereafter for a period of 4 years.

**FURTHER INFORMATION CONTACT:** Cathy Jabara, Office of Industries (202–205–3309) or Jean Harman, Office of Industries (292–205–3313), or William Gearhart, Office of the General Counsel (202–205–3091) for information on legal aspects. The media should contact Margaret O'Laughlin, Office of Public Affairs (202–205–1819). Hearing impaired individuals are advised that information on this matter can be obtained by contacting the TDD terminal on (202–205–1810).

*Background:* The USTR, in his letter dated March 30, 1995, requested that the Commission, pursuant to section 332(g) of the Tariff Act of 1930 (19 U.S.C. 1332(g), conduct an investigation to provide the President a report containing the following:

1. A profile of the structure of U.S.-Africa trade flows over the 1990–94 period in the following major sectors: agriculture, forest products, textiles and apparel, energy, chemicals, minerals and metals, machinery and equipment, electronics technology, miscellaneous manufactures and services;

2. A summary of U.S. Government trade and development programs (e.g.,

investments, trade finance, trade facilitation, trade promotion, foreign development assistance, etc.) in Africa, including dollar amounts on an annual basis, during the 1990–94 period;

3. A summary of the literature and private sector views relevant to assessing the impact of the Uruguay Round Agreements on developing countries and Africa in particular; and

4. An assessment of any effects of the Uruguay Round Agreements, and of U.S. trade and development policy for Africa, on U.S.-Africa trade flows.

As requested by the USTR, the Commission will limit its study to the following countries in Sub-Saharan Africa: Angola, Benin, Botswana, Burkina Faso, Burundi, Cameroon, Cape Verde, Central African Republic, Chad, Comoros, Congo, Côte d'Ivoire, Djibouti, Equatorial Guinea, Eritrea, Ethiopia, Gabon, Gambia, Ghana, Guinea, Guinea-Bissau, Kenya, Lesotho, Liberia, Madagascar, Malawi, Mali, Mauritania, Mauritius, Mozambique, Namibia, Niger, Nigeria, Rwanda, Sao Tome and Principe, Senegal, Seychelles, Sierra Leone, Somalia, South Africa, Sudan, Swaziland, Togo, Tanzania, Uganda, Zaire, Zambia, and Zimbabwe.

The USTR letter notes that section 134 of the Uruguay Round Agreements Act (URAA), P.L. 103–465, directs the President to develop a comprehensive trade and development policy for the countries of Africa. The President is also to report to the Congress annually over the next 5 years on the steps taken to carry out that mandate. The Statement of Administrative Action that was approved by the Congress with the URAA states that the President will direct the International Trade Commission to submit within 12 months following enactment of the URAA into law, and annually for the 4 years thereafter, a report providing (1) an analysis of U.S.-Africa trade flows, and (2) an assessment of any effects of the Uruguay Round Agreements, and of U.S. trade and development policy for Africa, on such trade flows.

The USTR letter states that as part of its trade and development policy for Africa, the Administration will be examining all measures that will foster economic development in Africa through increased trade and sustained economic reforms. The USTR asks the Commission in its report to provide, to the extent practicable, any readily available information on the role of regional integration in Africa's trade and development and on Africa's progress in implementing economic reforms.

*Public Hearing:* A public hearing in connection with the investigation will be held at the U.S. International Trade

*Total Estimated Burden Hours:* 8,887.
*Status:* Revision.
*Contact:* Bill Flood, HUD, (202) 708–1640, ext. 4185; Joseph F. Lackey, Jr., OMB, (202) 395–7316.

Dated: April 24, 1996.

[FR Doc. 96–11550 Filed 5–8–96; 8:45 am]

**BILLING CODE 4210–01–M**

## DEPARTMENT OF THE INTERIOR

### Bureau of Land Management

**[WY–010–5101–00–K012, WYW–128830]**

### Notice of Availability of the Record of Decision for the Express Pipeline Project

**AGENCY:** Bureau of Land Management, Interior.

**SUMMARY:** The Wyoming State Director of the Bureau of Land Management (BLM) has issued a Record of Decision (ROD) stating the BLM's intent to grant a right-of-way (ROW) and associated temporary use permits across public lands to Express Pipeline Inc., for the construction, operation, and maintenance of a 24-inch buried crude oil pipeline from the Port of Wildhorse on the U.S.-Canada border to Casper, Wyoming.

**ADDRESSES:** Copies of the ROD may be reviewed at the following locations: Lewistown District BLM Office, 80 Airport Road, (contact Robert Padilla, Realty Specialist), Lewistown, Montana; Worland District BLM Office, 101 South 23rd Street, (Don Ogaard, BLM Project Manager) Worland, Wyoming; Casper District BLM Office, 1701 East "E" Street, (Pat Moore, Realty Specialist), Caper, Wyoming; Montana State Department of Environmental Quality (DEQ) (Art Compton) 1520 East 6th Avenue, Helena, Montana, and county and city libraries along the proposed pipeline route.

**FOR FURTHER INFORMATION CONTACT:** A copy of the ROD may be obtained from the Bureau of Land Management, Worland District Office, Attn: Don Ogaard, BLM Project Manager, P.O. Box 119, Worland, Wyoming 82401–0119, telephone (307) 347–5160.

**SUPPLEMENTARY INFORMATION:** Express Pipeline, Inc. proposes to construct, operate, and maintain a 24-inch pipeline from Wild Horse (located on the border between Montana and Canada) to Casper, Wyoming, to transport Canadian crude oil. On February 23, 1996, the final Environmental Impact Statement for the project was issued a 30-day public review period. The ROD was signed by the Wyoming State Director on April 15, 1996. The BLM intends to issue a ROW grant and associated temporary use permits for the 97 miles of public land that would be crossed on the 515-mile route.

Construction activities would be subject to a timing restriction designed to protect big game winter range and other wildlife habitat. The decision does not affect any state or private lands crossed by the proposed route, and does not create any right or easement nor establish eminent domain, across such lands. The BLM will not issue a Notice to Proceed with construction of the public lands segments of the ROW until an acceptable Plan of Development, containing the detailed construction standards, reclamation measures, and emergency contingency plans, has been submitted by Express Pipeline, Inc. and approved by the BLM.

**APPEALS:** This decision may be appealed to the Interior Board of Land Appeals, Office of the Secretary, in accordance with the regulations contained in 43 CFR Part 4, Subpart E. If you wish to appeal, a Notice of Appeal must be filed in the Wyoming State BLM Office, 5353 Yellowstone Road, P.O. Box 1828, Cheyenne, Wyoming 82003–1828, within 30 days from the date of publication of this notice in the Federal Register. The Notice of Appeal shall state clearly and concisely why you think the decision is in error. A copy of the Notice of Appeal must be served, within 15 days, on the Regional Solicitor, Rocky Mountain Region; U.S. Department of the Interior; 755 Parfet Street, Suite 151; Lakewood, Colorado 80215. Within 30 days of the Notice of Appeal, the appellant must file a Statement of Reasons for the appeal. Appellants wishing a stay of the decision must file a Petition for Stay, pursuant to 43 CFR Part 4, Subpart B, and 43 CFR 2884.1, with the Notice of Appeal.

Dated: May 3, 1996.

Alan R. Pierson,

*Wyoming State Director.*

[FR Doc. 96–11596 Filed 5–8–96; 8:45 am]

**BILLING CODE 4310–22–M**

### Bureau of Land Management

**[MT–960–1990–00] Resource Advisory Council Meeting, Butte, MT**

**AGENCY:** Butte District Office, Bureau of Land Management.

**ACTION:** Notice of Butte District Resource Advisory Council Meeting, Butte, Montana.

**SUMMARY:** The Council will convene at 9 a.m. on May 22, 1996, and will continue through May 23, 1996, if all business is not completed on the 22nd. This is a regularly scheduled meeting; issues to be discussed will be Access (RS2477 and 393 Plan), Permit Security and Livestock Grazing (other than cattle). The meeting will be held in the District Office Conference Room at 106 N. Parkmont.

The meeting is open to the public and written comments may be given to the Council. Oral comments may be presented to the Council at 11 a.m. The time allotted for oral comment may be limited, depending on the number of persons wishing to be heard. Individuals who plan to attend and need further information about the meeting; or need special assistance, such as sign language or other reasonable accommodations, should contact the Butte District, 106 North Parkmont (P.O. Box 3388), Butte Montana 59702; telephone 406–494–5059.

**FOR FURTHER INFORMATION CONTACT:** Jim Owings at the above address or telephone number.

James R. Owings,

*District Manager.*

[FR Doc. 96–11543 Filed 5–8–96; 8:45 am]

**BILLING CODE 4310–DN–P**

## INTERNATIONAL TRADE COMMISSION

### Investigations Relating to Potential Breaches of Administrative Protective Orders, Sanctions Imposed for Actual Violations

**AGENCY:** U.S. International Trade Commission.

**ACTION:** Summary of Commission practice relating to administrative protective orders.

**SUMMARY:** This notice provides a summary by the International Trade Commission (Commission) of its investigations of (1) breaches of administrative protective orders (APOs) issued in connection with investigations under Title VII, and (2) certain violations of the Commission's rules.

This notice is intended to inform the public of the Commission's experience with APO breaches. The Commission also intends that this notice will educate and alert representatives of parties to Commission proceedings as to some specific types of APO breaches encountered by the Commission. This notice is illustrative only and does not limit the Commission's rules or

standard APO. The notice does not provide an exclusive list of conduct that will be deemed to be a breach of the Commission's APOs, and does not indicate how the Commission will rule in future cases.

**FOR FURTHER INFORMATION CONTACT:** Cynthia P. Johnson, Esq., Office of the General Counsel, U.S. International Trade Commission, telephone 202–205–3098.

**SUPPLEMENTARY INFORMATION:** The discussion below illustrates APO breach investigations that the Commission has completed including a description of actions taken in response to breaches. The discussion covers breach investigations completed during 1995 with respect to antidumping and countervailing duty cases. Also discussed are the Commission's investigations completed during 1995 of possible violations of Commission rule 207.3, commonly known as the "24-hour rule."

The Commission periodically reports a summary of its actions in response to violations of Commission APOs in an effort to educate those obtaining access to business proprietary information (BPI) under an APO of the common problems encountered in handling BPI and confidential business information (CBI). This is the sixth notice of its kind, the previous ones having been published in 56 Fed. Reg. 4846 (Feb. 6, 1991), 57 Fed. Reg. 12335 (Apr. 9, 1992), 58 Fed. Reg. 21991 (Apr. 26, 1993), 59 Fed. Reg. 16834 (Apr. 8, 1994), and 60 Fed. Reg. 24880 (May 10, 1995). The Commission intends to publish summaries at least annually, and more frequently as appropriate.

As part of the effort to educate practitioners about APO practice, the Commission's Secretary issued in September 1991 *An Introduction to Administrative Protective Order Practice in Antidumping and Countervailing Duty Investigations.* A revision to the handbook is currently pending and is expected to be issued shortly. This document is available upon request from the Office of the Secretary, U.S. International Trade Commission, 500 E Street, SW, Washington, DC 20436, telephone 202–205–2000.

### I. Title VII Administrative Protective Orders

#### A. In General

APOs are issued in Commission investigations under Title VII of the Tariff Act of 1930 to provide certain party representatives access to BPI under conditions designed to protect the confidentiality of such information. The Commission is required to disclose

under APO BPI collected by the Commission to authorized representatives of interested parties who are parties to such investigations. 19 U.S.C. 1677f. The Commission has implemented procedures governing this disclosure, which is accomplished under an APO issued by the Secretary to the Commission. 19 C.F.R. § 207.7. An important provision of the Commission's rules relating to APOs is the "24-hour rule" that provides parties with an extra day in which to file the public version of certain submissions containing BPI. 19 C.F.R. § 207.3. The 24-hour rule, which permits correction of the bracketing of BPI during that extra day, was intended to reduce the incidence of APO breaches caused by inadequate bracketing and improper placement of BPI. The Commission urges parties to make use of the rule.

The Commission Secretary provides BPI only to "authorized applicants" who agree to be bound by the terms and conditions of an APO. The Commission has revised its standard APO forms for antidumping and countervailing duty investigations to reflect recent regulatory changes and Commission practice. The Commission has also created a new APO form for use in section 201 investigations. The standard APO form for antidumping and countervailing duty investigations issued by the Commission in 1995 required the applicant to swear that he or she would:

(1) Not divulge any of the BPI obtained under the APO and not otherwise available to him, to any person other than

(i) Personnel of the Commission concerned with the investigation,

(ii) The person or agency from whom the BPI was obtained,

(iii) A person whose application for disclosure of BPI under the APO has been granted by the Secretary, and

(iv) Other persons, such as paralegals and clerical staff, who (a) are employed or supervised by and under the direction and control of the authorized applicant or another authorized applicant in the same firm whose application has been granted; (b) have a need thereof in connection with the investigation; (c) are not involved in competitive decisionmaking for an interested party which is a party to the investigation; and (d) have submitted to the Secretary a signed Acknowledgment for Clerical Personnel (the authorized applicant shall also sign such acknowledgment and will be deemed responsible for such persons' compliance with the APO);

(2) Use such BPI solely for the purposes of the above-captioned

Commission investigation or for judicial or binational panel review of such Commission investigation;

(3) Not consult with any person not described in paragraph (1) concerning BPI disclosed under the APO without first having received the written consent of the Secretary and the party or the attorney of the party from whom such BPI was obtained;

(4) Whenever materials (e.g., documents, computer disks, etc.) containing such BPI are not being used, store such material in a locked file cabinet, vault, safe, or other suitable container (N.B.: storage of BPI on so-called hard disk computer media is to be avoided, because mere erasure of data from such media may not irrecoverably destroy the BPI and may result in violation of paragraph C of the APO);

(5) Serve all materials containing BPI disclosed under the APO as directed by the Secretary and pursuant to section 207.7(f) of the Commission's rules;

(6) Transmit each document containing BPI disclosed under the APO:

(i) with a cover sheet identifying the document as containing BPI,

(ii) with all BPI enclosed in brackets and each page warning that the document contains BPI,

(iii) if the document is to be filed by a deadline, with each page marked "Bracketing of BPI not final for one business day after date of filing," and

(iv) if by mail, within two envelopes, the inner one sealed and marked "Business Proprietary Information— To be opened only by [name of recipient]", and the outer one sealed and not marked as containing BPI;

(7) Comply with the provisions of the APO and section 207.7 of the Commission's rules;

(8) Make true and accurate representations in the authorized applicant's application and promptly notify the Secretary of any changes that occur after the submission of the application and that affect the representations made in the application (*e.g.,* change in personnel assigned to the investigation);

(9) Report promptly and confirm in writing to the Secretary any possible breach of the APO; and

(10) Acknowledge that breach of the APO may subject the authorized applicant and other persons to such sanctions as the Commission deems appropriate, including the administrative sanctions set out in the APO. Breach of the protective order may subject an applicant to:

(1) Disbarment from practice in any capacity before the Commission along

with such person's partners, associates, employer, and employees, for up to seven years following publication of a determination that the order has been breached;

(2) Referral to the United States Attorney;

(3) In the case of an attorney, accountant, or other professional, referral to the ethics panel of the appropriate professional association; and

(4) Such other administrative sanctions as the Commission determines to be appropriate, including public release of or striking from the record any information or briefs submitted by, or on behalf of, the offender or the party represented by the offender, and denial of further access to business proprietary information in the current or any future investigations before the Commission. In addition, the Commission may take actions other than sanctions, such as the issuance of letters of warning.

Commission employees are not signatories to the Commission's APOs and do not obtain access to BPI through the APO procedure. Consequently, they are not subject to the APOs' requirements with respect to the handling of BPI. However, Commission employees are subject to strict statutory and regulatory constraints concerning BPI, and face potentially severe penalties for noncompliance. *See* 18 U.S.C. § 1905; Title 5, U.S. Code; and Commission personnel policies implementing the statutes. Although the Privacy Act (5 U.S.C. § 552a) limits the Commission's authority to disclose any personnel action against agency employees, this should not lead the public to conclude that no such actions have been taken.

### B. Investigations of Alleged APO Breaches

In an antidumping or countervailing duty investigation, the investigation of an alleged APO breach generally proceeds as follows. The Secretary, acting under delegated authority, issues to the alleged breacher a letter of inquiry to ascertain the alleged breacher's views on whether a breach has occurred. If, based on the response made to such a letter of inquiry, the Commission determines that a breach has occurred, the Commission often issues a second letter asking the breacher to address the questions of mitigating circumstances and possible sanctions or other actions. The Commission then determines what action to take in response to the breach. However, in some cases, the Commission has determined that although a breach has occurred sanctions are not warranted, and

therefore has found it unnecessary to issue a second letter concerning what sanctions might be appropriate. The Commission retains sole authority to make final determinations regarding the existence of a breach and the appropriate action to be taken if a breach has occurred.

The records of Commission investigations of alleged APO breaches in antidumping and countervailing duty cases are not publicly available and are exempt from disclosure under the Freedom of Information Act, 5 U.S.C. § 552. Section 135(b) of the Customs and Trade Act of 1990, 19 U.S.C. § 1677f(g).

The breach most frequently investigated by the Commission involves the APO's prohibition on the dissemination of BPI to unauthorized persons. Such dissemination usually occurs as the result of failure to delete BPI from public versions of documents filed with the Commission or of transmission of proprietary versions of documents to unauthorized recipients. Other breaches have involved: the failure to properly bracket BPI in proprietary documents filed with the Commission; the failure to immediately report known violations of an APO; and the failure to adequately supervise non-legal personnel in the handling of BPI in certain circumstances.

Sanctions for APO violations serve two basic interests: (a) preserving the confidence of submitters of BPI in the Commission as a reliable protector of BPI, and (b) disciplining breachers and deterring future violations. As the Conference Report to the Omnibus Trade and Competitiveness Act of 1988 observed, "the effective enforcement of limited disclosure under administrative protective order depends in part on the extent to which private parties have confidence that there are effective sanctions against violation." H.R. Conf. Rep. No. 576, 100th Cong., 1st Sess. 623 (1988).

The Commission has worked to develop consistent jurisprudence, not only in determining whether a breach has occurred, but also in selecting an appropriate response. In determining the appropriate response, the Commission generally considers mitigating factors such as whether the breach was unintentional, lack of prior breaches committed by the breaching party, the corrective measures taken by the breaching party, the promptness with which the breaching party reported the violation to the Commission, and any relevant circumstances peculiar to the situation. The Commission also considers aggravating circumstances, especially whether persons not under the APO actually read the BPI.

We note that Commission rules permit economists or consultants to obtain access to BPI under the APO under the direction and control of an attorney under the APO, or upon their own responsibility if the economist or consultant appears regularly before the Commission and represents an interested party who is a party to the investigation. *See* 19 C.F.R. §§ 207.7(a)(3) (B) and (C). We caution that economists or consultants who obtain access to BPI under the APO under the direction and control of an attorney nonetheless remain individually responsible for complying with the APO. In appropriate circumstances, for example, an economist under the direction and control of an attorney may be held responsible for a breach of the APO by failing to redact APO information from a document that is subsequently filed with the Commission and served as a public document. This is so even though the attorney exercising direction or control over the economist or consultant may also be held responsible for the breach of the APO.

### C. Specific Investigations in Which Breaches Were Found

The following case studies are presented to educate users about the types of APO breaches found by the Commission and the sanctions imposed and other actions taken by the Commission. In addition, the case studies discuss the factors considered by the Commission as mitigating the sanctions imposed in particular instances. The Commission has not included some of the specific facts in the descriptions of investigations where disclosure could reveal the identity of a particular breacher. Thus, in some cases, apparent inconsistencies in the facts set forth in this notice result from the Commission's inability to disclose particular facts more fully.

*Case 1:* Several economic consultants misdelivered materials containing BPI to persons who were not signatories to the APO. The materials were returned unopened. The Commission found that a breach had occurred, but determined not to sanction the economists. Instead, the Commission issued a warning letter to the economist who instructed another to compile and distribute the materials, and to the person who actually prepared the materials. A third person, who became involved only after the misdeliveries were discovered, was not found to have breached the APO. Mitigating factors included the fact the breach was unintentional, the persons involved had not been previously found to have breached an APO, that the

21206   Federal Register / Vol. 61, No. 91 / Thursday, May 9, 1996 / Notices

persons involved took immediate action to remedy it by retrieving all copies, that the Commission was immediately informed of the incident, and that the firm in question made changes in-house to prevent a recurrence.

*Case 2:* Counsel for a party to the investigation failed to bracket certain BPI in the confidential version of an attachment to a submission and also failed to redact BPI data from the public version of the submission. The attachment, prepared by an outside consultant who was a signatory to the APO, contained unbracketed proprietary data in the confidential version and unredacted BPI in the public version of the brief. Upon learning of the error, counsel notified the Secretary's office, and arranged for the persons receiving the unbracketed BPI to either destroy or return the documents in question. All copies of the defective briefs were either returned or destroyed. The Commission found the person who was responsible for preparation of the final document to have breached the APO. The Commission determined not to sanction the attorney, but rather sent a warning letter. Mitigating factors included the fact that the breach was inadvertent, the person involved had not been associated with any other APO breach inquiry, and actions were taken immediately to mitigate any harm resulting from the breach. Moreover, the version of the brief involved containing the BPI had not been reviewed by anyone not on the administrative protective order. The consultant was found not to have breached the APO because it was not the consultant's responsibility to prepare the public version of the document. Similarly, a colleague of the attorney was found not to have been involved in the preparation of the public version of the document, and therefore was not found responsible for the breach.

*Case 3:* Several economic consultants filed and served a public version of a document that contained BPI in a footnote in the document. Commission staff discovered the breach. Although the public version of the document had been placed in the Commission public files, it had not been reviewed by a member of the public before discovery of the breach. The Commission determined that a breach had occurred, and held the individuals responsible for preparing the public version of the submission and reviewing it for BPI responsible for the breach. The Commission did not sanction the individuals, however, but instead sent warning letters. Mitigating factors included the fact that the breach was inadvertent, none of the individuals

charged with the breach had breached an APO previously, and the individuals took immediate actions to mitigate any harm arising from the breach in the investigation, once they were informed that it had occurred. The Commission also considered the fact that although the information was received by a person not on the APO, the recipient did not review the information, and it was returned unread. The clerk who prepared the document was not held responsible for the breach, since the individual's activities appeared to be clerical in nature, and did not appear to involve reviewing the document to ensure that all BPI had been deleted. Additionally, a consultant whose name appeared on the document was not held responsible for the breach since the individual was not involved in preparing the public version of the document or in reviewing the document for BPI.

*Case 4:* An attorney failed to update the APO service list and as a result, improperly served copies of the confidential version of a submission on persons no longer subject to the APO. The Commission determined that the person responsible for improperly serving the APO version of the submission had breached the APO. The Commission decided not to sanction the attorney, but instead sent a warning letter. Mitigating factors included the fact that the breach was inadvertent, that the individual responsible for the breach had not previously breached an APO, and that immediate action was taken to mitigate any harm arising from the breach. Finally, although the document containing BPI was received by non-APO signatories, the Commission investigation revealed that the document was not actually viewed by anyone not on the APO. Two other attorneys who were involved in the Commission investigation were found not to be responsible for the breach.

*Case 5:* An attorney filed and served a public version of a document in which the attorney failed to properly redact information in brackets. The Commission determined that the attorney had breached the protective order. The Commission did not sanction the attorney, but instead issued a warning letter. Mitigating circumstances included the fact that the breach was inadvertent, the individual had not previously breached an APO, and the individual discovered the breach and took immediate actions to mitigate any harm arising from the breach. Additionally, the document was not actually reviewed by anyone not on the APO.

*Case 6:* Counsel filed a public version of a document and inadvertently filed with the Commission the master copy of the public version consisting of confidential pages with removable (and not always opaque) redaction tape covering the BPI. Commission staff discovered the defect in the filing and notified counsel prior to placement of the document in the public file. The Commission found an attorney and legal secretary responsible for the breach. The Commission determined to hold the legal secretary responsible for the breach because that individual was directly responsible for placing the copies of the public version of the documents into the envelopes that were delivered to the Commission. The Commission did not sanction the secretary, but instead issued a warning letter. In deciding not to sanction the secretary, the Commission took into account the fact that the breach was inadvertent, no BPI was disclosed to any party not under an APO, and it was the individual's first breach. The Commission also determined that the attorney responsible for overall supervision of the non-attorney staff, and who signed the public version of the brief that was filed, had breached the APO. The Commission sent a private letter of reprimand to the attorney because it was the individual's second breach of an APO in a relatively short period of time. A colleague was found not to have breached the APO since the individual was not in the office the day that the breach occurred.

*Case 7:* Counsel for a party to the investigation filed and served a public version of a document in which counsel failed to properly bracket and redact BPI that appeared in a footnote. Upon learning of the error, counsel immediately arranged for the individuals under the APO receiving the unbracketed BPI to delete the information before forwarding the document to any person not on the APO. Counsel also notified the Commission and filed replacement pages correcting the error. The Commission determined that a breach had occurred and held the individuals responsible for preparation and review of the document for confidential information responsible for the breach. The Commission did not sanction the individuals, but instead issued warning letters. Mitigating factors included the fact that the breach was inadvertent, the individuals had not previously breached an APO, and immediate actions were taken to mitigate any harm arising from the breach. Further, the version of the

document containing the BPI was not viewed by anyone not on the APO.

## D. Investigations Involving the ''24-hour Rule''

During 1995, the Commission completed five investigations of apparent violations of the 24-hour rule, set forth in 19 C.F.R. § 207.3. All of these apparent violations of the Commission's rules involved changes to a document other than bracketing and deletion of BPI. The rule specifically states that changes other than bracketing and deletion of BPI are not permitted. Practitioners should be aware that there is no express provision in the Commission rules that allows a party to make corrections, other than bracketing corrections, to a submission. If a party wishes to make changes to a document other than bracketing, such as typographical changes or other corrections, it must ask for an extension of time to file an amended document pursuant to rule 201.14(b)(2).

*Case 1:* Counsel filed a letter with the Commission enclosing replacement pages for the confidential version of their submission and noting numerous typographical errors in their submission. Counsel added the changes to the public version of their submission during the 24-hour period allowed to correct bracketing. Only one of the changes involved bracketing or deletion of business proprietary information. Counsel did not request leave of the Commission to make the non-bracketing changes. The Commission determined that the 24-hour rule had been violated. Counsel was not sanctioned, but instead all of the signatories on the document were issued warning letters. The Commission considered the fact that counsel notified the Commission of the changes in their cover letter and replacement page; the changes were relatively minor; and the attorneys involved had no previous record of violations of the 24-hour rule.

*Case 2:* Counsel filed a public version of a document which contained numerous changes to the wording in an exhibit from the confidential version filed the previous day. Counsel explained that the reason for the change was that a prior electronic draft of the document was inadvertently used to prepare the public version. The Commission determined not to sanction counsel, but instead issued warning letters to lead counsel and the person who transmitted the corrected pages. In deciding to issue a warning instead of a sanction, the Commission considered the fact that the changes were relatively minor, technical in nature and seemingly inadvertent.

*Case 3:* Counsel for a party in an investigation filed a public version of the brief during the 24-hour period. Due to the number of bracketing changes, counsel refiled an entire confidential brief rather than replacement pages. In addition to changing brackets, counsel included a table of contents, which was not filed with the original confidential brief. Counsel's letter of transmittal made no mention of the change, nor did counsel seek permission to file the table of contents. The Commission found that the 24-hour rule had been violated. The Commission did not sanction counsel, but instead issued a warning letter. The Commission considered the fact that the addition of a table of contents to counsel's submission was only a minor change, which was technical in nature and seemingly inadvertent, and neither added new information nor altered the substance of the information provided. Counsel was reminded, however, that the 24-hour rule cannot be used to cure defects in original filings.

*Case 4:* Counsel for a party to the investigation filed a public version of a brief during the 24-hour period which contained additional words. Counsel also filed replacement pages for the confidential version of the document which contained the same changes. While counsel did point out the change in its cover letter, counsel did not seek leave of the Commission to make the change. The Commission determined that counsel had violated the 24-hour rule. The Commission issued a warning letter to the attorney who signed the cover letter and who admitted responsibility for the preparation of the letter and changes to the document. In determining not to sanction the individual, the Commission considered the fact that the change was only a minor technical correction which did not add any new information or alter the substance of the information provided. Additionally, the Commission considered the fact that counsel, in its letter, notified the Commission of the change and its location, and therefore it did not appear that counsel was attempting to circumvent rule 207.3(c).

*Case 5:* Counsel for a party in the investigation filed an errata sheet in response to a Commission ruling regarding BPI, attempting to delete a word and replace it with a phrase. The submission was rejected for filing by the Secretary and was stricken from the record. The Commission determined that the 24-hour rule was violated but that no further action was necessary.

Issued: May 1, 1996.

By order of the Commission.
Donna R. Koehnke,
*Secretary.*
[FR Doc. 96–11520 Filed 5–8–96; 8:45 am]
BILLING CODE 7020–02–P

---

**[Investigation No. 731–TA–744 (Preliminary)]**

## Certain Brake Drums and Rotors From China

### Determinations

On the basis of the record [1] developed in the subject investigation, the Commission determines,[2] pursuant to section 733(a) of the Tariff Act of 1930 (19 U.S.C. 1673b(a)), that there is a reasonable indication that an industry in the United States is threatened with material injury by reason of imports from China of certain brake drums that are alleged to be sold in the United States at less than fair value (LTFV).[3] The Commission also determines,[4] pursuant to section 733(a) of the Tariff Act of 1930 (19 U.S.C. 1673b(a)), that there is a reasonable indication that an industry in the United States is materially injured by reason of imports from China of certain brake rotors that are alleged to be sold in the United States at LTFV. Both certain brake drums and brake rotors are provided for in subheading 8708.39.50 of the Harmonized Tariff Schedule of the United States.[5]

### Background

On March 7, 1996, a petition was filed with the Commission and the Department of Commerce by the Coalition for the Preservation of American Brake Drum and Rotor

---

[1] The record is defined in sec. 207.2(f) of the Commission's Rules of Practice and Procedure (19 CFR § 207.2(f)).

[2] Chairman Peter S. Watson not participating.

[3] Commissioner Carol T. Crawford finds that there is a reasonable indication that an industry in the United States is materially injured by reason of imports from China of certain brake drums that are alleged to be sold in the United States at LTFV.

[4] Chairman Peter S. Watson not participating.

[5] Certain brake drums and certain brake rotors are made of gray cast iron, may be finished, semifinished, or unfinished, and range in diameter from 8 to 16 inches (20.32 to 40.64 centimeters) and in weight from 8 to 45 pounds (3.63 to 20.41 kilograms). The subject products are for certain motor vehicles (namely, automobiles, all-terrain vehicles, vans and recreational vehicles under ''one ton and a half,'' and light trucks designated as ''one ton and a half''), and do not contain in the casting a logo of an original equipment manufacturer that produces vehicles sold in the United States. Brake drums and brake rotors covered in these investigations are not certified by OEM producers of vehicles sold in the United States. The scope also includes composite brake drums and rotors that are made of gray cast iron which contain a steel plate, but otherwise meet the above criteria.

**13164** **Federal Register** / Vol. 62, No. 53 / Wednesday, March 19, 1997 / Notices

## Bureau of Land Management

[AZ–930–07–1020–00]

**Notice of Availability of a Proposed Plan Amendment of Land Use Plans in Arizona for Implementation of Arizona Standards for Rangeland Health and Guidelines for Grazing Administration, Finding of No Significant Impact, and Environmental Assessment Summary**

**AGENCY:** Bureau of Land Management, Interior.

**ACTION:** Notice of availability, amendment to time frames for protest period.

**SUMMARY:** On March 11, 1997, the Bureau of Land Management published a notice of availability of the proposed plan amendment of land use plans in Arizona for implementation of Arizona Standards for Rangeland Health and Guidelines for Grazing Administration. The publication of the Notice of Availability initiated a 30-day protest period of the proposed plan amendment. This notice serves to announce an amendment to the time frames for the protest period. Due to a delay in publishing the original **Federal Register** Notice of Availability, the protest period will not close until April 9, 1997.

**DATES:** Protests on the proposed decisions in the Proposed Plan Amendment for Implementation of Arizona Standards and Guidelines must be postmarked by April 9, 1997.

**ADDRESSES:** Protests must be sent to the Director (210); Bureau of Land Management; 1849 C Street, NW; MS–1000LS; Washington, DC 20240.

**FOR FURTHER INFORMATION CONTACT:** Ken Mahoney, Team Leader, Arizona State Office, 222 North Central Avenue, Phoenix, AZ 85004, Telephone: (602) 417–9238.

**Phillip D. Moreland,**

*Acting Deputy State Director, Arizona.*

[FR Doc. 97–6890 Filed 3–18–97; 8:45 am]

BILLING CODE 4310–32–P

## INTERNATIONAL TRADE COMMISSION

**Summary of Commission Practice Relating to Administrative Protective Orders**

**AGENCY:** United States International Trade Commission.

**ACTION:** Summary of Commission practice relating to administrative protective orders.

**SUMMARY:** The Conference Report to the Customs and Trade Act of 1990 provided for the International Trade Commission ("Commission") to issue periodic reports, at least annually, on the status of its practice with respect to violations of its administrative protective orders ("APOs") in investigations under Title VII of the Tariff Act of 1930. This notice provides a summary of investigations of breaches for the period ending in 1996. The Commission intends that this notice will educate representatives of parties to Commission proceedings as to some specific types of APO breaches encountered by the Commission and the corresponding types of actions the Commission has taken.

**FOR FURTHER INFORMATION CONTACT:** Gail S. Usher, Esq., Office of the General Counsel, U.S. International Trade Commission, tel. (202) 205–3152. Hearing impaired individuals are advised that information on this matter can be obtained by contacting the Commission's TDD terminal at (202) 205–1810.

**SUPPLEMENTARY INFORMATION:** Representatives of parties to investigations conducted under Title VII of the Tariff Act of 1930 may enter into administrative protective orders that permit them, under strict conditions, to obtain access to business proprietary information ("BPI") of other parties. See 19 U.S.C. 1677f; 19 CFR 207.7. The discussion below describes APO breach investigations that the Commission has completed including a description of actions taken in response to breaches. The discussion covers breach investigations completed during the period ending in 1996, generally with respect to antidumping and countervailing duty cases.

In past years, the notice has contained also a summary of the Commission's investigations involving violations of the "24-hour" rule, which provides that during the 24-hour period after a Commission deadline for a party submission in an antidumping or countervailing duty proceeding, the only changes to the proprietary version permitted are changes to the bracketing of BPI. See 19 CFR 207.3(c). In 1996, however, no investigations of 24-hour rule violations were completed.

In recent years, the Commission has expanded the notice to include APO breaches in other types of proceedings as well. In 1996, only one APO investigation was completed in a proceeding conducted under Section 201 of the Trade Act of 1974, and no APO investigations were completed in proceedings conducted under Section 337 of the Tariff Act of 1930.

Since 1991, the Commission has published annually a summary of its actions in response to violations of Commission APOs and the "24 hour" rule. See 56 *FR* 4846 (Feb. 6, 1991); 57 *FR* 12,335 (Apr. 9, 1992); 58 *FR* 21,991 (Apr. 26, 1993); 59 *FR* 16,834 (Apr. 8, 1994); 60 *FR* 24,880 (May 10, 1995); and 61 *FR* 21,203 (May 9, 1996). This notice does not provide an exclusive list of conduct that will be deemed to be a breach of the Commission's APOs, and does not bind the Commission in its future rulings.

As part of the effort to educate practitioners about the Commission's current APO practice, the Secretary of the Commission issued in April 1996 a revised edition of *An Introduction to Administrative Protective Order Practice in Antidumping and Countervailing Duty Investigations* (Pub. No. 2961). This document is available upon request from the Office of the Secretary, U.S. International Trade Commission, 500 E Street, SW, Washington, DC 20436, tel. (202) 205–2000.

### I. In General

The current APO form for antidumping and countervailing duty investigations, which the Commission has used since March 1995, requires the applicant to swear that he or she will:

(1) Not divulge any of the BPI obtained under this APO and not otherwise available to him, to any person other than

(i) Personnel of the Commission concerned with the investigation,

(ii) The person or agency from whom the BPI was obtained,

(iii) A person whose application for disclosure of BPI under this APO has been granted by the Secretary, and

(iv) Other persons, such as paralegals and clerical staff, who (a) are employed or supervised by and under the direction and control of the authorized applicant or another authorized applicant in the same firm whose application has been granted; (b) have a need thereof in connection with the investigation; (c) are not involved in competitive decision making for an interested party which is a party to the investigation; and (d) have submitted to the Secretary a signed Acknowledgment for Clerical Personnel in the form attached hereto (the authorized applicant shall also sign such acknowledgment and will be deemed responsible for such persons' compliance with this APO);

(2) Use such BPI solely for the purposes of the above-captioned Commission investigation or for judicial or binational panel review of such Commission investigation;

(3) Not consult with any person not described in paragraph (1) concerning BPI disclosed under this APO without first having received the written consent of the Secretary and the party or the representative of the party from whom such BPI was obtained;

(4) Whenever materials (*e.g.*, documents, computer disks, etc.) containing such BPI are not being used, store such material in a locked file cabinet, vault, safe, or other suitable container (N.B.: storage of BPI on so-called hard disk computer media is to be avoided, because mere erasure of data from such media may not irrecoverably destroy the BPI and may result in violation of paragraph C of this APO);

(5) Serve all materials containing BPI disclosed under this APO as directed by the Secretary and pursuant to section 207.7(f) of the Commission's rules;

(6) Transmit each document containing BPI disclosed under this APO:

(i) with a cover sheet identifying the document as containing BPI,

(ii) with all BPI enclosed in brackets and each page warning that the document contains BPI,

(iii) if the document is to be filed by a deadline, with each page marked ''Bracketing of BPI not final for one business day after date of filing,'' and

(iv) if by mail, within two envelopes, the inner one sealed and marked ''Business Proprietary Information—To be opened only by [name of recipient]'', and the outer one sealed and not marked as containing BPI;

(7) Comply with the provisions of this APO and section 207.7 of the Commission's rules;

(8) Make true and accurate representations in the authorized applicant's application and promptly notify the Secretary of any changes that occur after the submission of the application and that affect the representations made in the application (*e.g.*, change in personnel assigned to the investigation);

(9) Report promptly and confirm in writing to the Secretary any possible breach of this APO; and

(10) Acknowledge that breach of this APO may subject the authorized applicant and other persons to such sanctions or other actions as the Commission deems appropriate, including the administrative sanctions and actions set out in this APO.

The APO further provides that breach of a protective order may subject an applicant to:

(1) Disbarment from practice in any capacity before the Commission along with such person's partners, associates,

employer, and employees, for up to seven years following publication of a determination that the order has been breached;

(2) Referral to the United States Attorney;

(3) In the case of an attorney, accountant, or other professional, referral to the ethics panel of the appropriate professional association;

(4) Such other administrative sanctions as the Commission determines to be appropriate, including public release of or striking from the record any information or briefs submitted by, or on behalf of, such person or the party he represents; denial of further access to business proprietary information in the current or any future investigations before the Commission; and issuance of a public or private letter of reprimand; and

(5) Such other actions, including but not limited to, a warning letter, as the Commission determines to be appropriate.

Commission employees are not signatories to the Commission's APOs and do not obtain access to BPI through APO procedure. Consequently, they are not subject to the requirements of the APO with respect to the handling of BPI. However, Commission employees are subject to strict statutory and regulatory constraints concerning BPI, and face potentially severe penalties for noncompliance. *See* 18 U.S.C. 1905; Title 5, U.S. Code; and Commission personnel policies implementing the statutes. Although the Privacy Act (5 U.S.C. 552a) limits the Commission's authority to disclose any personnel action against agency employees, this should not lead the public to conclude that no such actions have been taken.

An important provision of the Commission's rules relating to BPI is the ''24-hour'' rule. This rule provides that parties have one business day after the deadline for filing documents containing BPI to file a public version of the document. The rule also permits changes to the bracketing of information in the proprietary version within this one-day period. No changes—other than changes in bracketing—may be made to the proprietary version. The rule was intended to reduce the incidence of APO breaches caused by inadequate bracketing and improper placement of BPI. The Commission urges parties to make use of the rule. If a party wishes to make changes to a document other than bracketing, such as typographical changes or other corrections, the party must ask for an extension of time to file an amended document pursuant to Rule 201.14(b)(2).

## II. Investigations of Alleged APO Breaches

An investigation of an alleged APO breach in an antidumping or countervailing duty investigation commences when the Secretary, acting under delegated authority, issues to the alleged breacher a letter of inquiry to ascertain the alleged breacher's views on whether a breach has occurred. If, after reviewing the response and other relevant information, the Commission determines that a breach has occurred, the Commission often issues a second letter asking the breacher to address the questions of mitigating or aggravating circumstances and possible sanctions or other actions. The Commission then determines what action to take in response to the breach. However, in some cases, the Commission has determined that although a breach has occurred, sanctions are not warranted, and therefore has found it unnecessary to issue a second letter concerning what sanctions might be appropriate. Instead, it issues a warning letter to the individual. The Commission retains sole authority to make final determinations regarding the existence of a breach and the appropriate action to be taken if a breach has occurred.

The records of Commission investigations of alleged APO breaches in antidumping and countervailing duty cases are not publicly available and are exempt from disclosure under the Freedom of Information Act, 5 U.S.C. 552; Section 135(b) of the Customs and Trade Act of 1990; and 19 U.S.C. 1677f(g).

The breach most frequently investigated by the Commission involves the APO's prohibition on the dissemination of BPI to unauthorized persons. Such dissemination usually occurs as the result of failure to delete BPI from public versions of documents filed with the Commission or of transmission of proprietary versions of documents to unauthorized recipients. Other breaches have involved: the failure to properly bracket BPI in proprietary documents filed with the Commission; the failure to immediately report known violations of an APO; and the failure to adequately supervise non-legal personnel in the handling of BPI in certain circumstances.

Sanctions for APO violations serve two basic interests: (a) preserving the confidence of submitters of BPI in the Commission as a reliable protector of BPI; and (b) disciplining breachers and deterring future violations. As the Conference Report to the Omnibus Trade and Competitiveness Act of 1988 observed, ''the effective enforcement of

limited disclosure under administrative protective order depends in part on the extent to which private parties have confidence that there are effective sanctions against violation.'' H.R. Conf. Rep. No. 576, 100th Cong., 1st Sess. 623 (1988).

The Commission has worked to develop consistent jurisprudence, not only in determining whether a breach has occurred, but also in selecting an appropriate response. In determining the appropriate response, the Commission generally considers mitigating factors such as the unintentional nature of the breach, the lack of prior breaches committed by the breaching party, the corrective measures taken by the breaching party, and the promptness with which the breaching party reported the violation to the Commission. The Commission also considers aggravating circumstances, especially whether persons not under the APO actually read the BPI.

Commission rules permit economists or consultants to obtain access to BPI under the APO if the economist or consultant is under the direction and control of an attorney under the APO, or if the economist or consultant appears regularly before the Commission and represents an interested party who is a party to the investigation. 19 CFR 207.7(a)(3) (B) and (C). Economists and consultants who obtain access to BPI under the APO under the direction and control of an attorney nonetheless remain individually responsible for complying with the APO. In appropriate circumstances, for example, an economist under the direction and control of an attorney may be held responsible for a breach of the APO by failing to redact APO information from a document that is subsequently filed with the Commission and served as a public document. This is so even though the attorney exercising direction or control over the economist or consultant may also be held responsible for the breach of the APO.

## III. Specific Investigations in Which Breaches Were Found

The Commission presents the following case studies to educate users about the types of APO breaches found by the Commission. The case studies provide the factual background, the actions taken by the Commission, and the factors considered by the Commission in determining the appropriate actions. The Commission has not included some of the specific facts in the descriptions of investigations where disclosure could reveal the identity of a particular breacher. Thus, in some cases, apparent inconsistencies in the facts set forth in this notice result from the Commission's inability to disclose particular facts more fully.

*Case 1:* Counsel bracketed but failed to redact BPI in the public version of its pre-hearing brief. The Commission found that two of the signatories to the brief breached the APO and issued private letters of reprimand. In deciding on this sanction, the Commission considered that the breach was discovered by the Commission, not by the offending parties, and the brief containing BPI was in fact released and copied by an unauthorized person. On the other hand, the attorneys had committed no prior breaches of an APO; the breach did not appear to be intentional; the attorneys moved promptly to mitigate the breach; and the attorneys cooperated in a timely and complete manner. (The Commission found that a third signatory did not breach the APO because he was not involved in the preparation of the brief).

*Case 2:* In a final investigation, counsel served a document containing BPI information on four parties' representatives that were signatories to the APO in the preliminary investigation, but were not signatories in the final investigation.[1] The Commission found that the party responsible for serving the document breached the APO, but decided to issue only a warning letter. Factors relevant to the Commission's decision included that the breach was inadvertent; the offender did not commit any prior APO breaches; the offender took immediate actions to mitigate any harm by retrieving the documents from the unauthorized recipients; and the document was not viewed by anyone not on the APO.

*Case 3:* A junior associate and an attorney with principal responsibility for an investigation (''principal attorney'') submitted certifications that all APO information had been returned or destroyed. Both attorneys subsequently changed firms. Thereafter, an employee at the principal attorney's new firm located two documents obtained under the APO in the principal attorney's files. The principal attorney notified the Commission. The Commission found that both the junior associate and the principal attorney

breached the APO by (1) failing to return or destroy all documents containing BPI; and (2) certifying that they had done so when in fact documents had not been returned or destroyed. The Commission found that the principal attorney breached the APO also by not safeguarding BPI material such that a non-APO signatory—the employee who discovered the documents—had access to APO information. The Commission decided to issue private letters of reprimand to both the junior associate and the principal attorney.

The Commission rejected the junior associate's assertions that he did not breach the APO because he was not permitted access to all of the files at his firm. The Commission stated that if this was the case, the associate should have asked other signatories whether they had returned or destroyed all BPI. As for the sanction, the Commission noted that the filing of an incorrect certification of destruction of documents is a serious violation of an APO. On the other hand, the Commission noted that the attorney had not previously breached an APO; the violation was not intentional; and the breach occurred at a time when the affairs of the firm were in disarray due to significant organizational changes at the firm.

As for the principal attorney, the Commission considered that a false certification of destruction is a serious breach; the attorney was the one principally responsible for representing clients in this particular investigation; and there was the additional breach of making BPI available to a non-APO signatory. On the other hand, the Commission noted that the attorney had not previously breached an APO; the breach was not intentional; and the affairs of the firm were in disarray due to significant organizational changes at the firm.

*Case 4:* Three attorneys subject to an APO left their firm during the pendency of the appeal process of an investigation, while a fourth remained at the firm. Accordingly, when the three departed, the firm still possessed BPI under the APO. One of the three asserted that he thought that the fourth attorney would be responsible for the APO material; another asserted that he left instructions for the documents to be sent to the client's new law firm or be destroyed; while the third asserted that the material was not destroyed at the time of his departure because the litigation was still ongoing. All parties to the case then entered a stipulation dismissing all pending litigation. A year later, upon departure from the firm or shortly thereafter, the fourth attorney

---

[1] These references correspond to the preliminary and final phases of an investigation under the Commission's amended rules. See 19 CFR 207.12. 61 *FR* 37,818, 37819 (July 22, 1996). In this case, and in other cases discussed in this notice, the investigations were conducted under the Commission's pre-existing rules, which termed such proceedings to be preliminary and final investigations.

asserted that he learned that the documents still were in the firm's locked APO room, instructed his secretary to destroy them, and conferred with her thereafter to ensure that the instructions had been followed. Three years later, this attorney was informed by personnel at this firm that material obtained pursuant to the APO was still in the firm's locked APO room. He promptly reported this to the Commission.

The Commission found that all four attorneys breached the APO by failing to return or destroy all documents containing BPI obtained under APO. The Commission also found that the fourth attorney further breached the APO by failing to ascertain that any instructions he had given to destroy documents containing BPI had been executed, a failure which resulted in BPI being retained by individuals who were neither APO signatories nor under the control of APO signatories.

The Commission decided to issue private letters of reprimand to each of the attorneys. The Commission noted that the failure of the attorneys to communicate adequately with each other concerning who would have the ultimate responsibility for disposing of the APO materials was a serious breach of their obligations, and that it resulted in the failure to return or destroy APO material. The Commission also noted that none of the parties had previously breached an APO.

*Case 5:* Counsel filed the public version of a document that contained bracketed but unredacted BPI. The Commission found that the economic consultant who was responsible for the exhibits that contained the unredacted BPI, as well as three attorneys acting as counsel for the same party (one as a contract attorney for the retained firm) who had all worked on the brief and reviewed the brief for BPI, had breached the APO. In deciding to issue only warning letters to the economic consultant and to the three attorneys, the Commission noted the following: the breach was inadvertent; the offenders had not been found to have previously breached an APO; they took actions to mitigate any harm by ensuring that all unauthorized parties returned or destroyed the BPI; and it did not appear that the BPI was in fact viewed by any unauthorized persons.

The Commission simultaneously investigated another potential breach by one of the attorneys—that testimony he gave at a hearing involved BPI. The Commission determined that no breach occurred because the information had been previously publicly disclosed in the companion Commerce proceeding by the party whose BPI was at issue.

*Case 6:* Counsel filed and served a brief whose proprietary version contained BPI that was not bracketed and whose public version contained the same unbracketed, unredacted BPI. The Commission found that the attorney with responsibility for performing the initial review of the public and proprietary versions of the brief and the partner who signed the brief and accepted overall responsibility for compliance with the APO breached the APO. (The Commission found that two other attorneys at the firm did not breach the APO because they were not involved in the preparation of the brief. The Commission also found that a legal assistant responsible for redacting the BPI did not breach the protective order because he properly redacted all BPI that had been bracketed). The Commission issued warning letters to both attorneys, noting that the breach was inadvertent; they had not previously breached the APO; they took actions to mitigate any harm; and it did not appear that the BPI was viewed by any unauthorized persons.

*Case 7:* Counsel failed to redact BPI in two submissions, one filed a week after the first. The Commission found that the partner responsible for redacting BPI from both submissions and an associate responsible for redacting BPI from one of the submissions breached the APO. (The Commission found that a third signatory to the brief did not violate the APO because he was not involved in the preparation of the brief). The Commission issued a private letter of reprimand to the partner and a warning letter to the associate.

The Commission considered that the Commission, not the offenders, discovered the breaches, and the breaches were not fully cured because it was not known whether unauthorized recipients actually viewed the BPI. In addition, with respect to the partner, the Commission pointed to the fact that two separate breaches occurred. On the other hand, the Commission noted that the breaches appeared to be inadvertent; neither offender had previously breached an APO; upon learning of the breaches, the offenders moved promptly to mitigate any harm; and they otherwise cooperated with the Commission. In addition, the associate was involved with only one of the breaches and did not have ultimate responsibility for review of the entire submission that the associate did help prepare.

*Case 8:* A trade specialist who was subject to the direction and control of an attorney received a public and proprietary version of a hearing transcript and gave them to a secretary for copying and distribution. The secretary sent a copy of the proprietary version to an individual not authorized to receive APO information.

The Commission found that the attorney who had responsibility for ensuring the compliance with the APO by the clerical staff breached the APO by failing to arrange for adequate supervision of the handling of BPI. It decided to issue a private letter of reprimand to him and imposed a requirement that in the next investigation in which the attorney appears before the Commission in which he seeks APO status, that either (1) he certify that he has provided written instructions to clerical and support staff at his firm handling BPI materials that no BPI is to be transmitted without his personal approval; or (2) the firm designate another attorney to be lead APO counsel. In making its decision, the Commission noted that the attorney had two prior APO violations. On the other hand, the Commission noted that his conduct did not rise to the level of willful misbehavior or gross negligence characteristic of investigations where the Commission has issued public letters of reprimand; and no BPI was viewed by any unauthorized persons.

The Commission also found that the secretary, by sending the transcript to a non-APO signatory, had breached the APO and issued a warning letter. The Commission noted that it was departing from its normal practice of not holding clerical employees responsible for APO breaches because the secretary sent the transcript to an individual whom she knew was not permitted to receive APO information. However, the Commission noted the presence of mitigating factors: she had not previously breached an APO; the breach was inadvertent; and no BPI was actually viewed by any unauthorized persons.

The Commission found that the trade specialist breached the APO because he had supervisory responsibility on the day in question for overseeing the distribution of the proprietary version of the transcript. In issuing a warning letter, the Commission noted that he was the firm's APO coordinator responsible for distribution of APO materials; and that at the time the breach occurred, he was called away from the office and made no provision for anyone at the firm to assume his responsibilities. However, the Commission also noted that he had not previously breached an APO; the breach was inadvertent; and no BPI was

**13168**   **Federal Register** / Vol. 62, No. 53 / Wednesday, March 19, 1997 / Notices

actually viewed by unauthorized persons.

*Case 9:* Three attorneys prepared and filed the public version of a brief that contained bracketed but unredacted BPI and served copies of the brief to parties on the public service list and to other non-authorized persons. The Commission found that these attorneys breached the APO and decided to issue a warning letter to each of the attorneys. (The Commission also found that two other attorneys whose name appeared on the brief did not breach the APO because they did not assist in the preparation of the public version of the brief at issue). In making its decision, the Commission noted that the breach was inadvertent; the attorneys had not previously breached an APO; they took immediate action to mitigate the harm; they immediately reported the potential breach to the Commission; and it did not appear that the BPI was actually read by any unauthorized persons.

**IV. Specific Investigations in Which No Breach Was Found**

As noted above, in three investigations where the Commission found a breach by one or more parties, it also found that one or more parties investigated did not breach the APO. In addition, the Commission completed one investigation in 1996 in which it found that no breach by any party had occurred. In that investigation, the Commission reached its conclusion on the basis of a finding that the BPI in question, which was petitioner's BPI, had previously been publicly disclosed by the petitioners.

**V. Investigations of Breaches Other Than in Antidumping or Countervailing Duty Proceedings**

In 1996, the Commission conducted one investigation of an alleged breach of an APO in a proceeding brought pursuant to Section 201 of the Trade Act of 1974. In that investigation, an APO signatory sent the proprietary version of a brief to a party on the public service list that was not a party to the APO. The Commission found that the signatory breached the APO. In deciding to issue only a warning letter, the Commission pointed to the following factors: the breach was inadvertent; the signatory had not previously breached an APO; the signatory took actions to mitigate any harm by retrieving the unopened envelope containing the brief; and thus it did not appear that any unauthorized persons viewed the BPI.

During 1996, the Commission did not conduct any investigations of breaches of APOs in proceedings filed under Section 337 of the Tariff Act of 1930.

By order of the Commission.
Issued: March 13, 1997.

**Donna R. Koehnke,**
*Secretary.*
[FR Doc. 97–6904 Filed 3–18–97; 8:45 am]
**BILLING CODE 7020–02–P**

---

**Sunshine Act Meeting**

**AGENCY HOLDING THE MEETING:** United States International Trade Commission.
**TIME AND DATE:** March 28, 1997 at 11:00 a.m.
**PLACE:** Room 101, 500 E Street S.W., Washington, DC 20436.
**STATUS:** Open to the public.
**MATTERS TO BE CONSIDERED:**

1. Agenda for future meeting.
2. Minutes.
3. Ratification List.
4. Inv. No. 731–TA–760 (Preliminary) (Needle Bearing Wire from Japan)—briefing and vote.
5. Outstanding action jackets: none

In accordance with Commission policy, subject matter listed above, not disposed of at the scheduled meeting, may be carried over to the agenda of the following meeting.

Issued: March 13, 1997.

By order of the Commission:

**Donna R. Koehnke,**
*Secretary.*
[FR Doc. 97–6996 Filed 3–17–97; 9:57 am]
**BILLING CODE 7020–02–P**

---

**DEPARTMENT OF JUSTICE**

**Office of Attorney Personnel Management**

**Justice Management Division**

**Agency Information Collection Activities: Proposed Collection; Reinstatement, Without Change, of a Previously Approved Collection for Which Approval has Expired**

**ACTION:** Application Booklets—Attorney General's Honor Program, Summer Law Intern Program, Law Student Program.

Office of Management and Budget (OMB) approval is sought for the information collection listed below. This proposed information collection was previously published in the **Federal Register** and allowed 60 days for public comment.

The purpose of this notice is to allow an additional 30 days for public comments from the date listed at the top of this page in the **Federal Register**. This process is conducted in accordance with 5 Code of Federal Regulation, Part 1320.10. Written comments and/or suggestions regarding the item(s) contained in this notice, especially regarding the estimated public burden and associated response time, should be directed to the Office of Management and Budget, Office of Information and Regulatory Affairs, Attention: Department of Justice Desk Officer, Washington, DC 20503. Additionally, comments may be submitted to OMB via facsimile to 202–395–7285. Comments may also be submitted to the Department of Justice (DOJ), Justice Management Division, Information Management and Security Staff, Attention: Department Clearance Officer, Suite 850, 1001 G Street, NW, Washington, DC, 20530. Additionally, comments may be submitted to DOJ via facsimile to 202–514–1534. Written comments and suggestions from the public and affected agencies should address one or more of the following points:

(1) Evaluate whether the proposed collection of information is necessary for the proper performance of the functions of the agency/component, including whether the information will have practical utility;

(2) Evaluate the accuracy of the agencies/components estimate of the burden of the proposed collection of information, including the validity of the methodology and assumptions used;

(3) Enhance the quality, utility, and clarity of the information to be collected; and

(4) Minimize the burden of the collection of information on those who are to respond, including through the use of appropriate automated, electronic, mechanical, or other technological collection techniques or other forms of information technology, e.g., permitting electronic submission of responses.

Overview of this information collection:

(1) Type of information collection: Reinstatement, without change, of a previously approved collection for which approval has expired.

(2) The title of the form/collection: Application Booklets—Attorney General's Honor Program, Summer Law Intern Program, Law Student Program.

(3) The agency form number, if any, and the applicable component of the Department sponsoring the collection. Form number: None. Office of Attorney Personnel Management, Justice Management Division, United States Department of Justice.

**25064**   **Federal Register** / Vol. 63, No. 87 / Wednesday, May 6, 1998 / Notices

State and Federal agencies with management and regulatory responsibilities in the Bay-Delta system are working together as CALFED to provide policy direction and oversight for the process.

One area of Bay-Delta management includes the establishment of a joint State-Federal process to develop long-term solutions to problems in the Bay-Delta system related to fish and wildlife, water supply reliability, natural disasters, and water quality. The intent is to develop a comprehensive and balanced plan which addresses all of the resource problems. This effort, the CALFED Bay-Delta Program (Program), is being carried out under the policy direction of CALFED. The Program is exploring and developing a long-term solution for a cooperative planning process that will determine the most appropriate strategy and actions necessary to improve water quality, restore health to the Bay-Delta ecosystem, provide for a variety of beneficial uses, and minimize Bay-Delta system vulnerability. A group of citizen advisors representing California's agricultural, environmental, urban, business, fishing, and other interests who have a stake in finding long-term solutions for the problems affecting the Bay-Delta system has been chartered under the Federal Advisory Committee Act (FACA) as the BDAC to advise CALFED on the program mission, problems to be addressed, and objectives for the Program. BDAC provides a forum to help ensure public participation, and will review reports and other materials prepared by CALFED staff. BDAC has established a subcommittee called the Ecosystem Roundtable to provide input on annual work plans to implement ecosystem restoration projects and programs.

Minutes of the meeting will be maintained by the CALFED Bay-Delta Program, Suite 1155, 1416 Ninth Street, Sacramento, CA 95814, and will be available for public inspection during regular business hours, Monday through Friday within 30 days following the meeting.

Dated: April 30, 1998.

**Kirk Rodgers,**

*Deputy Regional Director, Mid-Pacific Region.*

[FR Doc. 98–11969 Filed 5–5–98; 8:45 am]

**BILLING CODE 4310–94–M**

## INTERNATIONAL TRADE COMMISSION

## Summary of Commission Practice Relating to Administrative Protective Orders

**AGENCY:** U.S. International Trade Commission.

**ACTION:** Summary of Commission practice relating to administrative protective orders.

---

**SUMMARY:** Since February 1991, the U.S. International Trade Commission ("Commission") has issued an annual report on the status of its practice with respect to violations of its administrative protective orders ("APOs") in investigations under Title VII of the Tariff Act of 1930 in response to a direction contained in the Conference Report to the Customs and Trade Act of 1990. Over time, the Commission has added to its report discussions of APO breaches in Commission proceedings other than Title VII and violations of the Commission's rule on bracketing business proprietary information ("BPI") (the "24-hour rule"), 19 CFR 207.3(c). This notice provides a summary of investigations of breaches and violations of the 24-hour rule for the period ending in 1997. The Commission intends that this report educate representatives of parties to Commission proceedings as to some specific types of APO breaches and 24-hour rule violations encountered by the Commission and the corresponding types of actions the Commission has taken.

**FOR FURTHER INFORMATION CONTACT:** Carol McCue Verratti, Esq., Office of the General Counsel, U.S. International Trade Commission, telephone (202) 205–3088. Hearing impaired individuals are advised that information on this matter can be obtained by contacting the Commission's TDD terminal at (202) 205–1810. General information concerning the Commission can also be obtained by accessing its Internet server (http://www.usitc.gov).

**SUPPLEMENTARY INFORMATION:** Representatives of parties to investigations conducted under Title VII of the Tariff Act of 1930 may enter into APOs that permit them, under strict conditions, to obtain access to BPI of other parties. See 19 U.S.C. 1677f; 19 CFR 207.7. The discussion below describes APO breach investigations that the Commission has completed including a description of actions taken in response to breaches. The discussion covers breach investigations completed during calendar year 1997.

Since 1993, the report has also included a summary of the Commission's investigations involving violations of the 24-hour rule, which provides that during the 24-hour period after a Commission deadline for a party submission in an antidumping or countervailing duty proceeding, changes are permitted to the proprietary version to correct the bracketing of BPI; no other changes are permitted under that rule. See 19 CFR 207.3(c). The discussion below covers investigations of violations of this rule completed during 1997.

In recent years, the Commission has expanded the report to include APO breaches in other types of proceedings as well. In 1997, no APO investigations were completed in proceedings other than Title VII investigations.

Since 1991, the Commission has published annually a summary of its actions in response to violations of Commission APOs and the "24-hour" rule. See 56 *FR* 4846 (Feb. 6, 1991); 57 *FR* 12,335 (Apr. 9, 1992); 58 *FR* 21,991 (Apr. 26, 1993); 59 *FR* 16,834 (Apr. 8, 1994); 60 *FR* 24,880 (May 10, 1995); 61 *FR* 21,203 (May 9, 1996), and 62 *FR* 13,164 (March 19, 1997). This report does not provide an exclusive list of conduct that will be deemed to be a breach of the Commission's APOs. APO breach inquiries are considered on a case-by-case basis.

As part of the effort to educate practitioners about the Commission's current APO practice, the Commission Secretary issued in April 1996 a revised edition of *An Introduction to Administrative Protective Order Practice in Antidumping and Countervailing Duty Investigations* (Pub. No. 2961). This document is available upon request from the Office of the Secretary, U.S. International Trade Commission, 500 E Street, SW, Washington, DC 20436, telephone (202) 205–2000.

## I. In General

The current APO form for antidumping and countervailing duty investigations, which the Commission has used since March 1995, requires the applicant to swear that he or she will:

(1) Not divulge any of the BPI obtained under the APO and not otherwise available to him, to any person other than—

(i) Personnel of the Commission concerned with the investigation,

(ii) The person or agency from whom the BPI was obtained,

(iii) A person whose application for disclosure of BPI under this APO has been granted by the Secretary, and

(iv) Other persons, such as paralegals and clerical staff, who (a) are employed or supervised by and under the

**Federal Register** / Vol. 63, No. 87 / Wednesday, May 6, 1998 / Notices

direction and control of the authorized applicant or another authorized applicant in the same firm whose application has been granted; (b) have a need thereof in connection with the investigation; (c) are not involved in competitive decisionmaking for the interested party which is a party to the investigation; and (d) have submitted to the Secretary a signed Acknowledgment for Clerical Personnel in the form attached hereto (the authorized applicant shall sign such acknowledgment and will be deemed responsible for such persons' compliance with the APO);

(2) Use such BPI solely for the purposes of the Commission investigation [or for binational panel review of such Commission investigation or until superceded by a judicial protective order in a judicial review of the proceeding];

(3) Not consult with any person not described in paragraph (1) concerning BPI disclosed under this APO without first having received the written consent of the Secretary and the party or the representative of the party from whom such BPI was obtained;

(4) Whenever materials (*e.g.,* documents, computer disks, etc.) containing such BPI are not being used, store such material in a locked file cabinet, vault, safe, or other suitable container (N.B.: storage of BPI on so-called hard disk computer media is to be avoided, because mere erasure of data from such media may not irrecoverably destroy the BPI and may result in violation of paragraph C of the APO);

(5) Serve all materials containing BPI disclosed under this APO as directed by the Secretary and pursuant to section 207.7(f) of the Commission's rules;

(6) Transmit such document containing BPI disclosed under this APO:

(i) with a cover sheet identifying the document as containing BPI,

(ii) with all BPI enclosed in brackets and each page warning that the document contains BPI,

(iii) if the document is to be filed by a deadline, with each page marked ''Bracketing of BPI not final for one business day after date of filing,'' and

(iv) if by mail, within two envelopes, the inner one sealed and marked ''Business Proprietary Information—To be opened only by [name of recipient]'', and the outer one sealed and not marked as containing BPI;

(7) Comply with the provision of this APO and section 207.7 of the Commission's rules;

(8) Make true and accurate representations in the authorized

applicant's application and promptly notify the Secretary of any changes that occur after the submission of the application and that affect the representations made in the application (*e.g.,* change in personnel assigned to the investigation);

(9) Report promptly and confirm in writing to the Secretary any possible breach of the APO; and

(10) Acknowledge that breach of the APO may subject the authorized applicant and other persons to such sanctions or other actions as the Commission deems appropriate including the administrative sanctions and actions set out in this APO.

The APO further provides that breach of protective order may subject an applicant to:

(1) Disbarment from practice in any capacity before the Commission along with such person's partners, associates, employer, and employees, for up to seven years following publication of a determination that the order has been breached;

(2) Referral to the United States Attorney;

(3) In the case of an attorney, accountant, or other professional, referral to the ethics panel of the appropriate professional association;

(4) Such other administrative sanctions as the Commission determines to be appropriate, including public release of or striking from the record any information or briefs submitted by, or on behalf of, such person or the party he represents; denial of further access to business proprietary information in the current or any future investigations before the Commission; and issuance of a public or private letter of reprimand; and

(5) Such other actions, including but not limited to, a warning letter, as the Commission determines to be appropriate.

Commission employees are not signatories to the Commission's APOs and do not obtain access to BPI through APO procedure. Consequently, they are not subject to the requirements of the APO with respect to the handling of BPI. However, Commission employees are subject to strict statutory and regulatory constraints concerning BPI, and face potentially severe penalties for noncompliance. *See* 18 U.S.C. 1905; Title 5, U.S. Code; and Commission personnel policies implementing the statutes. Although the Privacy Act (5 U.S.C. 552a) limits the Commission's authority to disclose any personnel action against agency employees, this should not lead the public to conclude that no such actions have been taken.

An important provision of the Commission's rules relating to BPI is the ''24-hour'' rule. This rule provides that parties have one business day after the deadline for filing documents containing BPI to file a public version of the document. The rule also permits changes to the bracketing of information in the proprietary version within this one-day period. No changes— other than changes in bracketing—may be made to the proprietary version. The rule was intended to reduce the incidence of APO breaches caused by inadequate bracketing and improper placement of BPI. The Commission urges parties to make use of the rule. If a party wishes to make changes to a document other than bracketing, such as typographical changes or other corrections, the party must ask for an extension of time to file an amendment document pursuant to Rule 201.14(b)(2).

## II. Investigations of Alleged APO Breaches

An investigation of an alleged APO breach in an antidumping or countervailing duty investigation commences when the Secretary, acting under delegated authority, issues to the alleged breacher a letter of inquiry to ascertain the alleged breacher's views on whether a breach has occurred. If, after reviewing the response and other relevant information, the Commission determines that a breach has occurred, the Commission often issues a second letter asking the breacher to address the questions of mitigating or aggravating circumstances and possible sanctions or other actions. The Commission then determines what action to take in response to the breach. In some cases, the Commission has determined that although a breach has occurred, sanctions are not warranted, and therefore has found it unnecessary to issue a second letter concerning what sanctions might be appropriate. Instead, it issues a warning letter to the individual. The Commission retains sole authority to determine whether a breach has occurred and, if so, the appropriate action to be taken.

The records of Commission investigations of alleged APO breaches in antidumping and countervailing duty cases are not publicly available and are exempt from disclosure under the Freedom of Information Act, 5 U.S.C. 552, Section 135(b) of the Customs and Trade Act of 1990, and 19 U.S.C. 1677f(g).

The breach most frequently investigated by the Commission involves the APO's prohibition on the dissemination of BPI to unauthorized persons. Such dissemination usually

**25066**   **Federal Register** / Vol. 63, No. 87 / Wednesday, May 6, 1998 / Notices

occurs as the result of failure to delete BPI from public versions of documents filed with the Commission or of transmission of proprietary versions of documents to unauthorized recipients. Other breaches have included: the failure to properly bracket BPI in proprietary documents filed with the Commission; the failure to immediately report known violations of an APO; and the failure to adequately supervise non-legal personnel in the handling of BPI.

Sanctions for APO violations serve two basic interests: (a) Preserving the confidence of submitters of BPI in the Commission as a reliable protector of BPI; and (b) disciplining breachers and deterring future violations. As the Conference Report to the Omnibus Trade and Competitiveness Act of 1988 observed, ''the effective enforcement of limited disclosure under administrative protective order depends in part on the extent to which private parties have confidence that there are effective sanctions against violation.'' H.R. Conf. Rep. No. 576, 100th Cong., 1st Sess. 623 (1988).

The Commission has worked to develop consistent jurisprudence, not only in determining whether a breach has occurred, but also in selecting an appropriate response. In determining the appropriate response, the Commission generally considers mitigating factors such as the unintentional nature of the breach, the lack of prior breaches committed by the breaching party, the corrective measures taken by the breaching party, and the promptness with which the breaching party reported the violation to the Commission. The Commission also considers aggravating circumstances, especially whether persons not under the APO actually read the BPI. The Commission considers whether there are prior breaches within the previous two-year period and multiple breaches by the same person or persons in the same investigation.

The Commission's rules permit economists or consultants to obtain access to BPI under the APO if the economist or consultant is under the direction and control of an attorney under the APO, or if the economist or consultant appears regularly before the Commission and represents an interested party who is a party to the investigation. 19 CFR 207.7(a)(3)(B) and (C). Economists and consultants who obtain access to BPI under the APO under the direction and control of an attorney nonetheless remain individually responsible for complying with the APO. In appropriate circumstances, for example, an economist under the direction and control of an attorney may be held responsible for a breach of the APO by failing to redact APO information from a document that is subsequently filed with the Commission and served as a public document. This is so even though the attorney exercising direction or control over the economist or consultant may also be held responsible for the breach of the APO.

## III. Specific Investigations in Which Breaches Were Found

The Commission presents the following case studies to educate users about the types of APO breaches found by the Commission. The case studies provide the factual background, the actions taken by the Commission, and the factors considered by the Commission in determining the appropriate actions. The Commission has not included some of the specific facts in the descriptions of investigations where disclosure could reveal the identity of a particular breacher. Thus, in some cases, apparent inconsistencies in the facts set forth in this notice result from the Commission's inability to disclose particular facts more fully.

*Case 1:* Counsel for a party to a Commission investigation filed a submission with International Trade Administration, Department of Commerce (''Commerce'') in a Commerce investigation and served copies of the submission on the parties to the Commerce investigation. The submission contained BPI which counsel had obtained under a Commission APO. The Commission determined that one attorney did not breach the APO because he did not participate in the preparation or review of the Commerce submission and his name did not appear on the submission. The Commission determined that two attorneys who prepared and reviewed the submission filed with Commerce breached the APO. In reaching its decision to issue private letters of reprimand, the Commission considered that the BPI was viewed by an unauthorized person employed at Commerce. In addition, unauthorized persons may have viewed the BPI at the various law firms that were served copies of the submission. At least one person authorized to review BPI released under Commerce APOs was not authorized to review BPI released under the Commission's APO. The Commission noted that an even more important consideration was the admission by the attorneys that they were not aware of the explicit condition of the APO that information obtained under a Commission APO may not be used in any other investigation including the companion Commerce inquiry. This lack of awareness called into question the level of care that the attorneys exercised in regard to their obligations under the APO. In reaching its decision, the Commission also considered the mitigating factors that the two attorneys had not previously breached a Commission APO and that both reported and attempted to correct the breach promptly.

*Case 2:* Counsel in an investigation submitted a public version of a document in which certain BPI contained in footnotes was not bracketed or redacted. The text to which the footnotes referred was bracketed. The BPI in question was contained in an attachment to a questionnaire response. The Commission staff discovered the possible breach, and the Secretary contacted counsel to inquire about the failure to bracket and redact the information in the footnote. Counsel responded immediately by submitting corrected pages to the Commission and persons on the service list, and instructing the recipients that the original pages be destroyed. In response to the Commission's inquiry about the possible breach, counsel argued that the information was available in the public domain because the information in question was not marked as confidential and was not bracketed. The Commission's consistent practice with regard to information submitted in connection with a questionnaire response is that it must be treated as confidential unless the party served with the response can establish that the material is elsewhere available in the public domain. Counsel failed to establish that the unbracketed and unredacted material was available in the public domain at the time that they filed the document in question. Thus, the Commission disagreed and determined that counsel breached the APO and issued warning letters. In reaching its decision, the Commission took into account that the attorneys had not previously breached an APO; there was no bad faith or willful conduct involved in connection with this breach; and they moved promptly to mitigate the breach once informed about it by the Secretary. It did not appear that any non-signatory to the APO had reviewed the BPI.

*Case 3:* Two attorneys filed the public version of an *in camera* hearing submission with bracketed but unredacted BPI. They discovered the breach the following day, immediately reported it to the Commission, retrieved all copies from parties on the service list and the Commission, and obtained from each party a certification that no copies

were reviewed by non-signatories to the APO. The public version retrieved from the Commission's files had not been reviewed by any member of the public. The Commission determined that the two attorneys breached the APO and issued warning letters to them. In reaching its decision not to sanction the attorneys, the Commission considered that they had not been involved in prior breaches and they took action immediately after discovering the breach to limit the possibility of disclosure to unauthorized persons.

A second alleged breach occurred on the same day when four attorneys from the same firm filed the public version of a brief which contained three items of what appeared to be unredacted BPI. The Commission Secretary's office notified counsel that the submission appeared to contain unredacted BPI. The law firm retrieved copies of the pages in question and filed corrected versions with the Commission, as requested by the Secretary. The Commission determined that two of the attorneys committed a breach of the APO when they failed to redact one item of BPI from the brief. In deciding to issue warning letters, the Commission considered that the attorneys had not been involved in prior breaches and took appropriate action upon discovering the breach. The Commission also noted that the information in question was disclosed publicly by the submitter very shortly after the breach.

The Commission determined that disclosure of the other two items in question was not a breach of the APO because the information was not BPI. One item was publicly disclosed and the other item was obtained directly from the client and not under the APO. The Commission determined that two of the attorneys did not breach the APO because they did not participate in the final review of the public version of the brief.

*Case 4:* Employees for an economic consulting firm prepared and distributed documents containing bracketed but unredacted BPI at a public hearing. A signatory of the APO, an attorney for another party, noticed that BPI had not been redacted from the documents and immediately informed the Secretary, the law firm, and the consulting firm. All copies of the handout were retrieved immediately and all persons at the hearing who had copies of the handout in their possession, with the exception of the attorney who first noticed the BPI, stated that they did not review the BPI contained in the handouts. The Commission determined that two

consultants breached the APO and issued private letters of reprimand. In reaching the decision that the breach had occurred, the Commission noted that the actual receipt and review of BPI by unauthorized persons is not a precondition for a finding of a violation of the APO. Failure to follow the rules which are protective of the information by leaving the information unprotected and potentially releasable is sufficient to constitute a breach of the APO. In reaching its decision to issue private letters of reprimand, the Commission considered that this was the second time in two years that the consultants had breached an APO. In reaching its decision, the Commission also considered the mitigating factors that the breach was inadvertent, the Commission was promptly informed of the breach, and the consultant took immediate steps to mitigate any possible damage from the breach.

The Commission found that two other consultant firm employees, identified as clerical personnel in the APO applications, did not breach the APO because their work in preparing the documents was subject to review by the senior consultants. Although the consultants were under the direction and control of the lead attorney at a law firm, the Commission determined that no attorney at the firm was responsible for the breach because the consulting firm employees revised the documents after the attorneys had reviewed what they thought were the final versions, and no one advised the attorneys of the revision or requested that the attorneys review the revised documents.

*Case 5:* (*See* Case B of the 24-hour rule.) Attorneys, signatories to the APO in an investigation, failed to bracket and redact BPI from a footnote in the public version of a brief. The Commission sent a letter of inquiry to three attorneys but determined that one of them did not breach the APO because he was not involved in the drafting of the public version of the brief or in any review or appraisal of data included in the submission. The Commission determined that two attorneys breached the APO and issued one attorney a letter of reprimand and the other a warning letter. In reaching its decision to issue a private letter of reprimand to one of the attorneys, the Commission took into account the principal aggravating circumstance that it was the second time within a few months that this first attorney had breached an APO by failing to bracket and redact BPI from a submission. The Commission also considered that there was no evidence of willful disregard of the APO. However, the breach was not the result

of an accident or inadvertence, but the result of a conscious decision not to bracket information which the attorney continued to maintain was justified. The Secretary's office discovered the breach and, once advised that there had been a breach, the attorney moved promptly to mitigate the breach by retrieving the offending pages of the brief and replacing them with corrected pages.

In reaching its decision to issue a warning letter to the second attorney, the Commission took into consideration that he had no prior APO violations. This attorney was involved in the preparation of the documents, but did not make bracketing decisions with respect to the submission and was not in a position to countermand the attorney who made those decisions.

*Case 6:* Four attorneys were named as possibly breaching the APO by filing a submission before the Department of Commerce (Commerce) containing BPI obtained under the Commission APO and by labeling the submission public even though it contained BPI. The BPI in question had been obtained from the confidential version of the petition to which counsel had access under the Commission's APO but had not yet gained access to it under the Commerce APO. The day after the submission of the document to Commerce, the attorneys informed the Commission in writing of the potential breaches stemming from the submission to Commerce and took immediate steps to retrieve the submission and prevent the improper disclosure to unauthorized individuals.

The Commission found that two of the attorneys did not breach the APO because they played no role in either the preparation or filing of the submission. The Commission determined that the two other attorneys committed two distinct breaches of the APO by including Commission BPI in a Commerce submission and by incorrectly labeling that document as a public document. The Commission issued private letters of reprimand to the two attorneys and reminded them that information obtained under the Commission's APO is not to be used in other agency proceedings without first obtaining the written consent of the Secretary of the Commission and the party from whom the BPI was obtained. The Commission considered as mitigating factors the fact that the attorneys had no previous breaches; they reported and corrected the breach promptly; and the firm strengthened its APO procedures subsequent to the breaches. Moreover, it appeared that the mislabeling of the document was unintentional and due to mistake or

oversight. In reaching its decision to issue private letters of reprimand, the Commission considered that there were two separate breaches in the same investigation and that the document was placed in a public file at Commerce where it may have been viewed by unauthorized persons.

*Case 7:* Two attorneys, an economist, and a secretary from a law firm representing a party in an investigation failed to certify within a Commission deadline that APO documents in their possession had been destroyed and to attest to their good faith belief that there was no unauthorized access by any person to the APO materials. Pursuant to the APO, counsel was required to destroy the BPI documents and provide certification to that effect within 60 days of the termination of the investigation. However, since counsel appealed the Commission's determination to the U.S. Court of International Trade, the firm was permitted to retain the documents pending its application for a Judicial Protective Order (JPO). If a JPO is not sought, signatories to the APO in the law firm are required to destroy the documents and to provide certification promptly after 150 days have elapsed from the termination of the investigation. Counsel did not apply for a JPO and failed to provide the certification promptly after the 150 days had passed. In their response to the Commission's inquiry, counsel provided the required certification indicating that the documents had been destroyed immediately after the termination of the investigation. The Commission determined that the two attorneys and the economist breached the APO by not providing the certification within the required time period, and issued warning letters. In reaching a decision to issue warning letters, the Commission considered that there was no access to the APO documents by any unauthorized person; the breach appeared to have been unintentional; the attorney and economist took prompt action to remedy the breach; and they had no prior APO breach violations within the last two years. The Commission concluded that the secretary did not breach the APO as the Commission generally has not held clerical personnel responsible for breaches unless they have played a direct role in the circumstances contributing to a breach.

*Case 8:* An attorney representing a party to a Commission investigation filed a letter with the Commission which was designated as public, although it contained bracketed but undeleted BPI. The Commission Secretary notified the attorney about the possible breach. In response, the attorney filed a revised letter and immediately took steps to retrieve the document from the other parties. Two weeks later the attorney filed a public version of a prehearing brief which contained BPI in one of the exhibits. Again, the Secretary notified the attorney who immediately took steps to retrieve the document from the other parties and prevent unauthorized disclosure. The Commission determined that breaches had occurred and issued a private letter of reprimand. In reaching its decision to issue a private letter of reprimand the Commission considered that, although the attorney had committed no prior breaches, the attorney had committed two separate breaches in the same investigation within weeks of each other. The Commission also considered the mitigating factors that, when informed of the breaches, the attorney took immediate steps to retrieve the information and prevent its unauthorized disclosure; the breaches were unintentional; and the law firm took action to prevent future violations of this nature.

## IV. Investigations Involving the 24-Hour Rule

Under Commission rule 207.3(c), parties that submit a proprietary version of a document with the Commission pursuant to a Commission deadline have one business day in which to check and correct bracketing of BPI before filing the nonproprietary version of the document. The rule expressly states however, that *only* bracketing changes may be made without leave of the Commission in the one business day interval between the filing of the confidential and the filing of the nonconfidential document. A party desiring to make any other changes, including correction of typographical errors, must request leave of the Commission to do so.

*Case A:* Counsel to a party in an investigation filed a public version of the postconference brief which contained text which was not present in the confidential version of the brief. Leave of the Commission was not sought to make the non-bracketing change, nor was any mention of the additional material made when the public version of the brief was filed. The Commission determined that counsel violated Commission Rule 207.3 and issued a warning letter to each of the four attorneys who were signatories on the brief. In its letter, the Commission, noting that counsel's letter responding to the Commission inquiry stated that the change was made within one business day, advised counsel that the rule permits only bracketing changes and deletion of confidential information. Parties must request leave of the Commission to make a late filing to make any other changes to a previously filed document.

In reaching its decision to issue warning letters, the Commission considered that the addition of text appeared to be inadvertent and counsel had no previous record of violating the 24-hour rule.

*Case B:* (*See* Case 5 of the APO Breaches.) Two attorneys representing a party to a Commission investigation made changes to a submission that did not involve bracketing of information without receiving prior leave of the Commission. The Commission determined that the two attorneys had violated the 24-hour rule by making the non-bracketing changes to submissions without seeking prior leave from the Commission. The Commission also found that the attorneys had breached the APO in the same investigation, but determined not to impose any additional sanction upon the attorneys for violation of rule 207.3, the 24-hour rule. One attorney received a warning letter for the APO breach and the 24-hour rule violation. The Commission issued a private letter of reprimand to the second attorney for the APO breach and the 24-hour rule violation because it was his second breach violation within several months.

The Commission determined not to hold a third attorney at the firm responsible for violation of the 24-hour rule because he played no role in the preparation of the brief.

*Case C:* Three attorneys submitted a change to the filing of the public version of their prehearing brief prior to being granted leave to make the change. The Commission determined that the attorneys violated Commission Rule 207.3(c) and issued warning letters. In determining to issue warning letters, the Commission considered that the three attorneys had no previous record of having violated Rule 207.3(c). In addition, since the attorneys had sought to make the change in their BPI version of the brief, filing the change to the public version prior to approval of this leave appeared to be an inadvertent procedural error.

By order of the Commission.

Issued: April 29, 1998.

**Donna R. Koehnke,**

*Secretary.*

[FR Doc. 98–12010 Filed 5–5–98; 8:45 am]

**BILLING CODE 7020–02–P**

**INTERNATIONAL TRADE COMMISSION**

**Summary of Commission Practice Relating to Administrative Protective Orders**

**AGENCY:** U.S. International Trade Commission

**ACTION:** Summary of Commission practice relating to administrative protective orders.

**SUMMARY:** Since February 1991, the U.S. International Trade Commission ("Commission") has issued an annual report on the status of its practice with respect to violations of its administrative protective orders ("APOs") in investigations under Title VII of the Tariff Act of 1930 in response to a direction contained in the Conference Report to the Customs and Trade Act of 1990. Over time, the Commission has added to its report discussions of APO breaches in Commission proceedings other than Title VII and violations of the Commission's rule on bracketing business proprietary information ("BPI")(the "24-hour rule"), 19 CFR 207.3(c). This notice provides a summary of investigations of breaches in Title VII investigations for the period ending December 31, 1998. There were no investigations of breaches for other Commission proceedings or for 24-hour rule violations during that period. The Commission intends that this report educate representatives of parties to Commission proceedings as to some specific types of APO breaches encountered by the Commission and the corresponding types of actions the Commission has taken.

**FOR FURTHER INFORMATION CONTACT:** Carol McCue Verratti, Esq., Office of the General Counsel, U.S. International Trade Commission, telephone (202) 205–3088. Hearing impaired individuals are advised that information on this matter can be obtained by contacting the Commission's TDD terminal at (202) 205–1810. General information concerning the Commission can also be obtained by accessing its Internet server (*http://www.usitc.gov*).

**SUPPLEMENTARY INFORMATION:** Representatives of parties to investigations conducted under Title VII of the Tariff Act of 1930 may enter into APOs that permit them, under strict conditions, to obtain access to BPI of other parties. See 19 U.S.C. 1677f; 19 CFR 207.7. The discussion below describes APO breach investigations that the Commission has completed including a description of actions taken in response to breaches. The discussion covers breach investigations completed during calendar year 1998.

Since 1991, the Commission has published annually a summary of its actions in response to violations of Commission APOs and the 24-hour rule. See 56 *FR* 4846 (Feb. 6, 1991); 57 *FR* 12335 (Apr. 9, 1992); 58 *FR* 21991 (Apr. 26, 1993); 59 *FR* 16834 (Apr. 8, 1994); 60 *FR* 24880 (May 10, 1995); 61 *FR* 21203 (May 9, 1996); 62 *FR* 13164 (March 19, 1997); 63 *FR* 25064 (May 6, 1998). This report does not provide an exclusive list of conduct that will be deemed to be a breach of the Commission's APOs. APO breach inquiries are considered on a case-by-case basis.

As part of the effort to educate practitioners about the Commission's current APO practice, the Commission Secretary issued in April 1996 a revised edition of *An Introduction to Administrative Protective Order Practice in Antidumping and Countervailing Duty Investigations* (Pub. No. 2961). This document is available upon request from the Office of the Secretary, U.S. International Trade Commission, 500 E Street, SW, Washington, DC 20436, tel. (202) 205–2000.

**I. In General**

The current APO form for antidumping and countervailing duty investigations, which the Commission has used since March 1995, requires the applicant to swear that he or she will:

(1) Not divulge any of the BPI obtained under the APO and not otherwise available to him, to any person other than—

(i) Personnel of the Commission concerned with the investigation,

(ii) The person or agency from whom the BPI was obtained,

(iii) A person whose application for disclosure of BPI under this APO has been granted by the Secretary, and

(iv) Other persons, such as paralegals and clerical staff, who (a) are employed or supervised by and under the direction and control of the authorized applicant or another authorized applicant in the same firm whose application has been granted; (b) have a need thereof in connection with the investigation; (c) are not involved in competitive decisionmaking for the interested party which is a party to the investigation; and (d) have submitted to the Secretary a signed Acknowledgment for Clerical Personnel in the form attached hereto (the authorized applicant shall sign such acknowledgment and will be deemed responsible for such persons' compliance with the APO);

(2) Use such BPI solely for the purposes of the Commission investigation [or for binational panel review of such Commission investigation or until superceded by a judicial protective order in a judicial review of the proceeding);

(3) Not consult with any person not described in paragraph (1) concerning BPI disclosed under this APO without first having received the written consent of the Secretary and the party or the representative of the party from whom such BPI was obtained;

(4) Whenever materials (*e.g.,* documents, computer disks, etc.) containing such BPI are not being used, store such material in a locked file cabinet, vault, safe, or other suitable container (N.B.: storage of BPI on so-called hard disk computer media is to be avoided, because mere erasure of data from such media may not irrecoverably destroy the BPI and may result in violation of paragraph C of the APO);

(5) Serve all materials containing BPI disclosed under this APO as directed by the Secretary and pursuant to section 207.7(f) of the Commission's rules;

(6) Transmit such document containing BPI disclosed under this APO:

(i) With a cover sheet identifying the document as containing BPI,

(ii) With all BPI enclosed in brackets and each page warning that the document contains BPI,

(iii) If the document is to be filed by a deadline, with each page marked "Bracketing of BPI not final for one business day after date of filing," and

(iv) If by mail, within two envelopes, the inner one sealed and marked "Business Proprietary Information—To be opened only by [name of recipient]", and the outer one sealed and not marked as containing BPI;

(7) Comply with the provision of this APO and section 207.7 of the Commission's rules;

(8) Make true and accurate representations in the authorized applicant's application and promptly notify the Secretary of any changes that occur after the submission of the application and that affect the representations made in the application (*e.g.,* change in personnel assigned to the investigation);

(9) Report promptly and confirm in writing to the Secretary any possible breach of the APO; and

(10) Acknowledge that breach of the APO may subject the authorized applicant and other persons to such sanctions or other actions as the Commission deems appropriate

including the administrative sanctions and actions set out in this APO.

The APO further provides that breach of protective order may subject an applicant to:

(1) Disbarment from practice in any capacity before the Commission along with such person's partners, associates, employer, and employees, for up to seven years following publication of a determination that the order has been breached;

(2) Referral to the United States Attorney;

(3) In the case of an attorney, accountant, or other professional, referral to the ethics panel of the appropriate professional association;

(4) Such other administrative sanctions as the Commission determines to be appropriate, including public release of or striking from the record any information or briefs submitted by, or on behalf of, such person or the party he represents; denial of further access to business proprietary information in the current or any future investigations before the Commission; and issuance of a public or private letter of reprimand; and

(5) Such other actions, including but not limited to, a warning letter, as the Commission determines to be appropriate.

Commission employees are not signatories to the Commission's APOs and do not obtain access to BPI through APO procedure. Consequently, they are not subject to the requirements of the APO with respect to the handling of BPI. However, Commission employees are subject to strict statutory and regulatory constraints concerning BPI, and face potentially severe penalties for noncompliance. *See* 18 U.S.C. 1905; Title 5, U.S. Code; and Commission personnel policies implementing the statutes. Although the Privacy Act (5 U.S.C. 552a) limits the Commission's authority to disclose any personnel action against agency employees, this should not lead the public to conclude that no such actions have been taken.

An important provision of the Commission's rules relating to BPI is the "24-hour" rule. This rule provides that parties have one business day after the deadline for filing documents containing BPI to file a public version of the document. The rule also permits changes to the bracketing of information in the proprietary version within this one-day period. No changes—other than changes in bracketing—may be made to the proprietary version. The rule was intended to reduce the incidence of APO breaches caused by inadequate bracketing and improper placement of BPI. The Commission urges parties to

make use of the rule. If a party wishes to make changes to a document other than bracketing, such as typographical changes or other corrections, the party must ask for an extension of time to file an amendment document pursuant to section 201.14(b)(2) of the Commission's rules.

## II. Investigations of Alleged APO Breaches

Upon finding evidence of a breach or receiving information that there is a reason to believe one has occurred, the Commission Secretary notifies relevant offices in the agency that an APO breach investigation file has been opened. Upon receiving notification from the Secretary, the Office of General Counsel (OGC) begins to investigate the matter. The OGC prepares a letter of inquiry to be sent to the alleged breacher over the Secretary's signature to ascertain the alleged breacher's views on whether a breach has occurred. If, after reviewing the response and other relevant information, the Commission determines that a breach has occurred, the Commission often issues a second letter asking the breacher to address the questions of mitigating or aggravating circumstances and possible sanctions or other actions. The Commission then determines what action to take in response to the breach. In some cases, the Commission has determined that although a breach has occurred, sanctions are not warranted, and therefore has found it unnecessary to issue a second letter concerning what sanctions might be appropriate. Instead, it issues a warning letter to the individual. The Commission retains sole authority to determine whether a breach has occurred and, if so, the appropriate action to be taken.

The records of Commission investigations of alleged APO breaches in antidumping and countervailing duty cases are not publicly available and are exempt from disclosure under the Freedom of Information Act, 5 U.S.C. 552, section 135(b) of the Customs and Trade Act of 1990, and 19 U.S.C. 1677f(g).

The breach most frequently investigated by the Commission involves the APO's prohibition on the dissemination of BPI to unauthorized persons. Such dissemination usually occurs as the result of failure to delete BPI from public versions of documents filed with the Commission or transmission of proprietary versions of documents to unauthorized recipients. Other breaches have included: the failure to properly bracket BPI in proprietary documents filed with the Commission; the failure to immediately

report known violations of an APO; and the failure to adequately supervise non-legal personnel in the handling of BPI.

Sanctions for APO violations serve two basic interests: (a) Preserving the confidence of submitters of BPI in the Commission as a reliable protector of BPI; and (b) disciplining breachers and deterring future violations. As the Conference Report to the Omnibus Trade and Competitiveness Act of 1988 observed, "the effective enforcement of limited disclosure under administrative protective order depends in part on the extent to which private parties have confidence that there are effective sanctions against violation." H.R. Conf. Rep. No. 576, 100th Cong., 1st Sess. 623 (1988).

The Commission has worked to develop consistent jurisprudence, not only in determining whether a breach has occurred, but also in selecting an appropriate response. In determining the appropriate response, the Commission generally considers mitigating factors such as the unintentional nature of the breach, the lack of prior breaches committed by the breaching party, the corrective measures taken by the breaching party, and the promptness with which the breaching party reported the violation to the Commission. The Commission also considers aggravating circumstances, especially whether persons not under the APO actually read the BPI. The Commission considers whether there are prior breaches within the previous two-year period and multiple breaches by the same person or persons in the same investigation.

The Commission's rules permit economists or consultants to obtain access to BPI under the APO if the economist or consultant is under the direction and control of an attorney under the APO, or if the economist or consultant appears regularly before the Commission and represents an interested party who is a party to the investigation. 19 CFR 207.7(a)(3)(B) and (C). Economists and consultants who obtain access to BPI under the direction and control of an attorney nonetheless remain individually responsible for complying with the APO. In appropriate circumstances, for example, an economist under the direction and control of an attorney may be held responsible for a breach of the APO by failing to redact APO information from a document that is subsequently filed with the Commission and served as a public document. This is so even though the attorney exercising direction or control over the economist or

consultant may also be held responsible for the breach of the APO.

## III. Specific Investigations in Which Breaches Were Found

The Commission presents the following case studies to educate users about the types of APO breaches found by the Commission. The case studies provide the factual background, the actions taken by the Commission, and the factors considered by the Commission in determining the appropriate actions. The Commission has not included some of the specific facts in the descriptions of investigations where disclosure of such facts could reveal the identity of a particular breacher. Thus, in some cases, apparent inconsistencies in the facts set forth in this notice result from the Commission's inability to disclose particular facts more fully.

*Case 1*—Counsel in an investigation notified the Commission that they were unable to locate certain documents containing BPI which were obtained under the Commission's APO. Counsel presumed that the documents had been intentionally discarded by a discharged clerical employee. Counsel instructed an office manager who was not subject to the APO to review certain APO documents in the possession of an attorney covered by the APO to identify the missing documents. The Commission determined that three attorneys breached the APO by failing to properly safeguard materials under the APO and to prevent the disclosure of BPI to unauthorized persons. The attorney who had signed the acknowledgments for clerical personnel breached the APO because, as the person responsible for ensuring that the fired employee complied with the APO, he failed to safeguard the documents. In addition, he and a second attorney breached the APO when they instructed an employee not covered by the APO to review copies of APO documents of a third attorney to determine which documents were missing. The third attorney was found to breach the APO by permitting the employee not covered by the APO to review the documents in his possession. The Commission issued private letters of reprimand to all three attorneys. Certain aggravating factors existed with regard to the breach involving the disposal of the documents. The clerical employee apparently committed an intentional breach of the APO; efforts to identify and recover the documents were not effective; a large volume of the APO information was involved; and since the fate of the materials will likely never be known, it is impossible to determine

whether they have been reviewed by any person not subject to the APO. There were also mitigating factors in that the attorney responsible for supervising the breaching clerical worker had no prior breaches; the breach was reported shortly after counsel became aware of it; and steps were taken to identify and recover the missing documents.

All three attorneys were found to have committed the second breach, *i.e.*, the direction to an individual not covered by the APO to review APO documents and the release of those APO documents to that individual. Two aggravating circumstances were that the Commission, not the attorneys, discovered the breach, and the BPI was viewed by an unauthorized person. The Commission also considered as mitigating factors that this breach was inadvertent and the attorneys involved had no prior breaches.

*Case 2*—Counsel in an investigation filed with the Commission a proprietary version of a submission which contained unbracketed BPI and filed the public version of the document without deleting the unbracketed BPI. Counsel became aware of the potential breach, notified the Commission and the parties to the investigation, and retrieved and destroyed all copies of the offending document. The Commission determined that three attorneys breached the APO by failing to bracket BPI in the proprietary version of the document and by failing to delete that BPI from the public version. In reaching its decision to issue warning letters, the Commission considered that this was the only breach in which these attorneys were involved in the prior two-year period generally examined by the Commission for purposes of considering sanctions, the breach was unintentional, and counsel promptly notified the Commission of the breach and took action to remedy it. There was no information in the record suggesting that any non-APO signatories had viewed the BPI. The Commission determined that two attorneys did not breach the APO because they were not responsible for drafting the section of the document containing the unbracketed BPI or for reviewing the document for BPI or proper bracketing.

*Case 3*—Counsel filed a public version of a document which contained unredacted BPI. The document was prepared by economists at an economic consulting firm which had an arrangement with the law firm to assure that documents they prepared would go through three levels of review for APO compliance. The consulting firm was responsible for the first two levels of review and the law firm was responsible

for the final APO review of all materials prepared by the consulting firm. Those responsible for the reviews failed to notice the offending information. The potential breach was identified by the Commission Secretary, who notified an attorney with the law firm who took immediate action to retrieve the offending documents. In response to the Commission inquiry, the law firm asserted that no breach occurred because the bracketed information which was not deleted was publicly available from other sources and was a non-numerical characterization of the prices of one producer which is generally allowed to be publicly disclosed under Commission rules. The Commission did not agree with the law firm's assertions and determined that the APO had been breached because the information was derived from a questionnaire response which is always treated as confidential in its entirety. Further, the information was not available from a public source at the time that it was revealed and was not a non-numerical characterization of aggregate trends as provided for in the Commission rules.

The Commission found that the two economists and two attorneys who were responsible for the final APO review of the submission breached the APO. In issuing warning letters to the two economists and two attorneys, the Commission considered the mitigating factors that the breach was unintentional, resulting from a collective oversight on the part of the economists and the attorneys. The law firm took prompt corrective action as soon as it learned of the breach, and all copies of the offending document were retrieved or destroyed. There was no evidence that persons not subject to the APO actually reviewed the document in question. In reaching its decision, the Commission also considered the aggravating factor that the potential breach was first identified by the Commission Secretary.

The Commission did not find the lead attorney responsible because he had delegated the responsibility for performing the final APO review of the public version of the brief to associates who were experienced in such tasks. Thus, this does not appear to be a case of negligent supervision. In addition, the Commission did not hold responsible for the breach one economist, a legal assistant, and a secretary who were on the APO because they did not have responsibility for the preparation or review of the document.

*Case 4*—Counsel in an investigation distributed a document which contained unbracketed BPI. The BPI at

**23358**   Federal Register / Vol. 64, No. 83 / Friday, April 30, 1999 / Notices

issue was contained in a questionnaire response. The potential breach was brought to counsel's attention by an attorney representing another party to the investigation. Counsel immediately informed the Secretary of the potential breach and supervised efforts by law firm personnel to retrieve copies of the document from those who had access to it. Many, but not all, of the copies of the document were retrieved. In responding to the Commission inquiry, counsel asserted that the information was publicly available and that the information was ''innocuous'' and not BPI because it revealed nothing about the substance of the questionnaire response. The Commission was not persuaded by counsel's assertions and determined that the APO had been breached because questionnaire responses are treated as confidential in their entirety unless the responses contain information that is otherwise publicly available. The Commission determined that the economist responsible for preparing the document and the attorney charged with final APO review of materials breached the APO by circulating the document which contained BPI. In issuing private letters of reprimand, the Commission considered the facts that the decision by the attorney and the economist not to bracket and delete the BPI at issue was not inadvertent, the breach was first identified by counsel for another party, and the attorney and economist were unable to account for numerous copies of the document at issue which may remain in the hands of parties not covered by the APO. In reaching its determination, the Commission also considered the mitigating factors that neither the attorney nor the economist had previously breached an APO, and the attorney reported the breach promptly after learning of it.

*Case 5*—Counsel in an investigation filed a public version of a document containing bracketed but unredacted BPI in footnotes. The information in question was submitted in a questionnaire response and was not publicly available at the time it was revealed in the public version of the document. The Commission Secretary discovered the possible breach and advised counsel, who took prompt measures to retrieve all copies of the relevant document. Although one party not entitled to access to BPI received a copy of the document, there is no evidence that that person actually reviewed the unredacted BPI.

The Commission determined that the attorney responsible for reviewing the document to assure APO compliance had breached the APO by failing to redact bracketed BPI from a public submission. The lead attorney and two paralegals were not found responsible for the breach because the sole responsibility for assuring APO compliance was delegated to the non-lead attorney who was experienced in such matters. In reaching its determination to issue a warning letter, the Commission considered the mitigating factors that this was the attorney's first breach of an APO, the breach was inadvertent, and the attorney took immediate action to retrieve the document in question apparently before any non-signatory to the APO reviewed the BPI at issue. The Commission considered as an aggravating factor the fact that it was the Commission Secretary who discovered the breach.

## IV. Investigation in Which No Breach Was Found

During 1998, the Commission completed one investigation in which no breach was found. An attorney attempted to discuss information protected under the APO with a person not on the APO. The Commission determined that the attorney did not breach the APO because the information revealed was inaccurate and was not the information protected under the APO. In advising the attorney that he had not breached the APO on technical grounds, the Commission urged him to exercise greater caution in the future.

Issued: April 27, 1999.

By order of the Commission.

**Donna R. Koehnke,**

*Secretary.*

[FR Doc. 99–10871 Filed 4–29–99; 8:45 am]

**BILLING CODE 7020–02–P**

## DEPARTMENT OF JUSTICE

### Federal Bureau of Investigation

### Notice of Charter Renewal

In accordance with the provisions of the Federal Advisory Committee Act (Title 5, United States Code, Appendix 2), and Title 41, Code of Federal Regulations, Section 101–6.1015, the Director, FBI, with the concurrence of the Attorney General, has determined that the continuance of the Criminal Justice Information Services (CJIS) Advisory Policy Board (APB) is in the public interest, in connection with the performance of duties imposed upon the FBI by law, and hereby gives notice of the renewal of its charter, effective December 31, 1998.

The APB recommends to the Director, FBI, general policy with respect to the philosophy, concept, and operational principles of the various criminal justice information systems managed by the FBI's CJIS Division.

The APB includes representatives from state and local criminal justice agencies; members of the judicial, prosecutorial, and correctional segments of the criminal justice community; a representative of federal agencies participating in the CJIS systems; and representatives of criminal justice professional associations (i.e., the International Association of Chiefs of Police, the Major Cities Chiefs, Major County Sheriffs' Association, the National Sheriffs' Association, the National District Attorneys Association, and the American Probation and Parole Association). All members of the APB are appointed by the FBI Director.

The APB functions solely as an advisory body in compliance with the provisions of the Federal Advisory Committee Act. The charter has been filed in accordance with the provisions of the Act.

Dated: April 21, 1999.

**Louis J. Freeh,**

*Director.*

[FR Doc. 99–10866 Filed 4–29–99; 8:45 am]

**BILLING CODE 4410–02–M**

## DEPARTMENT OF LABOR

### Office of the Secretary

### Submission for OMB Review; Comment Request

April 26, 1999.

The Department of Labor (DOL) has submitted the following public information collection requests (ICRs) to the Office of Management and Budget (OMB) for review and approval in accordance with the Paperwork Reduction Act of 1995 (Pub. L. 104–13, 44 U.S.C. Chapter 35). A copy of each individual ICR, with applicable supporting documentation, may be obtained by calling the Department of Labor, Acting Departmental Clearance Officer, Pauline Perrow ({202} 219–5096 ext. 165) or by E-Mail to Perrow-Pauline@dol.gov.

Comments should be sent to Office of Information and Regulatory Affairs, Attn: OMB Desk Officer for BLS, DM, ESA, ETA, MSHA, OSHA, PWBA, or VETS, Office of Management and Budget, Room 10235, Washington, DC 20503 ({202} 395–7316), on or before June 1, 1999.

The OMB is particularly interested in comments which:

• Evaluate whether the proposed collection of information is necessary

**INTERNATIONAL TRADE COMMISSION**

**Summary of Commission Practice Relating to Administrative Protective Orders**

**AGENCY:** U.S. International Trade Commission.

**ACTION:** Summary of Commission practice relating to administrative protective orders.

**SUMMARY:** Since February 1991, the U.S. International Trade Commission ("Commission") has issued an annual report on the status of its practice with respect to violations of its administrative protective orders ("APOs") in investigations under Title VII of the Tariff Act of 1930 in response to a direction contained in the Conference Report to the Customs and Trade Act of 1990. Over time, the Commission has added to its report discussions of APO breaches in Commission proceedings other than Title VII and violations of the Commission's rule on bracketing business proprietary information ("BPI") (the "24-hour rule"), 19 CFR 207.3(c). This notice provides a summary of investigations of breaches in Title VII investigations for the period ending December 31, 1999. There were no investigations of breaches for other Commission proceedings or for 24-hour rule violations during that period. The Commission intends that this report educate representatives of parties to Commission proceedings as to some specific types of APO breaches encountered by the Commission and the corresponding types of actions the Commission has taken.

**FOR FURTHER INFORMATION CONTACT:** Carol McCue Verratti, Esq., Office of the General Counsel, U.S. International Trade Commission, telephone (202) 205–3088. Hearing impaired individuals are advised that information on this matter can be obtained by contacting the Commission's TDD terminal at (202) 205–1810. General information concerning the Commission can also be obtained by accessing its Internet server (*http://www.usitc.gov*).

**SUPPLEMENTARY INFORMATION:** Representatives of parties to investigations conducted under Title VII of the Tariff Act of 1930 may enter into APOs that permit them, under strict conditions, to obtain access to BPI of other parties. See 19 U.S.C. 1677f; 19 CFR 207.7. The discussion below describes APO breach investigations that the Commission has completed, including a description of actions taken in response to breaches. The discussion

covers breach investigations completed during calendar year 1999.

Since 1991, the Commission has published annually a summary of its actions in response to violations of Commission APOs and the 24-hour rule. See 56 *FR* 4846 (Feb. 6, 1991); 57 *FR* 12,335 (Apr. 9, 1992); 58 *FR* 21,991 (Apr. 26, 1993); 59 *FR* 16,834 (Apr. 8, 1994); 60 *FR* 24,880 (May 10, 1995); 61 *FR* 21,203 (May 9, 1996); 62 *FR* 13,164 (March 19, 1997); 63 *FR* 25064 (May 6, 1998); 64 *FR* 23355 (April 30, 1999). This report does not provide an exclusive list of conduct that will be deemed to be a breach of the Commission's APOs. APO breach inquiries are considered on a case-by-case basis.

As part of the effort to educate practitioners about the Commission's current APO practice, the Commission Secretary issued in April 1996 a revised edition of *An Introduction to Administrative Protective Order Practice in Antidumping and Countervailing Duty Investigations* (Pub. No. 2961). This document is available upon request from the Office of the Secretary, U.S. International Trade Commission, 500 E Street, SW, Washington, DC 20436, tel. (202) 205–2000.

**I. In General**

The current APO form for antidumping and countervailing duty investigations, which the Commission has used since March 1995, requires the applicant to swear that he or she will:

(1) Not divulge any of the BPI obtained under the APO and not otherwise available to him, to any person other than—

(i) personnel of the Commission concerned with the investigation,

(ii) the person or agency from whom the BPI was obtained,

(iii) a person whose application for disclosure of BPI under this APO has been granted by the Secretary, and

(iv) other persons, such as paralegals and clerical staff, who (a) are employed or supervised by and under the direction and control of the authorized applicant or another authorized applicant in the same firm whose application has been granted; (b) have a need thereof in connection with the investigation; (c) are not involved in competitive decisionmaking for the interested party which is a party to the investigation; and (d) have submitted to the Secretary a signed Acknowledgment for Clerical Personnel in the form attached hereto (the authorized applicant shall sign such acknowledgment and will be deemed responsible for such persons' compliance with the APO);

(2) Use such BPI solely for the purposes of the Commission investigation [or for binational panel review of such Commission investigation or until superceded by a judicial protective order in a judicial review of the proceeding);

(3) Not consult with any person not described in paragraph (1) concerning BPI disclosed under this APO without first having received the written consent of the Secretary and the party or the representative of the party from whom such BPI was obtained;

(4) Whenever materials (*e.g.*, documents, computer disks, etc.) containing such BPI are not being used, store such material in a locked file cabinet, vault, safe, or other suitable container (N.B.: storage of BPI on so-called hard disk computer media is to be avoided, because mere erasure of data from such media may not irrecoverably destroy the BPI and may result in violation of paragraph C of the APO);

(5) Serve all materials containing BPI disclosed under this APO as directed by the Secretary and pursuant to section 207.7(f) of the Commission's rules;

(6) Transmit such document containing BPI disclosed under this APO:

(i) with a cover sheet identifying the document as containing BPI,

(ii) with all BPI enclosed in brackets and each page warning that the document contains BPI,

(iii) if the document is to be filed by a deadline, with each page marked "Bracketing of BPI not final for one business day after date of filing," and

(iv) if by mail, within two envelopes, the inner one sealed and marked "Business Proprietary Information—To be opened only by [name of recipient]", and the outer one sealed and not marked as containing BPI;

(7) Comply with the provision of this APO and section 207.7 of the Commission's rules;

(8) Make true and accurate representations in the authorized applicant's application and promptly notify the Secretary of any changes that occur after the submission of the application and that affect the representations made in the application (*e.g.*, change in personnel assigned to the investigation);

(9) Report promptly and confirm in writing to the Secretary any possible breach of the APO; and

(10) Acknowledge that breach of the APO may subject the authorized applicant and other persons to such sanctions or other actions as the Commission deems appropriate including the administrative sanctions

*Federal Register* / Vol. 65, No. 92 / Thursday, May 11, 2000 / Notices

and actions set out in this APO. The APO further provides that breach of protective order may subject an applicant to:

(1) Disbarment from practice in any capacity before the Commission along with such person's partners, associates, employer, and employees, for up to seven years following publication of a determination that the order has been breached;

(2) Referral to the United States Attorney;

(3) In the case of an attorney, accountant, or other professional, referral to the ethics panel of the appropriate professional association;

(4) Such other administrative sanctions as the Commission determines to be appropriate, including public release of or striking from the record any information or briefs submitted by, or on behalf of, such person or the party he represents; denial of further access to business proprietary information in the current or any future investigations before the Commission; and issuance of a public or private letter of reprimand; and

(5) Such other actions, including but not limited to, a warning letter, as the Commission determines to be appropriate.

Commission employees are not signatories to the Commission's APOs and do not obtain access to BPI through APO procedures. Consequently, they are not subject to the requirements of the APO with respect to the handling of BPI. However, Commission employees are subject to strict statutory and regulatory constraints concerning BPI, and face potentially severe penalties for noncompliance. *See* 18 U.S.C. 1905; Title 5, U.S. Code; and Commission personnel policies implementing the statutes. Although the Privacy Act (5 U.S.C. 552a) limits the Commission's authority to disclose any personnel action against agency employees, this should not lead the public to conclude that no such actions have been taken.

An important provision of the Commission's rules relating to BPI is the "24-hour" rule. This rule provides that parties have one business day after the deadline for filing documents containing BPI to file a public version of the document. The rule also permits changes to the bracketing of information in the proprietary version within this one-day period. No changes—other than changes in bracketing—may be made to the proprietary version. The rule was intended to reduce the incidence of APO breaches caused by inadequate bracketing and improper placement of BPI. The Commission urges parties to make use of the rule. If

a party wishes to make changes to a document other than bracketing, such as typographical changes or other corrections, the party must ask for an extension of time to file an amendment document pursuant to section 201.14(b)(2) of the Commission's rules.

## II. Investigations of Alleged APO Breaches

Upon finding evidence of a breach or receiving information that there is a reason to believe one has occurred, the Commission Secretary notifies relevant offices in the agency that an APO breach investigation file has been opened. Upon receiving notification from the Secretary, the Office of General Counsel (OGC) begins to investigate the matter. The OGC prepares a letter of inquiry to be sent to the alleged breacher over the Secretary's signature to ascertain the alleged breacher's views on whether a breach has occurred. If, after reviewing the response and other relevant information, the Commission determines that a breach has occurred, the Commission often issues a second letter asking the breacher to address the questions of mitigating or aggravating circumstances and possible sanctions or other actions. The Commission then determines what action to take in response to the breach. In some cases, the Commission has determined that although a breach has occurred, sanctions are not warranted, and therefore has found it unnecessary to issue a second letter concerning what sanctions might be appropriate. Instead, it issues a warning letter to the individual. The Commission retains sole authority to determine whether a breach has occurred and, if so, the appropriate action to be taken.

The records of Commission investigations of alleged APO breaches in antidumping and countervailing duty cases are not publicly available and are exempt from disclosure under the Freedom of Information Act, 5 U.S.C. 552, section 135(b) of the Customs and Trade Act of 1990, and 19 U.S.C. 1677f(g).

The breach most frequently investigated by the Commission involves the APO's prohibition on the dissemination of BPI to unauthorized persons. Such dissemination usually occurs as the result of failure to delete BPI from public versions of documents filed with the Commission or transmission of proprietary versions of documents to unauthorized recipients. Other breaches have included: the failure to bracket properly BPI in proprietary documents filed with the Commission; the failure to report immediately known violations of an

APO; and the failure to supervise adequately non-legal personnel in the handling of BPI.

Counsel participating in Title VII investigations have recently reported to the Commission two potential breaches involving the electronic transmission of public versions of documents. In both cases, the document transmitted appears to be a public document with BPI omitted from brackets. However, the BPI is actually retrievable by manipulating codes in the computer software programs. The Commission is currently conducting investigations of these potential breaches and has not made any determination at this time.

The Commission advised in the preamble to the notice of proposed rulemaking in 1990 that it will permit authorized applicants a certain amount of discretion in choosing the most appropriate method of safeguarding the confidentiality of the information. However, the Commission cautioned authorized applicants that they would be held responsible for safeguarding the confidentiality of all BPI to which they are granted access and warned applicants about the potential hazards of storage on hard disk. The caution in that preamble is restated here:

[T]he Commission suggests that certain safeguards would seem to be particularly useful. When storing business proprietary information on computer disks, for example, storage on floppy disks rather than hard disks is recommended, because deletion of information from a hard disk does not necessarily erase the information, which can often be retrieved using a utilities program. Further, use of business proprietary information on a computer with the capability to communicate with users outside the authorized applicant's office incurs the risk of unauthorized access to the information through such communication. If a computer malfunctions, all business proprietary information should be erased from the machine before it is removed from the authorized applicant's office for repair. While no safeguard program will insulate an authorized applicant from sanctions in the event of a breach of the administrative protective order, such a program may be a mitigating factor. Preamble to notice of proposed rulemaking, 55 Fed. Reg. 24,100, 21,103 (June 14, 1990).

Sanctions for APO violations serve two basic interests: (a) preserving the confidence of submitters of BPI in the Commission as a reliable protector of BPI; and (b) disciplining breachers and deterring future violations. As the Conference Report to the Omnibus Trade and Competitiveness Act of 1988 observed, "the effective enforcement of limited disclosure under administrative protective order depends in part on the extent to which private parties have

**30436**        **Federal Register** / Vol. 65, No. 92 / Thursday, May 11, 2000 / Notices

confidence that there are effective sanctions against violation.'' H.R. Conf. Rep. No. 576, 100th Cong., 1st Sess. 623 (1988).

The Commission has worked to develop consistent jurisprudence, not only in determining whether a breach has occurred, but also in selecting an appropriate response. In determining the appropriate response, the Commission generally considers mitigating factors such as the unintentional nature of the breach, the lack of prior breaches committed by the breaching party, the corrective measures taken by the breaching party, and the promptness with which the breaching party reported the violation to the Commission. The Commission also considers aggravating circumstances, especially whether persons not under the APO actually read the BPI. The Commission considers whether there are prior breaches by the same person or persons in other investigations and multiple breaches by the same person or persons in the same investigation.

The Commission's rules permit economists or consultants to obtain access to BPI under the APO if the economist or consultant is under the direction and control of an attorney under the APO, or if the economist or consultant appears regularly before the Commission and represents an interested party who is a party to the investigation. 19 CFR 207.7(a)(3)(B) and (C). Economists and consultants who obtain access to BPI under the APO under the direction and control of an attorney nonetheless remain individually responsible for complying with the APO. In appropriate circumstances, for example, an economist under the direction and control of an attorney may be held responsible for a breach of the APO by failing to redact APO information from a document that is subsequently filed with the Commission and served as a public document. This is so even though the attorney exercising direction or control over the economist or consultant may also be held responsible for the breach of the APO.

### III. Specific Investigations in Which Breaches Were Found

The Commission presents the following case studies to educate users about the types of APO breaches found by the Commission. The case studies provide the factual background, the actions taken by the Commission, and the factors considered by the Commission in determining the appropriate actions. The Commission has not included some of the specific facts in the descriptions of

investigations where disclosure of such facts could reveal the identity of a particular breacher. Thus, in some cases, apparent inconsistencies in the facts set forth in this notice result from the Commission's inability to disclose particular facts more fully.

*Case 1.* At the direction of the lead attorney in an investigation, a law firm secretary sent copies of a hearing transcript to three of the law firm's clients who were nonsignatories to the APO. The lead attorney became aware of a potential breach of the APO when one of the clients advised him that he had received the *in camera* version of the hearing transcript. The attorney made arrangements to have one transcript returned without being reviewed and a second returned without the envelope being opened. The attorney had Federal Express intercept the third copy before it was delivered; it was returned unopened. The attorney informed the Commission's Secretary ten days after becoming aware of the potential breach. The Commission determined that the lead attorney and a secretary had breached the APO by transmitting the *in camera* transcript of the Commission hearing to persons who were not signatories of the APO. In reaching its decision to issue warning letters to the attorney and the secretary, the Commission considered that this was the only breach in which they had been involved, the breach was unintentional, prompt action was taken to remedy the breach, and there was no information available to suggest that the BPI disclosed was actually reviewed by persons not already on the APO. In addition, the Commission noted in the warning letter to the secretary that she had been acting under the direction of an attorney. The 10-day delay in advising the Commission of the breach was mitigated by the fact that the attorney had been out of the country and prompt action had been taken to retrieve the documents. Noting that the breach arose from a systematic omission of procedures at the law firm for checking Commission documents for BPI, the Commission recommended that the attorney and the firm review their practices for handling Commission documents under the Commission's administrative protective order procedures in order to prevent a recurrence of this type of incident. The Commission determined that the other attorney in the law firm who was a signatory of the APO did not breach the APO.

*Case 2.* An attorney for a party to a Commission investigation informed the Commission by letter that a lead attorney representing another party to

the investigation failed to comply with the return or destruction requirements of the APO. Specifically, the lead attorney failed to destroy the APO documents within 60 days after completion of the investigation; he failed to provide certification of destruction from all attorneys in his firm on the APO; and he provided a certificate for an attorney who was not on the APO. The lead attorney did file a certificate of destruction more than two years later than required by the APO.

In responding to the Commission's letter of inquiry, the attorney admitted that there had been a technical violation of the APO, but he explained that the material had been mistakenly retained during the period that the Department of Commerce investigation was under appeal. During that time the material had been secured in a locked file cabinet, no unauthorized persons viewed the material, and it was destroyed promptly at the conclusion of the Commerce appeal process. He also explained that one attorney had left the firm and was unavailable to provide a certificate of destruction. The non-APO attorney who had signed a certificate of destruction actually had no access to the APO materials.

The Commission determined that a breach had occurred for failing to meet the deadlines in the APO to return or destroy and for failing to certify to the destruction of the materials issued to him under the APO. The Commission noted that the deadlines in the APO are clearly stated and the waiver of the 60-day destruction or return deadline is provided for only in the case of an appeal of the Commission determination, not for an appeal of a Commerce determination. The Commission issued a private letter of reprimand to the attorney. The letter dictated additional restrictions and requirements with which the lead attorney must comply until the record of the breach is expunged, two years from the date of the private letter of reprimand. In reaching its decision on the sanction, the Commission considered that this was the third APO breach by this attorney within a short period of time and that this attorney appears before the Commission on a regular basis. Noting that the breach did not appear to have involved willful misbehavior or gross negligence, it was decided that a public letter of reprimand was not called for in that instance. The attorney was warned, however, that if he is found to have committed another APO breach before his prior breaches are expunged, the Commission would consider a more public form of sanction.

*Case 3.* Counsel in an investigation filed the public version of a document which contained BPI. The BPI had not been bracketed in the confidential version of the brief, and, therefore, was not redacted from the public version of the document. Once counsel became aware of the potential breach, they immediately contacted counsel identified on both the public and APO service lists and instructed them to destroy the pages containing the unredacted BPI. On the next business day, counsel notified the Commission's Secretary of the possible breach and filed corrected pages with the parties and with the Commission.

The Commission determined that two of the three attorneys who signed the document breached the APO by failing to redact BPI from a public version of the document. In making its determination to issue a private letter of reprimand to the lead attorney, the Commission considered that, although the breaches appeared to have been inadvertent and the attorney made prompt efforts to limit the possibility of disclosure to persons not already under the APO, the attorney was involved in multiple breaches over a relatively short period.

In determining not to sanction the second attorney, but instead to issue a letter of warning to that attorney, the Commission considered that this was the only breach in which this attorney had been involved, the breach was unintentional, and that prompt action was taken to remedy the breach.

The Commission determined that the third attorney whose name appeared on the document did not breach the APO because he did not have any responsibility in the preparation or filing of the document.

*Case 4.* Counsel representing a party to an investigation filed a public document which contained a page from which bracketed information had not been redacted. Counsel discovered the error, contacted the Commission's Office of the Secretary the morning after the filing, and corrected the public version of the document before it was placed on file for public inspection. Counsel stated in their affidavits that the error was discovered and corrected prior to service of the public version on the other parties to the investigation, so that no unauthorized person actually saw business proprietary information. In their response to the Commission inquiry, counsel contended that no breach occurred because, although the information in question was bracketed in the documents they cited, it was publicly available from other sources.

The Commission determined that three attorneys breached the APO. Two of the attorneys failed to redact certain bracketed information which contained specific statements not publicly available. They did not breach the APO with regard to their failure to redact information which was in the public domain at the time they filed their document with the Commission. The Commission determined that the third attorney, the lead attorney, breached the APO by failing to provide adequate supervision over the handling of BPI or to delegate supervisory authority in a reasonable manner. In determining to issue private letters of reprimand to the three attorneys, the Commission considered that the one of the attorneys was involved in three separate breaches and two of the attorneys were involved in two separate breaches of Commission APOs within a short period of time. Mitigating factors were that they reported and corrected the breach promptly and that the firm strengthened its APO procedures subsequent to the breaches. With regard to the lead attorney, the Commission considered that delegating final authority for APO compliance to an attorney who had committed two breaches over a short period of time and a junior attorney who had recently committed an APO breach was not reasonable when there was another experienced attorney available who could have overseen their work. Because one of the attorneys had been involved in three separate breaches over a short period of time and other attorneys in his firm had also been involved in multiple breaches during the same period, the Commission required that the attorney, prior to his next appearance in a Commission investigation, prepare and conduct an APO compliance class for all firm attorneys and staff, and submit to the Commission any materials used in the class and certifications that the class occurred and that all such attorneys and staff attended. The Commission determined that an attorney and a law clerk who were not involved in the preparation of the document did not breach the APO.

*Case 5.* An attorney and an economic consultant representing a party in a Commission investigation filed a public document which contained unbracketed and undeleted BPI. The potential breach was discovered by both the Commission staff and the counsel on the day the document was filed, and counsel took immediate action to retrieve all of the service copies of the unbracketed document and destroy them. The error was discovered and remedial action was

taken quickly enough that the document filed with the Commission was not made available to the public either as hard copy or through the electronic system.

The Commission determined that the attorney and the economic consultant employed by the law firm breached the APO by not protecting BPI. They mislabeled the document containing BPI as public; they failed to place a warning on each page of the document that contained BPI; and they failed to bracket the BPI and remove it from a public version of the document. In reaching its breach determination, the Commission considered that failure to follow the APO rules and thereby leaving BPI unprotected and potentially available to be disclosed is sufficient to constitute a breach.

The Commission did not issue a sanction but instead issued warning letters to the attorney and economic consultant. In reaching its decision on sanctions, the Commission considered that the breach was unintentional, neither the attorney nor the economist had previously breached a Commission APO, and the law firm acted quickly to mitigate any harmful effects of the breach. The Commission determined that two attorneys, one of whom was the lead attorney, did not breach the APO because they were not involved in the preparation, review, signing or filing of the document. In its letter to the lead attorney, the Commission acknowledged his immediate action to mitigate the effects of the errors which led to the breach.

*Case 6.* An associate with a law firm representing a party to an investigation prepared an outline of testimony for a client/witness who was a nonsignatory to the APO and, although he had been advised earlier in the day by the lead attorney that the information was BPI, he included the BPI covered under the APO in the outline. The associate then sent an e-mail message to the client with the outline as an attachment. The potential breach was discovered by the lead attorney when he reviewed the outline the next day, and he immediately took steps to retrieve and replace the outline containing the BPI before it was read by the nonsignatory and to inform the Commission Secretary of the potential breach.

The Commission determined that the associate attorney breached the APO by transmitting to a client who was not a signatory to the APO a document which he prepared that contained BPI. In reaching its decision to issue a warning letter, the Commission considered that this was the only breach in which the attorney was involved, that the breach

was unintentional, that prompt action was taken to remedy the breach, and that neither the client nor any other non-signatory of the APO actually read the document. The Commission determined that the other attorneys on the APO, including the lead attorney, did not breach the APO because they did not participate in the breach.

## IV. Investigations in Which No Breach Was Found

During 1999, the Commission completed two investigations in which no breach was found.

*Case 1.* An attorney in an investigation filed a public version of a document which contained bracketed but unredacted information. The bracketed information consisted of citations to submissions by two parties to the investigation which were contained in a footnote of the document. The Commission determined that the attorney did not breach the APO by failing to redact the information because the information revealed was publicly available, and the only information which could be inferred from the citations was otherwise publicly available.

*Case 2.* An attorney in an investigation obtained under an APO release of documents a copy of a telephone note containing a summary of a conversation between a Commission employee and an employee of the Department of Commerce (Commerce). The attorney called the Commerce employee and discussed the contents of the note with him. The Commerce employee advised the Commission employee of his concern that the attorney's call involved a possible breach of the APO. The Commission determined that the attorney did not breach the APO because the Commerce employee was the person who provided the BPI to the Commission, and an attorney's discussion of information released under the APO with the person or agency from whom the BPI was obtained is permissible.

Issued: May 5, 2000.

By order of the Commission.

**Donna R. Koehnke,**

*Secretary.*

[FR Doc. 00–11878 Filed 5–10–00; 8:45 am]

**BILLING CODE 7020–02–P**

## DEPARTMENT OF JUSTICE

### Immigration and Naturalization Service

[INS No. 2065–00; AG Order No. 2302–2000]

RIN 1115–AE26

### Extension of Designation of Honduras Under Temporary Protected Status Program

**AGENCY:** Immigration and Naturalization Service, Justice.

**ACTION:** Notice.

**SUMMARY:** This notice extends the Attorney General's designation of Honduras under the Temporary Protected Status (TPS) program until July 5, 2001. Eligible nationals of Honduras (or aliens having no nationality who last habitually resided in Honduras) may re-register for TPS and an extension of employment authorization. Re-registration is limited to persons who registered during the initial registration period, which ended on August 20, 1999, or who registered after the date under the late initial registration provision. Persons who are eligible for late initial registration may register for TPS during this extension.

**EFFECTIVE DATES:** The extension of the TPS designation for Honduras is effective July 6, 2000, and will remain in effect until July 5, 2001. The 30-day re-registration period begins May 11, 2000 and will remain in effect until June 12, 2000.

**FOR FURTHER INFORMATION CONTACT:** Michael Hardin, Residence and Status Services Branch, Adjudications, Immigration and Naturalization Service, Room 3214, 425 I Street, NW., Washington, DC 20536, telephone (202) 514–4754.

**SUPPLEMENTARY INFORMATION:**

### What Authority Does the Attorney General Have To Extend the Designation of Honduras Under the TPS Program?

Section 244(b)(3)(A) of the Immigration and Nationality Act (Act) states that at least 60 days before the end of an extension or a designation, the Attorney General must review conditions in the designated foreign state. 8 U.S.C. 1254a(b)(3)(A). If the Attorney General determines that the foreign state continues to meet the conditions for designation, the period of designation is extended, pursuant to section 244(b)(3)(C) of the Act. 8 U.S.C. 1254a(b)(3)(C). Through such an extension, TPS is available only to persons who have been continuously physically present since January 5, 1999, and have continuously resided in

the United States from December 30, 1998.

### Why Did the Attorney General Decide to Extend the TPS Designation for Honduras?

On January 5, 1999, the Attorney General initially designated Honduras for TPS for a period of 18 months. 64 FR 524 (Jan. 5, 1999). The Departments of State and Justice have recently reviewed conditions within Honduras. The review resulted in a consensus that a 12-month extension is warranted. The reasons for the extension are explained in a State Department memorandum that states: "The conditions which led to the original designation are less severe, but continue to cause substantial disruption to living conditions in Honduras." The memorandum also states that "[a]ccording to best estimates, roughly half of the destruction in Honduras remains unaddressed, and 12,000 people remain homeless while many more are in temporary shelters."

The State Department memorandum concludes that reconstruction efforts should make significant progress during the 2000 calendar year. An Immigration and Naturalization Service memorandum concurs with the State Department, finding that Honduras has made little progress in recovering from Hurricane Mitch and that the minor reconstruction that has taken place has not sufficiently countered the devastation to warrant the termination of TPS. For example, the memorandum reports that "[i]n many cases, survivors of Mitch are in the same situation they were in a year ago with estimates of between 30,000 and 250,000 remaining in temporary shelters surviving on provisions from the World Food Program."

Based on these recommendations, the Attorney General finds the situation in Honduras meets the conditions for extension under section 244(b)(3)(C) of the Act. 8 U.S.C. 1254a(b)(3)(C). There continues to be a substantial, but temporary, disruption of living conditions in Honduras as a result of environmental disaster, and Honduras continues to be unable, temporarily, to handle adequately the return of its nationals. 8 U.S.C. 1254a(b)(1)(B)(i)–(ii). Therefore, the review failed to show that country conditions have improved to a degree that supports termination. Even in cases where conditions have improved, the Act provides for automatic extension in the absence of a determination by the Attorney General that country conditions no longer support a TPS designation. Since the Attorney General did not determine that

problems to be addressed, and objectives for the Program. BDAC provides a forum to help ensure public participation, and will review reports and other materials prepared by CALFED staff. BDAC has established a subcommittee called the Ecosystem Roundtable to provide input on annual workplans to implement ecosystem restoration projects and programs.

Minutes of the meeting will be maintained by the Program, Suite 1155, 1416 Ninth Street, Sacramento, CA 95814, and will be available for public inspection during regular business hours, Monday through Friday within 30 days following the meeting.

Dated: May 11, 2001.

**Lowell F. Ploss,**

*Deputy Regional Director, Mid-Pacific Region.*

[FR Doc. 01–12604 Filed 5–17–01; 8:45 am]

**BILLING CODE 4310–94–M**

---

**INTERNATIONAL TRADE COMMISSION**

**Summary of Commission Practice Relating to Administrative Protective Orders**

**AGENCY:** International Trade Commission.

**ACTION:** Summary of Commission practice relating to administrative protective orders.

**SUMMARY:** Since February 1991, the U.S. International Trade Commission ("Commission") has issued an annual report on the status of its practice with respect to violations of its administrative protective orders ("APOs") in investigations under Title VII of the Tariff Act of 1930 in response to a direction contained in the Conference Report to the Customs and Trade Act of 1990. Over time, the Commission has added to its report discussions of APO breaches in Commission proceedings other than Title VII and violations of the Commission's rule on bracketing business proprietary information ("BPI")(the "24-hour rule"), 19 CFR 207.3(c). This notice provides a summary of investigations of breaches in Title VII investigations completed during calendar year 2000. There were no completed investigations of breaches for other Commission proceedings or for 24-hour rule violations during that period. The Commission intends that this report educate representatives of parties to Commission proceedings as to some specific types of APO breaches encountered by the Commission and the corresponding types of actions the Commission has taken.

**FOR FURTHER INFORMATION CONTACT:**
Carol McCue Verratti, Esq., Office of the General Counsel, U.S. International Trade Commission, telephone (202) 205–3088. Hearing impaired individuals are advised that information on this matter can be obtained by contacting the Commission's TDD terminal at (202) 205–1810. General information concerning the Commission can also be obtained by accessing its Internet server (http://www.usitc.gov).

**SUPPLEMENTARY INFORMATION:** Representatives of parties to investigations conducted under Title VII of the Tariff Act of 1930 may enter into APOs that permit them, under strict conditions, to obtain access to BPI of other parties. See 19 U.S.C. 1677f; 19 CFR 207.7. The discussion below describes APO breach investigations that the Commission has completed, including a description of actions taken in response to breaches. The discussion covers breach investigations completed during calendar year 2000.

Since 1991, the Commission has published annually a summary of its actions in response to violations of Commission APOs and the 24-hour rule. See 56 FR 4846 (Feb. 6, 1991); 57 FR 12,335 (Apr. 9, 1992); 58 FR 21,991 (Apr. 26, 1993); 59 FR 16,834 (Apr. 8, 1994); 60 FR 24,880 (May 10, 1995); 61 FR 21,203 (May 9, 1996); 62 FR 13,164 (March 19, 1997); 63 FR 25064 (May 6, 1998); 64 FR 23355 (April 30, 1999); 65 FR 30434 (May 11, 2000). This report does not provide an exhaustive list of conduct that will be deemed to be a breach of the Commission's APOs. APO breach inquiries are considered on a case-by-case basis.

As part of the effort to educate practitioners about the Commission's current APO practice, the Commission Secretary issued in March 2001 a third edition of *An Introduction to Administrative Protective Order Practice in Import Injury Investigations* (Pub. No. 3403). This document is available upon request from the Office of the Secretary, U.S. International Trade Commission, 500 E Street, SW., Washington, DC 20436, tel. (202) 205–2000.

**I. In General**

The current APO form for antidumping and countervailing duty investigations, which the Commission has used since March 1995, requires the applicant to swear that he or she will:

(1) Not divulge any of the BPI obtained under the APO and not otherwise available to him, to any person other than—

(i) personnel of the Commission concerned with the investigation,

(ii) the person or agency from whom the BPI was obtained,

(iii) a person whose application for disclosure of BPI under this APO has been granted by the Secretary, and

(iv) other persons, such as paralegals and clerical staff, who (a) are employed or supervised by and under the direction and control of the authorized applicant or another authorized applicant in the same firm whose application has been granted; (b) have a need thereof in connection with the investigation; (c) are not involved in competitive decisionmaking for the interested party which is a party to the investigation; and (d) have submitted to the Secretary a signed Acknowledgment for Clerical Personnel in the form attached hereto (the authorized applicant shall sign such acknowledgment and will be deemed responsible for such persons' compliance with the APO);

(2) Use such BPI solely for the purposes of the Commission investigation [or for binational panel review of such Commission investigation or until superceded by a judicial protective order in a judicial review of the proceeding];

(3) Not consult with any person not described in paragraph (1) concerning BPI disclosed under this APO without first having received the written consent of the Secretary and the party or the representative of the party from whom such BPI was obtained;

(4) Whenever materials (*e.g.*, documents, computer disks, etc.) containing such BPI are not being used, store such material in a locked file cabinet, vault, safe, or other suitable container (N.B.: storage of BPI on so-called hard disk computer media is to be avoided, because mere erasure of data from such media may not irrecoverably destroy the BPI and may result in violation of paragraph C of the APO);

(5) Serve all materials containing BPI disclosed under this APO as directed by the Secretary and pursuant to section 207.7(f) of the Commission's rules;

(6) Transmit such document containing BPI disclosed under this APO:

(i) with a cover sheet identifying the document as containing BPI,

(ii) with all BPI enclosed in brackets and each page warning that the document contains BPI,

(iii) if the document is to be filed by a deadline, with each page marked "Bracketing of BPI not final for one business day after date of filing," and

(iv) if by mail, within two envelopes, the inner one sealed and marked "Business Proprietary Information—To

be opened only by [name of recipient]'', and the outer one sealed and not marked as containing BPI;

(7) Comply with the provision of this APO and section 207.7 of the Commission's rules;

(8) Make true and accurate representations in the authorized applicant's application and promptly notify the Secretary of any changes that occur after the submission of the application and that affect the representations made in the application (e.g., change in personnel assigned to the investigation);

(9) Report promptly and confirm in writing to the Secretary any possible breach of the APO; and

(10) Acknowledge that breach of the APO may subject the authorized applicant and other persons to such sanctions or other actions as the Commission deems appropriate including the administrative sanctions and actions set out in this APO. The APO further provides that breach of a protective order may subject an applicant to:

(1) Disbarment from practice in any capacity before the Commission along with such person's partners, associates, employer, and employees, for up to seven years following publication of a determination that the order has been breached;

(2) Referral to the United States Attorney;

(3) In the case of an attorney, accountant, or other professional, referral to the ethics panel of the appropriate professional association;

(4) Such other administrative sanctions as the Commission determines to be appropriate, including public release of or striking from the record any information or briefs submitted by, or on behalf of, such person or the party he represents; denial of further access to business proprietary information in the current or any future investigations before the Commission; and issuance of a public or private letter of reprimand; and

(5) Such other actions, including but not limited to, a warning letter, as the Commission determines to be appropriate.

Commission employees are not signatories to the Commission's APOs and do not obtain access to BPI through APO procedures. Consequently, they are not subject to the requirements of the APO with respect to the handling of BPI. However, Commission employees are subject to strict statutory and regulatory constraints concerning BPI, and face potentially severe penalties for noncompliance. *See* 18 U.S.C. 1905; Title 5, U.S. Code; and Commission

personnel policies implementing the statutes. Although the Privacy Act (5 U.S.C. 552a) limits the Commission's authority to disclose any personnel action against agency employees, this should not lead the public to conclude that no such actions have been taken.

An important provision of the Commission's rules relating to BPI is the "24-hour" rule. This rule provides that parties have one business day after the deadline for filing documents containing BPI to file a public version of the document. The rule also permits changes to the bracketing of information in the proprietary version within this one-day period. No changes—other than changes in bracketing—may be made to the proprietary version. The rule was intended to reduce the incidence of APO breaches caused by inadequate bracketing and improper placement of BPI. The Commission urges parties to make use of the rule. If a party wishes to make changes to a document other than bracketing, such as typographical changes or other corrections, the party must ask for an extension of time to file an amendment document pursuant to section 201.14(b)(2) of the Commission's rules.

## II. Investigations of Alleged APO Breaches

Upon finding evidence of a breach or receiving information that there is a reason to believe one has occurred, the Commission Secretary notifies relevant offices in the agency that an APO breach investigation file has been opened. Upon receiving notification from the Secretary, the Office of General Counsel (OGC) begins to investigate the matter. The OGC prepares a letter of inquiry to be sent to the possible breacher over the Secretary's signature to ascertain the possible breacher's views on whether a breach has occurred. If, after reviewing the response and other relevant information, the Commission determines that a breach has occurred, the Commission often issues a second letter asking the breacher to address the questions of mitigating or aggravating circumstances and possible sanctions or other actions. The Commission then determines what action to take in response to the breach. In some cases, the Commission determines that although a breach has occurred, sanctions are not warranted, and therefore has found it unnecessary to issue a second letter concerning what sanctions might be appropriate. Instead, it issues a warning letter to the individual. The Commission retains sole authority to determine whether a breach has occurred and, if so, the appropriate action to be taken.

The records of Commission investigations of alleged APO breaches in antidumping and countervailing duty cases are not publicly available and are exempt from disclosure under the Freedom of Information Act, 5 U.S.C. 552, section 135(b) of the Customs and Trade Act of 1990, and 19 U.S.C. 1677f(g).

The breach most frequently investigated by the Commission involves the APO's prohibition on the dissemination of BPI to unauthorized persons. Such dissemination usually occurs as the result of failure to delete BPI from public versions of documents filed with the Commission or transmission of proprietary versions of documents to unauthorized recipients. Other breaches have included: the failure to bracket properly BPI in proprietary documents filed with the Commission; the failure to report immediately known violations of an APO; and the failure to supervise adequately non-legal personnel in the handling of BPI.

Counsel participating in Title VII investigations have reported to the Commission potential breaches involving the electronic transmission of public versions of documents. In these cases, the document transmitted appears to be a public document with BPI omitted from brackets. However, the BPI is actually retrievable by manipulating codes in software. The Commission has recently completed an investigation of such a breach that will be reported in the annual **Federal Register** notice for calendar year 2001. In that case, the Commission found that the electronic transmission of a public document containing BPI in a recoverable form was a breach of the APO.

The Commission advised in the preamble to the notice of proposed rulemaking in 1990 that it will permit authorized applicants a certain amount of discretion in choosing the most appropriate method of safeguarding the confidentiality of the BPI. However, the Commission cautioned authorized applicants that they would be held responsible for safeguarding the confidentiality of all BPI to which they are granted access and warned applicants about the potential hazards of storage on hard disk. The caution in that preamble is restated here:

[T]he Commission suggests that certain safeguards would seem to be particularly useful. When storing business proprietary information on computer disks, for example, storage on floppy disks rather than hard disks is recommended, because deletion of information from a hard disk does not necessarily erase the information, which can often be retrieved using a utilities program.

*Federal Register* / Vol. 66, No. 97 / Friday, May 18, 2001 / Notices

Further, use of business proprietary information on a computer with the capability to communicate with users outside the authorized applicant's office incurs the risk of unauthorized access to the information through such communication. If a computer malfunctions, all business proprietary information should be erased from the machine before it is removed from the authorized applicant's office for repair. While no safeguard program will insulate an authorized applicant from sanctions in the event of a breach of the administrative protective order, such a program may be a mitigating factor. Preamble to notice of proposed rulemaking, 55 FR 24,100, 21,103 (June 14, 1990).

In 2000, the Commission conducted four investigations of instances in which members of a law firm or consultants working with a firm were granted access to APO materials by the firm although they were not APO signatories. In all these cases, the firm and the person using the BPI mistakenly believed an APO application had been filed for that person. The Commission has completed three of these investigations to date and determined in all three cases that the person who was a non-signatory, and therefore did not agree to be bound by the APO, could not be found to have breached the APO. These persons could be sanctioned, however, under Commission rule 201.15 (19 CFR 201.15) for good cause shown. In all three cases, the Commission decided that the non-signatory was a person who appeared regularly before the Commission and was aware of the requirements and limitations related to APO access and should have verified their APO status before using the BPI. In all three cases the Commission issued warning letters because it was the first time the persons in question were subject to possible sanctions under section 201.15 and there were no aggravating circumstances. These investigations will be individually summarized in the **Federal Register** notice summarizing cases completed in 2001.

Sanctions for APO violations serve two basic interests: (a) preserving the confidence of submitters of BPI that the Commission is a reliable protector of BPI; and (b) disciplining breachers and deterring future violations. As the Conference Report to the Omnibus Trade and Competitiveness Act of 1988 observed, "the effective enforcement of limited disclosure under administrative protective order depends in part on the extent to which private parties have confidence that there are effective sanctions against violation." H.R. Conf. Rep. No. 576, 100th Cong., 1st Sess. 623 (1988).

The Commission has worked to develop consistent jurisprudence, not only in determining whether a breach has occurred, but also in selecting an appropriate response. In determining the appropriate response, the Commission generally considers mitigating factors such as the unintentional nature of the breach, the lack of prior breaches committed by the breaching party, the corrective measures taken by the breaching party, and the promptness with which the breaching party reported the violation to the Commission. The Commission also considers aggravating circumstances, especially whether persons not under the APO actually read the BPI. The Commission considers whether there are prior breaches by the same person or persons in other investigations and multiple breaches by the same person or persons in the same investigation.

The Commission's rules permit economists or consultants to obtain access to BPI under the APO if the economist or consultant is under the direction and control of an attorney under the APO, or if the economist or consultant appears regularly before the Commission and represents an interested party who is a party to the investigation. 19 CFR 207.7(a)(3) (B) and (C). Economists and consultants who obtain access to BPI under the APO under the direction and control of an attorney nonetheless remain individually responsible for complying with the APO. In appropriate circumstances, for example, an economist under the direction and control of an attorney may be held responsible for a breach of the APO by failing to redact APO information from a document that is subsequently filed with the Commission and served as a public document. This is so even though the attorney exercising direction or control over the economist or consultant may also be held responsible for the breach of the APO.

## III. Specific Investigations in Which Breaches Were Found

The Commission presents the following case studies to educate users about the types of APO breaches found by the Commission. The case studies provide the factual background, the actions taken by the Commission, and the factors considered by the Commission in determining the appropriate actions. The Commission has not included some of the specific facts in the descriptions of investigations where disclosure of such facts could reveal the identity of a particular breacher. Thus, in some cases, apparent inconsistencies in the facts set forth in this notice result from the Commission's inability to disclose particular facts more fully.

*Case 1:* One associate attorney breached an APO by failing to redact BPI from the public version of his firm's Final Comments. Although the BPI was aggregate data, it had been bracketed in the Commission's staff report because it could be used with other publicly available data to determine the market share of one company. The BPI in the confidential version of the firm's Final Comments was properly bracketed.

The Commission Secretary discovered the breach. Letters of inquiry were sent to three other attorneys in addition to the associate because their names were on the Final Comments. Responses to the letters showed that the associate had been responsible for the error and had been the only attorney to sign the public version of the Final Comments. Therefore, the Commission determined that the associate attorney had breached the APO and the three other attorneys had not. The Commission issued a private letter of reprimand to the associate because the record did not clearly show that the BPI had not been reviewed by a non-signatory.

Three parties on the public service list, who were not signatories to the APO, received the Final Comments. One of these parties had forwarded the document to three client officials, one of whom had made copies. Although they destroyed all copies of the page with the BPI, their certifications did not state that they had not reviewed the document.

In reaching its decision, the Commission also considered that the breach had been inadvertent and that the associate made prompt efforts to limit the possibility of disclosure to persons not already under the APO. This was the associate's first breach of an APO.

*Cases 2, 3, and 4:* A law firm, new to Commission practice, became involved in a series of breaches in one investigation. Case 2 was a breach in which one of the partners had submitted BPI obtained under the Commission's APO to the Commerce Department. Before that information was retrieved, it had been read by individuals who were non-signatories to the Commission's APO. Case 3 involved two breaches. The first breach was caused by a junior associate attorney serving the BPI version of the prehearing brief on parties who were not APO signatories. In the second breach, the same associate served the public version of the post hearing brief while failing to redact one instance of BPI. Case 4 was a breach in which the law firm and the economic consulting firm working with the law

firm on the investigation failed to file certificates of destruction or return of the BPI obtained under the APO.

The Commission found that all five of the attorneys in the law firm breached the APO. Two of the attorneys were given public letters of reprimand with six months suspension from access to BPI. Three of the attorneys, including the associate, were given private letters of reprimand. For final breach, the economic consultants were issued warning letters.

The Commission decided on the sanctions it imposed after considering the role of each of the attorneys in the preparation of the prehearing and posthearing briefs and the failure of the partners and senior attorneys to adequately supervise the junior associate and to develop procedures for the handling of BPI to avoid all of these breaches.

The Commission found that the first breach, sending Commission BPI to Commerce, was the sole responsibility of one attorney who is a partner practicing for many years. The second and third breaches involving the pre hearing and post hearing briefs were the responsibility of the associate, the lead attorney, and a partner of the firm. The lead attorney prepared the briefs with the assistance of the associate and the partner reviewed the documents. The associate was given the sole responsibility for proofreading, cite checking, implementing final changes, filing, and serving the documents. Both the lead attorney and the partner were issued a public letter of reprimand and were suspended from access to BPI for six months because they delegated primary responsibility for APO compliance to a junior attorney and then failed to provide appropriate supervision of that attorney, which resulted in two APO breaches; they repeatedly failed to remedy obvious flaws in their firm's procedures for protecting BPI obtained under the APO; and they failed to certify to the return or destruction of the BPI obtained under the APO. The associate was issued a private letter of reprimand for serving a prehearing brief containing BPI on persons not covered by the APO, failing to redact BPI from the public version of the post-hearing brief, failing to remedy flaws in the firm's procedures for protecting BPI, and failing to certify to the return or destruction of the BPI obtained under the APO. The Commission noted that it reached its decision after considering that the associate was involved in multiple breaches over a short period of time and that the associate did not discover the breaches. In deciding on a private letter

of reprimand, the Commission also considered that the breaches appear to have been inadvertent and that the associate made prompt efforts to minimize the public dissemination of BPI.

The partner who transmitted Commission BPI to Commerce was issued a private letter of reprimand. The Commission noted that breach and found him also responsible for the third breach involving the post hearing brief because he failed to remedy flaws in his firm's procedures for protecting BPI. He also failed to certify to the return or destruction of the BPI obtained under the APO.

The Commission issued a private letter of reprimand to the fifth attorney, also a partner. He was found responsible for the third breach for failing to remedy flaws in his firm's procedures for protecting BPI and by failing to certify to the return or destruction of the BPI obtained under the APO.

In the letters to the partners and lead attorney the Commission explained that it recognized the firm's inexperience with Commission practice. Although such inexperience is a mitigating factor for the first breach, that breach put the firm on notice that the Commission's APO rules require a great deal of attention. Inexperience does not excuse the firm's subsequent lack of attention to APO compliance, particularly with regard to the delegation of unsupervised authority over APO matters to a junior attorney, and the continued reliance on that attorney after the attorney had committed one breach. Therefore, the Commission did not consider inexperience after the first breach to be a mitigating factor.

*Case 5:* A law firm legal assistant provided the firm's clients, who were not signatories to the APO, with redacted copies of the confidential version of the pre-hearing brief, which contained BPI that had been left on two pages. The legal assistant had redacted the confidential version of the brief when the assistant was unable to locate the firm's public version of the pre-hearing brief.

The Commission Secretary sent letters of inquiry to three attorneys who were named on the brief. One attorney responded with an affidavit that indicated he had no knowledge and was not involved in the breach. The Commission determined that he was not responsible for the breach. The lead attorney responded by taking responsibility for the breach and providing the Commission with information about the changed APO procedures in the law firm. The lead attorney was the attorney responsible

for maintaining APO compliance by clerical employees, including legal assistants, since he signed the clerical acknowledgement as part of the firm's APO application. The third attorney was the attorney who had directed the legal assistant to provide the clients with copies of the public version of the pre-hearing brief and was for that purpose the immediate supervisor of the legal assistant.

The Commission found the lead attorney, the supervising attorney, and the legal assistant to be responsible for the breach and issued warning letters to all three. The clients who received the brief had not read it before the firm retrieved the brief. In determining to issue warning letters, the Commission also considered the facts that neither the attorneys nor the legal assistant had breached an APO in the previous several years, that the breach was unintentional, and that prompt action was taken to remedy the breach.

*Case 6:* A lead attorney served the BPI version of a pre-hearing brief on a party that was not on the APO. When filing and serving the brief, the attorney had mistakenly printed from his computer and used the public service list. The attorney realized his mistake in the evening on the same day he served the briefs. He contacted the recipient law firm that was not a signatory to the APO the next morning. The law firm immediately returned the unopened envelope containing the brief.

The Commission Secretary sent letters of inquiry to the lead attorney and another attorney whose name was also on the brief. Those attorneys and four other persons on the APO from the firm sent affidavits in response. The response also provided information on new procedures that were developed at the firm to prevent similar breaches in the future. The responses indicated that only the lead attorney participated in the serving of the brief. The Commission found that the lead attorney had breached the APO and issued a warning letter to him. The Commission informed the other attorney who had received a letter of inquiry of its decision that he did not breach the APO.

In determining to issue a warning letter to the lead attorney, the Commission considered the facts that the breach was unintentional, he had no prior breaches, he took prompt action to remedy the breach, and no non-signatory of the APO actually read the document.

*Case 7:* The Commission found two attorneys responsible for a breach in which they served the confidential version of their Final Comments on a firm that was not on the APO. The

Commission issued a warning letter to each of these attorneys.

The more senior of the two attorneys directed the second attorney, a junior associate, to prepare a certificate of service for the BPI version of the final comments. The associate mistakenly retrieved a prior public certificate of service from his computer and changed pertinent dates and headings, but did not verify or modify the names on the list. He presented the certificate of service as the BPI version to the senior attorney who then directed others to copy the BPI version of the final comments and serve it on the parties on the certificate of service.

The senior attorney discovered the mistake the following day when preparing to file the public version of the final comments. He immediately investigated the matter and took action to retrieve the document from the firm that had been served but was not on the APO. He was able to retrieve the document in the unopened, sealed envelope. The non-signatory who had received it declined to open the envelope because its markings showed it contained BPI. The senior attorney also immediately informed the Commission Secretary of the error.

The Secretary sent letters of inquiry to the three attorneys whose names were on the Final Comments. After receiving the initial response to these letters, the Secretary sent a letter of inquiry to the junior associate who was involved. The Commission received affidavits from the four attorneys and seven other personnel subject to the APO. The responses indicated that the one senior attorney and the associate were the only ones involved in the service of the final comments. The responses also provided a description of new procedures that were being implemented to avoid a similar breach in the future.

Based on the information provided, the Commission determined that the senior attorney and the associate were both responsible for the breach. The senior attorney admitted that the junior attorney was inexperienced and should have been supervised more closely. The Commission determined that the other two senior attorneys did not breach the APO because they were not involved in the service of the final comments. The Commission sent them letters informing them of that fact. In deciding to issue warning letters to the senior attorney and the associate, the Commission considered that neither attorney had prior breaches, the breach was unintentional, prompt action was taken to remedy the breach, and no non-signatory actually read the document.

*Case 8:* In a five year review investigation, a law firm filed the public version of a prehearing brief that contained BPI which had been bracketed but not redacted. The BPI was contained in two footnotes in the text of the brief and in a chart in the economic analysis portion of the brief. The public version of the brief had been prepared by an attorney. A economic consultant working with the firm prepared the public version of the economic analysis. In addition, two other attorneys reviewed the brief and another economic consultant reviewed the economic analysis portion of the brief. The Commission determined that all three attorneys and the two consultants breached the APO and issued warning letters to each of them.

One of the attorneys who had reviewed the brief discovered the breach the morning after it had been filed. He immediately contacted the economic consultants, opposing counsel, and the Commission Secretary. The opposing counsel had forwarded the document to three of his clients. However, he was able to retrieve the documents in unopened envelopes and then return the unredacted pages to the attorneys who had filed the brief. Thus, the three non-signatories to whom the brief was sent did not read the BPI.

The Secretary initially sent letters of inquiry to the two attorneys whose names were on the brief and to a third attorney who had signed the certificate of service. The Secretary also sent a letter of inquiry to all of the economic consultants working for the firm who had signed the APO. The lead attorney responded to the letters of inquiry and enclosed affidavits from the APO signatories. The response indicated that the firm will continue its procedure of having two attorneys review a public document for BPI, but will make every effort to conduct the review the day before it is scheduled for filing so a more thorough review is possible.

In deciding to issue warning letters to the three attorneys and the two consultants involved in this breach, the Commission considered the facts that this was the only breach in which they had been involved over the previous several year period, that the breach was unintentional, and that prompt action was taken to remedy the breach.

## IV. Investigation in Which No Breach Was Found

During 2000, the Commission completed one investigation in which no breach was found. A law firm filed the public version of the pre-hearing brief and failed to redact bracketed information. One of the attorneys in the

firm discovered the error, notified the Commission, and retrieved the document from the parties on whom it had been served. The information on the record does not indicate that any non-signatory read the unredacted information. The Commission Secretary sent letters of inquiry to three attorneys at the firm. Two of the attorneys responded in a letter and attached affidavits from the three attorneys and four other employees at the firm who had worked on the matter. The response presented the argument that the unredacted information was not BPI and the attorneys attached pages from the staff report and the Commission's report that contained public numbers the attorneys had used to derive the unredacted information. Based on the information provided by the firm and research that included discussions with the drafters of the two reports about what the information could reveal, the Commission determined that the information was aggregated data that would not reveal information about an individual company and, therefore, it was not BPI. The Commission therefore informed the involved persons that there was no breach of the APO.

Issued: May 14, 2001.

By order of the Commission.

**Donna R. Koehnke,**

*Secretary.*

[FR Doc. 01–12496 Filed 5–17–01; 8:45 am]

**BILLING CODE 7020–02–P**

## INTERNATIONAL TRADE COMMISSION

**[Investigations Nos. 731–TA–888–890 (Final)]**

## Stainless Steel Angle From Japan, Korea, and Spain

### Determinations

On the basis of the record[1] developed in the subject investigations, the United States International Trade Commission determines, pursuant to section 735(b) of the Tariff Act of 1930 (19 U.S.C. 1673d(b)) (the Act), that an industry in the United States is materially injured by reason of imports from Japan, Korea, and Spain of stainless steel angle, provided for in subheading 7222.40.30 of the Harmonized Tariff Schedule of the United States, that have been found by the Department of Commerce to be sold in the United States at less than fair value (LTFV).

---

[1] The record is defined in sec. 207.2(f) of the Commission's Rules of Practice and Procedure (19 CFR 207.2(f)).

**39425**

## DEPARTMENT OF THE INTERIOR

### National Park Service

### Cape Cod National Seashore, South Wellfleet, Massachusetts; Cape Cod National Seashore Advisory Commission, Two Hundred Thirty Eighth Meeting; Notice of Meeting

Notice is hereby given in accordance with the Federal Advisory Committee Act (Pub. L. 92–463, 86 Stat. 770, 5 U.S.C. App 1, section 10), that a meeting of the Cape Cod National Seashore Advisory Commission will be held on Friday, June 21, 2002.

The Commission was reestablished pursuant to Public Law 87–126 as amended by Public Law 105–280. The purpose of the Commission is to consult with the Secretary of the Interior, or his designee, with respect to matters relating to the development of Cape Cod National Seashore, and with respect to carrying out the provisions of sections 4 and 5 of the Act establishing the Seashore.

The Commission members will meet at 1:00 p.m. at Headquarters, Marconi Station, Wellfleet, Massachusetts for the regular business meeting to discuss the following:

1. Adoption of Agenda
2. Approval of minutes of previous meeting (April 26, 2002)
3. Reports of Officers
4. Reports of Subcommittees
Nickerson Fellowship
5. Superintendent's Report
News from Washington
New Beach in Eastham
Construction of Salt Pond Visitor
Center
Penniman House
Highlands Center
Long Term Transportation Planning
Doane Road
6. Old Business
Pheasant Hunting
7. New Business
8. Date and agenda for next meeting
9. Public comment and
10. Adjournment

The meeting is open to the public. It is expected that 15 persons will be able to attend the meeting in addition to Commission members.

Interested persons may make oral/written presentations to the Commission during the business meeting or file written statements. Such requests should be made to the park superintendent at least seven days prior to the meeting. Further information concerning the meeting may be obtained from the Superintendent, Cape Cod National Seashore, 99 Marconi Site Road, Wellfleet, MA 02667.

Dated: May 16, 2002.

**Maria Burks,**
*Superintendent.*
[FR Doc. 02–14337 Filed 6–6–02; 8:45 am]
**BILLING CODE 4310–70–P**

## DEPARTMENT OF THE INTERIOR

### National Park Service

### National Park System Advisory Board; Meeting

**AGENCY:** National Park Service, Interior.

**ACTION:** Notice of Meeting.

Notice is hereby given in accordance with the Federal Advisory Committee Act, 5 U.S.C. Appendix, that the National Park System Advisory Board will meet June 12, 2002, in the Chesapeake Room, of the Swissôtel Washington The Watergate, 2650 Virginia Avenue, NW, Washington, DC. The Board will convene at 8 a.m., and adjourn at 5:30 p.m. During the morning session, National Park Service Director Fran Mainella will address the Board, followed by an orientation session for new members, and the Board's consideration of recommendations regarding the National Park Service process for making determinations of cultural affiliations. In the afternoon, the Board will discuss next steps in implementing the Board's report *Rethinking the National Parks for the 21st Century.*

Other officials of the National Park Service and the Department of the Interior may address the Board, and other miscellaneous topics and reports may be covered. The order of the agenda may be changed, if necessary, to accommodate travel schedules or for other reasons.

Due to the unexpected cancellation of the original meeting space and the additional time required to locate an alternate site, this notice could not be published at least 15 days prior to the meeting date. The National Park Service regrets this delay, but is compelled to hold the meeting as scheduled because of the significant sacrifice rescheduling would require of Board members who have adjusted their schedules to accommodate the proposed meeting date.

The Board meeting will be open to the public. Space and facilities to accommodate the public are limited and attendees will be accommodated on a first-come basis. Anyone may file with the Board a written statement concerning matters to be discussed. The Board may also permit attendees to address the Board, but may restrict the length of the presentations, as necessary to allow the Board to complete its agenda within the allotted time.

Anyone who wishes further information concerning the meeting, or who wishes to submit a written statement, may contact Mr. Loran Fraser, Office of Policy, National Park Service, 1849 C Street, NW, Washington, DC 20240 (telephone 202–208–7456).

Draft minutes of the meeting will be available for public inspection about 12 weeks after the meeting, in room 2414, Main Interior Building, 1849 C Street, NW, Washington, DC.

Dated: June 3, 2002.

**Loran Fraser,**
*Chief, Office of Policy, National Park Service.*
[FR Doc. 02–14388 Filed 6–6–02; 8:45 am]
**BILLING CODE 4310–70–P**

## INTERNATIONAL TRADE COMMISSION

### Summary of Commission Practice Relating to Administrative Protective Orders

**AGENCY:** U.S. International Trade Commission.

**ACTION:** Summary of Commission practice relating to administrative protective orders.

**SUMMARY:** Since February 1991, the U.S. International Trade Commission ("Commission") has issued an annual report on the status of its practice with respect to violations of its administrative protective orders ("APOs") in investigations under Title VII of the Tariff Act of 1930 in response to a direction contained in the Conference Report to the Customs and Trade Act of 1990. Over time, the Commission has added to its report discussions of APO breaches in Commission proceedings other than Title VII and violations of the Commission's rule on bracketing business proprietary information ("BPI") (the "24-hour rule"), 19 CFR 207.3(c). This notice provides a summary of investigations of breaches in Title VII, sections 202 and 204 of the Trade Act of 1974, as amended, and section 337 of the Tariff Act of 1930, as amended, completed during calendar year 2001. There were no completed investigations of 24-hour rule violations during that period. The Commission intends that this report educate representatives of parties to Commission proceedings as to some specific types of APO breaches encountered by the Commission and the corresponding

types of actions the Commission has taken.

**FOR FURTHER INFORMATION CONTACT:**
Carol McCue Verratti, Esq., Office of the General Counsel, U.S. International Trade Commission, telephone (202) 205–3088. Hearing impaired individuals are advised that information on this matter can be obtained by contacting the Commission's TDD terminal at (202) 205–1810. General information concerning the Commission can also be obtained by accessing its Internet server (http://www.usitc.gov).

**SUPPLEMENTARY INFORMATION:**
Representatives of parties to investigations conducted under Title VII of the Tariff Act of 1930, sections 202 and 204 of the Trade Act of 1974, and section 337 of the Tariff Act of 1930, as amended, may enter into APOs that permit them, under strict conditions, to obtain access to BPI of other parties. *See* 19 U.S.C. 1677f; 19 CFR 207.7; 19 U.S.C. 2252(i); 19 CFR 206.17; 19 U.S.C. 1337(n); 19 CFR 210.5, 210.34. The discussion below describes APO breach investigations that the Commission has completed, including a description of actions taken in response to breaches. The discussion covers breach investigations completed during calendar year 2001.

Since 1991, the Commission has published annually a summary of its actions in response to violations of Commission APOs and the 24-hour rule. *See* 56 FR 4846 (Feb. 6, 1991); 57 FR 12,335 (Apr. 9, 1992); 58 FR 21,991 (Apr. 26, 1993); 59 FR 16,834 (Apr. 8, 1994); 60 FR 24,880 (May 10, 1995); 61 FR 21,203 (May 9, 1996); 62 FR 13,164 (March 19, 1997); 63 FR 25064 (May 6, 1998); 64 FR 23355 (April 30, 1999); 65 FR 30434 (May 11, 2000); 66 FR 27685 (May 18, 2001). This report does not provide an exhaustive list of conduct that will be deemed to be a breach of the Commission's APOs. APO breach inquiries are considered on a case-by-case basis.

As part of the effort to educate practitioners about the Commission's current APO practice, the Commission Secretary issued in March 2001 a third edition of *An Introduction to Administrative Protective Order Practice in Import Injury Investigations* (Pub. No. 3403). This document is available upon request from the Office of the Secretary, U.S. International Trade Commission, 500 E Street, SW., Washington, DC 20436, tel. (202) 205–2000.

**I. In General**

The current APO form for antidumping and countervailing duty investigations, which the Commission has used since March 1995, requires the applicant to swear that he or she will:

(1) Not divulge any of the BPI obtained under the APO and not otherwise available to him, to any person other than—

(i) personnel of the Commission concerned with the investigation,

(ii) the person or agency from whom the BPI was obtained,

(iii) a person whose application for disclosure of BPI under this APO has been granted by the Secretary, and

(iv) other persons, such as paralegals and clerical staff, who (a) are employed or supervised by and under the direction and control of the authorized applicant or another authorized applicant in the same firm whose application has been granted; (b) have a need thereof in connection with the investigation; (c) are not involved in competitive decisionmaking for the interested party which is a party to the investigation; and (d) have submitted to the Secretary a signed Acknowledgment for Clerical Personnel in the form attached hereto (the authorized applicant shall sign such acknowledgment and will be deemed responsible for such persons' compliance with the APO);

(2) Use such BPI solely for the purposes of the Commission investigation [or for binational panel review of such Commission investigation or until superceded by a judicial protective order in a judicial review of the proceeding];

(3) Not consult with any person not described in paragraph (1) concerning BPI disclosed under this APO without first having received the written consent of the Secretary and the party or the representative of the party from whom such BPI was obtained;

(4) Whenever materials (*e.g.,* documents, computer disks, etc.) containing such BPI are not being used, store such material in a locked file cabinet, vault, safe, or other suitable container (N.B.: storage of BPI on so-called hard disk computer media is to be avoided, because mere erasure of data from such media may not irrecoverably destroy the BPI and may result in violation of paragraph C of the APO);

(5) Serve all materials containing BPI disclosed under this APO as directed by the Secretary and pursuant to section 207.7(f) of the Commission's rules;

(6) Transmit such document containing BPI disclosed under this APO:

(i) with a cover sheet identifying the document as containing BPI,

(ii) with all BPI enclosed in brackets and each page warning that the document contains BPI,

(iii) if the document is to be filed by a deadline, with each page marked "Bracketing of BPI not final for one business day after date of filing," and

(iv) if by mail, within two envelopes, the inner one sealed and marked "Business Proprietary Information—To be opened only by [name of recipient]", and the outer one sealed and not marked as containing BPI;

(7) Comply with the provision of this APO and section 207.7 of the Commission's rules;

(8) Make true and accurate representations in the authorized applicant's application and promptly notify the Secretary of any changes that occur after the submission of the application and that affect the representations made in the application (*e.g.,* change in personnel assigned to the investigation);

(9) Report promptly and confirm in writing to the Secretary any possible breach of the APO; and

(10) Acknowledge that breach of the APO may subject the authorized applicant and other persons to such sanctions or other actions as the Commission deems appropriate including the administrative sanctions and actions set out in this APO.

The APO further provides that breach of a protective order may subject an applicant to:

(1) Disbarment from practice in any capacity before the Commission along with such person's partners, associates, employer, and employees, for up to seven years following publication of a determination that the order has been breached;

(2) Referral to the United States Attorney;

(3) In the case of an attorney, accountant, or other professional, referral to the ethics panel of the appropriate professional association;

(4) Such other administrative sanctions as the Commission determines to be appropriate, including public release of or striking from the record any information or briefs submitted by, or on behalf of, such person or the party he represents; denial of further access to BPI in the current or any future investigations before the Commission; and issuance of a public or private letter of reprimand; and

(5) Such other actions, including but not limited to, a warning letter, as the Commission determines to be appropriate.

Commission employees are not signatories to the Commission's APOs and do not obtain access to BPI through

APO procedures. Consequently, they are not subject to the requirements of the APO with respect to the handling of BPI. However, Commission employees are subject to strict statutory and regulatory constraints concerning BPI, and face potentially severe penalties for noncompliance. *See* 18 U.S.C. 1905; Title 5, U.S. Code; and Commission personnel policies implementing the statutes. Although the Privacy Act (5 U.S.C. 552a) limits the Commission's authority to disclose any personnel action against agency employees, this should not lead the public to conclude that no such actions have been taken.

An important provision of the Commission's rules relating to BPI is the "24-hour" rule. This rule provides that parties have one business day after the deadline for filing documents containing BPI to file a public version of the document. The rule also permits changes to the bracketing of information in the proprietary version within this one-day period. No changes—other than changes in bracketing—may be made to the proprietary version. The rule was intended to reduce the incidence of APO breaches caused by inadequate bracketing and improper placement of BPI. The Commission urges parties to make use of the rule. If a party wishes to make changes to a document other than bracketing, such as typographical changes or other corrections, the party must ask for an extension of time to file an amended document pursuant to section 201.14(b)(2) of the Commission's rules.

## II. Investigations of Alleged APO Breaches

Upon finding evidence of a breach or receiving information that there is a reason to believe one has occurred, the Commission Secretary notifies relevant offices in the agency that an APO breach investigation file has been opened. Upon receiving notification from the Secretary, the Office of General Counsel (OGC) begins to investigate the matter. The OGC prepares a letter of inquiry to be sent to the possible breacher over the Secretary's signature to ascertain the possible breacher's views on whether a breach has occurred. If, after reviewing the response and other relevant information, the Commission determines that a breach has occurred, the Commission often issues a second letter asking the breacher to address the questions of mitigating circumstances and possible sanctions or other actions. The Commission then determines what action to take in response to the breach. In some cases, the Commission determines that although a breach has occurred, sanctions are not warranted,

and therefore has found it unnecessary to issue a second letter concerning what sanctions might be appropriate. Instead, it issues a warning letter to the individual. A warning letter is not considered to be a sanction.

Sanctions for APO violations serve two basic interests: (a) preserving the confidence of submitters of BPI that the Commission is a reliable protector of BPI; and (b) disciplining breachers and deterring future violations. As the Conference Report to the Omnibus Trade and Competitiveness Act of 1988 observed, "the effective enforcement of limited disclosure under administrative protective order depends in part on the extent to which private parties have confidence that there are effective sanctions against violation." H.R. Conf. Rep. No. 576, 100th Cong., 1st Sess. 623 (1988).

The Commission has worked to develop consistent jurisprudence, not only in determining whether a breach has occurred, but also in selecting an appropriate response. In determining the appropriate response, the Commission generally considers mitigating factors such as the unintentional nature of the breach, the lack of prior breaches committed by the breaching party, the corrective measures taken by the breaching party, and the promptness with which the breaching party reported the violation to the Commission. The Commission also considers aggravating circumstances, especially whether persons not under the APO actually read the BPI. The Commission considers whether there are prior breaches by the same person or persons in other investigations and multiple breaches by the same person or persons in the same investigation.

The Commission's rules permit economists or consultants to obtain access to BPI under the APO if the economist or consultant is under the direction and control of an attorney under the APO, or if the economist or consultant appears regularly before the Commission and represents an interested party who is a party to the investigation. 19 CFR 207.7(a)(3)(B) and (C). Economists and consultants who obtain access to BPI under the APO under the direction and control of an attorney nonetheless remain individually responsible for complying with the APO. In appropriate circumstances, for example, an economist under the direction and control of an attorney may be held responsible for a breach of the APO by failing to redact APO information from a document that is subsequently filed with the Commission and served as a public document. This is so even

though the attorney exercising direction or control over the economist or consultant may also be held responsible for the breach of the APO.

The records of Commission investigations of alleged APO breaches in antidumping and countervailing duty cases are not publicly available and are exempt from disclosure under the Freedom of Information Act, 5 U.S.C. 552, section 135(b) of the Customs and Trade Act of 1990, and 19 U.S.C. 1677f(g).

The breach most frequently investigated by the Commission involves the APO's prohibition on the dissemination of BPI to unauthorized persons. Such dissemination usually occurs as the result of failure to delete BPI from public versions of documents filed with the Commission or transmission of proprietary versions of documents to unauthorized recipients. Other breaches have included: the failure to bracket properly BPI in proprietary documents filed with the Commission; the failure to report immediately known violations of an APO; and the failure to supervise adequately non-legal personnel in the handling of BPI.

Counsel participating in Title VII investigations have reported to the Commission potential breaches involving the electronic transmission of public versions of documents. In these cases, the document transmitted appears to be a public document with BPI omitted from brackets. However, the BPI is actually retrievable by manipulating codes in software. The Commission completed two investigations of this type of breach in 2001 (Cases 10 and 16), and in both cases the Commission found that the electronic transmission of a public document containing BPI in a recoverable form was a breach of the APO.

The Commission advised in the preamble to the notice of proposed rulemaking in 1990 that it will permit authorized applicants a certain amount of discretion in choosing the most appropriate method of safeguarding the confidentiality of the BPI. However, the Commission cautioned authorized applicants that they would be held responsible for safeguarding the confidentiality of all BPI to which they are granted access and warned applicants about the potential hazards of storage on hard disk. The caution in that preamble is restated here:

[T]he Commission suggests that certain safeguards would seem to be particularly useful. When storing business proprietary information on computer disks, for example, storage on floppy disks rather than hard disks is recommended, because deletion of

**39428**   **Federal Register** / Vol. 67, No. 110 / Friday, June 7, 2002 / Notices

information from a hard disk does not necessarily erase the information, which can often be retrieved using a utilities program. Further, use of business proprietary information on a computer with the capability to communicate with users outside the authorized applicant's office incurs the risk of unauthorized access to the information through such communication. If a computer malfunctions, all business proprietary information should be erased from the machine before it is removed from the authorized applicant's office for repair. While no safeguard program will insulate an authorized applicant from sanctions in the event of a breach of the administrative protective order, such a program may be a mitigating factor. Preamble to notice of proposed rulemaking, 55 FR 24100, 21103 (June 14, 1990).

In 2001, the Commission completed four investigations of instances in which members of a law firm or consultants working with a firm were granted access to APO materials by the firm although they were not APO signatories (Cases 3, 5, 7, and 11). In all these cases, the firm and the person using the BPI mistakenly believed an APO application had been filed for that person. The Commission determined in all four cases that the person who was a non-signatory, and therefore did not agree to be bound by the APO, could not be found to have breached the APO. Action could be taken against these persons, however, under Commission rule 201.15 (19 CFR 201.15) for good cause shown. In all four cases, the Commission decided that the non-signatory was a person who appeared regularly before the Commission and was aware of the requirements and limitations related to APO access and should have verified their APO status before obtaining access to and using the BPI. In all four cases the Commission issued warning letters because it was the first time the persons in question were subject to possible sanctions under section 201.15.

Also in 2001, the Commission found the lead attorney to be responsible for breaches in at least six cases where he or she failed to provide adequate supervision over the handling of BPI. (Cases 1, 23, 27, and 32). Lead attorneys should be aware that their responsibilities for overall supervision of an investigation, when a breach has been caused by the actions of someone else in the investigation, may lead to a finding that the lead attorney has also violated the APO. In at least three of the investigations completed in 2001, the lead attorney was found not to have violated the APO because his delegation of authority was reasonable (Cases 8, 34, and 35).

In one investigation in 2001, a lead attorney was sanctioned with a private

letter of reprimand under circumstances in which the Commission usually issues a warning letter. In that case the lead attorney made a conscious decision not to conform to the 60-day rule covering the return or destruction of BPI and certification to its destruction or return because he interpreted the APO to allow him to retain the materials for possible but not yet ripe appeals of the Commission's determination. The Commission found that this was not an inadvertent violation of the APO.

In 2001, the Commission issued two public letters of reprimand (Cases 2, 19, 20, and 21). *See* 66 FR 57110 (Nov. 14, 2001) and 66 FR 19516 (April 16, 2001).

### III. Specific Investigations in Which Breaches Were Found

The Commission presents the following case studies to educate users about the types of APO breaches found by the Commission. The studies provide the factual background, the actions taken by the Commission, and the factors considered by the Commission in determining the appropriate actions. The Commission has not included some of the specific facts in the descriptions of investigations where disclosure of such facts could reveal the identity of a particular breacher. Thus, in some cases, apparent inconsistencies in the facts set forth in this notice result from the Commission's inability to disclose particular facts more fully.

*Case 1:* An economic consultant prepared, filed, and served a public version of a postconference brief that contained BPI. The consultant inadvertently left a page from the confidential version of the brief in the public version. The consultant filed and served the public version of the brief on all parties to the investigation, and notified the lead attorney that filing and service had been completed. All the firms on the public certificate of service that received the improperly redacted brief were also on the APO certificate of service.

A question arose as to the status of the attorney who discovered the breach because the attorney was not an original signatory to the APO, nor was he listed on the APO certificate of service. Prior to the time of discovery of the breach, however, he applied and was granted access to BPI. The Secretary determined that the attorney was a signatory to the APO because an attorney is deemed a signatory to the APO at the time of approval by the Secretary, and thus the breach was discovered by a signatory to the APO, although the attorney was not listed on the certificate of service.

Immediately after discovery of the breach, the lead attorney notified the

Commission and arranged for the return or destruction of the offending page. The Commission found that the consultant breached the APO by failing to redact BPI from the public version of the brief. The Commission also found that the lead attorney breached the APO by allowing the public version of the brief containing BPI to be filed and by failing to provide adequate supervision over the handling of BPI. The Commission determined that another attorney at the law firm did not breach the APO because she was not responsible for the preparation, service, or filing of the brief, or for overseeing the acts of the consultant. As mitigating circumstances, the Commission considered the unintentional nature of the breach, the prompt measures taken to rectify the situation, the increased security measures implemented at the firm to safeguard BPI in the future, and the discovery of the breach by a signatory to the APO. The Commission issued a private letter of reprimand to the consultant because it was his second APO breach within the time period normally considered by the Commission in determining sanctions, and issued a warning letter to the supervising partner.

*Case 2:* Two attorneys prepared, filed, and served a public version of a prehearing brief which on one page contained BPI, which was neither bracketed in the confidential version nor redacted from the public version. A third attorney at the law firm reviewed both versions of the brief for APO compliance prior to filing. After notification by the Commission that a breach may have occurred, the attorneys took immediate steps to effect the return or destruction of the page containing BPI.

The attorneys argued that the BPI at issue was not subject to the requirements of the APO because it could have been found in the public domain. The Commission ultimately determined that a breach occurred because the statement at issue was based in part on BPI. The Commission found that the exact statement at issue was not publicly available and the two attorneys failed to exercise due care with regard to BPI. The Commission noted that the attorneys involved, as experienced trade lawyers, should have been aware that the type of information at issue is often treated as BPI. The two attorneys who prepared the brief were issued a public letter of reprimand since it was the third breach by one attorney and the fourth breach by the other attorney within a short period of time. The Commission also found that the third attorney breached the APO

**Federal Register** / Vol. 67, No. 110 / Friday, June 7, 2002 / Notices **39429**

because he served as APO manager for the firm and failed to discover the breach. The third attorney was issued a private letter of reprimand rather than a warning letter. He was the firm's APO compliance manager yet failed to discover the breach, he was on notice of the need to review the documents with great care because of prior APO breaches by members of his firm, and, at the time of this decision, he was under investigation for two more possible APO breaches.

*Case 3:* An attorney utilized BPI obtained from his law firm when drafting posthearing and prehearing briefs, based on a mistaken assumption that he was a signatory to the APO. The attorney later realized that he was not a signatory. After further review, it was discovered that the APO coordinator of the firm never included the attorney in its APO application to the Commission.

The Commission determined that two attorneys in the firm breached the APO. The lead attorney breached the APO because he failed to provide adequate supervision over the handling of BPI. The second attorney was found responsible for the breach because he was the APO compliance attorney within the firm. The Commission issued warning letters to the attorneys because the breach was unintentional, the non-signatory attorney safeguarded the BPI as if he was a signatory to the APO, immediate corrective actions were taken once the breach was discovered, and increased safeguard measures were implemented at the firm to prevent future breaches. In addition, in deciding to issue warning letters instead of private letters of reprimand, the Commission distinguished this situation from others in which BPI is mistakenly sent to other parties or is released to clients or the public, and a non-signatory subsequently reads the BPI.

Although the Commission found that the non-signatory attorney had not breached the APO because he was not a signatory, his use of the BPI was actionable under rule 201.15 for his failure to verify that he was a signatory to the APO. He was issued a warning letter. Although the attorney used the BPI on multiple occasions and was previously warned as a result of another APO breach to take better care when handling APO matter, the Commission noted that this was the first time he was subject to a possible sanction under rule 201.15. As mitigating factors, the Commission considered the unintentional nature of the breach and the attorney's adherence to the APO as though he was a signatory.

*Case 4:* Counsel submitted a public version of a posthearing brief containing unredacted BPI, which was discovered by the Secretary during a routine review of the submission. The firm argued that the information was not BPI because it was public information that could be found elsewhere in the record of the investigation. While reviewing the public version of the brief as a result of the Secretary's notification, the firm discovered another possible breach on a different page of the public brief involving the failure to redact BPI. The firm retrieved a copy of the offending submission from the single non-APO signatory upon which it had been served, and provided the Commission and all signatories on the proprietary and public service lists with replacement pages.

The Commission determined that an APO breach did not occur as to the first breach because the information in question was revealed at a prior public hearing and entered into the record. The Commission determined that a breach did occur as to the failure to redact information on the other page of the brief because that information was BPI. The Commission issued warning letters to the attorney and legal assistant responsible for the preparation, filing, and service of the public version of the brief. In the case of two other attorneys whose names were on the posthearing brief, the Commission found that they did not breach the APO because they possessed no firsthand knowledge of the preparation and filing of the public version of the brief. In deciding to issue warning letters, the Commission considered the unintentional nature of the breach, the promptness with which the firm rectified the breach, the existence and subsequent reinforcement of the law firm's internal procedures to protect BPI, and the absence of any prior violations by the attorneys involved in this investigation.

*Case 5:* A law firm provided personnel at an outside economic consulting firm, who were non-signatories to the APO, with various documents received under an APO. After discussion about the BPI contained in such documents was conducted between the law firm and consulting firm, an attorney at the law firm discovered that the personnel at the consulting firm had not signed the APO application. After confirming this fact, the law firm promptly retrieved all APO materials from the consulting firm.

The Commission determined that two attorneys at the law firm were responsible for the breach. The lead attorney breached the APO because he was responsible for the overall conduct of the case, and nonetheless disseminated and discussed BPI with non-signatories. The other attorney was found responsible because he was the firm's APO compliance attorney, and he also disseminated and discussed BPI with non-signatories. The Commission issued warning letters to the attorneys. In determining the appropriate action, the Commission considered the absence of any violations in the two years prior to the investigation, the promptness with which the attorneys remedied the problem, and the existence of internal procedures within the economic consulting firm in safeguarding BPI. Although the attorneys released BPI to non-signatories of the APO, the Commission determined that the consultants' treatment of the information as if they were under the APO was sufficient to warrant issuance of a warning letter rather than a private letter of reprimand.

The Commission found the actions of three consultants, who viewed and discussed the BPI, actionable under rule 201.15 because the consultants regularly appeared before the Commission and were fully aware that BPI should be handled only after ensuring they were on the APO. The Commission issued a warning letter to the consultants because this was the first time their actions were actionable under rule 201.15.

*Case 6:* An economist at a law firm, who was a signatory to the APO, transmitted a posthearing brief containing BPI to an attorney who represented a party in the investigation but who was not a signatory to the APO. Upon receipt of the package containing the brief and without opening it, the non-signatory attorney immediately contacted the lead attorney responsible for the preparation of the brief and returned it to him. Upon notification to the Secretary, the Commission conducted an investigation and determined that both the economist and lead attorney breached the APO because the economist made BPI available to a non-signatory to the APO and the lead attorney failed to adequately supervise the economist in the use and release of BPI. The Commission issued private letters of reprimand instead of warning letters to both individuals because it was the second APO violation for each.

*Case 7:* An attorney provided BPI to an outside economic consultant under the mistaken belief that the consultant was a signatory to the APO. Personnel at the law firm discovered the error and informed the Secretary. After an investigation was initiated, the attorney notified the Secretary that he had also mistakenly provided BPI to his legal secretary two days before the secretary was authorized to view it under the

**39430** **Federal Register** / Vol. 67, No. 110 / Friday, June 7, 2002 / Notices

APO. Both the consultant and legal secretary believed they were signatories to the APO at the time of breach and acted in accordance with the APO's requirements.

The Commission found that the attorney breached the APO by providing BPI to unauthorized persons. The Commission issued a warning letter to the attorney instead of a private letter of reprimand because it considered the case a single breach, although the breach involved two individuals who were non-signatories to the APO. The Commission also took into account the unintentional nature of the breach, the immediate actions to remedy the breach and to include on the APO the non-signatories who had prior unauthorized access to BPI, the implementation at the law firm of new procedures to avoid future breaches, and the use of the BPI by the non-signatories as though they were signatories to the APO.

The Commission issued a warning letter to the consultant pursuant to rule 201.15 because of his failure to verify whether he was a signatory to the APO. The Commission also considered as aggravating factors the full use of BPI by the consultant, and his awareness of APO obligations as a former employee of the Commission and a frequent participant in Commission proceedings. The legal secretary was not sanctioned pursuant to rule 201.15 because clerical employees do not sign individual APO applications and thus have less independent responsibility to determine their status under APOs.

*Case 8:* An attorney filed and served a public version of a prehearing brief that contained unredacted BPI. The attorney notified the Commission and relevant parties the next morning and retrieved each copy of the brief. Although the briefs were served on non-signatories to the APO, the briefs were not, to the best of counsel's knowledge, read by any of them. Upon investigation, the Commission determined that the attorney, as the attorney who was in charge of preparing the brief, breached the APO. The Commission issued a warning letter because the breach was unintentional and this was the first APO violation for both the attorney and firm. In addition, the firm implemented new procedures to prevent future breaches. The lead attorney in the case was not found to have committed an APO breach because he was not involved in the preparation of the brief, and his reliance on the senior attorney who was in charge of preparing the brief was reasonable.

*Case 9:* Three attorneys sent a letter to the Secretary containing BPI. A public

version of the letter containing BPI was subsequently filed with the Commission and served on a non-signatory to the APO. Upon discovery, the attorneys immediately retrieved the letter before it was read by the non-signatory. The Commission found that the attorney supervising the preparation of the public version of the letter breached the APO by failing to redact BPI and by making it available to a non-signatory to the APO. A warning letter was issued in light of the unintentional nature of the breach, the absence of any prior APO breaches by the attorney, the immediate notification and corrective actions taken once the breach was discovered, and the implementation at the law firm of strengthened procedures to prevent future breaches.

*Case 10:* An attorney authorized a legal secretary to transmit, via e-mail, a public version of a prehearing brief to an attorney who was not a signatory to the APO. The electronic version of the brief contained BPI that was masked but not deleted. As a result, the BPI could have been retrieved by someone who was able to alter the software print codes. The possible breach was discovered by the transmitting firm's APO administrator.

The Commission determined that the attorney and legal secretary breached the APO by making BPI available to a non-signatory to the APO. Warning letters were sent to both individuals. As mitigating factors, the Commission took into account the unintentional nature of the breach, the discovery of the violation by the breachers, the prompt measures taken by the breachers to remedy the breach, and the destruction of the BPI prior to being viewed by a non-signatory.

*Case 11:* Three attorneys at a firm, non-signatories to an APO, reviewed and utilized BPI. One of the attorneys reviewed BPI contained in documents under the APO and utilized it in the preparation of prehearing briefs. The two other attorneys reviewed BPI when they proofread the briefs at the instruction of the attorney preparing the brief.

The Commission found two other attorneys at the firm, signatories to the APO, in breach of the APO for failing to ascertain that the three non-signatory attorneys were not on the APO list. Although the Commission found that the non-signatory attorney who prepared the brief did not breach the APO because he had not signed it, his use of the BPI was actionable under rule 201.15. The Commission issued each of the three attorneys a warning letter in light of the unintentional nature of the breach, the discovery of the breach by

the law firm, and the prompt action taken to remedy the breach. In the case of the non-signatory attorney who prepared the brief, the Commission considered the fact that he treated the BPI as if he was on the APO.

The two attorneys who proofread the brief were not found to have breached the APO because they were not signatories to the APO and their actions were not sufficient to demonstrate good cause for action under rule 201.15.

*Case 12:* Attorneys filed and served a public version of a prehearing brief that contained BPI. BPI that was bracketed in an attachment to the confidential version of the brief was not redacted in the public version. The Secretary discovered the error during a routine review of the submission and alerted the firm. The firm immediately retrieved the briefs from all parties and received confirmation from them that the BPI was not seen by anyone not subject to the APO. One of the attorneys involved in the breach asserted that White-out tape covering the BPI at issue fell off during the photocopying process, resulting in the breach.

The Commission found that the two attorneys responsible for the preparation, filing, and service of the brief breached the APO by making BPI available to unauthorized persons, and issued warning letters to them. In deciding to issue warning letters, the Commission considered the inadvertent nature of the breach, the prompt steps taken to rectify the situation, the retrieval of the BPI prior to its review by anyone, and the absence of any prior violations by the attorneys.

*Case 13:* An attorney prepared, filed, and served a prehearing brief containing BPI that was neither bracketed in the confidential version nor redacted in the public version. Before discovery of the breach, the attorney failed to serve the brief by hand or overnight delivery as required by Commission rule 207.3. After learning of the service error, the Secretary rejected the prehearing brief as improperly served. The attorney refiled the brief with the Secretary and the Commission accepted the late filing after the attorney sought leave to file the brief out of time.

An attorney representing another party in the case noticed the breach upon receiving the brief by first class mail and notified the attorney and Commission. The attorney who filed the brief immediately contacted all other counsel and asked them to retrieve and return all copies of the prehearing brief. The briefs were returned, but counsel for one of the parties stated that the brief had already been forwarded to his client. Counsel for each party asserted

**Federal Register** / Vol. 67, No. 110 / Friday, June 7, 2002 / Notices **39431**

that the brief was not reviewed by any non-signatories to the APO, including the attorney who had forwarded the brief to his client. Upon refiling and reservice, the attorney once again failed to bracket BPI that was unbracketed in the original filing. The attorney retrieved the page in question from all counsel and the Commission and provided a new page correcting the error.

The attorney argued that a breach did not occur as to two items of information because one item was publicly disclosed in a prehearing staff report and the other item could be logically inferred from numerous public statements made by the industry. The Commission agreed but found that a breach occurred as to three other items that constituted BPI. Although the attorney made immediate efforts to rectify the situation and no evidence existed that BPI was viewed by non-signatories to the APO, the Commission issued a private letter of reprimand to the attorney due to several aggravating factors. First, the Commission did not view the breach as inadvertent, as the attorney stated that he had closely reviewed the information in question and made a conscious decision not to bracket it. Second, the attorney violated the Commission's rules when he failed to serve the brief by hand or overnight delivery. Finally, the attorney failed to correct all the problematic disclosures in the brief before filing it with the Commission a second time.

*Case 14:* Two attorneys prepared, filed, and served a prehearing brief. One of the attorneys discovered that the public version of the brief contained BPI. He immediately notified the Secretary and retrieved the pages containing the BPI from the other parties and filed and served three replacement pages. After the replacement pages were filed and served, an attorney representing another party contacted the Secretary to inform her that there was additional BPI in the brief that had not been bracketed in the confidential version and had not been redacted in the public version of the brief. The Secretary instructed the breaching attorneys to file new amended pages for both the confidential version and the public version of the brief.

The attorneys argued that the type of BPI discovered by the other attorney is often public and, therefore, the failure to redact was understandable. Upon investigation, the Commission found that the two attorneys responsible for the preparation and review of the brief had breached the APO. The Commission issued private letters of reprimand to the attorneys due to their filing of three

defective versions of the brief (two of the public version and one of the confidential version) and their failure to exercise due diligence to ensure that BPI was not revealed to the public. Some mitigating circumstances were present: the inadvertence of the breach involving the BPI discovered by the breacher, the prompt correction of the unauthorized disclosures, and the absence of any prior APO breaches for both attorneys.

*Case 15:* Two attorneys prepared, filed, and served a prehearing brief containing BPI on one page that was neither bracketed in the confidential version nor redacted in the public version. The Secretary instructed the attorneys to retrieve the page in question from the Commission and parties. After filing a replacement page, they filed a letter with the Commission stating that neither the confidential nor the public version of the original prehearing brief had been disclosed to anyone not having access to BPI. The attorney having primary responsibility for preparing the brief stated that he overlooked the BPI in question because he was under the impression that the quoted information was publicly available. The second attorney, responsible for reviewing the brief for typographical and bracketing errors, stated that he inadvertently failed to consider that the domestic producer's questionnaire response was the source of the information.

The Commission determined that both attorneys breached the APO by making BPI available to unauthorized persons. Despite the discovery of the breach by the Secretary, and not by the attorneys, Commission issued a warning letter because of the unintentional nature of the breach, the absence of any prior breaches by the attorneys, and the prompt action taken by the attorneys to mitigate the breach. A third attorney who was a signatory to the APO and signed the brief was found not to have breached the APO because he had no responsibility for the preparation or filing of the brief.

*Case 16:* Counsel prepared and electronically forwarded a non-confidential draft of a prehearing brief containing BPI to an attorney and an economist, both of whom were signatories to the APO. The draft was created using a software program that electronically suppressed all data within brackets. Although not visible when viewed on a computer screen or printed in hard copy, the BPI contained in the draft could have been restored by someone who was knowledgeable about the operation of the software. The attorney preparing the brief asserted that

he was unaware that there was BPI in the draft at the time of transmission. At the direction of the attorney receiving the electronically transmitted brief, the draft was electronically forwarded by the economist to an official of the client corporation. Once received by the official, it was electronically forwarded to another official of the client corporation. Neither official was a signatory to the APO. At the time of receipt, neither official was aware that redacted BPI could be electronically restored in the draft brief.

In the course of editing the brief, the attorney responsible for the preparation of the brief realized that BPI still existed in recoverable form. Recognizing that a possible APO breach may have occurred, the attorney contacted the Secretary. The attorney who had received the electronically transmitted brief contacted the economist and client-officials, and requested that they destroy the electronic version of the draft brief sent to them. A letter was filed with the Commission stating that no actual disclosure of BPI occurred.

The Commission found that the attorney in charge of the preparation of the brief breached the APO by e-mailing a draft of the public prehearing brief that contained retrievable BPI. Although he did not know that the draft contained BPI, he had the responsibility to be fully aware of how the document was prepared because a legal assistant was preparing the document and non-signatories would ultimately see the brief. The Commission issued a warning letter to the attorney in light of the unintentional nature of the breach, the fact that the attorney discovered the breach, the promptness with which the breach was rectified, the certifications by the non-signatories that the brief was not read, and the implementation of a new policy within the law firm that documents under an APO will not be electronically transmitted.

The economist and second attorney were found not to have breached the APO because they were unaware that the brief contained BPI and its preparation was not under their control or supervision. In the case of the second attorney, he took an additional precaution by visually checking the document to ensure that all BPI had been deleted before he arranged to have the document forwarded to his client.

*Case 17:* Counsel prepared, filed, and served a public document that contained BPI. The Secretary discovered the breach and notified the attorney. The page containing BPI was retrieved from all those on the service list except for one firm. That firm stated that it never received the document. The

**39432**   **Federal Register** / Vol. 67, No. 110 / Friday, June 7, 2002 / Notices

attorney was able to confirm that the document had not been copied or distributed by the other firms on the service list.

According to the attorneys who signed the document and were signatories to the APO, the breach occurred because the attorney preparing the document failed to have it checked by a second attorney, as required by the law firm's APO procedures. Moreover, the attorneys argued that the information at issue was not BPI because it did not contain commercial information and the information was later revealed in a publicly available Commission staff report. The Commission determined that the information at issue was BPI at the time it was released and that a breach had occurred.

The Commission held that the attorney responsible for the preparation of the brief committed a breach by allowing BPI to become publicly available. The Commission did not hold the other attorneys who signed the document responsible because, by not following the firm's APO procedures, the attorney who prepared the brief precluded another attorney from reviewing the document for potential APO violations. In addition, the attorney was a third year associate and had no prior breaches that would have alerted the other attorneys who signed the document that they needed to provide closer supervision of APO materials.

The Commission considered the fact that one of the copies of the document was never found as an aggravating circumstance. Nonetheless, the Commission issued a warning letter in light of the unintentional nature of the breach, the prompt action taken to rectify the breach, the absence of any information suggesting that any non-signatory to the APO read the BPI, the implementation at the law firm of additional safeguards to prevent future breaches, and the absence of any prior breaches by the attorney.

*Case 18:* Two attorneys prepared, filed, and served a public version of a posthearing brief that contained unredacted BPI. Immediately after being notified of this error by opposing counsel, the attorneys contacted the Secretary and the other parties, requesting that they destroy the page containing BPI and replace it with a corrected version.

The attorneys, signatories to the APO, argued that because the error was corrected within the 24-hour deadline prescribed for the filing of a brief under rule 207.3(c), they did not breach the APO. However, the Commission held

that rule 207.3 was not applicable because that rule applies only to bracketing changes made to confidential briefs and not to public briefs. Therefore, the Commission determined that the attorneys breached the APO by failing to redact BPI and making it available to non-signatories to the APO. The Commission issued warning letters to the attorneys because the breach was unintentional and immediately rectified. Moreover, the attorneys had no prior APO breaches.

*Case 19:* Two attorneys and a consultant filed a prehearing brief with the Department of Commerce containing bracketed BPI obtained under the APO in the Commission investigation. In addition, the two attorneys and their secretary sent a copy of the confidential brief to a law firm that was not a signatory to the Commission's APO and was no longer a signatory to Commerce's APO. The secretary typed the brief, made copies, and prepared envelopes for service on other parties. In determining whom to serve, she used an old certificate of service list that had not been updated, even though one of the attorneys told her that the firm had received an updated service list. The Commission found that the attorneys and the secretary breached the Commission's APO in releasing the brief to DOC personnel. The Commission determined that some of the information contained in the brief was BPI and not publicly available because it came from Commission questionnaire responses, which were provided only to the parties to the Commission investigation under its APO. The two attorneys and the secretary failed adequately to explain their contention that the information in question was independently known to industry participants. The Commission decided that the consultant did not breach the Commission's APO, as she was not involved in preparing, filing, or serving the prehearing brief and had no personal knowledge of any circumstances surrounding the possible breach.

The Commission issued a warning letter to the secretary. As mitigating factors, the Commission considered that this was the only breach in which the secretary was involved within the time period generally examined by the Commission for the purpose of determining sanctions, the breach was unintentional, prompt action was taken to minimize the effect of the breach, the non-signatory law firm did not view the BPI, and the secretary was under the direction and supervision of an attorney.

In determining the proper sanctions for the two attorneys, the Commission

decided to consider the APO breaches committed by one of the attorneys in this case at the same time it considered sanctions for the breach he committed in Case 20. The Commission determined the sanctions against the second attorney in concert with consideration of the sanctions against him in two other APO violations, Cases 20 and 21.

*Case 20:* The lead attorney, a second attorney, and a consultant submitted a public version of their final comments to the Commission, but failed to redact BPI from two pages of the Comments. The Secretary noticed the errors a day after the comments were filed and notified one of the attorneys. That same day the attorney called all parties that had received copies of the comments and requested that they destroy the pages containing the BPI.

The Commission found that the consultant, who was not a signatory to the APO, did not breach the APO because, although his name was on the Final Comments, he only had client contact responsibilities and never had access to the APO materials. The Commission determined that both attorneys breached the APO by failing to redact the BPI. In addition, the lead attorney also breached by failing to provide adequate supervision over the handling of BPI.

The Commission determined the sanctions for the lead attorney in connection with Case 19, discussed above. The Commission decided to publicly reprimand the lead attorney in the **Federal Register**. 66 FR 57110 (November 14, 2001). In reaching this decision, the Commission considered the fact that the breaches committed by the attorney were his second and third breaches within a short period of time. In addition, the Commission, in the public letter, required the law firm to have at least two attorneys review all documents for future filings with the Commission to ensure APO compliance. The two-attorney review requirement is in effect for the two-year period starting with the date the public reprimand was published in the **Federal Register**. The Commission decided the sanctions against the second attorney in concert with Cases 19 and 21.

*Case 21:* Three attorneys filed and served a public version of their final comments that contained BPI. The lead attorney who had been the second attorney in Cases 19 and 20 prepared the documents and took sole responsibility for the breach. He argued that the information in question was publicly available. The Commission disagreed and found that the lead attorney breached the APO because he received the information from a

**Federal Register** / Vol. 67, No. 110 / Friday, June 7, 2002 / Notices

Commission investigator's report that relied on data given by a domestic producer's representative. The Commission found that the two other attorneys did not breach the APO because they did not prepare the final comments.

In sanctioning the attorney who breached the APO, the Commission also considered the attorney's previous breaches in Cases 19 and 20. As an aggravating factor, the Commission found it significant that the attorney had committed four breaches within a short period of time. The Commission publicly reprimanded the attorney in the **Federal Register**. 66 FR 57110 (November 14, 2001). The Commission also suspended the attorney's access to BPI for six months from the date the public reprimand was published in the **Federal Register**. Finally, as noted in Case 20, the Commission required the attorney's law firm to have at least two attorneys review all documents for future filings with the Commission to ensure APO compliance.

*Case 22:* An associate attorney, his secretary, and the lead attorney breached the APO by transmitting BPI to four embassy officials who were non-signatories to the APO, but were on the public service list. Over a 17-day period, BPI was sent to the same four embassies on four separate occasions. In deciding that the associate attorney, his secretary, and the lead attorney breached the APO four times, the Commission considered the lack of attention paid to the certificates of service for both confidential and public documents. The Commission determined that either none of the parties noticed that the public certificate of service had been used for both confidential and public materials or the parties lacked awareness that the two service lists were different. In addition, the Commission found that the law firm did not provide adequate safeguards or supervision to protect BPI from delivery to unauthorized persons.

The Commission sanctioned the associate attorney, his secretary, and the lead attorney by issuing private letters of reprimand to them. As mitigating factors, the Commission considered the unintentional nature of the breaches, the timely reporting of the breaches once discovered, the efforts to mitigate any harm caused by the breaches, the lack of previous APO breaches, and efforts by the firm to prevent future breaches. As aggravating factors, the Commission considered the large number of breaches in one investigation, the large volume of APO materials involved, and the significant amount of time during which the BPI was unprotected. The

Commission determined that it could not be certain that no BPI was divulged to unauthorized persons.

*Case 23:* A partner and an associate filed the public version of a prehearing brief, which had an annex that contained BPI. One of the law firm's clients notified the parties three days after filing of the possibility of a breach after two executives of the client corporation had read the annex containing the BPI. The associate notified the Commission the same day and both attorneys immediately contacted counsel for the other parties and provided substitute annexes.

The Commission found that both attorneys breached the APO and issued them private letters of reprimand. As mitigating factors, the Commission considered that the breach was unintentional, the attorneys took immediate action to remedy the situation by notifying the Commission, contacting counsel for the other parties, and providing substitute annexes, this was the only breach in which the attorneys had been involved during the time period normally considered by the Commission, and the BPI in question was in a cover letter to a questionnaire response that was not clearly labeled as containing BPI. The Commission issued private letters of reprimand because of the aggravating circumstances that the attorneys' client discovered the breach and that the two executives who were not signatories to the APO actually read the BPI.

*Case 24:* A law firm and a consulting firm failed to return or destroy BPI released under an APO and to file certificates of return or destruction within the 60-day time limit after the Commission published its final determination in the **Federal Register**. The Secretary noticed the breach when the lead attorney sent a certificate of return or destruction signed by an attorney who had left the firm. The Secretary's staff discovered that certificates of destruction or return had not been filed by most of the other signatories to the APO. The firm had only submitted certificates of return or destruction for people no longer with the firm.

The lead attorney admitted that the firm had not returned or destroyed the APO materials. However, he argued that it was necessary to retain APO materials because the investigations were still subject to a judicial appeal of the Commission's final affirmative determination. He noted that the Department of Commerce had entered a suspension agreement with one of the firm's clients, which was being challenged at the Court of International

Trade. He stated that if the Court reversed Commerce, Commerce would issue an antidumping order, and only at that point would the Commission's final determination be ripe for appeal.

The Commission determined that the lead attorney breached the APO by failing to destroy or return BPI within 60 days after completion of the Commission investigations. In addition, the attorney failed to certify that to his knowledge and belief all copies of the BPI had been returned or destroyed and that no copies of the BPI had been made available to any person to whom disclosure was not specifically authorized. The Commission ordered the lead attorney and all other authorized applicants at the law firm and the consulting firm to comply with the APO within 14 days. The Commission did not find any other attorneys or members of the consulting firm to have breached the APO because they were complying with the lead attorney's decision to retain that APO materials.

The Commission issued a private letter of reprimand to the lead attorney. As mitigating circumstances, the Commission considered that the lead attorney had no prior breaches and that he destroyed and certified the destruction of the APO materials once he received the Commission's instruction to destroy them. Furthermore, no unauthorized person gained access to the APO materials as a result of the breach. Finally, the lead attorney's law firm instituted a policy of seeking guidance in matters that attorneys find ambiguous instead of making a potentially incorrect independent decision regarding compliance with Commission APOs. As an aggravating factor, the Commission considered that the breach was not inadvertent. It was based on the lead attorney's decision to interpret the APO and decide how it should be applied in what he considered unique circumstances, without seeking guidance from the Commission.

*Case 25:* A lead attorney filed a letter with the Commission Secretary challenging certain information contained in a respondent's revised questionnaire response and in the cover letter that accompanied the revised response. The respondent's cover letter was marked ''PROPRIETARY DOCUMENT'' and in this letter the respondent's attorney requested proprietary treatment for that information and for the revised questionnaire response. No material in the respondent's cover letter or the response was bracketed. When the lead attorney filed his response, he sent a

**39434**   **Federal Register** / Vol. 67, No. 110 / Friday, June 7, 2002 / Notices

confidential version of the letter to the Secretary and filed a public version. He also had the public version served on two non-signatories to the APO. One day after the lead attorney filed his letter, he realized that it might contain BPI. He notified the Secretary and filed and served revised copies of his letter.

The Commission found that the lead attorney breached the APO because the ''public'' version of his letter contained BPI, he served the letter on two people who were not signatories to the APO, and he failed to bracket the same BPI in the confidential version of his letter. The Commission did not agree with his argument that if unbracketed BPI had appeared in his letter, it was the fault of the respondent and its attorneys because they did not bracket or otherwise identify the BPI in their cover letter and revised response. The Commission noted that a questionnaire response is not filed with the Secretary subject to requirements of rules 201.6(b)(3) and 207.3(c), which require among other things that BPI be bracketed. Furthermore, the instructions for responding to the questionnaire indicated that each response would be automatically treated as confidential, except to the extent that data in the response are publicly available or must be disclosed by law. The lead attorney did not establish the applicability of either of the exceptions. Therefore, the respondent was under no obligation specifically to mark or bracket BPI in the revised questionnaire response.

The Commission issued a warning letter to the lead attorney. As mitigating factors, the Commission considered that the attorney did not act in bad faith, that this was the only breach in which he was involved within a period of time generally examined by the Commission for the purposes of determining sanctions, and that he took prompt action to correct the breach.

*Case 26:* Three attorneys, a secretary, and a paralegal prepared a postconference brief on behalf of the petitioner. One day after the attorneys filed the confidential version of the brief, they filed replacement pages for the confidential brief, and pursuant to the 24-hour rule, they filed the public version of the brief. The following workday, the Commission's Secretary notified the attorneys' law firm by telephone that several appendices in the public version of its brief contained unredacted BPI in brackets. The Secretary also noted that brackets had been removed from some of the petitioner's information in the replacement pages of the confidential brief, which was previously bracketed in the original pages of the confidential

version of the brief and had been redacted from the public version of the brief.

After the law firm received the Secretary's telephone call, it determined that some of the information that it failed to bracket in the replacement pages to the confidential brief belonged to its own client and could therefore be released as public information. The law firm also made revisions to the relevant pages of the public version of its brief and re-filed and re-served the revised pages. The law firm took several more steps to avoid dissemination of the unredacted information in the public version of the brief. It contacted lead counsel for each party to the investigation by telephone on the same day the Secretary called and requested that counsel retrieve the copies of the petitioner's postconference submissions. It prepared replacement pages that included additional bracketing on one page of its confidential brief, removed brackets from certain of its client's information in the confidential brief, and redacted bracketed information from the public version of its brief. The law firm also contacted the parties on the public service list to retrieve the pages that had contained unredacted BPI. The public service list in effect in these investigations at the time included only law firms that were approved for access to BPI under the APO. However, one of the law firms made copies of the public version of the brief and forwarded one copy to its client who was not a signatory to the APO. The information was not opened by the non-signatory and was returned to the law firm. The offending exhibit pages that were distributed to the other parties on the public service list were also returned to the law firm. The firm received assurances from the lead counsel of all of the parties on the public service list that no non-signatory had reviewed the BPI.

The Commission found that, in two sections of the brief, the attorneys, the secretary, and the paralegal did not breach the APO in failing to bracket or redact BPI because the information at issue belonged to the parties that disclosed it. However, in another section, the Commission determined that the three attorneys breached the APO by failing to redact BPI from the public version that was filed with the Commission and served on parties on the public service list.

The Commission issued warning letters to the three attorneys. As mitigating circumstances, the Commission considered that this was the only breach committed by the attorneys within the time period

generally examined by the Commission for purposes of determining sanctions, that the breach was unintentional, that prompt action was taken to remedy the breach, and that the clients who were given the brief containing the BPI neither read nor made any copies of the BPI.

The Commission decided to take no further action against the secretary or paralegal because they were responsible to and under the supervision of attorneys at all times.

*Case 27:* One attorney and three legal assistants served a copy of corrections to a Commission staff report containing BPI as well as a prehearing brief containing BPI, on a law firm that had been removed from the APO service list. An attorney from another law firm who was a signatory to the APO notified the attorney serving the documents that one of the firms on the certificate of service attached to the prehearing brief had withdrawn from the APO. The next day, the attorney serving the documents contacted the law firm that was no longer on the APO list and retrieved the unopened pre-hearing brief. Later that day, the attorney noticed that the corrections, which were sent six days before the brief, had also been served to the law firm that had withdrawn from the APO. The attorney contacted the firm and learned that the corrections to the preliminary staff report had already been shredded without being opened. The attorney alerted the Secretary that day to what had transpired.

One of the legal assistants prepared the service list that incorrectly included the law firm no longer on the APO service list for the corrections to the preliminary staff report. The legal assistant used the same service list for the prehearing brief. Both times he failed to check his list against the updated list available through the Commission's website. The same legal assistant arranged for the filing of the document with the Commission and for delivery of the service copies. The other two legal assistants simply served the documents on the recipients as instructed.

The Commission issued a warning letter to the attorney for breaching the APO. The Commission has consistently taken the position that a breach of the APO occurs when BPI is made available to unauthorized persons, and that it is not necessary that those persons actually view the information. Specifically, the attorney breached the APO by providing a person whose law firm had been removed from the APO service list with copies of corrections to a Commission staff report containing BPI and with a pre-hearing brief

containing BPI. The Commission also noted that the attorney was responsible for supervising the activities of the legal assistants who prepared and delivered the briefs because she signed the APO acknowledgment for clerical personnel, which she filed with the Commission. As mitigating circumstances, the Commission considered that this was the only breach for the attorney within the period generally examined by the Commission, that the breach was unintentional, that prompt action was taken to remedy the breach, and that no unauthorized person opened the packages containing the BPI.

The Commission determined that the legal assistant who prepared the erroneous service list had breached the APO and issued a warning letter to him. As mitigating circumstances, the Commission considered that this was the only breach for the legal assistant within the period generally examined by the Commission, that the breach was unintentional, that prompt action was taken to remedy the breach, and that no unauthorized person opened the packages containing the BPI.

The Commission found that the two legal assistants who served the documents did not breach the APO.

*Case 28:* Four attorneys filed the public version of a posthearing brief, which included an exhibit that contained BPI. The Commission found that one of the attorneys and her secretary breached the APO by failing to redact the BPI. The secretary "whited-out" the BPI electronically on her computer. She then reviewed the exhibits, both on the computer screen and as printed pages, to make sure she had redacted all BPI. Another attorney then reviewed the brief before the attorney who breached the APO made a final review and found all BPI had been redacted. Eleven days later one of the attorneys discovered the un-redacted BPI in the exhibit and notified the Commission Secretary. The attorney then redacted the BPI from the exhibit and served a replacement page on all relevant parties.

The Commission found that three of the attorneys did not breach the APO because they did not participate in the preparation or review of the exhibits in the public version of the brief. However, it initiated an additional investigation, which was still pending when this case was decided, after it discovered that another attorney who was not a signatory to the APO helped in the preparation and filing of the brief.

The Commission issued a private letter of reprimand to one of the attorneys. As mitigating circumstances, the Commission considered that this

was her first breach of an APO, that the breach was inadvertent, and that once she became aware of the breach she took prompt action to retrieve the pages containing the BPI. In deciding to issue a private letter of reprimand instead of a warning letter the Commission considered the aggravating circumstance that the non-redacted BPI was in the possession of a non-signatory for eleven days. Without evidence to the contrary, the Commission assumed that a non-signatory had reviewed the BPI because of the length of time it was in the non-signatory's possession.

The Commission issued a warning letter to the secretary. As mitigating circumstances, the Commission considered that this was the only breach of an APO in which she was involved within the period generally examined by the Commission, that the breach was unintentional, and that once her firm became aware of the breach it took prompt action to retrieve the pages containing the BPI. Although the Commission concluded that a non-signatory had reviewed the BPI, it recognized that she was under the direction and supervision of an attorney.

*Case 29:* Three attorneys filed the public version of a postconference brief that contained bracketed but un-redacted BPI. A secretary assisted in the brief's preparation. The Secretary noticed the breach five days after it was filed and notified the firm. The firm took steps to retrieve the copies of the public version of the brief that it had served and distributed. The attorneys also filed a replacement page that no longer contained BPI. The Commission found that the attorney who had the primary responsibility for preparing the brief and the attorney who signed the brief breached the APO. The two attorneys reviewed the brief, but failed to redact the bracketed BPI. The Commission also determined that the secretary breached the APO because she failed to run properly the law firm's computer program that redacts bracketed information from a submission after the attorneys instructed her to redact the information. The Commission found that the third attorney did not breach the APO. She was not in the office on the day that the public version of the brief was filed, and she appeared to play no role in the preparation of the brief.

The Commission issued warning letters to both attorneys. As mitigating factors, the Commission considered that the attorneys had no breaches within the time period generally examined by the Commission for the purpose of determining sanctions, that the breach

was unintentional, that prompt action was taken to remedy the breach, and that no non-signatory of the APO actually read the document.

The Commission issued a warning letter to the secretary who assisted in the brief's preparation at the instruction of her supervising attorneys. As mitigating factors, the Commission considered that the secretary had no prior breaches, that the breach was unintentional, that prompt action was taken to remedy the breach, and that no non-signatory of the APO actually read the document.

*Case 30:* An economist, while under the supervision of an attorney, faxed the confidential version of a prehearing brief containing BPI to a client-association who was not a signatory to the APO. The client-association subsequently faxed the confidential version to its 66 members, who were also non-signatories, the following day. Two days after the fax was sent to the client, the attorney notified the Secretary and reported that he had contacted each of the persons to whom the brief had been distributed, informed them of the seriousness of the situation, and instructed them to destroy the brief. However, the attorney and economist did not account for several of the faxed copies.

The Commission determined that both the attorney and the economist breached the APO by allowing unauthorized persons to view the BPI. The Commission sanctioned the attorney and the economist by issuing private letters of reprimand to both. As mitigating circumstances, the Commission considered that the breach was reported promptly after the attorney was advised that it had occurred, that prompt efforts were made to prevent further dissemination and to recall or destroy existing copies, that procedures were strengthened at the law firm to safeguard against future breaches, and that the attorney and the economist had no record of prior breaches. However, as aggravating circumstances the Commission considered that persons who were non-signatories to the APO actually read the BPI and that the attorney and economist did not account for all copies of the BPI that were sent by the client to its members.

*Case 31:* Three attorneys failed to destroy BPI within the required 60 days after the Commission made a final APO release. The lead attorney changed law firms and had the BPI covered under the APO transferred to his new law firm. The lead attorney's old law firm sent a letter to the Commission stating that they no longer represented the client, that the lead attorney continued to

**39436**   **Federal Register** / Vol. 67, No. 110 / Friday, June 7, 2002 / Notices

represent the client, and that the APO material would remain with the lead attorney. Once at his new law firm, two other attorneys also signed the APO. Ten months after the Commission made a final APO release, the lead attorney stated that he learned that he should no longer possess the BPI after he spoke with an employee of the Commission about another matter. His client was appealing Department of Commerce findings and the lead attorney asserted that he believed that he was entitled to retain the BPI until the proceedings on the DOC appeal were completed. The other two attorneys never accessed the materials that had been released under the APO, but one of them reviewed a document drafted by the lead attorney, which contained BPI.

The Commission determined that the three attorneys breached the APO by failing to destroy all copies of BPI disclosed under the APO within 60 days of the completion of the Commission's investigation. The attorneys also failed to file a certificate attesting that to their knowledge and belief all copies of the BPI had been returned or destroyed, and that no copies of BPI had been made available to any person to whom disclosure was not specifically authorized at the time they were required to return or destroy the BPI.

The Commission issued warning letters to the three attorneys. As mitigating circumstances, the Commission considered that this was the only breach in which any of the attorneys had been involved within the period generally examined by the Commission for purposes of determining sanctions, that the breach was unintentional, and that prompt action was taken to remedy the breach once the Secretary advised them of a potential breach.

*Case 32:* The Commission was notified by a lead attorney that an associate at his law firm had discovered the BPI version of a prehearing brief in a file not designated for APO materials and which was accessible by non-APO signatories. A second attorney at the law firm admitted to taking two copies of the prehearing brief, which contained BPI, into his possession, but could only account for having properly returned one of the copies to the law firm's APO filing room. No one at the firm knew how or when the document was placed in the non-APO file or whether anyone not on the APO reviewed it. Immediately after the document was discovered, the attorneys had it numbered, stamped, and filed in the appropriate APO filing room.

The Commission determined that both attorneys breached the APO. The

Commission held the lead attorney responsible because he had the ultimate responsibility for the safe keeping of the APO materials entrusted to him. Despite that responsibility, he allowed a document containing BPI to be placed in a file accessible to persons not covered by the APO. The Commission also held the second attorney responsible because he lost track of a document containing BPI and possibly caused it to be placed in a file accessible to non-signatories of the APO.

The Commission issued warning letters to both attorneys. As mitigating circumstances, it considered that both attorneys had no prior breaches in the period generally examined by the Commission for purposes of determining sanctions, that the breach was unintentional, and that prompt action was taken to remedy the breach in that the law firm changed its APO procedures and held a mandatory seminar for all personnel regarding APO materials. The Commission noted that, although it issued warning letters, issuance of a private letter of reprimand was possible if a non-signatory had actually read the BPI. However, the Commission considered it significant that the non-signatories that had access to the BPI were employees of the law firm and likely did not divulge the information to anyone outside the firm.

*Case 33:* An attorney filed the public version of an opposition to a motion for modification of stay orders and a motion for sanctions with the U.S. Court of Appeals for the Federal Circuit ("CAFC"). The document contained confidential business information ("CBI") obtained pursuant to a Commission APO. Seven days after the attorney filed the document, opposing counsel sent a letter to the attorney and other interested counsel informing them of the potential breach. The attorney immediately asked the CAFC to place the original opposition under seal and filed a revised public version of his opposition four days after the date of opposing counsel's notification letter. The Commission determined that the information in question was not publicly available, as argued by the attorney, and that the attorney had breached the APO.

The Commission issued a warning letter to the attorney. As mitigating factors, the Commission considered that he had no prior APO breaches, that the breach was unintentional, that prompt action was taken to remedy the breach, and that no non-signatory to the APO actually read the document

*Case 34:* A law firm served the first-day BPI verison of its post-conference brief on another law firm that was not

a signatory to the Commission's APO. The same day an attorney at the non-signatory firm called the law firm and stated that he had been improperly served with the BPI version of the brief. This attorney did not view the BPI and the first law firm retrieved the brief later in the day. Two days later the first law firm sent a letter to the Commission regarding the incident.

Several attorneys and consultants were involved in preparation of the post-conference brief, but not all of them had direct involvement in filing and serving the brief. Five project assistants were responsible for the filing and service of the brief.

The Commission determined that the APO had been breached because BPI was provided to unauthorized persons. The Commission found that all five project assistants, the attorney in charge of supervising the project assistants, and a consultant who signed the certificate of service breached the APO, but that the lead attorney did not breach the APO.

The Commission found that the project assistants breached the APO because they improperly labeled one of the post-conference briefs, which was sent to a non-signatory of the APO. The attorney in charge of the project assistants breached the APO because he undertook in the APO application to supervise clerical employees, which he failed to do and this failure resulted in the service of BPI on a non-signatory to the APO. The consultant who signed the certificate of service breached the APO because, although the certificate he signed included only those firms that were entitled to receive BPI under the APO, he should have ensured that the copies to be served were labeled properly. Finally, the Commission found that the lead attorney did not breach the APO because in the APO application he delegated the responsibility of supervising clerical employees to another attorney, and the Commission found that this delegation was reasonable in light of the supervising attorney's regular practice before the Commission.

The Commission issued warning letters to the five project assistants, the attorney in charge of supervising clerical personnel, and the consultant who signed the certificate of service. As mitigating circumstances the Commission considered that the breach was unintentional, that prompt action was taken to remedy the breach, that the non-signatory who received the brief containing BPI did not view the document, that there were no prior breaches within the period generally examined by the Commission for

purposes of determining sanctions, and that the law firm revised its procedures regarding APOs in light of the breaches.

*Case 35:* Three attorneys and a legal assistant were involved in the preparation of the public version of a prehearing brief. Twelve days after the public version of the brief was filed and served, the Secretary notified the law firm that it had failed to redact one item of bracketed BPI from a footnote in one of the exhibits. The public version of the brief, which contained unredacted BPI, was served on and possibly viewed by several non-signatories to the APO. The law firm immediately contacted all parties who had received the public version of the brief to arrange for the destruction or return of the offending page. Two days later the law firm filed a replacement page.

The Commission found that two of the attorneys (one of counsel and the other an associate) breached the APO because the lead attorney had delegated the responsibility of preparing the brief, properly bracketing BPI, and redacting BPI from the public version to the two attorneys. The Commission found that the lead attorney did not breach the APO because she reasonably delegated the responsibility of preparing and reviewing the public verison of the brief to not one, but two, experienced attorneys. Furthermore, it was reasonable for the lead attorney to rely on their representations that the brief was ready for dissemination to the public when she signed the public version and had additional copies disseminated to other non-signatories. The Commission also found that the legal assistant did not breach the APO because at all times she acted under the direction and supervision of the two attorneys responsible for the brief.

The Commission sanctioned both the associate and of counsel attorneys with a private letter of reprimand. As mitigating factors, it considered that the breach was unintentional, that corrective measures were taken immediately, that the law firm followed its internal APO procedures that were in place before the breach, that these procedures were further strengthened after the breach, and that both attorneys voluntarily led a training session on the revised procedures for other attorneys and staff. The of counsel attorney also had no prior breaches in the period generally considered significant by the Commission for the purposes of determining sanctions. As aggravating circumstances, the Commission considered the fact that the Secretary and not the law firm found the unredacted BPI in the public version of the brief, that it appeared that the BPI

was viewed by the non-signatories who received it, that the unredacted BPI revealed information from one of two importers when the Commission's staff report did not even reveal aggregate quantities for such importers because only two parties' information was involved. The associate attorney had one prior breach in the period generally examined by the Commission for the purposes of determining sanctions, which served as another aggravating factor for him. When the Commission sanctions someone in the associate's situation, it normally issues a private letter of reprimand, usually including additional requirements or prohibitions. However, the Commission issued only a private letter of reprimand to the associate because he voluntarily conducted a training session on the firm's APO procedures for other attorneys and staff.

*Case 36:* A law firm prepared the APO version of a prehearing brief containing BPI to be filed and served, but in the process of serving the brief, one copy was lost for 11 days. The law firm waited seven days before notifying the Commission of the missing brief. On the day the brief was lost, an associate with the firm went through several steps to make sure that all 14 copies of the brief were properly labeled for service. After she completed this process with the assistance of others, she arranged for a clerical worker and a legal assistant, who were both signatories to the APO, to hand carry the briefs to the Commission together to ensure that they were properly filed before the clerical worker delivered the service copies. The two employees took a taxicab to the Commission. After they filed the appropriate number of copies with the Commission, the legal assistant noticed that one of the copies was missing. The two employees presumed that they left the missing copy in the taxicab, but after contacting the cab company, the D.C. Cab Commission, and offering a $500 reward, the missing brief did not reappear. Eleven days after the two employees lost the envelope, it arrived at the law firm specified on its address label. The envelope was unopened.

The Commission determined that the clerical worker and the legal assistant breached the APO because the service copy of the APO version of the prehearing brief was missing for 11 days and was only eventually delivered to the correct APO recipient by an unknown person, possibly the cab driver who was a non-signatory to the APO. The Commission has consistently taken the position that it is a breach of an APO to make BPI available to an unauthorized person, and that it is not

necessary for the non-signatory to view the BPI for a breach to occur. Generally, the Commission does not hold support staff responsible for breaches if they are under the direct supervision and control of another, but it found that the circumstances surrounding this incident warranted such a determination. The service copy was under their control when it disappeared, and the disappearance was directly related to their failure to safeguard all copies of the brief at all times.

The Commission determined that the lead attorney in the investigations did not breach the APO. It found that he reasonably delegated the responsibility of filing and serving the APO version of the brief to the associate who had worked in the firm's international trade practice for approximately two years, who had no prior APO breaches, and who took a number of steps to ensure that the document containing BPI received under the APO was properly served.

The Commission found that the associate did not breach the APO, notwithstanding the fact that she had been delegated the responsibility of filing and serving the APO version of the brief in compliance with the APO requirements. The associate was very involved in the preparation of the brief for filing and service and appeared to have been very diligent in checking and double-checking the number of copies, the packaging of the copies, and the potential recipients to ensure proper delivery and compliance with the APO. The associate arranged for two people to hand deliver the filings to the Commission, both of whom had made similar filings on many prior occasions and neither of whom had previously breached an APO. The Commission therefore found that the associate reasonably delegated the responsibility for physically delivering the filing and service copies. The Commission noted that the only way the associate might have prevented this breach would have been to deliver the filing and service copies herself, which would be unreasonable. The Commission added that in rare circumstances such as these, this incident should not be included in the associate's file or be held against her in any future cases.

The Commission decided to issue warning letters to the clerical worker and the legal assistant. As mitigating factors, it considered that this was the only breach the two had committed within the period generally examined by the Commission for purposes of determining sanctions, that the breach was unintentional, that prompt action was taken to remedy the breach, and

**39438**   **Federal Register** / Vol. 67, No. 110 / Friday, June 7, 2002 / Notices

that the unknown person who eventually delivered the service copy did not open the envelope and read the BPI. One aggravating factor was that the missing service copy was not reported to the Commission until seven days after it was missing.

## IV. Investigations in Which No Breach Was Found

During 2001, the Commission completed six additional investigations in which no breach was found. One investigation was not completed, but was withdrawn by the Office of General Counsel, because the revealed information was not treated as BPI by the Commission. The reasons for a finding by the Commission of no breach included:

(1) The information disclosed at the hearing was sufficiently changed to make it no longer confidential;

(2) The information revealed was publicly available;

(3) The suppliers of the BPI had consented to the use of the information in U.S. District Court litigation and, therefore, providing BPI to the district court judge for in camera inspection was not a breach;

(4) The information was not BPI because it was a general description of the channels of distribution;

(5) The information revealed was hypothetical and therefore not BPI; and

(6) The Commission did not treat the information as BPI in its staff report.

Issued June 4, 2002.
By order of the Commission.
**Marilyn R. Abbott,**
*Secretary.*
[FR Doc. 02–14386 Filed 6–6–02; 8:45 am]
**BILLING CODE 7020–02–P**

---

## INTERNATIONAL TRADE COMMISSION

**[Investigation Nos. 303–TA–23, 731–TA–566–570, 731–TA–641 (Final) (Reconsideration) (Remand)]**

## Ferrosilicon From Brazil, China, Kazakhstan, Russia, Ukraine and Venezuela; Notice of Commission Determination to Conduct a Portion of the Hearing in Camera

**AGENCY:** U.S. International Trade Commission.

**ACTION:** Closure of a portion of a Commission hearing to the public.

**SUMMARY:** Upon request of domestic producer Elkem Metals Co., the Commission has determined to conduct a portion of its hearing in the above-captioned proceedings scheduled for June 6, 2002, in camera. See Commission rules 207.24(d), 201.13(m)

and 201.36(b)(4) (19 CFR 207.24(d), 201.13(m) and 201.36(b)(4)). The remainder of the hearing will be open to the public. The Commission has determined that the seven-day advance notice of the change to a meeting was not possible. See Commission rule 201.35(a), (c)(1) (19 CFR 201.35(a), (c)(1)).

**FOR FURTHER INFORMATION CONTACT:** Marc A. Bernstein, Office of General Counsel, U.S. International Trade Commission, 500 E Street, SW, Washington, DC 20436, telephone 202–205–3087, e-mail *mbernstein@usitc.gov*. Hearing-impaired individuals are advised that information on this matter may be obtained by contacting the Commission's TDD terminal on 202–205–1810.

**SUPPLEMENTARY INFORMATION:** The Commission believes that Elkem has justified the need for a closed session. Elkem seeks a closed session to allow testimony concerning the effect domestic ferrosilicon producers' agreement to establish floor prices had on U.S. ferrosilicon prices during the Commission's original periods of investigation. Because such discussions will necessitate disclosure of business proprietary information (BPI), they can only occur if a portion of the hearing is held in camera. In making this decision, the Commission nevertheless reaffirms its belief that whenever possible its business should be conducted in public.

The hearing will include public presentations by domestic producers and by respondents, with questions from the Commission. In addition, the hearing will include an in camera session for a confidential presentation by Elkem and for questions from the Commission relating to the BPI, followed by an in camera rebuttal presentation by respondents and for questions from the Commission relating to the BPI. For any in camera session the room will be cleared of all persons except those who have been granted access to BPI under a Commission administrative protective order (APO) and are included on the Commission's APO Service list in this investigation. See 19 CFR 201.35(b)(1), (2). The time for the parties' presentations and rebuttals in the in camera session will be taken from their respective overall allotments for the hearing. All persons planning to attend the in camera portions of the hearing should be prepared to present proper identification.

**Authority:** The General Counsel has certified, pursuant to Commission Rule 201.39 (19 CFR 201.39) that, in her opinion, a portion of the Commission's hearing in

Ferrosilicon from Brazil, China, Kazakhstan, Russia, Ukraine, and Venezuela, Inv. Nos. 303–TA–23, 731–TA–566–570, 731–TA–641 (Final) (Reconsideration) (Remand) may be closed to the public to prevent the disclosure of BPI.

Issued: June 4, 2002.
By order of the Commission.
**Marilyn R. Abbott,**
*Secretary.*
[FR Doc. 02–14332 Filed 6–6–02; 8:45 am]
**BILLING CODE 7020–02–P**

---

## INTERNATIONAL TRADE COMMISSION

**[Investigation No. 701–TA–416 (Final)]**

## Individually Quick Frozen Red Raspberries From Chile

**AGENCY:** International Trade Commission.

**ACTION:** Termination of investigation.

**SUMMARY:** On May 22, 2002, the Department of Commerce published notice in the **Federal Register** of a negative final determination of subsidies in connection with the subject investigation (67 FR 35961). Accordingly, pursuant to § 207.40(a) of the Commission's rules of practice and procedure (19 CFR 207.40(a)), the countervailing investigation concerning individually quick frozen red raspberries from Chile (investigation No. 701–TA–416 (Final)) is terminated.

**EFFECTIVE DATE:** June 3, 2002.

**FOR FURTHER INFORMATION CONTACT:** Diane J. Mazur (202–205–3184), Office of Investigations, U.S. International Trade Commission, 500 E Street SW., Washington, DC 20436. Hearing-impaired individuals are advised that information on this matter can be obtained by contacting the Commission's TDD terminal on 202–205–1810. Persons with mobility impairments who will need special assistance in gaining access to the Commission should contact the Office of the Secretary at 202–205–2000. General information concerning the Commission may also be obtained by accessing its internet server (*http://www.usitc.gov*). The public record for this investigation may be viewed on the Commission's electronic docket (EDIS-ON-LINE) at *http://dockets.usitc.gov/eol/public*.

**Authority:** This investigation is being terminated under authority of title VII of the Tariff Act of 1930; this notice is published pursuant to § 201.10 of the Commission's rules (19 CFR 201.10).

Issued: June 4, 2002.

**28256**        **Federal Register** / Vol. 68, No. 100 / Friday, May 23, 2003 / Notices

Investigations, U.S. International Trade Commission, 500 E Street, SW., Washington, DC 20436. Hearing-impaired persons can obtain information on this matter by contacting the Commission's TDD terminal on 202–205–1810. Persons with mobility impairments who will need special assistance in gaining access to the Commission should contact the Office of the Secretary at 202–205–2000. General information concerning the Commission may also be obtained by accessing its Internet server (*http:// www.usitc.gov*). The public record for this investigation may be viewed on the Commission's electronic docket (EDIS) at *http://edis.usitc.gov.*

**SUPPLEMENTARY INFORMATION:**

*Background.*—The final phase of this investigation is being scheduled as a result of an affirmative preliminary determination by the Department of Commerce that imports of refined brown aluminum oxide from China are being sold in the United States at less than fair value within the meaning of section 733 of the Act (19 U.S.C. 1673b). The investigation was requested in a petition filed on November 20, 2002, by Washington Mills Company, Inc., North Grafton, MA.[2]

*Participation in the investigation and public service list.*—Persons, including industrial users of the subject merchandise and, if the merchandise is sold at the retail level, representative consumer organizations, wishing to participate in the final phase of this investigation as parties must file an entry of appearance with the Secretary to the Commission, as provided in section 201.11 of the Commission's rules, no later than 21 days prior to the hearing date specified in this notice. A party that filed a notice of appearance during the preliminary phase of the investigation need not file an additional notice of appearance during this final phase. The Secretary will maintain a public service list containing the names and addresses of all persons, or their representatives, who are parties to the investigation.

*Limited disclosure of business proprietary information (BPI) under an administrative protective order (APO) and BPI service list.*—Pursuant to section 207.7(a) of the Commission's rules, the Secretary will make BPI gathered in the final phase of this investigation available to authorized applicants under the APO issued in the investigation, provided that the application is made no later than 21 days prior to the hearing date specified in this notice. Authorized applicants must represent interested parties, as defined by 19 U.S.C. 1677(9), who are parties to the investigation. A party granted access to BPI in the preliminary phase of the investigation need not reapply for such access. A separate service list will be maintained by the Secretary for those parties authorized to receive BPI under the APO.

*Staff report.*—The prehearing staff report in the final phase of this investigation will be placed in the nonpublic record on September 10, 2003, and a public version will be issued thereafter, pursuant to section 207.22 of the Commission's rules.

*Hearing.*—The Commission will hold a hearing in connection with the final phase of this investigation beginning at 9:30 a.m. on September 23, 2003, at the U.S. International Trade Commission Building. Requests to appear at the hearing should be filed in writing with the Secretary to the Commission on or before September 15, 2003. A nonparty who has testimony that may aid the Commission's deliberations may request permission to present a short statement at the hearing. All parties and nonparties desiring to appear at the hearing and make oral presentations should attend a prehearing conference to be held at 9:30 a.m. on September 18, 2003, at the U.S. International Trade Commission Building. Oral testimony and written materials to be submitted at the public hearing are governed by sections 201.6(b)(2), 201.13(f), and 207.24 of the Commission's rules. Parties must submit any request to present a portion of their hearing testimony *in camera* no later than 7 days prior to the date of the hearing.

*Written submissions.*—Each party who is an interested party shall submit a prehearing brief to the Commission. Prehearing briefs must conform with the provisions of section 207.23 of the Commission's rules; the deadline for filing is September 17, 2003. Parties may also file written testimony in connection with their presentation at the hearing, as provided in section 207.24 of the Commission's rules, and posthearing briefs, which must conform with the provisions of section 207.25 of the Commission's rules. The deadline for filing posthearing briefs is September 30, 2003; witness testimony must be filed no later than three days before the hearing. In addition, any person who has not entered an appearance as a party to the investigation may submit a written statement of information pertinent to the subject of the investigation on or before September 30, 2003. On October 15, 2003, the Commission will make available to parties all information on which they have not had an opportunity to comment. Parties may submit final comments on this information on or before October 17, 2003, but such final comments must not contain new factual information and must otherwise comply with section 207.30 of the Commission's rules. All written submissions must conform with the provisions of section 201.8 of the Commission's rules; any submissions that contain BPI must also conform with the requirements of sections 201.6, 207.3, and 207.7 of the Commission's rules. The Commission's rules do not authorize filing of submissions with the Secretary by facsimile or electronic means, except to the extent permitted by section 201.8 of the Commission's rules, as amended, 67 Fed. Reg. 68036 (November 8, 2002).

In accordance with sections 201.16(c) and 207.3 of the Commission's rules, each document filed by a party to the investigation must be served on all other parties to the investigation (as identified by either the public or BPI service list), and a certificate of service must be timely filed. The Secretary will not accept a document for filing without a certificate of service.

**Authority:** This investigation is being conducted under authority of title VII of the Tariff Act of 1930; this notice is published pursuant to section 207.21 of the Commission's rules.

Issued: May 19, 2003.

By order of the Commission.

**Marilyn R. Abbott,**

*Secretary to the Commission.*

[FR Doc. 03–12936 Filed 5–22–03; 8:45 am]

**BILLING CODE 7020–02–P**

---

## INTERNATIONAL TRADE COMMISSION

## Summary of Commission Practice Relating to Administrative Protective Orders

**AGENCY:** International Trade Commission.

**ACTION:** Summary of Commission practice relating to administrative protective orders.

**SUMMARY:** Since February 1991, the U.S. International Trade Commission ("Commission") has issued an annual report on the status of its practice with respect to violations of its administrative protective orders ("APOs") in investigations under Title VII of the Tariff Act of 1930 in response to a direction contained in the Conference Report to the Customs and

---

[2] On November 27, 2002, the petition was amended to include two additional petitioners, C–E Minerals, King of Prussia, PA, and Treibacher Schleifmittel Corporation, Niagara Falls, NY.

**Federal Register**/Vol. 68, No. 100/Friday, May 23, 2003/Notices                    **28257**

Trade Act of 1990. Over time, the Commission has added to its report discussions of APO breaches in Commission proceedings other than Title VII and violations of the Commission's rule on bracketing business proprietary information ("BPI") (the "24-hour rule"), 19 CFR 207.3(c). This notice provides a summary of investigations of breaches in Title VII, sections 202 and 204 of the Trade Act of 1974, as amended, and section 337 of the Tariff Act of 1930, as amended, completed during calendar year 2002. There were no completed investigations of 24-hour rule violations during that period. The Commission intends that this report educate representatives of parties to Commission proceedings as to some specific types of APO breaches encountered by the Commission and the corresponding types of actions the Commission has taken.

**FOR FURTHER INFORMATION CONTACT:**
Carol McCue Verratti, Esq., Office of the General Counsel, U.S. International Trade Commission, telephone (202) 205–3088. Hearing impaired individuals are advised that information on this matter can be obtained by contacting the Commission's TDD terminal at (202) 205–1810. General information concerning the Commission can also be obtained by accessing its Internet server (*http://www.usitc.gov*).

**SUPPLEMENTARY INFORMATION:**
Representatives of parties to investigations conducted under Title VII of the Tariff Act of 1930, sections 202 and 204 of the Trade Act of 1974, and section 337 of the Tariff Act of 1930, as amended, may enter into APOs that permit them, under strict conditions, to obtain access to BPI (Title VII) or confidential business information ("CBI") (sections 201–204 and section 337) of other parties. *See* 19 U.S.C. 1677f; 19 CFR 207.7; 19 U.S.C. 2252(i); 19 CFR 206.17; 19 U.S.C. 1337(n); 19 CFR 210.5, 210.34. The discussion below describes APO breach investigations that the Commission has completed, including a description of actions taken in response to breaches. The discussion covers breach investigations completed during calendar year 2002.

Since 1991, the Commission has published annually a summary of its actions in response to violations of Commission APOs and the 24-hour rule. *See* 56 FR 4846 (Feb. 6, 1991); 57 FR 12,335 (Apr. 9, 1992); 58 FR 21,991 (Apr. 26, 1993); 59 FR 16,834 (Apr. 8, 1994); 60 FR 24,880 (May 10, 1995); 61 FR 21,203 (May 9, 1996); 62 FR 13,164 (March 19, 1997); 63 FR 25064 (May 6, 1998); 64 FR 23355 (April 30, 1999); 65 FR 30434 (May 11, 2000); 66 FR 27685 (May 18, 2001); 67 FR 39425 (June 7, 2002). This report does not provide an exhaustive list of conduct that will be deemed to be a breach of the Commission's APOs. APO breach inquiries are considered on a case-by-case basis.

As part of the effort to educate practitioners about the Commission's current APO practice, the Commission Secretary issued in March 2001 a third edition of *An Introduction to Administrative Protective Order Practice in Import Injury Investigations* (Pub. L. 3403). This document is available upon request from the Office of the Secretary, U.S. International Trade Commission, 500 E Street, SW., Washington, DC 20436, tel. (202) 205–2000.

**I. In General**

The current APO form for antidumping and countervailing duty investigations, which the Commission has used since March 2001, requires the applicant to swear that he or she will:

(1) Not divulge any of the BPI obtained under the APO and not otherwise available to him, to any person other than—

(i) Personnel of the Commission concerned with the investigation,

(ii) The person or agency from whom the BPI was obtained,

(iii) A person whose application for disclosure of BPI under this APO has been granted by the Secretary, and

(iv) Other persons, such as paralegals and clerical staff, who (a) are employed or supervised by and under the direction and control of the authorized applicant or another authorized applicant in the same firm whose application has been granted; (b) have a need thereof in connection with the investigation; (c) are not involved in competitive decisionmaking for an interested party which is a party to the investigation; and (d) have submitted to the Secretary a signed Acknowledgment for Clerical Personnel in the form attached hereto (the authorized applicant shall also sign such acknowledgment and will be deemed responsible for such persons' compliance with the APO);

(2) Use such BPI solely for the purposes of the Commission investigation or for judicial or binational panel review of such Commission investigation;

(3) Not consult with any person not described in paragraph (1) concerning BPI disclosed under this APO without first having received the written consent of the Secretary and the party or the representative of the party from whom such BPI was obtained;

(4) Whenever materials (*e.g.*, documents, computer disks, etc.) containing such BPI are not being used, store such material in a locked file cabinet, vault, safe, or other suitable container (N.B.: storage of BPI on so-called hard disk computer media is to be avoided, because mere erasure of data from such media may not irrecoverably destroy the BPI and may result in violation of paragraph C of the APO);

(5) Serve all materials containing BPI disclosed under this APO as directed by the Secretary and pursuant to section 207.7(f) of the Commission's rules;

(6) Transmit each document containing BPI disclosed under this APO:

(i) With a cover sheet identifying the document as containing BPI,

(ii) With all BPI enclosed in brackets and each page warning that the document contains BPI,

(iii) If the document is to be filed by a deadline, with each page marked "Bracketing of BPI not final for one business day after date of filing," and

(iv) If by mail, within two envelopes, the inner one sealed and marked "Business Proprietary Information—To be opened only by [name of recipient]", and the outer one sealed and not marked as containing BPI;

(7) Comply with the provision of this APO and section 207.7 of the Commission's rules;

(8) Make true and accurate representations in the authorized applicant's application and promptly notify the Secretary of any changes that occur after the submission of the application and that affect the representations made in the application (*e.g.*, change in personnel assigned to the investigation);

(9) Report promptly and confirm in writing to the Secretary any possible breach of the APO; and

(10) Acknowledge that breach of the APO may subject the authorized applicant and other persons to such sanctions or other actions as the Commission deems appropriate including the administrative sanctions and actions set out in this APO.

The APO further provides that breach of an APO may subject an applicant to:

(1) Disbarment from practice in any capacity before the Commission along with such person's partners, associates, employer, and employees, for up to seven years following publication of a determination that the order has been breached;

(2) Referral to the United States Attorney;

(3) In the case of an attorney, accountant, or other professional, referral to the ethics panel of the appropriate professional association;

(4) Such other administrative sanctions as the Commission determines to be appropriate, including public release of or striking from the record any information or briefs submitted by, or on behalf of, such person or the party he represents; denial of further access to BPI in the current or any future investigations before the Commission; and issuance of a public or private letter of reprimand; and

(5) Such other actions, including but not limited to, a warning letter, as the Commission determines to be appropriate.

Commission employees are not signatories to the Commission's APOs and do not obtain access to BPI through APO procedures. Consequently, they are not subject to the requirements of the APO with respect to the handling of BPI. However, Commission employees are subject to strict statutory and regulatory constraints concerning BPI, and face potentially severe penalties for noncompliance. *See* 18 U.S.C. 1905; Title 5, U.S. Code; and Commission personnel policies implementing the statutes. Although the Privacy Act (5 U.S.C. 552a) limits the Commission's authority to disclose any personnel action against agency employees, this should not lead the public to conclude that no such actions have been taken.

An important provision of the Commission's rules relating to BPI is the "24-hour" rule. This rule provides that parties have one business day after the deadline for filing documents containing BPI to file a public version of the document. The rule also permits changes to the bracketing of information in the proprietary version within this one-day period. No changes—other than changes in bracketing—may be made to the proprietary version. The rule was intended to reduce the incidence of APO breaches caused by inadequate bracketing and improper placement of BPI. The Commission urges parties to make use of the rule. If a party wishes to make changes to a document other than bracketing, such as typographical changes or other corrections, the party must ask for an extension of time to file an amended document pursuant to section 201.14(b)(2) of the Commission's rules.

## II. Investigations of Alleged APO Breaches

Upon finding evidence of an APO breach or receiving information that there is a reason to believe one has occurred, the Commission Secretary notifies relevant offices in the agency that an APO breach investigation file has been opened. Upon receiving notification from the Secretary, the Office of General Counsel (OGC) begins to investigate the matter. The OGC prepares a letter of inquiry to be sent to the possible breacher over the Secretary's signature to ascertain the possible breacher's views on whether a breach has occurred. If, after reviewing the response and other relevant information, the Commission determines that a breach has occurred, the Commission often issues a second letter asking the breacher to address the questions of mitigating circumstances and possible sanctions or other actions. The Commission then determines what action to take in response to the breach. In some cases, the Commission determines that although a breach has occurred, sanctions are not warranted, and therefore has found it unnecessary to issue a second letter concerning what sanctions might be appropriate. Instead, it issues a warning letter to the individual. A warning letter is not considered to be a sanction.

Sanctions for APO violations serve two basic interests:

(a) Preserving the confidence of submitters of BPI that the Commission is a reliable protector of BPI; and (b) disciplining breachers and deterring future violations. As the Conference Report to the Omnibus Trade and Competitiveness Act of 1988 observed, "[T]he effective enforcement of limited disclosure under administrative protective order depends in part on the extent to which private parties have confidence that there are effective sanctions against violation." H.R. Conf. Rep. No. 576, 100th Cong., 1st Sess. 623 (1988).

The Commission has worked to develop consistent jurisprudence, not only in determining whether a breach has occurred, but also in selecting an appropriate response. In determining the appropriate response, the Commission generally considers mitigating factors such as the unintentional nature of the breach, the lack of prior breaches committed by the breaching party, the corrective measures taken by the breaching party, and the promptness with which the breaching party reported the violation to the Commission. The Commission also considers aggravating circumstances, especially whether persons not under the APO actually read the BPI. The Commission considers whether there are prior breaches by the same person or persons in other investigations and multiple breaches by the same person or persons in the same investigation.

The Commission's rules permit economists or consultants to obtain access to BPI under the APO if the economist or consultant is under the direction and control of an attorney under the APO, or if the economist or consultant appears regularly before the Commission and represents an interested party who is a party to the investigation. 19 CFR 207.7(a)(3)(B) and (C). Economists and consultants who obtain access to BPI under the APO under the direction and control of an attorney nonetheless remain individually responsible for complying with the APO. In appropriate circumstances, for example, an economist under the direction and control of an attorney may be held responsible for a breach of the APO by failing to redact APO information from a document that is subsequently filed with the Commission and served as a public document. This is so even though the attorney exercising direction or control over the economist or consultant may also be held responsible for the breach of the APO.

The records of Commission investigations of alleged APO breaches in antidumping and countervailing duty cases are not publicly available and are exempt from disclosure under the Freedom of Information Act, 5 U.S.C. 552, section 135(b) of the Customs and Trade Act of 1990, and 19 U.S.C. 1677f(g).

The breach most frequently investigated by the Commission involves the APO's prohibition on the dissemination of BPI to unauthorized persons. Such dissemination usually occurs as the result of failure to delete BPI from public versions of documents filed with the Commission or transmission of proprietary versions of documents to unauthorized recipients. Other breaches have included: the failure to bracket properly BPI in proprietary documents filed with the Commission; the failure to report immediately known violations of an APO; and the failure to supervise adequately non-legal personnel in the handling of BPI.

Counsel participating in Title VII investigations have reported to the Commission potential breaches involving the electronic transmission of public versions of documents. In these cases, the document transmitted appears to be a public document with BPI omitted from brackets. However, the BPI is actually retrievable by manipulating codes in software. The Commission has found that the electronic transmission of a public document containing BPI in a recoverable form was a breach of the APO.

The Commission advised in the preamble to the notice of proposed rulemaking in 1990 that it will permit authorized applicants a certain amount of discretion in choosing the most appropriate method of safeguarding the confidentiality of the BPI. However, the Commission cautioned authorized applicants that they would be held responsible for safeguarding the confidentiality of all BPI to which they are granted access and warned applicants about the potential hazards of storage on hard disk. The caution in that preamble is restated here:

[T]he Commission suggests that certain safeguards would seem to be particularly useful. When storing business proprietary information on computer disks, for example, storage on floppy disks rather than hard disks is recommended, because deletion of information from a hard disk does not necessarily erase the information, which can often be retrieved using a utilities program. Further, use of business proprietary information on a computer with the capability to communicate with users outside the authorized applicant's office incurs the risk of unauthorized access to the information through such communication. If a computer malfunctions, all business proprietary information should be erased from the machine before it is removed from the authorized applicant's office for repair. While no safeguard program will insulate an authorized applicant from sanctions in the event of a breach of the administrative protective order, such a program may be a mitigating factor. Preamble to notice of proposed rulemaking, 55 FR 24100, 24103 (June 14, 1990).

In 2002, the Commission completed two investigations of instances in which members of a law firm or consultants working with a firm were granted access to APO materials by the firm although they were not APO signatories (Cases 1 and 5). In these cases and four others in 2001, the firm and the person using the BPI mistakenly believed an APO application had been filed for that person. The Commission determined in all these cases that the person who was a non-signatory, and therefore did not agree to be bound by the APO, could not be found to have breached the APO. Action could be taken against these persons, however, under Commission rule 201.15 (19 CFR 201.15) for good cause shown. In all cases, the Commission decided that the non-signatory was a person who appeared regularly before the Commission and was aware of the requirements and limitations related to APO access and should have verified his or her APO status before obtaining access to and using the BPI. In all but one case, the Commission issued warning letters because it was the first time the persons

in question were subject to possible sanctions under section 201.15.

Also in 2002, the Commission found the lead attorney to be responsible for breaches in at least four cases where he or she failed to provide adequate supervision over the handling of BPI. (Cases 1, 3, 9, and 10). Lead attorneys should be aware that their responsibilities for overall supervision of an investigation, when a breach has been caused by the actions of someone else in the investigation, may lead to a finding that the lead attorney has also violated the APO. The Commission has found that a lead attorney did not violate the APO in cases where his delegation of authority was reasonable.

## III. Specific Investigations in Which Breaches Were Found

The Commission presents the following case studies to educate users about the types of APO breaches found by the Commission. The studies provide the factual background, the actions taken by the Commission, and the factors considered by the Commission in determining the appropriate actions. The Commission has included some of the specific facts in the descriptions of investigations where disclosure of such facts could reveal the identity of a particular breacher. Thus, in some cases, apparent inconsistencies in the facts set forth in this notice result from the Commission's inability to disclose particular facts more fully.

*Case 1:* Four attorneys were investigated for a breach involving the release of BPI on an attorney in the firm who was not a signatory to the APO. The attorneys who were involved in the Commission investigation assumed that they all had been included on the APO and shared the APO materials with each other. However, one of these attorneys, an associate, had not been included on the APO. The lead attorney was found to have breached the APO because he failed to provide adequate supervision over the handling of BPI and permitted the release of BPI to an associate in his firm who was not a signatory to the APO. The other attorneys were found to have breached because they provided the non-signatory with BPI to use in a Commission investigation. The fourth attorney did not breach the APO because he was a non-signatory, but the Commission determined that his actions were sufficient to demonstrate good cause for the imposition of sanctions under 19 CFR 201.15. He was not a signatory to the APO when he reviewed BPI contained in documents received under the APO and utilized the BPI in the preparation of a brief in the Commission investigation.

The three attorneys who breached the APO were issued warning letters. This was their first breach of an APO involving a section 201.15 violation. The attorney who was a non-signatory was issued a private letter of reprimand. Although this was his first violation under section 201.15, he had helped to cause a breach of the APO in a previous matter by failing to redact BPI from the public version of a brief filed in the Commission investigation. This breach had been previously investigated and reported. In that APOB investigation, the Commission found that there was sufficient information to suggest that a non-signatory outside the firm viewed the BPI.

*Case 2:* The Commission determined that an attorney, an APO coordinator, and a legal secretary breached the APO. The APO coordinator, who was a senior legal secretary, gave another legal secretary an attorney's edits to a draft brief and provided instructions regarding redaction of the CBI from brackets and the subsequent faxing of the draft brief to clients. The legal secretary did not remove all the CBI from the brackets because she believed it was the clients' information. She also did not have an attorney review the document, as required by the firm's procedures, after she made the edits and before she faxed the document to the clients. In the affidavits provided by the firm in this APOB investigation, there was a dispute between the legal secretary and the rest of the firm as to whether the legal secretary had received adequate instructions from the APO coordinator regarding the handling of the CBI. One of the attorneys working on the brief also recalled instructing the legal secretary to remove all the CBI from the brackets because the information had been generated by multiple clients.

In defending against the breach allegations, the firm raised issues about whether the information was CBI. The Commission considered each of the arguments and determined that CBI had been released.

In spite of the dispute over instructions given to the legal secretary, the Commission determined that she had breached the APO. In addition, the Commission determined that the APO coordinator and the attorney who made the edits to the brief, and who was also the lead attorney and managing partner in the firm, breached the APO for failure to provide adequate supervision over the legal secretary.

The Commission issued private letters of reprimand to all three persons, after considering that persons who were non-signatories to the APO actually read the

CBI. The Commission considered the mitigating circumstances that the firm had reported the breach promptly, took immediate steps to minimize the effect of the breach, and strengthened procedures to prevent future breaches. In addition, none of the persons found to have breached had a record of prior breaches.

*Case 3:* The Commission determined that two attorneys breached the APO when one of them sent copies of the Commission's confidential views to executives of the law firm's clients with an attached cover memorandum that had been drafted by one attorney and signed by the firm's lead attorney. In determining that the lead attorney breached the APO, the Commission considered the fact that the lead attorney had overall responsibility for APO matters. The Commission issued private letters of reprimand to both attorneys, even though it was both attorneys' first breach, because of the serious nature of the breach. The Commission noted that the confidential brief had been in the possession of the clients for seven days before the breach was discovered and that two of the clients read the BPI.

*Case 4:* The Commission investigated whether two attorneys had breached the APO. The lead attorney had asked at the Commission hearing if the confidential record from a prior investigation could be incorporated into the confidential record of the subject investigation. The Commission had not yet determined whether to allow the prior record to be used when the attorney used the BPI from the previous investigation by referencing it to support arguments in his post-hearing brief. The Commission determined that the lead attorney breached the APO by including arguments in his post-hearing brief that referenced and compared BPI in the previous investigation with BPI in the subject investigation. The Commission found a breach even though the BPI was not actually disclosed to non-signatories to the APO.

The Commission noted that it had not found that the attorney breached the APO by making arguments using public information, by asking the Commission to include BPI from one investigation in the confidential record of another investigation, or by asking the Commission in the subject investigation to consider issues already discussed in the confidential prehearing staff report of the subject investigation.

The Commission decided to issue a warning letter after considering that this was the only breach in which the attorney had been involved within the two year period prior to the breach, his

prompt action to remedy the breach, and the fact there had been no disclosure of BPI to persons not already under the APO. The Commission also noted that the attorney might not have realized that comparing BPI from two different investigations, and referencing without disclosing BPI from a separate investigation, could trigger an APO violation.

The Commission decided the second attorney did not breach the APO because the lead attorney had clearly stated that the decision to put the arguments in the post-hearing brief was his alone.

*Case 5:* The Commission investigated a breach involving the use of CBI by one attorney in a firm who was not a signatory to the APO. The lead attorney for the firm in the Commission investigation assigned an associate to the investigation and gave him access to CBI. Both attorneys thought the associate was a signatory to the APO. The Commission found that the lead attorney breached the APO by assigning the associate to handle CBI when he was not a signatory to the APO. The Commission also found that the lead attorney failed adequately to supervise the handling of CBI. The Commission found that the associate did not breach the APO because he was not a signatory. However, the Commission found there was good cause to caution the associate pursuant to 19 CFR 201.15(a).

The Commission issued warning letters to both attorneys. The mitigating circumstances considered by the Commission that led to warning letters included the facts that the breach was unintentional, that there were no prior breaches or allegations of violations under section 201.15 for either attorney within the prior two year period, that the attorneys immediately notified the Commission of the breach once they discovered it, that they took action to prevent further breaches, that the associate protected the CBI as if he had been a signatory, and that the firm immediately sought APO access to the CBI for the associate as soon as the breach was discovered.

*Case 6:* The Commission determined that two attorneys and a records administrator in a law firm breached the APO for failing to return or destroy a document containing BPI within the time required by the APO and for falsely certifying that it had been destroyed. When searching in an archives file to retrieve documents for litigation purposes, one of the attorneys discovered a copy of a post-hearing brief that had not been returned or destroyed with the rest of the APO material obtained in a Commission investigation.

The Commission found that both during and after the Commission investigation, that attorney and the records administrator failed to assure that the document in question was filed and stored in a manner and place that was inaccessible to persons unauthorized to review APO material, as required by 19 CFR 207.7(b)(1) and (4).

The Commission found that the senior attorney in the firm committed a breach because a document containing BPI was not filed properly or destroyed at the conclusion of the Commission investigation. The Commission noted that as head of his firm the senior attorney was responsible for establishing adequate procedures to assure that documents containing BPI are handled, maintained, and destroyed in a manner consistent with the Commission's APO regulations.

The Commission issued warning letters to the two attorneys and the records administrator. It considered the mitigating factors that the breach was unintentional, that prompt action was taken to report and remedy the breach, that no unauthorized person accessed the document, and, with regard to the first attorney and the records administrator, that this was their first breach. The senior attorney was found to have breached under similar circumstances in the previous year, but the Commission declined to issue a sanction because the current breach occurred prior to the one for which he had already received a warning letter and he had instituted new procedures at the firm to avoid future breaches as a result of the previous year's APOB investigation.

*Case 7:* The Commission determined that three attorneys breached an APO by failing to redact BPI from one page of the public version of their prehearing brief. The three attorneys were mid-level associates and were solely responsible for preparing the public version of the brief. The brief was filed with the Commission and served on the parties on the public service list including a non-signatory. The brief was also sent to several clients who were not signatories.

The Commission determined that three other attorneys whose names were on the brief did not breach. None of these attorneys participated in the preparation of the public version of the brief. In addition, the Commission found that the lead attorney did not breach because he had reasonably delegated the task of preparing the public version of the brief to three experienced associates. None of these associates had previously breached an APO.

The Commission issued private letters of reprimand to the three associates after considering the aggravating circumstances that the Secretary's Office and not the law firm discovered the breach; that the breach was not discovered until 19 days after the brief had been filed and served; and that the BPI may have been read by one or more non-signatories to the APO. The Commission noted that, although the attorneys stated that no recipients of the brief informed their firm that they had read, copied, or transmitted the public version of the brief, it was not clear that non-signatories did not review the BPI.

In reaching its decision to issue private letters of reprimand, the Commission also considered the mitigating circumstances that the breach was unintentional, that corrective measures were taken immediately after the breach was discovered, that there were internal APO procedures before the breach that were followed, and that these procedures were strengthened after the breach.

*Case 8:* The Commission determined that two attorneys breached the APO by e-mailing an electronic version of a public prehearing brief, which contained electronically masked but recoverable CBI, to their clients and to parties that had agreed to that type of service. Although the brief appeared to be a public document with CBI omitted from within the brackets, the deleted CBI was retrievable electronically. Both attorneys believed that they were e-mailing a document from which CBI was deleted and not retrievable.

The Commission, deciding not to sanction the attorneys, sent them warning letters. The Commission reached that decision after giving consideration to the facts that this was the only breach in which either attorney had been involved within the prior two year period considered by the Commission in determining sanctions, that the breach was unintentional, that the breach was discovered by the attorneys, that there was no indication that anyone not on the APO viewed the CBI, that prompt action was taken to remedy the breach, and that new procedures had been established by the firm to avoid a similar APO violation in the future.

*Case 9:* The Commission determined that a lead attorney breached the APO by failing to provide adequate supervision over his firm's personnel regarding the care of CBI. Another law firm had been added to the public service list late in an investigation. The clerical personnel in charge of serving documents manually created mailing labels for the firm rather than creating computer generated labels that were segregated between public and APO lists. The secretary who typed the labels mistakenly typed them for service of APO materials. The newly added firm received APO materials for two days. The outer envelopes were opened but the inner envelopes remained sealed and were returned to the original law firm.

Upon inquiry, the law firm was unable to provide the Commission with the name of the person responsible for the mislabeling. However, the Commission did determine that the lead attorney was responsible for the breach. He had signed the APO application for the clerical personnel indicating he was responsible for their compliance with APO requirements.

The Commission issued a warning letter to the lead attorney after considering that the breach was unintentional, that his firm took immediate steps to reeducate its personnel regarding the proper handling of CBI, that non-signatories had not reviewed the BPI, and that the lead attorney had not breached an APO within a prior two year period considered by the Commission in determining an appropriate sanction.

*Case 10:* The Commission considered whether two attorneys and one clerical employee breached the APO. The breach occurred when a clerical employee served a law firm with the BPI version of a post-conference brief although the firm was not a signatory to the Commission's APO. The recipient firm notified the law firm that the package was opened, but the brief was viewed only to the extent of determining that it was a document containing BPI covered by the Commission's APO, not Commerce's APO, to which the firm was a signatory. The Commission determined that, in addition to the clerical employee, the attorney supervising the clerical employees and the lead attorney in the investigation were both responsible for the breach.

In a previous APOB investigation concerning the same Commission investigation, the Commission had found that five clerical employees, including the one responsible for this breach, and the same attorney who supervised the clerical employees in the investigations had breached the APO. Warning letters were issued at that time. The Commission did not find that the lead attorney had breached because he had reasonably delegated the responsibility of supervising the clerical employees to an experienced attorney who had no prior violations.

In the current APOB investigation, the Commission determined that the lead attorney was responsible for the breach because he was aware that both the supervising attorney and the clerical employee had previously breached the APO. Since the lead attorney had recently received a private letter of reprimand in a different breach investigation, the Commission issued a private letter of reprimand to the lead attorney with a requirement that he update his firm's APO procedures and conduct a training session for attorneys and staff involved in APO practice in his firm. The supervising attorney and the clerical employee both received private letters of reprimand. The Commission considered the unintentional nature of the breach, the fact that corrective measures were immediately taken to retrieve the document from the non-signatory law firm and to remove the project assistant from the APO, the immediate reporting of the incident to the Commission, and that no non-signatory viewed the BPI as mitigating circumstances and the prior breaches of both attorneys and the clerical employee as an aggravating circumstance.

*Case 11:* The Commission determined that two attorneys and a legal secretary breached the APO. An associate attorney and the secretary worked together to prepare the public version of a draft post-conference brief. The attorney e-mailed the brief in an electronic form that masked the BPI. However, one footnote contained unredacted BPI. The Microsoft Word macro that was used to mask BPI in the brief did not mask BPI in the footnotes. The secretary missed the BPI in one of the footnotes when she did a manual review of the brief before the attorney e-mailed it to eight clients. The attorney did not check the brief to be sure all BPI was masked before he e-mailed the document. The information provided in the APOB investigation indicated that the persons involved in the breach did not know that the BPI was recoverable by the recipients of the e-mail.

When the lead attorney who had been out of the office while the public brief was prepared and transmitted to the client returned, he reviewed the brief and discovered that one of the footnotes contained unmasked BPI. The associate attorney was directed to take immediate action to contact the Commission, to inform the recipients of the draft brief to destroy all paper and electronic versions of it, and to prepare a revised electronic brief with masked BPI and e-mail that to the same clients.

The Commission found that the lead secretary breached the APO by failing to

**28262**      **Federal Register** / Vol. 68, No. 100 / Friday, May 23, 2003 / Notices

redact BPI from the draft public brief which resulted in possession of the BPI by several non-signatories, including one who actually viewed the BPI. The Commission issued a warning letter to the secretary rather than a private letter of reprimand largely because she, as a clerical employee, was under the direct supervision of an attorney at the time of the breach. In addition, this was her first breach, the breach was unintentional, prompt action was taken to remedy the breach, and actions were taken by the firm to improve APO compliance procedures.

The Commission found that the lead attorney breached the APO because the associate attorney had e-mailed two versions of the public draft brief with masked but recoverable BPI. The Commission noted that the information provided in this APOB investigation indicated that it was the law firm's practice to e-mail public versions of documents containing masked but recoverable BPI to its clients. Further, although the first electronic brief had been retrieved or destroyed, there was no indication in the record that anyone had attempted to retrieve or destroy the electronic copies of the revised draft brief sent to the eight non-signatory clients. Consequently, the masked BPI in those electronic copies had evidently remained unprotected for at least nine months, and at risk of disclosure to APO non-signatories. The Commission determined that the lead attorney was not responsible for the breach involving BPI remaining visible in the one footnote as his delegation of the preparation of the public version of a brief to a mid-level associate was reasonable. However, the Commission issued the lead attorney a private letter of reprimand because of the serious problem raised by e-mailing electronic documents containing masked but retrievable BPI. The lead attorney had no prior breaches.

The associate attorney was also given a private letter of reprimand. The Commission reached its decision to sanction the associate after giving consideration to the existence of several mitigating factors with respect to the unredacted BPI, including the unintentional nature of the breach, the fact that corrective measures were immediately taken, the breach was reported to the Secretary's Office the following day, and certain procedures at the law firm were strengthened to prevent future breaches. The Commission noted that, with respect to the breach involving masked but recoverable BPI in both versions of the electronic brief, the breach was inadvertent. The Commission also

considered the fact this was the associate's first breach. A sanction was warranted, however, because a non-signatory viewed the unredacted BPI in the footnote in the first draft brief. Moreover, the Commission and not the law firm identified the breach involving the masked but recoverable BPI. Finally, there was no information on the record suggesting that anyone in the law firm had attempted to prevent disclosure to unauthorized persons of recoverable BPI contained in the revised draft brief.

*Case 12:* The Commission determined that three attorneys breached the APO. All three attorneys, who were from two different firms, had been responsible for preparing the public version of a joint brief in which not all BPI received under the APO had been redacted. After the public brief was completed, one of the firms sent copies to two of its clients where one office at each of the companies viewed the brief with the unredacted BPI. The Commission issued two of the attorneys private letters of reprimand and the third attorney received a private letter of reprimand with the additional requirement that he conduct an APO compliance seminar at his firm. This was the first breach for the first two attorneys, but the third attorney had breached another APO within two years of the occurrence of this breach. In issuing these sanctions, the Commission considered that BPI was viewed by non-signatories to the APO, and also considered the mitigating circumstances that the breach was unintentional; that corrective measures were taken immediately; that internal APO procedures existed before the breach and they had been followed; and that these procedures were strengthened.

A fourth attorney initially was found by the Commission to have breached the APO. His involvement with the preparation of the public brief had been solely to check the adequacy of the bracketing in the confidential version. He had delegated preparation of the public version to an attorney in his firm who was an experienced trade lawyer. The fourth attorney had sent the public brief to his clients not knowing that it contained unredacted BPI. During the sanctions phase of the APOB investigation, the fourth attorney cited a Commission summary of an APOB investigation completed in 2001 which had not been published during the breach phase of the current APOB investigation. The attorney argued that, since the facts contained in the summary were very similar to his circumstances and, in that case, the supervising attorney was found not to have breached, the Commission should

reconsider and reverse its decision that he had breached the APO. Based on these new arguments that had not been available to the attorney earlier, the Commission reconsidered and reversed its previous decision that he had breached.

*Case 13:* The Commission determined that a lead economic consultant breached the APO by failing to return or destroy confidential documents and certify that the documents were returned or destroyed within 60 days after the Commission's publication of its final remedy determination in the **Federal Register**. The Commission issued a warning letter to the lead consultant, while determining that other consultants in his firm were not responsible for the breach of the APO. The Commission, in reaching its determination, considered that this was the only breach in which the consultant had been involved within a two year period examined by the Commission for purposes of determining sanctions; that the consultant and other employees who were signatories to the APO executed and filed certificates of return or destruction of CBI materials less than one month after the deadline; that there was no indication in the record that any non-signatory had access to the CBI in question; and that the consultant's firm had implemented, pursuant to requirements imposed by litigation in which it was involved, a strict document retention policy which required various approvals before documents could be destroyed.

*Case 14:* The Commission determined that one attorney breached the APO when he filed a public version of a prehearing brief containing BPI. The BPI, the name of a business that was the source of a lost revenue allegation, had been contained in the confidential staff report at an earlier phase of the investigation. That report bracketed the name of a business in all but one place. The name of the business was deleted from the public version of the report in all locations. The attorney argued that he didn't breach the APO because the information was publicly available, since it was not consistently bracketed in the staff report. In response, the Commission noted that the confidential staff report was distributed only to parties who were signatories to the APO and was not distributed to the public. The public version of the staff report was distributed to the public, but it did not reveal the identify of the source of the lost revenue allegation. The attorney also argued that the information in question theoretically could have been obtained from public sources, *i.e.*, from information contained in public files for

litigation to which his client was a party. The Commission determined that the "theoretical" availability of information through public sources cannot justify the use of BPI obtained through the APO. Finally, the attorney argued that counsel for the person who previously owned the company from which the information had been received did not object to disclosures of "historical information" about the firm. Nevertheless, the Commission noted that the company had not waived confidential treatment for the questionnaires it submitted to the Commission which contained the information in question.

There were several aggravating factors in the investigation. The breach was discovered by the Commission, the attorney did not act promptly to cure the breach, and the brief had been distributed to a non-signatory who retained the document for almost three weeks. Nonetheless, the Commission issued a warning letter to the attorney. In deciding not to issue sanctions, the Commission considered the fact that this was the attorney's first breach and that he failed to redact the BPI is good faith after relying on the incomplete bracketing in the confidential staff report.

*Case 15:* The Commission investigated whether two attorneys breached the APO in an investigation by serving on other counsel a document that indicated on its face it did not contain CBI but did in fact contain CBI. The Commission determined that the attorneys breached the APO and issued a warning letter to them. The Commission considered the mitigating factors that the release was inadvertent, that there was no actual dissemination of CBI to non-signatories to the APO, and that immediate steps were taken to remedy the situation once counsel became aware of the breach. In addition, the attorneys implemented new procedures regarding preparation of non-proprietary submissions in order to prevent future breaches.

## IV. Investigations in Which No Breach Was Found

During 2002, four additional APO breach investigations were initiated. In one investigation the Commission determined that no breach had occurred. In the other three, the investigations were closed administratively. The reasons that the investigations were closed or that there was a "no breach" determination included that: (1) The breach concerned a judicial protective order, not a Commission APO; (2) the information at issue that ordinarily would be entitled

to treatment as BPI was not consistently treated as such in the public record including by persons entitled to claim it was BPI; (3) testimony at a hearing did not reveal BPI because the information in question had been previously revealed on the public record; and (4) while information that was revealed in an attachment to a document filed with the Commission might have been proprietary under the terms of an agreement connected with outside litigation, the information was not obtained under the APO and, therefore, its disclosure could not constitute a breach of the APO.

By order of the Commission.

Issued: May 19, 2003.

**Marilyn R. Abbott,**
*Secretary to the Commission.*
[FR Doc. 03–12935 Filed 5–22–03; 8:45 am]
**BILLING CODE 7020–02–P**

## DEPARTMENT OF JUSTICE

## Task Force for Faith-Based and Community Initiatives; Agency Information Collection Activities: Proposed Collection; Comments Requested

**ACTION:** 60-day emergency notice of information collection under review: New collection, survey on ensuring equal opportunity for applicants.

The Department of Justice, Task Force for Faith-Based and Community Initiatives has submitted the following information collection request to the Office of Management and Budget (OMB) for review and clearance in accordance with emergency review procedures of the Paperwork Reduction Act of 1995. OMB approval has been requested by May 26, 2003. The proposed information collection is published to obtain comments form the public and affected agencies. If granted, the emergency approval is only valid for 180 days. Comments should be directed to OMB, Office of Information and Regulatory Affairs, Attention: Department of Justice Desk Officer (202) 395–6466, Washington, DC 20503.

During the first 60 days of this same review period, a regular review of this information collection is also being undertaken. All comments and suggestions, or questions regarding additional information, to include obtaining a copy of the proposed information collection instrument with instructions, should be directed to U.S. Department of Justice, Task Force for Faith-Based and Community Initiatives, ATTN: Patrick D. Purtill, Director, 950

Pennsylvania Ave., NW., Room 4409, Washington, DC 20530.

Request written comments and suggestions from the public and affected agencies concerning the proposed collection of information. Your comments should address one or more of the following four points:

(1) Evaluate whether the proposed collection of information is necessary for the proper performance of the functions of the agency, including whether the information will have practical utility;

(2) Evaluate the accuracy of the agencies estimate of the burden of the proposed collection of information, including the validity of the methodology and assumptions used;

(3) Enhance the quality, utility, and clarity of the information to be collected; and

(4) Minimize the burden of the collection of information on those who are to respond, including through the use of appropriate automated, electronic, mechanical, or other technological collection techniques or other forms of information technology, *e.g.,* permitting electronic submission of responses.

## Overview of This Information

(1) *Type of information collection:* New collection.

(2) *The title of the form/collection:* Survey on Ensuring Equal Opportunity for Applicants.

(3) *The agency form number, if any, and the applicable component of the department sponsoring the collection: Form Number:* none. Task Force for Faith-Based and Community Initiatives, Department of Justice.

(4) *Affected public who will be asked or required to respond, as well as a brief abstract: Primary:* not-for-profit institutions. *Abstract:* To ensure equal opportunity for all applicants including small, community-based, faith-based and religious groups, it is essential to collect information that enables the Federal agencies to determine the level of participation of such organizations in Federal grant programs while ensuring that such information is not used in grant-making decisions.

(5) *An estimate of the total number of respondents and the amount of time estimated for an average respondent to respond/reply:* There are approximately 15,361 respondents who will each require an average of five minutes to respond.

(6) *An estimate of the total public burden (in hours) associated with the collection:* The total annual public burden hours for this information

that the accused imported products infringe claims 3, 4, 6, 24–25, and 34 of U.S. Patent No. 4,941,310. The notice of investigation named Applica, Inc., and Applica Consumer Products, Inc. (''Applica''); ZeroPack Co., Ltd., (''ZeroPack''); and The Holmes Group, Inc. and The Rival Company (collectively ''the Rival respondents'') as respondents.

On March 29, 2004, the Commission issued notice that it had determined not to review an ID granting the joint motion of Tilia and the Rival respondents to terminate the investigation as to the Rival respondents on the basis of a settlement agreement.

On April 22, 2004, the ALJ issued an ID (Order No. 59) granting the joint motion of complainant Tilia and respondents Applica and ZeroPack to terminate the investigation based on a settlement agreement between Tilia and Applica, and to terminate the investigation as to ZeroPack by withdrawal of the complaint, contingent on the termination of the Applica. The Commission investigative attorney supported the joint motion.

No party filed a petition to review the subject ID.

The authority for the Commission's action is contained in section 337 of the Tariff Act of 1930, as amended (19 U.S.C. 1337) and in section 210.42 of the Commission's Rules of Practice and Procedure (19 CFR 210.42).

Issued: May 20, 2004.

By order of the Commission.

**Marilyn R. Abbott,**
*Secretary to the Commission.*
[FR Doc. 04–11864 Filed 5–25–04; 8:45 am]
**BILLING CODE 7020–02–P**

---

# INTERNATIONAL TRADE COMMISSION

**[Inv. No. 337–TA–490]**

**In the Matter of Certain Power Amplifier Chips, Broadband Tuner Chips, Transceiver Chips, and Products Containing Same; Notice of Commission Determination Not To Review a Final Initial Determination Finding No Violation of Section 337; Termination of the Investigation**

**AGENCY:** U.S. International Trade Commission.

**ACTION:** Notice.

**SUMMARY:** Notice is hereby given that the U.S. International Trade Commission has determined not to review the final initial determination (''ID'') issued by the presiding administrative law judge (''ALJ'') on

April, 2, 2004, finding no violation of section 337 of the Tariff Act of 1930, 19 U.S.C. 1337, in the above-captioned investigation. Accordingly, the Commission has terminated the investigation with a finding of no violation of section 337.

**FOR FURTHER INFORMATION CONTACT:** Timothy P. Monaghan, Esq., Office of the General Counsel, U.S. International Trade Commission, 500 E Street, SW., Washington, DC 20436, telephone 202–205–3152. Copies of the public version of the ID and all nonconfidential documents filed in connection with this investigation are or will be available for inspection during official business hours (8:45 a.m. to 5:15 p.m.) in the Office of the Secretary, U.S. International Trade Commission, 500 E Street, SW., Washington, DC 20436, telephone 202–205–2000. Hearing-impaired persons are advised that information on this matter can be obtained by contacting the Commission's TDD terminal on 202–205–1810. General information concerning the Commission may also be obtained by accessing its Internet server (*http://www.usitc.gov.*) The public record for this investigation may be viewed on the Commission's electronic docket (EDIS) at *http://edis.usitc.gov.*

**SUPPLEMENTARY INFORMATION:** The Commission instituted this investigation, which concerns allegations of unfair acts in violation of section 337 in the importation and sale of certain power amplifier chips, broadband tuner chips, transceiver chips, and products containing same, on April 4, 2003, based on a complaint filed by Broadcom Corporation of Irvine, California (''Broadcom''). 68 FR 16551. The only respondent named in the investigation is Microtune, Inc. of Plano, Texas (''Microtune''). The complaint alleged that the imported products of Microtune infringe claim 1 of U.S. Patent No. 6,445,039, (''the '039 patent'') and claim 2 of U.S. Patent No. 5,682,379 (''the '379 patent''). The investigation was subsequently terminated as to the '379 patent.

On April 2, 2004, the ALJ issued his final ID finding no violation of section 337 based on his findings that claim 1 of the '039 patent is anticipated by two patents and two prior art semiconductors, and invalid due to obviousness. The ALJ also found that the accused non-die paddle products of respondent Microtune infringe claim 1 of the '039 patent, but that Microtune's die paddle products do not infringe that claim. He also found that the '039 patent is not unenforceable due to inequitable conduct.

On April 15, 2004, Broadcom filed a petition for review of the final ID. On April 22, 2004, the Commission investigative attorney and Microtune filed responses.

Having reviewed the record in this investigation, including the parties' written submissions, the Commission determined not to review (*i.e.*, to adopt) the ID in its entirety.

This action is taken under the authority of section 337 of the Tariff Act of 1930, 19 U.S.C. 1337, and section 210.42 of the Commission's Rules of Practice and Procedure, 19 CFR 210.42.

Issued: May 20, 2004.

By order of the Commission.

**Marilyn R. Abbott,**
*Secretary to the Commission.*
[FR Doc. 04–11865 Filed 5–25–04; 8:45 am]
**BILLING CODE 7020–02–P**

---

# INTERNATIONAL TRADE COMMISSION

## Summary of Commission Practice Relating to Administrative Protective Orders

**AGENCY:** U.S. International Trade Commission.

**ACTION:** Summary of Commission practice relating to administrative protective orders.

**SUMMARY:** Since February 1991, the U.S. International Trade Commission (''Commission'') has issued an annual report on the status of its practice with respect to violations of its administrative protective orders (''APOs'') in investigations under Title VII of the Tariff Act of 1930 in response to a direction contained in the Conference Report to the Customs and Trade Act of 1990. Over time, the Commission has added to its report discussions of APO breaches in Commission proceedings other than those under Title VII and violations of the Commission's rule on bracketing business proprietary information (''BPI'') (the ''24-hour rule''), 19 CFR 207.3(c). This notice provides a summary of investigations of breaches in proceedings under Title VII, sections 202 and 204 of the Trade Act of 1974, as amended, section 421 of the Trade Agreements Act of 1974, as amended, and section 337 of the Tariff Act of 1930, as amended, completed during calendar year 2003. There was one completed investigation of a 24-hour rule violation during that period. The Commission intends that this report educate representatives of parties to Commission proceedings as to some specific types of APO breaches

encountered by the Commission and the corresponding types of actions the Commission has taken.

**FOR FURTHER INFORMATION CONTACT:**
Carol McCue Verratti, Esq., Office of the General Counsel, U.S. International Trade Commission, telephone (202) 205–3088. Hearing impaired individuals are advised that information on this matter can be obtained by contacting the Commission's TDD terminal at (202) 205–1810. General information concerning the Commission can also be obtained by accessing its Internet server (*http://www.usitc.gov*).

**SUPPLEMENTARY INFORMATION:**
Representatives of parties to investigations conducted under Title VII of the Tariff Act of 1930, sections 202 and 204 of the Trade Act of 1974, as amended, section 421 of the Trade Agreements Act of 1974, as amended, and section 337 of the Tariff Act of 1930, as amended, may enter into APOs that permit them, under strict conditions, to obtain access to BPI (Title VII) or confidential business information ("CBI") (sections 201–204, section 421 and section 337) of other parties. See 19 U.S.C. 1677f; 19 CFR 207.7; 19 U.S.C. 2252(i); 19 CFR 206.17; 19 U.S.C. 1337(n); 19 CFR 210.5, 210.34. The discussion below describes APO breach investigations that the Commission has completed, including a description of actions taken in response to breaches. The discussion covers breach investigations completed during calendar year 2003.

Since 1991, the Commission has published annually a summary of its actions in response to violations of Commission APOs and the 24-hour rule. See 56 FR 4846 (Feb. 6, 1991); 57 FR 12,335 (Apr. 9, 1992); 58 FR 21,991 (Apr. 26, 1993); 59 FR 16,834 (Apr. 8, 1994); 60 FR 24,880 (May 10, 1995); 61 FR 21,203 (May 9, 1996); 62 FR 13,164 (March 19, 1997); 63 FR 25064 (May 6, 1998); 64 FR 23355 (April 30, 1999); 65 FR 30434 (May 11, 2000); 66 FR 27685 (May 18, 2001); 67 FR 39425 (June 7, 2002); 68 FR 28256 (May 23, 2003). This report does not provide an exhaustive list of conduct that will be deemed to be a breach of the Commission's APOs. APO breach inquiries are considered on a case-by-case basis.

As part of the effort to educate practitioners about the Commission's current APO practice, the Commission Secretary issued in March 2001 a third edition of *An Introduction to Administrative Protective Order Practice in Import Injury Investigations* (Pub. L. 3403). This document is available upon request from the Office of the Secretary, U.S. International Trade Commission,

500 E Street, SW., Washington, DC 20436, tel. (202) 205–2000.

**I. In General**

The current APO form for antidumping and countervailing duty investigations, which the Commission has used since March 2001, requires the applicant to swear that he or she will:

(1) Not divulge any of the BPI obtained under the APO and not otherwise available to him, to any person other than—

(i) personnel of the Commission concerned with the investigation,

(ii) the person or agency from whom the BPI was obtained,

(iii) a person whose application for disclosure of BPI under this APO has been granted by the Secretary, and

(iv) other persons, such as paralegals and clerical staff, who (a) are employed or supervised by and under the direction and control of the authorized applicant or another authorized applicant in the same firm whose application has been granted; (b) have a need thereof in connection with the investigation; (c) are not involved in competitive decisionmaking for an interested party who is a party to the investigation; and (d) have submitted to the Secretary a signed Acknowledgment for Clerical Personnel in the form attached hereto (the authorized applicant shall also sign such acknowledgment and will be deemed responsible for such persons' compliance with the APO);

(2) Use such BPI solely for the purposes of the Commission investigation or for judicial or binational panel review of such Commission investigation;

(3) Not consult with any person not described in paragraph (1) concerning BPI disclosed under this APO without first having received the written consent of the Secretary and the party or the representative of the party from whom such BPI was obtained;

(4) Whenever materials (*e.g.*, documents, computer disks, etc.) containing such BPI are not being used, store such material in a locked file cabinet, vault, safe, or other suitable container (N.B.: storage of BPI on so-called hard disk computer media is to be avoided, because mere erasure of data from such media may not irrecoverably destroy the BPI and may result in violation of paragraph C of the APO);

(5) Serve all materials containing BPI disclosed under this APO as directed by the Secretary and pursuant to section 207.7(f) of the Commission's rules;

(6) Transmit each document containing BPI disclosed under this APO:

(i) with a cover sheet identifying the document as containing BPI,

(ii) with all BPI enclosed in brackets and each page warning that the document contains BPI,

(iii) if the document is to be filed by a deadline, with each page marked "Bracketing of BPI not final for one business day after date of filing," and

(iv) if by mail, within two envelopes, the inner one sealed and marked "Business Proprietary Information—To be opened only by [name of recipient]", and the outer one sealed and not marked as containing BPI;

(7) Comply with the provision of this APO and section 207.7 of the Commission's rules;

(8) Make true and accurate representations in the authorized applicant's application and promptly notify the Secretary of any changes that occur after the submission of the application and that affect the representations made in the application (*e.g.*, change in personnel assigned to the investigation);

(9) Report promptly and confirm in writing to the Secretary any possible breach of the APO; and

(10) Acknowledge that breach of the APO may subject the authorized applicant and other persons to such sanctions or other actions as the Commission deems appropriate including the administrative sanctions and actions set out in this APO.

The APO further provides that breach of an APO may subject an applicant to:

(1) Disbarment from practice in any capacity before the Commission along with such person's partners, associates, employer, and employees, for up to seven years following publication of a determination that the order has been breached;

(2) Referral to the United States Attorney;

(3) In the case of an attorney, accountant, or other professional, referral to the ethics panel of the appropriate professional association;

(4) Such other administrative sanctions as the Commission determines to be appropriate, including public release of or striking from the record any information or briefs submitted by, or on behalf of, such person or the party he represents; denial of further access to BPI in the current or any future investigations before the Commission; and issuance of a public or private letter of reprimand; and

(5) Such other actions, including but not limited to, a warning letter, as the

**29974**    **Federal Register** / Vol. 69, No. 102 / Wednesday, May 26, 2004 / Notices

Commission determines to be appropriate.

Commission employees are not signatories to the Commission's APOs and do not obtain access to BPI through APO procedures. Consequently, they are not subject to the requirements of the APO with respect to the handling of BPI. However, Commission employees are subject to strict statutory and regulatory constraints concerning BPI, and face potentially severe penalties for noncompliance. *See* 18 U.S.C. 1905; Title 5, U.S. Code; and Commission personnel policies implementing the statutes.

An important provision of the Commission's rules relating to BPI is the "24–hour" rule. This rule provides that parties have one business day after the deadline for filing documents containing BPI to file a public version of the document. The rule also permits changes to the bracketing of information in the proprietary version within this one-day period. No changes —other than changes in bracketing—may be made to the proprietary version. The rule was intended to reduce the incidence of APO breaches caused by inadequate bracketing and improper placement of BPI. The Commission urges parties to make use of the rule. If a party wishes to make changes to a document other than bracketing, such as typographical changes or other corrections, the party must ask for an extension of time to file an amended document pursuant to section 201.14(b)(2) of the Commission's rules.

## II. Investigations of Alleged APO Breaches

Upon finding evidence of an APO breach or receiving information that there is a reason to believe one has occurred, the Commission Secretary notifies relevant offices in the agency that an APO breach investigation file has been opened. Upon receiving notification from the Secretary, the Office of General Counsel (OGC) begins to investigate the matter. The OGC prepares a letter of inquiry to be sent to the possible breacher over the Secretary's signature to ascertain the possible breacher's views on whether a breach has occurred. If, after reviewing the response and other relevant information, the Commission determines that a breach has occurred, the Commission often issues a second letter asking the breacher to address the questions of mitigating circumstances and possible sanctions or other actions. The Commission then determines what action to take in response to the breach. In some cases, the Commission determines that although a breach has

occurred, sanctions are not warranted, and therefore has found it unnecessary to issue a second letter concerning what sanctions might be appropriate. Instead, it issues a warning letter to the individual. A warning letter is not considered to be a sanction.

Sanctions for APO violations serve two basic interests: (a) preserving the confidence of submitters of BPI that the Commission is a reliable protector of BPI; and (b) disciplining breachers and deterring future violations. As the Conference Report to the Omnibus Trade and Competitiveness Act of 1988 observed, "[T]he effective enforcement of limited disclosure under administrative protective order depends in part on the extent to which private parties have confidence that there are effective sanctions against violation." H.R. Conf. Rep. No. 576, 100th Cong., 1st Sess. 623 (1988).

The Commission has worked to develop consistent jurisprudence, not only in determining whether a breach has occurred, but also in selecting an appropriate response. In determining the appropriate response, the Commission generally considers mitigating factors such as the unintentional nature of the breach, the lack of prior breaches committed by the breaching party, the corrective measures taken by the breaching party, and the promptness with which the breaching party reported the violation to the Commission. The Commission also considers aggravating circumstances, especially whether persons not under the APO actually read the BPI. The Commission considers whether there are prior breaches by the same person or persons in other investigations and multiple breaches by the same person or persons in the same investigation.

The Commission's rules permit economists or consultants to obtain access to BPI under the APO if the economist or consultant is under the direction and control of an attorney under the APO, or if the economist or consultant appears regularly before the Commission and represents an interested party who is a party to the investigation. 19 CFR 207.7(a)(3) (B) and (C). Economists and consultants who obtain access to BPI under the APO under the direction and control of an attorney nonetheless remain individually responsible for complying with the APO. In appropriate circumstances, for example, an economist under the direction and control of an attorney may be held responsible for a breach of the APO by failing to redact APO information from a document that is subsequently filed with the Commission and served as a

public document. This is so even though the attorney exercising direction or control over the economist or consultant may also be held responsible for the breach of the APO.

The records of Commission investigations of alleged APO breaches in antidumping and countervailing duty cases are not publicly available and are exempt from disclosure under the Freedom of Information Act, 5 U.S.C. 552, section 135(b) of the Customs and Trade Act of 1990, and 19 U.S.C. 1677f(g).

The breach most frequently investigated by the Commission involves the APO's prohibition on the dissemination of BPI to unauthorized persons. Such dissemination usually occurs as the result of failure to delete BPI from public versions of documents filed with the Commission or transmission of proprietary versions of documents to unauthorized recipients. Other breaches have included: the failure to bracket properly BPI in proprietary documents filed with the Commission; the failure to report immediately known violations of an APO; and the failure to supervise adequately non-legal personnel in the handling of BPI.

Counsel participating in Title VII investigations have reported to the Commission potential breaches involving the electronic transmission of public versions of documents. In these cases, the document transmitted appears to be a public document with BPI omitted from brackets. However, the BPI is actually retrievable by manipulating codes in software. The Commission has found that the electronic transmission of a public document containing BPI in a recoverable form was a breach of the APO.

The Commission advised in the preamble to the notice of proposed rulemaking in 1990 that it will permit authorized applicants a certain amount of discretion in choosing the most appropriate method of safeguarding the confidentiality of the BPI. However, the Commission cautioned authorized applicants that they would be held responsible for safeguarding the confidentiality of all BPI to which they are granted access and warned applicants about the potential hazards of storage on hard disk. The caution in that preamble is restated here:

[T]he Commission suggests that certain safeguards would seem to be particularly useful. When storing business proprietary information on computer disks, for example, storage on floppy disks rather than hard disks is recommended, because deletion of information from a hard disk does not necessarily erase the information, which can

often be retrieved using a utilities program. Further, use of business proprietary information on a computer with the capability to communicate with users outside the authorized applicant's office incurs the risk of unauthorized access to the information through such communication. If a computer malfunctions, all business proprietary information should be erased from the machine before it is removed from the authorized applicant's office for repair. While no safeguard program will insulate an authorized applicant from sanctions in the event of a breach of the administrative protective order, such a program may be a mitigating factor.

Preamble to notice of proposed rulemaking, 55 FR 24100, 24103 (June 14, 1990).

The Commission has recently disposed of an APOB investigation concerning a section 337 investigation. In that case, to be summarized with other cases completed in 2004, attorneys failed to notify the Commission about their receipt of a subpoena from another government agency that would require the disclosure of BPI obtained under the APO. Counsel in section 337 investigations are reminded that Commission rule 210.34(d)(1) requires that the Commission be notified in writing immediately by anyone receiving such a subpoena or court or administrative order, discovery request, agreement, or other written request seeking disclosure to persons who are not permitted access to the information under either a Commission protective order or Commission rule 210.5(b). Commission rule 210.34(d)(2) provides that the Commission may impose sanctions upon any person who willfully fails to comply with section 210.34(d)(1). Failure to comply with that rule may also be considered an aggravating circumstance in determining an appropriate sanction for a breach connected with compliance with the subpoena or order.

## III. Specific Investigations in Which Breaches Were Found

The Commission presents the following case studies to educate users about the types of APO breaches found by the Commission. The studies provide the factual background, the actions taken by the Commission, and the factors considered by the Commission in determining the appropriate actions. The Commission has not included some of the specific facts in the descriptions of investigations where disclosure of such facts could reveal the identity of a particular breacher. Thus, in some cases, apparent inconsistencies in the facts set forth in this notice result from the Commission's inability to disclose particular facts more fully.

*Case 1:* The Commission determined that two attorneys breached the APO when one of the attorneys failed to delete BPI from the public version of a prehearing brief. The attorney who was responsible for preparing the public version of the brief and who failed to delete the BPI was the lead attorney and the firm's APO Compliance Officer. However, this was his first title VII investigation before the Commission. The second attorney, a name partner and more senior attorney in the firm, participated substantially in the investigation and participated in the drafting of the confidential version of the brief. The Commission found that the senior attorney had also breached the APO because, despite the more junior attorney's inexperience and the lengthy series of APO breaches that had been caused by various members of his firm, he did not participate in the preparation of the public brief and/or supervise the junior attorney more closely to prevent a new breach.

Because he was the lead attorney and the firm's APO Compliance Officer, the Commission determined that the junior attorney would receive a private letter of reprimand, even though it was his first breach, no non-signatories had read the BPI, he took immediate corrective measures to cure the breach, and his firm changed its APO procedures to avoid future breaches of this type. Although the attorney claimed that his inexperience with bracketing BPI may have played a part in the errors, the Commission determined that he should be held to a higher standard of care because the purpose of his position as APO Compliance Officer was to prevent breaches like the one he failed to prevent in this matter. The Commission also considered the fact that the attorney took the APO Compliance position with the knowledge that several members of his firm had been investigated over a relatively short period of time for prior APO breaches, and that aggressive review of his firm's submissions was therefore necessary.

The Commission determined to sanction the senior attorney by publishing in the **Federal Register** a public letter of reprimand and to suspend him for a period of six months from access to APO information in any Commission investigation. In addition, the Commission ordered that at least two attorneys review all documents to be filed with the Commission by his law firm for APO compliance for a period of five years from the date of publication of the sanction in the **Federal Register**. The Commission decided to issue the public letter of reprimand and suspend the attorney because this was his fourth

breach within a relatively short period of time. In addition, the attorney had been publicly sanctioned within the past two years, but not suspended. The Commission found that although none of the attorney's prior breaches was egregious enough to warrant a public reprimand when considered separately, the public reprimand was warranted for the series of breaches that demonstrated a disturbing and unacceptable pattern of overall failure to safeguard information released under APO.

*Case 2:* The Commission issued a private letter of reprimand to an attorney for failing to redact CBI from the public version of a prehearing brief. The brief was a joint brief with another law firm, but the Commission found that the attorney from the other law firm and a consultant and a second attorney from the breaching attorney's law firm were not responsible for the final review of the brief. A private letter of reprimand was issued even though this was the attorney's first breach of a Commission APO, the breach was inadvertent, the attorney's firm changed its APO procedures to avoid future breaches of this type, and the attorney took immediate corrective measures to cure the breach once he was informed that there was a possible breach. The Commission decided to issue a private letter of reprimand because the Commission received no assurance from the attorney that non-signatories had not read the CBI. The Commission sent the attorney two letters of inquiry and a letter seeking his comments on possible sanctions and mitigating circumstances. All of the letters asked for his comments on whether a non-signatory had read the CBI. The attorney did not address the question in the first or third letters; in the second letter he merely stated that he could not confirm with the recipients of the CBI that only APO signatories had viewed the CBI. The attorney never explained why he could not confirm the facts. The Commission noted that more than one firm which was a recipient of the brief were non-signatories of the APO. Thus, without sufficient followup or explanation from the attorney and because CBI was made available to several non-signatories, the Commission presumed that the CBI was viewed by a non-signatory of the APO.

*Case 3:* An economic consultant prepared and distributed an exhibit at a Commission hearing. The exhibit contained CBI that was taken from tables that were bracketed as confidential APO information in the Prehearing Staff Report. During the hearing, the consultant was informed of the possible breach and he took immediate steps to retrieve the exhibit.

All but one or two copies were retrieved. The consultant had argued that the information was not CBI because later in the investigation it was determined that the data itself was erroneous and corrected data was included in the Posthearing Staff Report. The Commission determined that the information was CBI since it was taken from a Commission document that was clearly marked as containing CBI. The Commission sanctioned the consultant with a private letter of reprimand because the breach was intentional; the Commission presumed that a non-signatory reviewed the CBI since one or two of the exhibits were not retrieved and non-signatories attended the hearing; and the consultant had previously been found to have breached an APO and was issued a warning letter within a reasonably short period before the occurrence of this breach. The Commission took into consideration the consultant's immediate attempts to retrieve the exhibit and the fact that his consulting firm modified its procedures to avoid similar breaches in the future.

The Commission also investigated whether attorneys in two law firms had breached the APO in this matter. One of the law firms had included the consultant on its APO application and the lead attorney for that firm had agreed to exercise direction and control over the consultant's handling of the APO materials. Another law firm also had hired the consultant to assist in the same investigation, but on a different product than that of the first law firm. That second firm gave the consultant the information on this second product and it was for this product that the exhibit had been prepared and concerning which the Commission hearing was held. The consultant was not included on the APO application of the second law firm, but was entitled to have the information on any product in this multiproduct investigation as long as he was included on one APO application. The Commission found that none of the attorneys in the second firm breached the APO because none was responsible for preparation of the exhibit and they had not signed an APO application agreeing to exercise direction and control over the consultant's handling of APO materials. The Commission issued a no violation breach to the lead attorney in the second firm, but admonished him to be more attentive in preventing breaches in the future.

The Commission determined that the lead attorney in the first law firm breached the APO by failing to provide adequate supervision over the handling of CBI and by permitting the release of CBI by an economic consultant under the attorney's direction and control, especially in light of the fact that the consultant in question previously had breached an APO in a prior case that also had involved the lead attorney and his firm. The Commission determined to issue the lead attorney in the first firm a warning letter, in spite of the aggravating circumstances that existed in this case, because of the unusual circumstances of the APO in this multiproduct investigation which permitted the consultant to receive CBI from another attorney and work separately from the attorneys in the first law firm.

*Case 4:* The Commission determined that two attorneys breached the APO by failing to return or destroy all copies of the CBI disclosed under the APO within 60 days of completion of the Commission's investigation and by using the retained documents for a purpose other than the Commission's investigation.

The attorneys represented a party in a section 201 investigation. They argued that the failure to return or destroy the documents on a timely basis was inadvertent as they were not sure when the Commission investigation had ended. They also argued that the documents, although retained by them, were not used for any other purpose than the Commission investigation.

The Commission found conflicting statements in the submissions from the attorneys. Relying primarily on the initial statements regarding the breaches, the Commission found that the breach was not inadvertent, and that the attorneys had retained the documents so they could review them in preparing their client's product exclusion submission to USTR. In reaching its decision, the Commission did not equate mere retention with use, but found that something more had occurred.

The Commission denied the attorneys' request for reconsideration of the finding that the documents were used for something other than the Commission's investigation because the arguments were made during the breach phase of the Commission's investigation or they could have been made.

There were several mitigating circumstances in this matter, including the facts that it was the first APO breach for both attorneys, there was no evidence that unauthorized persons gained access to the CBI, and the attorneys' law firm has instituted a written policy of checking the **Federal Register** on a daily basis for Commission notices. There were also aggravating circumstances that led the Commission to issue a private letter of reprimand to both attorneys. The breach was not inadvertent; the attorneys interpreted the APO, without seeking Commission guidance, to allow them to retain APO documents beyond the date set by the APO for return or destruction of APO documents; and the attorneys committed a second breach in their use of the APO documents for a purpose other than the Commission's investigation.

*Case 5:* The Commission found that an attorney and a legal assistant breached the APO by serving a document containing BPI upon individuals not authorized to view BPI. The Commission issued private letters of reprimand to both individuals.

The document had been prepared for filing and service by the legal assistant and signed by the attorney. The legal assistant mistakenly used the public service list instead of the APO service list to serve the document. Consequently, two law firms ineligible to receive BPI were served with the document. A lawyer in one of those firms opened the envelope and read the document long enough to determine that it contained BPI that he was ineligible to receive. At that point, the lawyer stopped reading and notified the attorney who signed the document about the possible breach. Once notified, the attorney was able to retrieve the document from both ineligible law firms, including from the second ineligible law firm which had not opened the sealed envelope.

The mitigating circumstances in this case included the fact that the breach was inadvertent, neither the attorney nor the legal assistant had any prior breaches within the recent past, they made prompt efforts to limit the possibility of disclosure to persons not on the APO, and they took steps to prevent breaches in the future. The aggravating circumstances that supported the issuance of private letters of reprimand were the facts that a person not subject to the APO viewed the BPI and that the breach was discovered by someone other than the attorney or legal assistant.

*Case 6:* The Commission determined that one attorney breached the APO by failing to ensure, as lead counsel in a Commission investigation, that all of the law firm personnel who would be working with BPI contained in documents received under APO were signatories to the APO. One other attorney in the firm had access to and used BPI under the APO notwithstanding that he was not a signatory to the APO. The Commission

found that this attorney had violated 19 CFR 201.15.

An attorney in the law firm discovered that one of the attorneys working on the investigation in the law firm was not on the APO service list after the investigation had been completed. He notified the Commission immediately about the possible breach. In determining that the lead attorney should receive a private letter of reprimand, the Commission considered the mitigating circumstances that the firm discovered the breach and notified the Commission immediately, the lead attorney voluntarily conducted classes for his firm concerning the handling of BPI, the breach was inadvertent, and the non-signatory attorney handled the APO materials as if he were a signatory. However, the Commission also considered the aggravating circumstance that the lead attorney had received a warning letter in a previous breach investigation within the recent past.

In determining to issue a warning letter to the non-signatory attorney, the Commission stated that it considers "good cause" for imposition of a warning letter pursuant to 19 CFR 201.15 to be the equivalent of a breach of an APO. However, it decided not to issue any sanction for the attorney's conduct because this was the only breach-equivalent action in which he had been involved within the two-year period generally examined by the Commission for purposes of determining sanctions, his action was not willful, he treated BPI as if he had signed the APO, and he reported and remedied the objectionable conduct shortly after he had learned of it.

*Case 7:* The Commission issued a warning letter to an economist after finding he breached the APO by transmitting exhibits containing BPI to a non-signatory copy vendor. The economist had substantial experience handling APO material in Commission title VII investigations. He was working on the investigation under the direction and control of an attorney in a law firm. Prior to the economist taking the exhibits to the copy vendor, the attorney supervising him had reviewed the documents to be sure there was no BPI in them. After the attorney's review, the economist decided to add another document to the exhibits that included BPI. Although from earlier discussions with the attorney the economist had reason to question whether the vendor was a signatory to the APO, he handed the documents directly to the copy vendor without determining whether the vendor was a signatory to the APO.

The Commission considered whether the economist, the attorney, and the

lead attorney on the investigation breached the APO. The Commission determined that the attorney did not breach the APO. Although he was, in general, responsible for the economist's actions, he could not reasonably have foreseen that the economist would have inserted an APO document into the exhibits. The attorney had approved the exhibits and did not anticipate any additions to them. The Commission determined that the lead attorney had not breached the APO because he had reasonably delegated his supervisory responsibilities over the economist to the attorney and that attorney was experienced and had no prior breaches that would have put the lead attorney on notice that more supervision was necessary.

The law firm and the economist had argued that a breach did not occur because there was no BPI in the exhibits. They argued that the information that was considered BPI was publicly available. The Commission found that, although a small part of the BPI had been made public during the preliminary phase of the investigation, the remainder was BPI and included questionnaire responses or clarification to questionnaire responses.

The Commission determined to issue a warning letter to the economist because the breach was unintentional, this was his first breach, and the copy vendor merely copied the documents and did not review the BPI. In addition, once the economist realized that a breach might have occurred, he immediately notified the attorney, who took prompt and effective action to stop any further dissemination of the BPI. The Commission noted in its letters to the economist and attorney that the Commission was not notified of the possible breach for 30 days after it was discovered. The Commission stated that it will expect more prompt notification by them with regard to any possible APO breaches in the future, in compliance with the APO which requires signatories to "[r]eport promptly * * * any possible breach."

*Case 8:* The Commission issued warning letters to three attorneys and two international trade analysts in one firm for permitting a legal secretary to have access to CBI even though he had not signed the APO Acknowledgment for Clerical Personnel and, therefore, his name was not included on the Secretary's confidential certificate of service. The attorneys and international trade analysts were all signatories to the APO and had worked on the Commission's investigation. The Commission decided to issue a warning letter instead of sanctions because the

breach was inadvertent, it was the attorneys' and analysts' first breach, they reported the breach promptly to the Commission, and they took corrective measures to prevent similar breaches in the future.

The Commission did not issue a warning letter to the legal secretary, but cautioned him to ensure in future investigations that he has signed the Acknowledgement before accessing CBI.

*Case 9:* The Commission found that an attorney breached the APO by electronically transmitting a prehearing brief that contained both masked and not redacted BPI and BPI that had been neither masked nor redacted to two non-signatories of the APO. The Commission issued a private letter of reprimand because at least one of the non-signatories read the BPI that had neither been masked nor redacted and there was a delay in the attorney's notification of the Commission about the possible breach. In reaching this decision, the Commission considered the mitigating circumstances that the attorney had no prior breaches, he notified the Commission of the breach, and he immediately took appropriate corrective measures.

During the breach phase of the investigation, the attorney argued that the electronic "whiting-out" of the BPI was sufficient to protect it. In response, the Commission noted that it has consistently found that it is a breach of the APO to send an electronic document to persons not on the APO in which the BPI had been electronically masked or "whited-out" since the BPI can be retrieved by altering the software print codes. The Commission also dismissed the attorney's arguments that the BPI that had neither been masked nor redacted was not BPI. The Commission found that most of the data in question had been questionnaire responses that were bracketed as BPI in the prehearing report. Questionnaire responses are treated by the Commission as BPI in their entirety, unless the information is otherwise available from a public source, or is a non-numerical characterization of aggregate trends. The Commission considered certain public sources that the attorney claimed revealed the information, but found that the exact information was not publicly available.

*Case 10:* The Commission determined that an attorney breached the APO in a section 337 investigation by transmitting a confidential version of a brief filed in the appeal of the Commission investigation to persons who were not signatories to the APO. The Commission stated in the warning letter to the attorney that this finding

was consistent with prior determinations when the Commission determined that making CBI available to unauthorized persons constitutes a breach of the APO, regardless of whether the unauthorized persons actually viewed the CBI.

The Commission determined to issue the warning letter to the attorney instead of a sanction because the breach was unintentional, he had no prior warnings or sanctions regarding APO breaches within the recent past, he took prompt action to remedy the breach, and no non-signatory to the APO actually read the electronically transmitted brief.

*Rule Violation:* The Commission issued a warning letter to an attorney for violating the Commission's 24-hour rule, 19 CFR 207.3. On the day following the filing of a confidential prehearing brief in a Commission investigation, the attorney filed a public version of the brief and a revised confidential version. Both versions contained additions to and deletions of text on several pages and there were several pages missing from an exhibit. The Commission found that this violated the 24-hour rule because that rule specficially precludes changes other than bracketing changes and the deletion of confidential information during the 24-hour period after the original filing. The Commission noted that the rule allowed attorneys to seek leave to make other changes but, in this case, the attorney did not.

The Commission issued a warning letter instead of a sanction because the changes appeared to be inadvertent and the attorney had no record of a rule violation or APO breach within the recent past.

## IV. Investigations in Which No Breach Was Found

There were two APOB investigations in which the Commission determined that the APO had not been breached. One involved testimony at a hearing that might have disclosed BPI. Through its investigation the Commission determined that the information disclosed was not BPI because it was publicly available. In the other investigation, the Commission's staff determined that no BPI was served on a party that was not on the APO service list because the data belonged to the attorney's own client and was not other company data received under the APO.

By order of the Commission.

Issued: May 20, 2004.

**Marilyn R. Abbott,**
*Secretary to the Commission.*
[FR Doc. 04–11862 Filed 5–25–04; 8:45 am]
**BILLING CODE 7020–02–P**

---

## DEPARTMENT OF JUSTICE

### Bureau of Alcohol, Tobacco, Firearms and Explosives

### Agency Information Collection Activities: Proposed Collection; Comments Requested

**ACTION:** 60-Day notice of information collection under review: Application for an Amended Federal Firearms License.

The Department of Justice (DOJ), Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF), has submitted the following information collection request to the Office of Management and Budget (OMB) for review and approval in accordance with the Paperwork Reduction Act of 1995. The proposed information collection is published to obtain comments from the public and affected agencies. Comments are encouraged and will be accepted for "sixty days" until July 26, 2004. This process is conducted in accordance with 5 CFR 1320.10.

If you have comments especially on the estimated public burden or associated response time, suggestions, or need a copy of the proposed information collection instrument with instructions or additional information, please contact David Adinolfi, ATF National Licensing Center, Room 400, 2600 Century Parkway, NE., Atlanta, Georgia 30345.

Written comments and suggestions from the public and affected agencies concerning the proposed collection of information are encouraged. Your comments should address one or more of the following four points:

—Evaluate whether the proposed collection of information is necessary for the proper performance of the functions of the agency, including whether the information will have practical utility;
—Evaluate the accuracy of the agencies estimate of the burden of the proposed collection of information, including the validity of the methodology and assumptions used;
—Enhance the quality, utility, and clarity of the information to be collected; and
—Minimize the burden of the collection of information on those who are to respond, including through the use of appropriate automated, electronic,

mechanical, or other technological collection techniques or other forms of information technology *e.g.,* permitting electronic submission of responses.

Overview of this information collection:

(1) *Type of Information Collection:* Extension of a currently approved collection.

(2) *Title of the Form/Collection:* Application for an Amended Federal Firearms License.

(3) *Agency form number, if any, and the applicable component of the Department of Justice sponsoring the collection:* Form Number: ATF F 5300.38. Bureau of Alcohol, Tobacco, Firearms and Explosives.

(4) *Affected public who will be asked or required to respond, as well as a brief abstract:* Primary: Business or other for-profit. Other: Individual or households. The form is used when a Federal firearms licensee makes application to change the location of the firearms business premises. The applicant must certify that the proposed new business premises will be in compliance with State and local law for that location.

(5) *An estimate of the total number of respondents and the amount of time estimated for an average respondent to respond:* It is estimated that 18,000 respondents will complete a 1 hour and 15 minute form.

(6) *An estimate of the total public burden (in hours) associated with the collection:* There are an estimated 22,500 annual total burden hours associated with this collection.

If additional information is required contact: Brenda E. Dyer, Deputy Clearance Officer, United States Department of Justice, Justice Management Division, Policy and Planning Staff, Patrick Henry Building, Suite 1600, 601 D Street, NW., Washington, DC 20530.

Dated: May 19, 2004.

**Brenda E. Dyer,**
*Department Deputy Clearance Officer, PRA, Department of Justice.*
[FR Doc. 04–11767 Filed 5–25–04; 8:45 am]
**BILLING CODE 4410–FY–M**

---

## DEPARTMENT OF JUSTICE

### Drug Enforcement Administration

### Importation of Controlled Substances; Notice of Application

Pursuant to section 1008 of the Controlled Substances Import and Export Act (21 U.S.C. 958(1)), the Attorney General shall, prior to issuing a registration under this Section to a

information on this matter can be obtained by contacting the Commission's TDD terminal on (202) 205–1810. The public record for this investigation may be viewed on the Commission's electronic docket (EDIS) at *http://edis.usitc.gov.* General information concerning the Commission may also be obtained by accessing its Internet server (*http://www.usitc.gov*).

**SUPPLEMENTARY INFORMATION:**

**Background**

In October 2003, the Commission determined, by a two-to-two vote, that an industry in the United States was materially injured by reason of subject imports of hard red spring wheat from Canada. On June 7, 2005, a binational panel formed under Article 1904 of the NAFTA issued a decision in its review of the Commission's determination. The panel remanded the determination to the Commission to issue its remand determination within 90 days of the issuance of the Panel's decision, *i.e.,* by September 6, 2005.

On July 6, 2005, the Commission published in the **Federal Register** (70 FR 38981) a notice of the remand proceeding, of the Commission's decision to reopen the administrative record, and of the schedule for written submissions.

On July 7, 2005, the Panel granted a consent motion to extend the time period for filing the remand determination by 30 days to October 5, 2005.

**Participation in the Remand Proceedings**

Parties are referred to the Commission's July 6, 2005 notice with respect to participation in the remand proceedings.

**Revised Schedule for Written Submissions**

Given the extension of time granted by the Panel, the schedule for written submissions is revised as follows. Information obtained during the remand investigation will be released to the parties under the administrative protective order ("APO") issued in the original investigation on or about July 22, 2005. The remand staff report will be placed in the nonpublic record on August 16, 2005, and a public version will be issued thereafter, pursuant to Section 207.22 of the Commission's rules.

Parties that are participating in the remand proceedings may file comments by August 23, 2005 with respect to how the record, as supplemented, bears on the issues presented by the Panel's remand instructions. No additional factual information may be included in such comments. Comments shall not exceed 30 pages of textual material, double-spaced and single-sided, on stationery measuring 8½ × inches.

Parties that are participating in the remand proceedings may also file final comments on or before September 2, 2005. Final comments are limited to providing commentary on party comments filed by August 23, 2005 and with respect to new information, if any, released on or after August 23, 2005. No additional factual information may be included in such final comments. Final comments shall not exceed 15 pages of textual material, double-spaced and single-sided, on stationery measuring 8½ × 11 inches.

All written submissions must conform with the provisions of section 201.8 of the Commission's rules; any submissions that contain business proprietary information (BPI) must also conform with the requirements of sections 201.6, 207.3, and 207.7 of the Commission's rules. The Commission rules do not authorize filing submissions with the Secretary by facsimile or electronic means, except to the extend permitted by section 201.8 of the Commission's rules, as amended, 67 FR 68036 (Nov. 8, 2002).

In accordance with sections 201.16(c) and 207.3 of the Commission's rules, each document filed by a party to the investigations must be served on all other parties to the investigations (as identified by either the public or updated BPI service list), and a certificate of service must be timely filed. The Secretary will not accept a document for filing without a certificate of service.

Parties are also advised to consult the Commission's Rules of Practice and Procedure, part 201, subparts A through E (19 CFR part 201), and part 207, subpart A (19 CFR part 207) for provisions of general applicability concerning written submissions to the Commission.

**Authority:** This action is taken under the authority of the Tariff Act of 1930, title VII.

By order of the Commission.

Issued: July 18, 2005.

**Marilyn R. Abbott,**

*Secretary to the Commission.*

[FR Doc. 05–14482 Filed 7–21–05; 8:45 am]

**BILLING CODE 7020–02–M**

---

**INTERNATIONAL TRADE COMMISSION**

**Summary of Commission Practice Relating to Administrative Protective Orders**

**AGENCY:** U.S. International Trade Commission

**ACTION:** Summary of Commission practice relating to administrative protective orders.

---

**SUMMARY:** Since February 1991, the U.S. International Trade Commission ("Commission") has issued an annual report on the status of its practice with respect to violations of its administrative protective orders ("APOs") in investigations under Title VII of the Tariff Act of 1930 in response to a direction contained in the Conference Report to the Customs and Trade Act of 1990. Over time, the Commission has added to its report discussions of APO breaches in Commission proceedings other than under Title VII and violations of the Commission's rules including the rule on bracketing business proprietary information ("BPI") (the "24-hour rule"), 19 CFR 207.3(c). This notice provides a summary of investigations of breaches in proceedings under Title VII, section 421 of the Trade Act of 1974, as amended, and section 337 of the Tariff Act of 1930, as amended, completed during calendar year 2004. There were no completed investigations of 24-hour rule violations during that period, but there were two violations of Commission rule 210.34(d), the requirement that APO signatories inform the Commission in writing immediately upon learning that there has been a court order or discovery request for confidential business information ("CBI") that has been released to signatories under an APO. The Commission intends that this report educate representatives of parties to Commission proceedings as to some specific types of APO breaches encountered by the Commission and the corresponding types of actions the Commission has taken.

**FOR FURTHER INFORMATION CONTACT:** Carol McCue Verratti, Esq., Office of the General Counsel, U.S. International Trade Commission, telephone (202) 205–3088. Hearing impaired individuals are advised that information on this matter can be obtained by contacting the Commission's TDD terminal at (202) 205–1810. General information concerning the Commission can also be obtained by accessing its Internet server (*http://www.usitc.gov*).

**SUPPLEMENTARY INFORMATION:**
Representatives of parties to investigations conducted under Title VII of the Tariff Act of 1930, sections 202 and 204 of the Trade Act of 1974, section 421 of the Trade Act of 1974, and seciton 337 of the Tariff Act of 1930, may enter into APOs that permit them, under strict conditions, to obtain access to BPI (Title VII) or confidential business information ("CBI") (section 421, sections 201–204, and section 337) of other parties. See 19 U.S.C. 1677f; 19 CFR 207.7; 19 U.S.C. 2252(i); 19 U.S.C. 2451a(b)(3); 19 CFR 206.17; 19 U.S.C. 1337(n); 19 CFR 210.5, 210.34. The discussion below describes APO breach investigations that the Commission has completed, including a description of actions taken in response to breaches. The discussion covers breach investigations completed during calendar year 2004.

Since 1991, the Commission has published annually a summary of its actions in response to violations of Commission APOs and the 24-hour rule. See 56 FR 4846 (Feb. 6, 1991); 57 FR 12,335 (Apr. 9, 1992); 58 FR 21,991 (Apr. 26, 1993); 59 FR 16,834 (Apr. 8, 1994); 60 FR 24,880 (May 10, 1995); 61 FR 21,203 (May 9, 1996); 62 FR 13,164 (March 19, 1997); 63 FR 25064 (May 6, 1998); 64 FR 23355 (April 30, 1999); 65 FR 30434 (May 11, 2000); 66 FR 27685 (May 18, 2001); 67 FR 39425 (June 7, 2002); 68 FR 28256 (May 23, 2003); 69 FR 29972 (May 26, 2004). This report does not provide an exhaustive list of conduct that will be deemed to be a breach of the Commission's APOs. APO breach inquiries are considered on a case-by-case basis.

As part of the effort to educate practitioners about the Commission's current APO practice, the Commission Secretary issued in March 2005 a fourth edition of *An Introduction to Administrative Protective Order Practice in Import Injury Investigation* (Pub. No. 3755). This document is available upon request from the Office of the Secretary, U.S. International Trade Commission, 500 E Street, SW., Washington, DC 20436, tel. (202) 205–2000 and on the Commission's Web site at *http://www.usitc.gov.*

**1. In General**

The current APO form for antidumping and countervailing duty investigations, which was revised in March 2005, requires the applicant to swear that he or she will:

(1) Not divulge any of the BPI obtained under this APO or otherwise obtained in this investigation and not otherwise available to him or her, to any person other than—

(i) Personnel of the Commission concerned with the investigation,

(ii) The person or agency from whom the BPI was obtained,

(iii) A person whose application for disclosure of BPI under this APO has been granted by the Secretary, and

(iv) Other persons such as paralegals and clerical staff, who (a) are employed or supervised by and under the direction and control of the authorized applicant or another authorized applicant in the same firm whose application has been granted; (b) have a need thereof in connection with the investigation; (c) are not involved in competitive decision making for an interested party which is a party to the investigation; and (d) have signed the acknowledgment for clerical personnel in the form attached hereto (the authorized applicant shall also sign such acknowledgment and will be deemed responsible for such persons' compliance with the APO);

(2) Use such BPI solely for the purposes of the above-captioned Commission investigation or for judicial or binational panel review of such Commission investigation;

(3) Not consult with any person not described in paragraph (1) concerning BPI disclosed under this APO or otherwise obtained in this investigation without first having received the written consent of the Secretary and the party or the representative of the party from whom such BPI was obtained;

(4) Whenever materials (*e.g.*, documents, computer disks, etc.) containing such BPI are not being used, store such material in a locked file cabinet, vault, safe, or other suitable container (N.B.: storage of BPI on so-called hard disk computer media is to be avoided, because mere erasure of data from such media may not irrecoverably destroy the BPI and may result in violation of paragraph C of the APO);

(5) Serve all materials containing BPI disclosed under this APO as directed by the Secretary and pursuant to section 207.7(f) of the Commission's rules;

(6) Transmit each document containing BPI disclosed under this APO:

(i) With a cover sheet identifying the document as containing BPI,

(ii) With all BPI enclosed in brackets and each page warning that the document contains BPI,

(iii) If the document is to be filed by a deadline, with each page marked "Bracketing of BPI not final for one business day after date of filing," and

(iv) If by mail, within two envelopes, the inner one sealed and marked "Business Proprietary Information—To be opened only by [name of recipient]", and the outer one sealed and not marked as containing BPI;

(7) Comply with the provisions of this APO and section 207.7 of the Commission's rules;

(8) Make true and accurate representations in the authorized applicant's application and promptly notify the Secretary of any changes that occur after the submission of the application and that affect the representations made in the application (*e.g.*, change in personnel assigned in the investigation);

(9) Report promptly and confirm in writing to the Secretary any possible breach of the APO; and

(10) Acknowledged that breach of the APO may subject the authorized applicant and other persons to such sanctions or other actions as the Commission deems appropriate, including the administrative sanctions and actions set out in this APO.

The APO further provides that breach of an APO may subject an applicant to:

(1) Disbarment from practice in any capacity before the Commission along with such person's partners, associates, employer, and employees, for up to seven years following publication of a determination that the order has been breached;

(2) Referral to the United States Attorney;

(3) In the case of an attorney, accountant, or other professional, referral to the ethics panel of the appropriate professional association;

(4) Such other administrative sanctions as the Commission determines to be appropriate, including public release of or striking from the record any information or briefs submitted by, or on behalf of, such person or the party he represents; denial of further access to business proprietary information in the current or any future investigations before the Commission, and issuance of a public or private letter of reprimand; and

(5) Such other actions; including but not limited to, a warning letter, as the Commission determines to be appropriate.

APOs in investigations other than those under Title VII contain similar, through not identical, provisions.

Commission employees are not signatories to the Commission's APOs and do not obtain access to BPI through APO procedures. Consequently, they are not subject to the requirements of the APO with respect to the handling of CBI and BPI. However, Commission employees are subject to strict statutory and regulatory constraints concerning BPI and CBI, and face potentially severe

penalties for noncompliance. *See* 18 U.S.C. 1905; Title 5, U.S. Code; and Commission personnel policies implementing the statutes. Although the Privacy Act (5 U.S.C. 552a) limits the Commission's authority to disclose any personnel action against agency employees, this should not lead the public to conclude that no such actions have been taken.

An important provision of the Commission's Title VII and safeguard rules relating to BPI/CBI is the "24-hour" rule. This rule provides that parties have one business day after the deadline for filing documents containing BPI to file a public version of the document. The rule also permits changes to the bracketing of information in the proprietary version within this one-day period. No changes—other than changes in bracketing—may be made to the proprietary version. The rule was intended to reduce the incidence of APO breaches caused by inadequate bracketing and improper placement of BPI. The Commission urges parties to make use of the rule. If a party wishes to make changes to a document other than bracketing, such as typographical changes or other corrections, the party must ask for an extension of time to file an amended document pursuant to section 201.14(b)(2) of the Commission's rules.

During 2004, the Commission found two violations of another Commission rule which applies to section 337 investigations exclusively. The rule, 19 CFR 210.34(d), requires APO signatories to report in writing to the Commission immediately upon learning that confidential business information disclosed to him or her pursuant to the protective order is the subject of a subpoena, court or administrative order (other than an order of a court reviewing a Commission decision), discovery agent, agreement, or other written request, agreement, or other written request seeking disclosure by him or any other person, of that confidential business information to persons who are not, or may not be permitted access to that information pursuant to either a Commission protective order or Commission rule 210.5(b).

## II. Investigations of Alleged APO Breaches

Upon finding evidence of an APO breach or receiving information that there is a reason to believe one has occurred, the Commission Secretary notifies relevant offices in the agency that an APO breach investigation has commenced and that an APO breach investigation file has been opened. Upon receiving notification from the

Secretary, the Office of the General Counsel (OGC) prepares a letter of inquiry to be sent to the possible breacher over the Secretary's signature to ascertain the possible breacher's views on whether a breach has occurred.[1] If, after reviewing the response and other relevant information, the Commission determines that a breach has occurred, the Commission often issues a second letter asking the breacher to address the questions of mitigating circumstances and possible sanctions or other actions. The Commission then determines what action to take in response to the breach. In some cases, the Commission determines that although a breach has occurred, sanctions are not warranted, and therefore has found it unnecessary to issue a second letter concerning what sanctions might be appropriate. Instead, it issues a warning letter to the individual. A warning letter is not considered to be a sanction.

Sanctions for APO violations serve two basic interests: (a) Preserving the confidence of submitters of BPI that the Commission is a reliable protector of BPI; and (b) disciplining breachers and deterring future violations. As the Conference Report to the Omnibus Trade and Competitiveness Act of 1988 observed, "[T]he effective enforcement of limited disclosure under administrative protective order depends in part on the extent to which private parties have confidence that there are effective sanctions against violation." H.R. Conf. Rep. No. 576, 100th Cong., 1st Sess. (1988).

The Commission has worked to develop consistent jurisprudence, not only in determining whether a breach has occurred, but also in selecting an appropriate response. In determining the appropriate response, the Commission generally considers mitigating factors such as the unintentional nature of the breach, the lack of prior breaches committed by the breaching party, the corrective measures taken by the breaching party, and the promptness with which the breaching party reported the breach to the Commission. The Commission also considers aggravating circumstances, especially whether persons not under

the APO actually read the BPI. The Commission considers whether there are prior breaches by the same person or persons in other investigations and multiple breaches by the same person or persons in the same investigation.

The Commission's rules permit an economist or consultant to obtain access to BPI/CBI under the APO in a Title VII or safeguard investigation if the economist or consultant is under the direction and control of an attorney under the APO, or if the economist or consultant appears regularly before the Commission and represents an interested party who is a party to the investigation. 19 CFR 207.7(a)(3)(B) and (C); 19 CFR 206.17(a)(3)(B) and (C). Economists and consultants who obtain access to BPI/CBI under the APO under the direction and control of an attorney nonetheless remain individually responsible for complying with the APO. In appropriate circumstances, for example, an economist under the direction and control of an attorney may be held responsible for a breach of the APO by failing to redact APO information from a document that is subsequently filed with the Commission and served as a public document. This is so even though the attorney exercising direction or control over the economist or consultant may also be held responsible for the breach of the APO.

The records of Commission investigations of alleged APO breaches in antidumping and countervailing duty cases are not publicly available and are exempt from disclosure under the Freedom of Information Act, 5 U.S.C. 552, section 135(b) of the Customs and Trade Act of 1990, and 19 U.S.C. 1677f(g).

The two types of breaches most frequently investigated by the Commission involve the APO's prohibition on the dissemination of BPI to unauthorized persons and the APO's requirement that the materials received under the APO be returned or destroyed and that a certificate be filed indicating which action was taken within a specified period after the termination of the investigation or any subsequent appeals of the Commission's determination. The dissemination of BPI usually occurs as the result of failure to delete BPI from public versions of documents filed with the Commission or transmission of proprietary versions of documents to unauthorized recipients. Other breaches have included: the failure to bracket properly BPI in proprietary documents filed with the Commission; the failure to report immediately known violations of an APO; and the failure to supervise

---

[1] Procedures for inquiries to determine whether a prohibited act such as a breach has occurred and for imposing sanctions for violation of the provisions of a protective order issued during NAFTA panel or committee proceedings are set out in 19 CFR 207.100–207.120. Those investigations are initially conducted by the Commission's Office of Unfair Import Investigations. During 2004, no investigation regarding a possible violation of a protective order issued during a NAFTA panel or committee proceeding was completed under those procedures.

adequately non-legal personnel in the handling of BPI.

Counsel participating in Title VII investigations have reported to the Commission potential breaches involving the electronic transmission of public versions of documents. In these cases, the document transmitted appears to be a public document with BPI omitted from brackets. However, the BPI is actually retrievable by manipulating codes in software. The Commission has found that the electronic transmission of a public document containing BPI in a recoverable form was a breach of the APO.

The Commission advised in the preamble to the notice of proposed rulemaking in 1990 that it will permit authorized applicants a certain amount of discretion in choosing the most appropriate method of safeguarding the confidentiality of the BPI. However, the Commission cautioned authorized applicants that they would be held responsible for safeguarding the confidentiality of all BPI to which they are granted access and warned applicants about the potential hazards of storage on hard disk. The caution in that preamble is restated here:

[T]he Commission suggests that certain safeguards would seem to be particularly useful. When storing business proprietary information on computer disks, for example, storage on floppy disks rather than hard disks is recommended, because deletion of information from a hard disk does not necessarily erase the information, which can often be retrieved using a utilities program. Further, use of business proprietary information on a computer with the capability to communicate with users outside the authorized applicant's office incurs the risk of unauthorized access to the information through such communication. If a computer malfunctions, all business proprietary information should be erased from the machine before it is removed from the authorized applicant's office for repair. While no safeguard program will insulate an authorized applicant from sanctions in the event of a breach of the administrative protective order, such a program may be a mitigating factor. Preamble to notice of proposed rulemaking, 55 FR 24,100, 24,103 (June 14, 1990).

In the past several years, the Commission completed APOB investigations which involved members of a law firm or consultants working with a firm who were granted access to APO materials by the firm although they were not APO signatories. In these cases, the firm and the person using the BPI mistakenly believed an APO application had been filed for that person. The Commission determined in all these cases that the person who was a non-signatory, and therefore did not

agree to be bound by the APO, could not be found to have breached the APO. Action could be taken against these persons, however, under Commission rule 201.15 (19 CFR 201.15) for good cause shown. In all cases, the Commission decided that the non-signatory was a person who appeared regularly before the Commission and was aware of the requirements and limitations related to APO access and should have verified his or her APO status before obtaining access to and using the BPI. The Commission notes that section 201.15 may also be available to issue sanctions to attorneys or agents in different factual circumstances where they did not technically breach the APO but where their actions or inactions did not demonstrate diligent care of the APO materials even though they appeared regularly before the Commission and were aware of the importance the Commission placed on the care of APO materials. In 2004 there were two investigations where the Commission considered issuing sanctions to attorneys under section 201.15, but determined that there was not good cause. In one investigation the attorney had forwarded another party's public pre-hearing brief to his clients not knowing that the brief contained CBI. The Commission considered whether to issue sanctions against him for failure to retrieve the briefs even though he was found not to have breached the APO. The Commission considered mitigating circumstances and the fact that there were no provisions in the rules or the APO that would clarify the Commission's expectations and the attorney's responsibility under those circumstances. The Commission issued a letter warning the attorney and informing him that in the future he needed to be proactive regarding the care of BPI whether he receives it under the APO or from another source during the investigation. To prevent similar future occurrences such as this, the March 2005 version of the Title VII and safeguard APOs have added the requirement that the signatory not divulge any BPI or CBI disclosed under the APO "or otherwise obtained in this investigation."

Also in recent years the Commission has found the lead attorney to be responsible for breaches where he or she failed to provide adequate supervision over the handling of BPI. Lead attorneys should be aware that their responsibilities for overall supervision of an investigation, when a breach has been caused by the actions of someone else in the investigation, may lead to a

finding that the lead attorney has also violated the APO. The Commission has found that a lead attorney did not violate the APO in cases where his delegation of authority was reasonable. A prior breach by a subordinate attorney would suggest that delegation of authority to that attorney may not be reasonable.

## III. Specific Investigation in Which Breaches Were Found

The Commission presents the following case studies to educate user about the types of APO breaches found by the Commission. The studies provide the factual background, the actions taken by the Commission, and the factors considered by the Commission in determining the appropriate actions. The Commission has not included some of the specific facts in the descriptions of investigations where disclosure of such facts could reveal the identity of a particular breacher. Thus, in some cases, apparent inconsistencies in the facts set forth in this notice result from the Commission's inability to disclose particular facts more fully.

*Case 1.* This APOB investigation involved four different law firms. The first two represented the same respondent in a Commission section 337 investigation. A third firm represented the complainant in the section 337 investigation. A fourth firm had not been involved in the Commission's section 337 investigation and none of its attorneys were signatories to the APO, but it was representing the respondent in a multi-district court litigation (MDL) and in a related matter involving the issuance of subpoenas by another government agency. The Commission found that three attorneys from the first two law firms (respondent's firms) breached the APO in a section 337 investigation when they released APO materials to non-signatories of the APO while responding to subpoenas from another government agency and that they violated Commission rule 210.34(d) because they failed to notify the Commission of the subpoenas.

The Commission found that a partner in the first law firm, who was also the lead attorney, breached the APO because he failed to prevent the production of certain APO documents to non-signatories by an attorney under his supervision. The Commission noted that the lead attorney was aware that the subpoenas had been issued and that they were seeking documents containing CBI obtained under the APO. In spite of this knowledge, there was no information provided in the APOB investigation suggesting that he took any action to prevent the release of the CIB

or to obtain permission from all of the sources of the CBI to release the materials. Because he did not notify the Commission in writing about these subpoenas, he violated rule 210.34(d).

The second attorney in the first law firm and one attorney in the second law firm violated rule 210.34(d) by failing to notify the Commission in writing about the subpoenas and they breached the APO by releasing materials containing CBI obtained under the APO to attorneys in the fourth law firm with the knowledge that those documents would be released to the other government agency. The attorneys had argued that they did not breach the APO by releasing the CBI to the fourth law firms because attorneys in that firm could appropriately receive the information under the MDL protective order. The attorneys in the fourth law firm were representing their client in the MDL and the Commission's record had been cross designated by all the parties to the Commission's investigation. The attorneys in the first and second law firms also argued that they did not breach the Commission's APO because the court-ordered protective order was controlling and that protective order permitted release of the documents pursuant to a government issued subpoena. The Commission rejected the attorneys' arguments that the MDL protective order was controlling and determined that the Commission's APO continued to apply the to the documents obtained under the APO in the Commission's section 337 investigation. Therefore, the attorneys were required to obtain permission to release the materials from all the sources of the CBI, which they did not do. In addition, the court-issued protective order required that the person releasing the materials notify the sources of the CBI, which the attorneys also did not do.

The Commission noted that the attorneys who released the materials to the fourth law firm had breached the APO because of their understanding and intent that the information would be released by the fourth law firm to the other government agency in response to the subpoenas. Although it would have been appropriate to give the materials to the fourth law firm for use in the MDL, it was a violation of the APO to give it to the firm for the purpose of releasing it to the other government agency. The Commission noted that it retained the authority to interpret its own APO and to determine whether or not cross-designation released the CBI from the Commission's APO jurisdiction. In addition, the Commission found that it was an aggravating circumstance that the attorneys who breached had taken

actions based on their own interpretation of the APO rather than seeking advice from the Commission regarding the APO's jurisdiction over cross-designated material that were obtained under the Commission's APO.

The Commission reached the decision to sanction the attorneys who breached with a private letter of reprimand rather than a warning letter after considering the mitigating circumstance that it was their first breach of a Commission APO, but noting the aggravating circumstances that they had also violated Commission rule 210.34(d) by not informing the Commission immediately of the government subpoena; that they made independent interpretations of the Commission's APO, without seeking advice from the Commission about whether it applied to their release of the CBI obtained under the Commission's APO; and that there is a presumption that at least one-signatory at the other government agency reviewed the CBI after it was given to the agency in response to the subpoenas.

The Commission found that two attorneys in the first law firm also violated Commission rule 210.34(d) but, along with the remaining APO signatories at the first two firms, did not breach the APO. The two attorneys were issued warning letters for violating the rule. The Commission found that the attorneys from the third firm (complainant's law firm) did not breach the APO nor did they violate Commission rule 210.34(d). The Commission also determined to take no action against attorneys in the fourth law firm because they were not signatories to the APO and, therefore, did not breach the APO when they passed the APO documents on to the government agency. In addition, since they did not practice before the Commission, and had no present intention to do so, the Commission determined that it would not use Commission rule 19 CFR 201.15(a) to sanction them for their role in the release of the APO materials.

*Case 2.* The Commission found that one attorney breached an APO by failing to bracket CBI on a page of an attachment in the confidential version of the prehearing brief filed with the Commission and to delete that CBI and other CBI that was bracketed and left on another page of the attachment to the public version of the brief. The Commission issued a private letter of reprimand. The Commission determined that two other attorneys from the same firm and a secretary did not breach the APO. The two other attorneys did not have final

responsibility for preparation and review of the bracketing and the secretary did not have a direct role in the circumstances contributing to a breach.

The attorney who breached the APO took immediate action to retrieve and replace copies of the page of the attachment containing unbracketed CBI but he failed to redact the bracketed information on another page of the attachment both in his original filing and in the replacement filing. He acknowledged his breach with regard to the CBI that had not been bracketed in the confidential brief but argued that the information left in brackets on a previous page of the attachment was not CBI because it was pricing data that was not company specific. The Commission did not accept this argument, noting that the data was in numerical form and that the Commission treats all questionnaire responses as CBI in their entirety unless the information is otherwise available from a public source, or is a non-numerical characterization of aggregate trends. The attorney also argued that the data were not CBI because release of the data would not impair the Commission's functions or cause substantial harm to the competitive position of the person, firm, corporation or other organization from which the information was obtained. The Commission rejected this argument also because disclosure of the pricing data would likely harm the Commission's ability to collect critical pricing data, since firms could become wary of providing the Commission with the pricing data in future investigations that are needed for the agency to perform its statutory functions.

The Commission issued a private letter of reprimand after considering the mitigating circumstances: that this was his first breach and that the breach was inadvertent. In addition, his firm acted quickly to replace the last page of the public attachment containing the unbracketed CBI, and reeducated its personnel on APO practices and instituted new requirements to strengthen its APO procedures. The Commission noted two aggravating circumstances: (1) Non-signatories had read the CBI, and (2) the attorney twice failed to redact bracketed CBI from the public version of the brief and did not take corrective action with regard to that particular CBI. He was also ordered to retrieve and destroy any copies of the page containing the bracketed CBI and certify to the Commission Secretary that he had done so within thirty days.

The Commission also found that there was not good cause for sanctioning an attorney in a different law firm for

**Federal Register** / Vol. 70, No. 140 / Friday, July 22, 2005 / Notices    **42387**

failing to retrieve from his clients the public version of the pre-hearing brief containing the bracketed and unbracketed CBI which had been served on him by the attorney in the first firm. He sent the brief to his clients, relying on the fact that the brief had been clearly marked as a public document. The Commission warned the attorney in the second firm that it would hold him accountable in the future if he failed to take a more proactive approach to protect CBI that comes under his control and he becomes aware that it is CBI.

The attorney in the second firm had argued that he had not retrieved the brief because he had not received it under the APO. He stated that the attorney in the first firm had not asked him to retrieve and destroy the pages containing CBI and the Commission had not instructed him to do so. The attorney also raised questions about when he actually knew that the unbracketed and bracketed information was indeed CBI. Initially, the Commission had determined that he had not breached the APO because he did not know the brief contained CBI when he passed it along to his clients and he had not obtained the material under the APO.

However, the Commission considered whether to sanction him under Commission rule 201.15 for his failure to safeguard the materials after he learned they contained CBI. In deciding to warn the attorney instead of sanctioning him, the Commission considered the facts that it was the first time he was subject to a possible sanction under section 201.15 and that he had never breached an APO. In addition, he took prompt action to notify the Commission about the information in the brief that he later learned to be CBI, and the instructions given to him by the attorney in the first firm were not clear regarding retrieval and destruction of the pages containing CBI. Moreover, the Commission noted that its APO and rules did not explicitly address the need of the attorney in the second firm to take more active steps to safeguard CBI whether or not it was acquired by him through the APO directly or because of a breach committed by another party. In addition to the warning letter, the Commission ordered him to retrieve the copies of the brief and certify to the Commission that they were retrieved and destroyed. As noted earlier, the Commission has updated its rules to address this scenario.

*Case 3.* The Commission determined that an attorney and a secretary breached the APO for failing to redact business proprietary information from

the public version of a brief. The Commission issued a private letter of reprimand to the attorney who was responsible for the preparation of the public version of the brief but who failed to follow the law firm's procedures of reviewing the brief for BPI before filing it with the Commission and sending it to other parties and to the attorney's client. The Commission issued a private letter of reprimand, even though it was the attorney's client. The Commission issued a private letter of reprimand, even though it was the attorney's first breach, because a recipient of the brief who was not a signatory to the APO had read several pages of the brief which included BPI.

The Commission found that the secretary, who had forgotten to run a computer program that would delete BPI from brackets in the brief, prepared the public version of the brief for filing with the Commission, yet failed to ensure that BPI had been completely deleted from the brackets. In reaching its decision on the appropriate sanction, the Commission considered the facts that (1) the BPI had been read by a non-signatory and (2) the secretary had previously breached an APO within the period generally examined by the Commission for purposes of determining sanctions. The Commission issued a private letter of reprimand with an additional requirement that the secretary, for one year, must certify with respect to any public version of a brief that he helped prepare, that he had inspected every page to ensure that all bracketed material had been removed.

*Case 4.* The Commission determined that an attorney in one law firm had breached the APO by failing to destroy or return APO materials after the Commission's Section 337 investigation was terminated. In addition, the Commission found that the same attorney failed to comply with Commission rule 210.34(d)(1) by failing to notify the Commission immediately upon learning that requests for production of CBI obtained under the APO were made in a parallel district court litigation. The Commission issued a warning letter for the breach and for the rule violation.

The Commission also determined that attorneys from a second law firm, representing the same client in the Commission investigation, did not breach the APO even though they did not return or destroy certain material obtained under the APO which contained a third party's CBI. The attorneys had entered into an agreement with the third party which allowed the attorneys to retain the material under the APO. They also retained material

from another third party pending a response about whether to return or destroy the information. In response to a Commission inquiry about those documents, the attorneys responded that the third party had not marked any of those documents as containing CBI and there has been no further indication from the submitter that those documents contain CBI. The attorneys from this second law firm also indicated that they were not a part of the parallel litigation and, therefore, were not subject to any requests to produce CBI from the Commission investigation.

In determining that the attorney from the first law firm did breach the APO for failure to return or destroy the APO materials, the Commission considered his argument that discovery requests in a parallel litigation barred his compliance with his APO obligations. The Commission found the argument not persuasive because APO obligations are mandatory—not conditioned by other court proceedings. In addition, the district court judge ultimately ruled on the discovery request and allowed production but with the CBI redacted. Therefore, continued retention of the CBI materials was not necessary for discovery purposes. The Commission also did not find compelling the argument that destruction of the documents could lead the factfinder in the parallel litigation to take a negative inference against the party destroying the documents. The Commission found that the fact finder may reject any adverse inference if the documents were destroyed for an "innocent reason," and that the mandatory obligation to "return or destroy" in the Commission's APO establishes an "innocent reason." Finally, in determining whether or not there was a breach, the Commission found unpersuasive the attorney's concern that APO compliance could lead to a violation under his state's rules of professional conduct.

During the sanctions phase of the investigation, the Commission determined not to sanction the attorney but to issue him a warning letter for the breach and for the violation of Commission rule 210.34(d). In reaching this conclusion, the Commission considered several mitigating circumstances including that CBI was not disclosed to any unauthorized persons and that the attorney had not previously breached a Commission APO. In addition, the Commission determined that, although it seemed unlikely that the attorney would be disciplined under his state's rules of professional conduct for an unlawful destruction of documents relevant to the court proceeding, there is no authority

**42388**      *Federal Register* / Vol. 70, No. 140 / Friday, July 22, 2005 / Notices

addressing the issue in a definitive manner. Therefore, the Commission decided to acknowledge that a legitimate doubt remained for the attorney and treated his concern about his state's Bar rules as a mitigating factor.

The Commission also considered several aggravating circumstances, including the long duration of the breach, the fact that the documents were not destroyed until the opposing counsel in the parallel litigation agreed, the fact that the attorney did not consider returning the documents to the source of the CBI rather than destroying the documents to avoid possible concerns about his state Bar rules, and the attorney's failure to seek Commission guidance and clarification of his ethical or discovery obligations from the district court.

*Case 5.* The Commission found that one lead attorney breached the APO by failing to redact bracketed BPI from the public version of his firm's final comments in a Commission Title VII investigation. The Commission issued him a private letter of reprimand. The Commission found that none of the other attorneys or staff at the law firm breached the APO as none of them was involved in the incident or neglected any supervisory responsibilities leading to the breach.

The attorney had argued that the unredacted information was not BPI because it involved data for more than three foreign producers, none of whom accounted for more than 90 percent of the inventory ratio applicable to total cumulated shipments. The Commission found the data to be BPI because although similar data were treated as public in the preliminary staff report, the data had changed in such a way that certain foreign producers would be able to ascertain information about other producers using the earlier data that had been treated as public.

The Commission reached its decision to issue a private letter of reprimand after consideration of the mitigating factors that the attorney's failure to redact the information was unintentional; that he had not been involved in any breaches in the two years preceding the breach; and that his firm had implemented new procedures in order to ensure that redacted documents would be reviewed by at least two separate individuals, including the senior attorney responsible for the submission. The Commission also considered aggravating factors that made the private letter of reprimand rather than a warning letter the more appropriate action. The Commission noted the attorney's

acknowledgment that the unredacted information was made available to the public; his failure to take corrective measures, other than filing and serving a revised page, to limit the dissemination of BPI to non-signatories and to ascertain whether the BPI had been read by non-signatories; his conscious decision to waive internal firm procedures and forego review of the public version of the document by a second person; and the fact that the Secretary's Office and not anyone at his firm discovered the error.

*Case 6.* The Commission found that one attorney and a legal assistant in one law firm and a legal assistant in another law firm breached the APO by failing to redact BPI from the public version of the administrative law judge's initial determination (ID) from a Commission 337 investigation which was attached to a claim construction brief in district court patent litigation. The Commission issued warning letters to all three after considering that none of them had breached an APO in the two-year period usually considered by the Commission in determining sanctions; the breach was unintentional; prompt action was taken to remedy the breach; and copies of the brief sent to three non-signatories were retrieved and the non-signatories stated that they did not review the CBI. There was one aggravating circumstance. The brief was available in the district court public file for a significant amount of time—one month—but based on the attorney's inquiries with the court, it appears that no unauthorized person actually viewed the CBI. The Commission determined that an attorney in the second law firm did not breach the APO as he was not involved in the preparation, filing, or distribution of the brief in court.

*Case 7.* The Commission found that three attorneys breached an APO by filing a "non-confidential" version of their client's brief in the U.S. Court of Appeals for the Federal Circuit which contained CBI covered by the APO issued in a Commission section 337 investigation. One other attorney was found not to have breached because he did not help prepare the non confidential brief but, instead, took actions to prevent disclosure of the CBI to non-signatories.

The Commission issued warning letters to the three attorneys. The circumstances of the breach were mitigated by the facts that none of the attorneys had breached an APO within the previous period typically considered by the Commission for the determination of sanctions, the breach was unintentional, the attorneys took prompt action to remedy the breach,

and no non-signatory actually read the CBI.

*Case 8.* The Commission found that one attorney and one paralegal breached the APO in a Commission title VII investigation by failing to redact BPI from the public version of a pre-hearing brief. The Commission issued warning letters to the attorney and paralegal. The circumstances of the breach were mitigated by the fact that this was the only breach in which either the attorney or paralegal was involved in the two-year period generally examined by the Commission for the purpose of determining sanctions; the breach was unintentional; prompt action was taken to remedy the breach; and actions were taken by the firm to improve APO compliance procedures. The lead attorney was found not to have breached because he was out of the country and did not participate in the preparation of the prehearing briefs and because he has reasonably delegated the responsibility to another attorney who had no prior breaches. The Commission did not consider as a mitigating circumstance the attorney's argument that the unredacted BPI was not highly sensitive proprietary information.

*Rule Violations*—In two section 337 investigations, the Commission found that attorneys had failed to notify the Commission in writing immediately upon learning that CBI disclosed to the attorney pursuant to an APO was the subject of a "subpoena, court or administrative order (other than an order of a court reviewing a Commission decision), discovery request, agreement, or other written request seeking disclosure, by him or any other person, of that CBI to persons who are not, or may not be, permitted access to that information pursuant to either a Commission protective order or [19 CFR] 210.5(b)." In both cases the Commission issued warnings to the attorneys. Discussions of these rule violations can be found in the summaries of Cases 1 and 4 above.

Issued: July 18, 2005.

By order of the Commission.

**Marilyn R. Abbott,**

*Secretary to the Commission.*

[FR Doc. 05–14481 Filed 7–21–05; 8:45 am]

**BILLING CODE 7020–02–M**

# DEPARTMENT OF THE INTERIOR

## Bureau of Reclamation

## Delta-Mendota Canal/California Aqueduct Intertie, Alameda County, California

**AGENCY:** Bureau of Reclamation, Interior.

**ACTION:** Notice of intent to prepare an environmental impact statement (EIS) and notice of public scoping meetings.

**SUMMARY:** Pursuant to the National Environmental Policy Act (NEPA), the Bureau of Reclamation (Reclamation) intends to prepare an EIS for the Delta-Mendota Canal/California Aqueduct Intertie (Intertie). A primary purpose of the Intertie is to allow for operation and maintenance activities on the Tracy pumping plant and fish facility, the Delta-Mendota Canal, and the O'Neill pumping plant and intake canal. A Draft EIS is expected to be available in May 2007.

The Intertie consists of constructing and operating a pumping plant and pipeline connection between the Delta Mendota Canal (DMC) and the California Aqueduct. The Intertie would be used in a number of ways to achieve multiple benefits, including meeting current water supply demands, allowing for the maintenance and repair of the Central Valley Project (CVP) Delta export and conveyance facilities, and providing operational flexibility to respond to emergencies related to both the CVP and State Water Project (SWP).

Reclamation decided to withdraw the recently published Finding of No Significant Impact and Environmental Assessment (EA) for the Intertie and to initiate an EIS based on public challenge to the EA content and conclusions.

**DATES:** A series of public scoping meetings will be held to solicit public input on the alternatives, concerns, and issues to be addressed in the EIS. The meeting dates are as follows:

• Tuesday, August 1, 2006, 10 a.m. to 12 Noon, Sacramento, CA.
• Thursday, August 3, 2006, 6 to 8 p.m., Stockton, CA.

Written comments on the scope of the EIS should be mailed to Reclamation at the address below by September 4, 2006.

**ADDRESSES:** The public scoping meeting locations are:

• *Sacramento*—Federal Building, 2800 Cottage Way, Cafeteria Rooms C–1001 and C–1002, Sacramento, CA 95825.
• *Stockton*—Cesar Chavez Central Library, 605 North El Dorado Street,

Steward-Hazelton Room, Stockton, CA 95202.

Written comments on the scope of the EIS should be sent to: Ms. Sammie Cervantes, Bureau of Reclamation, 2800 Cottage Way, MP–730, Sacramento, CA 95825.

**FOR FURTHER INFORMATION CONTACT:** Ms. Sharon McHale, Reclamation Project Manager, at the above address, at 916–978–5086, TDD 916–978–5608, or via fax at 916–978–5094 or e-mail at *smchale@mp.usbr.gov.*

**SUPPLEMENTARY INFORMATION:** The project area is in an unincorporated area of the San Joaquin Valley in Alameda County, west of the city of Tracy. The site is in a rural area zoned for general agriculture and is under federal and state ownership. The Intertie would be located at milepost 7.2 of the DMC, connecting with milepost 9.1 of the California Aqueduct, where they are approximately 500 feet apart.

The Intertie would include a 450 cubic feet per second (cfs) pumping plant at the DMC that would allow up to 400 cfs to be pumped from the DMC to the California Aqueduct through an underground pipeline. Because the aqueduct is located approximately 50 feet higher in elevation than the DMC, up to 900 cfs could be conveyed from the aqueduct to the DMC using gravity flow.

The Intertie would be owned by the Federal government and operated by the San Luis and Delta Mendota Water Authority (Authority). An agreement among Reclamation, the California Department of Water Resources, and the Authority would identify the responsibilities and procedures for operating the Intertie. A permanent easement would be obtained by Reclamation where the Intertie alignment crosses state property.

If special assistance is required at the scoping meetings, please contact Ms. Sammie Cervantes at 916–978–5189, TDD 916–978–5608, or via e-mail at *scervantes@mp.usbr.gov.* Please notify Ms. Cervantes as far in advance of the meetings as possible to enable Reclamation to secure the needed services. If a request cannot be honored, the requestor will be notified. A telephone device for the hearing impaired (TDD) is available at 916–978–5608.

Written comments, including names and home addresses of respondents, will be made available for public review. Individual respondents may request that their home address be withheld from public disclosure, which will be honored to the extent allowable by law. There may be circumstances in

which respondent's identity may also be withheld from public disclosure, as allowable by law. If you wish to have your name and/or address withheld, you must state this prominently at the beginning of your comment. All submissions from organizations or businesses, and from individuals identifying themselves as representatives or officials of organizations or businesses, will be made available for public disclosure in their entirety.

Dated: May 10, 2006.

**Frank Michny,**
*Regional Environmental Officer, Mid-Pacific Region.*

[FR Doc. 06–6161 Filed 7–11–06; 8:45am]

**BILLING CODE 4310–MN–M**

---

# INTERNATIONAL TRADE COMMISSION

## Summary of Commission Practice Relating to Administrative Protective Orders

**AGENCY:** U.S. International Trade Commission.

**ACTION:** Summary of Commission practice relating to administrative protective orders.

**SUMMARY:** Since February 1991, the U.S. International Trade Commission ("Commission") has issued an annual report on the status of its practice with respect to violations of its administrative protective orders ("APOs") in investigations under Title VII of the Tariff Act of 1930 in response to a direction contained in the Conference Report to the Customs and Trade Act of 1990. Over time, the Commission has added to its report discussions of APO breaches in Commission proceedings other than under Title VII and violations of the Commission's rules including the rule on bracketing business proprietary information ("BPI") (the "24-hour rule"), 19 CFR 207.3(c). There were no completed investigations of rule violations during calendar year 2005. This notice provides a summary of investigations completed during calendar year 2005 of breaches in proceedings under Title VII, section 421 of the Trade Act of 1974, as amended, section 337 of the Tariff Act of 1930, as amended, and one conducted under the procedures for imposing sanctions for violation of the provisions of a protective order issued during NAFTA dispute resolution panel and Extraordinary Challenge Committee proceedings. The Commission intends that this report inform representatives of

parties to Commission proceedings as to some specific types of APO breaches encountered by the Commission and the corresponding types of actions the Commission has taken.

**FOR FURTHER INFORMATION CONTACT:**
Carol McCue Verratti, Esq., Office of the General Counsel, U.S. International Trade Commission, telephone (202) 205–3088. Hearing impaired individuals are advised that information on this matter can be obtained by contacting the Commission's TDD terminal at (202) 205–1810. General information concerning the Commission can also be obtained by accessing its Internet server (*http://www.usitc.gov*).

**SUPPLEMENTARY INFORMATION:**
Representatives of parties to investigations or other proceedings conducted under Title VII of the Tariff Act of 1930, sections 202 and 204 of the Trade Act of 1974, section 421 of the Trade Act of 1974, section 337 of the Tariff Act of 1930, and NAFTA Article 1904.13, 19 U.S.C. 1516a (g)(7)(A) may enter into APOs that permit them, under strict conditions, to obtain access to BPI (Title VII) or confidential business information (''CBI'') (section 421, sections 201–204, and section 337) of other parties. See 19 U.S.C. 1677f; 19 CFR 207.7; 19 CFR 207.100, *et. seq.*; 19 U.S.C. 2252(i); 19 U.S.C. 2451a(b)(3); 19 CFR 206.17; 19 U.S.C. 1337(n); 19 CFR 210.5, 210.34. The discussion below describes APO breach investigations that the Commission has completed during calendar year 2005, including a description of actions taken in response to these breaches.

Since 1991, the Commission has published annually a summary of its actions in response to violations of Commission APOs and the 24-hour rule. See 56 *FR* 4846 (Feb. 6, 1991); 57 *FR* 12,335 (Apr. 9, 1992); 58 *FR* 21,991 (Apr. 26, 1993); 59 *FR* 16,834 (Apr. 8, 1994); 60 *FR* 24,880 (May 10, 1995); 61 *FR* 21,203 (May 9, 1996); 62 *FR* 13,164 (March 19, 1997); 63 *FR* 25064 (May 6, 1998); 64 *FR* 23355 (April 30, 1999); 65 *FR* 30434 (May 11, 2000); 66 *FR* 27685 (May 18, 2001); 67 *FR* 39425 (June 7, 2002); 68 *FR* 28256 (May 23, 2003); 69 *FR* 29972 (May 26, 2004); 70 *FR* 42382 (July 25, 2005). This report does not provide an exhaustive list of conduct that will be deemed to be a breach of the Commission's APOs. APO breach inquiries are considered on a case-by-case basis.

As part of the effort to educate practitioners about the Commission's current APO practice, the Commission Secretary issued in March 2005 a fourth edition of *An Introduction to Administrative Protective Order Practice*

*in Import Injury Investigations* (Pub. No. 3755). This document is available upon request from the Office of the Secretary, U.S. International Trade Commission, 500 E Street, SW., Washington, DC 20436, tel. (202) 205–2000 and on the Commission's Web site at *http://www.usitc.gov*.

**I. In General**

The current APO form for antidumping and countervailing duty investigations, which was revised in March 2005, requires the applicant to swear that he or she will:

(1) Not divulge any of the BPI obtained under this APO or otherwise obtained in this investigation and not otherwise available to him or her, to any person other than—

(i) Personnel of the Commission concerned with the investigation

(ii) The person or agency from whom the BPI was obtained,

(iii) A person whose application for disclosure of BPI under this APO has been granted by the Secretary, and

(iv) Other persons, such as paralegals and clerical staff, who: (a) Are employed or supervised by and under the direction and control of the authorized applicant in the same firm whose application has been granted; (b) have a need thereof in connection with the investigation; (c) are not involved in competitive decision making for an interested party which is a party to the investigation; and (d) have signed the acknowledgment for clerical personnel in the form attached hereto (the authorized applicant shall also sign such acknowledgment and will be deemed responsible for such persons' compliance with the APO);

(2) Use such BPI solely for the purposes of the above-captioned Commission investigation or for judicial or binational panel review of such Commission investigation;

(3) Not consult with any person not described in paragraph (1) concerning BPI disclosed under this APO or otherwise obtained in this investigation without first having received the written consent of the Secretary and the party or the representative of the party from whom such BPI was obtained;

(4) Whenever materials (*e.g.*, documents, computer disks, etc.) containing such BPI are not being used, store such material in a locked file cabinet, vault, safe, or other suitable container (N.B.: storage of BPI on so-called hard disk computer media is to be avoided, because mere erasure of data from such media may not irrecoverably destroy the BPI and may

result in violation of paragraph C of the APO);

(5) Serve all materials containing BPI disclosed under this APO as directed by the Secretary and pursuant to section 207.7(f) of the Commission's rules;

(6) Transmit each document containing BPI disclosed under this APO:

(i) with a cover sheet identifying the document as containing BPI,

(ii) with all BPI enclosed in brackets and each page warning that the document contains BPI

(iii) if the document is to be filed by a deadline, with each page marked ''Bracketing of BPI not final for one business day after date of filing,'' and

(iv) If by mail, within two envelopes, the inner one sealed and marked ''Business Proprietary Information—To be opened only by [name of recipient]'', and the outer one sealed and not marked as containing BPI;

(7) Comply with the provision of this APO and section 207.7 of the Commission's rules;

(8) Make true and accurate representations in the authorized applicant's application and promptly notify the Secretary of any changes that occur after the submission of the application and that affect the representations made in the application (*e.g.*, change in personnel assigned to the investigation);

(9) Report promptly and confirm in writing to the Secretary any possible breach of the APO; and

(10) Acknowledge that breach of the APO may subject the authorized applicant and other persons to such sanctions or other actions as the Commission deems appropriate, including the administrative sanctions and actions set out in this APO.

The APO further provides that breach of an APO may subject an applicant to:

(1) Disbarment from practice in any capacity before the Commission along with such person's partners, associates, employer, and employees, for up to seven years following publication of a determination that the order has been breached;

(2) Referral to the United States Attorney;

(3) In the case of an attorney, accountant, or other professional, referral to the ethics panel of the appropriate professional association;

(4) Such other administrative sanctions as the Commission determines to be appropriate, including public release of or striking from the record any information or briefs submitted by, or on behalf of, such person or the party he represents; denial of further access to business proprietary information in the

current or any future investigations before the Commission, and issuance of a public or private letter of reprimand; and

(5) Such other actions, including but not limited to, a warning letter, as the Commission determines to be appropriate. APOs in investigations other than those under Title VII contain similar, though not identical, provisions.

Commission employees are not signatories to the Commission's APOs and do not obtain access to BPI through APO procedures. Consequently, they are not subject to the requirements of the APO with respect to the handling of CBI and BPI. However, Commission employees are subject to strict statutory and regulatory constraints concerning BPI and CBI, and face potentially severe penalties for noncompliance. *See* 18 U.S.C. 1905; Title 5, U.S. Code; and Commission personnel policies implementing the statutes. Although the Privacy Act (5 U.S.C. 552a) limits the Commission's authority to disclose any personnel action against agency employees, this should not lead the public to conclude that no such actions have been taken.

An important provision of the Commission's Title VII and safeguard rules relating to BPI/CBI is the "24-hour" rule. This rule provides that parties have one business day after the deadline for filing documents containing BPI to file a public version of the document. The rule also permits changes to the bracketing of information in the proprietary version within this one-day period. No changes—other than changes in bracketing—may be made to the proprietary version. The rule was intended to reduce the incidence of APO breaches caused by inadequate bracketing and improper placement of BPI. The Commission urges parties to make use of the rule. If a party wishes to make changes to a document other than bracketing, such as typographical changes or other corrections, the party must ask for an extension of time to file an amended document pursuant to section 201.14(b)(2) of the Commission's rules.

## II. Investigations of Alleged APO Breaches

Upon finding evidence of an APO breach or receiving information that there is a reason to believe one has occurred, the Commission Secretary notifies relevant officers in the agency that an APO breach investigation has commenced and that an APO breach investigation file has been opened. Upon receiving notification from the Secretary, the Office of the General Counsel (OGC) prepares a letter of inquiry to be sent to the possible breacher over the Secretary's signature to ascertain the possible breacher's views on whether a breach has occurred.[1] If, after reviewing the response and other relevant information, the Commission determines that a breach has occurred, the Commission often issues a second letter asking the breacher to address the questions of mitigating circumstances and possible sanctions or other actions. The Commission then determines what action to take in response to the breach. In some cases, the Commission determines that although a breach has occurred, sanctions are not warranted, and therefore has found it unnecessary to issue a second letter concerning what sanctions might be appropriate. Instead, it issues a warning letter to the individual. A warning letter is not considered to be a sanction.

Sanctions for APO violations serve two basic interests: (a) Preserving the confidence of submitters of BPI that the Commission is a reliable protector of BPI; and (b) disciplining breachers and deterring future violations. As the Conference Report to the Omnibus Trade and Competitiveness Act of 1988 observed, "[T]he effective enforcement of limited disclosure under administrative protective order depends in part on the extent to which private parties have confidence that there are effective sanctions against violation." H.R. Conf. Rep. No. 576, 100th Cong., 1st Sess. 623 (1988).

The Commission has worked to develop consistent jurisprudence, not only in determining whether a breach has occurred, but also in selecting an appropriate response. In determining the appropriate response, the Commission generally considers mitigating factors such as the unintentional nature of the breach, the lack of prior breaches committed by the breaching party, the corrective measures taken by the breaching party, and the promptness with which the breaching party reported the violation to the Commission. The Commission also considers aggravating circumstances, especially whether persons not under the APO actually read the BPI. The Commission considers whether there are prior breaches by the same person or persons in other investigations and multiple breaches by the same person or persons in the same investigation.

The Commission's rules permit an economist or consultant to obtain access to BPI/CBI under the APO in a Title VII or safeguard investigation if the economist or consultant is under the direction and control of an attorney under the APO, or if the economist or consultant appears regularly before the Commission and represents an interested party who is a party to the investigation. 19 CFR 207.7(a)(3)(B) and (C); 19 CFR 206.17(a)(3)(B) and (C). Economists and consultants who obtain access to BPI/CBI under the APO under the direction and control of an attorney nonetheless remain individually responsible for complying with the APO. In appropriate circumstances, for example, an economist under the direction and control of an attorney may be held responsible for a breach of the APO by failing to redact APO information from a document that is subsequently filed with the Commission and served as a public document. This is so even though the attorney exercising direction or control over the economist or consultant may also be held responsible for the breach of the APO.

The records of Commission investigations of alleged APO breaches in antidumping and countervailing duty cases are not publicly available and are exempt from disclosure under the Freedom of Information Act, 5 U.S.C. 552, section 135(b) of the Customs and Trade Act of 1990, 19 U.S.C. 1677f(g).

The two types of breaches most frequently investigated by the Commission involve the APO's prohibition on the dissemination of BPI or CBI to unauthorized persons and the APO's requirement that the materials received under the APO be returned or destroyed and that a certificate be filed indicating which action was taken within a specified period after the termination of the investigation or any subsequent appeals of the Commission's determination. The dissemination of BPI usually occurs as the result of failure to delete BPI from public versions of documents filed with the Commission or transmission of proprietary versions of documents to unauthorized recipients. Other breaches have included: The failure to bracket properly BPI/CBI in proprietary documents filed with the Commission; the failure to report immediately known violations of an APO; and the failure to adequately supervise non-legal personnel in the handling of BPI/CBI.

---

[1] Procedures for inquiries to determine whether a prohibited act such as a breach has occurred and for imposing sanctions for violation of the provisions of a protective order issued during NAFTA panel or committee proceedings are set out in 19 CFR 207.100–207.120. Those investigations are initially conducted by the Commission's Office of Unfair Import Investigations. During 2005, one investigation regarding a possible violation of a protective order issued during a NAFTA panel or committee proceeding was completed under those procedures.

Counsel participating in Title VII investigations have reported to the Commission potential breaches involving the electronic transmission of public versions of documents. In these cases, the document transmitted appears to be a public document with BPI omitted from brackets. However, the BPI is actually retrievable by manipulating codes in software. The Commission has found that the electronic transmission of a public document containing BPI in a recoverable form was a breach of the APO.

The Commission advised in the preamble to the notice of proposed rulemaking in 1990 that it will permit authorized applicants a certain amount of discretion in choosing the most appropriate method of safeguarding the confidentiality of the BPI. However, the Commission cautioned authorized applicants that they would be held responsible for safeguarding the confidentiality of all BPI to which they are granted access and warned applicants about the potential hazards of storage on hard disk. The caution in that preamble is restated here:

[T]he Commission suggests that certain safeguards would seem to be particularly useful. When storing business proprietary information on computer disks, for example, storage on floppy disks rather than hard disks is recommended, because deletion of information from a hard disk does not necessarily erase the information, which can often be retrieved using a utilities program. Further, use of business proprietary information on a computer with the capability to communicate with users outside the authorized applicant's office incurs the risk of unauthorized access to the information through such communication. If a computer malfunctions, all business proprietary information should be erased from the machine before it is removed from the authorized applicant's office for repair. While no safeguard program will insulate an authorized applicant from sanctions in the event of a breach of the administrative protective order, such a program may be a mitigating factor. Preamble to notice of proposed rulemaking, 55 FR 24100, 24103 (June 14, 1990).

In the past several years, the Commission completed APOB investigations which involved members of a law firm or consultants working with a firm who were granted access to APO materials by the firm although they were not APO signatories. In these cases, the firm and the person using the BPI mistakenly believed an APO application had been filed for that person. The Commission determined in all of these cases that the person who was a non-signatory, and therefore did not agree to be bound by the APO, could not be found to have breached the APO.

Action could be taken against these persons, however, under Commission rule 201.15 (19 CFR 201.15) for good cause shown. In all cases in which action was taken, the Commission decided that the non-signatory was a person who appeared regularly before the Commission and was aware of the requirements and limitations related to APO access and should have verified his or her APO status before obtaining access to and using the BPI. The Commission notes that section 201.15 may also be available to issue sanctions to attorneys or agents in different factual circumstances where they did not technically breach the APO but where their actions or inactions did not demonstrate diligent care of the APO materials even though they appeared regularly before the Commission and were aware of the importance the Commission placed on the care of APO materials. In 2005 there was one investigation where the Commission considered issuing a sanction to an attorney under section 201.15, but determined that there was not good cause, and one investigation where a private letter of reprimand was issued to an attorney for good cause shown, pursuant to section 201.15.

Also in recent years the Commission has found the lead attorney to be responsible for breaches where he or she failed to provide adequate supervision over the handling of BPI. Lead attorneys should be aware that their responsibilities for overall supervision of an investigation, when a breach has been caused by the actions of someone else in the investigation, may lead to a finding that the lead attorney has also violated the APO. The Commission has found that a lead attorney did not violate the APO in cases where his delegation of authority was reasonable. A prior breach by a subordinate attorney would suggest that delegation of authority to that attorney may not be reasonable.

## III. Specific Investigations in Which Breaches Were Found

The Commission presents the following case studies to educate users about the types of APO breaches found by the Commission. The studies provide the factual background, the actions taken by the Commission, and the factors considered by the Commission in determining the appropriate actions. The Commission has not included some of the specific facts in the descriptions of investigations where disclosure of such facts could reveal the identity of a particular breacher. Thus, in some cases, apparent inconsistencies in the facts set forth in this notice result from the Commission's inability to disclose particular facts more fully.

*Case 1.* The Commission determined that a lead attorney, a second attorney, and an economist breached the APO by failing to redact BPI from a public statement filed on behalf of their client. The BPI consisted of the position on the petition taken by a non-petitioner member of the domestic industry. Although the persons accused of breaching the APO argued that the information was public information, the Commission found that it was BPI at the time the information was left unredacted in their client's statement. The Commission found that the lead attorney committed a second breach by allowing access to the BPI by a third attorney in the firm who was not a signatory to the APO.

The Commission issued private letters of reprimand to the first two attorneys and the economist. In reaching its decision, the Commission considered the existence of mitigating factors, including the unintentional nature of the breaches, the fact that some corrective measures were taken immediately, and the absence of any prior breaches during the previous two year period usually considered by the Commission for purposes of determining sanctions. The Commission noted that the two attorneys and the economist did not provide the Commission with information indicating that non-signatories who had access to the BPI did not read the information. Based on the information available, including the amount of time the BPI was available to its client, the Commission presumed that the BPI was read by non-signatories to the APO.

The Commission also issued a private letter of reprimand by finding good cause under Commission rule 201.15(a) to sanction the third attorney, who failed to apply for APO access before handling BPI and for his role in supervising the preparation of the public statement containing BPI that was the subject of this APO breach investigation. The Commission considered the unintentional nature of the breach, the fact that some corrective measures were immediately taken, the fact that his firm had internal APO procedures in place, and the absence within the past two years of any prior breaches or other rule 201.15 allegations involving the use of BPI as a non-signatory to an APO. The Commission also gave consideration to the presumption that unauthorized persons read the BPI.

*Case 2.* A law firm that was representing a foreign government in a World Trade Organization (WTO)

dispute settlement proceeding provided its client with a confidential version of a Commission remand opinion on the same product in dispute. This opinion was used as one of many exhibits attached to the foreign government's first brief in the WTO dispute. Consequently, the document became available for about a month to WTO officials and their staffs, third party countries, and the government filing the document. The law firm did not discover the inclusion of the confidential opinion, but was instead informed by its client, the foreign government.

Inquiries with the law firm did not extract clear information on how the confidential opinion had ended up as an exhibit in the brief. Based on the information that was available, the Commission decided to issue a private letter of reprimand to the lead attorney for the firm in the Commission investigation that resulted in the Commission remand opinion. The Commission found that as lead attorney under the APO, the attorney had overall responsibility for the conduct of the investigation at his firm, including the safeguarding of BPI. The Commission reached its decision to issue the private letter of reprimand after giving consideration to the existence of several mitigating factors including the unintentional nature of the breach, the fact that appropriate corrective measures were taken immediately, and the absence of any prior breaches in the previous two years. The Commission also gave consideration to the aggravating factor that the BPI in question may have been viewed by unauthorized persons. The Commission found that even though the BPI constituted a very small part of a large submission, the large number of parties that had received it and the length of time they had the BPI, caused the Commission to presume that the BPI was read by non-signatories to the APO.

The Commission also determined that there was good cause under Commission rule 201.15(a) to sanction two attorneys in the firm who were not on the Commission APO but were representing the foreign government in the WTO dispute settlement proceeding for the use of the confidential Commission remand opinion as an exhibit in the foreign government's brief. These attorneys were experienced in the international trade area and should have taken greater care to check the exhibits that were provided to the foreign government for inclusion in its brief. The Commission issued private letters of reprimand to these attorneys after considering the same mitigating

and aggravating factors noted with regard to the first attorney.

*Case 3.* The Commission issued warning letters to two attorneys for a breach of the APO when a package containing CBI on an electronic disk was misplaced, and recovered unopened after 14 days, by a courier service used by their law firm. The two attorneys, the lead attorney and a partner in the firm who was most directly involved in the day to day decisions including the handling of the APO materials, were found to have breached because the APO materials in the package were made available to unauthorized persons during the period the package was misplaced, although the package was not opened and the materials were not viewed by unauthorized persons. The Commission also found that the materials were not stored in accordance with the requirements of the APO during the period they were misplaced. There had been no previous problems with the courier service prior to this particular incident.

The Commission considered the attorneys' argument that the Commission was time-barred under its rules from finding that a breach occurred. The Commission's rules require that the APOB investigation be commenced within 60 days of the alleged breach. The attorneys mistakenly believed that the investigation began when they were notified by letter about the APOB investigation. Instead, an APOB investigation begins when the Commission Secretary opens a breach file and notifies the appropriate Commission offices that a breach file has been opened. This was done well within the 60-day requirement.

The Commission issued warning letters rather than a sanction after giving consideration to the facts that the breach was unintentional, the attorneys had no record of prior breaches, the breach was reported promptly, and there was no evidence that the APO materials were reviewed by unauthorized persons.

After the Commission issued the warning letters, the attorneys filed a request that the Commission reconsider its decision because a Commission decision not available to the attorneys at the time they filed their responses, but reached before the decision in their case, was inconsistent with the Commission's decision in their case. The Commission decided to reconsider its earlier decision regarding the attorneys because they did not have the other Commission decision available to them at the time they filed their responses. However, the Commission

concluded that the decisions in question were not inconsistent and, accordingly, denied their request to reverse the decision.

*Case 4.* The Commission issued a private letter of reprimand to an attorney who was responsible for reviewing the public version of a document that was filed with the Commission and served on other persons with CBI obtained under the APO left in brackets in a footnote. The Commission did not accept counsel's argument that the submitter's counsel had waived confidential treatment and that the information was not CBI. The attempted waiver was obtained after the alleged breach; the attorney offered no evidence that the CBI was publicly available at the time of the alleged breach; the CBI in question was contained in the staff report and was the work product of a Commission staff member; and the information was treated as CBI throughout the Commission investigation, even after the alleged breach.

The Commission reached its decision to sanction the attorney after giving consideration to the unintentional nature of the breach, the fact that corrective measures were taken immediately, and the fact that the law firm had changed its practices since the breach to increase the level of review. The Commission found two aggravating circumstances present. First, the Commission presumed that the CBI was viewed by unauthorized persons, including the firm's clients and other persons to whom the firm sent the document, as well as by unauthorized persons who may have viewed the CBI while it was in the Commission's public file. Second, the breach was discovered by the Commission's staff.

*Case 5.* The Commission issued a private letter of reprimand to the lead attorney and warning letters to two attorneys and a legal assistant/non-attorney APO records coordinator for failure to destroy or return materials which contained BPI obtained under the APO in a timely manner. The Commission issued a private letter of reprimand to the lead attorney after considering as mitigating circumstances that the BPI was not disclosed to any unauthorized persons, the breach was reported promptly upon its discovery, and that the lead attorney was not aware of serious health problems affecting the attorney who held the day-to-day responsibility for APO compliance in the investigation. The aggravating circumstances considered were the fact that this was the lead attorney's third APO breach in a relatively short period of time and the fact that the firm had

**39360** **Federal Register** / Vol. 71, No. 133 / Wednesday, July 12, 2006 / Notices

retained the BPI materials for a long period of time after they should have been returned or destroyed.

The Commission issued warning letters to the two attorneys after considering that the BPI was not disclosed to any unauthorized person and the two attorneys had previously not violated an APO. The Commission found an additional mitigating factor for the first attorney, who was originally responsible for the day-to-day conduct of the case, in that he had been experiencing symptoms consistent with a potentially life-threatening medical condition. The Commission found an additional mitigating factor for the second attorney, who had taken over responsibility for the investigation after the first attorney left the firm, in that he was not responsible for the APO compliance at the time the breach commenced. The Commission issued a warning letter to the legal assistant, although he had received a warning letter within the previous two years, after considering that the legal assistant was acting under the supervision of an attorney during the period in question, that BPI was not disclosed to any unauthorized person; and that the breach was reported promptly once it was discovered by the firm. The Commission found that the duration of the breach was an aggravating factor for the two attorneys and the legal assistant.

The Commission also considered whether there was good cause under Commission rule 201.15(a) to sanction an attorney in the firm who was not on the APO but was the attorney-APO coordinator for the firm. The Commission determined that there was not good cause to sanction the attorney after reviewing the description of his duties as the attorney-APO coordinator.

*Case 6.* The Commission issued warning letters to two attorneys, a legal assistant, and a professional assistant for failure to remove all bracketed BPI from the public version of a brief. The confidential brief had been rebracketed as authorized by the Commission's 24-hour rule. During the efforts to remove the BPI from those brackets for the public version of the brief, the computer program redacting the BPI failed. The program had previously been accurate in its redaction of BPI from brackets. Consequently, under the constraint of limited time, the document was redacted manually. In spite of the efforts of the two attorneys and the assistants, BPI remained in the brief and was filed with the Commission. Before the brief was sent to other parties, the error was found. One attorney contacted the Commission and immediately requested that the brief not be entered into EDIS.

The redaction was corrected before the brief was sent to the other parties.

A warning letter and not a sanction was issued because the breach was unintentional; the firm took immediate steps to notify the Commission and to rectify the matter and protect the BPI; the firm revamped its APO procedures to allow more time for the redacting after adding brackets under the Commission's 24-hour rule; and none of the participants in the breach had previously breached a Commission APO. In addition, there was no information suggesting that any unauthorized person had reviewed the BPI.

*Case 7.* The Commission issued a warning letter to one attorney who had been responsible for preparing the public version of a draft brief which contained several pages of unredacted BPI and which he sent to his clients for review. The Commission decided not to sanction the attorney because he had no prior breaches within the previous two years, the breach was unintentional, prompt action was taken to remedy the breach, and none of the non-signatories who received the draft containing BPI read the document. A second attorney who responded to the original inquiry concerning a possible breach was found not to have breached because he was only involved in drafting the original brief but not involved in preparing the public version of that document.

*Case 8.* The Commission considered whether a number of firm personnel had been responsible for a breach of the APO by filing with the Commission and serving on the parties listed on the public service list a public version of a brief containing BPI that was unbracketed and unredacted on one page of the brief. The Commission found that all individuals in the firm except a senior associate were not responsible for the breach.

The Commission found that the senior associate was responsible for the breach and issued a warning letter. The Commission decided not to sanction the attorney because this was the only breach in which he was involved within the period generally examined by the Commission for purposes of determining sanctions; the breach was unintentional; the breach was discovered by the firm; prompt action was taken to remedy the breach and the record in the APOB investigation suggested that the BPI likely was not revealed to unauthorized parties. Each of the attorneys who were served with the public version of the brief were signatories to the APO. In addition, each attorney served with the brief was notified very quickly about the mistake,

and was provided with a replacement page and a request that they destroy the page containing the BPI. Each firm confirmed that this was done and that the brief containing the BPI was not copied or otherwise disclosed to non-signatory persons.

The lead attorney was not found to have breached even though he signed the public version of the brief containing the BPI. At the time he signed the brief, he instructed the senior associate to redact the BPI before filing, but the senior associate failed to do this. The Commission found that the lead attorney's delegation to the senior associate to make the final corrections to the brief was reasonable, especially in light of the associate's years of experience practicing before the Commission with no prior breaches.

*Case 9.* The Commission issued a warning letter to an attorney who was responsible for transmitting an electronic version of a document containing BPI to a client who was a non-signatory to the APO. Before transmitting the document, the attorney had converted the original Word document to a .pdf file after using a "white-out" program that had visibly removed the BPI from the document. The client, in an effort to type notes on the document, converted the document back to Word which caused the BPI to become visible.

In determining to issue a warning letter instead of a sanction, the Commission considered the fact that the breach was inadvertent, the attorney endeavored at all times to abide by the APO; the attorney's office and the client took immediate steps to remedy the situation; and the firm implemented new procedures regarding the creation of non-confidential versions of documents containing business proprietary information. The client only read portions he annotated and never viewed the BPI before sending the document back to the attorney.

*Case 10.* The Commission initiated an APOB investigation into possible breaches by three attorneys. Two attorneys in a law firm which represented respondents in the underlying Commission investigation were issued private letters of reprimand for two breaches. The first breach was the failure to comply in a timely manner with the return or destroy and certification requirements of the APO after judicial proceedings ended in connection with the petitioner's appeal of the Commission determination. The certificate of destruction was filed approximately three months after the judicial proceedings ended. The second breach was the failure to inform the

Commission that one of the two attorneys, who had been the lead attorney during the Commission investigation, had left the firm after the investigation had ended but before resulting litigation had been completed. The second of the two attorneys became the lead attorney for the duration of the appeals.

The Commission found that the first attorney, by failing to inform the Commission that he had left the law firm and should no longer be a signatory to the APO, retained an obligation to ensure that his former firm complied with the APO requirements for returning and destroying the materials. The Commission issued the private letter of reprimand to the first attorney after considering the mitigating factor that there was no disclosure of BPI to unauthorized persons. The Commission also considered two aggravating factors. First, it considered the fact that he was responsible for a second breach by not informing the Commission of his departure from the law firm. Second, he failed to expeditiously arrange for destruction or return of BPI upon learning of the breach from the Commission Secretary. In spite of his oral assurance that he would work with his former colleagues to cure the breach, he took no action until he received the Commission's letter of inquiry, over a month later.

The second attorney, who was the lead attorney during the time when the certificate of return or destruction should have been filed, failed to file it in a timely manner. He also breached the APO by not informing the Commission that the first lead attorney had left the firm. The Commission issued a private letter of reprimand to the second attorney after consideration of two mitigating factors: The lack of any disclosure of BPI to unauthorized persons and the fact that he took appropriate corrective measures immediately once he learned of the breach. The Commission also considered the fact that he was responsible for two breaches in this one investigation and the fact that when he took over as the lead attorney after the departure of the first attorney, he did not make efforts to review and comprehend the APO or the Commission's rules on handling APO materials to compensate for his inexperience with Commission investigations.

An attorney from a second law firm, which represented other respondents in the Commission investigation, certified to the destruction of all materials released under the APO thirty-two days after the firm representing the petitioner

filed its certificate of destruction of the APO materials. The petitioner filed its certificate a week after the time lapsed for filing a writ of certiorari to the Supreme Court. There is no specific time limit for returning or destroying the materials after an appeal has ended but the Commission considered whether the certificate was filed within a reasonable period of time. The Commission found that this attorney filed the certificate within a reasonable period of time and, therefore, did not breach the APO.

*Case 11.* The Commission investigated whether an attorney, an economist, and a secretary in a law firm had breached the APO when the secretary transmitted the confidential version of a brief to a client who was not a signatory to the APO. The Commission found that the attorney had not committed a breach even though he was the lead attorney and had signed the Acknowledgment for Clerical Personnel as the individual exercising direction and control. The attorney was not personally involved in giving directions and supervision to the secretary regarding the transmittal of the brief. Instead, the attorney had delegated responsibilities for portions of the Commission investigation to the economist and it was the economist who directed the secretary to mail the document and did not check the material before it was mailed. The delegation from the attorney to the economist was reasonable in that the economist had no previous breaches and was an experienced and fairly senior member of the firm's trade practice who had previously given similar assignments to the firm's clerical personnel.

The Commission found that the economist and the secretary were responsible for the breach and issued private letters of reprimand to them. The economist failed in his supervision of the secretary and the secretary, who had worked on Commission investigations for many years, had inappropriately mailed a confidential document to a non-signatory of the APO. In determining to sanction the economist and the secretary, the Commission considered the mitigating factors that they had no prior breaches within the previous two years, the breach was unintentional, and the firm took appropriate corrective measures once it learned of the breach. The Commission also considered the aggravating factor that the BPI in question was viewed by an unauthorized person.

*Case 12.* The lead attorney in a law firm filed a certificate of return or

destruction of APO materials 15 months after the conclusion of a Commission investigation after an associate in the firm discovered that the APO files remained in the firm's secure storage. No appeal had been taken so the deadline for the return or destruction of the materials was 60 days after the conclusion of the investigation. The lead attorney argued that the firm's policy laid the responsibility for ensuring that the return and destruction deadline was met with the most senior associate assigned to an investigation. In this case the associate in question had left the firm six months after the investigation had concluded but had sent a certification to the Commission upon leaving the firm that all APO materials in his personal possession were returned or destroyed. He argued that responsibility to return or destroy the materials held in the firm's secure storage was that of the lead attorney and the paralegal assigned to the investigation.

The Commission found that both the lead attorney and the associate were responsible for the failure to return or destroy the APO materials and to certify thereto within the deadline provided in the APO. The Commission determined to issue warning letters and not sanctions to the two attorneys after giving consideration to the nature of the violation and the facts that their failure to fully comply with the APO was unintentional, that this was the only failure to comply with an APO in which they were involved within the two year period generally examined by the Commission for purposes of determining sanctions, and that the BPI was fully protected and was not released to any third party while it remained at the firm. In addition, with regard to the lead attorney, he notified the Commission immediately upon discovering the belated destruction and he took further action by changing the firm's procedures to prevent future delays in complying with the return or destruction requirements of a Commission APO.

There were investigations in which no breach was found. For example, in one case no breach was found because the alleged BPI was otherwise publicly available at the time the public version of the pre-hearing brief containing the alleged BPI was filed; and in another case, no breach was found because the attorneys had applied to be subject to the APO on behalf of their new clients and the Secretary's office had approved the application before they filed a post hearing brief containing BPI they had acquired through their representation of another client.

By order of the Commission.

Issued: July 6, 2006.

**Marilyn R. Abbott,**

*Secretary to the Commission.*

[FR Doc. E6–10914 Filed 7–11–06; 8:45 am]

**BILLING CODE 7020–02–P**

---

## INTERNATIONAL TRADE COMMISSION

**[Inv. No. 337–TA–578]**

## Certain Mobile Telephone Handsets, Wireless Communication Devices, and Components Thereof; Notice of Investigation

**AGENCY:** U.S. International Trade Commission.

**ACTION:** Institution of investigation pursuant to 19 U.S.C. 1337.

**SUMMARY:** Notice is hereby given that a complaint was filed with the U.S. International Trade Commission on June 9, 2006, under section 337 of the Tariff Act of 1930, as amended, 19 U.S.C. 1337, on behalf of QUALCOMM Incorporated of San Diego, California. A supplement to the complaint was filed on June 27, 2006. The complaint, as supplemented, alleges violations of section 337 in the importation into the United States, the sale for importation, and the sale within the United States after importation of certain mobile telephone handsets, wireless communication devices, and components thereof by reason of infringement of claims 1, 3, and 4 of U.S. Patent No. 5,452,473; claim 1 of U.S. Patent No. 5,590,408; claims 2, 7, and 8 of U.S. Patent No. 5,655,220; claims 1, 6, 9, 18, 23, and 24 of U.S. Patent No. 5,576,767; claims 3, 4, 13, 59, and 60 of U.S. Patent No. 5,542,104; and claims 1 and 7 of U.S. Patent No. 6,453,182. The complaint further alleges that an industry in the United States exists as required by subsection (a)(2) of section 337.

The complainant requests that the Commission institute an investigation and, after the investigation, issue a permanent exclusion order and a permanent cease and desist order.

**ADDRESSES:** The complaint, except for any confidential information contained therein, is available for inspection during official business hours (8:45 a.m. to 5:15 p.m.) in the Office of the Secretary, U.S. International Trade Commission, 500 E Street, SW., Room 112, Washington, DC 20436, telephone 202–205–2000. Hearing impaired individuals are advised that information on this matter can be obtained by contacting the Commission's TDD

terminal on 202–205–1810. Persons with mobility impairments who will need special assistance in gaining access to the Commission should contact the Office of the Secretary at 202–205–2000. General information concerning the Commission may also be obtained by accessing its internet server at *http://www.usitc.gov.* The public record for this investigation may be viewed on the Commission's electronic docket (EDIS) at *http://edis.usitc.gov.*

**FOR FURTHER INFORMATION CONTACT:** David O. Lloyd, Esq., Office of Unfair Import Investigations, U.S. International Trade Commission, telephone (202) 205–2576.

*Authority:* The authority for institution of this investigation is contained in section 337 of the Tariff Act of 1930, as amended, and in section 210.10 of the Commission's Rules of Practice and Procedure, 19 CFR 210.10 (2006).

*Scope of Investigation:* Having considered the complaint, the U.S. International Trade Commission, on July 5, 2006, ordered that—

(1) Pursuant to subsection (b) of section 337 of the Tariff Act of 1930, as amended, an investigation be instituted to determine whether there is a violation of subsection (a)(1)(B) of section 337 in the importation into the United States, the sale for importation, or the sale within the United States after importation of certain mobile telephone handsets, wireless communication devices, or components thereof by reason of infringement of one or more of claims 1, 3, and 4 of U.S. Patent No. 5,452,473; claim 1 of U.S. Patent No. 5,590,408; claims 2, 7, and 8 of U.S. Patent No. 5,655,220; claims 1, 6, 9, 18, 23, and 24 of U.S. Patent No. 5,576,767; claims 3, 4, 13, 59, and 60 of U.S. Patent No. 5,542,104; and claims 1 and 7 of U.S. Patent No. 6,453,182, and whether an industry in the United States exists as required by subsection (a)(2) of section 337;

(2) For the purpose of the investigation so instituted, the following are hereby named as parties upon which this notice of investigation shall be served:

(a) The complainant is—

QUALCOMM Incorporated, 5775 Morehouse Drive, San Diego, CA 92121.

(b) The respondents are the following entities alleged to be in violation of section 337, and are the parties upon which the complaint is to be served:

Nokia Corporation, Keilalahdentie 2–4 Espoo, P.O. Box 226, FIN–00045 Nokia Group, Finland.

Nokia Inc., 6000 Connection Drive, Irving, Texas 75039.

(c) The Commission Investigative Attorney, party to this investigation, is David O. Lloyd, Esq., Office of Unfair Import Investigations, U.S. International Trade Commission, 500 E Street, SW., Suite 401, Washington, DC 20436; and

(3) For the investigation so instituted, the Honorable Robert L. Barton, Jr. is designated as the presiding administrative law judge.

Responses to the complaint and the notice of investigation must be submitted by the named respondents in accordance with section 210.13 of the Commission's Rules of Practice and Procedure, 19 CFR 210.13. Pursuant to 19 CFR 201.16(d) and 210.13(a), such responses will be considered by the Commission if received not later than 20 days after the date of service by the Commission of the complaint and the notice of investigation. Extensions of time for submitting responses to the complaint and the notice of investigation will not be granted unless good cause therefor is shown.

Failure of a respondent to file a timely response to each allegation in the complaint and in this notice may be deemed to constitute a waiver of the right to appear and contest the allegations of the complaint and this notice, and to authorize the administrative law judge and the Commission, without further notice to the respondents, to find the facts to be as alleged in the complaint and this notice and to enter an initial determination and a final determination containing such findings, and may result in the issuance of a limited exclusion order or cease and desist order or both directed against the respondent.

Issued: July 7, 2006.

By order of the Commission.

**Marilyn R. Abbott,**

*Secretary to the Commission.*

[FR Doc. E6–10910 Filed 7–11–06; 8:45 am]

**BILLING CODE 7020–02–P**

---

## INTERNATIONAL TRADE COMMISSION

**[USITC SE–06–046]**

## Sunshine Act Meeting; Notice

**AGENCY HOLDING THE MEETING:** United States International Trade Commission.

**TIME AND DATE:** July 20, 2006 at 11:00 a.m.

**PLACE:** Room 101, 500 E Street SW., Washington, DC 20436, Telephone: (202) 205–2000.

# INTERNATIONAL TRADE COMMISSION

[USITC SE–07–016]

## Sunshine Act Meeting Notice

**AGENCY HOLDING THE MEETING:** United States International Trade Commission.

**TIME AND DATE:** September 7, 2007 at 11 a.m.

**PLACE:** Room 101, 500 E Street, SW., Washington, DC 20436, Telephone: (202) 205–2000.

**STATUS:** Open to the public.

**MATTERS TO BE CONSIDERED:**

1. *Agenda for future meetings:* None.
2. Minutes.
3. Ratification List.
4. Inv. Nos. 701–TA–365–366 and 731–TA–734–735 (Second Review) (Certain Pasta from Italy and Turkey)— briefing and vote. (The Commission is currently scheduled to transmit its determinations and Commissioners' opinions to the Secretary of Commerce on or before September 27, 2007.)
5. *Outstanding action jackets:* None.

In accordance with Commission policy, subject matter listed above, not disposed of at the scheduled meeting, may be carried over to the agenda of the following meeting.

By order of the Commission.

Issued: August 27, 2007.

**William R. Bishop,**

*Hearings and Meetings Coordinator.*

[FR Doc. E7–17231 Filed 8–29–07; 8:45 am]

**BILLING CODE 7020–02–P**

# INTERNATIONAL TRADE COMMISSION

## Summary of Commission Practice Relating to Administrative Protective Orders

**AGENCY:** U.S. International Trade Commission.

**ACTION:** Summary of Commission practice relating to administrative protective orders.

**SUMMARY:** Since February 1991, the U.S. International Trade Commission ("Commission") has issued an annual report on the status of its practice with respect to violations of its administrative protective orders ("APOs") in investigations under Title VII of the Tariff Act of 1930 in response to a direction contained in the Conference Report to the Customs and Trade Act of 1990. Over time, the Commission has added to its report discussions of APO breaches in Commission proceedings other than under Title VII and violations of the

Commission's rules including the rule on bracketing business proprietary information ("BPI") (the "24-hour rule"), 19 CFR 207.3(c). This notice provides a summary of investigations completed during calendar year 2006 of breaches in proceedings under Title VII. In 2006, there were no completed investigations of breaches in proceedings other than Title VII. The Commission intends that this report inform representatives of parties to Commission proceedings as to some specific types of APO breaches encountered by the Commission and the corresponding types of actions the Commission has taken.

**FOR FURTHER INFORMATION CONTACT:** Carol McCue Verratti, Esq., Office of the General Counsel, U.S. International Trade Commission, telephone (202) 205–3088. Hearing impaired individuals are advised that information on this matter can be obtained by contacting the Commission's TDD terminal at (202) 205–1810. General information concerning the Commission can also be obtained by accessing its Internet server (*http://www.usitc.gov*).

**SUPPLEMENTARY INFORMATION:** Representatives of parties to investigations or other proceedings conducted under Title VII of the Tariff Act of 1930, sections 202 and 204 of the Trade Act of 1974, section 421 of the Trade Act of 1974, section 337 of the Tariff Act of 1930, and NAFTA Article 1904.13, 19 U.S.C. 1516a(g)(7)(A) may enter into APOs that permit them, under strict conditions, to obtain access to BPI (Title VII) or confidential business information ("CBI") (section 421, sections 201–204, and section 337) of other parties. See 19 U.S.C. 1677f; 19 CFR 207.7; 19 CFR 207.100, *et. seq.*; 19 U.S.C. 2252(i); 19 U.S.C. 2451a(b)(3); 19 CFR 206.17; 19 U.S.C. 1337(n); 19 CFR 210.5, 210.34. The discussion below describes APO breach investigations that the Commission has completed during calendar year 2006, including a description of actions taken in response to these breaches.

Since 1991, the Commission has published annually a summary of its actions in response to violations of Commission APOs and the 24-hour rule. See 56 FR 4846 (Feb. 6, 1991); 57 FR 12,335 (Apr. 9, 1992); 58 FR 21,991 (Apr. 26, 1993); 59 FR 16,834 (Apr. 8, 1994); 60 FR 24,880 (May 10, 1995); 61 FR 21,203 (May 9, 1996); 62 FR 13,164 (March 19, 1997); 63 FR 25064 (May 6, 1998); 64 FR 23355 (April 30, 1999); 65 FR 30434 (May 11, 2000); 66 FR 27685 (May 18, 2001); 67 FR 39425 (June 7, 2002); 68 FR 28256 (May 23, 2003); 69 FR 29972 (May 26, 2004); 70 FR 42382

(July 25, 2005); 71 FR 39355 (July 12, 2006). This report does not provide an exhaustive list of conduct that will be deemed to be a breach of the Commission's APOs. APO breach inquiries are considered on a case-by-case basis.

As part of the effort to educate practitioners about the Commission's current APO practice, the Commission Secretary issued in March 2005 a fourth edition of *An Introduction to Administrative Protective Order Practice in Import Injury Investigations* (Pub. No. 3755). This document is available upon request from the Office of the Secretary, U.S. International Trade Commission, 500 E Street, SW., Washington, DC 20436, tel. (202) 205–2000 and on the Commission's Web site at *http://www.usitc.gov*.

## I. In General

The current APO form for antidumping and countervailing duty investigations, which was revised in March 2005, requires the applicant to swear that he or she will:

(1) Not divulge any of the BPI obtained under this APO or otherwise obtained in this investigation and not otherwise available to him or her, to any person other than —

(i) Personnel of the Commission concerned with the investigation,

(ii) The person or agency from whom the BPI was obtained,

(iii) A person whose application for disclosure of BPI under this APO has been granted by the Secretary, and

(iv) Other persons, such as paralegals and clerical staff, who (a) are employed or supervised by and under the direction and control of the authorized applicant or another authorized applicant in the same firm whose application has been granted; (b) have a need thereof in connection with the investigation; (c) are not involved in competitive decision making for an interested party which is a party to the investigation; and (d) have signed the acknowledgment for clerical personnel in the form attached hereto (the authorized applicant shall also sign such acknowledgment and will be deemed responsible for such persons' compliance with the APO);

(2) Use such BPI solely for the purposes of the above-captioned Commission investigation or for judicial or binational panel review of such Commission investigation;

(3) Not consult with any person not described in paragraph (1) concerning BPI disclosed under this APO or otherwise obtained in this investigation without first having received the written consent of the Secretary and the party

or the representative of the party from whom such BPI was obtained;

(4) Whenever materials (*e.g.*, documents, computer disks, etc.) containing such BPI are not being used, store such material in a locked file cabinet, vault, safe, or other suitable container (N.B.: Storage of BPI on so-called hard disk computer media is to be avoided, because mere erasure of data from such media may not irrecoverably destroy the BPI and may result in violation of paragraph C of the APO);

(5) Serve all materials containing BPI disclosed under this APO as directed by the Secretary and pursuant to section 207.7(f) of the Commission's rules;

(6) Transmit each document containing BPI disclosed under this APO:

(i) With a cover sheet identifying the document as containing BPI,

(ii) with all BPI enclosed in brackets and each page warning that the document contains BPI,

(iii) if the document is to be filed by a deadline, with each page marked "Bracketing of BPI not final for one business day after date of filing," and

(iv) if by mail, within two envelopes, the inner one sealed and marked "Business Proprietary Information—To be opened only by [name of recipient]", and the outer one sealed and not marked as containing BPI;

(7) Comply with the provision of this APO and section 207.7 of the Commission's rules;

(8) Make true and accurate representations in the authorized applicant's application and promptly notify the Secretary of any changes that occur after the submission of the application and that affect the representations made in the application (*e.g.*, change in personnel assigned to the investigation);

(9) Report promptly and confirm in writing to the Secretary any possible breach of the APO; and

(10) Acknowledge that breach of the APO may subject the authorized applicant and other persons to such sanctions or other actions as the Commission deems appropriate, including the administrative sanctions and actions set out in this APO.

The APO further provides that breach of an APO may subject an applicant to:

(1) Disbarment from practice in any capacity before the Commission along with such person's partners, associates, employer, and employees, for up to seven years following publication of a determination that the order has been breached;

(2) Referral to the United States Attorney;

(3) In the case of an attorney, accountant, or other professional, referral to the ethics panel of the appropriate professional association;

(4) Such other administrative sanctions as the Commission determines to be appropriate, including public release of or striking from the record any information or briefs submitted by, or on behalf of, such person or the party he represents; denial of further access to business proprietary information in the current or any future investigations before the Commission, and issuance of a public or private letter of reprimand; and

(5) Such other actions, including but not limited to, a warning letter, as the Commission determines to be appropriate.

APOs in investigations other than those under Title VII contain similar, though not identical, provisions.

Commission employees are not signatories to the Commission's APOs and do not obtain access to BPI through APO procedures. Consequently, they are not subject to the requirements of the APO with respect to the handling of CBI and BPI. However, Commission employees are subject to strict statutory and regulatory constraints concerning BPI and CBI, and face potentially severe penalties for noncompliance. *See* 18 U.S.C. 1905; Title 5, U.S. Code; and Commission personnel policies implementing the statutes. Although the Privacy Act (5 U.S.C. 552a) limits the Commission's authority to disclose any personnel action against agency employees, this should not lead the public to conclude that no such actions have been taken.

An important provision of the Commission's Title VII and safeguard rules relating to BPI/CBI is the "24-hour" rule. This rule provides that parties have one business day after the deadline for filing documents containing BPI to file a public version of the document. The rule also permits changes to the bracketing of information in the proprietary version within this one-day period. No changes—other than changes in bracketing—may be made to the proprietary version. The rule was intended to reduce the incidence of APO breaches caused by inadequate bracketing and improper placement of BPI. The Commission urges parties to make use of the rule. If a party wishes to make changes to a document other than bracketing, such as typographical changes or other corrections, the party must ask for an extension of time to file an amended document pursuant to section 201.14(b)(2) of the Commission's rules.

## II. Investigations of Alleged APO Breaches

Upon finding evidence of an APO breach or receiving information that there is a reason to believe one has occurred, the Commission Secretary notifies relevant offices in the agency that an APO breach investigation has commenced and that an APO breach investigation file has been opened. Upon receiving notification from the Secretary, the Office of the General Counsel (OGC) prepares a letter of inquiry to be sent to the possible breacher over the Secretary's signature to ascertain the possible breacher's views on whether a breach has occurred.[1] If, after reviewing the response and other relevant information, the Commission determines that a breach has occurred, the Commission often issues a second letter asking the breacher to address the questions of mitigating circumstances and possible sanctions or other actions. The Commission then determines what action to take in response to the breach. In some cases, the Commission determines that although a breach has occurred, sanctions are not warranted, and therefore finds it unnecessary to issue a second letter concerning what sanctions might be appropriate. Instead, it issues a warning letter to the individual. A warning letter is not considered to be a sanction.

Sanctions for APO violations serve two basic interests: (a) Preserving the confidence of submitters of BPI that the Commission is a reliable protector of BPI; and (b) disciplining breachers and deterring future violations. As the Conference Report to the Omnibus Trade and Competitiveness Act of 1988 observed, "[T]he effective enforcement of limited disclosure under administrative protective order depends in part on the extent to which private parties have confidence that there are effective sanctions against violation." H.R. Conf. Rep. No. 576, 100th Cong., 1st Sess. 623 (1988).

The Commission has worked to develop consistent jurisprudence, not only in determining whether a breach has occurred, but also in selecting an appropriate response. In determining the appropriate response, the Commission generally considers mitigating factors such as the unintentional nature of the breach, the

---

[1] Procedures for inquiries to determine whether a prohibited act such as a breach has occurred and for imposing sanctions for violation of the provisions of a protective order issued during NAFTA panel or committee proceedings are set out in 19 CFR 207.100—207.120. Those investigations are initially conducted by the Commission's Office of Unfair Import Investigations.

lack of prior breaches committed by the breaching party, the corrective measures taken by the breaching party, and the promptness with which the breaching party reported the violation to the Commission. The Commission also considers aggravating circumstances, especially whether persons not under the APO actually read the BPI. The Commission considers whether there are prior breaches by the same person or persons in other investigations and multiple breaches by the same person or persons in the same investigation.

The Commission's rules permit an economist or consultant to obtain access to BPI/CBI under the APO in a Title VII or safeguard investigation if the economist or consultant is under the direction and control of an attorney under the APO, or if the economist or consultant appears regularly before the Commission and represents an interested party who is a party to the investigation. 19 CFR 207.7(a)(3)(B) and (C); 19 CFR 206.17(a)(3)(B) and (C). Economists and consultants who obtain access to BPI/CBI under the APO under the direction and control of an attorney nonetheless remain individually responsible for complying with the APO. In appropriate circumstances, for example, an economist under the direction and control of an attorney may be held responsible for a breach of the APO by failing to redact APO information from a document that is subsequently filed with the Commission and served as a public document. This is so even though the attorney exercising direction or control over the economist or consultant may also be held responsible for the breach of the APO.

The records of Commission investigations of alleged APO breaches in antidumping and countervailing duty cases are not publicly available and are exempt from disclosure under the Freedom of Information Act, 5 U.S.C. 552, section 135(b) of the Customs and Trade Act of 1990, 19 U.S.C. 1677f(g).

The two types of breaches most frequently investigated by the Commission involve the APO's prohibition on the dissemination of BPI or CBI to unauthorized persons and the APO's requirement that the materials received under the APO be returned or destroyed and that a certificate be filed indicating which action was taken after the termination of the investigation or any subsequent appeals of the Commission's determination. The dissemination of BPI usually occurs as the result of failure to delete BPI from public versions of documents filed with the Commission or transmission of proprietary versions of documents to

unauthorized recipients. Other breaches have included: The failure to bracket properly BPI/CBI in proprietary documents filed with the Commission; the failure to report immediately known violations of an APO; and the failure to adequately supervise non-legal personnel in the handling of BPI/CBI.

In the past several years, the Commission completed APOB investigations which involved members of a law firm or consultants working with a firm who were granted access to APO materials by the firm although they were not APO signatories. In these cases, the firm and the person using the BPI mistakenly believed an APO application had been filed for that person. The Commission determined in all of these cases that the person who was a non-signatory, and therefore did not agree to be bound by the APO, could not be found to have breached the APO. Action could be taken against these persons, however, under Commission rule 201.15 (19 CFR 201.15) for good cause shown. In all cases in which action was taken, the Commission decided that the non-signatory was a person who appeared regularly before the Commission and was aware of the requirements and limitations related to APO access and should have verified his or her APO status before obtaining access to and using the BPI. The Commission notes that section 201.15 may also be available to issue sanctions to attorneys or agents in different factual circumstances where they did not technically breach the APO but where their actions or inactions did not demonstrate diligent care of the APO materials even though they appeared regularly before the Commission and were aware of the importance the Commission placed on the care of APO materials.

The Department of Commerce ("Commerce") performs functions related to those of the Commission under title VII, including the issuance of APOs. The two agencies cooperate when necessary in the identification of possible APO breaches. In 2006, one APOB investigation was completed that involved a referral from Commerce about the possible release of BPI obtained under the Commission's APO during a meeting at the Department. No breach was found in that matter and it is summarized as Case 2 for the investigations in which no breach was found. Similarly, also in 2006, a concern arose that proprietary information obtained under Commerce's APO may have been released during a Commission hearing. Commerce was informed of the situation by Commission staff.

The Commission's Secretary has provided clarification to counsel representing parties in investigations relating to global safeguard actions, section 202(b) of the Trade Act of 1974, investigations for relief from market disruption, section 421(b) or (o) of the Trade Act of 1974, and investigations for action in response to trade diversion, section 422(b) of the Trade Act of 1974, and investigations concerning dumping and subsidies under section 516A and title VII of the Tariff Act of 1930 (19 U.S.C. 1303, 1516A and 1671–1677n). The clarification concerns the requirement to return or destroy CBI/BPI that was obtained under a Commission APO.

A letter was sent to all Counsel on active service lists in mid-March 2007. Counsel were cautioned to be certain that each authorized person or files within 60 days of the completion of an investigation or at the conclusion of judicial or binational review of the Commission's determination a certificate that to his or her knowledge and belief all copies of BPI/CBI have been returned or destroyed and no copies of such material have been made available to any person to whom disclosure was not specifically authorized. This requirement applies to each attorney, consultant, or expert in a firm who has been granted access to BPI/CBI. One firm-wide certificate is insufficient. This same information is also being added to notifications sent to new APO applicants.

In addition, attorneys representing clients in section 337 investigations should send a notice to the Commission if they are no longer participating in a section 337 investigation or the subsequent appeal of the Commission's determination. In Case 10 of the summaries of completed 2005 APOB investigations published in the **Federal Register** on July 12, 2006 (71 FR 39361), the Commission found that a lead attorney, who left a law firm which represented a respondent in a Commission investigation after the investigation was completed but before the appeal of the Commission's determination had ended, breached the APO by not informing the Commission of his departure and that he should no longer be a signatory to the APO. In addition, the Commission found that he had also breached the APO by failing to ensure that his former firm complied with the APO requirements for returning and destroying the confidential materials obtained under the APO. Thus, individual counsel in section 337 investigations should take care to inform the Commission of their departure from a position for which

they are a signatory to a Commission APO and to inform the Commission about their disposition of CBI obtained under the APO that is in their possession or they could be held responsible for any failure of their former firm to return or destroy the CBI in an appropriate manner.

## III. Specific Investigations in Which Breaches Were Found

The Commission presents the following case studies to educate users about the types of APO breaches found by the Commission. The studies provide the factual background, the actions taken by the Commission, and the factors considered by the Commission in determining the appropriate actions. The Commission has not included some of the specific facts in the descriptions of investigations where disclosure of such facts could reveal the identity of a particular breacher. Thus, in some cases, apparent inconsistencies in the facts set forth in this notice result from the Commission's inability to disclose particular facts more fully.

*Case 1.* The Commission determined that an associate attorney and a professional assistant breached the APO by failing to redact BPI from the public version of the prehearing brief filed by their law firm.

The firm uses a macro for redaction of bracketed material. However, because the macro does not remove BPI from bracketing in charts and tables, the professional assistant was responsible for manually redacting the BPI. The associate attorney was the final attorney to review the brief and sign it for the firm. The breach was inadvertent, neither person sanctioned had previous APO breaches during the two-year period normally examined by the Commission for sanctions purposes, the firm took quick action to minimize the effect of the release of the BPI, and the firm improved its procedures to avoid a similar incident in the future. Nevertheless, the Commission decided to issue a private letter of reprimand to both the attorney and the professional assistant because a non-signatory of the APO read the BPI that had been released.

Initially, the Commission had also found that the lead attorney, a partner, and the APO coordinator had both breached the APO because they failed to follow the procedures in place prior to the breach which required that either a partner or the APO coordinator review the brief before it is filed. During the sanctions phase of the APOB investigation the partner and the APO coordinator requested that the Commission reconsider its

determination that they had breached the APO because the requirement that a partner or the APO coordinator review the brief was a new procedural requirement that became effective after the breach in question. The APO coordinator, in providing the Commission with the firm's new procedures, had inadvertently indicated that this requirement was in place prior to the breach. Because the partner was unaware of the error made by the APO coordinator concerning the new procedures, the argument that he was not responsible for the breach had not previously been available to him. The Commission considered the argument and determined that the partner and the APO coordinator had not breached the APO. Since the APO coordinator caused the confusion by not taking sufficient care in his communications regarding the procedures with the Commission, he was admonished in the Commission's letter to be more careful about his communications with the Commission and his awareness of the firm's APO procedures. The Commission also stated that he should have been on notice of the need for particular vigilance with respect to unauthorized disclosure of BPI because other personnel in his firm had previously breached the APO by disclosing BPI to an unauthorized person.

*Case 2.* The Commission determined that a trade analyst at a law firm had breached the APO when he gave a document containing BPI to a clerical employee to proofread although the clerical employee was not subject to the APO.

A partner at the law firm who was the supervising attorney in the Commission investigation had instructed the trade analyst to prepare a spreadsheet which would contain BPI. He also instructed the analyst to handle the material according to APO guidelines and assign work on the document to only those clerical employees who were included on the APO. Instead, the analyst gave the final proofreading responsibility to a clerical employee who was not listed on the APO.

The Commission issued a warning letter to the trade analyst. The trade analyst had no prior APO breaches within the two-year period normally considered by the Commission for sanctions purposes. The only non-signatory who viewed the BPI was the clerical employee. The BPI was not divulged outside the law firm nor to any other non-signatory in the firm. The firm took immediate steps to change its procedures to be sure that no clerical person who was not on the APO would have access to BPI in future cases. The

breach was discovered by the analyst, who reported it to the supervising attorney.

The Commission found that the supervising attorney and the clerical employee did not breach the APO. The trade analyst had eight years of experience with Commission investigations and no prior breaches, thus making the delegation of responsibility for preparing the document in question reasonable. The clerical employee was not subject to the APO and had handled the BPI in a manner that would not place the information at risk of being further divulged.

*Case 3.* The Commission found that an attorney breached the APO by providing a document containing BPI to an economic consultant who was not a signatory to the APO.

An attorney in a law firm gave a copy of a document containing BPI to the economic consultant working with his firm on a Commission investigation. He provided this document under the mistaken belief that the law firm had filed an APO application that had been signed by the consultant and that the application had been approved. The consultant had been told by the attorney that the APO application had been filed and approved. Thus, the consultant, based on this information, accepted the document and retained it in his files for almost five months, until the breach was discovered by the attorney. At all times the consultant treated the BPI as if he were a signatory of the APO.

The Commission decided to issue a warning letter to the attorney instead of a private letter of reprimand in light of several mitigating circumstances. The disclosure of the BPI was to a consultant practitioner who safeguarded the BPI under the terms of the APO. The breach was inadvertent; the attorney acted under the mistaken belief that the consultant was a signatory to the APO. The attorney had not had any previous APO violations within the two-year period normally considered by the Commission for sanctions purposes. Finally, the attorney took prompt action to remedy the breach once he discovered it.

The Commission also considered whether there was good cause to sanction the consultant under Commission rule 201.15 (19 CFR 201.15) for accepting the document containing BPI while not being a signatory to the APO. The Commission decided that there was not good cause because the consultant reasonably relied on representations of counsel that his APO application had been filed and approved. However, the consultant was

advised for future investigations to ensure independently that he and his staff are subject to the APO before accessing BPI.

*Case 4.* The Commission found that a lead attorney and a legal assistant breached the APO by filing a public version of a prehearing brief containing BPI.

After a law firm filed the confidential version of their client's prehearing brief, and the public version was reviewed by an associate attorney, the lead attorney decided to expand the bracketing on a particular page of the confidential brief. The lead attorney then asked a legal assistant to prepare a public version of the replacement page and substitute that page into the public version of the brief. The next morning, when the public brief was scheduled to be filed, the lead attorney asked the associate to oversee the production and filing of the brief. The brief was then filed by the legal assistant without further review by either attorney.

The Commission issued warning letters to the lead attorney and the legal assistant for failing to redact BPI from the replacement page. The Commission noted that the lead attorney was the supervising attorney for the failed redaction process, allowing the unredacted page to be filed with the Commission without an attorney reviewing that page. The Commission decided to issue a warning letter instead of a private letter of reprimand because this was the only breach in which the lead attorney had been involved within the two-year period normally considered by the Commission for sanctions purposes, the breach was unintentional, prompt action was taken to remedy the breach, and the firm took measures to assure that this type of error would not occur in the future, specifically revising its APO procedures to ensure that an attorney will review and sign off that a redacted replacement page is ready for filing. No non-signatory to the APO gained access to the BPI.

In determining that the legal assistant breached the APO, the Commission noted that the assistant was delegated the responsibility of redacting the BPI from the brief and that she was directly involved in the process and acknowledges that she forgot to redact all of the BPI. The Commission considered the same mitigating factors for the legal assistant as for the lead attorney in determining that she should receive a warning letter instead of a private letter of reprimand.

The Commission found that the associate was not responsible for the breach because he did not prepare or review the replacement page and did not have first hand knowledge of the incident.

A second breach was also alleged regarding this brief. An attorney from another firm informed the lead attorney that information that had been bracketed in an exhibit to the public version of the brief was not redacted. The Commission determined that this was not a breach because the information was not obtained through the APO and was otherwise available to the firm.

*Case 5.* The Commission determined that an attorney and a paralegal breached the APO by failing to redact bracketed BPI from the public version of a pre-hearing brief.

The attorney prepared the public version of the brief and attached several exhibits from the confidential version of the brief. He then instructed the paralegal to redact all bracketed information in the brief and attachments. After the paralegal removed the bracketed information the attorney reviewed the document and approved it for filing. The attorney's legal secretary then filed the public version of the pre-hearing brief together with the confidential version of the brief.

Ten days later the attorney was informed by the Commission Secretary that one of the exhibits contained unredacted bracketed BPI. The attorney then took immediate action to cure the problem by alerting counsel for other parties and instructing them and his legal secretary to destroy all hard copies and electronic copies of the exhibit containing BPI. The attorney determined that no non-signatory had been provided with a copy of the brief. The law firm took immediate steps to change its procedures to avoid similar problems in the future.

The Commission decided to issue warning letters instead of private letters of reprimand to the attorney and the paralegal because no non-signatory read the BPI, the breach was inadvertent, neither person had been found to have breached an APO within the two-year period normally considered by the Commission for sanctions purposes, the firm took immediate steps to remedy the breach once the attorney was notified of the breach, and it changed its procedures to assure that this type of error would not occur in the future. The Commission also decided that the legal secretary did not breach the APO because she had only been instructed to file the brief and not check the document for confidential information.

There were three investigations in which no breach was found:

*Case 1.* The Commission determined that an attorney responsible for preparing the public version of a prehearing brief did not breach the APO even though he failed to redact all of the bracketed information from the brief. The Commission determined that the unredacted information was not BPI in that it consisted of general descriptions of trends of otherwise proprietary data and the trends were publicly available.

*Case 2.* A question was raised by a Department of Commerce ("Commerce") official concerning whether BPI from the Commission's investigation was used during a meeting regarding the Commerce side of the investigation. The lead attorney for a party commented at the meeting that Commerce officials should request certain questionnaire responses from the Commission's record to clarify issues in the Commerce investigation. The Commission noted in a letter to the lead attorney that this could be construed to suggest that the attorney was aware of the contents of the questionnaire responses and was using the confidential information obtained under the Commission's APO to respond to questions in the Commerce proceedings. This would normally be a breach in that signatories to an APO agree to use BPI obtained under that order solely for the purposes of the Commission investigation in question. The Commission determined that the attorney's statement was not a breach, however, because the Commission had discussed the specific issue in the public version of its views and had relied heavily on those questionnaire responses in its discussion.

In addition to the lead attorney, another partner and a trade analyst for the law firm were at the meeting. The Commission found that the trade analyst did not breach the APO because he did not discuss the questionnaire responses from the Commission investigation and limited his discussion to specific methodologies and facts pertaining to information on the record at Commerce. The Commission found that good cause did not exist to sanction the partner, who was not an APO signatory, under Commission rule 201.15 (19 CFR 201.15) because, although he attended the meeting, he did not participate in the substantive discussions.

*Case 3.* A law firm attached an exhibit list containing BPI to its post-hearing brief. The Commission determined that disclosure of the information in the exhibit list was not a breach of the APO. Part of the information was not BPI because it was on the public record at the time the brief was filed; the other information concerned was BPI

**50124** **Federal Register** / Vol. 72, No. 168 / Thursday, August 30, 2007 / Notices

obtained from the law firm's clients and not obtained under the APO.

By order of the Commission.

Issued: August 27, 2007.

**Marilyn R. Abbott,**

*Secretary to the Commission.*

[FR Doc. E7–17188 Filed 8–29–07; 8:45 am]

**BILLING CODE 7020–02–P**

# DEPARTMENT OF JUSTICE

## Notice of Lodging of Modification of Consent Decree Under the Clean Water Act

Notice is hereby given that on August 15, 2007, a proposed Modification of Consent Decree ("Modification") in *United States of America* v. *Puerto Rico Aqueduct and Sewer Authority, The Commonwealth of Puerto Rico and Compania de Aguas de Puerto Rico, Inc.,* Civil Action No. 01–1709 (JAF) was lodged with the United States Court for the District of Puerto Rico. The Consent Decree requires the Puerto Rico Aqueduct and Sewer Authority ("PRASA") to, among other things, develop and implement a system-wide operation and maintenance plan ("OMP") for all pump station facilities in Puerto Rico owned or operated by PRASA. The Consent Decree requires PRASA to draft and implement this OMP in accordance with a schedule set forth in ¶13. The proposed Modification seeks to replace the schedule set forth in ¶13 with a new schedule that includes deadlines for phasing in interim and final portions of the OMP, and requires complete implementation by December 31, 2010.

In addition, the Consent Decree requires PRASA to perform a "Supplemental Environmental Project" ("SEP"). The Modification affects the last activity/milestone of this SEP, listed in Appendix E of the Consent Decree, entitled "Work Plan Supplemental Environmental Project." To date, PRASA has completed the first three milestones to be performed. In an effort to clarify PRASA's obligations in implementing the SEP, the parties have agreed to modify the last activity/ milestone listed in Appendix E to provide for completion dates for the SEP projects.

The Department of Justice will receive for a period of thirty (30) days from the date of this publication comments relating to the Modification of Consent Decree. Comments should be addressed to the Assistant Attorney General, Environment and Natural Resources Division, and either e-mailed to *pubcomment-ees.enrd@usdoj.gov* or

mailed to P.O. Box 7611, U.S. Department of Justice, Washington, DC 20044–7611, and should refer to *United States* v. *PRASA,* D.J. Ref. 90–5–1–1– 06475/1.

The proposed Modification of Consent Decree may be examined at the Office of the United States Attorney, Federal Office Building, Rm. 10, Carlos E. Chardón Avenue, San Juan, Puerto Rico, and at U.S. EPA Region II, 290 Broadway, New York, New York. During the public comment period, the Modification of Consent Decree may also be examined on the following Department of Justice Web site, *http:// www.usdoj.gov/enrd/ Consent_Decrees.html.* A copy of the Modification of Consent Decree may also be obtained by mail from the Consent Decree Library, P.O. Box 7611, U.S. Department of Justice, Washington, DC 20044–7611 or by faxing or e-mailing a request to Tonia Fleetwood (*tonia.fleetwood@usdoj.gov*), fax no. (202) 514–0097, phone confirmation number (202) 514–1547. In requesting a copy from the Consent Decree Library, please enclose a check in the amount of $1.50 (25 cents per page reproduction cost) payable to the U.S. Treasury or, if by e-mail or fax, forward a check in that amount to the Consent Decree Library at the stated address.

**Ellen Mahan,**

*Deputy Chief, Environmental Enforcement Section, Environment and Natural Resource Division.*

[FR Doc. 07–4251 Filed 8–29–07; 8:45 am]

**BILLING CODE 4410–15–M**

# DEPARTMENT OF JUSTICE

## Notice of Lodging of Consent Decree Under the Clean Air Act

Notice is hereby given that on August 16, 2007, a proposed Addendum to the Consent Decree ("Addendum") in *United States* v. *Valero Energy Company, et al.,* Civil Action No. SA– 07–CA–0683, was lodged with the United States District Court for the Western District of Texas.

In this action, the United States sought a civil penalty and injunctive relief for violations of the Clean Air Act, 42 U.S.C. 7401, *et seq.,* and its implementing regulations, in connection with the petroleum refineries that settling Defendant Premcor Refining Group Inc. operates in Memphis, Tennessee and Port Arthur, Texas, and that settling Defendant Lima Refining Company operates in Lima, Ohio. Specifically, the United States alleged violations of the New Source Performance Standards for benzene

refineries and the National Emission Standards for Hazardous Air Pollutants for Benzene Waste Operations. The Addendum requires Defendant Premcor Refining Group, Inc. and Defendant Lima Refining Company to implement injunctive relief to improve their refineries' performance, including reducing emissions from major refinery units, reducing the flaring of process upset gasses, improving leak detection and repair procedures, and improving the management of benzene wastewater streams. The Addendum also requires the Defendants to pay a $4.25 million civil penalty to the United States, the State of Ohio, and Memphis-Shelby County Health Department. The United States will receive $2.7 million of the civil penalty. The Addendum also requires the Defendants to perform several Supplemental Environmental Projects with a total value of $4.25 million.

The Department of Justice will receive for a period of thirty (30) days from the date of this publication comments relating to the proposed Addendum to the Consent Decree. Comments should be addressed to the Assistant Attorney General, Environment and Natural Resources Division, and either e-mailed to *pubcomment-ees.enrd@usdoj.gov,* or mailed to P.O. Box 7611, U.S. Department of Justice, Washington, DC 20044–7611, and should refer to *United States* v. *Premcor Refining Group, Inc. et al,* D.J. Ref. # 90–5–2–1–06811/1.

The Addendum may be examined at: The Office of the United States Attorney for the Western District of Texas, 601 NW Loop 410, Suite 600, San Antonio, Texas 78216 (contact AUSA Susan Biggs); U.S. EPA Region 6, 1445 Ross Avenue, Suite 1200, Dallas, Texas, 75202 (contact Patricia Welton); U.S. EPA Region 4, 61 Forsyth Street, SW., Atlanta, Georgia, 30303–8960 (contact Marlene Tucker); and U.S. EPA Region 5, 77 West Jackson Blvd. (C–13J), Chicago, Illinois, 60604 (contact Mary T. McAuliffe). During the public comment period, the Consent Decree also may be examined on the following Department of Justice Web site: *http:// www.usdoj.gov/enrd/ Consent_Decrees.html.* A copy of the Consent Decree also may be obtained by mail from the Consent Decree Library, P.O. Box 7611, U.S. Department of Justice, Washington, DC 20044–7611, or by faxing or e-mailing a request to Tonia Fleetwood (*tonia.fleetwood@usdoj.gov*), fax no. (202) 514–0097, phone confirmation number (202) 514–1547. In requesting a copy from the Consent Decree Library, please enclose a check in the amount of $30.75 (25 cents per page reproduction cost) payable to the

By order of the Commission.

**Marilyn R. Abbott,**
*Secretary to the Commission.*
[FR Doc. E8–20532 Filed 9–4–08; 8:45 am]
**BILLING CODE 7020–02–P**

## INTERNATIONAL TRADE COMMISSION

### Summary of Commission Practice Relating to Administrative Protective Orders

**AGENCY:** U.S. International Trade Commission.

**ACTION:** Summary of Commission practice relating to administrative protective orders.

**SUMMARY:** Since February 1991, the U.S. International Trade Commission ("Commission") has issued an annual report on the status of its practice with respect to violations of its administrative protective orders ("APOs") in investigations under Title VII of the Tariff Act of 1930 in response to a direction contained in the Conference Report to the Customs and Trade Act of 1990. Over time, the Commission has added to its report discussions of APO breaches in Commission proceedings other than under Title VII and violations of the Commission's rules including the rule on bracketing business proprietary information ("BPI") (the "24-hour rule"), 19 CFR 207.3(c). This notice provides a summary of investigations completed during calendar year 2007 of breaches in proceedings under Title VII and section 337 of the Tariff Act of 1930, the only proceedings in which investigations of breaches were completed during the year. The Commission intends that this report inform representatives of parties to Commission proceedings as to some specific types of APO breaches encountered by the Commission and the corresponding types of actions the Commission has taken.

**FOR FURTHER INFORMATION CONTACT:** Carol McCue Verratti, Esq., Office of the General Counsel, U.S. International Trade Commission, telephone (202) 205–3088. Hearing impaired individuals are advised that information on this matter can be obtained by contacting the Commission's TDD terminal at (202) 205–1810. General information concerning the Commission can also be obtained by accessing its Internet server (*http://www.usitc.gov*).

**SUPPLEMENTARY INFORMATION:** Representatives of parties to investigations or other proceedings conducted under Title VII of the Tariff

Act of 1930, sections 202 and 204 of the Trade Act of 1974, section 421 of the Trade Act of 1974, section 337 of the Tariff Act of 1930, and North American Free Trade Agreement (NAFTA) Article 1904.13, 19 U.S.C. 1516a(g)(7)(A) may enter into APOs that permit them, under strict conditions, to obtain access to BPI (Title VII) or confidential business information ("CBI") (section 421, sections 201–204, and section 337) of other parties. *See* 19 U.S.C. 1677f; 19 CFR 207.7; 19 CFR 207.100, et seq.; 19 U.S.C. 2252(i); 19 U.S.C. 2451a(b)(3); 19 CFR 206.17; 19 U.S.C. 1337(n); 19 CFR 210.5, 210.34. The discussion below describes APO breach investigations that the Commission has completed during calendar year 2007, including a description of actions taken in response to these breaches.

Since 1991, the Commission has published annually a summary of its actions in response to violations of Commission APOs and the 24-hour rule. *See* 56 FR 4846 (Feb. 6, 1991); 57 FR 12335 (Apr. 9, 1992); 58 FR 21991 (Apr. 26, 1993); 59 FR 16834 (Apr. 8, 1994); 60 FR 24880 (May 10, 1995); 61 FR 21203 (May 9, 1996); 62 FR 13164 (March 19, 1997); 63 FR 25064 (May 6, 1998); 64 FR 23355 (April 30, 1999); 65 FR 30434 (May 11, 2000); 66 FR 27685 (May 18, 2001); 67 FR 39425 (June 7, 2002); 68 FR 28256 (May 23, 2003); 69 FR 29972 (May 26, 2004); 70 FR 42382 (July 25, 2005); 71 FR 39355 (July 12, 2006); and 72 FR 50119 (August 30, 2007). This report does not provide an exhaustive list of conduct that will be deemed to be a breach of the Commission's APOs. APO breach inquiries are considered on a case-by-case basis.

As part of the effort to educate practitioners about the Commission's current APO practice, the Commission Secretary issued in March 2005 a fourth edition of *An Introduction to Administrative Protective Order Practice in Import Injury Investigations* (Pub. No. 3755). This document is available upon request from the Office of the Secretary, U.S. International Trade Commission, 500 E Street, SW., Washington, DC 20436, tel. (202) 205–2000 and on the Commission's Web site at *http://www.usitc.gov*.

### I. In General

The current APO form for antidumping and countervailing duty investigations, which was revised in March 2005, requires the applicant to swear that he or she will:

(1) Not divulge any of the BPI disclosed under this APO or otherwise obtained in this investigation and not

otherwise available to him or her, to any person other than—

(i) Personnel of the Commission concerned with the investigation,

(ii) The person or agency from whom the BPI was obtained,

(iii) A person whose application for disclosure of BPI under this APO has been granted by the Secretary, and

(iv) Other persons, such as paralegals and clerical staff, who (a) are employed or supervised by and under the direction and control of the authorized applicant or another authorized applicant in the same firm whose application has been granted; (b) have a need thereof in connection with the investigation; (c) are not involved in competitive decisionmaking for an interested party which is a party to the investigation; and (d) have signed the acknowledgment for clerical personnel in the form attached hereto (the authorized applicant shall also sign such acknowledgment and will be deemed responsible for such persons' compliance with this APO);

(2) Use such BPI solely for the purposes of the above-captioned Commission investigation or for judicial or binational panel review of such Commission investigation;

(3) Not consult with any person not described in paragraph (1) concerning BPI disclosed under this APO or otherwise obtained in this investigation without first having received the written consent of the Secretary and the party or the representative of the party from whom such BPI was obtained;

(4) Whenever materials *e.g.*, documents, computer disks, etc. containing such BPI are not being used, store such material in a locked file cabinet, vault, safe, or other suitable container (N.B.: Storage of BPI on so-called hard disk computer media is to be avoided, because mere erasure of data from such media may not irrecoverably destroy the BPI and may result in violation of paragraph C of this APO);

(5) Serve all materials containing BPI disclosed under this APO as directed by the Secretary and pursuant to section 207.7(f) of the Commission's rules;

(6) Transmit each document containing BPI disclosed under this APO:

(i) With a cover sheet identifying the document as containing BPI,

(ii) With all BPI enclosed in brackets and each page warning that the document contains BPI,

(iii) If the document is to be filed by a deadline, with each page marked "Bracketing of BPI not final for one business day after date of filing," and

**51844** **Federal Register**/Vol. 73, No. 173/Friday, September 5, 2008/Notices

(iv) If by mail, within two envelopes, the inner one sealed and marked "Business Proprietary Information—To be opened only by [name of recipient]", and the outer one sealed and not marked as containing BPI;

(7) Comply with the provision of this APO and section 207.7 of the Commission's rules;

(8) Make true and accurate representations in the authorized applicant's application and promptly notify the Secretary of any changes that occur after the submission of the application and that affect the representations made in the application (*e.g.*, change in personnel assigned to the investigation);

(9) Report promptly and confirm in writing to the Secretary any possible breach of this APO; and

(10) Acknowledge that breach of this APO may subject the authorized applicant and other persons to such sanctions or other actions as the Commission deems appropriate, including the administrative sanctions and actions set out in this APO.

The APO further provides that breach of an APO may subject an applicant to:

(1) Disbarment from practice in any capacity before the Commission along with such person's partners, associates, employer, and employees, for up to 7 years following publication of a determination that the order has been breached;

(2) Referral to the United States Attorney;

(3) In the case of an attorney, accountant, or other professional, referral to the ethics panel of the appropriate professional association;

(4) Such other administrative sanctions as the Commission determines to be appropriate, including public release of, or striking from the record any information or briefs submitted by, or on behalf of, such person or the party he represents; denial of further access to business proprietary information in the current or any future investigations before the Commission, and issuance of a public or private letter of reprimand; and

(5) Such other actions, including but not limited to, a warning letter, as the Commission determines to be appropriate.

APOs in investigations other than those under Title VII contain similar, though not identical, provisions.

Commission employees are not signatories to the Commission's APOs and do not obtain access to BPI through APO procedures. Consequently, they are not subject to the requirements of the APO with respect to the handling of CBI and BPI. However, Commission employees are subject to strict statutory and regulatory constraints concerning BPI and CBI, and face potentially severe penalties for noncompliance. *See* 18 U.S.C. 1905; Title 5, U.S. Code; and Commission personnel policies implementing the statutes. Although the Privacy Act (5 U.S.C. 552a) limits the Commission's authority to disclose any personnel action against agency employees, this should not lead the public to conclude that no such actions have been taken.

An important provision of the Commission's Title VII and safeguard rules relating to BPI/CBI is the "24-hour" rule. This rule provides that parties have one business day after the deadline for filing documents containing BPI/CBI to file a public version of the document. The rule also permits changes to the bracketing of information in the proprietary version within this 1-day period. No changes—other than changes in bracketing—may be made to the proprietary version. The rule was intended to reduce the incidence of APO breaches caused by inadequate bracketing and improper placement of BPI/CBI. The Commission urges parties to make use of the rule. If a party wishes to make changes to a document other than bracketing, such as typographical changes or other corrections, the party must ask for an extension of time to file an amended document pursuant to section 201.14(b)(2) of the Commission's rules.

## II. Investigations of Alleged APO Breaches

Upon finding evidence of an APO breach or receiving information that there is a reason to believe one has occurred, the Commission Secretary notifies relevant offices in the agency that an APO breach investigation has commenced and that an APO breach investigation file has been opened. Upon receiving notification from the Secretary, the Office of the General Counsel (OGC) prepares a letter of inquiry to be sent to the possible breacher over the Secretary's signature to ascertain the possible breacher's views on whether a breach has occurred.[1] If, after reviewing the response and other relevant information, the Commission determines that a breach has occurred, the Commission often issues a second

letter asking the breacher to address the questions of mitigating circumstances and possible sanctions or other actions. The Commission then determines what action to take in response to the breach. In some cases, the Commission determines that although a breach has occurred, sanctions are not warranted, and therefore finds it unnecessary to issue a second letter concerning what sanctions might be appropriate. Instead, it issues a warning letter to the individual. A warning letter is not considered to be a sanction.

Sanctions for APO violations serve two basic interests: (a) Preserving the confidence of submitters of BPI that the Commission is a reliable protector of BPI; and (b) disciplining breachers and deterring future violations. As the Conference Report to the Omnibus Trade and Competitiveness Act of 1988 observed, "[T]he effective enforcement of limited disclosure under administrative protective order depends in part on the extent to which private parties have confidence that there are effective sanctions against violation." H.R. Conf. Rep. No. 576, 100th Cong., 1st Sess. 623 (1988).

The Commission has worked to develop consistent jurisprudence, not only in determining whether a breach has occurred, but also in selecting an appropriate response. In determining the appropriate response, the Commission generally considers mitigating factors such as the unintentional nature of the breach, the lack of prior breaches committed by the breaching party, the corrective measures taken by the breaching party, and the promptness with which the breaching party reported the violation to the Commission. The Commission also considers aggravating circumstances, especially whether persons not under the APO actually read the BPI. The Commission considers whether there are prior breaches by the same person or persons in other investigations and multiple breaches by the same person or persons in the same investigation.

The Commission's rules permit an economist or consultant to obtain access to BPI/CBI under the APO in a Title VII or safeguard investigation if the economist or consultant is under the direction and control of an attorney under the APO, or if the economist or consultant appears regularly before the Commission and represents an interested party who is a party to the investigation. 19 CFR 207.7(a)(3)(B) and (C); 19 CFR 206.17(a)(3)(B) and (C). Economists and consultants who obtain access to BPI/CBI under the APO under the direction and control of an attorney nonetheless remain individually

---

[1] Procedures for inquiries to determine whether a prohibited act such as a breach has occurred and for imposing sanctions for violation of the provisions of a protective order issued during NAFTA panel or committee proceedings are set out in 19 CFR 207.100–207.120. Those investigations are initially conducted by the Commission's Office of Unfair Import Investigations.

responsible for complying with the APO. In appropriate circumstances, for example, an economist under the direction and control of an attorney may be held responsible for a breach of the APO by failing to redact APO information from a document that is subsequently filed with the Commission and served as a public document. This is so even though the attorney exercising direction or control over the economist or consultant may also be held responsible for the breach of the APO.

The records of Commission investigations of alleged APO breaches in antidumping and countervailing duty cases are not publicly available and are exempt from disclosure under the Freedom of Information Act, 5 U.S.C. 552, and section 135(b) of the Customs and Trade Act of 1990, 19 U.S.C. 1677f(g). *See also* 19 U.S.C. 1333(h).

The two types of breaches most frequently investigated by the Commission involve the APO's prohibition on the dissemination of BPI or CBI to unauthorized persons and the APO's requirement that the materials received under the APO be returned or destroyed and that a certificate be filed indicating which action was taken after the termination of the investigation or any subsequent appeals of the Commission's determination. The dissemination of BPI usually occurs as the result of failure to delete BPI from public versions of documents filed with the Commission or transmission of proprietary versions of documents to unauthorized recipients. Other breaches have included: The failure to bracket properly BPI/CBI in proprietary documents filed with the Commission; the failure to report immediately known violations of an APO; and the failure to adequately supervise non-legal personnel in the handling of BPI/CBI.

In the past several years, the Commission completed APOB investigations that involved members of a law firm or consultants working with a firm who were granted access to APO materials by the firm although they were not APO signatories. In these cases, the firm and the person using the BPI mistakenly believed an APO application had been filed for that person. The Commission determined in all of these cases that the person who was a non-signatory, and therefore did not agree to be bound by the APO, could not be found to have breached the APO. Action could be taken against these persons, however, under Commission rule 201.15 (19 CFR 201.15) for good cause shown. In all cases in which action was taken, the Commission decided that the non-signatory was a person who appeared

regularly before the Commission and was aware of the requirements and limitations related to APO access and should have verified his or her APO status before obtaining access to and using the BPI. The Commission notes that section 201.15 may also be available to issue sanctions to attorneys or agents in different factual circumstances where they did not technically breach the APO but where their actions or inactions did not demonstrate diligent care of the APO materials even though they appeared regularly before the Commission and were aware of the importance the Commission placed on the care of APO materials.

The Commission's Secretary has provided clarification to counsel representing parties in investigations relating to global safeguard actions, section 202(b) of the Trade Act of 1974, investigations for relief from market disruption, section 421(b) or (o) of the Trade Act of 1974, and investigations for action in response to trade diversion, section 422(b) of the Trade Act of 1974, and investigations concerning dumping and subsidies under section 516A and title VII of the Tariff Act of 1930 (19 U.S.C. 1303, 1516A and 1671–1677n). The clarification concerns the requirement to return or destroy CBI/BPI that was obtained under a Commission APO.

A letter was sent to all counsel on active service lists in mid-March 2007. Counsel were cautioned to be certain that each authorized applicant files within 60 days of the completion of an investigation or at the conclusion of judicial or binational review of the Commission's determination a certificate that to his or her knowledge and belief all copies of BPI/CBI have been returned or destroyed and no copies of such material have been made available to any person to whom disclosure was not specifically authorized. This requirement applies to each attorney, consultant, or expert in a firm who has been granted access to BPI/CBI. One firm-wide certificate is insufficient. This same information is also being added to notifications sent to new APO applicants.

In addition, attorneys representing clients in section 337 investigations should send a notice to the Commission if they are no longer participating in a section 337 investigation or the subsequent appeal of the Commission's determination. In Case 10 of the summaries of completed 2005 APOB investigations published in the **Federal Register** on July 12, 2006 (71 *FR* 39361), the Commission found that a lead attorney, who left a law firm which

represented a respondent in a Commission investigation after the investigation was completed but before the appeal of the Commission's determination had ended, breached the APO by not informing the Commission of his departure and that he should no longer be a signatory to the APO. In addition, the Commission found that he had also breached the APO by failing to ensure that his former firm complied with the APO requirements for returning and destroying the confidential materials obtained under the APO. Thus, individual counsel in section 337 investigations should take care to inform the Commission of their departure from a position for which they are a signatory to a Commission APO and to inform the Commission about their disposition of CBI obtained under the APO that is in their possession or they could be held responsible for any failure of their former firm to return or destroy the CBI in an appropriate manner.

## III. Specific Investigations in Which Breaches Were Found

The Commission presents the following case studies to educate users about the types of APO breaches found by the Commission. The studies provide the factual background, the actions taken by the Commission, and the factors considered by the Commission in determining the appropriate actions. The Commission has not included some of the specific facts in the descriptions of investigations where disclosure of such facts could reveal the identity of a particular breacher. Thus, in some cases, apparent inconsistencies in the facts set forth in this notice result from the Commission's inability to disclose particular facts more fully.

*Case 1:* The Commission determined that three attorneys and two legal assistants breached an APO by failing to redact unbracketed BPI in the public version of a posthearing brief and serving it on attorneys named on the public service list. The Commission also found that two of the attorneys responsible for this first breach, along with a fourth attorney, committed a second breach by using the BPI obtained under APO on behalf of one client in a submission to a World Trade Organization (WTO) dispute resolution panel on behalf of another client.

The Commission issued a private letter of reprimand to three of the attorneys for the first breach. In reaching its decision concerning those attorneys, the Commission considered the facts that (1) the breach was discovered by the Commission Secretary; (2) a long period of time, approximately eight

**51846**    **Federal Register** / Vol. 73, No. 173 / Friday, September 5, 2008 / Notices

months, elapsed between the filing of the brief and the discovery of the breach; (3) the firm could not provide a definitive response as to whether the brief containing BPI was read by non-signatories; and (4) while the lawyers responded quickly with regard to parties other than their clients, they delayed contacting their own clients until two days after notification of the breach. The Commission did note that mitigating circumstances existed because the breach was inadvertent, the attorneys had no prior APO breaches within the two-year period normally considered by the Commission for sanctions purposes, the firm took immediate steps to correct the breach, and the firm strengthened its internal procedures to require that a third attorney review the public version of documents to ensure that all redactions have been implemented. The Commission issued a warning letter to the legal assistants finding that they were acting under the supervision of the attorneys at the time of the breach.

With respect to the second breach, the Commission considered the mitigating circumstance that, although the submissions to the WTO dispute resolution panel contained statements that could not have been made without knowledge of the confidential record, no BPI was disclosed to unauthorized persons. As was stated above, two of the attorneys responsible for this second breach were issued private letters of reprimand which included the Commission's consideration of this second breach. The third attorney who was responsible for only the second breach was issued a warning letter. The Commission decided to issue a warning letter because, although the breach was not discovered by his firm, no BPI was disclosed to unauthorized persons, he had not breached an APO in the past two years, and the breach was unintentional.

*Case 2:* The Commission determined that several attorneys and one paralegal breached an APO by failing to return or destroy certain materials at the conclusion of a Commission section 337 investigation. The Commission also found that one of the attorneys and the paralegal committed a second breach by permitting the disclosure of CBI subject to an APO to unauthorized persons at their firm.

Upon conclusion of this section 337 investigation, the parties to the investigation agreed that, notwithstanding the APO, they would retain an archival copy of certain documents produced by each other. However, documents not subject to that separate agreement and any CBI produced by third parties were to be

returned or destroyed. The attorneys and the paralegal failed to return or destroy all of the materials containing CBI that were not covered by the agreement.

The Commission issued warning letters to ten attorneys for the first breach. These attorneys had no prior APO breaches within the two-year period normally considered by the Commission for sanctions purposes, and the breach was unintentional.

The Commission issued private letters of reprimand to the attorney and paralegal who had committed both the first and second breaches. In reaching its decision, the Commission considered the facts that (1) there were two breaches, (2) the CBI appeared to have been viewed by at least some unauthorized firm personnel before the CBI was discovered and secured, and (3) there was a significant delay in notifying the Commission of the second breach. The Commission did note that mitigating circumstances existed because both of the breaches appeared to have been inadvertent, neither the attorney nor the paralegal had committed breaches prior to the breaches in this instance, and the attorney was cooperative and took steps to protect the CBI and inform the Commission of the second breach.

The Commission also found that four other attorneys and two paralegals did not breach the APO. These individuals were not in a position to arrange for the return or destruction of the CBI at issue.

The Commission also considered whether there was a violation of 19 CFR 210.34(d) by two attorneys for failing to report to the Commission immediately upon learning that CBI disclosed to them pursuant to the protective order was the subject of a discovery request. The Commission decided that there was no violation because the attorneys fulfilled their obligation by reporting to the Commission within four days of the discovery request.

*Case 3:* The Commission determined that three attorneys breached an APO by their failure to redact certain BPI in the public version of a prehearing brief. In the brief, the attorneys provided import data from multiple countries for the subject merchandise. The text indicated that data from one named importer was not included. On the next page the brief contained a chart with import data that included the previously excluded importer, although that fact was not stated.

The Commission found the lawyers' argument that the information in the chart did not contain BPI was unpersuasive. The amount in the chart was larger than what had been

discussed on the previous page where the one importer's data was excluded. In addition, the data in the chart corresponded closely to BPI in the prehearing staff report. Although the lawyers had argued that the information was publicly available, the Commission noted that the submissions regarding this matter identified no public source for the information.

The Commission issued warning letters to the three attorneys for this breach. The Commission noted that mitigating circumstances existed because the breach was inadvertent, the attorneys had no prior APO breaches, they took immediate steps to correct the breach, they promptly reported the breach to the Commission's Secretary, and there was no evidence that any unauthorized individual viewed the BPI.

*Case 4:* The Commission found that a lead attorney breached an APO by forwarding an e-mail from the Commission with an attachment containing BPI to executives of a client who were not subject to the APO.

The attachment was a copy of the Commission's confidential staff report sent by a Commission staff member. Although the e-mail did not identify the attachment as containing BPI, the name of the attachment ended in "BPI," and, once opened, each of its pages were identified as confidential.

The attorney forwarded the e-mail to three executives at his client's firm without opening the attachment or realizing that it contained BPI. After forwarding the e-mail the attorney opened the attachment and immediately contacted the recipients and instructed them to delete the attachment without reading it. The attorney then informed the Commission of the breach.

In his affidavit the attorney indicated that all recipients deleted the attachment without opening it. The attorney also stated that in his experience Commission staff did not distribute BPI material by e-mail.

The Commission has consistently held that an APO breach occurs when a document containing BPI is distributed to unauthorized persons even if they do not view the BPI. Accordingly the Commission found that a breach occurred in this case. Further, the Commission found that a cursory inspection of the attachment would have indicated that it contained BPI, which suggests the attorney bore some responsibility for the breach.

The Commission issued a warning letter rather than a private letter of reprimand because the breach was unintentional, the attorney had not committed a breach within the most

recent two-year period normally considered by the Commission for sanctions purposes, the attorney acted promptly to mitigate the breach by instructing the recipients of the e-mail to delete the attachment, and it appeared that BPI was not viewed by any unauthorized persons.

*Case 5:* The Commission found that an attorney breached the APO by sending an e-mail with an attachment containing BPI to two employees of his client who were non-signatories to the APO.

The Commission issued a warning letter to the attorney because there were several mitigating circumstances and no aggravating circumstances. The breach was unintentional and the attorney discovered the breach promptly. The attorney immediately notified the client's employees not to read the attachment and to delete the e-mail with its attachment. Thus, it appeared that neither of the client's employees viewed the attachment. In addition, this was the attorney's only breach in which he had been involved in the previous two years.

*Case 6:* The Commission found that an associate attorney breached an APO when he failed to redact BPI from the public version of a post-hearing brief. The Commission found that the lead attorney did not breach the APO because he did not participate in finalizing the brief and he reasonably relied on the associate attorney.

The Commission notified the associate attorney that the public version of his firm's brief contained BPI. The BPI was contained in an exhibit that escaped the firm's review procedure because of a last-minute change. Upon being notified of the breach, the associate attorney asked each party on a public service list to confirm that the BPI was either not received by any unauthorized party or was recalled from any unauthorized party and destroyed. According to his affidavit, the associate attorney believed that no unauthorized party received the BPI.

Because BPI was made available to unauthorized parties, the Commission found that the associate attorney breached the APO. The Commission issued a warning letter rather than a private letter of reprimand to the associate attorney even though the Commission rather than the associate attorney's firm discovered the breach. The mitigating circumstances the Commission considered were that the breach was unintentional, the associate attorney acted immediately to cure the breach, no party involved in the investigation had committed previous violations of an APO, and the firm's

submissions supported a finding that no unauthorized parties viewed the BPI.

*Case 7:* A law firm was involved in two breaches of an APO. Both breaches involved service on other law firms that were no longer on the confidential service lists. The Commission found that the first breach was the responsibility of a paralegal. She had been charged with preparing the confidential version of a document containing expert testimony for filing and service. Although it was office procedure to check the certificate of service against the Commission's Web site, she failed to do so. As a result of this error and her use of an outdated service list, a law firm that was not entitled to receive BPI was served with the confidential version of the expert testimony. This first breach was not discovered until after discovery of the second breach.

The second breach occurred two weeks later when two attorneys, a partner who was the lead attorney and an associate, finalized the firm's posthearing brief for filing and service. They had been provided with the same outdated service list by the paralegal, who then left the office on a medical emergency; the two attorneys failed to check whether the certificate of service was current. As a result of the attorneys' use of the outdated service list, two firms that were not entitled to receive BPI were served with the confidential version of the posthearing brief.

The lead attorney discovered the second breach on the first business day after the filing of the posthearing brief and immediately contacted the non-signatory recipients of the posthearing brief. Both firms indicated that the packages had not been opened and returned them with the seals on the internal envelopes intact. The first breach was then discovered when one of the firms receiving the posthearing brief also returned the confidential expert testimony and informed the associate attorney that the document had been stored for safekeeping and never examined.

The Commission found the paralegal responsible for the first breach because she failed to check the certificate of service against the latest APO service list. She was issued a warning letter and was not sanctioned because she had not breached an APO within the previous two years, the breach was unintentional, no non-signatory read the BPI, prompt action was taken by the firm to remedy the breach, and the firm had taken measures to assure that this type of error would not occur in the future.

The Commission found the partner and the associate responsible for the

second breach. The partner received a warning letter, and the associate a private letter of reprimand. The Commission considered the mitigating circumstances that the breach was unintentional, the unauthorized recipients did not read the BPI, the breach was discovered promptly and immediate action was taken to remedy the breach, and, solely with regard to the partner, he had not breached an APO within the previous two years. The associate received a private letter of reprimand because he had been found liable for a breach of another APO within the previous two years.

*Case 8:* The Commission found a lead attorney, an associate attorney, and a paralegal liable for the breach of an APO for failing to delete all of the bracketed information from the public version of a brief filed by their law firm.

The associate attorney instructed the paralegal to prepare an initial public version of the brief by running a computer macro on the electronic document and manually redacting non-electronic portions. The associate attorney reviewed the brief and tabbed a number of bracketing revisions. A second attorney, not found liable for the breach, reviewed the tabbed revisions and suggested more changes. The associate attorney then told the paralegal to make the changes. However, the associate attorney later found a new issue regarding conformity of the BPI and public versions that required a new public version. Citing time constraints and a busy filing day, the associate attorney chose to perform the final check of the brief himself instead of following firm procedure of asking a third attorney to review the public version. The revised BPI and public versions were then filed with the Commission. Later the same day, the second attorney called the associate attorney at home to say that the paralegal, while preparing service copies of the brief, had found text in the public version that was bracketed but not deleted. The associate attorney contacted the paralegal and told her not to serve the public versions of the brief that night because it was late and he needed to review the correction. The next morning, the associate attorney telephoned the Secretary's Office to report the issue, and the paralegal arrived with replacement pages for the Commission copies. As the Commission copies had not been distributed, the paralegal was able to replace the pages and shred the incorrect pages. The paralegal then distributed the service copies to the parties.

The Commission found the paralegal responsible for the breach because the

paralegal had the responsibility to run the computer macro on the brief to redact the bracketed information. However, the Commission determined that there were several mitigating factors because she discovered the breach herself, immediately reported the information to others in the firm, moved promptly to mitigate the effects of the breach, and had not been found to have violated the APO in the last two years; in addition, no unauthorized persons viewed the unredacted BPI. Consequently, the Commission decided to issue a warning letter to the paralegal.

The Commission found the lead attorney responsible for the breach because he had failed to provide adequate supervision over the associate attorney in this matter although he had reason to know that the associate attorney had previously breached the APO in a separate and unrelated proceeding. The Commission decided to issue a warning letter to the lead attorney because the breach was unintentional, no unauthorized persons actually saw the unredacted BPI, the breach was discovered promptly and remedied expeditiously, and this was the only breach in which the lead attorney had been involved in the past two years.

The Commission found the associate attorney responsible because he had final responsibility for reviewing the document and authorized the filing of the document. The Commission considered the mitigating factor that the attorney acted quickly to remedy the situation. Technically the attorney's decision to delay serving the public version on the parties violated the Commission's twenty-four hour rule, but the Commission determined that the violation of the rule did not lead to any prejudicial effect because hand delivering the brief the next day ensured the parties received the brief at the same time they would have received it via overnight mail. Because of the lack of prejudicial effect, the attorney's method of mitigating the breach was not determined to be an aggravating factor.

The associate's prior breach, however, was found to be an aggravating circumstance. Although the breach occurred more than two years previously, the Commission issued a sanction for the prior breach within the two year period. An additional aggravating factor was that the internal firm procedure that the associate attorney overrode, by not having a third attorney review the brief, was the procedure established in response to the attorney's first breach.

Because the attorney had already received a private letter of reprimand for

the first breach, the Commission in this case issued a private letter of reprimand containing an additional condition. The associate attorney was prohibited from being the final decision-maker at his law firm on any APO issues for a period of twelve months. For example, he cannot be the final decision-maker at his firm as to whether certain information is BPI, and he cannot be the final person to review the public version of a document before it is filed with the Commission or served on the relevant parties.

*Case 9:* A law firm filed a public version of its final comments that contained unbracketed BPI. The Commission found that the two associate attorneys who were responsible for preparing the public version of the comments breached the APO.

Shortly after the law firm submitted the public version to the Commission, counsel for one of the companies involved in the investigation contacted the law firm to request the bracketing of additional information in the law firm's final comments. One of the attorneys of the filing firm promptly notified the Commission Secretary's office, stopped service of the first public version of the final comments on the parties, and ensured that the Secretary did not place the first public version on the record. When the law firm submitted a revised public version of its final comments, counsel for the same company again contacted the law firm to request the bracketing of more information. That same day, the law firm prepared a second revised public version of the final comments, filed that version with the Commission, and served it on the parties. The law firm also contacted the parties who received the first revised version. One of the parties confirmed that the first revised version was destroyed unopened, while the other parties confirmed only destruction.

The law firm argued that the information in question was not BPI because the type of information in question was general and normally not treated as BPI. However, the Commission found that the information was BPI and that it had been consistently bracketed by the Commission and other parties to protect the confidential information contained in the staff report and other briefs. The associate attorneys requested that the Commission reconsider its finding that a breach occurred on the basis that the information at issue was not BPI. The Commission denied their request because they did not provide any new arguments or evidence in support of a change in the finding about whether the information was BPI.

The Commission determined that the lead attorney for the law firm was not responsible for the breach because his reliance on the associates for preparing the public version of his firm's final comments was reasonable. The two associates had substantial experience preparing public versions of briefs and, at the time of his delegation to them, had no record of violating another APO within the previous two years.

One of the associate attorneys received a warning letter for his breach. The Commission considered the mitigating circumstances that the breach was inadvertent and that the attorneys took immediate steps to notify the Commission, retrieve the offending documents, and prepare corrected copies of the final comments. The attorney receiving the warning letter had committed no APO breaches in the previous two years. Although there was an aggravating circumstance—the likelihood that unauthorized persons had viewed the BPI—the Commission chose not to sanction the attorney in light of the mitigating circumstance that the nature of the BPI and the attorney's contact with the submitter of the information may have left him uncertain as to the status of the information. The Commission did advise the attorney, however, that, in the future, he should consult with Commission staff if he is uncertain about whether particular information is BPI.

The second associate attorney received a private letter of reprimand for his breach. The Commission considered all of the same mitigating circumstances for this attorney except with respect to prior breaches. After the Commission determined that the attorney had breached the APO in this investigation, he was found to have breached the APO in another investigation that occurred prior to the breach in this investigation. Therefore, the Commission found an additional aggravating circumstance that warranted a private letter of reprimand.

*Case 10:* The Commission found that a lead attorney and her legal secretary breached the APO by serving the confidential version of the final comments prepared by their firm on a law firm that had been removed from the APO service list.

The attorney's legal secretary used an outdated version of the APO service list to serve the final comments. The law firm's APO procedures required the legal secretary to consult the updated APO service list maintained on the ITC Web site, but the legal secretary neglected to follow this procedure. Although the attorney reviewed the submission, she did not notice the mistake because the service list was the

same as previous service lists. The attorney noticed the mistake when she reviewed the service lists of the other parties. She immediately telephoned the firm that mistakenly received the final comments to ask that they return or destroy the brief, then followed up to confirm that the firm had destroyed the brief before any unauthorized person reviewed it.

The Commission determined that both the lead attorney and her legal secretary violated the terms of the APO because disclosure of BPI to unauthorized persons, regardless of whether those persons viewed the BPI, constitutes an APO breach. However, the Commission determined not to initiate the second phase of the APO breach investigation because of a variety of mitigating circumstances that made issuing a warning letter the most appropriate response to the breach. These mitigating circumstances included the attorney's prompt remedial action, her curing of the breach before unauthorized persons viewed the BPI, and her prompt report of the incident to the Commission. Furthermore, the attorney's breach was unintentional and was her first breach within the past two years. Finally, the firm adopted a new procedure where the lead attorney personally checks the service list against the most current service list on the Commission's Web site to ensure that a similar breach does not occur in the future.

There were three investigations in which no breach was found:

*Case 1:* The Commission determined that two attorneys and an economic consultant did not breach the APO when, in their final comments, they failed to bracket certain information that had been identified by the Office of the Secretary as BPI. The Commission also found that the same individuals did not breach the APO when they failed to redact certain information contained in brackets in the public version of the final comments filed with the Commission.

The Commission found that the two sets of information in question were publicly available and the failure to bracket and to redact did not constitute breaches. The information that was contained in brackets but was not redacted in the public version of the final comments was information that was derived from a subscription service report that was maintained as confidential in the Commission's staff report. In this case, however, prior to the issuance of the staff report, the law firm in question and another party had filed the same subscription service report with the Commission. Thus, the information was publicly available and independently available to the law firm in question, and the information that was not bracketed in the confidential version of the final comments was made publicly available in the Commission's final staff report.

*Case 2:* The Commission determined that three attorneys did not breach the APO because unbracketed information in a prehearing brief, identified by Commission staff as confidential, was not BPI.

The information in the prehearing brief that initially appeared to be BPI were two unbracketed unit values. The unbracketed information provided percentage changes in average unit values as opposed to actual unit values, which were not disclosed. The Commission determined that disclosure of the unbracketed numbers did not reveal the BPI of any specific company. The bracketed average unit values were calculated using the BPI for more than three companies, and the identity of specific respondents was not disclosed publicly. Furthermore, it was unclear precisely what data were used to calculate the unit values. Therefore, it was impossible to back out the actual numbers or information of any individual company.

*Case 3:* The Commission determined that attorneys did not breach the APO by inadvertently serving a confidential version of a motion on counsel for a law firm not included in the APO.

Although the motion was designated "Confidential," the motion did not contain CBI. The purportedly confidential material in the motion consisted of a series of quotes from the confidential version of the Commission opinion. At the time of the motion's filing, no public version of the opinion was available, which led attorneys at the firm in question to designate the motion as "Confidential" out of an abundance of caution. However, a review of the confidential and public versions of the Commission opinion revealed that although the confidential version of the opinion did contain CBI, the material quoted in the motion did not include confidential information. The law firm in question also took prompt remedial measures to request the destruction of all copies of the motion and modified their policies for service in the investigation to ensure APO compliance.

As no CBI was disclosed, the Commission found no breach of the APO, but did caution the attorneys involved to be more careful in handling material designated as confidential.

By order of the Commission.

Issued: August 29, 2008.

**Marilyn R. Abbott,**
*Secretary to the Commission.*
[FR Doc. E8–20540 Filed 9–4–08; 8:45 am]
**BILLING CODE 7020–02–P**

# DEPARTMENT OF JUSTICE

## Notice of Lodging of Consent Decree Under the Comprehensive Environmental Response, Compensation, and Liability Act of 1980

Notice is hereby given that on August 21, 2008, a Complaint was filed and a proposed Consent Decree was lodged with the United States District Court for the District of New Jersey in *United States of America* v. *Air Products and Chemicals, Inc.*, Civil Action No. 2:08-cv-04216.

In this action the United States seeks reimbursement of response costs incurred by EPA for response actions at the Chemsol, Inc. Superfund Site ("Site") in Piscataway Township, Middlesex County, New Jersey, and performance of studies and response work at the Site consistent with the National Contingency Plan, 40 CFR Part 300, pursuant to Sections 106 and 107 of the Comprehensive Environmental, Response, Compensation, and Liability Act, 42 U.S.C. 9606 and 9607 ("CERCLA"). The Consent Decree provides that the new settlors will financially contribute to and perform work at the Site together with a group of potentially responsible parties that resolved their liability to the United States in 2000 in a Consent Decree. The value of this settlement is estimated at approximately $3.1 million, of which $380.170.83 will be paid to EPA for unreimbursed response costs, and $95,747.14 will be paid to the State of New Jersey for the State's Natural Resource Damages caused by the release of hazardous substances at the Site.

The Department of Justice will receive for a period of thirty (30) days from the date of this publication comments relating to the Consent Decree. Comments should be addressed to the Assistant Attorney General, Environment and Natural Resources Division, and either e-mailed to *pubcomment-ees.enrd@usdoj.gov* or mailed to P.O. Box 7611, U.S. Department of Justice, Washington, DC 20044–7611, and should refer to *United States* v. *Air Products and Chemicals, et al.*, D.J. Ref. 90–11–3–06104/3.

The Consent Decree may be examined at the Office of the United States Attorney, Federal Building, 7th Floor, 970 Broad Street, Newark, New Jersey,

(Dec. 29, 2008) (*NSK II*). Accordingly, on February 6, 2009, the Commission published a notice that it was resuming its remand proceeding. The Commission provided parties with an opportunity to file comments on the Court's remand instructions and the evidence obtained on remand, and directed that they be filed by March 23, 2009. 74 FR 6174.

The Commission also prepared a supplemental staff report regarding non-subject producer questionnaire information gathered in the remand proceeding. On March 23, 2009, comments on the remand were filed by petitioner The Timken Company, and the Japanese and United Kingdom respondents JTEKT Corp., Koyo Corp. of U.S.A., NSK Corporation, NSK Ltd., and NSK Europe Ltd. On May 4, 2009, the Commission issued its remand determinations in *Ball Bearings from Japan and the United Kingdom,* 731–TA–394A & 399A, (Second Review) (Remand), USITC Pub. 4082 (May 2009). By unanimous vote, the Commission again determined that revocation of the antidumping duty orders on ball bearings from France, Germany, Italy, Japan, and the United Kingdom would likely result in continuation or recurrence of material injury within a reasonably foreseeable time.

On August 31, 2009, the CIT issued an opinion in *NSK Corp. et al.* v. *United States,* Slip Op. 09–91 (*NSK III*), again remanding the Commission's affirmative determinations in *Certain Bearings and Parts Thereof from Japan and the United Kingdom,* Inv. Nos. 731–TA–394–A & 399–A (Second Review) (Remand), USITC Pub. 4082 (May 2009). In *NSK III,* the Court has remanded the same three issues which it previously remanded for further explanation in *NSK I* and *NSK II.* First, the Court remanded the Commission's analysis of non-subject imports, with instructions to ''to determine whether, in light of the significant presence of non-subject imports, the subject imports are more than a mere minimal or tangential factor in the material injury to the domestic industry that is likely to continue or recur in the absence of the antidumping duty order.'' *NSK III* at 29. Second, the Court directed the Commission to ''provide a more careful and reasoned explanation of (1) the large scale restructuring within the ball bearing industry and (2) the significant rise in non-subject imports in the U.S. market'' as part of its cumulation analysis of the subject imports from the United Kingdom. *Id.* Third, the Court directed the Commission to ''revisit its determination on the vulnerability of the domestic market and the likely

impact of subject imports on the domestic market.'' *Id.* at 30.

The Court has ordered the Commission to file its remand determination with the Court by January 5, 2010.

*Participation in the proceeding.*— Only those persons who were interested parties to the reviews (*i.e.,* persons listed on the Commission Secretary's service list) and parties to the appeal may participate in the remand proceeding. Such persons need not make any additional filings with the Commission to participate in the remand proceeding, unless they are adding new individuals to the list of persons entitled to receive business proprietary information under administrative protective order. Business proprietary information (''BPI'') referred to during the remand proceeding will be governed, as appropriate, by the administrative protective order issued in the reviews.

*Written submissions.*—The Commission is not re-opening the record in this remand proceeding. The Commission will permit the parties to file comments pertaining to the specific issues that are the subject of the Court's remand instructions and, in this regard, may comment on the new information obtained on remand. Comments should be limited to no more than fifteen (15) double-spaced and single-sided pages of textual material. No appendices or other attachments are allowed. The parties may not themselves submit any new factual information in their comments and may not address any issue other than those that are the subject of the Court's remand instructions. Any such comments must be filed with the Commission no later than October 23, 2009.

All written submissions must conform with the provisions of section 201.8 of the Commission's rules; any submissions that contain BPI must also conform with the requirements of sections 201.6, 207.3, and 207.7 of the Commission's rules. The Commission's rules do not authorize filing of submissions with the Secretary by facsimile or electronic means, except to the extent permitted by section 201.8 of the Commission's rules, as amended, 67 FR 68036 (Nov. 8, 2002).

In accordance with sections 201.16(c) and 207.3 of the Commission's rules, each document filed by a party to the investigation must be served on all other parties to the investigation (as identified by either the public or BPI service list), and a certificate of service must be timely filed. The Secretary will not accept a document for filing without a certificate of service.

Parties are also advised to consult with the Commission's Rules of Practice and Procedure, part 201, subparts A through E (19 CFR part 201), and part 207, subpart A (19 CFR part 207) for provisions of general applicability concerning written submissions to the Commission.

Issued: October 14, 2009.

By order of the Commission.

**Marilyn R. Abbott,**
*Secretary to the Commission.*
[FR Doc. E9–25244 Filed 10–20–09; 8:45 am]
**BILLING CODE 7020–02–P**

---

# INTERNATIONAL TRADE COMMISSION

## Summary of Commission Practice Relating to Administrative Protective Orders

**AGENCY:** U.S. International Trade Commission.

**ACTION:** Summary of Commission practice relating to administrative protective orders.

---

**SUMMARY:** Since February 1991, the U.S. International Trade Commission (''Commission'') has issued an annual report on the status of its practice with respect to violations of its administrative protective orders (''APOs'') in investigations under Title VII of the Tariff Act of 1930 in response to a direction contained in the Conference Report to the Customs and Trade Act of 1990. Over time, the Commission has added to its report discussions of APO breaches in Commission proceedings other than under Title VII of the Commission's rules including the rule on bracketing business proprietary information (''BPI'') (the ''24-hour rule''), 19 CFR 207.3(c). This notice provides a summary of investigations completed during calendar year 2008 of breaches in proceedings under Title VII, section 337 of the Tariff Act of 1930 and section 421 of the Trade Act of 1974. In addition, there is a summary of rules violation investigations completed in 2008. The Commission intends that this report inform representatives of parties to Commission proceedings as to some specific types of APO breaches and rules violations encountered by the Commission and the corresponding types of actions the Commission has taken.

**FOR FURTHER INFORMATION CONTACT:** Carol McCue Verratti, Esq., Office of the General Counsel, U.S. International Trade Commission, telephone (202) 205–3088. Hearing impaired individuals

are advised that information on this matter can be obtained by contacting the Commission's TDD terminal at (202) 205–1810. General information concerning the Commission can also be obtained by accessing its Internet server (*http://www.usitc.gov*).

**SUPPLEMENTARY INFORMATION:** Representatives of parties to investigations or other proceedings conducted under Title VII of the Tariff Act of 1930, sections 202 and 204 of the Trade Act of 1974, section 421 of the Trade Act of 1974, section 337 of the Tariff Act of 1930, and North American Free Trade Agreement (NAFTA) Article 1904.13, 19 U.S.C. 1516a(g)(7)(A) may enter into APOs that permit them, under strict conditions, to obtain access to BPI (Title VII) or confidential business information ("CBI") (section 421, sections 201–204, and section 337) of other parties. See 19 U.S.C. 1677f; 19 CFR 207.7; 19 CFR 207.100, *et seq.;* 19 U.S.C. 2252(i); 19 U.S.C. 2451a(b)(3); 19 CFR 206.17; 19 U.S.C. 1337(n); 19 CFR 210.5, 210.34. The discussion below describes APO breach investigations and rules violation investigations that the Commission has completed during calendar year 2008, including a description of actions taken in response to these breaches and rules violations.

Since 1991, the Commission has published annually a summary of its actions in response to violations of Commission APOs and the 24-hour rule. *See* 56 FR 4846 (Feb. 6, 1991); 57 FR 12335 (Apr. 9, 1992); 58 FR 21991 (Apr. 26, 1993); 59 FR 16834 (Apr. 8, 1994); 60 FR 24880 (May 10, 1995); 61 FR 21203 (May 9, 1996); 62 FR 13164 (March 19, 1997); 63 FR 25064 (May 6, 1998); 64 FR 23355 (April 30, 1999); 65 FR 30434 (May 11, 2000); 66 FR 27685 (May 18, 2001); 67 FR 39425 (June 7, 2002); 68 FR 28256 (May 23, 2003); 69 FR 29972 (May 26, 2004); 70 FR 42382 (July 25, 2005); 71 FR 39355 (July 12, 2006); 72 FR 50119 (August 30, 2007); and 73 FR 51843 (Sept. 5, 2008). This report does not provide an exhaustive list of conduct that will be deemed to be a breach of the Commission's APOs. APO breach inquiries are considered on a case-by-case basis.

As part of the effort to educate practitioners about the Commission's current APO practice, the Commission Secretary issued in March 2005 a fourth edition of *An Introduction to Administrative Protective Order Practice in Import Injury Investigations* (Pub. No. 3755). This document is available upon request from the Office of the Secretary, U.S. International Trade Commission, 500 E Street, SW., Washington, DC 20436, tel. (202) 205–2000 and on the

Commission's Web site at *http://www.usitc.gov*.

**I. In General**

The current APO form for antidumping and countervailing duty investigations, which was revised in March 2005, requires the applicant to swear that he or she will:

(1) Not divulge any of the BPI disclosed under this APO or otherwise obtained in this investigation and not otherwise available to him or her, to any person other than—

(i) Personnel of the Commission concerned with the investigation,

(ii) The person or agency from whom the BPI was obtained,

(iii) A person whose application for disclosure of BPI under this APO has been granted by the Secretary, and

(iv) Other persons, such as paralegals and clerical staff, who (a) are employed or supervised by and under the direction and control of the authorized applicant or another authorized applicant in the same firm whose application has been granted; (b) have a need thereof in connection with the investigation; (c) are not involved in competitive decisionmaking for an interested party which is a party to the investigation; and (d) have signed the acknowledgment for clerical personnel in the form attached hereto (the authorized applicant shall also sign such acknowledgment and will be deemed responsible for such persons' compliance with this APO);

(2) Use such BPI solely for the purposes of the above-captioned Commission investigation or for judicial or binational panel review of such Commission investigation;

(3) Not consult with any person not described in paragraph (1) concerning BPI disclosed under this APO or otherwise obtained in this investigation without first having received the written consent of the Secretary and the party or the representative of the party from whom such BPI was obtained;

(4) Whenever materials *e.g.,* documents, computer disks, *etc.* containing such BPI are not being used, store such material in a locked file cabinet, vault, safe, or other suitable container (N.B.: storage of BPI on so-called hard disk computer media is to be avoided, because mere erasure of data from such media may not irrecoverably destroy the BPI and may result in violation of paragraph C of this APO);

(5) Serve all materials containing BPI disclosed under this APO as directed by the Secretary and pursuant to section 207.7(f) of the Commission's rules;

(6) Transmit each document containing BPI disclosed under this APO:

(i) With a cover sheet identifying the document as containing BPI,

(ii) With all BPI enclosed in brackets and each page warning that the document contains BPI,

(iii) If the document is to be filed by a deadline, with each page marked "Bracketing of BPI not final for one business day after date of filing," and

(iv) If by mail, within two envelopes, the inner one sealed and marked "Business Proprietary Information—To be opened only by [name of recipient]", and the outer one sealed and not marked as containing BPI;

(7) Comply with the provision of this APO and section 207.7 of the Commission's rules;

(8) Make true and accurate representations in the authorized applicant's application and promptly notify the Secretary of any changes that occur after the submission of the application and that affect the representations made in the application (*e.g.,* change in personnel assigned to the investigation);

(9) Report promptly and confirm in writing to the Secretary any possible breach of this APO; and

(10) Acknowledge that breach of this APO may subject the authorized applicant and other persons to such sanctions or other actions as the Commission deems appropriate, including the administrative sanctions and actions set out in this APO.

The APO further provides that breach of an APO may subject an applicant to:

(1) Disbarment from practice in any capacity before the Commission along with such person's partners, associates, employer, and employees, for up to seven years following publication of a determination that the order has been breached;

(2) Referral to the United States Attorney;

(3) In the case of an attorney, accountant, or other professional, referral to the ethics panel of the appropriate professional association;

(4) Such other administrative sanctions as the Commission determines to be appropriate, including public release of, or striking from the record any information or briefs submitted by, or on behalf of, such person or the party he represents; denial of further access to business proprietary information in the current or any future investigations before the Commission, and issuance of a public or private letter of reprimand; and

(5) Such other actions, including but not limited to, a warning letter, as the

**Federal Register** / Vol. 74, No. 202 / Wednesday, October 21, 2009 / Notices     **54073**

Commission determines to be appropriate.

APOs in investigations other than those under Title VII contain similar, though not identical, provisions.

Commission employees are not signatories to the Commission's APOs and do not obtain access to BPI through APO procedures. Consequently, they are not subject to the requirements of the APO with respect to the handling of CBI and BPI. However, Commission employees are subject to strict statutory and regulatory constraints concerning BPI and CBI, and face potentially severe penalties for noncompliance. *See* 18 U.S.C. 1905; Title 5, U.S. Code; and Commission personnel policies implementing the statutes. Although the Privacy Act (5 U.S.C. 552a) limits the Commission's authority to disclose any personnel action against agency employees, this should not lead the public to conclude that no such actions have been taken.

An important provision of the Commission's Title VII and safeguard rules relating to BPI/CBI is the "24-hour" rule. This rule provides that parties have one business day after the deadline for filing documents containing BPI/CBI to file a public version of the document. The rule also permits changes to the bracketing of information in the proprietary version within this one-day period. No changes—other than changes in bracketing—may be made to the proprietary version. The rule was intended to reduce the incidence of APO breaches caused by inadequate bracketing and improper placement of BPI/CBI. The Commission urges parties to make use of the rule. If a party wishes to make changes to a document other than bracketing, such as typographical changes or other corrections, the party must ask for an extension of time to file an amended document pursuant to section 201.14(b)(2) of the Commission's rules.

## II. Investigations of Alleged APO Breaches

Upon finding evidence of an APO breach or receiving information that there is a reason to believe one has occurred, the Commission Secretary notifies relevant offices in the agency that an APO breach investigation has commenced and that an APO breach investigation file has been opened. Upon receiving notification from the Secretary, the Office of the General Counsel (OGC) prepares a letter of inquiry to be sent to the possible breacher over the Secretary's signature to ascertain the possible breacher's views on whether a breach has

occurred.[11] If, after reviewing the response and other relevant information, the Commission determines that a breach has occurred, the Commission often issues a second letter asking the breacher to address the questions of mitigating circumstances and possible sanctions or other actions. The Commission then determines what action to take in response to the breach. In some cases, the Commission determines that although a breach has occurred, sanctions are not warranted, and therefore finds it unnecessary to issue a second letter concerning what sanctions might be appropriate. Instead, it issues a warning letter to the individual. A warning letter is not considered to be a sanction.

Sanctions for APO violations serve two basic interests: (a) Preserving the confidence of submitters of BPI/CBI that the Commission is a reliable protector of BPI/CBI; and (b) disciplining breachers and deterring future violations. As the Conference Report to the Omnibus Trade and Competitiveness Act of 1988 observed, "[T]he effective enforcement of limited disclosure under administrative protective order depends in part on the extent to which private parties have confidence that there are effective sanctions against violation." H.R. Conf. Rep. No. 576, 100th Cong., 1st Sess. 623 (1988).

The Commission has worked to develop consistent jurisprudence, not only in determining whether a breach has occurred, but also in selecting an appropriate response. In determining the appropriate response, the Commission generally considers mitigating factors such as the unintentional nature of the breach, the lack of prior breaches committed by the breaching party, the corrective measures taken by the breaching party, and the promptness with which the breaching party reported the violation to the Commission. The Commission also considers aggravating circumstances, especially whether persons not under the APO actually read the BPI/CBI. The Commission considers whether there are prior breaches by the same person or persons in other investigations and multiple breaches by the same person or persons in the same investigation.

The Commission's rules permit an economist or consultant to obtain access to BPI/CBI under the APO in a Title VII

---

[11] Procedures for inquiries to determine whether a prohibited act such as a breach has occurred and for imposing sanctions for violation of the provisions of a protective order issued during NAFTA panel or committee proceedings are set out in 19 CFR 207.100–207.120. Those investigations are initially conducted by the Commission's Office of Unfair Import Investigations.

or safeguard investigation if the economist or consultant is under the direction and control of an attorney under the APO, or if the economist or consultant appears regularly before the Commission and represents an interested party who is a party to the investigation. 19 CFR 207.7(a)(3)(B) and (C); 19 CFR 206.17(a)(3)(B) and (C). Economists and consultants who obtain access to BPI/CBI under the APO under the direction and control of an attorney nonetheless remain individually responsible for complying with the APO. In appropriate circumstances, for example, an economist under the direction and control of an attorney may be held responsible for a breach of the APO by failing to redact APO information from a document that is subsequently filed with the Commission and served as a public document. This is so even though the attorney exercising direction or control over the economist or consultant may also be held responsible for the breach of the APO.

The records of Commission investigations of alleged APO breaches in antidumping and countervailing duty cases are not publicly available and are exempt from disclosure under the Freedom of Information Act, 5 U.S.C. 552, and section 135(b) of the Customs and Trade Act of 1990, 19 U.S.C. 1677f(g). *See also* 19 U.S.C. 1333(h).

The two types of breaches most frequently investigated by the Commission involve the APO's prohibition on the dissemination of BPI or CBI to unauthorized persons and the APO's requirement that the materials received under the APO be returned or destroyed and that a certificate be filed indicating which action was taken after the termination of the investigation or any subsequent appeals of the Commission's determination. The dissemination of BPI/CBI usually occurs as the result of failure to delete BPI/CBI from public versions of documents filed with the Commission or transmission of proprietary versions of documents to unauthorized recipients. Other breaches have included: the failure to bracket properly BPI/CBI in proprietary documents filed with the Commission; the failure to report immediately known violations of an APO; and the failure to adequately supervise non-legal personnel in the handling of BPI/CBI.

In the past several years, the Commission completed APOB investigations that involved members of a law firm or consultants working with a firm who were granted access to APO materials by the firm although they were not APO signatories. In these cases, the firm and the person using the BPI

**54074**   **Federal Register** / Vol. 74, No. 202 / Wednesday, October 21, 2009 / Notices

mistakenly believed an APO application had been filed for that person. The Commission determined in all of these cases that the person who was a non-signatory, and therefore did not agree to be bound by the APO, could not be found to have breached the APO. Action could be taken against these persons, however, under Commission rule 201.15 (19 CFR 201.15) for good cause shown. In all cases in which action was taken, the Commission decided that the non-signatory was a person who appeared regularly before the Commission and was aware of the requirements and limitations related to APO access and should have verified his or her APO status before obtaining access to and using the BPI. The Commission notes that section 201.15 may also be available to issue sanctions to attorneys or agents in different factual circumstances where they did not technically breach the APO but where their actions or inactions did not demonstrate diligent care of the APO materials even though they appeared regularly before the Commission and were aware of the importance the Commission placed on the care of APO materials.

The Commission's Secretary has provided clarification to counsel representing parties in investigations relating to global safeguard actions, section 202(b) of the Trade Act of 1974, investigations for relief from market disruption, section 421(b) or (o) of the Trade Act of 1974, and investigations for action in response to trade diversion, section 422(b) of the Trade Act of 1974, and investigations concerning dumping and subsidies under section 516A and title VII of the Tariff Act of 1930 (19 U.S.C. 1303, 1516A and 1671–1677n). The clarification concerns the requirement to return or destroy CBI/BPI that was obtained under a Commission APO.

A letter was sent to all counsel on active service lists in mid-March 2007. Counsel were cautioned to be certain that each authorized applicant files within 60 days of the completion of an investigation or at the conclusion of judicial or binational review of the Commission's determination a certificate that to his or her knowledge and belief all copies of BPI/CBI have been returned or destroyed and no copies of such material have been made available to any person to whom disclosure was not specifically authorized. This requirement applies to each attorney, consultant, or expert in a firm who has been granted access to BPI/CBI. One firm-wide certificate is insufficient. This same information is

also being added to notifications sent to new APO applicants.

In addition, attorneys who are signatories to the APO representing clients in a section 337 investigation should send a notice to the Commission if they stop participating in the investigation or the subsequent appeal of the Commission's determination. The notice should inform the Commission about the disposition of CBI obtained under the APO that was in their possession or they could be held responsible for any failure of their former firm to return or destroy the CBI in an appropriate manner.

## III. Specific Investigations

### APO Breach Investigations

*Case 1:* The Commission determined that an attorney breached an APO when he served pleadings containing CBI upon Department of Justice ("DOJ") attorneys during an appeal in the Court of International Trade of actions taken by U.S. Customs and Border Protection ("Customs") to enforce the Commission's exclusion order issued in a section 337 investigation. The attorney erroneously assumed that because Customs officials who were directly involved in administering a section 337 exclusion order were permitted access to CBI by statute, he could provide CBI to the Customs officials' DOJ attorneys and the court officials in this appeal of Customs' actions. When the attorney was informed by the opposing counsel that his pleadings violated the APO, he informed the Commission of the possible violation. The DOJ attorneys were not able to return the documents containing CBI, because they were lost or destroyed, but the CIT successfully returned the pleadings containing CBI.

The mitigating factor noted by the Commission was that the attorney had not committed an APO breach in the past two years. The Commission also noted as a partially mitigating factor the fact that the attorney promptly notified an assistant general counsel at the Commission of the breach, although he failed to notify the Secretary of the breach until one week after it occurred. The aggravating factors that the Commission took into account were the fact that the attorney failed to seek guidance from the Commission as to whether his actions would constitute a breach of the APO, the fact that sixteen months passed between the time when the potential breach was identified and the time when the attorney took steps to retrieve the documents containing CBI, and the fact that it took the attorney almost four years to cure the breach, which made it likely that unauthorized

persons saw the CBI. The Commission issued a private letter of reprimand to the attorney.

*Case 2:* The Commission determined that a lead attorney and a computer trade analyst violated an APO, by causing a computer disk containing CBI from a Commission investigation to be transmitted to a coordinator at a training seminar and seminar attendees. The information was put on the disk by the trade analyst at the direction of the lead attorney and it was transmitted to the coordinator of the seminar by a secretary at the attorney's firm. The secretary was not found to have breached the APO. The breach was discovered by an attorney attending the seminar, a non-signatory of the APO. The lead attorney made immediate efforts to cure the breach and retrieve the CBI but not all the documents containing the CBI were retrieved. The Commission considered the lead attorney and trade analyst's lack of prior breaches, the fact that the breach was unintentional, and the prompt and strenuous efforts made by the firm to cure the breach as mitigating factors.

The Commission declined to view the absence of claims of injury by the parties whose CBI was disclosed as a mitigating factor, stating that it considers the viewing of APO material by unauthorized persons to be an aggravating factor, regardless of whether evidence proves that a firm was injured by such a breach of the APO. The Commission also rejected the lead attorney's argument that his reliance on the trade analyst was reasonable because the trade analyst had significant experience. The Commission noted that the trade analyst lacked significant experience in Commission practice, having come from another type of work approximately one year before the breach.

The Commission viewed as aggravating the fact that the CBI was viewed by at least one unauthorized person and the breach was discovered by someone other than the lead attorney or a member of his firm. The Commission sent private letters of reprimand to the trade analyst and the lead attorney.

*Case 3:* The Commission determined that an economic analyst breached an APO when she lost a package containing BPI. The analyst signed for the package when it arrived at her firm, although it was not addressed to her. When the attorney to whom the package was intended inquired about its location, the economic analyst was unable to find it. She thought it may have been destroyed with other materials containing BPI which were located in her office. The

package was never found and the law firm called the Secretary to report the breach nine days after the analyst realized that she had signed for the package but could not locate it.

The Commission viewed as mitigating factors the fact that the breach was unintentional and that the analyst had not committed a breach in the past two years. The aggravating factors in this case were that the package was never found, and the fact that the firm failed to promptly notify the Commission Secretary of the breach as required by Commission rule 207.7(b)(9). The Commission sent a private letter of reprimand to the analyst.

The Commission also sent a letter to two attorneys and a legal secretary from the firm informing them that the Commission determined that they were not responsible for the breach of the APO. However, the letter also stated that the Commission did not believe that the firm had taken adequate measures to prevent similar breaches and it requested that they review their firm's procedures to ensure that a similar loss of BPI by firm personnel would not reoccur.

*Case 4:* The Commission found that two attorneys and a paralegal breached an APO when the public version of the firm's final comments, which contained BPI, was filed with the Commission. The BPI was contained on three pages that the paralegal inadvertently attached to the comments. The attorney primarily responsible for preparing the public version of the final comments for filing did not notice the addition of the BPI when he reviewed the submission and he gave it to the lead attorney for signing. The lead attorney signed on a page containing BPI. The document was then filed with the Commission.

The Commission determined to hold the lead attorney responsible for the breach because he was aware or should have been aware of the other attorney's previous breach of the APO. Consequently, the lead attorney should have engaged in at least a cursory review of the page he was signing. That page contained a conspicuous header stating that it contained BPI and there was unredacted BPI just two lines above the signature block. The Commission's decision to send warning letters to the paralegal and the lead attorney took into account the mitigating factors that the breach was unintentional, no BPI was read by any person not subject to the APO, the breach was remedied expeditiously by the firm, and neither the paralegal nor the lead attorney had committed APO breaches in the past two years.

In evaluating the filing attorney's conduct, the Commission viewed as an aggravating factor the fact that this was his second APO breach in 13 months and that he had been issued a warning letter for his prior breach. The Commission noted that the breach was caused by the attorney's carelessness in inadequately reviewing the comments before obtaining the lead attorney's signature and filing them. The Commission viewed as mitigating factors the facts that the breach was unintentional, the attorney's law firm acted expeditiously to remedy the breach, and the BPI was not read by any individuals who were not signatories to the APO. The Commission decided to send a private letter of reprimand to the attorney.

*Case 5:* The Commission found that an attorney had breached an APO when, after the completion of a section 337 investigation, he provided documents containing CBI to a non-signatory associate attorney at a law firm that was representing his client in an unrelated law suit. The associate attorney sought documents twice from the breaching attorney. For the first request the associate attorney provided a letter from an attorney for the party from which the CBI was originally obtained, and which was a respondent in the section 337 investigation, permitting the release of the information to the associate attorney. A second request for the release of information was made, but that time the associate attorney did not provide a letter permitting the release. He merely made a verbal assertion that he had approval to receive the information just as he had for the first request. The breaching attorney accepted his statement and provided the second set of information containing CBI originally obtained from the same section 337 respondent.

The breaching attorney learned from an attorney for the section 337 respondent that the associate attorney was not authorized to receive the second set of information. The breaching attorney contacted a partner at the associate's law firm about the matter and learned that the materials were destroyed and had never been copied, they had not been distributed to counsel or parties in the unrelated litigation, and no one at the firm including the associate attorney had substantively reviewed the materials prior to their destruction.

The Commission determined to issue a warning letter to the breaching attorney. It viewed as an aggravating factor that an unauthorized person briefly viewed the CBI, although no substantive review occurred. It also

found several mitigating factors. The breach was unintentional and was based on an inaccurate representation by the associate attorney that he had the authority to receive the information containing CBI; the attorney expeditiously sought to remedy the breach and to notify the Commission of the breach, after being informed by respondent's counsel; and this was the only breach in which the attorney had been involved in the two-year period generally examined by the Commission for the purpose of determining sanctions.

The Commission also found that the attorney had not committed a second breach by retaining the information obtained under the APO after the Commission investigation had ended. The attorney and the lead counsel for respondents had agreed to retain the documents for purposes of a separate litigation. The attorney destroyed the documents containing CBI once the litigation terminated.

*Case 6:* The Commission found that an attorney had breached an APO in a section 337 investigation when he transmitted an administrative law judge-issued order containing CBI to an unauthorized person. The breach was discovered by a non-signatory to the APO, counsel in a different section 337 investigation, who alerted another non-signatory counsel from whom he had obtained a copy of the order. That attorney then notified the breaching attorney.

In deciding to sanction the attorney by issuing a private letter of reprimand, the Commission considered the mitigating circumstances that the breach was unintentional, that the attorney acted quickly to cure the breach, and that the attorney had not committed a breach in the past two years, the period generally examined by the Commission for the purpose of determining sanctions. The Commission also considered the aggravating circumstances that the CBI was viewed by at least one unauthorized person and that the breach was not discovered by the attorney or his firm.

The Commission denied the attorney's request that it consider an alleged lack of harm caused by the unauthorized disclosure of the CBI to be a mitigating circumstance. The Commission informed the breaching attorney that it has an established practice and policy of providing strong protection to CBI. Consistent with this, the Commission considers the viewing of APO material by unauthorized persons to be an aggravating factor, regardless of whether evidence proves

**54076** **Federal Register** / Vol. 74, No. 202 / Wednesday, October 21, 2009 / Notices

that a firm was injured by such a breach of the APO.

*Case 7:* The Commission found that an attorney breached an APO by failing to redact from the public version of his firm's final comments the name of a subscription service and information obtained from the subscription service under the Commission's APO. The Commission has consistently treated this type of information as BPI and the information had clearly been marked as BPI. A paralegal and a legal secretary who were involved in the matter were found not liable for the breach because they acted under the direction of the attorney.

The Commission viewed as mitigating factors that the attorney had not been found liable for a breach within the previous two years, the time period the Commission usually considers for the purpose of sanctions, no non-signatory read the BPI, and prompt action was taken to remedy the breach once the attorney was notified of the breach. The Commission also considered two aggravating circumstances. First, the Commission staff, not the attorney, discovered the breach. Second, the breach was not inadvertent, but rather, the attorney substituted his own judgment for the Commission's in treating the BPI in question as public information despite clear markings to the contrary. The Commission issued a private letter of reprimand to the breaching attorney.

*Rules Violation Investigations*

*Case 1:* The Commission found that two attorneys had violated Commission rule 207.3(b), 19 CFR 207.3(b), in a five-year review, when they served a brief, which was public because no BPI was used, by first class mail instead of by hand or overnight mail as required by the rules. The certificate of service, which stated that the brief would be sent by first class mail, was signed by the lead attorney after he had been reassured by the second attorney that, in the past, the firm had served public documents in Commission investigations by first class mail. The use of first class service resulted in a one day delay in receipt of the document.

The Commission decided to issue a warning letter to the lead attorney who had signed the certificate of service, in view of the fact that he had no violations in the past two years, the violation was unintentional, and the firm took measures to make sure that this kind of violation would not occur again.

The Commission issued to the second attorney a private letter of reprimand

with two restrictions on his practice before the Commission. For a period of 18 months he was not permitted to serve as the final decisionmaker in any matter relating to proceedings before the Commission and all Commission submissions prepared by the attorney must be reviewed by another attorney before filing with the Commission. In determining to sanction the attorney in this manner, the Commission considered the mitigating circumstances that the breach was unintentional and the fact that other parties were not unduly prejudiced as a result of the improper service. The Commission also considered the aggravating circumstance that he had received two previous sanctions, the most recent of which included a restriction on his practice, for breaches of the APO in other Commission investigations within two years of the violation of the service rule. The Commission did take into account that the first of the underlying APO breaches had occurred more than four years prior to the issuance of the sanction in this rules violation proceeding.

There was one rules violation investigation in which no violation was found:

*Case 1:* The Commission determined that sanctions were unwarranted but cautioned three attorneys to ensure that their guidance to employees and clients in the future respects the Commission's need for accurate questionnaire responses to maintain the integrity of Commission investigations. A rules violation investigation had been conducted pursuant to Commission rule 201.15(a), 19 CFR 201.15(a), when comments on their client's completed questionnaire made it appear that the three attorneys had advised their clients to answer a question in a potentially misleading manner. In response to the letter of inquiry, the attorneys explained that the comments were inadvertently left on the questionnaire and were never transmitted to the client. They were, instead, intended for staff at the law firm to encourage them to seek more accurate information from the client. The firm's staff to whom the comments were sent recognized them as encouragement to obtain additional accurate information from the client and, in response to the comments, initiated follow-up contacts with the client to obtain additional, accurate information. This was confirmed by e-mail communications between the attorneys and the staff demonstrating a recognition of the need for accurate reporting.

Issued: October 15, 2009.

By order of the Commission.

**Marilyn R. Abbott,**
*Secretary to the Commission.*
[FR Doc. E9–25243 Filed 10–20–09; 8:45 am]
**BILLING CODE 7020–02–P**

# DEPARTMENT OF JUSTICE

## Notice of Lodging of Consent Decree Under the Comprehensive Environmental Response, Compensation, and Liability Act

Consistent with Section 122 of the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended ("CERCLA"), 42 U.S.C. 9622(d), and 28 CFR 50.7, notice is hereby given that on October 9, 2009, the United States lodged a Consent Decree with the City of South Lake Tahoe, California ("the City") in *United States of America* v. *El Dorado County, California, et al.,* Civil No. S–01–1520 MCE GGH (E.D. Cal.), with respect to the Meyers Landfill Site, located in Meyers, El Dorado County, California (the "Site").

On August 3, 2001, Plaintiff United States of America ("United States"), on behalf of the United States Department of Agriculture, Forest Service ("Forest Service"), filed a complaint in this matter pursuant to Section 107 of the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. 9607, against Defendants, El Dorado County, California (the "County") and the City. The complaint filed by the United States seeks recovery of environmental response costs incurred by the Forest Service related to the release or threatened release and/or disposal of hazardous substances at or from the Meyers Landfill Site, a former municipal waste disposal facility located on National Forest Service System lands administered by the Lake Tahoe Basin Management Unit of the Forest Service, with accrued interest, and a declaration of the County's and the City's liability for future response costs incurred by the United States related to the Site. The City filed counterclaims against the United States pursuant to CERCLA. The proposed Consent Decree resolves the United States' CERCLA claims against the City and the City's CERCLA claims against the United States.

Under the proposed Consent Decree the City will pay $1.6 million, a portion of which will be deposited into a Forest Service Special account to fund future response actions at the Site and a portion of which will go to the Forest Service to fund response actions related

means, except to the extent permitted by section 201.8 of the Commission's rules, as amended, 67 FR 68036 (November 8, 2002). Even where electronic filing of a document is permitted, certain documents must also be filed in paper form, as specified in II (C) of the Commission's Handbook on Electronic Filing Procedures, 67 FR 68168, 68173 (November 8, 2002).

In accordance with sections 201.16(c) and 207.3 of the rules, each document filed by a party to the investigations must be served on all other parties to the investigations (as identified by either the public or BPI service list), and a certificate of service must be timely filed. The Secretary will not accept a document for filing without a certificate of service.

**Authority:** These investigations are being conducted under authority of title VII of the Tariff Act of 1930; this notice is published pursuant to section 207.12 of the Commission's rules.

By order of the Commission.

Issued: October 21, 2010.

**Marilyn R. Abbott,**

*Secretary to the Commission.*

[FR Doc. 2010–27173 Filed 10–26–10; 8:45 am]

**BILLING CODE 7020–02–P**

---

**INTERNATIONAL TRADE COMMISSION**

**Summary of Commission Practice Relating to Administrative Protective Orders**

**AGENCY:** U.S. International Trade Commission.

**ACTION:** Summary of Commission practice relating to administrative protective orders.

**SUMMARY:** Since February 1991, the U.S. International Trade Commission ("Commission") has issued an annual report on the status of its practice with respect to violations of its administrative protective orders ("APOs") in investigations under title VII of the Tariff Act of 1930, in response to a direction contained in the Conference Report to the Customs and Trade Act of 1990. Over time, the Commission has added to its report discussions of APO breaches in Commission proceedings other than under title VII and violations of the Commission's rules including the rule on bracketing business proprietary information ("BPI") (the "24-hour rule"), 19 CFR 207.3(c). This notice provides a summary of investigations completed during calendar year 2009 of breaches in proceedings under title VII and section 337 of the Tariff Act of 1930. In

addition, there is a summary of rules violation investigations completed in 2009. The Commission intends that this report inform representatives of parties to Commission proceedings as to some specific types of APO breaches and rules violations encountered by the Commission and the corresponding types of actions the Commission has taken.

**FOR FURTHER INFORMATION CONTACT:** Carol McCue Verratti, Esq., Office of the General Counsel, U.S. International Trade Commission, telephone (202) 205–3088. Hearing impaired individuals are advised that information on this matter can be obtained by contacting the Commission's TDD terminal at (202) 205–1810. General information concerning the Commission can also be obtained by accessing its Web site (*http://www.usitc.gov*).

**SUPPLEMENTARY INFORMATION:** Representatives of parties to investigations or other proceedings conducted under title VII of the Tariff Act of 1930, sections 202 and 204 of the Trade Act of 1974, section 421 of the Trade Act of 1974, section 337 of the Tariff Act of 1930, and North American Free Trade Agreement (NAFTA) Article 1904.13, 19 U.S.C. 1516a(g)(7)(A), may enter into APOs that permit them, under strict conditions, to obtain access to BPI (title VII) or confidential business information ("CBI") (section 421, sections 201–204, and section 337) of other parties. *See* 19 U.S.C. 1677f; 19 CFR 207.7; 19 CFR 207.100, *et seq.*; 19 U.S.C. 2252(i); 19 U.S.C. 2451a(b)(3); 19 CFR 206.17; 19 U.S.C. 1337(n); 19 CFR 210.5, 210.34. The discussion below describes APO breach investigations and rules violation investigations that the Commission has completed during calendar year 2009, including a description of actions taken in response to these breaches and rules violations.

Since 1991, the Commission has published annually a summary of its actions in response to violations of Commission APOs and the 24-hour rule. *See* 56 FR 4846 (February 6, 1991); 57 FR 12335 (April 9, 1992); 58 FR 21991 (April 26, 1993); 59 FR 16834 (April 8, 1994); 60 FR 24880 (May 10, 1995); 61 FR 21203 (May 9, 1996); 62 FR 13164 (March 19, 1997); 63 FR 25064 (May 6, 1998); 64 FR 23355 (April 30, 1999); 65 FR 30434 (May 11, 2000); 66 FR 27685 (May 18, 2001); 67 FR 39425 (June 7, 2002); 68 FR 28256 (May 23, 2003); 69 FR 29972 (May 26, 2004); 70 FR 42382 (July 25, 2005); 71 FR 39355 (July 12, 2006); 72 FR 50119 (August 30, 2007); 73 FR 51843 (September 5, 2008); and 74 FR 54071 (October 21, 2009). This report does not provide an exhaustive

list of conduct that will be deemed to be a breach of the Commission's APOs. APO breach inquiries are considered on a case-by-case basis.

As part of the effort to educate practitioners about the Commission's current APO practice, the Commission Secretary issued in March 2005 a fourth edition of *An Introduction to Administrative Protective Order Practice in Import Injury Investigations* (Pub. No. 3755). This document is available upon request from the Office of the Secretary, U.S. International Trade Commission, 500 E Street, SW., Washington, DC 20436, tel. (202) 205–2000 and on the Commission's Web site at *http://www.usitc.gov*.

**I. In General**

The current APO form for antidumping and countervailing duty investigations, which was revised in March 2005, requires the applicant to swear that he or she will:

(1) Not divulge any of the BPI disclosed under this APO or otherwise obtained in this investigation and not otherwise disclose to him or her, to any person other than —

(i) Personnel of the Commission concerned with the investigation,

(ii) The person or agency from whom the BPI was obtained,

(iii) A person whose application for disclosure of BPI under this APO has been granted by the Secretary, and

(iv) Other persons, such as paralegals and clerical staff, who (a) are employed or supervised by and under the direction and control of the authorized applicant or another authorized applicant in the same firm whose application has been granted; (b) have a need thereof in connection with the investigation; (c) are not involved in competitive decision making for an interested party which is a party to the investigation; and (d) have signed the acknowledgment for clerical personnel in the form attached hereto (the authorized applicant shall also sign such acknowledgment and will be deemed responsible for such persons' compliance with this APO);

(2) Use such BPI solely for the purposes of the above-captioned Commission investigation or for judicial or binational panel review of such Commission investigation;

(3) Not consult with any person not described in paragraph (1) concerning BPI disclosed under this APO or otherwise obtained in this investigation without first having received the written consent of the Secretary and the party or the representative of the party from whom such BPI was obtained;

(4) Whenever materials *e.g.,* documents, computer disks, etc. containing such BPI are not being used, store such material in a locked file cabinet, vault, safe, or other suitable container (N.B.: Storage of BPI on so-called hard disk computer media is to be avoided, because mere erasure of data from such media may not irrecoverably destroy the BPI and may result in violation of paragraph C of this APO);

(5) Serve all materials containing BPI disclosed under this APO as directed by the Secretary and pursuant to section 207.7(f) of the Commission's rules;

(6) Transmit each document containing BPI disclosed under this APO:

(i) With a cover sheet identifying the document as containing BPI,

(ii) With all BPI enclosed in brackets and each page warning that the document contains BPI,

(iii) If the document is to be filed by a deadline, with each page marked "Bracketing of BPI not final for one business day after date of filing," and

(iv) If by mail, within two envelopes, the inner one sealed and marked "Business Proprietary Information—To be opened only by [name of recipient]", and the outer one sealed and not marked as containing BPI;

(7) Comply with the provision of this APO and section 207.7 of the Commission's rules;

(8) Make true and accurate representations in the authorized applicant's application and promptly notify the Secretary of any changes that occur after the submission of the application and that affect the representations made in the application (*e.g.,* change in personnel assigned to the investigation);

(9) Report promptly and confirm in writing to the Secretary any possible breach of this APO; and

(10) Acknowledge that breach of this APO may subject the authorized applicant and other persons to such sanctions or other actions as the Commission deems appropriate, including the administrative sanctions and actions set out in this APO.

The APO further provides that breach of an APO may subject an applicant to:

(1) Disbarment from practice in any capacity before the Commission along with such person's partners, associates, employer, and employees, for up to seven years following publication of a determination that the order has been breached;

(2) Referral to the United States Attorney;

(3) In the case of an attorney, accountant, or other professional, referral to the ethics panel of the appropriate professional association;

(4) Such other administrative sanctions as the Commission determines to be appropriate, including public release of, or striking from the record any information or briefs submitted by, or on behalf of, such person or the party he represents; denial of further access to business proprietary information in the current or any future investigations before the Commission, and issuance of a public or private letter of reprimand; and

(5) Such other actions, including but not limited to, a warning letter, as the Commission determines to be appropriate.

APOs in investigations other than those under title VII contain similar, though not identical, provisions.

Commission employees are not signatories to the Commission's APOs and do not obtain access to BPI through APO procedures. Consequently, they are not subject to the requirements of the APO with respect to the handling of CBI and BPI. However, Commission employees are subject to strict statutory and regulatory constraints concerning BPI and CBI, and face potentially severe penalties for noncompliance. *See* 18 U.S.C. 1905; title 5, U.S. Code; and Commission personnel policies implementing the statutes. Although the Privacy Act (5 U.S.C. 552a) limits the Commission's authority to disclose any personnel action against agency employees, this should not lead the public to conclude that no such actions have been taken.

An important provision of the Commission's title VII and safeguard rules relating to BPI/CBI is the "24-hour" rule. This rule provides that parties have one business day after the deadline for filing documents containing BPI/CBI to file a public version of the document. The rule also permits changes to the bracketing of information in the proprietary version within this one-day period. No changes—other than changes in bracketing—may be made to the proprietary version. The rule was intended to reduce the incidence of APO breaches caused by inadequate bracketing and improper placement of BPI/CBI. The Commission urges parties to make use of the rule. If a party wishes to make changes to a document other than bracketing, such as typographical changes or other corrections, the party must ask for an extension of time to file an amended document pursuant to section 201.14(b)(2) of the Commission's rules.

## II. Investigations of Alleged APO Breaches

Upon finding evidence of an APO breach or receiving information that there is a reason to believe one has occurred, the Commission Secretary notifies relevant offices in the agency that an APO breach investigation has commenced and that an APO breach investigation file has been opened. Upon receiving notification from the Secretary, the Office of the General Counsel (OGC) prepares a letter of inquiry to be sent to the possible breacher over the Secretary's signature to ascertain the possible breacher's views on whether a breach has occurred.[1] If, after reviewing the response and other relevant information, the Commission determines that a breach has occurred, the Commission often issues a second letter asking the breacher to address the questions of mitigating circumstances and possible sanctions or other actions. The Commission then determines what action to take in response to the breach. In some cases, the Commission determines that although a breach has occurred, sanctions are not warranted, and therefore finds it unnecessary to issue a second letter concerning what sanctions might be appropriate. Instead, it issues a warning letter to the individual. A warning letter is not considered to be a sanction.

Sanctions for APO violations serve two basic interests: (a) Preserving the confidence of submitters of BPI/CBI that the Commission is a reliable protector of BPI/CBI; and (b) disciplining breachers and deterring future violations. As the Conference Report to the Omnibus Trade and Competitiveness Act of 1988 observed, "[T]he effective enforcement of limited disclosure under administrative protective order depends in part on the extent to which private parties have confidence that there are effective sanctions against violation." H.R. Conf. Rep. No. 576, 100th Cong., 1st Sess. 623 (1988).

The Commission has worked to develop consistent jurisprudence, not only in determining whether a breach has occurred, but also in selecting an appropriate response. In determining the appropriate response, the Commission generally considers mitigating factors such as the unintentional nature of the breach, the

---

[1] Procedures for inquiries to determine whether a prohibited act such as a breach has occurred and for imposing sanctions for violation of the provisions of a protective order issued during NAFTA panel or committee proceedings are set out in 19 CFR 207.100—207.120. Those investigations are initially conducted by the Commission's Office of Unfair Import Investigations.

lack of prior breaches committed by the breaching party, the corrective measures taken by the breaching party, and the promptness with which the breaching party reported the violation to the Commission. The Commission also considers aggravating circumstances, especially whether persons not under the APO actually read the BPI/CBI. The Commission considers whether there have been prior breaches by the same person or persons in other investigations and multiple breaches by the same person or persons in the same investigation.

The Commission's rules permit an economist or consultant to obtain access to BPI/CBI under the APO in a title VII or safeguard investigation if the economist or consultant is under the direction and control of an attorney under the APO, or if the economist or consultant appears regularly before the Commission and represents an interested party who is a party to the investigation. 19 CFR 207.7(a)(3)(B) and (C); 19 CFR 206.17(a)(3)(B) and (C). Economists and consultants who obtain access to BPI/CBI under the APO under the direction and control of an attorney nonetheless remain individually responsible for complying with the APO. In appropriate circumstances, for example, an economist under the direction and control of an attorney may be held responsible for a breach of the APO by failing to redact APO information from a document that is subsequently filed with the Commission and served as a public document. This is so even though the attorney exercising direction or control over the economist or consultant may also be held responsible for the breach of the APO.

The records of Commission investigations of alleged APO breaches in antidumping and countervailing duty cases are not publicly available and are exempt from disclosure under the Freedom of Information Act, 5 U.S.C. 552, and section 135(b) of the Customs and Trade Act of 1990, 19 U.S.C. 1677f(g). *See also* 19 U.S.C. 1333(h).

The two types of breaches most frequently investigated by the Commission involve the APO's prohibition on the dissemination of BPI or CBI to unauthorized persons and the APO's requirement that the materials received under the APO be returned or destroyed and that a certificate be filed indicating which action was taken after the termination of the investigation or any subsequent appeals of the Commission's determination. The dissemination of BPI/CBI usually occurs as the result of failure to delete BPI/CBI from public versions of documents filed

with the Commission or transmission of proprietary versions of documents to unauthorized recipients. Other breaches have included the failure to bracket properly BPI/CBI in proprietary documents filed with the Commission, the failure to report immediately known violations of an APO, and the failure to adequately supervise non-lawyers in the handling of BPI/CBI.

In the past several years, the Commission completed APOB investigations that involved members of a law firm or consultants working with a firm who were granted access to APO materials by the firm although they were not APO signatories. In these cases, the firm and the person using the BPI mistakenly believed an APO application had been filed for that person. The Commission determined in all of these cases that the person who was a non-signatory, and therefore did not agree to be bound by the APO, could not be found to have breached the APO. Action could be taken against these persons, however, under Commission rule 201.15 (19 CFR 201.15) for good cause shown. In all cases in which action was taken, the Commission decided that the non-signatory was a person who appeared regularly before the Commission and was aware of the requirements and limitations related to APO access and should have verified his or her APO status before obtaining access to and using the BPI. The Commission notes that section 201.15 may also be available to issue sanctions to attorneys or agents in different factual circumstances in which they did not technically breach the APO, but when their actions or inactions did not demonstrate diligent care of the APO materials even though they appeared regularly before the Commission and were aware of the importance the Commission placed on the care of APO materials.

The Commission's Secretary has provided clarification to counsel representing parties in investigations relating to global safeguard actions, section 202(b) of the Trade Act of 1974; investigations for relief from market disruption, section 421(b) or (o) of the Trade Act of 1974; investigations for action in response to trade diversion, section 422(b) of the Trade Act of 1974; and investigations concerning dumping and subsidies under section 516A and title VII of the Tariff Act of 1930 (19 U.S.C. 1303, 1516A and 1671–1677n). The clarification concerns the requirement to return or destroy CBI/BPI that was obtained under a Commission APO.

Counsel have been cautioned to be certain that each authorized applicant

files within 60 days of the completion of an investigation or at the conclusion of judicial or binational review of the Commission's determination a certificate that to his or her knowledge and belief all copies of BPI/CBI have been returned or destroyed and no copies of such material have been made available to any person to whom disclosure was not specifically authorized. This requirement applies to each attorney, consultant, or expert in a firm who has been granted access to BPI/CBI. One firm-wide certificate is insufficient. This same information is also being added to notifications sent to new APO applicants.

In addition, attorneys who are signatories to the APO representing clients in a section 337 investigation should send a notice to the Commission if they stop participating in the investigation or the subsequent appeal of the Commission's determination. The notice should inform the Commission about the disposition of CBI obtained under the APO that was in their possession or they could be held responsible for any failure of their former firm to return or destroy the CBI in an appropriate manner.

### III. Specific Investigations

*APO Breach Investigations*

*Case 1:* The Commission found that an attorney for the complainant in a section 337 investigation had violated the APO when he provided copies of partially redacted confidential versions of post-hearing briefs of three parties to the section 337 investigation to an attorney with another law firm who was not a signatory to the APO. This attorney in turn provided the briefs to the U.S. Patent and Trademark Office ("PTO"), and, pursuant to PTO service rules, served a copy on another non-signatory attorney. One of the briefs was viewable through the PTO database for approximately two weeks.

The respondent in the section 337 investigation filed a motion requesting that five sanctions be imposed on complainant and complainant's counsel. The Commission denied this motion in its entirety, but issued a private letter of reprimand to the breaching attorney and sent a letter to the General Counsel of the PTO requesting assistance in the destruction or return of documents containing the CBI.

There were several mitigating factors. The breach was inadvertent, as the attorney believed he was submitting the public versions of the parties' briefs. The attorney had requested the public version of the briefs from one paralegal, who asked a paralegal in another of the

**66130** **Federal Register** / Vol. 75, No. 207 / Wednesday, October 27, 2010 / Notices

firm's offices to retrieve the briefs. That paralegal provided partially redacted versions. However, because the paralegal providing the briefs to the attorney believed they were public versions, she changed the marking from confidential to public without informing the attorney. Consequently, the attorney submitted the partially redacted confidential versions, at least in part, due to a paralegal error. The attorney's firm subsequently provided training and instruction on the proper handling of CBI.

This was also the attorney's first APO breach. Upon learning of his breach, he promptly reported it and initiated corrective action. However, the Commission questioned the sufficiency of the attorney's follow-up attempts to cure the breach. The petition to expunge the briefs from the PTO database was filed 17 months before the public versions of the three briefs were submitted in their place.

The attorney contended that there was no evidence that non-signatories to the APO actually viewed the partially redacted briefs. The Commission found, however, that the briefs were provided to the PTO and PTO personnel are not APO signatories; the briefs were not recovered until more than two years after they were filed with the PTO; and at least one of the briefs could be viewed for two weeks on the PTO Patent Application Informal Retrieval Database, which is connected to the Internet. The Commission therefore presumed the CBI was reviewed by a non-signatory, and found that to be an aggravating factor.

*Case 2:* A lead attorney and an associate attorney breached the APO when they failed to redact BPI from the public version of an appendix to a brief filed in the Court of International Trade ("CIT"). The law firm informed the CIT and the Commission of the error once it became aware that the appendix contained BPI. The Commission issued a warning letter to the lead attorney and a private letter of reprimand to the associate.

There were several mitigating factors. The breach was inadvertent, and the law firm took relatively prompt action to remedy the breach. In addition, although the appendix was publicly available at the CIT, a CIT investigation showed that only signatories to the Commission APO and law clerks to the CIT judge had accessed the appendix. Thus, no unauthorized person had read the BPI. In addition, the lead attorney did not have a prior breach within the previous two years generally examined by the Commission for purposes of determining sanctions.

With respect to aggravating factors, the associate was found to have breached the APO in another Commission investigation within the previous two years, and was therefore, given a private letter of reprimand in spite of the mitigating circumstances. The Commission found that the lead attorney failed to supervise the associate adequately in the task of preparing the appendix for filing.

*Case 3:* The Commission found that an associate attorney and an international trade specialist breached the APO when they filed a public version of a prehearing brief that erroneously contained BPI in a title VII five-year review. Both individuals received private letters of reprimand.

The BPI consisted of cumulative data concerning nonsubject imports and combined export numbers for the domestic industry. The release of this information, when combined with other publicly available information on the record, made it possible to calculate the volume of nonsubject imports and estimate two domestic producers' exports during the original title VII investigation.

There were two mitigating factors. The breach was inadvertent, and the individuals involved had not been sanctioned for an APO breach within the past two years.

The parties argued that the Commission itself was partly responsible for the dissemination of the BPI because it distributed the confidential staff prehearing report containing unbracketed BPI to party representatives who were under the APO. However, the Commission found that this was not a mitigating factor because the cover page of the prehearing staff report clearly indicated that only the public version of the report should be used as a guide for confidentiality. The law firm received the public version of the staff report nine days before it filed the public version of its prehearing brief, and had ample time to refer to it and prevent the breach. The Commission also declined to accept the argument of the associate and international trade specialist that the "tight" time frame of sunset reviews justified their failure to properly rely on the public version.

There were also aggravating factors. The Commission staff, and not the law firm, discovered the possible breach. Without information to the contrary presented by the breaching individuals, the Commission presumed that the BPI was read by unauthorized personnel because it had been in the possession of unauthorized parties for over two months.

*Case 4:* The Commission found that a paralegal breached the APO when he prepared and filed a public version of a brief containing BPI in a title VII investigation without informing any attorneys in his firm. The paralegal was instructed by the supervisory attorney to prepare the confidential version of the brief for filing. The paralegal had extensive experience in Commission investigations and in preparing documents containing confidential information. While the paralegal was preparing the confidential brief, he misread the Commission's rules and believed the public version was also due for filing that day. Because it was late in the day, he immediately prepared the public version and filed it with the confidential version. In so doing, he failed to follow the firm's procedures for handling and filing documents containing BPI and failed to remove all BPI from the public version of the brief. The Commission issued a warning letter to the paralegal. The Commission found that the supervising attorney, whom the paralegal did not inform of his action, was not responsible for the breach.

There were several mitigating factors. The breach was unintentional, the BPI was not read by any person not subject to the APO, the firm moved to remedy the breach expeditiously after being informed of it by the Commission staff, and this was the paralegal's only breach in the prior two years generally examined by the Commission for the purpose of determining sanctions.

There were also aggravating factors. Commission staff, rather than the firm, discovered the breach, and the paralegal failed to follow the firm's procedures requiring attorney review of any filing for BPI.

*Case 5:* The Commission found that a secretary in a law firm breached the APO by mistakenly sending the confidential version of a title VII brief to an attorney who was opposing the law firm in a different investigation and who was not a signatory to the title VII investigation's APO. The Commission concluded that the firm's attorneys did not breach the APO. The secretary had been given a purely ministerial task of preparing a mailing envelope and, acting on her own, had inadvertently placed the title VII brief in the wrong mailing envelope. The Commission issued a warning letter to the secretary.

There were several mitigating factors. The secretary had no prior breaches within the prior two years generally examined by the Commission for purposes of determining sanctions; the breach was unintentional; relatively prompt action was taken to remedy the breach; and the record in this APOB

investigation suggests that the BPI was not viewed by unauthorized persons.

*Case 6:* The Commission found that two attorneys breached the APO when they submitted a postconference brief comparing the prices of various firms' imports. The attorneys deliberately declined to bracket a passage providing a description of the degree by which prices reported by one importer were lower than those reported by other importers, on the grounds that Commission Rule 201.6(a)(1) allows parties to make "nonnumerical characterization" of trends in public submissions. In the **Federal Register** notice of final rulemaking for section 201.6(a)(1), the preamble stated that any discussion of the degree or absolute level of a decline or increase was not a "nonnumerical characterization." The Commission concluded that, although the phrases were not literally numerical, they conveyed as much specificity as a strictly numerical characterization. Accordingly, the Commission found that the information in question was BPI and that it should have been bracketed. The attorneys argued that the BPI was information they acquired from their client and not from the questionnaire responses that had been cited in the brief. To support their argument, they cited exhibits that were included with the brief. The Commission found that these exhibits did not support their allegations that the information came from their client. The Commission issued private letters of reprimand to both attorneys.

There were two mitigating factors. Neither attorney had been found to have breached an APO in the two years the Commission typically considers for determining sanctions. In addition, the record showed that the attorneys had responded promptly to the Commission's staff to provide a replacement page for the page containing the unbracketed BPI, although the Commission's Dockets staff never actually received it.

There were also several aggravating factors. First, the Commission found that the breach was not inadvertent. The attorneys were aware of Commission rule 201.6(a)(1), but they made either no effort or an inadequate effort to ascertain the Commission's published interpretation of the regulation, notwithstanding the fact that it was readily available, easily located, and expressly addressed the question of whether the information should be treated as BPI. Instead they adopted their own interpretation of the regulation without consulting the Commission's staff. Thus, they made a conscious decision not to bracket material that was BPI.

Second, the Commission presumed that an individual not subject to the APO read the unbracketed BPI in the public version of the brief. The brief was sent to counsel for the opposing side, who was not subject to the APO. The replacement page was not sent to him until the next day. The attorneys did not address whether the counsel had viewed the BPI even after being specifically asked by the Commission's Secretary. In the absence of any contrary representation by the attorneys, the Commission presumed that opposing counsel read the brief, including the BPI, at the time he received it.

Third, the breach was discovered by the Commission's staff. In addition, although the attorneys initially provided the replacement page promptly, they did not respond to the second request for a replacement page, which was necessitated by the fact that Dockets staff did not receive the original replacement page. The attorneys did respond to the third request.

*APO Breach Investigation in Which No Breach Was Found*

*Case 1:* Counsel for respondents in a title VII investigation transmitted to their clients copies of a draft public version of a prehearing brief. The draft brief contained information that had been derived from information in the Commission's prehearing report. In the report, the information was treated as BPI and was bracketed. The Commission determined that counsel did not breach the APO because at the time the brief was prepared, the substance of the material in the draft prehearing brief was available in the public domain.

*Rules Violations*

*Case 1:* The Commission found that an attorney violated 19 CFR 207.3(b) by serving a postconference brief in a title VII investigation by first-class mail. The Commission issued a warning letter. There were two mitigating factors: (1) Rhis was the attorney's first rules violation within the prior two years generally examined by the Commission for purposes of determining sanctions, and (2) the violation was unintentional.

*Investigation in Which No Rules Violation Was Found*

*Case 1:* An associate and lead attorney filed an *in camera* hearing request in a title VII five year review which did not meet the content requirements of 19 CFR 207.24(d), was not timely filed, and did not provide good cause for the untimeliness as required under 19 CFR 201.14 and 207.24(d). It was also improperly served contrary to 19 CFR 207.3(b). The attorneys filed a second letter *seeking* leave to file an untimely request and providing the subjects to be covered during the *in camera* session. This letter did not provide the time necessary to cover the subjects and was also improperly filed. Consequently, the Commission rejected the request for the *in camera* session as untimely. After consideration of the attorneys' responses in this rules violation investigation, the Commission determined that they failed to exercise due diligence in filing the two submissions, but decided not to sanction them. This decision was reached after giving consideration to the facts that their actions were not intentional and that no party was prejudiced by their actions. In addition, this was the associate's first appearance before the Commission.

By order of the Commission.

Issued: October 21, 2010.

**Marilyn R. Abbott,**
*Secretary to the Commission.*
[FR Doc. 2010–27172 Filed 10–26–10; 8:45 am]

**BILLING CODE 7020–02–P**

## DEPARTMENT OF JUSTICE

**[CPCLO Order No. 005–2010]**

**Privacy Act of 1974; System of Records**

**AGENCY:** Federal Bureau of Investigation, Department of Justice.

**ACTION:** Notice of a Modification of a System of Records.

**SUMMARY:** Pursuant to the Privacy Act of 1974 (5 U.S.C. 552a), the Federal Bureau of Investigation (FBI), Department of Justice, proposes to modify an existing system of records entitled "Data Integration and Visualization System," JUSTICE/FBI–021, which describes the Data Integration and Visualization System (DIVS), to revise the System Location section to clarify locations where the records may be directly accessed and by whom the records may be directly accessed. A new sentence has been added at the end of the System Location section to reflect this information. This system notice was last published on August 31, 2010 (75 FR 53342).

**DATES:** In accordance with 5 U.S.C. 552a(e)(4) and (11), the public is given a 30-day period in which to comment. Therefore, please submit any comments by November 26, 2010.

## INTERNATIONAL TRADE COMMISSION

[Investigation No. 731–TA–703 (Third Review)]

### Furfuryl Alcohol From China; Scheduling of an Expedited Five-Year Review

**AGENCY:** United States International Trade Commission.

**ACTION:** Notice.

**SUMMARY:** The Commission hereby gives notice of the scheduling of an expedited review pursuant to section 751(c)(3) of the Tariff Act of 1930 (19 U.S.C. 1675(c)(3)) (the Act) to determine whether revocation of the antidumping duty order on furfuryl alcohol from China would be likely to lead to continuation or recurrence of material injury within a reasonably foreseeable time. For further information concerning the conduct of this review and rules of general application, consult the Commission's Rules of Practice and Procedure, part 201, subparts A through E (19 CFR part 201), and part 207, subparts A, D, E, and F (19 CFR part 207).

**DATES:** *Effective Date:* December 5, 2011.

**FOR FURTHER INFORMATION CONTACT:** Cynthia Trainor (202) 205–3354, Office of Investigations, U.S. International Trade Commission, 500 E Street SW., Washington, DC 20436. Hearing-impaired persons can obtain information on this matter by contacting the Commission's TDD terminal on (202) 205–1810. Persons with mobility impairments who will need special assistance in gaining access to the Commission should contact the Office of the Secretary at (202) 205–2000. General information concerning the Commission may also be obtained by accessing its Internet server (*http://www.usitc.gov*). The public record for this review may be viewed on the Commission's electronic docket (EDIS) at *http://edis.usitc.gov.*

**SUPPLEMENTARY INFORMATION:**

*Background.*—On December 5, 2011, the Commission determined that the domestic interested party group response to its notice of institution (76 FR 54493, September 1, 2011) of the subject five-year review was adequate and that the respondent interested party group response was inadequate. The Commission did not find any other circumstances that would warrant conducting a full review.[1] Accordingly,

the Commission determined that it would conduct an expedited review pursuant to section 751(c)(3) of the Act.

*Staff report.*—A staff report containing information concerning the subject matter of the review will be placed in the nonpublic record on January 4, 2012, and made available to persons on the Administrative Protective Order service list for this review. A public version will be issued thereafter, pursuant to section 207.62(d)(4) of the Commission's rules.

*Written submissions.*—As provided in section 207.62(d) of the Commission's rules, interested parties that are parties to the review and that have provided individually adequate responses to the notice of institution,[2] and any party other than an interested party to the review may file written comments with the Secretary on what determination the Commission should reach in the review. Comments are due on or before January 9, 2012 and may not contain new factual information. Any person that is neither a party to the five-year review nor an interested party may submit a brief written statement (which shall not contain any new factual information) pertinent to the review by January 9, 2012. However, should the Department of Commerce extend the time limit for its completion of the final results of its review, the deadline for comments (which may not contain new factual information) on Commerce's final results is three business days after the issuance of Commerce's results. If comments contain business proprietary information (BPI), they must conform with the requirements of sections 201.6, 207.3, and 207.7 of the Commission's rules. Please consult the Commission's rules, as amended, 76 Fed. Reg. 61937 (Oct. 6, 2011) and the Commission's Handbook on Filing Procedures, 76 FR 62092 (Oct. 6, 2011), available on the Commission's Web site at *http://edis.usitc.gov.*

In accordance with sections 201.16(c) and 207.3 of the rules, each document filed by a party to the review must be served on all other parties to the review (as identified by either the public or BPI service list), and a certificate of service must be timely filed. The Secretary will not accept a document for filing without a certificate of service.

**Authority:** This review is being conducted under authority of title VII of the Tariff Act

of 1930; this notice is published pursuant to section 207.62 of the Commission's rules.

By order of the Commission.

Issued: December 14, 2011.

**James R. Holbein,**

*Secretary to the Commission.*

[FR Doc. 2011–32524 Filed 12–19–11; 8:45 am]

**BILLING CODE 7020–02–P**

## INTERNATIONAL TRADE COMMISSION

### Summary of Commission Practice Relating to Administrative Protective Orders

**AGENCY:** U.S. International Trade Commission.

**ACTION:** Summary of Commission practice relating to administrative protective orders.

**SUMMARY:** Since February 1991, the U.S. International Trade Commission ("Commission") has issued an annual report on the status of its practice with respect to violations of its administrative protective orders ("APOs") in investigations under title VII of the Tariff Act of 1930, in response to a direction contained in the Conference Report to the Customs and Trade Act of 1990. Over time, the Commission has added to its report discussions of APO breaches in Commission proceedings other than under title VII and violations of the Commission's rules including the rule on bracketing business proprietary information ("BPI") (the "24-hour rule"), 19 CFR 207.3(c). This notice provides a summary of investigations completed during calendar year 2010 of breaches in proceedings under title VII, section 337 of the Tariff Act of 1930, and section 421 of the Trade Act of 1974. There were no rules violation investigations completed in 2010. The Commission intends that this report inform representatives of parties to Commission proceedings as to some specific types of APO breaches encountered by the Commission and the corresponding types of actions the Commission has taken.

**FOR FURTHER INFORMATION CONTACT:** Carol McCue Verratti, Esq., Office of the General Counsel, U.S. International Trade Commission, telephone (202) 205–3088. Hearing impaired individuals are advised that information on this matter can be obtained by contacting the Commission's TDD terminal on (202) 205–1810. General information concerning the Commission can also be obtained by accessing its Web site (*http://www.usitc.gov*).

---

[1] A record of the Commissioners' votes, the Commission's statement on adequacy, and any individual Commissioner's statements will be

available from the Office of the Secretary and at the Commission's Web site.

[2] The Commission has found the responses submitted by domestic producer Penn A Kem LLC to be individually adequate. Comments from other interested parties will not be accepted (see 19 CFR 207.62(d)(2)).

**SUPPLEMENTARY INFORMATION:**
Representatives of parties to investigations or other proceedings conducted under title VII of the Tariff Act of 1930, section 337 of the Tariff Act of 1930, the North American Free Trade Agreement (NAFTA) Article 1904.13. and safeguard-related provisions such as section 202 of the Trade Act of 1974, may enter into APOs that permit them, under strict conditions, to obtain access to BPI (title VII) and confidential business information ("CBI") (safeguard-related provisions and section 337) of other parties. *See, e.g.,* 19 U.S.C. 1677f; 19 CFR 207.7; 19 U.S.C. 1337(n); 19 CFR 210.5, 210.34; 19 U.S.C. 2252(i); 19 CFR 206.17; and 19 U.S.C. 1516a(g)(7)(A); 19 CFR 207.100, *et seq.* The discussion below describes APO breach investigations that the Commission completed during calendar year 2010, including a description of actions taken in response to these breaches and rules violations.

Since 1991, the Commission has published annually a summary of its actions in response to violations of Commission APOs and the 24-hour rule. *See* 56 FR 4846 (February 6, 1991); 57 FR 12335 (April 9, 1992); 58 FR 21991 (April 26, 1993); 59 FR 16834 (April 8, 1994); 60 FR 24880 (May 10, 1995); 61 FR 21203 (May 9, 1996); 62 FR 13164 (March 19, 1997); 63 FR 25064 (May 6, 1998); 64 FR 23355 (April 30, 1999); 65 FR 30434 (May 11, 2000); 66 FR 27685 (May 18, 2001); 67 FR 39425 (June 7, 2002); 68 FR 28256 (May 23, 2003); 69 FR 29972 (May 26, 2004); 70 FR 42382 (July 25, 2005); 71 FR 39355 (July 12, 2006); 72 FR 50119 (August 30, 2007); 73 FR 51843 (September 5, 2008); 74 FR 54071 (October 21, 2009); and 75 FR 66127 (October 27, 2010). This report does not provide an exhaustive list of conduct that will be deemed to be a breach of the Commission's APOs. APO breach inquiries are considered on a case-by-case basis.

As part of the effort to educate practitioners about the Commission's current APO practice, the Commission Secretary issued in March 2005 a fourth edition of *An Introduction to Administrative Protective Order Practice in Import Injury Investigations* (Pub. No. 3755). This document is available upon request from the Office of the Secretary, U.S. International Trade Commission, 500 E Street SW., Washington, DC 20436, tel. (202) 205–2000 and on the Commission's Web site at *http://www.usitc.gov.*

**I. In General**

The current APO form for antidumping and countervailing duty investigations, which was revised in March 2005, requires the applicant to swear that he or she will:

(1) Not divulge any of the BPI disclosed under this APO or otherwise obtained in this investigation and not otherwise available to him or her, to any person other than—

(i) Personnel of the Commission concerned with the investigation,

(ii) The person or agency from whom the BPI was obtained,

(iii) A person whose application for disclosure of BPI under this APO has been granted by the Secretary, and

(iv) Other persons, such as paralegals and clerical staff, who (a) are employed or supervised by and under the direction and control of the authorized applicant or another authorized applicant in the same firm whose application has been granted; (b) have a need thereof in connection with the investigation; (c) are not involved in competitive decision making for an interested party which is a party to the investigation; and (d) have signed the acknowledgment for clerical personnel in the form attached hereto (the authorized applicant shall also sign such acknowledgment and will be deemed responsible for such persons' compliance with this APO);

(2) Use such BPI solely for the purposes of the above-captioned Commission investigation or for judicial or binational panel review of such Commission investigation;

(3) Not consult with any person not described in paragraph (1) concerning BPI disclosed under this APO or otherwise obtained in this investigation without first having received the written consent of the Secretary and the party or the representative of the party from whom such BPI was obtained;

(4) Whenever materials *e.g.,* documents, computer disks, etc. containing such BPI are not being used, store such material in a locked file cabinet, vault, safe, or other suitable container (N.B.: storage of BPI on so-called hard disk computer media is to be avoided, because mere erasure of data from such media may not irrecoverably destroy the BPI and may result in violation of paragraph C of this APO);

(5) Serve all materials containing BPI disclosed under this APO as directed by the Secretary and pursuant to section 207.7(f) of the Commission's rules;

(6) Transmit each document containing BPI disclosed under this APO:

(i) With a cover sheet identifying the document as containing BPI,

(ii) With all BPI enclosed in brackets and each page warning that the document contains BPI,

(iii) If the document is to be filed by a deadline, with each page marked "Bracketing of BPI not final for one business day after date of filing," and

(iv) If by mail, within two envelopes, the inner one sealed and marked "Business Proprietary Information—To be opened only by [name of recipient]", and the outer one sealed and not marked as containing BPI;

(7) Comply with the provision of this APO and section 207.7 of the Commission's rules;

(8) Make true and accurate representations in the authorized applicant's application and promptly notify the Secretary of any changes that occur after the submission of the application and that affect the representations made in the application (*e.g.,* change in personnel assigned to the investigation);

(9) Report promptly and confirm in writing to the Secretary any possible breach of this APO; and

(10) Acknowledge that breach of this APO may subject the authorized applicant and other persons to such sanctions or other actions as the Commission deems appropriate, including the administrative sanctions and actions set out in this APO.

The APO further provides that breach of an APO may subject an applicant to:

(1) Disbarment from practice in any capacity before the Commission along with such person's partners, associates, employer, and employees, for up to seven years following publication of a determination that the order has been breached;

(2) Referral to the United States Attorney;

(3) In the case of an attorney, accountant, or other professional, referral to the ethics panel of the appropriate professional association;

(4) Such other administrative sanctions as the Commission determines to be appropriate, including public release of, or striking from the record any information or briefs submitted by, or on behalf of, such person or the party he represents; denial of further access to business proprietary information in the current or any future investigations before the Commission, and issuance of a public or private letter of reprimand; and

(5) Such other actions, including but not limited to, a warning letter, as the Commission determines to be appropriate.

APOs in investigations other than those under title VII contain similar, though not identical, provisions.

Commission employees are not signatories to the Commission's APOs and do not obtain access to BPI through

APO procedures. Consequently, they are not subject to the requirements of the APO with respect to the handling of CBI and BPI. However, Commission employees are subject to strict statutory and regulatory constraints concerning BPI and CBI, and face potentially severe penalties for noncompliance. *See* 18 U.S.C. 1905; title 5, U.S. Code; and Commission personnel policies implementing the statutes. Although the Privacy Act (5 U.S.C. 552a) limits the Commission's authority to disclose any personnel action against agency employees, this should not lead the public to conclude that no such actions have been taken.

An important provision of the Commission's title VII and safeguard rules relating to BPI/CBI is the ''24-hour'' rule. This rule provides that parties have one business day after the deadline for filing documents containing BPI/CBI to file a public version of the document. The rule also permits changes to the bracketing of information in the proprietary version within this one-day period. No changes—other than changes in bracketing—may be made to the proprietary version. The rule was intended to reduce the incidence of APO breaches caused by inadequate bracketing and improper placement of BPI/CBI. The Commission urges parties to make use of the rule. If a party wishes to make changes to a document other than bracketing, such as typographical changes or other corrections, the party must ask for an extension of time to file an amended document pursuant to section 201.14(b)(2) of the Commission's rules.

## II. Investigations of Alleged APO Breaches

Upon finding evidence of an APO breach or receiving information that there is a reason to believe one has occurred, the Commission Secretary notifies relevant offices in the agency that an APO breach investigation has commenced and that an APO breach investigation file has been opened. Upon receiving notification from the Secretary, the Office of the General Counsel (''OGC'') prepares a letter of inquiry to be sent to the possible breacher over the Secretary's signature to ascertain the possible breacher's views on whether a breach has occurred.[1] If, after reviewing the

response and other relevant information, the Commission determines that a breach has occurred, the Commission often issues a second letter asking the breacher to address the questions of mitigating circumstances and possible sanctions or other actions. The Commission then determines what action to take in response to the breach. In some cases, the Commission determines that, although a breach has occurred, sanctions are not warranted, and therefore finds it unnecessary to issue a second letter concerning what sanctions might be appropriate. Instead, it issues a warning letter to the individual. A warning letter is not considered to be a sanction.

Sanctions for APO violations serve two basic interests: (a) Preserving the confidence of submitters of BPI/CBI that the Commission is a reliable protector of BPI/CBI; and (b) disciplining breachers and deterring future violations. As the Conference Report to the Omnibus Trade and Competitiveness Act of 1988 observed, ''[T]he effective enforcement of limited disclosure under administrative protective order depends in part on the extent to which private parties have confidence that there are effective sanctions against violation.'' H.R. Conf. Rep. No. 576, 100th Cong., 1st Sess. 623 (1988).

The Commission has worked to develop consistent jurisprudence, not only in determining whether a breach has occurred, but also in selecting an appropriate response. In determining the appropriate response, the Commission generally considers mitigating factors such as the unintentional nature of the breach, the lack of prior breaches committed by the breaching party, the corrective measures taken by the breaching party, and the promptness with which the breaching party reported the violation to the Commission. The Commission also considers aggravating circumstances, especially whether persons not under the APO actually read the BPI/CBI. The Commission considers whether there have been prior breaches by the same person or persons in other investigations and multiple breaches by the same person or persons in the same investigation.

The Commission's rules permit an economist or consultant to obtain access to BPI/CBI under the APO in a title VII or safeguard investigation if the economist or consultant is under the direction and control of an attorney under the APO, or if the economist or consultant appears regularly before the

Commission and represents an interested party who is a party to the investigation. 19 CFR 207.7(a)(3)(B) and (C); 19 CFR 206.17(a)(3)(B) and (C). Economists and consultants who obtain access to BPI/CBI under the APO under the direction and control of an attorney nonetheless remain individually responsible for complying with the APO. In appropriate circumstances, for example, an economist under the direction and control of an attorney may be held responsible for a breach of the APO by failing to redact APO information from a document that is subsequently filed with the Commission and served as a public document. This is so even though the attorney exercising direction or control over the economist or consultant may also be held responsible for the breach of the APO.

The records of Commission investigations of alleged APO breaches in antidumping and countervailing duty cases, section 337 investigations, and safeguard investigations are not publicly available and are exempt from disclosure under the Freedom of Information Act, 5 U.S.C. 552. *See* 19 U.S.C. 1677f(g), 19 U.S.C. 1333(h).

The two types of breaches most frequently investigated by the Commission involve the APO's prohibition on the dissemination of BPI or CBI to unauthorized persons and the APO's requirement that the materials received under the APO be returned or destroyed and that a certificate be filed indicating which action was taken after the termination of the investigation or any subsequent appeals of the Commission's determination. The dissemination of BPI/CBI usually occurs as the result of failure to delete BPI/CBI from public versions of documents filed with the Commission or transmission of proprietary versions of documents to unauthorized recipients. Other breaches have included the failure to bracket properly BPI/CBI in proprietary documents filed with the Commission, the failure to report immediately known violations of an APO, and the failure to adequately supervise non-lawyers in the handling of BPI/CBI.

Occasionally, the Commission conducts APOB investigations that involve members of a law firm or consultants working with a firm who were granted access to APO materials by the firm although they were not APO signatories. In many of these cases, the firm and the person using the BPI mistakenly believed an APO application had been filed for that person. The Commission determined in all of these cases that the person who was a non-signatory, and therefore did not agree to

---

[1] Procedures for inquiries to determine whether a prohibited act such as a breach has occurred and for imposing sanctions for violation of the provisions of a protective order issued during NAFTA panel or committee proceedings are set out in 19 CFR 207.100–207.120. Those investigations

are initially conducted by the Commission's Office of Unfair Import Investigations.

be bound by the APO, could not be found to have breached the APO. Action could be taken against these persons, however, under Commission rule 201.15 (19 CFR 201.15) for good cause shown. In all cases in which action was taken, the Commission decided that the non-signatory was a person who appeared regularly before the Commission and was aware of the requirements and limitations related to APO access and should have verified his or her APO status before obtaining access to and using the BPI. The Commission notes that section 201.15 may also be available to issue sanctions to attorneys or agents in different factual circumstances in which they did not technically breach the APO, but when their actions or inactions did not demonstrate diligent care of the APO materials even though they appeared regularly before the Commission and were aware of the importance the Commission placed on the care of APO materials.

Counsel have been cautioned to be certain that each authorized applicant files within 60 days of the completion of an import injury investigation or at the conclusion of judicial or binational review of the Commission's determination a certificate that to his or her knowledge and belief all copies of BPI/CBI have been returned or destroyed and no copies of such material have been made available to any person to whom disclosure was not specifically authorized. This requirement applies to each attorney, consultant, or expert in a firm who has been granted access to BPI/CBI. One firm-wide certificate is insufficient. This same information is also being added to notifications sent to new APO applicants.

In addition, attorneys who are signatories to the APO representing clients in a section 337 investigation should send a notice to the Commission if they stop participating in the investigation or the subsequent appeal of the Commission's determination. The notice should inform the Commission about the disposition of CBI obtained under the APO that was in their possession or they could be held responsible for any failure of their former firm to return or destroy the CBI in an appropriate manner.

### III. Specific Investigations

*APO Breach Investigations*

*Case 1:* The Commission determined that two associates and a partner breached the APO when the associates, under the direction of the partner, reviewed deposition transcripts that

contained CBI from a section 337 investigation in connection with a parallel proceeding in the federal district court and provided, as directed by the partner, citations to those transcripts to a non-signatory of the APO. The Commission also found that the partner responsible for this first breach also committed a second breach by providing to a non-signatory a partially redacted deposition transcript that had been designated as confidential and should have been treated as confidential in its entirety pending declassification by consent of the parties or pursuant to the Commission's rules. Moreover, the record is not clear that the attorney had removed all of the CBI from the transcript before providing it to the non-signatory.

After giving consideration to the mitigating factor that the partner had not been found liable for an APO breach within the last two years, the Commission decided to sanction the partner and issue a private letter of reprimand rather than a warning because of the presence of aggravating factors. The Commission determined that both breaches were intentional. The partner deliberately released to a non-signatory a deposition transcript that should have been treated as confidential in its entirety unless the content was declassified by following the procedures in the Commission's rules for challenging the classification of documents. In addition, the partner specifically instructed his associates to review transcripts of affidavits from the section 337 investigation and to provide citations from the transcripts to a non-signatory for use in a federal district court case. In addition, the breaches were brought to the attention of the Commission by someone other than the partner's firm.

The Commission issued a warning letter to the two associates after giving due consideration to several mitigating factors and one aggravating factor. The Commission determined their breach to be unintentional because both attorneys had misgivings about reviewing the transcripts for a purpose other than for the section 337 investigation and communicated those misgivings to the partner. They only reviewed the transcripts and provided citations to the transcripts to a non-signatory for use in a federal district court case at the direction of the partner after another associate, who was also a signatory to the APO, researched the question and advised they would not violate the APO by following the partner's directions. In addition, no CBI was divulged to any person not subject to the APO as a result of their breach and this was the only

breach the two associates were involved in within the two-year period generally examined by the Commission for the purpose of determining sanctions. The only aggravating factor was that someone other than the associates' firm discovered and reported the breach.

The Commission also decided that two additional associates who were signatories to the APO, including the associate who performed the research, were not responsible for a breach of the APO.

*Case 2:* One lead attorney and a legal secretary under her supervision failed to delete fully all BPI in the public version of a post-hearing brief which was available on the Commission's Electronic Document Information System (EDIS) for five days. Additionally, the attorney failed to provide an Acknowledgement for Clerical Personnel signed by the secretary, thereby allowing the secretary, as an individual not subject to the APO, access to BPI.

The Commission issued a private letter of reprimand to the attorney. In reaching this decision, the Commission considered as mitigating circumstances that the breach was unintentional and the attorney had no prior violations of an APO within the past two years, the period normally considered by the Commission in sanctions determinations. The Commission disagreed with the attorney's argument that the stressful state of her office, in which there were multiple filings scheduled for that same day, should be considered a mitigating circumstance, noting that the attorney is a partner in the law firm and, therefore, had some responsibility for the stressful state of her office. The Commission also considered three aggravating circumstances. First, since there was no signed Acknowledgement for Clerical Personnel, the legal secretary was a non-signatory to the APO who had full access to the document containing the BPI. In addition, the Commission assumed that non-signatories other than the legal secretary had access to and read BPI because the attorney on several occasions failed to answer directly the question whether anyone, other than a signatory to the APO, had access to the APO; the BPI was publicly available on EDIS for five days; and the document containing BPI had been served on an attorney who was on the public service list but not the APO service list. Second, the Commission found that the attorney's failure to comply with the APO by making sure that all clerical personnel who were given access to the BPI signed an Acknowledgement for Clerical Personnel was a separate

aggravating circumstance. Third, the fact that the breach was discovered by Commission staff rather than the attorney's firm was also an aggravating circumstance.

The Commission issued a warning letter to the legal secretary. The Commission found that he did not breach the APO because he had not signed an Acknowledgement for Clerical Personnel but that there was good cause to issue the warning letter, pursuant to Commission rule 201.15(a), (19 CFR 201.15(a)), for his failure to redact the BPI from the law firm's brief. In deciding to issue a warning letter rather than a sanction, the Commission considered mitigating circumstances such as that the breach was unintentional; the secretary had no APO breaches in the last two years; he was under the direction and control of the attorney; and he had been overloaded with work on the day of the breach which had contributed to his failure to remove all the BPI from the public version of the brief.

*Case 3:* Attorneys for a party in a section 337 investigation that had already been terminated filed a complaint in a district court alleging that attorneys from another firm disclosed confidential business information (CBI) to unauthorized persons in breach of the Commission's APO. The complaint named specific attorneys alleged to have disclosed the CBI. Although the filing attorneys subsequently moved to place the complaint under seal, the complaint had been disseminated on the Internet and reported in the legal press before the court could rule on the motion.

The Commission found that the attorneys breached the APO by publicly disclosing the identity of the alleged breachers in their complaint, and it issued private letters of reprimand to them. In reaching this conclusion, the Commission considered certain mitigating circumstances such as the unintentional nature of the breach, the fact that this was the attorneys' first breach of a Commission APO, and the fact that the attorneys took corrective action as soon as they discovered the breach. There is one aggravating circumstance, however, which caused the Commission to issue a private letter of reprimand instead of a warning letter. Although the attorneys took the corrective action to place the complaint under seal, that did not prevent the release of the complaint to the public. The Commission presumed that the complaint was reviewed by at least one unauthorized person.

The Commission also considered whether to sanction under Commission rule 19 CFR 201.15 another attorney who was in-house counsel for the party filing the complaint and, therefore, was not a signatory to the APO. Although the attorney participated in the drafting and filing of the complaint, he was not subject to the APO and he did not practice regularly before the Commission. The Commission noted that once the attorney became aware of the Commission rule treating the names of alleged breachers as CBI and prohibiting release of those names, he promptly attempted to mitigate disclosure of the CBI. The Commission decided to issue a cautionary letter to the attorney advising him that he was not found to have violated the APO but, if he intended to practice before the Commission in the future, he needed to keep abreast of the Commission's rules.

APO Breach Investigation in Which No Breach Was Found

*Case 1:* In the public version of final comments, several attorneys in a law firm were responsible for failing to bracket information identified by the Commission as CBI. The information was from a Commission staff member's telephone notes and included the identity of a source. The notes had been released under the APO. Although the Commission normally considers telephones notes of conversations and the identities of persons contacted by the Commission staff to be CBI, the Commission determined that disclosure of this information in the public version of the final comments did not breach the APO. The attorneys were able to demonstrate that the information and the identity of the source were publicly available at the time the public version of the final comments were filed. The Commission cautioned the attorneys to take care in the future when citing to any information released by the Commission under APO.

By order of the Commission.

Issued: December 14, 2011.

**James R. Holbein,**

*Secretary to the Commission.*

[FR Doc. 2011–32523 Filed 12–19–11; 8:45 am]

**BILLING CODE 7020–02–P**

# DEPARTMENT OF JUSTICE

## Notice of Lodging of Consent Decree Under the Comprehensive Environmental Response, Compensation and Liability Act (CERCLA)

In accordance with section 122(d)(2)(B) of the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. 9622(d)(2), and 28 CFR 50.7, notice is hereby given that on December 9, 2011, a proposed Consent Decree in *United States of America* v. *Akzo Nobel Chemicals, Inc.,* Civil Action No. 1:11–cv–00701–CG–C, was lodged with the United States District Court for the Southern District of Alabama, Southern Division.

In this action, brought pursuant to sections 106(a) and 107 of CERCLA, 42 U.S.C. 9606(a) and 9607, the United States seeks injunctive relief to remedy conditions in connection with the release or threatened release of hazardous substances into the environment at the Stauffer Chemical Company Cold Creek Superfund Site and LeMoyne Plants Superfund Site (the "Sites"), Operable Unit Three, in Mobile County, Alabama. The United States also seeks to recover unreimbursed costs incurred, and to be incurred, for response activities at the Site. Under the proposed Consent Decree, defendants agree to undertake remedial work at the Site, to reimburse the United States for all of its past response costs ($912,913.27), and to pay future costs, relating to Operable Unit Three at the Sites.

The Department of Justice will receive for a period of thirty (30) days from the date of this publication comments relating to the Consent Decree. Comments should be addressed to the Assistant Attorney General, Environment and Natural Resources Division, and either emailed to *pubcomment-ees.enrd@usdoj.gov* or mailed to P.O. Box 7611, U.S. Department of Justice, Washington, DC 20044–7611, and should refer to *United States of America* v. *Akzo Nobel Chemicals, Inc.,* D.J. Ref. 90–11–2–912/2.

The Consent Decree may be examined at U.S. EPA Region 4, Atlanta Federal Center, 61 Forsyth Street, Atlanta, Georgia 30303. During the public comment period, the Consent Decree, may also be examined on the following Department of Justice Web site, *http://www.usdoj.gov/enrd/Consent_Decrees.html.* A copy of the Consent Decree may also be obtained by mail from the Consent Decree Library, P.O. Box 7611, U.S. Department of Justice, Washington, DC 20044–7611 or by faxing or emailing a request to Tonia Fleetwood (*tonia.fleetwood@usdoj.gov*), fax no. (202) 514–0097, phone confirmation number (202) 514–1547. In requesting a copy from the Consent Decree Library, please enclose a check in the amount of $12.50 (for the Consent Decree only) and $64.00 for the Consent Decree and all exhibits thereto) (25

and of sections 201.10 and 210.8(c) of the Commission's Rules of Practice and Procedure (19 CFR 201.10, 210.8(c)).

By order of the Commission.
Issued: December 20, 2012.

**Lisa R. Barton,**

*Acting Secretary to the Commission.*

[FR Doc. 2012–31156 Filed 12–27–12; 8:45 am]

**BILLING CODE 7020–02–P**

---

## INTERNATIONAL TRADE COMMISSION

**[Docket No. 2924]**

### Certain Paper Shredders, Certain Processes for Manufacturing or Relating to Same and Certain Products Containing Same and Certain Parts Thereof Notice of Receipt of Complaint; Solicitation of Comments Relating to the Public Interest

**AGENCY:** U.S. International Trade Commission.

**ACTION:** Notice.

**SUMMARY:** Notice is hereby given that the U.S. International Trade Commission has received a complaint entitled *Certain Paper Shredders, Certain Processes for Manufacturing or Relating to Same and Certain Products Containing Same and Certain Parts Thereof,* DN 2924; the Commission is soliciting comments on any public interest issues raised by the complaint or complainant's filing under section 210.8(b) of the Commission's Rules of Practice and Procedure (19 CFR 210.8(b)).

**FOR FURTHER INFORMATION CONTACT:** Lisa R. Barton, Acting Secretary to the Commission, U.S. International Trade Commission, 500 E Street SW., Washington, DC 20436, telephone (202) 205–2000. The public version of the complaint can be accessed on the Commission's electronic docket (EDIS) at *http://edis.usitc.gov,* and will be available for inspection during official business hours (8:45 a.m. to 5:15 p.m.) in the Office of the Secretary, U.S. International Trade Commission, 500 E Street SW., Washington, DC 20436, telephone (202) 205–2000.

General information concerning the Commission may also be obtained by accessing its Internet server (*http:// www.usitc.gov*). The public record for this investigation may be viewed on the Commission's electronic docket (EDIS) at *http://edis.usitc.gov.* Hearing-impaired persons are advised that information on this matter can be obtained by contacting the Commission's TDD terminal on (202) 205–1810.

**SUPPLEMENTARY INFORMATION:** The Commission has received a complaint and a submission pursuant to section 210.8(b) of the Commission's Rules of Practice and Procedure filed on behalf of Fellowes, Inc. and Fellowes Office Products (Suzhou) Co. Ltd. on December 20, 2012. The complaint alleges violations of section 337 of the Tariff Act of 1930 (19 U.S.C. 1337) in the importation into the United States, the sale for importation, and the sale within the United States after importation of certain paper shredders, certain processes for manufacturing or relating to same and certain products containing same and certain parts thereof. The complaint names as respondents New United Co. Group Ltd. of China; Jiangsu New United Office Equipments Co. Ltd. of China; Shenzhen Elite Business Office Equipment Co. Ltd. of China; Elite Business Machines Ltd. of China; New United Office Equipment USA, Inc. of IL; Jiangsu Shinri Machinery Co. Ltd. of China; Zhou Licheng of China; Randall Graves of China; and ''Jessica'' Wang Chongge of China.

Proposed respondents, other interested parties, and members of the public are invited to file comments, not to exceed five (5) pages in length, inclusive of attachments, on any public interest issues raised by the complaint or section 210.8(b) filing. Comments should address whether issuance of the relief specifically requested by the complainant in this investigation would affect the public health and welfare in the United States, competitive conditions in the United States economy, the production of like or directly competitive articles in the United States, or United States consumers.

In particular, the Commission is interested in comments that:

(i) Explain how the articles potentially subject to the requested remedial orders are used in the United States;

(ii) Identify any public health, safety, or welfare concerns in the United States relating to the requested remedial orders;

(iii) Identify like or directly competitive articles that complainant, its licensees, or third parties make in the United States which could replace the subject articles if they were to be excluded;

(iv) Indicate whether complainant, complainant's licensees, and/or third party suppliers have the capacity to replace the volume of articles potentially subject to the requested exclusion order and/or a cease and desist order within a commercially reasonable time; and

(v) Explain how the requested remedial orders would impact United States consumers.

Written submissions must be filed no later than by close of business, eight calendar days after the date of publication of this notice in the **Federal Register.** There will be further opportunities for comment on the public interest after the issuance of any final initial determination in this investigation.

Persons filing written submissions must file the original document electronically on or before the deadlines stated above and submit 8 true paper copies to the Office of the Secretary by noon the next day pursuant to section 210.4(f) of the Commission's Rules of Practice and Procedure (19 CFR 210.4(f)). Submissions should refer to the docket number (''Docket No. 2924'') in a prominent place on the cover page and/or the first page. (*See* Handbook for Electronic Filing Procedures, *http:// www.usitc.gov/secretary/fed_reg_ notices/rules/handbook_on_electronic_ filing.pdf).* Persons with questions regarding filing should contact the Secretary (202–205–2000).

Any person desiring to submit a document to the Commission in confidence must request confidential treatment. All such requests should be directed to the Secretary to the Commission and must include a full statement of the reasons why the Commission should grant such treatment. *See* 19 CFR 201.6. Documents for which confidential treatment by the Commission is properly sought will be treated accordingly. All nonconfidential written submissions will be available for public inspection at the Office of the Secretary and on EDIS.

This action is taken under the authority of section 337 of the Tariff Act of 1930, as amended (19 U.S.C. 1337), and of sections 201.10 and 210.8(c) of the Commission's Rules of Practice and Procedure (19 CFR 201.10, 210.8(c)).

By order of the Commission.
Issued: December 21, 2012.

**Lisa R. Barton,**

*Acting Secretary to the Commission.*

[FR Doc. 2012–31160 Filed 12–27–12; 8:45 am]

**BILLING CODE 7020–02–P**

---

## INTERNATIONAL TRADE COMMISSION

### Summary of Commission Practice Relating to Administrative Protective Orders

**AGENCY:** U.S. International Trade Commission.

**ACTION:** Summary of Commission practice relating to administrative protective orders.

---

**SUMMARY:** Since February 1991, the U.S. International Trade Commission ("Commission") has issued an annual report on the status of its practice with respect to violations of its administrative protective orders ("APOs") under title VII of the Tariff Act of 1930, in response to a direction contained in the Conference Report to the Customs and Trade Act of 1990. Over time, the Commission has added to its report discussions of APO breaches in Commission proceedings other than under title VII and violations of the Commission's rules including the rule on bracketing business proprietary information ("BPI") (the "24-hour rule"), 19 CFR 207.3(c). This notice provides a summary of investigations completed during calendar year 2011 of breaches in proceedings under title VII and section 337 of the Tariff Act of 1930. There were no rules violation investigations completed in 2011. The Commission intends that this report inform representatives of parties to Commission proceedings as to some specific types of APO breaches encountered by the Commission and the corresponding types of actions the Commission has taken.

**FOR FURTHER INFORMATION CONTACT:** Carol McCue Verratti, Esq., Office of the General Counsel, U.S. International Trade Commission, telephone (202) 205–3088. Hearing impaired individuals are advised that information on this matter can be obtained by contacting the Commission's TDD terminal at (202) 205–1810. General information concerning the Commission can also be obtained by accessing its Web site. (*http://www.usitc.gov*).

**SUPPLEMENTARY INFORMATION:** Representatives of parties to investigations or other proceedings conducted under title VII of the Tariff Act of 1930, section 337 of the Tariff Act of 1930, the North American Free Trade Agreement (NAFTA) Article 1904.13, and safeguard-related provisions such as section 202 of the Trade Act of 1974, may enter into APOs that permit them, under strict conditions, to obtain access to BPI (title VII) and confidential business information ("CBI") (safeguard-related provisions and section 337) of other parties. *See, e.g.,* 19 U.S.C. 1677f; 19 CFR 207.7; 19 U.S.C. 1337(n); 19 CFR 210.5, 210.34; 19 U.S.C. 2252(i); 19 CFR 206.17; and 19 U.S.C. 1516a(g)(7)(A); 19 CFR 207.100, *et. seq..* The discussion below describes APO breach investigations that the

Commission has completed during calendar year 2011, including a description of actions taken in response to these breaches.

Since 1991, the Commission has published annually a summary of its actions in response to violations of Commission APOs and the 24-hour rule. *See* 56 FR 4846 (February 6, 1991); 57 FR 12335 (April 9, 1992); 58 FR 21991 (April 26, 1993); 59 FR 16834 (April 8, 1994); 60 FR 24880 (May 10, 1995); 61 FR 21203 (May 9, 1996); 62 FR 13164 (March 19, 1997); 63 FR 25064 (May 6, 1998); 64 FR 23355 (April 30, 1999); 65 FR 30434 (May 11, 2000); 66 FR 27685 (May 18, 2001); 67 FR 39425 (June 7, 2002); 68 FR 28256 (May 23, 2003); 69 FR 29972 (May 26, 2004); 70 FR 42382 (July 25, 2005); 71 FR 39355 (July 12, 2006); 72 FR 50119 (August 30, 2007); 73 FR 51843 (September 5, 2008); 74 FR 54071 (October 21, 2009); 75 FR 54071 (October 27, 2010) and 76 FR 78945 (December 20, 2011). This report does not provide an exhaustive list of conduct that will be deemed to be a breach of the Commission's APOs. APO breach inquiries are considered on a case-by-case basis.

As part of the effort to educate practitioners about the Commission's current APO practice, the Commission Secretary issued in March 2005 a fourth edition of *An Introduction to Administrative Protective Order Practice in Import Injury Investigations* (Pub. No. 3755). This document is available upon request from the Office of the Secretary, U.S. International Trade Commission, 500 E Street SW., Washington, DC 20436, tel. (202) 205–2000 and on the Commission's Web site at *http://www.usitc.gov.*

## I. In General

The current APO form for antidumping and countervailing duty investigations, which was revised in March 2005, requires the applicant to swear that he or she will:

(1) Not divulge any of the BPI disclosed under this APO or otherwise obtained in this investigation and not otherwise available to him or her, to any person other than—

(i) Personnel of the Commission concerned with the investigation,

(ii) The person or agency from whom the BPI was obtained,

(iii) A person whose application for disclosure of BPI under this APO has been granted by the Secretary, and

(iv) Other persons, such as paralegals and clerical staff, who (a) are employed or supervised by and under the direction and control of the authorized applicant or another authorized applicant in the same firm whose

application has been granted; (b) have a need thereof in connection with the investigation; (c) are not involved in competitive decision making for an interested party which is a party to the investigation; and (d) have signed the acknowledgment for clerical personnel in the form attached hereto (the authorized applicant shall also sign such acknowledgment and will be deemed responsible for such persons' compliance with this APO);

(2) Use such BPI solely for the purposes of the above-captioned Commission investigation or for judicial or binational panel review of such Commission investigation;

(3) Not consult with any person not described in paragraph (1) concerning BPI disclosed under this APO or otherwise obtained in this investigation without first having received the written consent of the Secretary and the party or the representative of the party from whom such BPI was obtained;

(4) Whenever materials *e.g.,* documents, computer disks, etc. containing such BPI are not being used, store such material in a locked file cabinet, vault, safe, or other suitable container (N.B.: storage of BPI on so-called hard disk computer media is to be avoided, because mere erasure of data from such media may not irrecoverably destroy the BPI and may result in violation of paragraph C of this APO);

(5) Serve all materials containing BPI disclosed under this APO as directed by the Secretary and pursuant to section 207.7(f) of the Commission's rules;

(6) Transmit each document containing BPI disclosed under this APO:

(i) With a cover sheet identifying the document as containing BPI,

(ii) with all BPI enclosed in brackets and each page warning that the document contains BPI,

(iii) if the document is to be filed by a deadline, with each page marked "Bracketing of BPI not final for one business day after date of filing," and

(iv) if by mail, within two envelopes, the inner one sealed and marked "Business Proprietary Information—To be opened only by [name of recipient]", and the outer one sealed and not marked as containing BPI;

(7) Comply with the provision of this APO and section 207.7 of the Commission's rules;

(8) Make true and accurate representations in the authorized applicant's application and promptly notify the Secretary of any changes that occur after the submission of the application and that affect the representations made in the application

**76520** **Federal Register** / Vol. 77, No. 249 / Friday, December 28, 2012 / Notices

(*e.g.,* change in personnel assigned to the investigation);

(9) Report promptly and confirm in writing to the Secretary any possible breach of this APO; and

(10) Acknowledge that breach of this APO may subject the authorized applicant and other persons to such sanctions or other actions as the Commission deems appropriate, including the administrative sanctions and actions set out in this APO.

The APO further provides that breach of an APO may subject an applicant to:

(1) Disbarment from practice in any capacity before the Commission along with such person's partners, associates, employer, and employees, for up to seven years following publication of a determination that the order has been breached;

(2) Referral to the United States Attorney;

(3) In the case of an attorney, accountant, or other professional, referral to the ethics panel of the appropriate professional association;

(4) Such other administrative sanctions as the Commission determines to be appropriate, including public release of, or striking from the record any information or briefs submitted by, or on behalf of, such person or the party he represents; denial of further access to business proprietary information in the current or any future investigations before the Commission, and issuance of a public or private letter of reprimand; and

(5) Such other actions, including but not limited to, a warning letter, as the Commission determines to be appropriate.

APOs in investigations other than those under title VII contain similar, though not identical, provisions.

Commission employees are not signatories to the Commission's APOs and do not obtain access to BPI through APO procedures. Consequently, they are not subject to the requirements of the APO with respect to the handling of CBI and BPI. However, Commission employees are subject to strict statutory and regulatory constraints concerning BPI and CBI, and face potentially severe penalties for noncompliance. *See* 18 U.S.C. 1905; title 5, U.S. Code; and Commission personnel policies implementing the statutes. Although the Privacy Act (5 U.S.C. 552a) limits the Commission's authority to disclose any personnel action against agency employees, this should not lead the public to conclude that no such actions have been taken.

An important provision of the Commission's title VII and safeguard rules relating to BPI/CBI is the "24-hour" rule. This rule provides that parties have one business day after the deadline for filing documents containing BPI/CBI to file a public version of the document. The rule also permits changes to the bracketing of information in the proprietary version within this one-day period. No changes—other than changes in bracketing—may be made to the proprietary version. The rule was intended to reduce the incidence of APO breaches caused by inadequate bracketing and improper placement of BPI/CBI. The Commission urges parties to make use of the rule. If a party wishes to make changes to a document other than bracketing, such as typographical changes or other corrections, the party must ask for an extension of time to file an amended document pursuant to section 201.14(b)(2) of the Commission's rules.

## II. Investigations of Alleged APO Breaches

Upon finding evidence of an APO breach or receiving information that there is a reason to believe one has occurred, the Commission Secretary notifies relevant offices in the agency that an APO breach investigation has commenced and that an APO breach investigation file has been opened. Upon receiving notification from the Secretary, the Office of the General Counsel ("OGC") prepares a letter of inquiry to be sent to the possible breacher over the Secretary's signature to ascertain the possible breacher's views on whether a breach has occurred.[1] If, after reviewing the response and other relevant information, the Commission determines that a breach has occurred, the Commission often issues a second letter asking the breacher to address the questions of mitigating circumstances and possible sanctions or other actions. The Commission then determines what action to take in response to the breach. In some cases, the Commission determines that, although a breach has occurred, sanctions are not warranted, and therefore finds it unnecessary to issue a second letter concerning what sanctions might be appropriate. Instead, it issues a warning letter to the individual. A warning letter is not considered to be a sanction.

Sanctions for APO violations serve two basic interests: (a) Preserving the confidence of submitters of BPI/CBI that the Commission is a reliable protector of BPI/CBI; and (b) disciplining breachers and deterring future violations. As the Conference Report to the Omnibus Trade and Competitiveness Act of 1988 observed, "[T]he effective enforcement of limited disclosure under administrative protective order depends in part on the extent to which private parties have confidence that there are effective sanctions against violation." H.R. Conf. Rep. No. 576, 100th Cong., 1st Sess. 623 (1988).

The Commission has worked to develop consistent jurisprudence, not only in determining whether a breach has occurred, but also in selecting an appropriate response. In determining the appropriate response, the Commission generally considers mitigating factors such as the unintentional nature of the breach, the lack of prior breaches committed by the breaching party, the corrective measures taken by the breaching party, and the promptness with which the breaching party reported the violation to the Commission. The Commission also considers aggravating circumstances, especially whether persons not under the APO actually read the BPI/CBI. The Commission considers whether there have been prior breaches by the same person or persons in other investigations and multiple breaches by the same person or persons in the same investigation.

The Commission's rules permit an economist or consultant to obtain access to BPI/CBI under the APO in a title VII or safeguard investigation if the economist or consultant is under the direction and control of an attorney under the APO, or if the economist or consultant appears regularly before the Commission and represents an interested party who is a party to the investigation. 19 CFR 207.7(a)(3)(B) and (C); 19 CFR 206.17(a)(3)(B) and (C). Economists and consultants who obtain access to BPI/CBI under the APO under the direction and control of an attorney nonetheless remain individually responsible for complying with the APO. In appropriate circumstances, for example, an economist under the direction and control of an attorney may be held responsible for a breach of the APO by failing to redact APO information from a document that is subsequently filed with the Commission and served as a public document. This is so even though the attorney exercising direction or control over the economist or consultant may also be

---

[1] Procedures for inquiries to determine whether a prohibited act such as a breach has occurred and for imposing sanctions for violation of the provisions of a protective order issued during NAFTA panel or committee proceedings are set out in 19 CFR §§ 207.100–207.120. Those investigations are initially conducted by the Commission's Office of Unfair Import Investigations.

held responsible for the breach of the APO.

The records of Commission investigations of alleged APO breaches in antidumping and countervailing duty cases, section 337 investigations, and safeguard investigations are not publicly available and are exempt from disclosure under the Freedom of Information Act, 5 U.S.C. 552. *See* 19 U.S.C. 1677f(g), 19 U.S.C. 1333(h).

The two types of breaches most frequently investigated by the Commission involve the APO's prohibition on the dissemination of BPI or CBI to unauthorized persons and the APO's requirement that the materials received under the APO be returned or destroyed and that a certificate be filed indicating which action was taken after the termination of the investigation or any subsequent appeals of the Commission's determination. The dissemination of BPI/CBI usually occurs as the result of failure to delete BPI/CBI from public versions of documents filed with the Commission or transmission of proprietary versions of documents to unauthorized recipients. Other breaches have included the failure to bracket properly BPI/CBI in proprietary documents filed with the Commission, the failure to report immediately known violations of an APO, and the failure to adequately supervise non-lawyers in the handling of BPI/CBI.

Occasionally, the Commission conducts APOB investigations that involve members of a law firm or consultants working with a firm who were granted access to APO materials by the firm although they were not APO signatories. In many of these cases, the firm and the person using the BPI mistakenly believed an APO application had been filed for that person. The Commission determined in all of these cases that the person who was a non-signatory, and therefore did not agree to be bound by the APO, could not be found to have breached the APO. Action could be taken against these persons, however, under Commission rule 201.15 (19 CFR 201.15) for good cause shown. In all cases in which action was taken, the Commission decided that the non-signatory was a person who appeared regularly before the Commission and was aware of the requirements and limitations related to APO access and should have verified his or her APO status before obtaining access to and using the BPI. The Commission notes that section 201.15 may also be available to issue sanctions to attorneys or agents in different factual circumstances in which they did not technically breach the APO, but when their actions or inactions did not

demonstrate diligent care of the APO materials even though they appeared regularly before the Commission and were aware of the importance the Commission placed on the care of APO materials.

Counsel have been cautioned to be certain that each authorized applicant files within 60 days of the completion of an import injury investigation or at the conclusion of judicial or binational review of the Commission's determination a certificate that to his or her knowledge and belief all copies of BPI/CBI have been returned or destroyed and no copies of such material have been made available to any person to whom disclosure was not specifically authorized. This requirement applies to each attorney, consultant, or expert in a firm who has been granted access to BPI/CBI. One firm-wide certificate is insufficient. This same information is also being added to notifications sent to new APO applicants.

In addition, attorneys who are signatories to the APO representing clients in a section 337 investigation should send a notice to the Commission if they stop participating in the investigation or the subsequent appeal of the Commission's determination. The notice should inform the Commission about the disposition of CBI obtained under the APO that was in their possession or they could be held responsible for any failure of their former firm to return or destroy the CBI in an appropriate manner.

## III. Specific Investigations

### APO Breach Investigations

#### Case 1

The Commission found that two attorneys and a legal assistant from a law firm breached the APO when they failed to remove business proprietary information (BPI) from the public version of final comments filed on behalf of their clients, who were respondents in a title VII investigation. The Commission issued a private letter of reprimand to all three individuals.

After the law firm filed the public version of its final comments, the Commission staff identified five instances of failure to redact BPI from brackets in that public document. The Commission Secretary notified the firm of that failure to redact and she sent a letter of inquiry to the firm. Two attorneys and a legal assistant provided responses describing their participation in preparation and filing of that public version. The Commission found that they had breached the APO, and allowed additional comments from the

attorneys and legal assistant on mitigating circumstances and their views on the appropriate sanction.

The Commission considered several mitigating circumstances. The record indicated that the breach was unintentional and none of the three individuals had been found in violation of an APO in the two years preceding the breach, the standard period the Commission has considered in sanctions determinations. After the breach was discovered by Commission staff, the firm took immediate steps to cure the breach, including retrieval from counsel who was not a signatory to the APO but upon whom the public version of the final comments had been served. The firm also immediately followed up with Commission staff to assure that the BPI was removed from the Electronic Document Information System (EDIS).

The Commission also took into account some aggravating factors. The breach was discovered by Commission staff and not the law firm. The BPI was available to the public for about a week, including on EDIS, and the document was in fact viewed on EDIS by the public. Also, one law firm which was not on the APO was served the public document containing BPI, thus making it likely that the BPI was read by persons not under the APO. In addition, the firm failed to follow its own procedures for protecting BPI by not using a third attorney to review the redaction of the BPI from the public version of the document.

#### Case 2

The Commission found that an attorney breached the APO by failing to serve all authorized applicants to the APO with written submissions containing business proprietary information, pursuant to the requirements of the APO and Commission Rule 207.7(f). The Commission issued a warning letter to the attorney.

Commission Rule 207.7(f) requires that all written submissions containing business proprietary information be served on all authorized applicants to the APO. The APO requires that all BPI materials be served pursuant to Commission rule 207.7. An attorney representing a respondent submitted foreign producer questionnaire responses to the Commission. In the accompanying cover letter, the attorney indicated that he had served the questionnaire responses on all authorized applicants except for a law firm representing two of the domestic interested parties. The attorney claimed that the firm was engaged in competitive decision making for its

clients and that the information being submitted was a type of information for which there was a clear and compelling need to withhold from disclosure.

Commission staff informed the attorney that he was required to serve the law firm in question by noon the next day or the questionnaires would be rejected. Since the attorney did not do so, the questionnaire responses were rejected.

The Commission considered several mitigating factors. The attorney involved had not been sanctioned for an APO breach within the two year period generally examined by the Commission for purposes of determining sanctions nor had he previously violated the Commission's rules. Moreover, no party was prejudiced by the breach as the attorney later filed the same questionnaire responses and served them on all authorized applicants, including the law firm not previously served.

The Commission also considered the aggravating circumstances that the APO breach was intentional and was caused by the attorney substituting his judgment for the Commission's as to which parties to serve.

Case 3

Attorneys who were APO signatories in two law firms were found by the Commission to have breached the APO in a section 337 investigation by retaining confidential business information (CBI) after the appeal of the investigation had terminated. Two of the attorneys breached the APO by retaining the CBI and by disclosing third party CBI to non-signatories in response to discovery requests in separate district

court litigation. Those two attorneys were issued private letters of reprimand by the Commission and the attorneys who had retained but not disclosed the CBI were issued warning letters. The Commission did not find a violation of the APO by attorneys in several other law firms who were not signatories to the APO but who received the CBI that had been disclosed by the two aforementioned attorneys. They were instead issued letters instructing them to return or destroy the CBI.

With respect to the attorneys who retained and disclosed the CBI, the Commission considered the mitigating circumstances that the breach was unintentional, that the attorneys acted quickly to cure the breach, and that they had not previously breached an APO within the two-year period generally considered by the Commission in determining what sanctions to impose for a breach. The Commission also took into account the aggravating circumstances that the CBI was viewed by unauthorized persons, and that the breach was not discovered by the attorneys or their firm.

With respect to the attorneys who retained but did not disclose the CBI, the Commission considered the mitigating circumstances that the breach was unintentional, that the CBI that they retained was not read by any person not subject to the APO, that their firm moved to remedy the breach expeditiously after being informed of it by the Commission staff, and that this is the only breach in which they had been involved in the two-year period generally examined by the Commission for the purpose of determining sanctions. The Commission also

considered the aggravating circumstances that their firm did not discover the breach and that it appeared that their firm had a policy to retain CBI following any case or investigation.

Issued: December 21, 2012.
By order of the Commission.

**Lisa R. Barton,**
*Acting Secretary to the Commission.*
[FR Doc. 2012–31158 Filed 12–27–12; 8:45 am]
**BILLING CODE 7020–02–P**

# MILLENNIUM CHALLENGE CORPORATION

[MCC FR 12–14]

## Notice of Quarterly Report (July 1, 2012—September 30, 2012)

**AGENCY:** Millennium Challenge Corporation.

**SUMMARY:** The Millennium Challenge Corporation (MCC) is reporting for the quarter July 1, 2012, through September 30, 2012, on assistance provided under section 605 of the Millennium Challenge Act of 2003 (22 U.S.C. 7701 *et seq.*), as amended (the Act), and on transfers or allocations of funds to other federal agencies under section 619(b) of the Act. The following report will be made available to the public by publication in the **Federal Register** and on the Internet Web site of the MCC (*www.mcc.gov*) in accordance with section 612(b) of the Act.

Dated: December 21, 2012.

**T. Charles Cooper,**
*Vice President, Congressional and Public Affairs, Millennium Challenge Corporation.*

| Projects | Obligated | Objective | Cumulative disbursements | Measures[2] |
|---|---|---|---|---|
| | Country: Benin     Year: 2012     Quarter 4 | | Total Obligation: $301,810,356 | |
| | Entity to which the assistance is provided: MCA Benin | | Total Quarterly Disbursements[1]: $81,539 | |
| Access to Financial Services Project. | $15,495,910 | Expand access to financial services. | $15,495,910 | Value of credits granted by micro-finance institutions (MFIs) (at the national level). |
| | | | | Value of savings collected by MFIs (at the national level). |
| | | | | Average share of all outstanding loans with one or more installments 90 days overdue, among MFIs participating in the Challenge Facility. |
| | | | | Operational self-sufficiency of MFIs at the national level. |
| | | | | Institutions receiving grants through the established grant facility. |
| | | | | MFIs inspected by Cellule Supervision Microfinance. |
| Access to Justice Project | $19,383,915 | Improved ability of justice system to enforce contracts and reconcile claims. | $19,383,915 | Average time to enforce a contract. |
| | | | | Percent of firms reporting confidence in the judicial system. |
| | | | | Passage of new legal codes. |

(iv) indicate whether complainant, complainant's licensees, and/or third party suppliers have the capacity to replace the volume of articles potentially subject to the requested exclusion order and/or a cease and desist order within a commercially reasonable time; and

(v) explain how the requested remedial orders would impact United States consumers.

Written submissions must be filed no later than by close of business, eight calendar days after the date of publication of this notice in the **Federal Register**. There will be further opportunities for comment on the public interest after the issuance of any final initial determination in this investigation.

Persons filing written submissions must file the original document electronically on or before the deadlines stated above and submit 8 true paper copies to the Office of the Secretary by noon the next day pursuant to section 210.4(f) of the Commission's Rules of Practice and Procedure (19 CFR 210.4(f)). Submissions should refer to the docket number ("Docket No. 2993") in a prominent place on the cover page and/or the first page. (*See* Handbook for Electronic Filing Procedures, *Electronic Filing Procedures* [4]). Persons with questions regarding filing should contact the Secretary (202–205–2000).

Any person desiring to submit a document to the Commission in confidence must request confidential treatment. All such requests should be directed to the Secretary to the Commission and must include a full statement of the reasons why the Commission should grant such treatment. *See* 19 CFR 201.6. Documents for which confidential treatment by the Commission is properly sought will be treated accordingly. All nonconfidential written submissions will be available for public inspection at the Office of the Secretary and on EDIS [5].

This action is taken under the authority of section 337 of the Tariff Act of 1930, as amended (19 U.S.C. 1337), and of sections 201.10 and 210.8(c) of the Commission's Rules of Practice and Procedure (19 CFR 201.10, 210.8(c)).

By order of the Commission.

---

[4] Handbook for Electronic Filing Procedures: *http://www.usitc.gov/secretary/fed_reg_notices/rules/handbook_on_electronic_filing.pdf*
[5] Electronic Document Information System (EDIS): *http://edis.usitc.gov*

Issued: December 24, 2013.

**William R. Bishop,**
*Supervisory Hearings and Information Officer.*
[FR Doc. 2013–31163 Filed 12–27–13; 8:45 am]
**BILLING CODE 7020–02–P**

---

**INTERNATIONAL TRADE COMMISSION**

**Summary of Commission Practice Relating to Administrative Protective Orders**

**AGENCY:** U.S. International Trade Commission.

**ACTION:** Summary of Commission practice relating to administrative protective orders

**SUMMARY:** Since February 1991, the U.S. International Trade Commission ("Commission") has issued an annual report on the status of its practice with respect to violations of its administrative protective orders ("APOs") under title VII of the Tariff Act of 1930, in response to a direction contained in the Conference Report to the Customs and Trade Act of 1990. Over time, the Commission has added to its report discussions of APO breaches in Commission proceedings other than under title VII and violations of the Commission's rules including the rule on bracketing business proprietary information ("BPI") (the "24-hour rule"), 19 CFR 207.3(c). This notice provides a summary of breach investigations completed during calendar year 2012. This summary addresses two proceedings under section 337 of the Tariff Act of 1930. There were no breach investigations in title VII proceedings or rules violation investigations completed in 2012. The Commission intends that this report inform representatives of parties to Commission proceedings as to some specific types of APO breaches encountered by the Commission and the corresponding types of actions the Commission has taken.

**FOR FURTHER INFORMATION CONTACT:** Carol McCue Verratti, Esq., Office of the General Counsel, U.S. International Trade Commission, telephone (202) 205–3088. Hearing impaired individuals are advised that information on this matter can be obtained by contacting the Commission's TDD terminal at (202) 205–1810. General information concerning the Commission can also be obtained by accessing its Web site (*http://www.usitc.gov*).

**SUPPLEMENTARY INFORMATION:** Representatives of parties to investigations or other proceedings conducted under title VII of the Tariff Act of 1930, section 337 of the Tariff Act of 1930, the North American Free Trade Agreement (NAFTA) Article 1904.13, and safeguard-related provisions such as section 202 of the Trade Act of 1974, may enter into APOs that permit them, under strict conditions, to obtain access to BPI (title VII) and confidential business information ("CBI") (safeguard-related provisions and section 337) of other parties. *See, e.g.,* 19 U.S.C. 1677f; 19 CFR 207.7; 19 U.S.C. 1337(n); 19 CFR 210.5, 210.34; 19 U.S.C. 2252(i); 19 CFR 206.17; and 19 U.S.C. 1516a(g)(7)(A); 19 CFR 207.100, *et seq.* The discussion below describes APO breach investigations that the Commission has completed during calendar year 2012, including a description of actions taken in response to these breaches.

Since 1991, the Commission has published annually a summary of its actions in response to violations of Commission APOs and the 24-hour rule. *See* 56 FR 4846 (February 6, 1991); 57 FR 12335 (April 9, 1992); 58 FR 21991 (April 26, 1993); 59 FR 16834 (April 8, 1994); 60 FR 24880 (May 10, 1995); 61 FR 21203 (May 9, 1996); 62 FR 13164 (March 19, 1997); 63 FR 25064 (May 6, 1998); 64 FR 23355 (April 30, 1999); 65 FR 30434 (May 11, 2000); 66 FR 27685 (May 18, 2001); 67 FR 39425 (June 7, 2002); 68 FR 28256 (May 23, 2003); 69 FR 29972 (May 26, 2004); 70 FR 42382 (July 25, 2005); 71 FR 39355 (July 12, 2006); 72 FR 50119 (August 30, 2007); 73 FR 51843 (September 5, 2008); 74 FR 54071 (October 21, 2009); 75 FR 54071 (October 27, 2010), 76 FR 78945 (December 20, 2011), and 77 FR 76518 (December 28, 2012). This report does not provide an exhaustive list of conduct that will be deemed to be a breach of the Commission's APOs. APO breach inquiries are considered on a case-by-case basis. As part of the effort to educate practitioners about the Commission's current APO practice, the Commission Secretary issued in March 2005 a fourth edition of *An Introduction to Administrative Protective Order Practice in Import Injury Investigations* (Pub. No. 3755). This document is available upon request from the Office of the Secretary, U.S. International Trade Commission, 500 E Street SW., Washington, DC 20436, tel. (202) 205–2000 and on the Commission's Web site at *http://www.usitc.gov*.

**I. In General**

The current APO form for antidumping and countervailing duty investigations, which was revised in March 2005, requires the applicant to swear that he or she will:

**79482** **Federal Register** / Vol. 78, No. 250 / Monday, December 30, 2013 / Notices

(1) Not divulge any of the BPI disclosed under this APO or otherwise obtained in this investigation and not otherwise available to him or her, to any person other than—

(i) Personnel of the Commission concerned with the investigation,

(ii) The person or agency from whom the BPI was obtained,

(iii) A person whose application for disclosure of BPI under this APO has been granted by the Secretary, and

(iv) Other persons, such as paralegals and clerical staff, who (a) are employed or supervised by and under the direction and control of the authorized applicant or another authorized applicant in the same firm whose application has been granted; (b) have a need thereof in connection with the investigation; (c) are not involved in competitive decision making for an interested party which is a party to the investigation; and (d) have signed the acknowledgment for clerical personnel in the form attached hereto (the authorized applicant shall also sign such acknowledgment and will be deemed responsible for such persons' compliance with this APO);

(2) Use such BPI solely for the purposes of the above-captioned Commission investigation or for judicial or binational panel review of such Commission investigation;

(3) Not consult with any person not described in paragraph (1) concerning BPI disclosed under this APO or otherwise obtained in this investigation without first having received the written consent of the Secretary and the party or the representative of the party from whom such BPI was obtained;

(4) Whenever materials *e.g.,* documents, computer disks, etc. containing such BPI are not being used, store such material in a locked file cabinet, vault, safe, or other suitable container (N.B.: storage of BPI on so-called hard disk computer media is to be avoided, because mere erasure of data from such media may not irrecoverably destroy the BPI and may result in violation of paragraph C of this APO);

(5) Serve all materials containing BPI disclosed under this APO as directed by the Secretary and pursuant to section 207.7(f) of the Commission's rules;

(6) Transmit each document containing BPI disclosed under this APO:

(i) with a cover sheet identifying the document as containing BPI,

(ii) with all BPI enclosed in brackets and each page warning that the document contains BPI,

(iii) if the document is to be filed by a deadline, with each page marked ''Bracketing of BPI not final for one business day after date of filing,'' and

(iv) if by mail, within two envelopes, the inner one sealed and marked ''Business Proprietary Information—To be opened only by [name of recipient]'', and the outer one sealed and not marked as containing BPI;

(7) Comply with the provision of this APO and section 207.7 of the Commission's rules;

(8) Make true and accurate representations in the authorized applicant's application and promptly notify the Secretary of any changes that occur after the submission of the

application and that affect the representations made in the application (*e.g.,* change in personnel assigned to the investigation);

(9) Report promptly and confirm in writing to the Secretary any possible breach of this APO; and

(10) Acknowledge that breach of this APO may subject the authorized applicant and other persons to such sanctions or other actions as the Commission deems appropriate, including the administrative sanctions and actions set out in this APO.

The APO further provides that breach of an APO may subject an applicant to:

(1) Disbarment from practice in any capacity before the Commission along with such person's partners, associates, employer, and employees, for up to seven years following publication of a determination that the order has been breached;

(2) Referral to the United States Attorney;

(3) In the case of an attorney, accountant, or other professional, referral to the ethics panel of the appropriate professional association;

(4) Such other administrative sanctions as the Commission determines to be appropriate, including public release of, or striking from the record any information or briefs submitted by, or on behalf of, such person or the party he represents; denial of further access to business proprietary information in the current or any future investigations before the Commission, and issuance of a public or private letter of reprimand; and

(5) Such other actions, including but not limited to, a warning letter, as the Commission determines to be appropriate.

APOs in investigations other than those under title VII contain similar, though not identical, provisions.

Commission employees are not signatories to the Commission's APOs and do not obtain access to BPI through APO procedures. Consequently, they are not subject to the requirements of the APO with respect to the handling of CBI and BPI. However, Commission employees are subject to strict statutory and regulatory constraints concerning BPI and CBI, and face potentially severe penalties for noncompliance. *See* 18 U.S.C. 1905; title 5, U.S. Code; and Commission personnel policies implementing the statutes. Although the Privacy Act (5 U.S.C. 552a) limits the Commission's authority to disclose any personnel action against agency employees, this should not lead the public to conclude that no such actions have been taken.

## II. Investigations of Alleged APO Breaches

Upon finding evidence of an APO breach or receiving information that there is a reason to believe one has occurred, the Commission Secretary notifies relevant offices in the agency that an APO breach investigation has

commenced and that an APO breach investigation file has been opened. Upon receiving notification from the Secretary, the Office of the General Counsel (''OGC'') prepares a letter of inquiry to be sent to the possible breacher over the Secretary's signature to ascertain the possible breacher's views on whether a breach has occurred.[1] If, after reviewing the response and other relevant information, the Commission determines that a breach has occurred, the Commission often issues a second letter asking the breacher to address the questions of mitigating circumstances and possible sanctions or other actions. The Commission then determines what action to take in response to the breach. In some cases, the Commission determines that, although a breach has occurred, sanctions are not warranted, and therefore finds it unnecessary to issue a second letter concerning what sanctions might be appropriate. Instead, it issues a warning letter to the individual. A warning letter is not considered to be a sanction.

Sanctions for APO violations serve two basic interests: (a) Preserving the confidence of submitters of BPI/CBI that the Commission is a reliable protector of BPI/CBI; and (b) disciplining breachers and deterring future violations. As the Conference Report to the Omnibus Trade and Competitiveness Act of 1988 observed, ''[T]he effective enforcement of limited disclosure under administrative protective order depends in part on the extent to which private parties have confidence that there are effective sanctions against violation.'' H.R. Conf. Rep. No. 576, 100th Cong., 1st Sess. 623 (1988).

The Commission has worked to develop consistent jurisprudence, not only in determining whether a breach has occurred, but also in selecting an appropriate response. In determining the appropriate response, the Commission generally considers mitigating factors such as the unintentional nature of the breach, the lack of prior breaches committed by the breaching party, the corrective measures taken by the breaching party, and the promptness with which the breaching party reported the violation to the Commission. The Commission also considers aggravating circumstances, especially whether persons not under

---

[1] Procedures for inquiries to determine whether a prohibited act such as a breach has occurred and for imposing sanctions for violation of the provisions of a protective order issued during NAFTA panel or committee proceedings are set out in 19 CFR 207.100–207.120. Those investigations are initially conducted by the Commission's Office of Unfair Import Investigations.

the APO actually read the BPI/CBI. The Commission considers whether there have been prior breaches by the same person or persons in other investigations and multiple breaches by the same person or persons in the same investigation.

The Commission's rules permit an economist or consultant to obtain access to BPI/CBI under the APO in a title VII or safeguard investigation if the economist or consultant is under the direction and control of an attorney under the APO, or if the economist or consultant appears regularly before the Commission and represents an interested party who is a party to the investigation. 19 CFR 207.7(a)(3)(B) and (C); 19 CFR 206.17(a)(3)(B) and (C). Economists and consultants who obtain access to BPI/CBI under the APO under the direction and control of an attorney nonetheless remain individually responsible for complying with the APO. In appropriate circumstances, for example, an economist under the direction and control of an attorney may be held responsible for a breach of the APO by failing to redact APO information from a document that is subsequently filed with the Commission and served as a public document. This is so even though the attorney exercising direction or control over the economist or consultant may also be held responsible for the breach of the APO.

The records of Commission investigations of alleged APO breaches in antidumping and countervailing duty cases, section 337 investigations, and safeguard investigations are not publicly available and are exempt from disclosure under the Freedom of Information Act, 5 U.S.C. 552. *See* 19 U.S.C. 1677f(g), 19 U.S.C. 1333(h).

The two types of breaches most frequently investigated by the Commission involve the APO's prohibition on the dissemination of BPI or CBI to unauthorized persons and the APO's requirement that the materials received under the APO be returned or destroyed and that a certificate be filed indicating which action was taken after the termination of the investigation or any subsequent appeals of the Commission's determination. The dissemination of BPI/CBI usually occurs as the result of failure to delete BPI/CBI from public versions of documents filed with the Commission or transmission of proprietary versions of documents to unauthorized recipients. Other breaches have included the failure to bracket properly BPI/CBI in proprietary documents filed with the Commission, the failure to report immediately known violations of an APO, and the failure to

adequately supervise non-lawyers in the handling of BPI/CBI.

Occasionally, the Commission conducts APOB investigations that involve members of a law firm or consultants working with a firm who were granted access to APO materials by the firm although they were not APO signatories. In many of these cases, the firm and the person using the BPI mistakenly believed an APO application had been filed for that person. The Commission determined in all of these cases that the person who was a non-signatory, and therefore did not agree to be bound by the APO, could not be found to have breached the APO. Action could be taken against these persons, however, under Commission rule 201.15 (19 CFR 201.15) for good cause shown. In all cases in which action was taken, the Commission decided that the non-signatory was a person who appeared regularly before the Commission and was aware of the requirements and limitations related to APO access and should have verified his or her APO status before obtaining access to and using the BPI. The Commission notes that section 201.15 may also be available to issue sanctions to attorneys or agents in different factual circumstances in which they did not technically breach the APO, but when their actions or inactions did not demonstrate diligent care of the APO materials even though they appeared regularly before the Commission and were aware of the importance the Commission placed on the care of APO materials.

Counsel participating in Commission investigations have reported to the Commission potential breaches involving the electronic transmission of public versions of documents. In these cases, the document transmitted appears to be a public document with BPI or CBI omitted from brackets. However, the confidential information is actually retrievable by manipulating codes in software. The Commission has found that the electronic transmission of a public document containing BPI or CBI in a recoverable form was a breach of the APO.

Counsel have been cautioned to be certain that each authorized applicant files within 60 days of the completion of an import injury investigation or at the conclusion of judicial or binational review of the Commission's determination a certificate that to his or her knowledge and belief all copies of BPI/CBI have been returned or destroyed and no copies of such material have been made available to any person to whom disclosure was not specifically authorized. This

requirement applies to each attorney, consultant, or expert in a firm who has been granted access to BPI/CBI. One firm-wide certificate is insufficient.

In addition, attorneys who are signatories to the APO representing clients in a section 337 investigation should send a notice to the Commission if they stop participating in the investigation or the subsequent appeal of the Commission's determination. The notice should inform the Commission about the disposition of CBI obtained under the APO that was in their possession or they could be held responsible for any failure of their former firm to return or destroy the CBI in an appropriate manner.

### III. Specific Investigations

*APO Breach Investigations*

*Case 1:* Two attorneys and a translator for a respondent breached the APO in a section 337 investigation when they discussed information with their client that included CBI belonging to the complainant. The discussions were based on draft rebuttal statements, drafted by the lead attorney from confidential witness statements, and used by the second attorney and the translator in their discussions with the client. The lead attorney received a private letter of reprimand; the second attorney and the translator received warning letters.

In reaching its decision about sanctions, the Commission considered the mitigating factors that the lawyers and the translator had not been found to have violated a Commission APO in the past two years and that the breach had already been sanctioned by the presiding administrative law judge by removing the rebuttal statements from the record of the section 337 investigation.

A private letter of reprimand was issued to the lead attorney because that attorney prepared the draft rebuttal statements which contained CBI and represented to the second attorney and the translator that all CBI had been redacted. The second attorney and the translator, relying on the representation of the lead attorney that all CBI had been redacted from the rebuttal statements, used the information in discussions with officials of their client, persons who were not authorized to have access to the CBI. Moreover, the lead attorney unilaterally determined that the CBI included in the rebuttal statements was not or should not have been labeled confidential. The Commission found this to be an aggravating factor since it circumvented

the appropriate procedure to challenge the redaction of public information.

Warning letters were issued to the second attorney and to the translator. Although the Commission found that unauthorized persons had access to CBI, it found among other mitigating factors that this attorney and the translator had relied upon the representation of the first attorney that all CBI had been redacted from the draft rebuttal statements.

*Case 2:* Two attorneys breached the APO in an appeal of the Commission's final determination in a section 337 investigation, before the U.S. Court of Appeals for the Federal Circuit, when they disclosed CBI in a publicly filed document. The attorneys each received warning letters.

Several mitigating factors were present. The attorneys immediately remedied the breach of the APO, before any member of the public viewed the CBI. Neither attorney had previously committed an APO breach in the past two years.

Although the Commission noted an aggravating factor in that the discovery of the breach was by a person other than the breacher, the Commission did not find any significant aggravating circumstances.

Issued: December 24, 2013.

By order of the Commission.

**William R. Bishop,**

*Supervisory Hearing and Information Officer.*

[FR Doc. 2013–31202 Filed 12–27–13; 8:45 am]

**BILLING CODE 7020–02–P**

---

# DEPARTMENT OF JUSTICE

**Notice of Lodging of Proposed Consent Decree Under the Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA"), the Clean Water Act ("CWA"), and the Missouri Rev. Stat. of the Missouri Clean Water Law**

On December 20, 2013, the Department of Justice lodged a proposed Consent Decree with the United States District Court for the Eastern District of Missouri, Southeast Division, in the lawsuit entitled *United States of America and the State of Missouri* v. *Teck American, Incorporated and DII Industries, LLC,* Civil Action 1:13–cv– 00188–LMB.

This is a civil action for the recovery of damages, for injury to, destruction and loss of use of natural resources and their services resulting from the release and threat of a release of hazardous substances by Defendants Teck American, Incorporated and DII

Industries, LLC at and from the former Magmont Mine and Mill in Bixby, Missouri, in the Viburnum Trend in Southeast Missouri.

The publication of this notice opens a period for public comment on the Proposed Consent Decree. The Department of Justice will receive comments concerning the settlement for a period of thirty (30) days from the date of publication of this notice. Comments should be addressed to the Assistant Attorney General, Environment and Natural Resources Division and should refer to *United States of America and the State of Missouri* v. *Teck American, Incorporated and DII Industries, LLC,* 1:13–cv–00188–LMB, Department of Justice # 90–11–3–09424.

Comments may be submitted either by email or by mail:

| To submit comments: | Send them to: |
|---|---|
| By e-mail .................... | pubcomment-ees.enrd@ usdoj.gov. |
| By mail ...................... | Assistant Attorney General, U.S. DOJ—ENRD, P.O. Box 7611, Washington, DC 20044– 7611. |

During the public comment period, the Consent Decree may be examined and downloaded at this Justice Department Web site: *http:// www.usdoj.gov/enrd/Consent_ Decrees.html.* We will provide a paper copy of the Consent Decree upon written request and payment of reproduction costs. Please mail your request and payment to: Consent Decree Library, U.S. DOJ—ENRD, P.O. Box 7611, Washington, DC 20044–7611.

Please enclose a check or money order for $5.50 (25 cents per page reproduction cost) payable to the United States Treasury.

**Susan M. Akers,**

*Assistant Section Chief, Environmental Enforcement Section, Environment and Natural Resources Division.*

[FR Doc. 2013–31124 Filed 12–27–13; 8:45 am]

**BILLING CODE 4410–15–P**

---

# DEPARTMENT OF JUSTICE

**Notice of Lodging of Proposed Consent Decree Under the Clean Water Act**

On December 24, 2013, the Department of Justice lodged a proposed Consent Decree with the United States District Court for the Southern District of Indiana in the lawsuit entitled *United States of America and the State of*

*Indiana* v. *City of Crawfordsville, Montgomery County, Indiana* 1:13–cv– 1964.

The complaint in this matter alleges that the City of Crawfordsville ("City") has violated the Clean Water Act, because discharges from the City's wastewater treatment plant have violated conditions of the National Pollutant Discharge Elimination System permit ("Permit") issued by the Indiana Department of Environmental Management. The Permit imposes effluent limitations on copper and other pollutants and includes requirements for proper operation, maintenance, and monitoring of the treatment plant. The Consent Decree requires the City to undertake general improvements at the treatment plant, including measures involving the pretreatment of wastewater. The Consent Decree also requires the City to pay a total penalty of $96,000, to be split evenly between the State and the federal government.

The publication of this notice opens a period for public comment on the Consent Decree. Comments should be addressed to the Assistant Attorney General, Environment and Natural Resources Division, and should refer to *United States of America and the State of Indiana* v. *City of Crawfordsville, Montgomery County, Indiana,* D.J. Ref. No. 90–5–1–1–09648.

All comments must be submitted no later than thirty (30) days after the publication date of this notice. Comments may be submitted either by email or by mail:

| To submit comments: | Send them to: |
|---|---|
| By e-mail ...... | pubcomment-ees.enrd@ usdoj.gov. |
| By mail ......... | Acting Assistant Attorney General, U.S. DOJ—ENRD, P.O. Box 7611, Washington, DC 20044–7611. |

During the public comment period, the Consent Decree may be examined and downloaded at this Justice Department Web site: *http:// www.usdoj.gov/enrd/Consent_ Decrees.html.* We will provide a paper copy of the Consent Decree upon written request and payment of reproduction costs. Please mail your request and payment to: Consent Decree Library, U.S. DOJ—ENRD, P.O. Box 7611, Washington, DC 20044–7611.

Please enclose a check or money order for $10.75 (25 cents per page

**Authority:** The authority for institution of this investigation is contained in section 337 of the Tariff Act of 1930, as amended, and in section 210.10 of the Commission's Rules of Practice and Procedure, 19 CFR 210.10 (2014).

By order of the Commission.

Issued: January 8, 2015.

Lisa R. Barton,

*Secretary to the Commission.*

[FR Doc. 2015–00325 Filed 1–12–15; 8:45 am]

**BILLING CODE 7020–02–P**

---

**INTERNATIONAL TRADE COMMISSION**

**Summary of Commission Practice Relating to Administrative Protective Orders**

**AGENCY:** U.S. International Trade Commission.

**ACTION:** Summary of Commission practice relating to administrative protective orders.

**SUMMARY:** Since February 1991, the U.S. International Trade Commission ("Commission") has issued an annual report on the status of its practice with respect to violations of its administrative protective orders ("APOs") under title VII of the Tariff Act of 1930, in response to a direction contained in the Conference Report to the Customs and Trade Act of 1990. Over time, the Commission has added to its report discussions of APO breaches in Commission proceedings other than under title VII and violations of the Commission's rules including the rule on bracketing business proprietary information ("BPI") (the "24-hour rule"), 19 CFR 207.3(c). This notice provides a summary of breach investigations completed during calendar year 2013. This summary addresses four proceedings under section 337 of the Tariff Act of 1930. There were no breach investigations in title VII proceedings or rules violation investigations completed in 2013. The Commission intends that this report inform representatives of parties to Commission proceedings as to some specific types of APO breaches encountered by the Commission and the corresponding types of actions the Commission has taken.

**FOR FURTHER INFORMATION CONTACT:** Carol McCue Verratti, Esq., Office of the General Counsel, U.S. International Trade Commission, telephone (202) 205–3088. Hearing impaired individuals are advised that information on this matter can be obtained by contacting the Commission's TDD terminal at (202) 205–1810. General information

concerning the Commission can also be obtained by accessing its Web site (*http://www.usitc.gov*).

**SUPPLEMENTARY INFORMATION:** Representatives of parties to investigations or other proceedings conducted under title VII of the Tariff Act of 1930, section 337 of the Tariff Act of 1930, the North American Free Trade Agreement (NAFTA) Article 1904.13, and safeguard-related provisions such as sections 202 of the Trade Act of 1974, may enter into APOs that permit them, under strict conditions, to obtain access to BPI (title VII) and confidential business information ("CBI") (safeguard-related provisions and section 337) of other parties or non-parties. *See, e.g.,* 19 U.S.C. 1677f; 19 CFR 207.7; 19 U.S.C. 1337(n); 19 CFR 210.5, 210.34; 19 U.S.C. 2252(i); 19 CFR 206.17; and 19 U.S.C. 1516a(g)(7)(A); 19 CFR 207.100, *et. seq.* The discussion below describes APO breach investigations that the Commission has completed during calendar year 2013, including a description of actions taken in response to these breaches.

Since 1991, the Commission has published annually a summary of its actions in response to violations of Commission APOs and the 24-hour rule. *See* 56 FR 4846 (February 6, 1991); 57 FR 12335 (April 9, 1992); 58 FR 21991 (April 26, 1993); 59 FR 16834 (April 8, 1994); 60 FR 24880 (May 10, 1995); 61 FR 21203 (May 9, 1996); 62 FR 13164 (March 19, 1997); 63 FR 25064 (May 6, 1998); 64 FR 23355 (April 30, 1999); 65 FR 30434 (May 11, 2000); 66 FR 27685 (May 18, 2001); 67 FR 39425 (June 7, 2002); 68 FR 28256 (May 23, 2003); 69 FR 29972 (May 26, 2004); 70 FR 42382 (July 25, 2005); 71 FR 39355 (July 12, 2006); 72 FR 50119 (August 30, 2007); 73 FR 51843 (September 5, 2008); 74 *FR* 54071 (October 21, 2009); 75 FR 54071 (October 27, 2010), 76 FR 78945 (December 20, 2011), 77 FR 76518 (December 28, 2012), and 78 FR 79481 (December 30, 2013). This report does not provide an exhaustive list of conduct that will be deemed to be a breach of the Commission's APOs. APO breach inquiries are considered on a case-by-case basis.

As part of the effort to educate practitioners about the Commission's current APO practice, the Commission Secretary issued in March 2005 a fourth edition of *An Introduction to Administrative Protective Order Practice in Import Injury Investigations* (Pub. No. 3755). This document is available upon request from the Office of the Secretary, U.S. International Trade Commission, 500 E Street SW., Washington, DC 20436, tel. (202) 205–2000 and on the

Commission's Web site at *http://www.usitc.gov.*

**I. In General**

*A. Antidumping and Countervailing Duty Investigations*

The current APO form for antidumping and countervailing duty investigations, which was revised in March 2005, requires the applicant to swear that he or she will:

(1) Not divulge any of the BPI disclosed under this APO or otherwise obtained in this investigation and not otherwise available to him or her, to any person other than—

(i) Personnel of the Commission concerned with the investigation,

(ii) The person or agency from whom the BPI was obtained,

(iii) A person whose application for disclosure of BPI under this APO has been granted by the Secretary, and

(iv) Other persons, such as paralegals and clerical staff, who (a) are employed or supervised by and under the direction and control of the authorized applicant or another authorized applicant in the same firm whose application has been granted; (b) have a need thereof in connection with the investigation; (c) are not involved in competitive decision making for an interested party which is a party to the investigation; and (d) have signed the acknowledgment for clerical personnel in the form attached hereto (the authorized applicant shall also sign such acknowledgment and will be deemed responsible for such persons' compliance with this APO);

(2) Use such BPI solely for the purposes of the above-captioned Commission investigation or for judicial or binational panel review of such Commission investigation;

(3) Not consult with any person not described in paragraph (1) concerning BPI disclosed under this APO or otherwise obtained in this investigation without first having received the written consent of the Secretary and the party or the representative of the party from whom such BPI was obtained;

(4) Whenever materials *e.g.,* documents, computer disks, etc. containing such BPI are not being used, store such material in a locked file cabinet, vault, safe, or other suitable container (N.B.: Storage of BPI on so-called hard disk computer media is to be avoided, because mere erasure of data from such media may not irrecoverably destroy the BPI and may result in violation of paragraph C of this APO);

(5) Serve all materials containing BPI disclosed under this APO as directed by

the Secretary and pursuant to section 207.7(f) of the Commission's rules;

(6) Transmit each document containing BPI disclosed under this APO:

(i) With a cover sheet identifying the document as containing BPI,

(ii) with all BPI enclosed in brackets and each page warning that the document contains BPI,

(iii) if the document is to be filed by a deadline, with each page marked "Bracketing of BPI not final for one business day after date of filing," and

(iv) if by mail, within two envelopes, the inner one sealed and marked "Business Proprietary Information—To be opened only by [name of recipient]", and the outer one sealed and not marked as containing BPI;

(7) Comply with the provision of this APO and section 207.7 of the Commission's rules;

(8) Make true and accurate representations in the authorized applicant's application and promptly notify the Secretary of any changes that occur after the submission of the application and that affect the representations made in the application (*e.g.,* change in personnel assigned to the investigation);

(9) Report promptly and confirm in writing to the Secretary any possible breach of this APO; and

(10) Acknowledge that breach of this APO may subject the authorized applicant and other persons to such sanctions or other actions as the Commission deems appropriate, including the administrative sanctions and actions set out in this APO.

The APO further provides that breach of an APO may subject an applicant to:

(1) Disbarment from practice in any capacity before the Commission along with such person's partners, associates, employer, and employees, for up to seven years following publication of a determination that the order has been breached;

(2) Referral to the United States Attorney;

(3) In the case of an attorney, accountant, or other professional, referral to the ethics panel of the appropriate professional association;

(4) Such other administrative sanctions as the Commission determines to be appropriate, including public release of, or striking from the record any information or briefs submitted by, or on behalf of, such person or the party he represents; denial of further access to business proprietary information in the current or any future investigations before the Commission, and issuance of a public or private letter of reprimand; and

(5) Such other actions, including but not limited to, a warning letter, as the Commission determines to be appropriate.

APOs in safeguard investigations contain similar though not identical provisions.

*B. Section 337 Investigations*

The APOs in section 337 investigations differ from those in title VII investigations as there is no set form and provisions may differ depending on the investigation and the presiding administrative law judge. However, in practice, the provisions are often quite similar. Any person seeking access to CBI during a section 337 investigation including outside counsel for parties to the investigation, secretarial and support personnel assisting such counsel, and technical experts and their staff who are employed for the purposes of the investigation is required to read the APO, agree to its terms by letter filed with the Secretary of the Commission indicating that he agrees to be bound by the terms of the Order, agree not to reveal CBI to anyone other than another person permitted access by the Order, and agree to utilize the CBI solely for the purposes of that investigation.

In general, an APO in a section 337 investigation will define what kind of information is CBI and direct how CBI is to be designated and protected. The APO will state what persons will have access to the CBI and which of those persons must sign onto the APO. The APO will provide instructions on how CBI is to be maintained and protected by labeling documents and filing transcripts under seal. It will provide protections for the suppliers of CBI by notifying them of a Freedom of Information Act request for the CBI and providing a procedure for the supplier to take action to prevent the release of the information. There are provisions for disputing the designation of CBI and a procedure for resolving such disputes. Under the APO, suppliers of CBI are given the opportunity to object to the release of the CBI to a proposed expert. The APO requires a person who discloses CBI, other than in a manner authorized by the APO, to provide all pertinent facts to the supplier of the CBI and to the administrative law judge and to make every effort to prevent further disclosure. The APO requires all parties to the APO to either return to the suppliers or destroy the originals and all copies of the CBI obtained during the investigation.

The Commission's regulations provide for certain sanctions to be imposed if the APO is violated by a person subject to its restrictions. The names of the persons being investigated for violating an APO are kept confidential unless the sanction imposed is a public letter of reprimand. 19 CFR 210.34(c)(1). The possible sanctions are:

1. An official reprimand by the Commission.

2. Disqualification from or limitation of further participation in a pending investigation.

3. Temporary or permanent disqualification from practicing in any capacity before the Commission pursuant to 19 CFR 201.15(a).

4. Referral of the facts underlying the violation to the appropriate licensing authority in the jurisdiction in which the individual is licensed to practice.

5. Making adverse inferences and rulings against a party involved in the violation of the APO or such other action that may be appropriate. 19 CFR 210.34(c)(3).

Commission employees are not signatories to the Commission's APOs and do not obtain access to BPI through APO procedures. Consequently, they are not subject to the requirements of the APO with respect to the handling of CBI and BPI. However, Commission employees are subject to strict statutory and regulatory constraints concerning BPI and CBI, and face potentially severe penalties for noncompliance. *See* 18 U.S.C. 1905; title 5, U.S. Code; and Commission personnel policies implementing the statutes. Although the Privacy Act (5 U.S.C. 552a) limits the Commission's authority to disclose any personnel action against agency employees, this should not lead the public to conclude that no such actions have been taken.

**II. Investigations of Alleged APO Breaches**

Upon finding evidence of an APO breach or receiving information that there is a reason to believe one has occurred, the Commission Secretary notifies relevant offices in the agency that an APO breach investigation has commenced and that an APO breach investigation file has been opened. Upon receiving notification from the Secretary, the Office of the General Counsel ("OGC") prepares a letter of inquiry to be sent to the possible breacher over the Secretary's signature to ascertain the facts and obtain the possible breacher's views on whether a breach has occurred.[1] If, after reviewing

---

[1] Procedures for inquiries to determine whether a prohibited act such as a breach has occurred and for imposing sanctions for violation of the provisions of a protective order issued during NAFTA panel or committee proceedings are set out
Continued

the response and other relevant information, the Commission determines that a breach has occurred, the Commission often issues a second letter asking the breacher to address the questions of mitigating circumstances and possible sanctions or other actions. The Commission then determines what action to take in response to the breach. In some cases, the Commission determines that, although a breach has occurred, sanctions are not warranted, and therefore finds it unnecessary to issue a second letter concerning what sanctions might be appropriate. Instead, it issues a warning letter to the individual. A warning letter is not considered to be a sanction. However, a warning letter is considered in a subsequent APO breach investigation.

Sanctions for APO violations serve three basic interests: (a) Preserving the confidence of submitters of BPI/CBI that the Commission is a reliable protector of BPI/CBI; (b) disciplining breachers; and (c) deterring future violations. As the Conference Report to the Omnibus Trade and Competitiveness Act of 1988 observed, ''[T]he effective enforcement of limited disclosure under administrative protective order depends in part on the extent to which private parties have confidence that there are effective sanctions against violation.'' H.R. Conf. Rep. No. 576, 100th Cong., 1st Sess. 623 (1988).

The Commission has worked to develop consistent jurisprudence, not only in determining whether a breach has occurred, but also in selecting an appropriate response. In determining the appropriate response, the Commission generally considers mitigating factors such as the unintentional nature of the breach, the lack of prior breaches committed by the breaching party, the corrective measures taken by the breaching party, and the promptness with which the breaching party reported the violation to the Commission. The Commission also considers aggravating circumstances, especially whether persons not under the APO actually read the BPI/CBI. The Commission considers whether there have been prior breaches by the same person or persons in other investigations and multiple breaches in the same investigation.

The Commission's rules permit an economist or consultant to obtain access to BPI/CBI under the APO in a title VII or safeguard investigation if the economist or consultant is under the

direction and control of an attorney under the APO, or if the economist or consultant appears regularly before the Commission and represents an interested party who is a party to the investigation. 19 CFR 207.7(a)(3)(B) and (C); 19 CFR 206.17(a)(3)(B) and (C). Economists and consultants who obtain access to BPI/CBI under the APO under the direction and control of an attorney nonetheless remain individually responsible for complying with the APO. In appropriate circumstances, for example, an economist under the direction and control of an attorney may be held responsible for a breach of the APO by failing to redact APO information from a document that is subsequently filed with the Commission and served as a public document. This is so even though the attorney exercising direction or control over the economist or consultant may also be held responsible for the breach of the APO. In section 337 investigations, technical experts and their staff who are employed for the purposes of the investigation are required to sign onto the APO and agree to comply with its provisions.

The records of Commission investigations of alleged APO breaches in antidumping and countervailing duty cases, section 337 investigations, and safeguard investigations are not publicly available and are exempt from disclosure under the Freedom of Information Act, 5 U.S.C. 552. *See* 19 U.S.C. 1677f(g), 19 U.S.C. 1333(h), 19 CFR 210.34(c).

The two types of breaches most frequently investigated by the Commission involve the APO's prohibition on the dissemination of BPI or CBI to unauthorized persons and the APO's requirement that the materials received under the APO be returned or destroyed and that a certificate be filed indicating which action was taken after the termination of the investigation or any subsequent appeals of the Commission's determination. The dissemination of BPI/CBI usually occurs as the result of failure to delete BPI/CBI from public versions of documents filed with the Commission or transmission of proprietary versions of documents to unauthorized recipients. Other breaches have included the failure to bracket properly BPI/CBI in proprietary documents filed with the Commission, the failure to report immediately known violations of an APO, and the failure to adequately supervise non-lawyers in the handling of BPI/CBI.

Occasionally, the Commission conducts APOB investigations that involve members of a law firm or consultants working with a firm who

were granted access to APO materials by the firm although they were not APO signatories. In many of these cases, the firm and the person using the BPI/CBI mistakenly believed an APO application had been filed for that person. The Commission determined in all of these cases that the person who was a non-signatory, and therefore did not agree to be bound by the APO, could not be found to have breached the APO. Action could be taken against these persons, however, under Commission rule 201.15 (19 CFR 201.15) for good cause shown. In all cases in which action was taken, the Commission decided that the non-signatory was a person who appeared regularly before the Commission and was aware of the requirements and limitations related to APO access and should have verified his or her APO status before obtaining access to and using the BPI/CBI. The Commission notes that section 201.15 may also be available to issue sanctions to attorneys or agents in different factual circumstances in which they did not technically breach the APO, but when their actions or inactions did not demonstrate diligent care of the APO materials even though they appeared regularly before the Commission and were aware of the importance the Commission placed on the care of APO materials.

Counsel participating in Commission investigations have reported to the Commission potential breaches involving the electronic transmission of public versions of documents. In these cases, the document transmitted appears to be a public document with BPI and CBI omitted from brackets. However, the confidential information is actually retrievable by manipulating codes in software. The Commission has found that the electronic transmission of a public document containing BPI or CBI in a recoverable form was a breach of the APO.

Counsel have been cautioned to be certain that each authorized applicant files within 60 days of the completion of an import injury investigation or at the conclusion of judicial or binational review of the Commission's determination a certificate that to his or her knowledge and belief all copies of BPI/CBI have been returned or destroyed and no copies of such material have been made available to any person to whom disclosure was not specifically authorized. This requirement applies to each attorney, consultant, or expert in a firm who has been granted access to BPI/CBI. One firm-wide certificate is insufficient.

In addition, attorneys who are signatories to the APO representing

---

in 19 CFR 207.100—207.120. Those investigations are initially conducted by the Commission's Office of Unfair Import Investigations.

clients in a section 337 investigation should send a notice to the Commission if they stop participating in the investigation or the subsequent appeal of the Commission's determination. The notice should inform the Commission about the disposition of CBI obtained under the APO that was in their possession or they could be held responsible for any failure of their former firm to return or destroy the CBI in an appropriate manner.

## III. Specific APO Breach Investigations

*Case 1:* This case involved a draft complaint that inadvertently contained CBI from a previous Commission investigation. The draft complaint was generated by one law firm, transferred to a second firm, then transferred to a third firm, and then filed with the Commission as an actual complaint.

One attorney at the first firm breached an APO when he transferred to other law firms a draft complaint which he believed contained only public information, but instead included attachments containing CBI from a previous Commission section 337 investigation. Two attorneys at the firm to which the draft complaint had been first transferred also breached the APO. The lead attorney in this second law firm was responsible for the transfer of the draft complaint containing the CBI to a third law firm which was expected to use the document to draft a complaint in a new section 337 investigation. Upon learning that there might be CBI included in the draft complaint and its attachments, the lead attorney and another attorney in that firm assigned a non-signatory attorney to confirm whether documents were not redacted. The lead attorney at the third law firm to which the draft complaint was ultimately transferred and five other attorneys at that law firm were signatories to the complaint that was filed in the new section 337 investigation which included the attachments containing CBI from the original section 337 investigation.

The draft complaint was prepared by paralegals at the first law firm. They were expected to use only public information from the record of a previous Commission section 337 investigation and from public information obtained from the USPTO. The paralegals mistakenly included documents from the previous investigation that contained CBI, although the pages were clearly marked as containing CBI. The attorney responsible for the draft complaint did not check to be sure all the information in the complaint was public. He supervised the preparation of two USB

drives, on which the assembled documents were copied, to be given to attorneys in two other law firms for use in a public filing for a future section 337 investigation. The Commission issued a warning letter to the attorney. In doing so, the Commission considered several mitigating circumstances, including the unintentional nature of the breach, that the attorney did not directly disclose the CBI to a non-signatory to the APO, that the attorney took immediate steps to investigate the situation that led to the inclusion of the CBI in the materials forwarded to the second firm, and that the attorney had not previously breached a Commission APO. The attorney received the warning letter for his breach because it was ultimately his responsibility to ensure that the draft complaint contained no CBI subject to the APO in the original section 337 investigation.

The Commission issued private letters of reprimand to two attorneys in the second law firm. The lead attorney was held responsible for the breach involving the transfer of the CBI to the non-signatories at the third law firm. The Commission found that the attorney was ultimately responsible for ensuring that the materials to be transferred to non-signatories for use in a matter unrelated to the original Commission investigation did not contain materials that were subject to the APO. The Commission considered certain mitigating circumstances; namely, the attorney was not responsible for the initial collection of the documents and was merely an intermediary in the chain of responsibility for passing the documents from one law firm to another, the firm took immediate steps to investigate its role in the breach, including locating and securing copies of the CBI at issue, and the attorney had not previously breached a Commission APO.

The lead attorney and a second attorney in the law firm were both found responsible for involving a non-signatory attorney in the investigation of the original APO breach. In reaching its decision to issue private letters of reprimand to both attorneys, the Commission considered the presence of aggravating circumstances. First, due to their actions, a non-signatory had access to and could have read the CBI. In addition, the breach was not inadvertent or unintentional and the Commission was not informed of this breach until the lead attorney responded to the Commission's request for information regarding the original breach. Finally, the Commission found that by involving the non-signatory in the investigation of the APO breach, the attorneys were

interpreting the APO without seeking Commission guidance.

The Commission considered whether good cause existed, pursuant to Commission rule 201.15(a), to sanction the non-signatory attorney in the second firm who was assigned to investigate the initial APO breach. The Commission did not sanction the attorney but issued a warning letter. It considered the mitigating circumstances that the attorney exercised some caution by not actually reading the CBI documents and that he had not previously breached a Commission APO. The Commission noted that the attorney was aware that he was a non-signatory to the APO and noted that his actions directly contributed to the disclosure of CBI by agreeing to review the CBI documents as part of the investigation into the APO breach.

The Commission considered whether to sanction six attorneys at the third law firm because they were signatories to the public complaint which was filed in a new section 337 investigation, and which included the attachments containing CBI which were subject to an APO in an earlier investigation. Since none of the attorneys in the third firm were signatories to the APO in the original section 337 investigation the Commission did not find that they breached the APO but, instead, considered whether there was good cause to sanction them under Commission rule 201.15(a). The Commission determined that there was good cause to sanction the lead attorney and, thus, issued a private letter of reprimand to the lead attorney. The Commission noted that the attorney's actions directly led to the disclosure of CBI, which was clearly marked as such, by including the CBI as public exhibits to a complaint in a Commission investigation unrelated to the original section 337 investigation. It was ultimately the lead attorney's responsibility to ensure that the materials that were used in the filing of an unrelated complaint contained only materials that were not subject to the APO in the original investigation. The Commission noted certain mitigating circumstances; namely, the attorney was not responsible for the initial collection of the documents in question but was merely in the chain of receiving parties of the documents being transmitted from one law firm to another; the breach was unintentional; his law firm promptly investigated the circumstances of the breach and took immediate corrective measures to ensure that access to the CBI was restricted; he had not previously breached a Commission APO; and his firm assured the

**1668** **Federal Register**/Vol. 80, No. 8/Tuesday, January 13, 2015/Notices

Commission that it will take extra caution to prevent a similar occurrence in the future and will not rely on the representations of co-counsel regarding the confidential nature of documents.

The Commission also issued warning letters to the remaining five attorneys at the third law firm who were not signatories to the original APO and who had signed the complaint in the new unrelated investigation. Two of the five attorneys participated in filing the complaint. The Commission stated that the actions of the two attorneys directly led to the disclosure of CBI, which was clearly marked as such, by including the CBI as public exhibits to a complaint in a Commission investigation unrelated to the original section 337 investigation. In issuing warning letters, the Commission noted the same mitigating factors mentioned above with regard to the lead attorney in the third firm who received a private letter of reprimand.

*Case 2:* The Commission determined that two attorneys breached the APO by filing a confidential version of an initial determination ("ID") containing CBI, as part of the public appendix to a brief in district court litigation. The filing was made through the district court's electronic-case-filing ("ECF") system.

The confidential version of the ID was filed by a paralegal at the law firm under the supervision of the two attorneys, both of whom had subscribed to the APO. The law firm later discovered the disclosure and notified the opposing party. The CBI was publicly available for six weeks. The law firm requested the district court to restrict access to the electronic filing and the district court complied. The district court notified the law firm that the court did not track access to ECF documents and could not determine who, if anyone, had accessed the ID electronically. The law firm conducted an inquiry into whether any of the employees of the party it represented in the district court litigation had accessed the ID. The opposing party also conducted an inquiry into whether any of its employees had accessed the CBI. From these inquires, the law firm is not aware of any unauthorized access to the CBI.

The Commission took into consideration the following mitigating factors: The breach was inadvertent; neither the attorneys at issue nor the law firm as a whole have breached a Commission APO in the past; the law firm discovered its own breach and took prompt steps to try to cure the breach; and the law firm implemented actions to improve internal procedures to make this type of breach less likely in the future. The Commission noted,

however, that the law firm was not able to demonstrate whether anyone improperly accessed the CBI while it was publicly available so the Commission presumes public access to the confidential documents. Thus, in accordance with past Commission practice, the Commission issued private letters of reprimand to the two attorneys.

*Case 3:* The Commission determined that an attorney breached an APO by filing public versions of certain documents, which contained the CBI of the opposing party.

Counsel for the opposing party contacted the Secretary to the Commission to notify the Secretary that public versions of certain documents, specifically the public versions of a response to a petition for review and summary of the response, filed by the attorney in question contained CBI. The Secretary's office promptly removed the CBI documents from the public record. The attorney subsequently re-filed the public version documents without the CBI. An audit trail for the CBI documents showed that the documents were accessed by a non-party to the investigation.

The Commission issued a private letter of reprimand to the attorney for the APO breach. The Commission noted as mitigating factors that once the attorney was notified that the public version of the documents contained CBI the attorney moved quickly to cure the disclosure, the disclosure of the CBI was inadvertent, the attorney has not been involved in any alleged APO breach in the past two years, and the attorney had the ALJ's instruction not to over-redact in mind while preparing the public versions of the brief. However, the Commission points out that the aggravating factors were that the breach was discovered by opposing counsel and not the alleged breaching attorney, unauthorized persons accessed the CBI at issue, and the attorney acted unilaterally in deciding that certain information did not constitute CBI without seeking guidance from the Commission.

*Case 4:* The Commission determined that the lead attorney and the lead attorney's law firm did not breach the APO when documents containing CBI were stolen from the locked car trunk of a paralegal employed by the law firm.

The law firm had internal practices and procedures regarding the protection of CBI governed by an APO including policies regarding the maintenance and transport of CBI. In some cases, the law firm did let its personnel perform work at home involving CBI as long as they used and kept the CBI in a locked

facility, which could not be accessed by others. The paralegal had such an arrangement in his home.

The provisions of the APO did not specifically prohibit the transport of documents containing CBI to a home office or require personal custody and maintenance of the CBI in a locked facility of the home office after such transport. The lead attorney promptly notified the proper authorities after learning of the theft.

The Commission issued a letter to the lead attorney notifying the attorney that the Commission does not consider the law firm or lead attorney to have breached the APO, but the letter does recommend that the law firm review its procedures regarding the protection of CBI, and the law firm's enforcement of such procedures.

By order of the Commission.

Issued: January 7, 2015.

**Lisa R. Barton,**

*Secretary to the Commission.*

[FR Doc. 2015–00299 Filed 1–12–15; 8:45 am]

**BILLING CODE 7020–02–P**

---

## DEPARTMENT OF JUSTICE

**[OMB Number 1103–0102]**

### Agency Information Collection Activities; Proposed eCollection eComments Requested; Extension With Change, of a Previously Approved Collection COPS Office Progress Report

**AGENCY:** Community Oriented Policing Services (COPS) Office, Department of Justice.

**ACTION:** 30-Day notice.

**SUMMARY:** The Department of Justice (DOJ), Community Oriented Policing Services (COPS) Office, will be submitting the following information collection request to the Office of Management and Budget (OMB) for review and approval in accordance with the Paperwork Reduction Act of 1995. This proposed information collection was previously published in the **Federal Register** at 79 FR 66405, November 7, 2014, allowing for a 60 day comment period.

**DATES:** Comments are encouraged and will be accepted for an additional days until February 12, 2015.

**FOR FURTHER INFORMATION CONTACT:** If you have additional comments especially on the estimated public burden or associated response time, suggestions, or need a copy of the proposed information collection instrument with instructions or

cannot guarantee that we will be able to do so.

## CALIFORNIA

### Alameda County

Alameda County Building and Loan Association Building, 1601—1605 Clay St., Oakland, 16000152

### Yolo County

TB—9, SW corner of Old Davis Rd. and Hutchinson Dr., University of California, Davis, Davis, 16000153

## COLORADO

### Larimer County

Warren Livestock Company, Graves Camp Rural Historic District, Five miles west of I–25 just south of the Colorado-Wyoming state line, in far northeastern Larimer County, Wellington, 16000155

### Park County

Guiraud—McDowell Ranch, Highway 9, Garo, 16000154

## MASSACHUSETTS

### Bristol County

Lowney Chocolate Factory, 150 Oakland St., Mansfield, 16000156

### Worcester County

First Baptist Church of Northborough, 52 Main St., Northborough, 16000157

## MINNESOTA

### Todd County

Bridge No. L7075, 290th St. over Turtle Creek, 0.1 mi. east of CSAH 25 in Hartford Township, Browerville, 16000158

## NEBRASKA

### Douglas County

North 24th and Lake Streets Historic District, North 24th St. between Ohio St. and Patrick Ave., Lake St. between 26th and 22th Sts., Omaha, 16000159

## NEW MEXICO

### Bernalillo County

Vista Larga Residential Historic District, Roughly bounded by Indian School Rd., Columbia Dr., Hannett Ave., and University of New Mexico North Golf Course, Albuquerque, 16000160

### Dona Ana County

Mesilla Park Historic District, Bounded by Bowman St., Union and University Aves., and Park Drain, Las Cruces, 16000161

### Socorro County

San Miguel Church, (El Camino Real de Tierra Adentro MPS (AD)) 403 El Camino Real St., NW., Socorro, 16000162

## NEW YORK

### Monroe County

Pittsford Village Historic District (Boundary Increase), High, Church, Grove, Line, Locust, Maple, N. & S. Main, State, Sutherland, Wood Sts., Boughton, E.

Jefferson, Golf, Rand Rds., Pittsford, 16000163

### Warren County

Caldwell Presbyterian Church, 71 Montcalm St., Lake George, 16000164

## TENNESSEE

### Anderson County

Norris Hydroelectric Project, 300 Powerhouse Way, Norris, 16000165

## VIRGINIA

### Charles City County

Dancing Point, Address Restricted, Charles City, 16000166

A request to move has been received for the following resource:

## KENTUCKY,

### Fayette County

Peoples Federal Savings and Loan, 343 S. Broadway, Lexington, 15000650

**Authority:** 60.13 of 36 CFR part 60

Dated: March 3, 2016.

**J. Paul Loether,**

*Chief, National Register of Historic Places/ National Historic Landmarks Program.*

[FR Doc. 2016–06931 Filed 3–25–16; 8:45 am]

**BILLING CODE 4312–51–P**

---

## INTERNATIONAL TRADE COMMISSION

**[USITC SE-16-010]**

## Government in the Sunshine Act Meeting Notice

**AGENCY HOLDING THE MEETING:** United States International Trade Commission.

**TIME AND DATE:** March 31, 2016 at 11:00 a.m.

**PLACE:** Room 101, 500 E Street SW., Washington, DC 20436, Telephone: (202) 205–2000.

**STATUS:** Open to the public.

**MATTERS TO BE CONSIDERED:**

1. Agendas for future meetings: None.
2. Minutes.
3. Ratification List.
4. Vote in Inv. Nos. 701–TA–531–533 and 731–TA–1270–1273 (Final)(Polyethylene Terephthalate (PET) Resin from Canada, China, India, and Oman). The Commission is currently scheduled to complete and file its determinations and views of the Commission on April 12, 2016.

5. Outstanding action jackets: None.
In accordance with Commission policy, subject matter listed above, not disposed of at the scheduled meeting, may be carried over to the agenda of the following meeting.

Dated: Issued: March 23, 2016.

By order of the Commission.

**William R. Bishop,**

*Supervisory Hearings and Information Officer.*

[FR Doc. 2016–07075 Filed 3–24–16; 4:15 pm]

**BILLING CODE 7020–02–P**

---

## INTERNATIONAL TRADE COMMISSION

## Summary of Commission Practice Relating to Administrative Protective Orders

**AGENCY:** U.S. International Trade Commission.

**ACTION:** Summary of Commission practice relating to administrative protective orders.

**SUMMARY:** Since February 1991, the U.S. International Trade Commission ("Commission") has issued an annual report on the status of its practice with respect to violations of its administrative protective orders ("APOs") under title VII of the Tariff Act of 1930, in response to a direction contained in the Conference Report to the Customs and Trade Act of 1990. Over time, the Commission has added to its report discussions of APO breaches in Commission proceedings other than under title VII and violations of the Commission's rules including the rule on bracketing business proprietary information ("BPI") (the "24-hour rule"), 19 CFR 207.3(c). This notice provides a summary of breach investigations completed during calendar year 2014. This summary addresses one proceeding under title VII of the Tariff Act of 1930 and four proceedings under section 337 of the Tariff Act of 1930. There were no rules violation investigations completed in 2014. The Commission intends that this report inform representatives of parties to Commission proceedings as to some specific types of APO breaches encountered by the Commission and the corresponding types of actions the Commission has taken.

**FOR FURTHER INFORMATION CONTACT:** Carol McCue Verratti, Esq., Office of the General Counsel, U.S. International Trade Commission, telephone (202) 205–3088. Hearing impaired individuals are advised that information on this matter can be obtained by contacting the Commission's TDD terminal at (202) 205–1810. General information concerning the Commission can also be obtained by accessing its Web site (*http://www.usitc.gov*).

**SUPPLEMENTARY INFORMATION:** Representatives of parties to investigations or other proceedings

conducted under title VII of the Tariff Act of 1930, section 337 of the Tariff Act of 1930, the North American Free Trade Agreement (NAFTA) Article 1904.13, and safeguard-related provisions such as sections 202 of the Trade Act of 1974, may enter into APOs that permit them, under strict conditions, to obtain access to BPI (title VII) and confidential business information ("CBI") (safeguard-related provisions and section 337) of other parties or non-parties. *See, e.g.,* 19 U.S.C. 1677f; 19 CFR 207.7; 19 U.S.C. 1337(n); 19 CFR 210.5, 210.34; 19 U.S.C. 2252(i); 19 CFR 206.17; 19 U.S.C. 1516a(g)(7)(A); and 19 CFR 207.100, *et. seq.* The discussion below describes APO breach investigations that the Commission has completed during calendar year 2014, including a description of actions taken in response to these breaches.

Since 1991, the Commission has published annually a summary of its actions in response to violations of Commission APOs and the 24-hour rule. *See* 56 FR 4846 (February 6, 1991); 57 FR 12335 (April 9, 1992); 58 FR 21991 (April 26, 1993); 59 FR 16834 (April 8, 1994); 60 FR 24880 (May 10, 1995); 61 FR 21203 (May 9, 1996); 62 FR 13164 (March 19, 1997); 63 FR 25064 (May 6, 1998); 64 FR 23355 (April 30, 1999); 65 FR 30434 (May 11, 2000); 66 FR 27685 (May 18, 2001); 67 FR 39425 (June 7, 2002); 68 FR 28256 (May 23, 2003); 69 FR 29972 (May 26, 2004); 70 FR 42382 (July 25, 2005); 71 FR 39355 (July 12, 2006); 72 FR 50119 (August 30, 2007); 73 FR 51843 (September 5, 2008); 74 FR 54071 (October 21, 2009); 75 FR 54071 (October 27, 2010), 76 FR 78945 (December 20, 2011), 77 FR 76518 (December 28, 2012), 78 FR 79481 (December 30, 2013) and 80 FR 1664 (January 13, 2015). This report does not provide an exhaustive list of conduct that will be deemed to be a breach of the Commission's APOs. APO breach inquiries are considered on a case-by-case basis.

As part of the effort to educate practitioners about the Commission's current APO practice, the Commission Secretary issued in March 2005 a fourth edition of *An Introduction to Administrative Protective Order Practice in Import Injury Investigations* (Pub. No. 3755). This document is available upon request from the Office of the Secretary, U.S. International Trade Commission, 500 E Street, SW., Washington, DC 20436, tel. (202) 205–2000 and on the Commission's Web site at *http://www.usitc.gov.*

## I. In General

### A. Antidumping and Countervailing Duty Investigations

The current APO form for antidumping and countervailing duty investigations, which was revised in March 2005, requires the applicant to swear that he or she will:

(1) Not divulge any of the BPI disclosed under this APO or otherwise obtained in this investigation and not otherwise available to him or her, to any person other than—

(i) Personnel of the Commission concerned with the investigation,

(ii) The person or agency from whom the BPI was obtained,

(iii) A person whose application for disclosure of BPI under this APO has been granted by the Secretary, and

(iv) Other persons, such as paralegals and clerical staff, who (a) are employed or supervised by and under the direction and control of the authorized applicant or another authorized applicant in the same firm whose application has been granted; (b) have a need thereof in connection with the investigation; (c) are not involved in competitive decision making for an interested party which is a party to the investigation; and (d) have signed the acknowledgment for clerical personnel in the form attached hereto (the authorized applicant shall also sign such acknowledgment and will be deemed responsible for such persons' compliance with this APO);

(2) Use such BPI solely for the purposes of the above-captioned Commission investigation or for judicial or binational panel review of such Commission investigation;

(3) Not consult with any person not described in paragraph (1) concerning BPI disclosed under this APO or otherwise obtained in this investigation without first having received the written consent of the Secretary and the party or the representative of the party from whom such BPI was obtained;

(4) Whenever materials *e.g.,* documents, computer disks, etc. containing such BPI are not being used, store such material in a locked file cabinet, vault, safe, or other suitable container (N.B.: storage of BPI on so-called hard disk computer media is to be avoided, because mere erasure of data from such media may not irrecoverably destroy the BPI and may result in violation of paragraph C of this APO);

(5) Serve all materials containing BPI disclosed under this APO as directed by the Secretary and pursuant to section 207.7(f) of the Commission's rules;

(6) Transmit each document containing BPI disclosed under this APO:

(i) with a cover sheet identifying the document as containing BPI,

(ii) with all BPI enclosed in brackets and each page warning that the document contains BPI,

(iii) if the document is to be filed by a deadline, with each page marked "Bracketing of BPI not final for one business day after date of filing," and

(iv) if by mail, within two envelopes, the inner one sealed and marked "Business Proprietary Information—To be opened only by [name of recipient]", and the outer one sealed and not marked as containing BPI;

(7) Comply with the provision of this APO and section 207.7 of the Commission's rules;

(8) Make true and accurate representations in the authorized applicant's application and promptly notify the Secretary of any changes that occur after the submission of the application and that affect the representations made in the application (*e.g.,* change in personnel assigned to the investigation);

(9) Report promptly and confirm in writing to the Secretary any possible breach of this APO; and

(10) Acknowledge that breach of this APO may subject the authorized applicant and other persons to such sanctions or other actions as the Commission deems appropriate, including the administrative sanctions and actions set out in this APO.

The APO further provides that breach of an APO may subject an applicant to:

(1) Disbarment from practice in any capacity before the Commission along with such person's partners, associates, employer, and employees, for up to seven years following publication of a determination that the order has been breached;

(2) Referral to the United States Attorney;

(3) In the case of an attorney, accountant, or other professional, referral to the ethics panel of the appropriate professional association;

(4) Such other administrative sanctions as the Commission determines to be appropriate, including public release of, or striking from the record any information or briefs submitted by, or on behalf of, such person or the party he represents; denial of further access to business proprietary information in the current or any future investigations before the Commission, and issuance of a public or private letter of reprimand; and

(5) Such other actions, including but not limited to, a warning letter, as the

**17202**     **Federal Register** / Vol. 81, No. 59 / Monday, March 28, 2016 / Notices

Commission determines to be appropriate.

APOs in safeguard investigations contain similar though not identical provisions.

*B. Section 337 Investigations*

The APOs in section 337 investigations differ from those in title VII investigations as there is no set form and provisions may differ depending on the investigation and the presiding administrative law judge. However, in practice, the provisions are often quite similar. Any person seeking access to CBI during a section 337 investigation including outside counsel for parties to the investigation, secretarial and support personnel assisting such counsel, and technical experts and their staff who are employed for the purposes of the investigation is required to read the APO, agree to its terms by letter filed with the Secretary of the Commission indicating that he agrees to be bound by the terms of the Order, agree not to reveal CBI to anyone other than another person permitted access by the Order, and agree to utilize the CBI solely for the purposes of that investigation.

In general, an APO in a section 337 investigation will define what kind of information is CBI and direct how CBI is to be designated and protected. The APO will state what persons will have access to the CBI and which of those persons must sign onto the APO. The APO will provide instructions on how CBI is to be maintained and protected by labeling documents and filing transcripts under seal. It will provide protections for the suppliers of CBI by notifying them of a Freedom of Information Act request for the CBI and providing a procedure for the supplier to take action to prevent the release of the information. There are provisions for disputing the designation of CBI and a procedure for resolving such disputes. Under the APO, suppliers of CBI are given the opportunity to object to the release of the CBI to a proposed expert. The APO requires a person who discloses CBI, other than in a manner authorized by the APO, to provide all pertinent facts to the supplier of the CBI and to the administrative law judge and to make every effort to prevent further disclosure. The APO requires all parties to the APO to either return to the suppliers or destroy the originals and all copies of the CBI obtained during the investigation.

The Commission's regulations provide for certain sanctions to be imposed if the APO is violated by a person subject to its restrictions. The names of the persons being investigated for violating an APO are kept

confidential unless the sanction imposed is a public letter of reprimand. 19 CFR 210.34(c)(1). The possible sanctions are:

(1) An official reprimand by the Commission.

(2) Disqualification from or limitation of further participation in a pending investigation.

(3) Temporary or permanent disqualification from practicing in any capacity before the Commission pursuant to 19 CFR 201.15(a).

(4) Referral of the facts underlying the violation to the appropriate licensing authority in the jurisdiction in which the individual is licensed to practice.

(5) Making adverse inferences and rulings against a party involved in the violation of the APO or such other action that may be appropriate. 19 CFR 210.34(c)(3).

Commission employees are not signatories to the Commission's APOs and do not obtain access to BPI through APO procedures. Consequently, they are not subject to the requirements of the APO with respect to the handling of CBI and BPI. However, Commission employees are subject to strict statutory and regulatory constraints concerning BPI and CBI, and face potentially severe penalties for noncompliance. *See* 18 U.S.C. 1905; title 5, U.S. Code; and Commission personnel policies implementing the statutes. Although the Privacy Act (5 U.S.C. 552a) limits the Commission's authority to disclose any personnel action against agency employees, this should not lead the public to conclude that no such actions have been taken.

## II. Investigations of Alleged APO Breaches

Upon finding evidence of an APO breach or receiving information that there is a reason to believe one has occurred, the Commission Secretary notifies relevant offices in the agency that an APO breach investigation has commenced and that an APO breach investigation file has been opened. Upon receiving notification from the Secretary, the Office of the General Counsel ("OGC") prepares a letter of inquiry to be sent to the possible breacher over the Secretary's signature to ascertain the facts and obtain the possible breacher's views on whether a breach has occurred.[1] If, after reviewing

the response and other relevant information, the Commission determines that a breach has occurred, the Commission often issues a second letter asking the breacher to address the questions of mitigating circumstances and possible sanctions or other actions. The Commission then determines what action to take in response to the breach. In some cases, the Commission determines that, although a breach has occurred, sanctions are not warranted, and therefore finds it unnecessary to issue a second letter concerning what sanctions might be appropriate. Instead, it issues a warning letter to the individual. A warning letter is not considered to be a sanction. However, a warning letter is considered in a subsequent APO breach investigation.

Sanctions for APO violations serve three basic interests: (a) Preserving the confidence of submitters of BPI/CBI that the Commission is a reliable protector of BPI/CBI; (b) disciplining breachers; and (c) deterring future violations. As the Conference Report to the Omnibus Trade and Competitiveness Act of 1988 observed, "[T]he effective enforcement of limited disclosure under administrative protective order depends in part on the extent to which private parties have confidence that there are effective sanctions against violation." H.R. Conf. Rep. No. 576, 100th Cong., 1st Sess. 623 (1988).

The Commission has worked to develop consistent jurisprudence, not only in determining whether a breach has occurred, but also in selecting an appropriate response. In determining the appropriate response, the Commission generally considers mitigating factors such as the unintentional nature of the breach, the lack of prior breaches committed by the breaching party, the corrective measures taken by the breaching party, and the promptness with which the breaching party reported the violation to the Commission. The Commission also considers aggravating circumstances, especially whether persons not under the APO actually read the BPI/CBI. The Commission considers whether there have been prior breaches by the same person or persons in other investigations and multiple breaches by the same person or persons in the same investigation.

The Commission's rules permit an economist or consultant to obtain access to BPI/CBI under the APO in a title VII or safeguard investigation if the economist or consultant is under the direction and control of an attorney under the APO, or if the economist or consultant appears regularly before the Commission and represents an

---

[1] Procedures for inquiries to determine whether a prohibited act such as a breach has occurred and for imposing sanctions for violation of the provisions of a protective order issued during NAFTA panel or committee proceedings are set out in 19 CFR 207.100–207.120. Those investigations are initially conducted by the Commission's Office of Unfair Import Investigations.

**Federal Register** / Vol. 81, No. 59 / Monday, March 28, 2016 / Notices **17203**

interested party who is a party to the investigation. 19 CFR 207.7(a)(3)(B) and (C); 19 CFR 206.17(a)(3)(B) and (C). Economists and consultants who obtain access to BPI/CBI under the APO under the direction and control of an attorney nonetheless remain individually responsible for complying with the APO. In appropriate circumstances, for example, an economist under the direction and control of an attorney may be held responsible for a breach of the APO by failing to redact APO information from a document that is subsequently filed with the Commission and served as a public document. This is so even though the attorney exercising direction or control over the economist or consultant may also be held responsible for the breach of the APO. In section 337 investigations, technical experts and their staff who are employed for the purposes of the investigation are required to sign onto the APO and agree to comply with its provisions.

The records of Commission investigations of alleged APO breaches in antidumping and countervailing duty cases, section 337 investigations, and safeguard investigations are not publicly available and are exempt from disclosure under the Freedom of Information Act, 5 U.S.C. 552. *See* 19 U.S.C. 1677f(g), 19 U.S.C. 1333(h), 19 CFR 210.34(c).

The two types of breaches most frequently investigated by the Commission involve the APO's prohibition on the dissemination of BPI or CBI to unauthorized persons and the APO's requirement that the materials received under the APO be returned or destroyed and that a certificate be filed indicating which action was taken after the termination of the investigation or any subsequent appeals of the Commission's determination. The dissemination of BPI/CBI usually occurs as the result of failure to delete BPI/CBI from public versions of documents filed with the Commission or transmission of proprietary versions of documents to unauthorized recipients. Other breaches have included the failure to bracket properly BPI/CBI in proprietary documents filed with the Commission, the failure to report immediately known violations of an APO, and the failure to adequately supervise non-lawyers in the handling of BPI/CBI.

Occasionally, the Commission conducts APOB investigations that involve members of a law firm or consultants working with a firm who were granted access to APO materials by the firm although they were not APO signatories. In many of these cases, the firm and the person using the BPI/CBI

mistakenly believed an APO application had been filed for that person. The Commission determined in all of these cases that the person who was a non-signatory, and therefore did not agree to be bound by the APO, could not be found to have breached the APO. Action could be taken against these persons, however, under Commission rule 201.15 (19 CFR 201.15) for good cause shown. In all cases in which action was taken, the Commission decided that the non-signatory was a person who appeared regularly before the Commission and was aware of the requirements and limitations related to APO access and should have verified his or her APO status before obtaining access to and using the BPI/CBI. The Commission notes that section 201.15 may also be available to issue sanctions to attorneys or agents in different factual circumstances in which they did not technically breach the APO, but when their actions or inactions did not demonstrate diligent care of the APO materials even though they appeared regularly before the Commission and were aware of the importance the Commission placed on the care of APO materials.

Counsel participating in Commission investigations have reported to the Commission potential breaches involving the electronic transmission of public versions of documents. In these cases, the document transmitted appears to be a public document with BPI or CBI omitted from brackets. However, the confidential information is actually retrievable by manipulating codes in software. The Commission has found that the electronic transmission of a public document containing BPI or CBI in a recoverable form was a breach of the APO.

Counsel have been cautioned to be certain that each authorized applicant files within 60 days of the completion of an import injury investigation or at the conclusion of judicial or binational review of the Commission's determination a certificate that to his or her knowledge and belief all copies of BPI/CBI have been returned or destroyed and no copies of such material have been made available to any person to whom disclosure was not specifically authorized. This requirement applies to each attorney, consultant, or expert in a firm who has been granted access to BPI/CBI. One firm-wide certificate is insufficient.

Attorneys who are signatories to the APO representing clients in a section 337 investigation should inform the administrative law judge and the Commission's secretary if there are any changes to the information that was

provided in the application for access to the CBI. This is similar to the requirement to update an applicant's information in title VII investigations.

In addition, attorneys who are signatories to the APO representing clients in a section 337 investigation should send a notice to the Commission if they stop participating in the investigation or the subsequent appeal of the Commission's determination. The notice should inform the Commission about the disposition of CBI obtained under the APO that was in their possession or they could be held responsible for any failure of their former firm to return or destroy the CBI in an appropriate manner.

## III. Specific APO Breach Investigations

*Case 1.* A law firm filed a public response to a petition for review of a final determination in a section 337 investigation. Although CBI was visibly redacted in the response, the CBI could be accessed by electronically manipulating the document. A paralegal in the firm maintained two versions of the document, one with the recoverable CBI and one without. When he filed the response with the Commission he mistakenly filed the version that contained the redacted CBI. The Commission found that the paralegal and an attorney who was responsible for reviewing the document before it was filed violated the APO. The Commission decided not to sanction them and issued warning letters.

Although the filing of the improperly redacted document made CBI available to unauthorized persons, the Commission decided to issue warning letters because of several mitigating circumstances. There was no proof that an unauthorized person had viewed the CBI. Initially, the Commission's staff notified the law firm's lead attorney that another law firm and a research firm had accessed the document through EDIS. The lead attorney immediately contacted these firms, asked that they destroy the document, and learned that no unauthorized person had read the document. Almost a year later the Commission's staff notified the lead attorney that another research firm had accessed the document at the time the breach occurred. The lead attorney immediately contacted the second research firm. He learned that the firm had gone out of business and had destroyed any information that could show whether or not an unauthorized person had read the document. Although the Commission has a practice of assuming that an unauthorized person had read CBI if a document containing CBI is made available for a

significant period of time, in this case there was no evidence that an unauthorized person had read the document and the law firm was unable to confirm this because of the lag in the notification about the second research firm. Thus, the Commission did not find this to be an aggravating circumstance.

The Commission also noted that neither the attorney nor the paralegal had ever been found in violation of an APO. In addition, they quickly discovered the error and acted promptly to remedy the unintentional disclosure, contacted superiors in their firm who then notified the Commission of the breach, took the necessary steps to have the document removed from public EDIS, and insured that the document was not viewed by unauthorized persons. The Commission also noted that the attorney and the paralegal generally followed the procedures established by their firm for creating redacted versions of documents containing CBI. The Commission noted that the firm has established revised procedures that are meant to verify that public documents have been properly redacted before filing.

*Case 2.* The Commission determined that three attorneys breached an APO when their firm retained a file copy of documents containing CBI beyond the termination of a Commission section 337 investigation. As required under the APO, upon termination of the investigation, the firm certified that CBI belonging to respondents had been destroyed or returned. However, files containing CBI were inadvertently sent to an off-site storage facility.

The Commission became aware of the breach when it received a letter from an attorney with the firm who had discovered the files when he responded to a district court discovery order compelling the firm's client to produce discovery related to ITC proceedings. The attorney was unable to explain why the files were retained and not destroyed since nearly all of the attorneys and support staff who worked on the investigation had left the firm. The lawyer was able to determine that no one accessed the CBI files while they were in off-site storage.

Warning letters were issued to the three remaining attorneys at the firm who had been subject to the APO in the section 337 investigation. The Commission considered the mitigating circumstances that the breach was unintentional, the CBI was not read by any person not subject to the APO, that the firm discovered and reported the breach, and that this is the only breach in which the attorneys were involved in the two-year period generally examined

by the Commission for the purpose of determining sanctions. The attorneys were also instructed to destroy the CBI and certify that destruction had been completed.

*Case 3.* The Commission determined that a law firm breached an APO in a section 337 investigation when it retained three boxes of documents containing CBI that should have been returned or destroyed upon termination of an investigation. The firm also violated the APO by keeping an electronic copy of its work product files which contained CBI. For two years the three boxes along with other boxes of the case files from the investigation had been transferred to another firm (the second firm) which was representing the same client in other proceedings. The attorneys in that firm were not signatories to the APO. The boxes were returned to the original law firm because attorneys at the second firm became aware that there may be documents in the case file that should have been returned or destroyed at the end of the investigation. Attorneys at the second firm informed the first firm that no one had reviewed the documents within the boxes. The first firm did not immediately review the contents of the case file upon its return.

A year later the firm investigated the case file after it received a subpoena in a new Commission investigation seeking to compel production of portions of the same case file. In response to a request from the ALJ, the firm investigated the case file. It found three boxes with third party production documents containing CBI that should have been destroyed.

Also in response to the subpoena, the firm disclosed that it possessed a computer file created as part of its litigation efforts which contained opposing party documents containing CBI and which was work product material. Although this computer file was not subject to discovery, it should have been destroyed pursuant to the APO. A copy made by the second firm was removed from the server and returned to the first firm. Again, the second firm indicated that no one had read the information from the file.

The Commission determined to send a warning letter to the one attorney who had been involved in the original Commission investigation and who was receiving the letter on behalf of the law firm. The Commission considered the mitigating factors that the breach was unintentional, the attorney and other attorneys at the firm had not breached an APO within the last two years, and a partner in the firm alerted the Commission as soon as the potential breach involving the three boxes was

discovered. The Commission noted the firm's delay in ascertaining what confidential materials improperly remained at the firm, but also noted that the firm was able to demonstrate that no unauthorized person had accessed the CBI at issue.

Although the three boxes of files had been destroyed shortly after the investigation into the APO breach had begun, the letter directed the attorney to retrieve and destroy the work product computer file. The attorney was further directed to send an affidavit certifying the destruction within 60 days of the receipt of the warning letter.

*Case 4.* A lead attorney and an associate were employed by a law firm representing a party in a title VII investigation. The lead attorney was the signatory to the APO. During the investigation he filed a motion to amend the APO and add the associate to it. The application was filed late under the Commission's rules and was subsequently rejected by the Commission Secretary. In the meantime, the lead attorney had directed the associate to review the confidential version of the post hearing brief which contained BPI from the confidential staff report and other parties to the investigation.

The Commission found that the lead attorney had violated the APO. It determined that the associate did not breach the APO nor was there good cause to sanction him under Commission rule 201.15. The Commission determined to issue a warning letter to the lead attorney and a letter to the associate indicating that he would not be sanctioned under rule 201.15.

For the associate, the Commission considered the facts that he was not subject to the APO, that he reasonably did not know that he was not permitted to view BPI, and that he acted entirely under the direction of the lead attorney. The letter to the associate did caution him to ensure independently in future investigations that he is properly subject to the APO before accessing BPI obtained under that APO.

The Commission determined not to sanction the lead attorney. In reaching this decision the Commission considered several mitigating circumstances. The lead attorney had no prior breaches within the two-year period generally examined by the Commission for purposes of determining sanctions; the breach was unintentional; and the person who viewed the BPI acted as if bound by the APO. The Commission also considered the aggravating circumstance that the law firm failed to notice the breach until

agency staff contacted the lead attorney almost two months after the breach occurred.

*Case 5.* A law firm filed a public version of its complaint containing CBI in a section 337 investigation. The Commission found that the law firm did not violate the APO since the CBI that was disclosed and made publicly accessible was not obtained under an APO related to a Commission investigation. In addition, the disclosure of the CBI occurred before an APO was issued in the Commission investigation. The letter to the firm advised it to practice better procedures in the future to ensure that no CBI is disclosed.

By order of the Commission.

Issued: March 22, 2016.

**Lisa R. Barton,**
*Secretary to the Commission.*

[FR Doc. 2016–06875 Filed 3–25–16; 8:45 am]

**BILLING CODE 7020–02–P**

## JOINT BOARD FOR THE ENROLLMENT OF ACTUARIES

### Meeting of the Advisory Committee; Meeting

**AGENCY:** Joint Board for the Enrollment of Actuaries.

**ACTION:** Notice of Federal Advisory Committee meeting.

**SUMMARY:** The Executive Director of the Joint Board for the Enrollment of Actuaries gives notice of a closed meeting of the Advisory Committee on Actuarial Examinations.

**DATES:** The meeting will be held on April 18, 2016, from 8:30 a.m. to 5:00 p.m.

**ADDRESSES:** The meeting will be held at Mercer, 4440 Comerica Bank Tower, 1717 Main Street, Dallas, TX 75201.

**FOR FURTHER INFORMATION CONTACT:** Patrick W. McDonough, Executive Director of the Joint Board for the Enrollment of Actuaries, 703–414–2173.

**SUPPLEMENTARY INFORMATION:** Notice is hereby given that the Advisory Committee on Actuarial Examinations will meet at Mercer, 4400 Comerica Bank Tower, 1717 Main Street, Dallas, TX 75201, on April 18, 2016, from 8:30 a.m. to 5:00 p.m.

The purpose of the meeting is to discuss topics and questions that may be recommended for inclusion on future Joint Board examinations in actuarial mathematics, pension law and methodology referred to in 29 U.S.C. 1242(a)(1)(B).

A determination has been made as required by section 10(d) of the Federal Advisory Committee Act, 5 U.S.C. App.,

that the subject of the meeting falls within the exception to the open meeting requirement set forth in title 5 U.S.C. 552b(c)(9)(B), and that the public interest requires that such meeting be closed to public participation.

Dated: March 15, 2016.

**Patrick W. McDonough,**
*Executive Director, Joint Board for the Enrollment of Actuaries.*

[FR Doc. 2016–06941 Filed 3–25–16; 8:45 am]

**BILLING CODE 4830–01–P**

## DEPARTMENT OF JUSTICE

[OMB Number 1110–0011]

### Agency Information Collection Activities; Proposed eCollection eComments Requested; Revision of a Previously Approved Collection: ViCAP Case Submission Form

**AGENCY:** Department of Justice, Federal Bureau of Investigation.

**ACTION:** 30-day notice.

**SUMMARY:** The Department of Justice, Federal Bureau of Investigation, Critical Incident Response Group has submitted the following information collection request to the Office of Management and Budget (OMB) for review and clearance in accordance with established review procedures of the Paperwork Reduction Act of 1995. This proposed information collection was previously published in the **Federal Register** at 81 *FR* 3159, on January 20, 2016, allowing for a 60-day comment period.

**DATES:** Comments are encouraged and will be accepted for an additional 30 days until April 27, 2016.

**FOR FURTHER INFORMATION CONTACT:** If you have additional comments especially on the estimated public burden or associated response time, suggestions, or need a copy of the proposed information collection instrument with instructions or additional information, please contact Lesa Marcolini, Program Manager, Federal Bureau of Investigation, Critical Incident Response Group, ViCAP, FBI Academy, Quantico, Virginia 22135; facsimile (703) 632–4239. Written comments and/or suggestions can also be directed to the Office of Management and Budget, Office of Information and Regulatory Affairs, Attention Department of Justice Desk.

**SUPPLEMENTARY INFORMATION:** Written comments and suggestions from the public and affected agencies concerning the proposed collection of information are encouraged. Your comments should address one or more of the following four points:

—Evaluate whether the proposed collection of information is necessary for the proper performance of the functions of the Bureau of Justice Statistics, including whether the information will have practical utility;
—Evaluate the accuracy of the agency's estimate of the burden of the proposed collection of information, including the validity of the methodology and assumptions used;
—Evaluate whether and if so how the quality, utility, and clarity of the information to be collected can be enhanced; and
—Minimize the burden of the collection of information on those who are to respond, including through the use of appropriate automated, electronic, mechanical, or other technological collection techniques or other forms of information technology, *e.g.,* permitting electronic submission of responses.

**Overview of This Information Collection**

1. *Type of Information Collection:* Revision of a currently approved collection.

2. *The Title of the Form/Collection:* ViCAP Case Submission Form.

3. *The agency form number, if any, and the applicable component of the Department sponsoring the collection:* The form number is FD–676. The applicable component within the Department of Justice is the Federal Bureau of Investigation.

4. *Affected public who will be asked or required to respond, as well as a brief abstract:* Primary: Federal, state, local, and tribal government law enforcement agencies charged with the responsibility of investigating violent crimes. Abstract: Established by the Department of Justice in 1985, ViCAP serves as the national repository for violent crimes; specifically; Homicides (and attempts) that are known or suspected to be part of a series and/or are apparently random, motiveless, or sexually oriented. Sexual assaults that are known or suspected to be part of a series and/ or are committed by a stranger. Missing persons where the circumstances indicate a strong possibility of foul play and the victim is still missing. Unidentified human remains where the manner of death is known or suspected to be homicide.

Comprehensive case information submitted to ViCAP is maintained in the ViCAP Web National Crime Database and is automatically compared to all other cases in the databases to identify potentially related cases.

5. *An estimate of the total number of respondents and the amount of time*

**Authority:** 60.13 of 36 CFR part 60.

Dated: June 9, 2017.

**J. Paul Loether,**

*Chief, National Register of Historic Places/ National Historic Landmarks Program and Keeper of the National Register.*

[FR Doc. 2017–13485 Filed 6–27–17; 8:45 am]

**BILLING CODE 4312–52–P**

---

# DEPARTMENT OF THE INTERIOR

## National Park Service

### [NPS–WASO–NRNHL–23506; PPWOCRADI0, PCU00RP14.R50000]

## National Register of Historic Places; Notification of Pending Nominations and Related Actions

**AGENCY:** National Park Service, Interior.

**ACTION:** Notice.

**SUMMARY:** The National Park Service is soliciting comments on the significance of properties nominated before May 20, 2017, for listing or related actions in the National Register of Historic Places.

**DATES:** Comments should be submitted by July 13, 2017.

**ADDRESSES:** Comments may be sent via U.S. Postal Service and all other carriers to the National Register of Historic Places, National Park Service, 1849 C St. NW., MS 7228, Washington, DC 20240.

**SUPPLEMENTARY INFORMATION:** The properties listed in this notice are being considered for listing or related actions in the National Register of Historic Places. Nominations for their consideration were received by the National Park Service before May 20, 2017. Pursuant to section 60.13 of 36 CFR part 60, written comments are being accepted concerning the significance of the nominated properties under the National Register criteria for evaluation.

Before including your address, phone number, email address, or other personal identifying information in your comment, you should be aware that your entire comment—including your personal identifying information—may be made publicly available at any time. While you can ask us in your comment to withhold your personal identifying information from public review, we cannot guarantee that we will be able to do so.

Nominations submitted by State Historic Preservation Officers:

## ARKANSAS

### Searcy County

Leslie Commercial Historic District, 319–424 Main and 205 Oak Sts., Leslie, SG100001257

## CALIFORNIA

### San Bernardino County

Guapiabit—Serrano Homeland Archaeological District, Address Restricted, Hesperia vicinity, SG100001258

### DELAWARE

### Sussex County

Dinker—Irvin House, 310 Garfield Pkwy. Extended, Bethany Beach, SG100001259

## MASSACHUSETTS

### Worcester County

Worcester State Hospital Farmhouse, 361 Plantation St., Worcester, SG100001262

### NEW JERSEY

### Burlington County

Protestant Community Church of Medford Lakes, The 100 Stokes Rd., Medford Lakes Borough, SG100001263

### Essex County

Collins House, 108 Baldwin St., Bloomfield Township, SG100001264

## NEW YORK

### Niagara County

Niagara Power Project Historic District, 5777 Lewiston Rd. (Power Vista), Lewiston, SG100001265

### Rockland County

Tallman—Budke and Vanderbilt—Budke— Traphagen Houses, 131 Germonds Rd., Clarkstown, SG100001266

## OHIO

### Clark County

Lagonda State Bank, 2 E. Main St., Springfield, SG100001267

### Franklin County

Yuster Building, 150 E. Broad St., Columbus, SG100001268

### Hamilton County

Masonic Temple Price Hill Lodge, No. 524, 3301 Price Ave., Cincinnati, SG100001269

Traction Company Building, 432 Walnut St., Cincinnati, SG100001270

### Summit County

East Liberty School, District No. 11, 3492 S. Arlington St., Green, SG100001271

## OREGON

### Deschutes County

Troy Field, 690 NW. Bond St., Bend, SG100001272

### Lane County

Clearwater, Jacob, House, 1656 Clearwater Ln., Springfield, SG100001273

Triangle Lake Round Barn, 19941 OR 36, Blachly, SG100001274

### Multnomah County

Eastmoreland Historic District, (Historic Residential Suburbs in the United States, 1830–1960 MPS), The district is generally bounded on the north by SE Woodstock Boulevard, to the west by Eastmoreland Golf Course, Portland, MP100001256

Portland Sanitarium Nurses' Quarters, 6012 SE. Yamhill St., Portland, SG100001275

### Tillamook County

Pine Grove Community House, 225 Laneda Ave., Manzanita, SG100001276

A request for removal has been made for the following resource(s):

## TENNESSEE

### Hamblen County

Morristown College Historic District, 417 N. James St., Morristown, OT83003036

The State Historic Preservation Officer reviewed the following nomination and responded to the Federal Preservation Officer within 45 days of receipt of the nomination and supports listing the property in the National Register of Historic Places.

An additional documentation has been received for the following resource(s):

## MAINE

### Hancock County

Schoodic Peninsula Historic District (Additional Documentation), (Acadia National Park MPS), 1.5 mi. S of ME 186, Winter Harbor vicinity, AD07000614

**Authority:** 60.13 of 36 CFR part 60.

Dated: June 2, 2017.

**J. Paul Loether,**

*Chief, National Register of Historic Places/ National Historic Landmarks Program.*

[FR Doc. 2017–13483 Filed 6–27–17; 8:45 am]

**BILLING CODE 4312–52–P**

---

# INTERNATIONAL TRADE COMMISSION

## Summary of Commission Practice Relating to Administrative Protective Orders

**AGENCY:** U.S. International Trade Commission.

**ACTION:** Summary of Commission practice relating to administrative protective orders.

**SUMMARY:** Since February 1991, the U.S. International Trade Commission/ ("Commission") has published in the **Federal Register** reports on the status of its practice with respect to violations of its administrative protective orders ("APOs") under title VII of the Tariff Act of 1930, in response to a direction contained in the Conference Report to the Customs and Trade Act of 1990. Over time, the Commission has added to its report discussions of APO breaches in Commission proceedings other than under title VII and violations of the Commission's rules including the rule on bracketing business proprietary information ("BPI") (the "24-hour

rule''). This notice provides a summary of breach investigations (APOB investigations) completed during calendar year 2015. This summary addresses one APOB investigation related to a proceeding under title VII of the Tariff Act of 1930 and four APOB investigations related to proceedings under section 337 of the Tariff Act of 1930, two of which were related to the same proceedings and were combined. The Commission investigated rules violations as part of one of the APOB investigations. The Commission intends that this report inform representatives of parties to Commission proceedings as to some specific types of APO breaches encountered by the Commission and the corresponding types of actions the Commission has taken.

**FOR FURTHER INFORMATION CONTACT:** Ron Traud, Esq., Office of the General Counsel, U.S. International Trade Commission, telephone (202) 205–3088. Hearing impaired individuals are advised that information on this matter can be obtained by contacting the Commission's TDD terminal at (202) 205–1810.

General information concerning the Commission can also be obtained by accessing its Web site (*http://www.usitc.gov*).

**SUPPLEMENTARY INFORMATION:** Representatives of parties to investigations or other proceedings conducted under title VII of the Tariff Act of 1930, section 337 of the Tariff Act of 1930, the North American Free Trade Agreement (NAFTA) Article 1904.13, and safeguard-related provisions such as section 202 of the Trade Act of 1974, may enter into APOs that permit them, under strict conditions, to obtain access to BPI (title VII) and confidential business information (''CBI'') (safeguard-related provisions and section 337) of other parties or non-parties. *See, e.g.,* 19 U.S.C. 1677f; 19 CFR 207.7; 19 U.S.C. 1337(n); 19 CFR 210.5, 210.34; 19 U.S.C. 2252(i); 19 CFR 206.17; 19 U.S.C. 1516a(g)(7)(A); and 19 CFR 207.100, *et. seq.* The discussion below describes APO breach investigations that the Commission has completed during calendar year 2015, including a description of actions taken in response to these breaches.

Since 1991, the Commission has regularly published a summary of its actions in response to violations of Commission APOs and rule violations. *See* 56 FR 4846 (February 6, 1991); 57 FR 12335 (April 9, 1992); 58 FR 21991 (April 26, 1993); 59 FR 16834 (April 8, 1994); 60 FR 24880 (May 10, 1995); 61 FR 21203 (May 9, 1996); 62 FR 13164 (March 19, 1997); 63 FR 25064 (May 6,

1998); 64 FR 23355 (April 30, 1999); 65 FR 30434 (May 11, 2000); 66 FR 27685 (May 18, 2001); 67 FR 39425 (June 7, 2002); 68 FR 28256 (May 23, 2003); 69 FR 29972 (May 26, 2004); 70 FR 42382 (July 25, 2005); 71 FR 39355 (July 12, 2006); 72 FR 50119 (August 30, 2007); 73 FR 51843 (September 5, 2008); 74 FR 54071 (October 21, 2009); 75 FR 54071 (October 27, 2010), 76 FR 78945 (December 20, 2011), 77 FR 76518 (December 28, 2012), 78 FR 79481 (December 30, 2013), 80 FR 1664 (January 13, 2015) and 81 FR 17200 (March 28, 2016). This report does not provide an exhaustive list of conduct that will be deemed to be a breach of the Commission's APOs. APO breach inquiries are considered on a case-by-case basis.

As part of the effort to educate practitioners about the Commission's current APO practice, the Commission Secretary issued in March 2005 a fourth edition of *An Introduction to Administrative Protective Order Practice in Import Injury Investigations* (Pub. No. 3755). This document is available upon request from the Office of the Secretary, U.S. International Trade Commission, 500 E Street SW., Washington, DC 20436, tel. (202) 205–2000 and on the Commission's Web site at *http://www.usitc.gov.*

## I. In General

### A. Antidumping and Countervailing Duty Investigations

The current APO form for antidumping and countervailing duty investigations, which was revised in March 2005, requires the applicant to swear that he or she will:

(1) Not divulge any of the BPI disclosed under this APO or otherwise obtained in this investigation and not otherwise available to him or her, to any person other than—

(i) Personnel of the Commission concerned with the investigation,

(ii) The person or agency from whom the BPI was obtained,

(iii) A person whose application for disclosure of BPI under this APO has been granted by the Secretary, and

(iv) Other persons, such as paralegals and clerical staff, who (a) are employed or supervised by and under the direction and control of the authorized applicant or another authorized applicant in the same firm whose application has been granted; (b) have a need thereof in connection with the investigation; (c) are not involved in competitive decision making for an interested party which is a party to the investigation; and (d) have signed the acknowledgment for clerical personnel

in the form attached hereto (the authorized applicant shall also sign such acknowledgment and will be deemed responsible for such persons' compliance with this APO);

(2) Use such BPI solely for the purposes of the above-captioned Commission investigation or for judicial or binational panel review of such Commission investigation;

(3) Not consult with any person not described in paragraph (1) concerning BPI disclosed under this APO or otherwise obtained in this investigation without first having received the written consent of the Secretary and the party or the representative of the party from whom such BPI was obtained;

(4) Whenever materials *e.g.,* documents, computer disks, etc. containing such BPI are not being used, store such material in a locked file cabinet, vault, safe, or other suitable container (N.B.: Storage of BPI on so-called hard disk computer media is to be avoided, because mere erasure of data from such media may not irrecoverably destroy the BPI and may result in violation of paragraph C of this APO);

(5) Serve all materials containing BPI disclosed under this APO as directed by the Secretary and pursuant to section 207.7(f) of the Commission's rules;

(6) Transmit each document containing BPI disclosed under this APO:

(i) With a cover sheet identifying the document as containing BPI,

(ii) with all BPI enclosed in brackets and each page warning that the document contains BPI,

(iii) if the document is to be filed by a deadline, with each page marked ''Bracketing of BPI not final for one business day after date of filing,'' and

(iv) if by mail, within two envelopes, the inner one sealed and marked ''Business Proprietary Information—To be opened only by [name of recipient]'', and the outer one sealed and not marked as containing BPI;

(7) Comply with the provision of this APO and section 207.7 of the Commission's rules;

(8) Make true and accurate representations in the authorized applicant's application and promptly notify the Secretary of any changes that occur after the submission of the application and that affect the representations made in the application (*e.g.,* change in personnel assigned to the investigation);

(9) Report promptly and confirm in writing to the Secretary any possible breach of this APO; and

(10) Acknowledge that breach of this APO may subject the authorized

applicant and other persons to such sanctions or other actions as the Commission deems appropriate, including the administrative sanctions and actions set out in this APO.

The APO form for antidumping and countervailing duty investigations also provides for the return or destruction of the BPI obtained under the APO on the order of the Secretary, at the conclusion of the investigation, or at the completion of Judicial Review. The BPI disclosed to an authorized applicant under an APO during the preliminary phase of the investigation generally may remain in the applicant's possession during the final phase of the investigation.

The APO further provides that breach of an APO may subject an applicant to:

(1) Disbarment from practice in any capacity before the Commission along with such person's partners, associates, employer, and employees, for up to seven years following publication of a determination that the order has been breached;

(2) Referral to the United States Attorney;

(3) In the case of an attorney, accountant, or other professional, referral to the ethics panel of the appropriate professional association;

(4) Such other administrative sanctions as the Commission determines to be appropriate, including public release of, or striking from the record any information or briefs submitted by, or on behalf of, such person or the party he represents; denial of further access to business proprietary information in the current or any future investigations before the Commission, and issuance of a public or private letter of reprimand; and

(5) Such other actions, including but not limited to, a warning letter, as the Commission determines to be appropriate.

APOs in safeguard investigations contain similar though not identical provisions.

## B. Section 337 Investigations

The APOs in section 337 investigations differ from those in title VII investigations as there is no set form and provisions may differ depending on the investigation and the presiding administrative law judge. However, in practice, the provisions are often quite similar. Any person seeking access to CBI during a section 337 investigation including outside counsel for parties to the investigation, secretarial and support personnel assisting such counsel, and technical experts and their staff who are employed for the purposes of the investigation is required to read the APO, agree to its terms by letter filed

with the Secretary of the Commission indicating that he or she agrees to be bound by the terms of the Order, agree not to reveal CBI to anyone other than another person permitted access by the Order, and agree to utilize the CBI solely for the purposes of that investigation.

In general, an APO in a section 337 investigation will define what kind of information is CBI and direct how CBI is to be designated and protected. The APO will state what persons will have access to the CBI and which of those persons must sign onto the APO. The APO will provide instructions on how CBI is to be maintained and protected by labeling documents and filing transcripts under seal. It will provide protections for the suppliers of CBI by notifying them of a Freedom of Information Act request for the CBI and providing a procedure for the supplier to take action to prevent the release of the information. There are provisions for disputing the designation of CBI and a procedure for resolving such disputes. Under the APO, suppliers of CBI are given the opportunity to object to the release of the CBI to a proposed expert. The APO requires a person who discloses CBI, other than in a manner authorized by the APO, to provide all pertinent facts to the supplier of the CBI and to the administrative law judge and to make every effort to prevent further disclosure. The APO requires all parties to the APO to either return to the suppliers or destroy the originals and all copies of the CBI obtained during the investigation.

The Commission's regulations provide for certain sanctions to be imposed if the APO is violated by a person subject to its restrictions. The names of the persons being investigated for violating an APO are kept confidential unless the sanction imposed is a public letter of reprimand. 19 CFR 210.34(c)(1). The possible sanctions are:

(1) An official reprimand by the Commission.

(2) Disqualification from or limitation of further participation in a pending investigation.

(3) Temporary or permanent disqualification from practicing in any capacity before the Commission pursuant to 19 CFR 201.15(a).

(4) Referral of the facts underlying the violation to the appropriate licensing authority in the jurisdiction in which the individual is licensed to practice.

(5) Making adverse inferences and rulings against a party involved in the violation of the APO or such other action that may be appropriate. 19 CFR 210.34(c)(3).

Commission employees are not signatories to the Commission's APOs and do not obtain access to BPI or CBI through APO procedures. Consequently, they are not subject to the requirements of the APO with respect to the handling of CBI and BPI. However, Commission employees are subject to strict statutory and regulatory constraints concerning BPI and CBI, and face potentially severe penalties for noncompliance. *See* 18 U.S.C. 1905; title 5, U.S. Code; and Commission personnel policies implementing the statutes. Although the Privacy Act (5 U.S.C. 552a) limits the Commission's authority to disclose any personnel action against agency employees, this should not lead the public to conclude that no such actions have been taken.

## II. Investigations of Alleged APO Breaches

Upon finding evidence of an APO breach or receiving information that there is a reason to believe one has occurred, the Commission Secretary notifies relevant offices in the agency that an APO breach investigation has commenced and that an APO breach investigation file has been opened. Upon receiving notification from the Secretary, the Office of the General Counsel ("OGC") prepares a letter of inquiry to be sent to the possible breacher over the Secretary's signature to ascertain the facts and obtain the possible breacher's views on whether a breach has occurred.[1] If, after reviewing the response and other relevant information, the Commission determines that a breach has occurred, the Commission often issues a second letter asking the breacher to address the questions of mitigating circumstances and possible sanctions or other actions. The Commission then determines what action to take in response to the breach. In some cases, the Commission determines that, although a breach has occurred, sanctions are not warranted, and therefore finds it unnecessary to issue a second letter concerning what sanctions might be appropriate. Instead, it issues a warning letter to the individual. A warning letter is not considered to be a sanction. However, a warning letter is considered in a subsequent APO breach investigation.

Sanctions for APO violations serve three basic interests: (a) Preserving the

---

[1] Procedures for inquiries to determine whether a prohibited act such as a breach has occurred and for imposing sanctions for violation of the provisions of a protective order issued during NAFTA panel or committee proceedings are set out in 19 CFR 207.100–207.120. Those investigations are initially conducted by the Commission's Office of Unfair Import Investigations.

confidence of submitters of BPI/CBI that the Commission is a reliable protector of BPI/CBI; (b) disciplining breachers; and (c) deterring future violations. As the Conference Report to the Omnibus Trade and Competitiveness Act of 1988 observed, ''[T]he effective enforcement of limited disclosure under administrative protective order depends in part on the extent to which private parties have confidence that there are effective sanctions against violation.'' H.R. Conf. Rep. No. 576, 100th Cong., 1st Sess. 623 (1988).

The Commission has worked to develop consistent jurisprudence, not only in determining whether a breach has occurred, but also in selecting an appropriate response. In determining the appropriate response, the Commission generally considers mitigating factors such as the unintentional nature of the breach, the lack of prior breaches committed by the breaching party, the corrective measures taken by the breaching party, and the promptness with which the breaching party reported the violation to the Commission. The Commission also considers aggravating circumstances, especially whether persons not under the APO actually read the BPI/CBI. The Commission considers whether there have been prior breaches by the same person or persons in other investigations and multiple breaches by the same person or persons in the same investigation.

The Commission's rules permit an economist or consultant to obtain access to BPI/CBI under the APO in a title VII or safeguard investigation if the economist or consultant is under the direction and control of an attorney under the APO, or if the economist or consultant appears regularly before the Commission and represents an interested party who is a party to the investigation. 19 CFR 207.7(a)(3)(B) and (C); 19 CFR 206.17(a)(3)(B) and (C). Economists and consultants who obtain access to BPI/CBI under the APO under the direction and control of an attorney nonetheless remain individually responsible for complying with the APO. In appropriate circumstances, for example, an economist under the direction and control of an attorney may be held responsible for a breach of the APO by failing to redact APO information from a document that is subsequently filed with the Commission and served as a public document. This is so even though the attorney exercising direction or control over the economist or consultant may also be held responsible for the breach of the APO. In section 337 investigations, technical experts and their staff who are

employed for the purposes of the investigation are required to sign onto the APO and agree to comply with its provisions.

The records of Commission investigations of alleged APO breaches in antidumping and countervailing duty cases, section 337 investigations, and safeguard investigations are not publicly available and are exempt from disclosure under the Freedom of Information Act, 5 U.S.C. 552. *See* 19 U.S.C. 1677f(g), 19 U.S.C. 1333(h), 19 CFR 210.34(c).

The two types of breaches most frequently investigated by the Commission involve the APO's prohibition on the dissemination of BPI or CBI to unauthorized persons and the APO's requirement that the materials received under the APO be returned or destroyed and that a certificate be filed indicating which action was taken after the termination of the investigation or any subsequent appeals of the Commission's determination. The dissemination of BPI/CBI usually occurs as the result of failure to delete BPI/CBI from public versions of documents filed with the Commission or transmission of proprietary versions of documents to unauthorized recipients. Other breaches have included the failure to bracket properly BPI/CBI in proprietary documents filed with the Commission, the failure to report immediately known violations of an APO, and the failure to adequately supervise non-lawyers in the handling of BPI/CBI.

Occasionally, the Commission conducts APOB investigations that involve members of a law firm or consultants working with a firm who were granted access to APO materials by the firm although they were not APO signatories. In many of these cases, the firm and the person using the BPI/CBI mistakenly believed an APO application had been filed for that person. The Commission determined in all of these cases that the person who was a non-signatory, and therefore did not agree to be bound by the APO, could not be found to have breached the APO. Action could be taken against these persons, however, under Commission rule 201.15 (19 CFR 201.15) for good cause shown. In all cases in which action was taken, the Commission decided that the non-signatory was a person who appeared regularly before the Commission and was aware of the requirements and limitations related to APO access and should have verified his or her APO status before obtaining access to and using the BPI/CBI. The Commission notes that section 201.15 may also be available to issue sanctions to attorneys or agents in different factual

circumstances in which they did not technically breach the APO, but when their actions or inactions did not demonstrate diligent care of the APO materials even though they appeared regularly before the Commission and were aware of the importance the Commission placed on the care of APO materials.

Counsel participating in Commission investigations have reported to the Commission potential breaches involving the electronic transmission of public versions of documents. In these cases, the document transmitted appears to be a public document with BPI or CBI omitted from brackets. However, the confidential information is actually retrievable by manipulating codes in software. The Commission has found that the electronic transmission of a public document containing BPI or CBI in a recoverable form was a breach of the APO.

Counsel have been cautioned to be certain that each authorized applicant files within 60 days of the completion of an import injury investigation or at the conclusion of judicial or binational review of the Commission's determination a certificate that to his or her knowledge and belief all copies of BPI/CBI have been returned or destroyed and no copies of such material have been made available to any person to whom disclosure was not specifically authorized. This requirement applies to each attorney, consultant, or expert in a firm who has been granted access to BPI/CBI. One firm-wide certificate is insufficient.

Attorneys who are signatories to the APO representing clients in a section 337 investigation should inform the administrative law judge and the Commission's secretary if there are any changes to the information that was provided in the application for access to the CBI. This is similar to the requirement to update an applicant's information in title VII investigations.

In addition, attorneys who are signatories to the APO representing clients in a section 337 investigation should send a notice to the Commission if they stop participating in the investigation or the subsequent appeal of the Commission's determination. The notice should inform the Commission about the disposition of CBI obtained under the APO that was in their possession or they could be held responsible for any failure of their former firm to return or destroy the CBI in an appropriate manner.

## III. Specific APO Breach Investigations

*Case 1.* A lead attorney and and the attorney' partner, both subject to the

APO, directed their executive assistant, also subject to the APO, to electronically file the public version of their clients' post-conference brief in a Title VII investigation. Although BPI had been redacted from the brief, the BPI could be restored in the electronic version of the brief. The brief was filed with the Commission and was placed on the Commission's Electronic Document Information System ("EDIS") as a public document. The lead attorney then emailed electronic copies of the brief to his clients and a trade publication, which posted a downloadable copy of the brief on its Web site. None of these recipients were authorized to access the BPI.

Five days after the brief was filed with the Commission, an attorney in the law firm, who was subject to the APO, discovered the breach and brought it to the attention of another attorney who was also subject to the APO. That attorney immediately telephoned the Commission and the trade publication to ask that the brief be removed from public view. The executive assistant then refiled a corrected version of the brief with the Commission and emailed the corrected version to the trade publication. At the same time, the lead attorney emailed each of his clients asking them to delete his previous email, and subsequently asked them to execute a certification that all copies of the brief had been destroyed and that no BPI had been viewed. Less than a week later, the lead attorney filed a letter with the Commission detailing the circumstances of the possible APO breach and the remedial steps taken.

The Commission determined to sanction the lead attorney, the partner, and the executive assistant, by issuing private letters of reprimand. The Commission considered the mitigating factors that the breach was unintentional, no employee of the law firm in question has been found to have breached an APO in the past two years, the law firm took immediate corrective measures upon learning of the potential breach, and immediately reported the potential breach to the Commission. Additionally, the law firm has adopted new APO procedures intended to prevent the recurrence of a similar breach in the future. The Commission also considered the aggravating factors that BPI may have been viewed by unauthorized persons, as the document containing retrievable BPI was available to unauthorized persons for five days on EDIS and for up to two days on the trade publication's Web site, and was emailed or forwarded to 37 clients and witnesses, none of whom were on the APO.

*Case 2.* The Commission determined that two attorneys breached an APO in an earlier section 337 investigation when they attached two documents containing CBI, but labelled public, to the complaint in a new section 337 investigation. In addition, the same materials were sent to the Patent and Trademark Office (PTO), along with additional CBI produced by two other respondents in the earlier investigation, as part of the prosecution history in the reexamination of a patent at issue in both the earlier and current section 337 investigations.

These materials were made available to and were accessed by persons not subject to the APO in the earlier investigation. Access by non-signatories of the APO was confirmed by the audit trail for EDIS. In addition, the CBI was available on the PTO's public record for a short period of time.

The Commission determined to sanction the two attorneys who breached the APO by issuing private letters of reprimand. The Commission considered the mitigating factors that the breach was unintentional, the two attorneys had not breached an APO within the last two years, the breach was properly reported to the Commission, and detailed protocols for handling CBI have since been implemented at the firm where the breach originated. The two attorneys also kept the Commission promptly informed of the status of their continuing efforts to mitigate the breach, including expunging the documents containing CBI that were released to the PTO, and securing confirmation from those who received the documents that their copies had been destroyed.

The Commission also considered the significant aggravating circumstances that the CBI was seen by non-signatories to the APO, and the breaches resulted in two disclosures, through EDIS and the PTO. Additionally, the law firm where the breaches originated did not discover the breaches, but rather was informed by an attorney for a respondent in the earlier section 337 investigation about the CBI labeled as public attached to the complaint in the new investigation.

*Case 3.* The Commission determined that an attorney at a law firm breached the APO issued in a section 337 investigation when the attorney inadvertently submitted to the U.S. Court of Appeals for the Federal Circuit ("CAFC") a Commission opinion containing CBI. The opinion was attached to the filing of a non-confidential version of a motion. The Federal Circuit uploaded the document to the court's electronic filing system, and the CBI was publicly available for

approximately thirteen weeks before the attorney discovered the disclosure. The attorney immediately reported the disclosure to the Commission and took steps to remedy the breach.

The Commission determined to issue the attorney a private letter of reprimand for breaching the APO. The Commission considered the mitigating factors that the breach was unintentional and that it was discovered by the breaching party. In addition, the attorney promptly notified opposing counsel, the Commission, and the Court regarding the breach and immediately undertook steps to remedy the breach. Finally, the Commission had not found the attorney to be in breach of a Commission APO within the previous two years. The Commission also considered the aggravating factor that the CBI in question was publicly available on the Court's electronic filing system for an extended period of time and therefore was presumably viewed by unauthorized persons.

*Case 4.* Two law firms in a section 337 investigation were responsible for three breaches of the APO. One firm self-reported that seven of its attorneys and two outside consultants had accessed CBI prior to filing protective order acknowledgements. Shortly thereafter another firm involved in the investigation self-reported that four of its attorneys had accessed CBI prior to filing protective order acknowledgements. The Commission determined to send warning letters to these attorneys and consultants pursuant to Commission rule 201.15(a), 19 CFR 201.15(a), due to their use of CBI in the investigation prior to filing a protective order acknowledgement.

The Commission determined that the supervisory attorneys responsible for this section 337 investigation in the two firms violated the APO by failing to adequately supervise access to and the handling of CBI by firm attorneys and outside consultants, thereby contributing to or directly disclosing CBI to unauthorized persons. The Commission issued warning letters to the supervisory attorneys in both firms.

The first of the two law firms also self-reported that it had filed a public brief with an attachment containing CBI with the CAFC. This APO violation was initially given a separate APOB investigation number and subsequently combined with the other breaches for the purposes of investigation. The brief was not made available to the public and was replaced with a version in which the CBI was removed. This brief had been transmitted to four clients of the firm who were not subject to the APO. They were contacted and were

able to delete the email transmitting the document before they had read the document with the CBI. For this breach the Commission issued warning letters to the two attorneys responsible for filing and transmitting the brief with the attachment containing CBI.

The Commission issued a private letter of reprimand to the law firm. The Commission considered certain mitigating circumstances. These included that the breaches were unintentional, the breaching parties had no prior breaches within the previous two years, the breaching parties took corrective measures to prevent a breach in the future, and the breaches were promptly self-reported to the Commission. With regard to the private letter of reprimand sent to the law firm, the Commission considered the aggravating circumstance that the firm was involved in two violations of the APO issued in the same section 337 investigation. The Commission found that the firm failed to adequately control access to CBI in the investigation and the appeal of the investigation to the CAFC.

*Case 5.* This APOB investigation was instituted regarding the filing at the CAFC of a public brief with CBI contained in an attachment. That investigation was combined with *Case 4* and is discussed above.

By order of the Commission.

Issued: June 22, 2017.

**Lisa R. Barton,**

*Secretary to the Commission.*

[FR Doc. 2017–13486 Filed 6–27–17; 8:45 am]

**BILLING CODE 7020–02–P**

---

## INTERNATIONAL TRADE COMMISSION

**[Investigation Nos. 701–TA–582 and 731–TA–1377 (Preliminary)]**

## Ripe Olives From Spain; Institution of Antidumping and Countervailing Duty Investigations and Scheduling of Preliminary Phase Investigations

**AGENCY:** United States International Trade Commission.

**ACTION:** Notice.

**SUMMARY:** The Commission hereby gives notice of the institution of investigations and commencement of preliminary phase antidumping and countervailing duty investigation Nos. 701–TA–582 and 731–TA–1377 (Preliminary) pursuant to the Tariff Act of 1930 ("the Act") to determine whether there is a reasonable indication that an industry in the United States is materially injured or threatened with material injury, or the establishment of an industry in the United States is materially retarded, by reason of imports of ripe olives from Spain, provided for in subheadings 2005.70.02, 2005.70.04, 2005.70.06, 2005.70.08, 2005.70.12, 2005.70.16, 2005.70.18, 2005.70.23, 2005.70.25, 2005.70.50, 2005.70.60, 2005.70.70, 2005.70.75, 2005.70.91, 2005.70.93, and 2005.70.97 of the Harmonized Tariff Schedule of the United States, that are alleged to be sold in the United States at less than fair value and alleged to be subsidized by the Government of Spain. Unless the Department of Commerce extends the time for initiation, the Commission must reach a preliminary determination in antidumping and countervailing duty investigations in 45 days, or in this case by August 7, 2017. The Commission's views must be transmitted to Commerce within five business days thereafter, or by August 14, 2017.

**DATES:** *Effective Date:* June 22, 2017.

**FOR FURTHER INFORMATION CONTACT:** Jordan Harriman (202–205–2610), Office of Investigations, U.S. International Trade Commission, 500 E Street SW., Washington, DC 20436. Hearing-impaired persons can obtain information on this matter by contacting the Commission's TDD terminal on 202–205–1810. Persons with mobility impairments who will need special assistance in gaining access to the Commission should contact the Office of the Secretary at 202–205–2000. General information concerning the Commission may also be obtained by accessing its internet server (*https://www.usitc.gov*). The public record for this investigation may be viewed on the Commission's electronic docket (EDIS) at *https://edis.usitc.gov*.

**SUPPLEMENTARY INFORMATION:**

*Background.*—These investigations are being instituted, pursuant to sections 703(a) and 733(a) of the Tariff Act of 1930 (19 U.S.C. 1671b(a) and 1673b(a)), in response to a petition deemed filed on June 22, 2017, by the Coalition for Fair Trade in Ripe Olives, consisting of Bell-Carter Foods, Walnut Creek, CA, and Musco Family Olive Company, Tracy, CA.

For further information concerning the conduct of these investigations and rules of general application, consult the Commission's Rules of Practice and Procedure, part 201, subparts A and B (19 CFR part 201), and part 207, subparts A and B (19 CFR part 207).

*Participation in the investigations and public service list.*—Persons (other than petitioners) wishing to participate in the investigations as parties must file an entry of appearance with the Secretary to the Commission, as provided in sections 201.11 and 207.10 of the Commission's rules, not later than seven days after publication of this notice in the **Federal Register**. Industrial users and (if the merchandise under investigation is sold at the retail level) representative consumer organizations have the right to appear as parties in Commission antidumping duty and countervailing duty investigations. The Secretary will prepare a public service list containing the names and addresses of all persons, or their representatives, who are parties to these investigations upon the expiration of the period for filing entries of appearance.

*Limited disclosure of business proprietary information (BPI) under an administrative protective order (APO) and BPI service list.*—Pursuant to section 207.7(a) of the Commission's rules, the Secretary will make BPI gathered in these investigations available to authorized applicants representing interested parties (as defined in 19 U.S.C. 1677(9)) who are parties to the investigations under the APO issued in the investigations, provided that the application is made not later than seven days after the publication of this notice in the **Federal Register**. A separate service list will be maintained by the Secretary for those parties authorized to receive BPI under the APO.

*Conference.*—The Commission's Director of Investigations has scheduled a conference in connection with these investigations for 9:30 a.m. on Wednesday, July 12, 2017, at the U.S. International Trade Commission Building, 500 E Street SW., Washington, DC. Requests to appear at the conference should be emailed to *William.bishop@usitc.gov* and *Sharon.bellamy@usitc.gov* (DO NOT FILE ON EDIS) on or before July 10, 2017. Parties in support of the imposition of countervailing and antidumping duties in these investigations and parties in opposition to the imposition of such duties will each be collectively allocated one hour within which to make an oral presentation at the conference. A nonparty who has testimony that may aid the Commission's deliberations may request permission to present a short statement at the conference.

*Written submissions.*—As provided in sections 201.8 and 207.15 of the Commission's rules, any person may submit to the Commission on or before July 17, 2017, a written brief containing information and arguments pertinent to the subject matter of the investigations. Parties may file written testimony in connection with their presentation at the conference. All written submissions

modified to include an additional 4.84 acres of land that is immediately adjacent to the southeast boundary of the historic site. The United States by will acquire, by donation, the tract from the current owner, Wells Fargo Bank. This property will be included within the Carl Sandburg Home National Historic Site upon completion of the minor boundary adjustment.

**DATES:** The applicable date of this boundary revision is April 24, 2018.

**ADDRESSES:** The map depicting this boundary revision is National Park Service, Southeast Region Land Resources Program Center, 1924 Building, 100 Alabama Street SW, Atlanta, Georgia 30303 and National Park Service, Department of the Interior, 1849 C Street NW, Washington, DC 20240.

**FOR FURTHER INFORMATION CONTACT:** National Park Service, Anthony B. Marshall, Acting Chief, Southeast Region Land Resources Program Center, 1924 Building, 100 Alabama Street SW, Atlanta, Georgia 30303, telephone 404–507–5659.

**SUPPLEMENTARY INFORMATION:** Specifically, 54 U.S.C. 100506(c)(1) provides that, after notifying the House Committee on Natural Resources and the Senate Committee on Energy and Natural Resources, the Secretary of the Interior is authorized to make this boundary revision upon publication of notice in the **Federal Register**. The boundary revision is depicted on Map No. 445/135,029 dated May 2017.

The Committees have been notified of this boundary revision. This boundary revision and subsequent acquisition of Tract 01–110 will enable the National Park Service to manage and protect significant resources located in the Carl Sandburg Home National Historic Site.

Dated: March 28, 2018.

**Lance Hatten,**

*Acting Regional Director, Southeast Region.*

[FR Doc. 2018–08449 Filed 4–23–18; 8:45 am]

**BILLING CODE 4312–52–P**

---

## INTERNATIONAL TRADE COMMISSION

### Summary of Commission Practice Relating to Administrative Protective Orders

**AGENCY:** U.S. International Trade Commission.

**ACTION:** Summary of Commission practice relating to administrative protective orders.

---

**SUMMARY:** Since February 1991, the U.S. International Trade Commission

("Commission") has published in the **Federal Register** reports on the status of its practice with respect to violations of its administrative protective orders ("APOs") under title VII of the Tariff Act of 1930, in response to a direction contained in the Conference Report to the Customs and Trade Act of 1990. Over time, the Commission has added to its report discussions of APO breaches in Commission proceedings other than under title VII and violations of the Commission's rules including the rule on bracketing business proprietary information ("BPI") (the "24-hour rule"). This notice provides a summary of breach investigations (APOB investigations) completed during calendar year 2016. This summary addresses two APOB investigations related to proceedings under title VII of the Tariff Act of 1930 and seven APOB investigations related to proceedings under section 337 of the Tariff Act of 1930, two of which were combined and which were related to the same proceedings under section 337. The Commission investigated rules violations as part of two of the APOB investigations. The Commission intends that this report inform representatives of parties to Commission proceedings as to some specific types of APO breaches encountered by the Commission and the corresponding types of actions the Commission has taken.

**FOR FURTHER INFORMATION CONTACT:** Ronald A. Traud, Esq., Office of the General Counsel, U.S. International Trade Commission, telephone (202) 205–3427. Hearing impaired individuals are advised that information on this matter can be obtained by contacting the Commission's TDD terminal at (202) 205–1810. General information concerning the Commission can also be obtained by accessing its website (*https://www.usitc.gov*).

**SUPPLEMENTARY INFORMATION:** Representatives of parties to investigations or other proceedings conducted under title VII of the Tariff Act of 1930, section 337 of the Tariff Act of 1930, the North American Free Trade Agreement (NAFTA) Article 1904.13, and safeguard-related provisions such as section 202 of the Trade Act of 1974, may enter into APOs that permit them, under strict conditions, to obtain access to BPI (title VII) and confidential business information ("CBI") (safeguard-related provisions and section 337) of other parties or non-parties. *See, e.g.,* 19 U.S.C. 1677f; 19 CFR 207.7; 19 U.S.C. 1337(n); 19 CFR. 210.5, 210.34; 19 U.S.C. 2252(i); 19 CFR 206.17; 19 U.S.C. 1516a(g)(7)(A); and 19 CFR 207.100, *et. seq.* The discussion

below describes APO breach investigations that the Commission has completed during calendar year 2016, including a description of actions taken in response to these breaches.

Since 1991, the Commission has published annually a summary of its actions in response to violations of Commission APOs and rule violations. *See* 56 FR 4846 (February 6, 1991); 57 FR 12335 (April 9, 1992); 58 FR 21991 (April 26, 1993); 59 FR 16834 (April 8, 1994); 60 FR 24880 (May 10, 1995); 61 FR 21203 (May 9, 1996); 62 FR 13164 (March 19, 1997); 63 FR 25064 (May 6, 1998); 64 FR 23355 (April 30, 1999); 65 FR 30434 (May 11, 2000); 66 FR 27685 (May 18, 2001); 67 FR 39425 (June 7, 2002); 68 FR 28256 (May 23, 2003); 69 FR 29972 (May 26, 2004); 70 FR 42382 (July 25, 2005); 71 FR 39355 (July 12, 2006); 72 FR 50119 (August 30, 2007); 73 FR 51843 (September 5, 2008); 74 FR 54071 (October 21, 2009); 75 FR 54071 (October 27, 2010), 76 FR 78945 (December 20, 2011), 77 FR 76518 (December 28, 2012), 78 FR 79481 (December 30, 2013), 80 FR 1664 (January 13, 2015), 81 FR 17200 (March 28, 2016), and 82 FR 29322 (June 28, 2017). This report does not provide an exhaustive list of conduct that will be deemed to be a breach of the Commission's APOs. APO breach inquiries are considered on a case-by-case basis.

As part of the effort to educate practitioners about the Commission's current APO practice, the Commission Secretary issued in March 2005 a fourth edition of *An Introduction to Administrative Protective Order Practice in Import Injury Investigations* (Pub. No. 3755). This document is available upon request from the Office of the Secretary, U.S. International Trade Commission, 500 E Street SW, Washington, DC 20436, tel. (202) 205–2000 and on the Commission's website at *http://www.usitc.gov*.

### I. In General

#### A. Antidumping and Countervailing Duty Investigations

The current APO form for antidumping and countervailing duty investigations, which was revised in March 2005, requires the applicant to swear that he or she will:

(1) Not divulge any of the BPI disclosed under this APO or otherwise obtained in this investigation and not otherwise available to him or her, to any person other than—

(i) Personnel of the Commission concerned with the investigation,

(ii) The person or agency from whom the BPI was obtained,

**17844**   **Federal Register** / Vol. 83, No. 79 / Tuesday, April 24, 2018 / Notices

(iii) A person whose application for disclosure of BPI under this APO has been granted by the Secretary, and

(iv) Other persons, such as paralegals and clerical staff, who (a) are employed or supervised by and under the direction and control of the authorized applicant or another authorized applicant in the same firm whose application has been granted; (b) have a need thereof in connection with the investigation; (c) are not involved in competitive decision making for an interested party which is a party to the investigation; and (d) have signed the acknowledgment for clerical personnel in the form attached hereto (the authorized applicant shall also sign such acknowledgment and will be deemed responsible for such persons' compliance with this APO);

(2) Use such BPI solely for the purposes of the above-captioned Commission investigation or for judicial or binational panel review of such Commission investigation;

(3) Not consult with any person not described in paragraph (1) concerning BPI disclosed under this APO or otherwise obtained in this investigation without first having received the written consent of the Secretary and the party or the representative of the party from whom such BPI was obtained;

(4) Whenever materials *e.g.,* documents, computer disks, etc. containing such BPI are not being used, store such material in a locked file cabinet, vault, safe, or other suitable container (N.B.: Storage of BPI on so-called hard disk computer media is to be avoided, because mere erasure of data from such media may not irrecoverably destroy the BPI and may result in violation of paragraph C of this APO);

(5) Serve all materials containing BPI disclosed under this APO as directed by the Secretary and pursuant to section 207.7(f) of the Commission's rules;

(6) Transmit each document containing BPI disclosed under this APO:

(i) With a cover sheet identifying the document as containing BPI,

(ii) with all BPI enclosed in brackets and each page warning that the document contains BPI,

(iii) if the document is to be filed by a deadline, with each page marked "Bracketing of BPI not final for one business day after date of filing," and

(iv) if by mail, within two envelopes, the inner one sealed and marked "Business Proprietary Information—To be opened only by [name of recipient]", and the outer one sealed and not marked as containing BPI;

(7) Comply with the provision of this APO and section 207.7 of the Commission's rules;

(8) Make true and accurate representations in the authorized applicant's application and promptly notify the Secretary of any changes that occur after the submission of the application and that affect the representations made in the application (*e.g.,* change in personnel assigned to the investigation);

(9) Report promptly and confirm in writing to the Secretary any possible breach of this APO; and

(10) Acknowledge that breach of this APO may subject the authorized applicant and other persons to such sanctions or other actions as the Commission deems appropriate, including the administrative sanctions and actions set out in this APO.

The APO form for antidumping and countervailing duty investigations also provides for the return or destruction of the BPI obtained under the APO on the order of the Secretary, at the conclusion of the investigation, or at the completion of Judicial Review. The BPI disclosed to authorized applicant under an APO during the preliminary phase of the investigation generally may remain in the applicant's possession during the final phase of the investigation.

The APO further provides that breach of an APO may subject an applicant to:

(1) Disbarment from practice in any capacity before the Commission along with such person's partners, associates, employer, and employees, for up to seven years following publication of a determination that the order has been breached;

(2) Referral to the United States Attorney;

(3) In the case of an attorney, accountant, or other professional, referral to the ethics panel of the appropriate professional association;

(4) Such other administrative sanctions as the Commission determines to be appropriate, including public release of, or striking from the record any information or briefs submitted by, or on behalf of, such person or the party he represents; denial of further access to business proprietary information in the current or any future investigations before the Commission, and issuance of a public or private letter of reprimand; and

(5) Such other actions, including but not limited to, a warning letter, as the Commission determines to be appropriate.

APOs in safeguard investigations contain similar though not identical provisions.

## B. Section 337 Investigations

The APOs in section 337 investigations differ from those in title VII investigations as there is no set form and provisions may differ depending on the investigation and the presiding administrative law judge. However, in practice, the provisions are often quite similar. All persons seeking access to CBI during a section 337 investigation (including outside counsel for parties to the investigation, secretarial and support personnel assisting such counsel, and technical experts and their staff who are employed for the purposes of the investigation) are required to read the APO, agree to its terms by letter filed with the Secretary of the Commission indicating that they agree to be bound by the terms of the Order, agree not to reveal CBI to anyone other than another person permitted access by the Order, and agree to utilize the CBI solely for the purposes of that investigation.

In general, an APO in a section 337 investigation will define what kind of information is CBI and direct how CBI is to be designated and protected. The APO will state which persons will have access to the CBI and which of those persons must sign onto the APO. The APO will provide instructions on how CBI is to be maintained and protected by labeling documents and filing transcripts under seal. It will provide protections for the suppliers of CBI by notifying them of a Freedom of Information Act request for the CBI and providing a procedure for the supplier to take action to prevent the release of the information. There are provisions for disputing the designation of CBI and a procedure for resolving such disputes. Under the APO, suppliers of CBI are given the opportunity to object to the release of the CBI to a proposed expert. The APO requires a person who discloses CBI, other than in a manner authorized by the APO, to provide all pertinent facts to the supplier of the CBI and to the administrative law judge and to make every effort to prevent further disclosure. The APO requires all parties to the APO to either return to the suppliers or destroy the originals and all copies of the CBI obtained during the investigation.

The Commission's regulations provide for certain sanctions to be imposed if the APO is violated by a person subject to its restrictions. The names of the persons being investigated for violating an APO are kept confidential unless the sanction imposed is a public letter of reprimand. 19 CFR 210.34(c)(1). The possible sanctions are:

(1) An official reprimand by the Commission.

(2) Disqualification from or limitation of further participation in a pending investigation.

(3) Temporary or permanent disqualification from practicing in any capacity before the Commission pursuant to 19 CFR 201.15(a).

(4) Referral of the facts underlying the violation to the appropriate licensing authority in the jurisdiction in which the individual is licensed to practice.

(5) Making adverse inferences and rulings against a party involved in the violation of the APO or such other action that may be appropriate. 19 CFR 210.34(c)(3).

Commission employees are not signatories to the Commission's APOs and do not obtain access to BPI or CBI through APO procedures. Consequently, they are not subject to the requirements of the APO with respect to the handling of CBI and BPI. However, Commission employees are subject to strict statutory and regulatory constraints concerning BPI and CBI, and face potentially severe penalties for noncompliance. *See* 18 U.S.C. 1905; title 5, U.S. Code; and Commission personnel policies implementing the statutes. Although the Privacy Act (5 U.S.C. 552a) limits the Commission's authority to disclose any personnel action against agency employees, this should not lead the public to conclude that no such actions have been taken.

## II. Investigations of Alleged APO Breaches

Upon finding evidence of an APO breach or receiving information that there is a reason to believe one has occurred, the Commission Secretary notifies relevant offices in the agency that an APO breach investigation has commenced and that an APO breach investigation file has been opened. Upon receiving notification from the Secretary, the Office of the General Counsel ("OGC") prepares a letter of inquiry to be sent to the possible breacher over the Secretary's signature to ascertain the facts and obtain the possible breacher's views on whether a breach has occurred.[1] If, after reviewing the response and other relevant information, the Commission determines that a breach has occurred, the Commission often issues a second

letter asking the breacher to address the questions of mitigating circumstances and possible sanctions or other actions. The Commission then determines what action to take in response to the breach. In some cases, the Commission determines that, although a breach has occurred, sanctions are not warranted, and therefore finds it unnecessary to issue a second letter concerning what sanctions might be appropriate. Instead, it issues a warning letter to the individual. A warning letter is not considered to be a sanction. However, a warning letter is considered in a subsequent APO breach investigation.

Sanctions for APO violations serve three basic interests: (a) Preserving the confidence of submitters of BPI/CBI that the Commission is a reliable protector of BPI/CBI; (b) disciplining breachers; and (c) deterring future violations. As the Conference Report to the Omnibus Trade and Competitiveness Act of 1988 observed, "[T]he effective enforcement of limited disclosure under administrative protective order depends in part on the extent to which private parties have confidence that there are effective sanctions against violation." H.R. Conf. Rep. No. 576, 100th Cong., 1st Sess. 623 (1988).

The Commission has worked to develop consistent jurisprudence, not only in determining whether a breach has occurred, but also in selecting an appropriate response. In determining the appropriate response, the Commission generally considers mitigating factors such as the unintentional nature of the breach, the lack of prior breaches committed by the breaching party, the corrective measures taken by the breaching party, and the promptness with which the breaching party reported the violation to the Commission. The Commission also considers aggravating circumstances, especially whether persons not under the APO actually read the BPI/CBI. The Commission considers whether there have been prior breaches by the same person or persons in other investigations and multiple breaches by the same person or persons in the same investigation.

The Commission's rules permit an economist or consultant to obtain access to BPI/CBI under the APO in a title VII or safeguard investigation if the economist or consultant is under the direction and control of an attorney under the APO, or if the economist or consultant appears regularly before the Commission and represents an interested party who is a party to the investigation. 19 CFR 207.7(a)(3)(B) and (C); 19 CFR 206.17(a)(3)(B) and (C). Economists and consultants who obtain

access to BPI/CBI under the APO under the direction and control of an attorney nonetheless remain individually responsible for complying with the APO. In appropriate circumstances, for example, an economist under the direction and control of an attorney may be held responsible for a breach of the APO by failing to redact APO information from a document that is subsequently filed with the Commission and served as a public document. This is so even though the attorney exercising direction or control over the economist or consultant may also be held responsible for the breach of the APO. In section 337 investigations, technical experts and their staff who are employed for the purposes of the investigation are required to sign onto the APO and agree to comply with its provisions.

The records of Commission investigations of alleged APO breaches in antidumping and countervailing duty cases, section 337 investigations, and safeguard investigations are not publicly available and are exempt from disclosure under the Freedom of Information Act, 5 U.S.C. 552. *See* 19 U.S.C. 1677f(g), 19 U.S.C. 1333(h), 19 CFR 210.34(c).

The two types of breaches most frequently investigated by the Commission involve the APO's prohibition on the dissemination of BPI or CBI to unauthorized persons and the APO's requirement that the materials received under the APO be returned or destroyed and that a certificate be filed indicating which action was taken after the termination of the investigation or any subsequent appeals of the Commission's determination. The dissemination of BPI/CBI usually occurs as the result of failure to delete BPI/CBI from public versions of documents filed with the Commission or transmission of proprietary versions of documents to unauthorized recipients. Other breaches have included the failure to bracket properly BPI/CBI in proprietary documents filed with the Commission, the failure to report immediately known violations of an APO, and the failure to adequately supervise non-lawyers in the handling of BPI/CBI.

Occasionally, the Commission conducts APOB investigations that involve members of a law firm or consultants working with a firm who were granted access to APO materials by the firm although they were not APO signatories. In many of these cases, the firm and the person using the BPI/CBI mistakenly believed an APO application had been filed for that person. The Commission determined in all of these cases that the person who was a non-

---

[1] Procedures for inquiries to determine whether a prohibited act such as a breach has occurred and for imposing sanctions for violation of the provisions of a protective order issued during NAFTA panel or committee proceedings are set out in 19 CFR 207.100–207.120. Those investigations are initially conducted by the Commission's Office of Unfair Import Investigations.

signatory, and therefore did not agree to be bound by the APO, could not be found to have breached the APO. Action could be taken against these persons, however, under Commission rule 201.15 (19 CFR 201.15) for good cause shown. In all cases in which action was taken, the Commission decided that the non-signatory was a person who appeared regularly before the Commission and was aware of the requirements and limitations related to APO access and should have verified his or her APO status before obtaining access to and using the BPI/CBI. The Commission notes that section 201.15 may also be available to issue sanctions to attorneys or agents in different factual circumstances in which they did not technically breach the APO, but when their actions or inactions did not demonstrate diligent care of the APO materials even though they appeared regularly before the Commission and were aware of the importance the Commission placed on the care of APO materials.

Counsel participating in Commission investigations have reported to the Commission potential breaches involving the electronic transmission of public versions of documents. In these cases, the document transmitted appears to be a public document with BPI or CBI omitted from brackets. However, the confidential information is actually retrievable by manipulating codes in software. The Commission has found that the electronic transmission of a public document containing BPI or CBI in a recoverable form was a breach of the APO.

Counsel have been cautioned to be certain that each authorized applicant files within 60 days of the completion of an import injury investigation or at the conclusion of judicial or binational review of the Commission's determination a certificate that to his or her knowledge all copies of BPI/CBI have been returned or destroyed and no copies of such material have been made available to any person to whom disclosure was not specifically authorized. This requirement applies to each attorney, consultant, or expert in a firm who has been granted access to BPI/CBI. One firm-wide certificate is insufficient.

Attorneys who are signatories to the APO representing clients in a section 337 investigation should inform the administrative law judge and the Commission's secretary if there are any changes to the information that was provided in the application for access to the CBI. This is similar to the requirement to update an applicant's information in title VII investigations.

In addition, attorneys who are signatories to the APO representing clients in a section 337 investigation should send a notice to the Commission if they stop participating in the investigation or the subsequent appeal of the Commission's determination. The notice should inform the Commission about the disposition of CBI obtained under the APO that was in their possession or they could be held responsible for any failure of their former firm to return or destroy the CBI in an appropriate manner.

## III. Specific APO Breach Investigations

*Case 1.* The Commission determined that the principal attorney representing a party in a title VII sunset review breached an APO when he (1) inadvertently retained materials containing BPI more than 60 days after the completion of a five-year review and (2) inadvertently uploaded a BPI version of a staff report from the sunset review onto the electronic filing system ("CM/ECF") of the U.S. Court of International Trade ("CIT") in an unrelated case.

The attorney represented the respondent in a sunset review. After the completion of the review, the attorney submitted a letter to the Commission certifying that all copies of materials released to him under the APO had been destroyed. Months later, the attorney logged on to the CM/ECF system in an attempt to download a motion in an unrelated case. However, rather than downloading the intended motion, the attorney inadvertently uploaded a copy of a staff report containing BPI. The attorney immediately notified the docket clerk of the error. The clerk removed the document from public availability within approximately fifteen minutes of the upload. The clerk also contacted counsel for all parties in the unrelated case to determine whether they had viewed the BPI. One attorney had downloaded the file, but immediately closed it upon realizing that it was misfiled.

In determining the appropriate action in response to the breach, the Commission considered mitigating factors, including that (1) the breach was unintentional and inadvertent, resulting from the attorney's inadvertent failure to follow standard APO procedures and inadvertent upload of the staff report; (2) the attorney had not been found to have breached an APO over the past two years; and (3) the attorney took immediate corrective measures upon learning of the disclosure by requesting that the CIT remove the BPI version of the staff report from the CIT's CM/ECF system. The Commission also considered

aggravating factors, including that (1) the attorney violated the same APO in two ways by retaining the BPI materials more than sixty days after the completion of the review and uploading those materials onto the CM/ECF system; and (2) the attorney failed to handle the APO material with due diligence and care by filing the staff report in a wholly unrelated case.

The Commission issued a private letter of reprimand to the attorney.

*Case 2.* The Commission determined that APO breaches occurred with respect to a law firm representing a party in a section 337 investigation. With respect to this law firm, the Commission determined that APO breaches occurred (1) when attorneys and consultants failed to sign and/or file protective order acknowledgments prior to accessing CBI and (2) when attorneys filed an unredacted appeal brief containing CBI and emailed that brief to in-house counsel who were not signatories of the APO.

Seven attorneys and two expert consultants hired by the law firm failed to sign and file protective order acknowledgments before accessing CBI for use in this investigation. A paralegal initially informed a first supervisory attorney that a single working attorney had premature access to CBI, and that working attorney's acknowledgment was filed that same day. A further internal investigation at the law firm discovered that four additional attorneys and an expert consultant similarly failed to file acknowledgments, and those individuals filed acknowledgments thereafter. Approximately a month later, the firm discovered that a testifying expert had also failed to file an acknowledgment prior to accessing CBI. A second supervisory attorney at the law firm informed the Commission that that expert filed an acknowledgment the same day as the discovery of the omission.

Thereafter, the second supervisory attorney informed the Commission of facts related to a second APO breach by the law firm. Two appellate attorneys at the law firm had attached as an addendum to a brief filed with a court a confidential version of the Commission's opinion, which included CBI. That brief was also emailed to four in-house attorneys. Prior to filing the brief, the appellate attorneys confirmed that the text of the brief did not contain any CBI, but failed to recognize that the confidential version, rather than the public version, of the Commission Opinion was attached to the brief. The next day, one of the appellate attorneys recognized the mistake, and the clerk at

the court was notified that the brief should be neither accepted nor made public. One of the appellate attorneys also contacted the in-house counsel and directed them to delete the email without opening the attachment. The attorney received confirmation that the attachment had not been read by or forwarded to anyone else. That same day, one of the appellate attorneys notified counsel for the opposing party and the Commission of the breach. The law firm corrected the filing by submitting a confidential version and a public version of the brief to the court.

In determining the appropriate action in response to the breaches, the Commission considered mitigating factors, including that (1) no person who did not later file an APO acknowledgment viewed CBI in either breach; (2) both breaches were unintentional; (3) the law firm took prompt actions to correct the mistakes, inform the Commission and all parties of the mistakes, and prevent future breaches; and (4) none of the attorneys were involved in previous APO issues in the last two years. As an aggravating factor, the Commission considered that the law firm committed two breaches in the same investigation within a year.

The Commission issued warning letters to the two supervisory attorneys and the appellate attorneys. The Commission also issued a private letter of reprimand to the law firm. The Commission found that the firm's policies and procedures were inadequate in ensuring compliance with the APO, as demonstrated by the seven firm attorneys and two outside consultants who reviewed and used CBI in connection with their involvement in the investigation before signing and filing APO acknowledgments, the submission of an unredacted appeal brief containing CBI, and the transmission of the appeal brief to four non-signatory in-house counsel who were not APO signatories.

The Commission also found that good cause exists to issue sanctions under § 201.15(a) to the attorneys and consultants who used CBI in this investigation prior to filing a protective order acknowledgment. The Commission issued these attorneys a warning letter. Though these individuals were not signatories to the APO at the time they inappropriately accessed CBI, they were, or should have been, aware of the requirements and limitations related to APO access. Their failure to verify that they had applied for and been granted access to APO materials before using the materials demonstrates a disregard for the Commission's rules protecting the

confidentiality of the information that is provided under the APO.

*Case 3.* In the same section 337 investigation referenced in Case 2 above, the Commission determined that a second law firm representing a different party breached the APO. The Commission determined that breaches occurred when attorneys failed to sign and/or file protective order acknowledgments prior to accessing CBI.

One attorney at the second law firm failed to sign and file protective order acknowledgments before accessing CBI; and three attorneys signed but failed to file protective order acknowledgments before accessing CBI. The issue was first discovered by another party's counsel. After being notified, the second law firm conducted an internal audit and discovered the breach. The three unfiled acknowledgments had been forwarded to a paralegal, but not filed. The remaining attorney was not aware that he was required to sign an APO acknowledgment prior to accessing a hearing transcript containing CBI. That attorney signed an acknowledgment the next day, and the acknowledgment was filed approximately two weeks later. Two supervisory attorneys were APO signatories who supervised the four attorneys who had not timely filed the protective order acknowledgments.

In determining the appropriate action in response to the breach, the Commission considered mitigating factors, including that (1) the breach was unintentional; (2) the breach was promptly reported to the Commission; (3) the breaching parties took corrective measures to prevent a breach in the future; (4) none of the attorneys were involved in any previous APO breaches; and (5) the attorneys otherwise accorded the CBI the full protection of the APO at all times and the CBI was not released to any third party.

The Commission issued warning letters to the supervisory attorneys. The Commission also found that good cause existed to issue sanctions under § 201.15(a) to the attorneys who used CBI in this investigation prior to filing a protective order acknowledgment. The Commission issued these attorneys a warning letter. Though these attorneys were not signatories to the APO at the time they inappropriately accessed CBI, they were or should have been aware of the requirements and limitations related to APO access. Their failure to verify that they had applied for and been granted access to APO materials before using the materials demonstrated a disregard for the Commission's rules protecting the confidentiality of the

information that is provided under the APO.

*Case 4.* The Commission determined that a law firm and several attorneys breached an APO in a section 337 investigation when they improperly disclosed CBI to more than 140 unauthorized persons over a fourteen-month period.

Several attorneys of a law firm representing the complainant inadvertently disclosed to unauthorized persons information designated by the respondent as CBI in this investigation and in related litigation in federal district court. A junior associate at the law firm failed to fully redact CBI from an expert report prepared for the district court action, and a partner failed to supervise that junior associate. On several occasions, the attorneys then sent the incompletely redacted expert report to unauthorized persons at the complainant (including a non-APO signatory in-house attorney) and other law and consulting firms. Several non-signatory recipients (including the in-house counsel and at least one other attorney) further disseminated the CBI to other non-signatories. In one incident, a partner at the law firm emailed more than ninety of the complainant's employees with instructions on how to access the incompletely redacted expert report on an FTP site. No one at the law firm notified the respondent or the Commission of the disclosure at the time. No other efforts were made to investigate whether other disclosures had been made so as to prevent further disclosures. As a result, the unauthorized disclosures continued.

In connection with the investigation before the Commission, a mid-level associate at the same law firm failed to redact the same CBI from an outline for a brief on remedy and the public interest. On several occasions, the firm's attorneys then sent versions of that outline and the public interest brief containing CBI to unauthorized persons at the complainant and at other law firms. A partner at the law firm discovered one such disclosure, but did not notify the respondent or the Commission at the time, asserting that he had acted promptly after the discovery to prevent unauthorized persons from viewing CBI. In another incident, an attorney sent an unredacted version of the completed brief via email to the complainant's employees and an attorney at a second law firm. Another attorney informed the sending attorney of the mistake, and the sending attorney emailed the complainant requesting that the email be deleted. Prior to its deletion, however, the email had been

forwarded to the complainant's employees and attorneys at other law firms.

In determining the appropriate sanction, the Commission considered mitigating factors, including that (1) the breaches were inadvertent; (2) the law firm recently implemented firm-wide policy to help prevent unauthorized disclosures; (3) the law firm worked to investigate, cure, and prevent further breaches after discovery of the breaches; and (4) a federal district court had already sanctioned the disclosures and conduct underlying the breaches relating to the expert report. The Commission also considered aggravating factors, including that (1) the CBI was viewed by unauthorized persons; (2) the breach was discovered by a third party; (3) the law firm failed and/or delayed reporting the breaches to the Commission; (4) the CBI was unprotected for a lengthy period of time; (5) there were multiple breaches by the law firm's attorneys in the same investigation; and (6) there were multiple breaches by the law firm's attorneys in a two-year period.

The Commission publicly reprimanded the law firm and issued private letters of reprimand to the six law firm attorneys responsible for the unauthorized disclosures. Although the firm had procedures to prevent unauthorized disclosures, the firm did not ensure that attorneys complied with those procedures and made unilateral decisions regarding the APO's scope and requirements. The large number and vast extent of the unauthorized disclosures show that the failure to safeguard CBI was a pervasive problem at the firm.

The Commission also found that good cause existed to issue sanctions under § 201.15(a) to the in-house counsel and an attorney at another law firm who were not signatories of the APO. Both attorneys had disclosed CBI, but were not found to be fully responsible for those disclosures. The Commission issued these attorneys a warning letter because, although the attorneys were not signatories to the APO, they had previously appeared before the Commission in section 337 investigations.

*Case 5.* The Commission determined that an attorney representing the respondent in a section 337 investigation breached the APO in the investigation when he filed a public brief at a court containing information designated as CBI by the complainant.

The attorney filed the public brief containing the CBI with a court. However, the court rejected the brief for failing to comply with certain technical requirements, and that rejection prevented the brief from being disclosed to the public. The complainants' counsel informed the attorney that the brief contained the CBI. The attorney agreed to, and did, promptly contact the court to remove the brief from public view. The clerk stated that the brief was not publicly available and the attorney did not disseminate the brief to anyone else.

In determining the appropriate action in response to the breach, the Commission considered mitigating factors, including that (1) the breach was unintentional; (2) the attorney had not been found in violation of an APO or other protective order in the previous two years; and (3) no party was prejudiced by the breach because no unauthorized person actually viewed the CBI. The Commission also considered that the attorney took immediate steps to mitigate any harm by contacting the court in an attempt to prevent the disclosure of the CBI to unauthorized persons.

Rather than issuing a sanction, the Commission issued a warning letter to the attorney.

*Case 6.* The Commission determined that an attorney representing the complainants breached an APO in a section 337 investigation when he filed a brief in a state court containing information designated as CBI by the respondents.

The attorney filed a brief under seal at a state court containing an attached exhibit including CBI. The exhibit was filed under seal and was not available to the public. The respondents' counsel informed the complainants' counsel of the APO breach and requested that complainants' counsel ask the state court to remove the exhibit from the filing. The next day, the attorney's law firm requested the removal of the exhibit. After the attorney's law firm complied with the court's rules and guidance, the court removed the exhibit from the filing. A second attorney from the attorney's law firm notified the Commission of the breach. The law firm explained that it had intended to attach a public version of the exhibit to the filing and that the breach was unintentional and inadvertent.

In determining the appropriate action in response to the breach, the Commission considered mitigating factors, including that (1) the breach was unintentional; (2) the attorney had not been found in violation of an APO or other protective order in the previous two years; (3) the breach was promptly reported to the Commission; and (4) the law firm took active steps to remedy the breach by withdrawing the offending exhibit from the filing. The Commission further considered that the brief was filed under seal. The Commission also considered aggravating factors, including that (1) local counsel for both the complainants and the respondents who were not APO signatories had access to the document and respondents' counsel viewed the documents; and (2) the attorney's law firm did not discover the breach, but rather was informed of the breach by respondents' counsel.

Rather than issuing a sanction, the Commission issued a warning letter to the attorney.

*Case 7.* The Commission determined that an attorney at a law firm and a staff economist at a consulting firm breached an APO in a title VII investigation when a public version of a prehearing brief prepared on behalf of a respondent, which contained certain unredacted BPI, was filed, served, and made available to the public on the Commission's website.

The economist mistakenly informed the attorney that the public version of a staff report included with a brief did not contain BPI. When the attorney told the economist that certain information in the staff report was of a type generally considered to be BPI in Commission investigations, the economist again affirmed his prior incorrect statement that the information was not BPI. On that basis, brackets identifying the information as BPI were removed from certain portions of the brief and the information was not deleted from the public version of the brief when it was filed and served. Thereafter, counsel for petitioners informed the attorney that the public version of the brief included BPI. The attorney then called the only person upon whom a paper copy of the public version had been served (a non-signatory to the APO), who reported that he had not read or distributed the brief and agreed to destroy it. The attorney and his staff then immediately contacted the Commission to remove the public version of the document from the Commission's website and then filed revised pages to the brief which redacted the BPI. An audit of the document available on the Commission's website indicated that the document was viewed by five individuals, one of whom was not authorized to view BPI.

In determining the appropriate sanction in response to the breach, the Commission considered mitigating factors, including that (1) the breach was unintentional and inadvertent; (2) neither the attorney nor the economist had been found in violation of an APO or other protective order in the previous

**Federal Register** / Vol. 83, No. 79 / Tuesday, April 24, 2018 / Notices **17849**

two years; and (3) once informed of the breach, the attorney and economist took immediate action to cure the breach. The Commission also considered aggravating factors, including that (1) the attorney and the economist did not discover the breach themselves, but were instead informed of the breach by counsel for petitioners; and (2) the brief was publicly available on the Commission's website for two days and was accessed by at least one individual who was not authorized to view the BPI.

The Commission issued private letters of reprimand to the attorney and the economist.

*Case 8.* The Commission determined that two attorneys representing the complainant breached an APO in a section 337 investigation when they sent an email attachment containing information that had been designated as CBI by the respondent to the complainant's employees.

In this case, an attorney representing the complainant sent to the complainant's employees an email that appended portions of the complainant's draft pre-hearing brief which included CBI, asking them to read it and provide comments. A second attorney of the same law firm, who was responsible for the day-to-day management of this investigation for the complainant, was copied on the email. One of the complainant's employees then transmitted the document in question to the complainant's directors and other of the complainant's employees. The attorneys' law firm learned of the disclosure on a phone call with the complainant's employees. The law firm's counsel then spoke to the respondent's counsel and alerted the administrative law judge of the breach. Thereafter, the administrative law judge conducted a telephone conference with the parties and ordered, *inter alia,* that the complainant retain an independent forensic expert to produce a record of the scope and timing of the disclosure of the CBI to the complainant's employees. At the completion of the report, all CBI in the complainant's possession was to be destroyed.

In determining the appropriate action in response to the breach, the Commission considered mitigating factors, including that (1) the breach was inadvertent; (2) complainant's counsel self-reported the breach and took prompt action to destroy all copies of the disclosed document and prevent further dissemination; (3) respondent was not seeking further sanctions; and (4) neither attorney had previously been found in violation of an APO. The Commission also considered aggravating factors, including that (1) the

confidential material was reviewed by several individuals at the complainant who were not authorized to view the CBI; and (2) that weeks had passed before the breach was discovered.

The Commission issued a private letter of reprimand to the attorney who first sent the offending email to the complainant's employees. The Commission also issued a warning letter to the second attorney, who exercised inadequate oversight over the CBI in question (including a failure to observe that the attachment sent to the complainant was replete with respondent's CBI).

*Case 9.* The Commission determined that a law firm representing the complainant did not breach an APO in a section 337 investigation. Respondent's counsel alleged that the law firm used CBI without authorization to prepare and file a new complaint at the Commission. However, for each alleged instance of an improper disclosure of CBI, the law firm was able to show that the information alleged to be CBI was available in the public record.

By order of the Commission.
Issued: April 18, 2018.

**Lisa Barton,**
*Secretary to the Commission.*
[FR Doc. 2018–08432 Filed 4–23–18; 8:45 am]
**BILLING CODE 7020–02–P**

## INTERNATIONAL TRADE COMMISSION

**[Investigation No. 731–TA–891 (Third Review)]**

### Foundry Coke From China

**Determination**

On the basis of the record [1] developed in the subject five-year review, the United States International Trade Commission ("Commission") determines, pursuant to the Tariff Act of 1930 ("the Act"), that revocation of the antidumping duty order on foundry coke from China would be likely to lead to continuation or recurrence of material injury to an industry in the United States within a reasonably foreseeable time.

**Background**

The Commission, pursuant to section 751(c) of the Act (19 U.S.C. 1675(c)), instituted this review on May 1, 2017 (82 FR 20381) and determined on August 4, 2017 that it would conduct a

full review (82 FR 41053, August 29, 2017). Notice of the scheduling of the Commission's review and of a public hearing to be held in connection therewith was given by posting copies of the notice in the Office of the Secretary, U.S. International Trade Commission, Washington, DC, and by publishing the notice in the **Federal Register** on October 26, 2017 (82 FR 49660). The hearing was cancelled on February 20, 2018 at the request of the domestic interested parties (83 FR 39, February 27, 2018).

The Commission made this determination pursuant to section 751(c) of the Act (19 U.S.C. 1675(c)). It completed and filed its determination in this review on April 18, 2018. The views of the Commission are contained in USITC Publication 4774 (April 2018), entitled *Foundry Coke from China: Investigation No. 731–TA–891 (Third Review).*

By order of the Commission.
Issued: April 18, 2018.

**Lisa Barton,**
*Secretary to the Commission.*
[FR Doc. 2018–08455 Filed 4–23–18; 8:45 am]
**BILLING CODE 7020–02–P**

## INTERNATIONAL TRADE COMMISSION

**[Investigation No. 337–TA–1044]**

### Certain Graphics Systems, Components Thereof, and Consumer Products Containing the Same: Notice of Request for Statements on the Public Interest

**AGENCY:** U.S. International Trade Commission.

**ACTION:** Notice.

**SUMMARY:** Notice is hereby given that the presiding administrative law judge has issued a final Initial Determination and a Recommended Determination on Remedy and Bond in the above-captioned investigation. The Commission is soliciting comments on public interest issues raised by the recommended relief, namely a limited exclusion order ("LEO") against certain graphics systems, components thereof, and consumer products containing the same, which are imported, sold for importation, and/or sold after importation by respondents VIZIO, Inc. ("VIZIO"), MediaTek Inc. and Media Tek USA Inc. (collectively, "MediaTek"), and Sigma Designs, Inc. ("SDI"); and a cease and desist order ("CDO") against respondents VIZIO and SDI. This notice is soliciting public interest comments from the public only.

[1] The record is defined in sec. 207.2(f) of the Commission's Rules of Practice and Procedure (19 CFR 207.2(f)).

of Federal funds within the Dump Creek project. The land will remain open to discretionary uses.

**Salmon National Forest**

*Boise Meridian*

T. 23 N., R. 20 E.,
     Secs. 12, 13, and 24.

Beginning at USLM No. 4, Eureka Mining District, said Monument No. 4 being more particularly located in the unsurveyed NW¼SE¼ Section 24. From point of beginning, North 4°32′52″ East 5061.93 feet to Corner No. 1, the True Point of Beginning, said Corner being identical with Corner No. 1 Lemhi Gold Placer, as shown on Moose Creek Hydraulic Placer Mineral Survey Plat No. 3057. Thence North 0°01′ West, 4109.7 feet along the west line of Lemhi Gold Placer to a point at the intersection of line 1–2 of Rocky Mountain Placer, MS No. 1867, which point lies North 58°56′ West, 58.1 feet from Corner No. 1 of MS No. 1867 and said point being Corner No. 2 of herein described lands; Thence North 58°56′ West, along line 1–2 of MS No. 1867 for a distance of 817.35 feet to Corner No. 3; Thence South 0°01′ East, 4529.24 feet to Corner No. 4; Thence South 8°33′ East, 1877.1 feet to Corner No. 5; Thence South 89°49′ East, 883 feet to Corner No. 6, said Corner No. 6 being identical with Corner No. 4 of Moose Creek Hydraulic Placer MS 3057; Thence North 8°33′ West, 1877.1 feet along the west line of said Moose Creek Hydraulic Placer to Corner No. 7 said Corner No. 7 being identical with Corner No. 5 of MS No. 3057; Thence North 89°49′ West, 183 feet to Corner No. 1, the True Point of Beginning.

The area described aggregates 107.02 acres in Lemhi County.

2. The withdrawal made by this order does not alter the applicability of the general land laws governing the use of National Forest System land under lease, license, or permit, or governing the disposal of their mineral or vegetative resources other than the mining laws.

3. This withdrawal will expire 20 years from the effective date of this order unless, as a result of a review conducted before the expiration date pursuant to Section 204(f) of the Federal Land Policy and Management Act of 1976, 43 U.S.C. 1714(f) the Secretary determines that the withdrawal shall be extended.

Dated: July 9, 2018.

**Joseph R. Balash,**

*Assistant Secretary, Land and Minerals Management.*

[FR Doc. 2018–17870 Filed 8–17–18; 8:45 am]

**BILLING CODE 3410–11–P**

---

**INTERNATIONAL TRADE COMMISSION**

**[Investigation Nos. 701–TA–489 and 731–TA–1201 (Review)]**

**Drawn Stainless Steel Sinks From China; Determination**

On the basis of the record [1] developed in the subject five-year reviews, the United States International Trade Commission ("Commission") determines, pursuant to the Tariff Act of 1930 ("the Act"), that revocation of the countervailing and antidumping duty orders on drawn stainless steel sinks from China would be likely to lead to continuation or recurrence of material injury to an industry in the United States within a reasonably foreseeable time.

**Background**

The Commission, pursuant to section 751(c) of the Act (19 U.S.C. 1675(c)), instituted these reviews on March 1, 2018 (83 FR 8887) and determined on June 4, 2018 that it would conduct expedited reviews (83 FR 30193, June 27, 2018).

The Commission made these determinations pursuant to section 751(c) of the Act (19 U.S.C. 1675(c)). It completed and filed its determinations in these reviews on August 14, 2018. The views of the Commission are contained in USITC Publication 4810 (August 2018), entitled *Drawn Stainless Steel Sinks from China: Investigation Nos. 701–TA–489 and 731–TA–1201 (Review).*

By order of the Commission.

Issued: August 15, 2018.

**Lisa Barton,**

*Secretary to the Commission.*

[FR Doc. 2018–17868 Filed 8–17–18; 8:45 am]

**BILLING CODE 7020–02–P**

---

**INTERNATIONAL TRADE COMMISSION**

**Summary of Commission Practice Relating to Administrative Protective Orders**

**AGENCY:** U.S. International Trade Commission.

**ACTION:** Summary of Commission practice relating to administrative protective orders.

---

**SUMMARY:** Since February 1991, the U.S. International Trade Commission ("Commission") has published in the

---

**Federal Register** reports on the status of its practice with respect to violations of its administrative protective orders ("APOs") under title VII of the Tariff Act of 1930, in response to a direction contained in the Conference Report to the Customs and Trade Act of 1990. Over time, the Commission has added to its report discussions of APO breaches in Commission proceedings other than under title VII and violations of the Commission's rules including the rule on bracketing business proprietary information ("BPI") (the "24-hour rule"). This notice provides a summary of breach investigations (APOB investigations) completed during calendar year 2017. This summary addresses an APOB investigation related to a proceeding under title VII of the Tariff Act of 1930. The Commission intends that this report inform representatives of parties to Commission proceedings as to some specific types of APO breaches encountered by the Commission and the corresponding types of actions the Commission has taken.

**FOR FURTHER INFORMATION CONTACT:** Ron Traud, Office of the General Counsel, U.S. International Trade Commission, telephone (202) 205–3427. Hearing impaired individuals are advised that information on this matter can be obtained by contacting the Commission's TDD terminal at (202) 205–1810. General information concerning the Commission can also be obtained by accessing its website (*https://www.usitc.gov*).

**SUPPLEMENTARY INFORMATION:** Representatives of parties to investigations or other proceedings conducted under title VII of the Tariff Act of 1930, section 337 of the Tariff Act of 1930, the North American Free Trade Agreement (NAFTA) Article 1904.13, and safeguard-related provisions such as section 202 of the Trade Act of 1974, may enter into APOs that permit them, under strict conditions, to obtain access to BPI (title VII) and confidential business information ("CBI") (safeguard-related provisions and section 337) of other parties or non-parties. *See, e.g.,* 19 U.S.C. 1677f; 19 CFR 207.7; 19 U.S.C. 1337(n); 19 CFR 210.5, 210.34; 19 U.S.C. 2252(i); 19 CFR 206.17; 19 U.S.C. 1516a(g)(7)(A); and 19 CFR 207.100, *et. seq.* The discussion below describes an APO breach investigation that the Commission has completed during calendar year 2017, including a description of actions taken in response to this breach.

Since 1991, the Commission has published annually a summary of its actions in response to violations of

---

[1] The record is defined in sec. 207.2(f) of the Commission's Rules of Practice and Procedure (19 CFR 207.2(f)).

Commission APOs and rule violations. *See* 56 FR 4846 (February 6, 1991); 57 FR 12335 (April 9, 1992); 58 FR 21991 (April 26, 1993); 59 FR 16834 (April 8, 1994); 60 FR 24880 (May 10, 1995); 61 FR 21203 (May 9, 1996); 62 FR 13164 (March 19, 1997); 63 FR 25064 (May 6, 1998); 64 FR 23355 (April 30, 1999); 65 FR 30434 (May 11, 2000); 66 FR 27685 (May 18, 2001); 67 FR 39425 (June 7, 2002); 68 FR 28256 (May 23, 2003); 69 FR 29972 (May 26, 2004); 70 FR 42382 (July 22, 2005); 71 FR 39355 (July 12, 2006); 72 FR 50119 (August 30, 2007); 73 FR 51843 (September 5, 2008); 74 FR 54071 (October 21, 2009); 75 FR 66127 (October 27, 2010), 76 FR 78945 (December 20, 2011), 77 FR 76518 (December 28, 2012), 78 FR 79481 (December 30, 2013), 80 FR 1664 (January 13, 2015), 81 FR 17200 (March 28, 2016), and 82 FR 29322 (June 28, 2017). This report does not provide an exhaustive list of conduct that will be deemed to be a breach of the Commission's APOs. APO breach inquiries are considered on a case-by-case basis.

As part of the effort to educate practitioners about the Commission's current APO practice, the Commission Secretary issued in March 2005 a fourth edition of *An Introduction to Administrative Protective Order Practice in Import Injury Investigations* (Pub. No. 3755). This document is available upon request from the Office of the Secretary, U.S. International Trade Commission, 500 E Street SW, Washington, DC 20436, tel. (202) 205–2000 and on the Commission's website at *http://www.usitc.gov.*

## I. In General

### A. Antidumping and Countervailing Duty Investigations

The current APO form for antidumping and countervailing duty investigations, which was revised in March 2005, requires the applicant to swear that he or she will:

(1) Not divulge any of the BPI disclosed under this APO or otherwise obtained in this investigation and not otherwise available to him or her, to any person other than—

(i) Personnel of the Commission concerned with the investigation,

(ii) The person or agency from whom the BPI was obtained,

(iii) A person whose application for disclosure of BPI under this APO has been granted by the Secretary, and

(iv) Other persons, such as paralegals and clerical staff, who (a) are employed or supervised by and under the direction and control of the authorized applicant or another authorized applicant in the same firm whose application has been granted; (b) have a need thereof in connection with the investigation; (c) are not involved in competitive decision making for an interested party which is a party to the investigation; and (d) have signed the acknowledgment for clerical personnel in the form attached hereto (the authorized applicant shall also sign such acknowledgment and will be deemed responsible for such persons' compliance with this APO);

(2) Use such BPI solely for the purposes of the above-captioned Commission investigation or for judicial or binational panel review of such Commission investigation;

(3) Not consult with any person not described in paragraph (1) concerning BPI disclosed under this APO or otherwise obtained in this investigation without first having received the written consent of the Secretary and the party or the representative of the party from whom such BPI was obtained;

(4) Whenever materials *e.g.,* documents, computer disks, etc. containing such BPI are not being used, store such material in a locked file cabinet, vault, safe, or other suitable container (N.B.: Storage of BPI on so-called hard disk computer media is to be avoided, because mere erasure of data from such media may not irrecoverably destroy the BPI and may result in violation of paragraph C of this APO);

(5) Serve all materials containing BPI disclosed under this APO as directed by the Secretary and pursuant to section 207.7(f) of the Commission's rules;

(6) Transmit each document containing BPI disclosed under this APO:

(i) With a cover sheet identifying the document as containing BPI,

(ii) with all BPI enclosed in brackets and each page warning that the document contains BPI,

(iii) if the document is to be filed by a deadline, with each page marked "Bracketing of BPI not final for one business day after date of filing," and

(iv) if by mail, within two envelopes, the inner one sealed and marked "Business Proprietary Information—To be opened only by [name of recipient]", and the outer one sealed and not marked as containing BPI;

(7) Comply with the provision of this APO and section 207.7 of the Commission's rules;

(8) Make true and accurate representations in the authorized applicant's application and promptly notify the Secretary of any changes that occur after the submission of the application and that affect the representations made in the application (*e.g.,* change in personnel assigned to the investigation);

(9) Report promptly and confirm in writing to the Secretary any possible breach of this APO; and

(10) Acknowledge that breach of this APO may subject the authorized applicant and other persons to such sanctions or other actions as the Commission deems appropriate, including the administrative sanctions and actions set out in this APO.

The APO form for antidumping and countervailing duty investigations also provides for the return or destruction of the BPI obtained under the APO on the order of the Secretary, at the conclusion of the investigation, or at the completion of Judicial Review. The BPI disclosed to an authorized applicant under an APO during the preliminary phase of the investigation generally may remain in the applicant's possession during the final phase of the investigation.

The APO further provides that breach of an APO may subject an applicant to:

(1) Disbarment from practice in any capacity before the Commission along with such person's partners, associates, employer, and employees, for up to seven years following publication of a determination that the order has been breached;

(2) Referral to the United States Attorney;

(3) In the case of an attorney, accountant, or other professional, referral to the ethics panel of the appropriate professional association;

(4) Such other administrative sanctions as the Commission determines to be appropriate, including public release of, or striking from the record any information or briefs submitted by, or on behalf of, such person or the party he represents; denial of further access to business proprietary information in the current or any future investigations before the Commission, and issuance of a public or private letter of reprimand; and

(5) Such other actions, including but not limited to, a warning letter, as the Commission determines to be appropriate.

APOs in safeguard investigations contain similar though not identical provisions.

### B. Section 337 Investigations

The APOs in section 337 investigations differ from those in title VII investigations as there is no set form and provisions may differ depending on the investigation and the presiding administrative law judge. However, in practice, the provisions are often quite similar. Any person seeking access to

CBI during a section 337 investigation (including outside counsel for parties to the investigation, secretarial and support personnel assisting such counsel, and technical experts and their staff who are employed for the purposes of the investigation) is required to read the APO, agree to its terms by letter filed with the Secretary of the Commission indicating that he or she agrees to be bound by the terms of the Order, agree not to reveal CBI to anyone other than another person permitted access by the Order, and agree to utilize the CBI solely for the purposes of that investigation.

In general, an APO in a section 337 investigation will define what kind of information is CBI and direct how CBI is to be designated and protected. The APO will state which persons will have access to the CBI and which of those persons must sign onto the APO. The APO will provide instructions on how CBI is to be maintained and protected by labeling documents and filing transcripts under seal. It will provide protections for the suppliers of CBI by notifying them of a Freedom of Information Act request for the CBI and providing a procedure for the supplier to take action to prevent the release of the information. There are provisions for disputing the designation of CBI and a procedure for resolving such disputes. Under the APO, suppliers of CBI are given the opportunity to object to the release of the CBI to a proposed expert. The APO requires a person who discloses CBI, other than in a manner authorized by the APO, to provide all pertinent facts to the supplier of the CBI and to the administrative law judge and to make every effort to prevent further disclosure. The APO requires all parties to the APO to either return to the suppliers or destroy the originals and all copies of the CBI obtained during the investigation.

The Commission's regulations provide for certain sanctions to be imposed if the APO is violated by a person subject to its restrictions. The names of the persons being investigated for violating an APO are kept confidential unless the sanction imposed is a public letter of reprimand. 19 CFR 210.34(c)(1). The possible sanctions are:

(1) An official reprimand by the Commission.

(2) Disqualification from or limitation of further participation in a pending investigation.

(3) Temporary or permanent disqualification from practicing in any capacity before the Commission pursuant to 19 CFR 201.15(a).

(4) Referral of the facts underlying the violation to the appropriate licensing authority in the jurisdiction in which the individual is licensed to practice.

(5) Making adverse inferences and rulings against a party involved in the violation of the APO or such other action that may be appropriate. 19 CFR 210.34(c)(3).

Commission employees are not signatories to the Commission's APOs and do not obtain access to BPI or CBI through APO procedures. Consequently, they are not subject to the requirements of the APO with respect to the handling of CBI and BPI. However, Commission employees are subject to strict statutory and regulatory constraints concerning BPI and CBI, and face potentially severe penalties for noncompliance. *See* 18 U.S.C. 1905; title 5, U.S. Code; and Commission personnel policies implementing the statutes. Although the Privacy Act (5 U.S.C. 552a) limits the Commission's authority to disclose any personnel action against agency employees, this should not lead the public to conclude that no such actions have been taken.

## II. Investigations of Alleged APO Breaches

Upon finding evidence of an APO breach or receiving information that there is a reason to believe one has occurred, the Commission Secretary notifies relevant offices in the agency that an APO breach investigation has commenced and that an APO breach investigation file has been opened. Upon receiving notification from the Secretary, the Office of the General Counsel ("OGC") prepares a letter of inquiry to be sent to the possible breacher over the Secretary's signature to ascertain the facts and obtain the possible breacher's views on whether a breach has occurred.[1] If, after reviewing the response and other relevant information, the Commission determines that a breach has occurred, the Commission often issues a second letter asking the breacher to address the questions of mitigating circumstances and possible sanctions or other actions. The Commission then determines what action to take in response to the breach. In some cases, the Commission determines that, although a breach has occurred, sanctions are not warranted, and therefore finds it unnecessary to issue a second letter concerning what sanctions might be appropriate. Instead,

it issues a warning letter to the individual. A warning letter is not considered to be a sanction. However, a warning letter is considered in a subsequent APO breach investigation.

Sanctions for APO violations serve three basic interests: (a) Preserving the confidence of submitters of BPI/CBI that the Commission is a reliable protector of BPI/CBI; (b) disciplining breachers; and (c) deterring future violations. As the Conference Report to the Omnibus Trade and Competitiveness Act of 1988 observed, "[T]he effective enforcement of limited disclosure under administrative protective order depends in part on the extent to which private parties have confidence that there are effective sanctions against violation." H.R. Conf. Rep. No. 576, 100th Cong., 1st Sess. 623 (1988).

The Commission has worked to develop consistent jurisprudence, not only in determining whether a breach has occurred, but also in selecting an appropriate response. In determining the appropriate response, the Commission generally considers mitigating factors such as the unintentional nature of the breach, the lack of prior breaches committed by the breaching party, the corrective measures taken by the breaching party, and the promptness with which the breaching party reported the violation to the Commission. The Commission also considers aggravating circumstances, especially whether persons not under the APO actually read the BPI/CBI. The Commission considers whether there have been prior breaches by the same person or persons in other investigations and multiple breaches by the same person or persons in the same investigation.

The Commission's rules permit an economist or consultant to obtain access to BPI/CBI under the APO in a title VII or safeguard investigation if the economist or consultant is under the direction and control of an attorney under the APO, or if the economist or consultant appears regularly before the Commission and represents an interested party who is a party to the investigation. 19 CFR 207.7(a)(3)(B) and (C); 19 CFR 206.17(a)(3)(B) and (C). Economists and consultants who obtain access to BPI/CBI under the APO under the direction and control of an attorney nonetheless remain individually responsible for complying with the APO. In appropriate circumstances, for example, an economist under the direction and control of an attorney may be held responsible for a breach of the APO by failing to redact APO information from a document that is subsequently filed with the Commission

---

[1] Procedures for inquiries to determine whether a prohibited act such as a breach has occurred and for imposing sanctions for violation of the provisions of a protective order issued during NAFTA panel or committee proceedings are set out in 19 CFR 207.100–207.120. Those investigations are initially conducted by the Commission's Office of Unfair Import Investigations.

and served as a public document. This is so even though the attorney exercising direction or control over the economist or consultant may also be held responsible for the breach of the APO. In section 337 investigations, technical experts and their staff who are employed for the purposes of the investigation are required to sign onto the APO and agree to comply with its provisions.

The records of Commission investigations of alleged APO breaches in antidumping and countervailing duty cases, section 337 investigations, and safeguard investigations are not publicly available and are exempt from disclosure under the Freedom of Information Act, 5 U.S.C. 552. *See* 19 U.S.C. 1677f(g), 19 U.S.C. 1333(h), 19 CFR 210.34(c).

The two types of breaches most frequently investigated by the Commission involve the APO's prohibition on the dissemination of BPI or CBI to unauthorized persons and the APO's requirement that the materials received under the APO be returned or destroyed and that a certificate be filed indicating which action was taken after the termination of the investigation or any subsequent appeals of the Commission's determination. The dissemination of BPI/CBI usually occurs as the result of failure to delete BPI/CBI from public versions of documents filed with the Commission or transmission of proprietary versions of documents to unauthorized recipients. Other breaches have included the failure to bracket properly BPI/CBI in proprietary documents filed with the Commission, the failure to report immediately known violations of an APO, and the failure to adequately supervise non-lawyers in the handling of BPI/CBI.

Occasionally, the Commission conducts APOB investigations that involve members of a law firm or consultants working with a firm who were granted access to APO materials by the firm although they were not APO signatories. In many of these cases, the firm and the person using the BPI/CBI mistakenly believed an APO application had been filed for that person. The Commission determined in all of these cases that the person who was a non-signatory, and therefore did not agree to be bound by the APO, could not be found to have breached the APO. Action could be taken against these persons, however, under Commission rule 201.15 (19 CFR 201.15) for good cause shown. In all cases in which action was taken, the Commission decided that the non-signatory was a person who appeared regularly before the Commission and was aware of the requirements and

limitations related to APO access and should have verified his or her APO status before obtaining access to and using the BPI/CBI. The Commission notes that section 201.15 may also be available to issue sanctions to attorneys or agents in different factual circumstances in which they did not technically breach the APO, but when their actions or inactions did not demonstrate diligent care of the APO materials even though they appeared regularly before the Commission and were aware of the importance the Commission placed on the care of APO materials.

Counsel participating in Commission investigations have reported to the Commission potential breaches involving the electronic transmission of public versions of documents. In these cases, the document transmitted appears to be a public document with BPI or CBI omitted from brackets. However, the confidential information is actually retrievable by manipulating codes in software. The Commission has found that the electronic transmission of a public document containing BPI or CBI in a recoverable form was a breach of the APO.

Counsel have been cautioned to be certain that each authorized applicant files within 60 days of the completion of an import injury investigation or at the conclusion of judicial or binational review of the Commission's determination a certificate that to his or her knowledge and belief all copies of BPI/CBI have been returned or destroyed and no copies of such material have been made available to any person to whom disclosure was not specifically authorized. This requirement applies to each attorney, consultant, or expert in a firm who has been granted access to BPI/CBI. One firm-wide certificate is insufficient.

Attorneys who are signatories to the APO representing clients in a section 337 investigation should inform the administrative law judge and the Commission's secretary if there are any changes to the information that was provided in the application for access to the CBI. This is similar to the requirement to update an applicant's information in title VII investigations.

In addition, attorneys who are signatories to the APO representing clients in a section 337 investigation should send a notice to the Commission if they stop participating in the investigation or the subsequent appeal of the Commission's determination. The notice should inform the Commission about the disposition of CBI obtained under the APO that was in their possession or they could be held

responsible for any failure of their former firm to return or destroy the CBI in an appropriate manner.

## III. Specific APO Breach Investigations

*Case 1.* The Commission determined that an attorney representing a party in a title VII investigation breached an APO when he failed to adequately supervise an employee who (1) made BPI available to unauthorized persons (both on CDs and on EDIS) and (2) failed to properly label CDs as containing BPI.

The attorney, an APO signatory, represented a party in a title VII investigation. The attorney supervised an employee (who was not an APO signatory) in preparing, filing, and serving the public version of a prehearing brief, but did not instruct that employee regarding the format in which the public version of the brief was to be filed and served. The hard copy of the brief had been redacted of BPI. In preparing the electronic version of the public version of the brief, the employee separately prepared the narrative and exhibits portions of the brief and then then electronically combined those two portions. The exhibits portion was prepared by manually scanning the redacted hard copy of the exhibits. However, the narrative portion was prepared by using Microsoft Word functionality and then converting the redacted document to a .pdf format, a process that made BPI available in the metadata. After combining the two portions, the employee filed the document on EDIS and also saved the file to CDs, which were not labeled as containing BPI. The CDs were then served on the parties on the Commission's public service list for the investigation, which included six persons who were not authorized to receive BPI. Thereafter, the attorney was informed by counsel for another party that the public version of the brief contained BPI in the metadata of the electronic version of the document. Personnel at the firm immediately contacted the Commission's Secretary's office and each recipient of the public version of the prehearing brief, and asked them to destroy all electronic versions of that document. The brief was available on EDIS for approximately six days before its removal.

The attorney, who is responsible for the employee's compliance with the APO, breached the APO because, (1) even though the filing and service of the public version of the prehearing brief may not have resulted in the actual disclosure of BPI to unauthorized persons, BPI was made available to unauthorized persons, and (2) the CDs that were served on the parties on the

171

Commission's public service list were not labeled as containing BPI.

In determining the appropriate action in response to the breach, the Commission considered mitigating factors, including that (1) the breach was unintentional and due to a technical oversight; (2) the attorney had not been found to have breached an APO over the past two years; (3) the attorney took immediate corrective measures upon learning of the disclosure by immediately contacting the Secretary's Office and the recipients of the brief; and (4) the attorney promptly reported the violation to the Commission. The Commission determined that no aggravating factors were present. The Commission issued a private warning letter to the attorney.

By order of the Commission.

Issued: August 14, 2018.

**Lisa Barton,**
*Secretary to the Commission.*

[FR Doc. 2018–17848 Filed 8–17–18; 8:45 am]

**BILLING CODE 7020–02–P**

## DEPARTMENT OF JUSTICE

**Antitrust Division**

## Notice Pursuant to the National Cooperative Research and Production Act of 1993—National Fire Protection Association

Notice is hereby given that, on July 31, 2018, pursuant to Section 6(a) of the National Cooperative Research and Production Act of 1993, 15 U.S.C. 4301 *et seq.* ("the Act"), National Fire Protection Association ("NFPA") has filed written notifications simultaneously with the Attorney General and the Federal Trade Commission disclosing additions or changes to its standards development activities. The notifications were filed for the purpose of extending the Act's provisions limiting the recovery of antitrust plaintiffs to actual damages under specified circumstances. Specifically, NFPA has provided an updated and current list of its standards development activities, related technical committee and conformity assessment activities. Information concerning NFPA regulations, technical committees, current standards, standards development and conformity assessment activities are publicly available at *nfpa.org.*

On September 20, 2004, NFPA filed its original notification pursuant to Section 6(a) of the Act. The Department of Justice published a notice in the **Federal Register** pursuant to Section

6(b) of the Act on October 21, 2004 (69 FR 61689).

The last notification was filed with the Department on May 8, 2018. A notice was published in the **Federal Register** pursuant to Section 6(b) of the Act on May 25, 2018 (83 FR 24348).

**Suzanne Morris**
*Chief, Premerger and Division Statistics Unit, Antitrust Division.*

[FR Doc. 2018–17899 Filed 8–17–18; 8:45 am]

**BILLING CODE 4410–11–P**

## DEPARTMENT OF JUSTICE

**Antitrust Division**

## Notice Pursuant to the National Cooperative Research and Production Act of 1993—National Spectrum Consortium

Notice is hereby given that, on August 3, 2018, pursuant to Section 6(a) of the National Cooperative Research and Production Act of 1993, 15 U.S.C. 4301 *et seq.* ("the Act"), National Spectrum Consortium ("NSC") has filed written notifications simultaneously with the Attorney General and the Federal Trade Commission disclosing changes in its membership. The notifications were filed for the purpose of extending the Act's provisions limiting the recovery of antitrust plaintiffs to actual damages under specified circumstances. Specifically, Numerati Partners, LLC, New York, NY; Avionics Test & Analysis Corporation, Niceville, FL; George Mason University, Fairfax, VA; Science Applications International Corporation (SAIC), Reston, VA; Southern Research, Birmingham, AL; Parsons Government Services Inc., Pasadena, CA; Dell Federal Systems, L.P., Round Rock, TX; Sentar, Inc., Huntsville, AL; SCI Technology, Inc., Huntsville, AL; Pacific Star Communications, Inc., Portland, OR; COMINT Consulting LLC, Golden, CO; C6I Services Corp., Chesterfield, NJ; Comtech EF Data, Tempe, AZ; Vision Engineering Solutions, Inc., Merritt Island, FL; Vision Engineering Solutions, Inc., Merritt Island, FL; Comtech Mobile Datacom Corporation, Germantown, MD.; and EFW, Inc., Fort Worth, TX, have been added as parties to this venture.

Also, Fibertek, Inc., Herndon, VA; and University of Nevada, Reno, VA, have withdrawn as parties to this venture.

No other changes have been made in either the membership or planned activity of the group research project. Membership in this group research project remains open, and NSC intends

to file additional written notifications disclosing all changes in membership.

On May 24, 2014, NSC filed its original notification pursuant to Section 6(a) of the Act. The Department of Justice published a notice in the **Federal Register** pursuant to Section 6(b) of the Act on November 4, 2014 (72 FR 65424).

The last notification was filed with the Department on May 14, 2018. A notice was published in the **Federal Register** pursuant to Section 6(b) of the Act on June 19, 2018 (83 FR 28449).

**Suzanne Morris,**
*Chief, Premerger and Division Statistics Unit Antitrust Division.*

[FR Doc. 2018–17900 Filed 8–17–18; 8:45 am]

**BILLING CODE 4410–11–P**

## DEPARTMENT OF JUSTICE

**Drug Enforcement Administration**

## Houston Maintenance Clinic; Decision and Order

On September 30, 2016, Administrative Law Judge Charles Wm. Dorman (hereinafter, ALJ) issued Recommended Rulings, Findings of Fact, Conclusions of Law, and Decision (hereinafter, R.D.). Only Houston Maintenance Clinic (hereinafter, Respondent) filed exceptions (hereinafter, Resp. Exceptions), and its filing was timely. Having reviewed the entire record, including Resp. Exceptions, and modified the ALJ's R.D., I adopt the modified R.D. and find that none of Resp. Exceptions has merit.

**Respondent's First Exception**

Respondent's first exception states that R.D. "Finding of Fact 40 should be amended to include the first sentence in . . . [Respondent's owner's] letter, GE 27[,] that states as follows[,] 'The facility has kept a systematic ongoing accurate daily dispensing record as required by title 21 C.F.R. 1304.03.' " [1] Resp. Exceptions, at 1. The support Respondent provided for this exception is that, "The daily dosing records . . . are required and these were kept without disruption." *Id.*

First, R.D. Finding of Fact 30, citing GE–27, already states that, "Around the time of the [2006] inspection, . . . [Respondent] kept ongoing, systematic daily dispensing records" [footnote omitted]. Thus, much of the content of the sentence that Respondent's first exception proposes is already found in Finding of Fact 30. Only the assertions that Respondent "has kept . . .

---

[1] Finding of Fact 40 and, presumably, Respondent's first exception concern the 2006 inspection.

Filing Procedures[1]). Persons with questions regarding filing should contact the Secretary (202–205–2000).

Any person desiring to submit a document to the Commission in confidence must request confidential treatment. All such requests should be directed to the Secretary to the Commission and must include a full statement of the reasons why the Commission should grant such treatment. *See* 19 CFR 201.6. Documents for which confidential treatment by the Commission is properly sought will be treated accordingly. All information, including confidential business information and documents for which confidential treatment is properly sought, submitted to the Commission for purposes of this Investigation may be disclosed to and used: (i) By the Commission, its employees and Offices, and contract personnel (a) for developing or maintaining the records of this or a related proceeding, or (b) in internal investigations, audits, reviews, and evaluations relating to the programs, personnel, and operations of the Commission including under 5 U.S.C. Appendix 3; or (ii) by U.S. government employees and contract personnel,[2] solely for cybersecurity purposes. All nonconfidential written submissions will be available for public inspection at the Office of the Secretary and on EDIS.[3]

This action is taken under the authority of section 337 of the Tariff Act of 1930, as amended (19 U.S.C. 1337), and of §§ 201.10 and 210.8(c) of the Commission's Rules of Practice and Procedure (19 CFR 201.10, 210.8(c)).

By order of the Commission.

Dated: February 4, 2020.

**Lisa Barton,**

*Secretary to the Commission.*

[FR Doc. 2020–02535 Filed 2–7–20; 8:45 am]

**BILLING CODE 7020–02–P**

---

**INTERNATIONAL TRADE COMMISSION**

**Summary of Commission Practice Relating to Administrative Protective Orders**

**AGENCY:** U.S. International Trade Commission.

[1] Handbook for Electronic Filing Procedures: *https://www.usitc.gov/documents/handbook_on_filing_procedures.pdf.*

[2] All contract personnel will sign appropriate nondisclosure agreements.

[3] Electronic Document Information System (EDIS): *https://edis.usitc.gov.*

**ACTION:** Summary of Commission practice relating to administrative protective orders.

**SUMMARY:** Since February 1991, the U.S. International Trade Commission ("Commission") has published in the **Federal Register** reports on the status of its practice with respect to breaches of its administrative protective orders ("APOs") under title VII of the Tariff Act of 1930, in response to a direction contained in the Conference Report to the Customs and Trade Act of 1990. Over time, the Commission has added to its report discussions of APO breaches in Commission proceedings other than under title VII, and violations of the Commission's rules, including the rule on bracketing business proprietary information (the "24-hour rule"). This notice provides a summary of APO breach investigations completed during fiscal years 2018 and 2019. The Commission intends for this report to inform representatives of parties to Commission proceedings of the specific types of APO breaches before the Commission and the corresponding types of actions that the Commission has taken.

**FOR FURTHER INFORMATION CONTACT:** Caitlin Stephens, Office of the General Counsel, U.S. International Trade Commission, telephone (202) 205–2076. We advise hearing-impaired individuals that they may obtain information on this matter by contacting the Commission's TDD terminal at (202) 205–1810. General information concerning the Commission is available by accessing its website (*https://www.usitc.gov*).

**SUPPLEMENTARY INFORMATION:** Statutory authorities for investigations conducted by the Commission provide for the release of business proprietary information ("BPI") or confidential business information ("CBI") to certain authorized representatives in accordance with requirements set forth in Commission regulations. Such statutory and regulatory authorities include: 19 U.S.C. 1677f; 19 CFR 207.7; 19 U.S.C. 1337(n); 19 CFR 210.5, 210.34; 19 U.S.C. 2252(i); 19 CFR 206.17; 19 U.S.C. 1516a(g)(7)(A); and 19 CFR 207.100–207.120. Over time, the Commission has added to its report discussions of APO breaches in Commission proceedings other than under title VII, and violations of the Commission's rules, including the rule on bracketing business proprietary information (the "24-hour rule") under 19 CFR 207.3(c). The discussion below describes APO breach investigations that the Commission completed during fiscal years 2018 and 2019, including

descriptions of actions taken in response to any breaches. This summary addresses APO breach investigations related to proceedings under both title VII and section 337 of the Tariff Act of 1930.

Since 1991, the Commission has published annually a summary of its actions in response to violations of Commission APOs and rule violations. *See* 83 FR 42140 (Aug. 20, 2018), 83 FR 17843 (Apr. 24, 2018), 82 FR 29322 (June 28, 2017), 81 FR 17200 (Mar. 28, 2016), 80 FR 1664 (Jan. 13, 2015), 78 FR 79481 (Dec. 30, 2013), 77 FR 76518 (Dec. 28, 2012), 76 FR 78945 (Dec. 20, 2011), 75 FR 66127 (Oct. 27, 2010), 74 FR 54071 (Oct. 21, 2009), 73 FR 51843 (Sept. 5, 2008); 72 FR 50119 (Aug. 30, 2007); 71 FR 39355 (July 12, 2006); 70 FR 42382 (July 22, 2005); 69 FR 29972 (May 26, 2004); 68 FR 28256 (May 23, 2003); 67 FR 39425 (June 7, 2002); 66 FR 27685 (May 18, 2001); 65 FR 30434 (May 11, 2000); 64 FR 23355 (Apr. 30, 1999); 63 FR 25064 (May 6, 1998); 62 FR 13164 (Mar. 19, 1997); 61 FR 21203 (May 9, 1996); 60 FR 24880 (May 10, 1995); 59 FR 16834 (Apr. 8, 1994); 58 FR 21991 (Apr. 26, 1993); 57 FR 12335 (Apr. 26, 1992); and 56 FR 4846 (Feb. 6, 1991). This report does not provide an exhaustive list of conduct that will be deemed to be a breach of the Commission's APOs. The Commission considers APO breach investigations on a case-by-case basis.

As part of its effort to educate practitioners about the Commission's current APO practice, the Secretary to the Commission issued An Introduction to Administrative Protective Order Practice in Import Injury Investigations, 4th edition (Pub. No. 3755, March 2005). This document is available on the Commission's website at *https://www.usitc.gov.*

**I. In General**

*A. Antidumping and Countervailing Duty Investigations*

The current APO form for antidumping and countervailing duty investigations, which the Commission revised in March 2005, requires the applicant to swear that he or she will:

(1) Not divulge any of the BPI disclosed under this APO or otherwise obtained in this investigation and not otherwise available to him or her, to any person other than—

(i) Personnel of the Commission concerned with the investigation,

(ii) The person or agency from whom the BPI was obtained,

(iii) A person whose application for disclosure of BPI under this APO has been granted by the Secretary, and

**7590**   **Federal Register** / Vol. 85, No. 27 / Monday, February 10, 2020 / Notices

(iv) Other persons, such as paralegals and clerical staff, who (a) are employed or supervised by and under the direction and control of the authorized applicant or another authorized applicant in the same firm whose application has been granted; (b) have a need thereof in connection with the investigation; (c) are not involved in competitive decision making for an interested party which is a party to the investigation; and (d) have signed the acknowledgment for clerical personnel in the form attached hereto (the authorized applicant shall also sign such acknowledgment and will be deemed responsible for such persons' compliance with this APO);

(2) Use such BPI solely for the purposes of the above-captioned Commission investigation or for judicial or binational panel review of such Commission investigation;

(3) Not consult with any person not described in paragraph (1) concerning BPI disclosed under this APO or otherwise obtained in this investigation without first having received the written consent of the Secretary and the party or the representative of the party from whom such BPI was obtained;

(4) Whenever materials *e.g.,* documents, computer disks, etc. containing such BPI are not being used, store such material in a locked file cabinet, vault, safe, or other suitable container (N.B.: Storage of BPI on so-called hard disk computer media is to be avoided, because mere erasure of data from such media may not irrecoverably destroy the BPI and may result in violation of paragraph C of this APO);

(5) Serve all materials containing BPI disclosed under this APO as directed by the Secretary and pursuant to section 207.7(f) of the Commission's rules;

(6) Transmit each document containing BPI disclosed under this APO:

(i) With a cover sheet identifying the document as containing BPI,

(ii) with all BPI enclosed in brackets and each page warning that the document contains BPI,

(iii) if the document is to be filed by a deadline, with each page marked "Bracketing of BPI not final for one business day after date of filing," and

(iv) if by mail, within two envelopes, the inner one sealed and marked "Business Proprietary Information—To be opened only by [name of recipient]", and the outer one sealed and not marked as containing BPI;

(7) Comply with the provision of this APO and section 207.7 of the Commission's rules;

(8) Make true and accurate representations in the authorized applicant's application and promptly notify the Secretary of any changes that occur after the submission of the application and that affect the representations made in the application (*e.g.,* change in personnel assigned to the investigation);

(9) Report promptly and confirm in writing to the Secretary any possible breach of this APO; and

(10) Acknowledge that breach of this APO may subject the authorized applicant and other persons to such sanctions or other actions as the Commission deems appropriate, including the administrative sanctions and actions set out in this APO.

The APO form for antidumping and countervailing duty investigations also provides for the return or destruction of the BPI obtained under the APO on the order of the Secretary, at the conclusion of the investigation, or at the completion of Judicial Review. The BPI disclosed to an authorized applicant under an APO during the preliminary phase of the investigation generally may remain in the applicant's possession during the final phase of the investigation.

The APO further provides that breach of an APO may subject an applicant to:

(1) Disbarment from practice in any capacity before the Commission along with such person's partners, associates, employer, and employees, for up to seven years following publication of a determination that the order has been breached;

(2) Referral to the United States Attorney;

(3) In the case of an attorney, accountant, or other professional, referral to the ethics panel of the appropriate professional association;

(4) Such other administrative sanctions as the Commission determines to be appropriate, including public release of, or striking from the record any information or briefs submitted by, or on behalf of, such person or the party he represents; denial of further access to business proprietary information in the current or any future investigations before the Commission, and issuance of a public or private letter of reprimand; and

(5) Such other actions, including but not limited to, a warning letter, as the Commission determines to be appropriate.

APOs in safeguard investigations contain similar (though not identical) provisions.

### B. Section 337 Investigations

The APOs in section 337 investigations differ from those in title VII investigations as there is no set form and provisions may differ depending on the investigation and the presiding administrative law judge. However, in practice, the provisions are often quite similar. Any person seeking access to CBI during a section 337 investigation (including outside counsel for parties to the investigation, secretarial and support personnel assisting such counsel, and technical experts and their staff who are employed for the purposes of the investigation) is required to read the APO, agree to its terms by letter filed with the Secretary of the Commission indicating that he or she agrees to be bound by the terms of the Order, agree not to reveal CBI to anyone other than another person permitted access by the Order, and agree to utilize the CBI solely for the purposes of that investigation.

In general, an APO in a section 337 investigation will define what kind of information is CBI and direct how CBI is to be designated and protected. The APO will state which persons will have access to the CBI and which of those persons must sign onto the APO. The APO will provide instructions on how CBI is to be maintained and protected by labeling documents and filing transcripts under seal. It will provide protections for the suppliers of CBI by notifying them of a Freedom of Information Act request for the CBI and providing a procedure for the supplier to seek to prevent the release of the information. There are provisions for disputing the designation of CBI and a procedure for resolving such disputes. Under the APO, suppliers of CBI are given the opportunity to object to the release of the CBI to a proposed expert. The APO requires a person who discloses CBI, other than in a manner authorized by the APO, to provide all pertinent facts to the supplier of the CBI and to the administrative law judge and to make every effort to prevent further disclosure. The APO requires all parties to the APO to either return to the suppliers or destroy the originals and all copies of the CBI obtained during the investigation.

The Commission's regulations provide for certain sanctions to be imposed if the APO is violated by a person subject to its restrictions. The names of the persons being investigated for violating an APO are kept confidential unless the sanction imposed is a public letter of reprimand. 19 CFR 210.34(c)(1). The possible sanctions are:

(1) An official reprimand by the Commission.

(2) Disqualification from or limitation of further participation in a pending investigation.

(3) Temporary or permanent disqualification from practicing in any capacity before the Commission pursuant to 19 CFR 201.15(a).

(4) Referral of the facts underlying the violation to the appropriate licensing authority in the jurisdiction in which the individual is licensed to practice.

(5) Making adverse inferences and rulings against a party involved in the violation of the APO or such other action that may be appropriate. 19 CFR 210.34(c)(3).

Commission employees are not signatories to the Commission's APOs and do not obtain access to BPI or CBI through APO procedures. Consequently, they are not subject to the requirements of the APO with respect to the handling of BPI and CBI. However, Commission employees are subject to strict statutory and regulatory constraints concerning BPI and CBI, and face potentially severe penalties for noncompliance. *See* 18 U.S.C. 1905; title 5, U.S. Code; and Commission personnel policies implementing the statutes. Although the Privacy Act (5 U.S.C. 552a) limits the Commission's authority to disclose any personnel action against agency employees, this should not lead the public to conclude that no such actions have been taken.

## II. Investigations of Alleged APO Breaches

Upon finding evidence of an APO breach or receiving information that there is a reason to believe one has occurred, the Secretary to the Commission ("Secretary") notifies relevant Commission offices that the Secretary has opened an APO breach file, and the Commission has commenced an APO breach investigation. Upon receiving notification from the Secretary, the Office of the General Counsel ("OGC") prepares a letter of inquiry that the Commission sends to the possible breacher under the Secretary's signature to ascertain the facts and obtain the possible breacher's views on whether a breach has in fact occurred.[1] If, after reviewing the response and other relevant information, the Commission determines that a breach has occurred, the Commission often issues a second letter asking the breacher to address the questions of mitigating circumstances and possible sanctions or other actions.

The Commission then determines what action to take in response to the breach. In some cases, the Commission determines that, although a breach has occurred, sanctions are not warranted, and therefore finds it unnecessary to issue a second letter concerning what sanctions might be appropriate. Instead, it issues a warning letter to the individual. A warning letter is not considered to be a sanction. However, a warning letter is considered in a subsequent APO breach investigation.

Sanctions for APO violations serve three basic interests: (a) Preserving the confidence of submitters of BPI/CBI that the Commission is a reliable protector of BPI/CBI; (b) disciplining breachers; and (c) deterring future violations. As the Conference Report to the Omnibus Trade and Competitiveness Act of 1988 observed, "[T]he effective enforcement of limited disclosure under [APO] depends in part on the extent to which private parties have confidence that there are effective sanctions against violation." H.R. Conf. Rep. 100–576, at 623 (1988).

The Commission has worked to develop consistent jurisprudence, not only in determining whether a breach has occurred, but also in selecting an appropriate response. In determining the appropriate response, the Commission generally considers mitigating factors such as the unintentional nature of the breach, the lack of prior breaches committed by the breaching party, the corrective measures taken by the breaching party, and the promptness with which the breaching party reported the violation to the Commission. The Commission also considers aggravating circumstances, especially whether persons not under the APO actually viewed the BPI/CBI. The Commission considers whether there have been prior breaches by the same person or persons in other investigations and multiple breaches by the same person or persons in the same investigation.

The Commission's rules permit an economist or consultant to obtain access to BPI/CBI under the APO in a title VII or safeguard investigation if the economist or consultant is under the direction and control of an attorney under the APO, or if the economist or consultant appears regularly before the Commission and represents an interested party who is a party to the investigation. 19 CFR 207.7(a)(3)(B) and (C); 19 CFR 206.17(a)(3)(B) and (C). Economists and consultants who obtain access to BPI/CBI under the APO under the direction and control of an attorney nonetheless remain individually responsible for complying with the APO. In appropriate circumstances, for example, an economist under the direction and control of an attorney may be held responsible for a breach of the APO by failing to redact APO information from a document that is subsequently filed with the Commission and served as a public document. This is so even though the Commission may hold the attorney exercising direction or control over the economist or consultant responsible for the breach of the APO. In section 337 investigations, technical experts and their staff who are employed for the purposes of the investigation are required to sign onto the APO and agree to comply with its provisions.

The records of Commission investigations of alleged APO breaches in antidumping and countervailing duty cases, section 337 investigations, and safeguard investigations are not publicly available and are exempt from disclosure under the Freedom of Information Act, 5 U.S.C. 552. *See* 19 U.S.C. 1677f(g); 19 U.S.C. 1333(h); 19 CFR 210.34(c).

The two types of breaches most frequently investigated by the Commission involve (1) the APO's prohibition on the dissemination of BPI or CBI to unauthorized persons, and (2) the APO's requirement that the materials received under the APO be returned or destroyed, and that a certificate be filed with the Commission indicating what actions were taken after the termination of the investigation or any subsequent appeals of the Commission's determination. The dissemination of BPI/CBI usually occurs as the result of failure to delete BPI/CBI from public versions of documents filed with the Commission or transmission of proprietary versions of documents to unauthorized recipients. Other breaches have included the failure to bracket properly BPI/CBI in proprietary documents filed with the Commission, the failure to report immediately known or suspected violations of an APO, and the failure to adequately supervise non-lawyers in the handling of BPI/CBI.

Occasionally, the Commission conducts APO breach investigations that involve members of a law firm or consultants working with a firm who were granted access to APO materials by the firm although they were not APO signatories. In many of these cases, the firm and the person using the BPI/CBI mistakenly believed an APO application had been filed for that person. The Commission has determined in all of these cases that the person who was a non-signatory, and therefore did not agree to be bound by the APO, could not be found to have breached the APO.

---

[1] Procedures for investigations to determine whether a prohibited act, such as a breach, has occurred and for imposing sanctions for violation of the provisions of a protective order issued during a NAFTA panel or committee proceedings are set out in 19 CFR 207.100–207.120. The Commission's Office of Unfair Import Investigations conducts those investigations initially.

Action could be taken against these persons, however, under Commission rule 201.15 (19 CFR 201.15) for good cause shown. In all cases in which the Commission took action, it decided that the non-signatory was a person who appeared regularly before the Commission, who was aware of the requirements and limitations related to APO access, and who should have verified his or her APO status before obtaining access to and using the BPI/CBI. The Commission notes that section 201.15 may also be available to issue sanctions to attorneys or agents in different factual circumstances in which they did not technically breach the APO, but when their actions or inactions did not demonstrate diligent care of the APO materials even though they appeared regularly before the Commission and were aware of the importance the Commission placed on the care of APO materials.

Counsel participating in Commission investigations have reported to the Commission potential breaches involving the electronic transmission of public versions of documents. In these cases, the document transmitted appears to be a public document with BPI/CBI omitted from brackets. However, the confidential information is actually retrievable by manipulating codes in software. The Commission has found that the electronic transmission of a public document containing BPI/CBI in a recoverable form was a breach of the APO.

The Commission has cautioned counsel to be certain that each authorized applicant files with the Commission within 60 days, of the completion of an import injury investigation or at the conclusion of judicial or binational review of the Commission's determination, a certificate stating that, to his or her knowledge and belief, all copies of BPI/CBI have been returned or destroyed, and no copies of such materials have been made available to any person to whom disclosure was not specifically authorized. This requirement applies to each attorney, consultant, or expert in a firm who has access to BPI/CBI. One firm-wide certificate is insufficient.

Attorneys who are signatories to the APO representing clients in a section 337 investigation should inform the administrative law judge and the Secretary if there are any changes to the information that was provided in the application for access to the CBI. This is similar to the requirement to update an applicant's information in title VII investigations.

In addition, attorneys who are signatories to the APO representing clients in a section 337 investigation should send a notice to the Commission if they stop participating in the investigation or the subsequent appeal of the Commission's determination. The notice should inform the Commission about the disposition of CBI obtained under the APO that was in their possession or the Commission could be hold them responsible for any failure of their former firm to return or destroy the CBI in an appropriate manner.

## III. Specific APO Breach Investigations

### A. Fiscal Year 2018

Case 1. The Commission determined that an attorney representing a party in a section 337 investigation breached an APO when the attorney disclosed CBI to unauthorized persons. The attorney, an APO signatory, prepared and directed an employee to file a public version of a submission that contained unredacted CBI. The document was finalized and filed on the public record by an employee supervised by the attorney, but the attorney did not review the final version of the document before it was filed. After being placed on the public record, the CBI was viewed by at least one non-party to the investigation. Approximately six days later, counsel for another party notified the attorney that the public version of the filing on the Commission's Electronic Document Information System (EDIS) contained unredacted CBI. The attorney contacted the Commission that same day to have the filing removed from EDIS.

The attorney, who is responsible for the subordinate employee's compliance with the APO, breached the APO because CBI was made available to unauthorized persons. In determining the appropriate action in response to the breach, the Commission considered mitigating factors, including that (1) the breach was inadvertent and unintentional; (2) the attorney took immediate corrective measures by contacting the Secretary's office once notified of the possible breach; and (3) the attorney had not committed a breach in the previous two years. The Commission also considered the following aggravating factors: (1) Opposing counsel discovered the breach; and (2) unauthorized persons accessed the CBI. The Commission issued a private letter of reprimand to the attorney.

### B. Fiscal Year 2019

Case 1. A law firm participating in a title VII investigation notified the Secretary that it had filed a public version of its brief that potentially contained BPI. The Secretary, in consultation with the Office of the General Counsel, determined that no breach had actually occurred. The law firm's public filing did not contain any information released to the law firm under the APO. A letter to the firm advised that, under the circumstances, the Commission has closed the investigation.

Case 2. The Commission determined that an attorney representing a party in a title VII investigation breached the APO when the attorney failed to properly redact BPI from a public filing. The day after filing the public document on EDIS, the attorney discovered that the BPI was still present in the electronic version of the public document, and the attorney immediately contacted the Secretary.

The attorney breached the APO because BPI was made available to unauthorized persons. In determining the appropriate action in response to the breach, the Commission considered mitigating factors, including that (1) the breach was unintentional; (2) the attorney had never previously breached an APO; (3) the attorney took immediate corrective measures upon discovery of the breach; (4) the attorney promptly reported the situation to the Secretary; (5) there was no evidence that any non-signatory to the APO viewed the BPI, and (6) significant time had passed since the breach occurred. The Commission did not find any aggravating factors to be present, and it sent a letter to the attorney advising that it would take no further action in the matter.

Case 3. Counsel representing respondents in a section 337 investigation notified the Secretary that another law firm may have breached the APO in the prior investigation when it filed a new complaint. The respondents' counsel alleged that the new complaint contained information that could not have been known but for access to the CBI from the prior investigation. Complainants' counsel was able to point to evidence that adequately supported its claim that it relied on publicly available information in drafting the complaint at issue. Accordingly, the Commission determined that no breach occurred.

By order of the Commission.

Issued: February 4, 2020.

**Lisa Barton,**

*Secretary to the Commission.*

[FR Doc. 2020–02534 Filed 2–7–20; 8:45 am]

**BILLING CODE 7020–02–P**

opportunities for Indian students. Similarly, each Tribally Controlled College or University that receives financial assistance is required by Sec.107(c)(1) of the Act and 25 CFR 41 to provide a report on the use of funds received.

*Title of Collection:* Bureau of Indian Education Tribal Colleges and Universities; Application for Grants and Annual Report Form.

*OMB Control Number:* 1076–0018.

*Form Number:* BIE–62107, BIE–6259, BIE Form 22, and the Third Week Monitoring Form.

*Type of Review:* Extension of a currently approved collection.

*Respondents/Affected Public:* Tribal college and university administrators.

*Total Estimated Number of Annual Respondents:* 29 per year, on average.

*Total Estimated Number of Annual Responses:* 174 per year, on average.

*Estimated Completion Time per Response:* Varies from 1 hour to 11 hours.

*Total Estimated Number of Annual Burden Hours:* 870 hours.

*Respondent's Obligation:* Required to Obtain a Benefit.

*Frequency of Collection:* Annually.

*Total Estimated Annual Nonhour Burden Cost:* $0.

An agency may not conduct or sponsor and a person is not required to respond to a collection of information unless it displays a currently valid OMB control number.

The authority for this action is the Paperwork Reduction Act of 1995 (44 U.S.C. 3501 *et seq*).

**Steven Mullen,**

*Information Collection Clearance Officer, Office of Regulatory Affairs and Collaborative Action—Indian Affairs.*

[FR Doc. 2021–27403 Filed 12–17–21; 8:45 am]

**BILLING CODE 4337–15–P**

---

**INTERNATIONAL TRADE COMMISSION**

**[Investigation No. 731–TA–1105 (Second Review)]**

**Notice of Commission Determination To Conduct a Full Five-Year Review; Lemon Juice From Argentina**

**AGENCY:** United States International Trade Commission.

**ACTION:** Notice.

**SUMMARY:** The Commission hereby gives notice that it will proceed with a full review pursuant to the Tariff Act of 1930 to determine whether termination of the suspended antidumping duty investigation on lemon juice from

Argentina would be likely to lead to continuation or recurrence of material injury within a reasonably foreseeable time. A schedule for the review will be established and announced at a later date.

**DATES:** December 6, 2021.

**FOR FURTHER INFORMATION CONTACT:** Tyler Berard (202–205–3354), Office of Investigations, U.S. International Trade Commission, 500 E Street SW, Washington, DC 20436. Hearing-impaired persons can obtain information on this matter by contacting the Commission's TDD terminal on 202–205–1810. Persons with mobility impairments who will need special assistance in gaining access to the Commission should contact the Office of the Secretary at 202–205–2000. General information concerning the Commission may also be obtained by accessing its internet server (*https://www.usitc.gov*). The public record for this review may be viewed on the Commission's electronic docket (EDIS) at *https://edis.usitc.gov* .

For further information concerning the conduct of this review and rules of general application, consult the Commission's Rules of Practice and Procedure, part 201, subparts A through E (19 CFR part 201), and part 207, subparts A, D, E, and F (19 CFR part 207).

**SUPPLEMENTARY INFORMATION:** On December 6, 2021, the Commission determined that it should proceed to a full review in the subject five-year review pursuant to section 751(c) of the Tariff Act of 1930 (19 U.S.C. 1675(c)). The Commission found that both the domestic and respondent interested party group responses to its notice of institution (86 FR 49054, September 1, 2021) were adequate. A record of the Commissioners' votes will be available from the Office of the Secretary and at the Commission's website.

*Authority:* This review is being conducted under authority of title VII of the Tariff Act of 1930; this notice is published pursuant to § 207.62 of the Commission's rules.

By order of the Commission.

Issued: December 15, 2021.

**Lisa Barton,**

*Secretary to the Commission.*

[FR Doc. 2021–27502 Filed 12–17–21; 8:45 am]

**BILLING CODE 7020–02–P**

---

**INTERNATIONAL TRADE COMMISSION**

**Summary of Commission Practice Relating to Administrative Protective Orders**

**AGENCY:** U.S. International Trade Commission.

**ACTION:** Summary of Commission practice relating to administrative protective orders.

**SUMMARY:** Since February 1991, the U.S. International Trade Commission ("Commission") has published in the **Federal Register** reports on the status of its practice with respect to breaches of its administrative protective orders ("APOs") under title VII of the Tariff Act of 1930 in response to a direction contained in the Conference Report to the Customs and Trade Act of 1990. Over time, the Commission has added to its report discussions of APO breaches in Commission proceedings other than under title VII and violations of the Commission's rules, including the rule on bracketing business proprietary information (the "24-hour rule"). This notice provides a summary of APO breach investigations completed during fiscal years 2020 and 2021. This summary addresses APO breach investigations related to proceedings under both title VII and section 337 of the Tariff Act of 1930. The Commission intends for this summary to inform representatives of parties to Commission proceedings of the specific types of APO breaches before the Commission and the corresponding types of actions that the Commission has taken.

**FOR FURTHER INFORMATION CONTACT:** Ryan Glanzer, Office of the General Counsel, U.S. International Trade Commission, telephone (202) 708–2508. Hearing-impaired individuals may obtain information on this matter by contacting the Commission's TDD terminal at 202–205–1810. General information concerning the Commission may also be obtained by accessing its website at *https://www.usitc.gov*.

**SUPPLEMENTARY INFORMATION:** Statutory authorities for Commission investigations provide for the release of business proprietary information ("BPI") or confidential business information ("CBI") to certain authorized representatives in accordance with requirements set forth in Commission regulations. Such statutory and regulatory authorities include: 19 U.S.C. 1677f; 19 CFR 207.7; 19 U.S.C. 1337(n); 19 CFR 210.5, 210.34; 19 U.S.C. 2252(i); 19 CFR 206.17; 19 U.S.C. 4572(f); 19 CFR 208.22; 19 U.S.C. 1516a(g)(7)(A); and 19 CFR 207.100–

207.120. The discussion below describes APO breach investigations that the Commission completed during fiscal years 2020 and 2021, including descriptions of actions taken in response to any breaches.

Since 1991, the Commission has published annually a summary of its actions in response to violations of Commission APOs and rule violations. *See* 85 FR 7589 (Feb. 10, 2020); 83 FR 42140 (Aug. 20, 2018); 83 FR 17843 (Apr. 24, 2018); 82 FR 29322 (June 28, 2017); 81 FR 17200 (Mar. 28, 2016); 80 FR 1664 (Jan. 13, 2015); 78 FR 79481 (Dec. 30, 2013); 77 FR 76518 (Dec. 28, 2012); 76 FR 78945 (Dec. 20, 2011); 75 FR 66127 (Oct. 27, 2010); 74 FR 54071 (Oct. 21, 2009); 73 FR 51843 (Sept. 5, 2008); 72 FR 50119 (Aug. 30, 2007); 71 FR 39355 (July 12, 2006); 70 FR 42382 (July 22, 2005); 69 FR 29972 (May 26, 2004); 68 FR 28256 (May 23, 2003); 67 FR 39425 (June 7, 2002); 66 FR 27685 (May 18, 2001); 65 FR 30434 (May 11, 2000); 64 FR 23355 (Apr. 30, 1999); 63 FR 25064 (May 6, 1998); 62 FR 13164 (Mar. 19, 1997); 61 FR 21203 (May 9, 1996); 60 FR 24880 (May 10, 1995); 59 FR 16834 (Apr. 8, 1994); 58 FR 21991 (Apr. 26, 1993); 57 FR 12335 (Apr. 9, 1992); and 56 FR 4846 (Feb. 6, 1991). This report does not provide an exhaustive list of conduct that will be deemed to be a breach of the Commission's APOs. The Commission considers APO breach investigations on a case-by-case basis.

As part of the Commission's effort to educate practitioners about the Commission's current APO practice, the Secretary to the Commission ("Secretary") issued in April 2020 a fifth edition of *An Introduction to Administrative Protective Order Practice in Import Injury Investigations* (Pub. No. 5052). This document is available on the Commission's website at *http://www.usitc.gov.*

## I. In General

### A. Antidumping and Countervailing Duty Investigations

The current APO application form for antidumping and countervailing duty investigations, which the Commission revised in May 2020, requires an APO applicant to agree to:

(1) Not divulge any of the BPI disclosed under this APO or otherwise obtained in this investigation and not otherwise available to him or her, to any person other than—

(i) Personnel of the Commission concerned with the investigation,

(ii) The person or agency from whom the BPI was obtained,

(iii) A person whose application for disclosure of BPI under this APO has been granted by the Secretary, and

(iv) Other persons, such as paralegals and clerical staff, who (a) are employed or supervised by and under the direction and control of the authorized applicant or another authorized applicant in the same firm whose application has been granted; (b) have a need thereof in connection with the investigation; (c) are not involved in competitive decision making for an interested party which is a party to the investigation; and (d) have signed the acknowledgment for clerical personnel in the form attached hereto (the authorized applicant shall also sign such acknowledgment and will be deemed responsible for such persons' compliance with this APO);

(2) Use such BPI solely for the purposes of the above-captioned Commission investigation or for U.S. judicial or review pursuant to the North American Free Trade Agreement the determination resulting from such investigation of such Commission investigation;

(3) Not consult with any person not described in paragraph (1) concerning BPI disclosed under this APO or otherwise obtained in this investigation without first having received the written consent of the Secretary and the party or the representative of the party from whom such BPI was obtained;

(4) Whenever materials (*e.g.,* documents, computer disks or similar media) containing such BPI are not being used, store such material in a locked file cabinet, vault, safe, or other suitable container (N.B.: Storage of BPI on so-called hard disk computer media or similar media is to be avoided, because mere erasure of data from such media may not irrecoverably destroy the BPI and may result in violation of paragraph C of this APO);

(5) Serve all materials containing BPI disclosed under this APO as directed by the Secretary and pursuant to section 207.7(f) of the Commission's rules;

(6) Transmit each document containing BPI disclosed under this APO:

(i) With a cover sheet identifying the document as containing BPI,

(ii) With all BPI enclosed in brackets and each page warning that the document contains BPI,

(iii) If the document is to be filed by a deadline, with each page marked "Bracketing of BPI not final for one business day after date of filing," and

(iv) Within two envelopes, the inner one sealed and marked "Business Proprietary Information—To be opened only by [name of recipient]", and the outer one sealed and not marked as containing BPI;

(7) Comply with the provision of this APO and section 207.7 of the Commission's rules

(i) Make true and accurate representations in the authorized applicant's application and promptly notify the Secretary of any changes that occur after the submission of the application and that affect the representations made in the application (*e.g.* change in personnel assigned to the investigation),

(ii) Report promptly and confirm in writing to the Secretary any possible breach of this APO, and

(iii) Acknowledge that breach of this APO may subject the authorized applicant and

other persons to such sanctions or other actions as the Commission deems appropriate, including the administrative sanctions and actions set out in this APO.

The APO form for antidumping and countervailing duty investigations also provides for the return or destruction of the BPI obtained under the APO on the order of the Secretary, at the conclusion of the investigation, or at the completion of Judicial Review. The BPI disclosed to an authorized applicant under an APO during the preliminary phase of the investigation generally may remain in the applicant's possession during the final phase of the investigation.

The APO further provides that breach of an APO may subject an applicant to:

(1) Disbarment from practice in any capacity before the Commission along with such person's partners, associates, employer, and employees, for up to seven years following publication of a determination that the order has been breached;

(2) Referral to the United States Attorney;

(3) In the case of an attorney, accountant, or other professional, referral to the ethics panel of the appropriate professional association;

(4) Such other administrative sanctions as the Commission determines to be appropriate, including public release of, or striking from the record any information or briefs submitted by, or on behalf of, such person or the party he represents; denial of further access to business proprietary information in the current or any future investigations before the Commission, and issuance of a public or private letter of reprimand; and

(5) Such other actions, including but not limited to, a warning letter, as the Commission determines to be appropriate.

APOs issued in cross-border long-haul trucking ("LHT") investigations, conducted under the United States-Mexico-Canada Agreement Implementation Act, 19 U.S.C. 4571–4574 (19 U.S.C. 4501 note), and safeguard investigations, conducted under the statutory authorities listed in 19 CFR 206.1 and 206.31, contain similar (though not identical) provisions.

### B. Section 337 Investigations

APOs in section 337 investigations differ from those in title VII investigations: There is no set form like the title VII APO application, and provisions of individual APOs may differ depending on the investigation and the presiding administrative law judge. However, in practice, the provisions are often similar in scope and applied quite similarly. Any person seeking access to CBI during a section 337 investigation (including outside counsel for parties to the investigation, secretarial and support personnel

178

**71918** **Federal Register** / Vol. 86, No. 241 / Monday, December 20, 2021 / Notices

assisting such counsel, and technical experts and their staff who are employed for the purposes of the investigation) is required to read the APO, file a letter with the Secretary indicating agreement to be bound by the terms of the APO, agree not to reveal CBI to anyone other than another person permitted access by the APO, and agree to utilize the CBI solely for the purposes of that investigation.

In general, an APO in a section 337 investigation will define what kind of information is CBI and direct how CBI is to be designated and protected. The APO will state which persons may have access to CBI and which of those persons must sign onto the APO. The APO will provide instructions on how CBI is to be maintained and protected by labeling documents and filing transcripts under seal. It will provide protections for the suppliers of CBI by notifying them of a Freedom of Information Act request for the CBI and providing a procedure for the supplier to seek to prevent the release of the information. There are provisions for disputing the designation of CBI and a procedure for resolving such disputes. Under the APO, suppliers of CBI are given the opportunity to object to the release of the CBI to a proposed expert. The APO requires a person who discloses CBI, other than in a manner authorized by the APO, to provide all pertinent facts to the supplier of the CBI and to the administrative law judge and to make every effort to prevent further disclosure. Under Commission practice, if the underlying investigation is before the Commission at the time of the alleged breach or if the underlying investigation has been terminated, a person who discloses CBI, other than in a manner authorized by the APO, should report the disclosure to the Secretary. *See* 19 CFR 210.25, 210.34(c). The APO requires all signatories to the APO to either return to the suppliers or destroy the originals and all copies of the CBI obtained during the investigation.

The Commission's regulations provide for certain sanctions to be imposed if the APO is violated by a person subject to its restrictions. The names of the persons being investigated for violating an APO are kept confidential unless the sanction imposed is a public letter of reprimand. 19 CFR 210.34(c)(1). The possible sanctions are:

(1) An official reprimand by the Commission.

(2) Disqualification from or limitation of further participation in a pending investigation.

(3) Temporary or permanent disqualification from practicing in any capacity before the Commission pursuant to 19 CFR 201.15(a).

(4) Referral of the facts underlying the violation to the appropriate licensing authority in the jurisdiction in which the individual is licensed to practice.

(5) Making adverse inferences and rulings against a party involved in the violation of the APO or such other action that may be appropriate. 19 CFR 210.34(c)(3).

Commission employees are not signatories to the Commission's APOs and do not obtain access to BPI or CBI through APO procedures. Consequently, they are not subject to the requirements of the APO with respect to the handling of BPI and CBI. However, Commission employees are subject to strict statutory and regulatory constraints concerning BPI and CBI and face potentially severe penalties for noncompliance. *See* 18 U.S.C. 1905; title 5, U.S. Code; and Commission personnel policies implementing the statutes. Although the Privacy Act (5 U.S.C. 552a) limits the Commission's authority to disclose any personnel action against agency employees, this should not lead the public to conclude that no such actions have been taken.

## II. Investigations of Alleged APO Breaches

The Commission conducts APO breach investigations for potential breaches that occur in title VII, safeguard, and LHT investigations, as well as potential breaches in section 337 investigations that are before the Commission or have been terminated.[1] Administrative law judges handle potential APO breaches in section 337 investigations when the breach occurred and is discovered while the underlying investigation is before the administrative law judge. The Commission may review any decision that the administrative law judge makes on sanctions in accordance with Commission regulations. *See* 19 CFR 210.25, 210.34(c).

For Commission APO breach investigations, upon finding evidence of an APO breach or receiving information that there is reason to believe that one has occurred, the Secretary notifies relevant Commission offices that the Secretary has opened an APO breach file and that the Commission has commenced an APO breach

investigation. The procedure for investigating alleged breaches of APOs has historically had two steps. First, the Commission determines whether a breach has occurred and, if so, who is responsible for it. This is done after the alleged breaching parties have been provided an opportunity to present their views on the matter. The breach investigation may conclude after this first step if: (1) The Commission determines that no breach occurred and issues a letter so stating; or (2) the Commission finds that a breach occurred but that no further action is warranted and issues a warning letter. Second, if the Commission determines that a breach occurred and that further action is warranted, the Commission will then determine what sanction, if any, to impose. The breaching parties are provided an opportunity to present their views on the appropriate sanction and any mitigating circumstances. The Commission can decide as part of either the first or second step to issue a warning letter. A warning letter is not a sanction, but the Commission will consider a warning letter as part of a subsequent APO breach investigation.

The Commission has found that the two-step process can result in duplicative work for the alleged breaching party and Commission staff in some APO breach investigations. For example, parties who self-report their own breach often address mitigating circumstances and sanctions in their initial response to the Commission's letter of inquiry on the breach. But under the Commission's two-step process, they must await a Commission decision on breach and then submit again their views on mitigating circumstances and sanctions. To streamline this process and accelerate processing times, the Commission has begun to offer alleged breaching parties in pending and new APO breach investigations the option to voluntarily elect a one-step APO breach investigation process. Under this process, the Commission will determine simultaneously whether a breach occurred and, if so, the appropriate sanction to impose, if any.

Sanctions for APO violations serve three basic interests: (a) Preserving the confidence of submitters of BPI/CBI that the Commission is a reliable protector of BPI/CBI; (b) disciplining breachers; and (c) deterring future violations. As the Conference Report to the Omnibus Trade and Competitiveness Act of 1988 observed: "[T]he effective enforcement of limited disclosure under [APO] depends in part on the extent to which private parties have confidence that there are effective sanctions against

---

[1] Procedures for investigations to determine whether a prohibited act, such as a breach, has occurred or for imposing sanctions for violation of the provisions of a protective order issued during a NAFTA panel or committee proceedings are set out in 19 CFR 207.100–207.120. The Commission's Office of Unfair Import Investigations conducts those investigations initially.

violation.'' H.R. Conf. Rep. 100–576, at 623 (1988).

The Commission has worked to develop consistent jurisprudence, not only in determining whether a breach has occurred, but also in selecting an appropriate response. In determining the appropriate response, the Commission generally considers mitigating factors such as the unintentional nature of the breach, the lack of prior breaches committed by the breaching party, the corrective measures taken by the breaching party, and the promptness with which the breaching party reported the violation to the Commission. The Commission also considers aggravating circumstances, especially whether persons not authorized under the APO actually viewed the BPI/CBI. The Commission considers whether there have been prior breaches by the same person or persons in other investigations and multiple breaches by the same person or persons in the same investigation.

The Commission's rules permit an economist or consultant to obtain access to BPI/CBI under the APO in a title VII, safeguard, or LHT investigation if the economist or consultant is under the direction and control of an attorney under the APO, or if the economist or consultant appears regularly before the Commission and represents an interested party who is a party to the investigation. *See* 19 CFR 207.7(a)(3)(i)(B) and (C); 19 CFR 206.17(a)(3)(i)(B) and (C); and 19 CFR 208.22(a)(3)(i)(B) and (C). Economists and consultants who obtain access to BPI/CBI under the APO under the direction and control of an attorney nonetheless remain individually responsible for complying with the APO. In appropriate circumstances, for example, an economist under the direction and control of an attorney may be held responsible for a breach of the APO by failing to redact APO information from a document that is subsequently filed with the Commission and served as a public document. This is so even though the Commission may also hold the attorney exercising direction or control over the economist or consultant responsible for the breach of the APO. In section 337 investigations, technical experts and their staff who are employed for the purposes of the investigation are required to sign onto the APO and agree to comply with its provisions.

The records of Commission investigations of alleged APO breaches in antidumping and countervailing duty cases, section 337 investigations, safeguard investigations, and LHT investigations are not publicly available

and are exempt from disclosure under the Freedom of Information Act, 5 U.S.C. 552. *See, e.g.,* 19 U.S.C. 1677f(g); 19 U.S.C. 1333(h); 19 CFR 210.34(c).

The two types of breaches most frequently investigated by the Commission involve: (1) The APO's prohibition on the dissemination of BPI or CBI to unauthorized persons; and (2) the APO's requirement that the materials received under the APO be returned or destroyed and that a certificate be filed with the Commission indicating what actions were taken after the termination of the investigation or any subsequent appeals of the Commission's determination. The dissemination of BPI/CBI usually occurs as the result of failure to delete BPI/CBI from public versions of documents filed with the Commission or transmission of proprietary versions of documents to unauthorized recipients. Other breaches have included the failure to bracket properly BPI/CBI in proprietary documents filed with the Commission, the failure to report immediately known or suspected violations of an APO, and the failure to adequately supervise non-lawyers in the handling of BPI/CBI.

Occasionally, the Commission conducts APO breach investigations that involve members of a law firm or consultants working with a firm who were granted access to APO materials by the firm although they were not APO signatories. In many of these cases, the firm and the person using the BPI/CBI mistakenly believed an APO application had been filed for that person. The Commission has determined in all of these cases that the person who was a non-signatory, and therefore did not agree to be bound by the APO, could not be found to have breached the APO. However, under Commission rule 201.15 (19 CFR 201.15), the Commission may take action against these persons for good cause shown. In all cases in which the Commission has taken such action, it decided that the non-signatory was a person who appeared regularly before the Commission, who was aware of the requirements and limitations related to APO access, and who should have verified his or her APO status before obtaining access to and using the BPI/CBI. The Commission notes that section 201.15 may also be available to issue sanctions to attorneys or agents in different factual circumstances in which they did not technically breach the APO, but their action or inaction did not demonstrate diligent care of the APO materials, even though they appeared regularly before the Commission and were aware of the importance that the Commission places on the proper care of APO materials.

Counsel participating in Commission investigations have reported to the Commission potential breaches involving the electronic transmission of public versions of documents. In these cases, the document transmitted appears to be a public document with BPI/CBI omitted from brackets. However, the confidential information is actually retrievable by manipulating codes in software. The Commission has found that the electronic transmission of a public document containing BPI/CBI in a recoverable form was a breach of the APO.

The Commission has cautioned counsel to be certain that each authorized applicant files with the Commission within 60 days of the completion of an import injury investigation or at the conclusion of judicial or binational review of the Commission's determination, a certificate stating that, to his or her knowledge and belief, all copies of BPI/CBI have been returned or destroyed, and no copies of such materials have been made available to any person to whom disclosure was not specifically authorized. This requirement applies to each attorney, consultant, or expert in a firm who has access to BPI/CBI. One firm-wide certificate is insufficient.

Attorneys who are signatories to the APO representing clients in a section 337 investigation should inform the administrative law judge and the Secretary if there are any changes to the information that was provided in the application for access to the CBI. This is similar to the requirement to update an applicant's information in title VII investigations.

In addition, attorneys who are signatories to the APO representing clients in a section 337 investigation should send a notice to the Commission if they stop participating in the investigation or the subsequent appeal of the Commission's determination. The notice should inform the Commission about the disposition of CBI obtained under the APO that was in their possession, or the Commission could hold them responsible for any failure of their former firm to return or destroy the CBI in an appropriate manner.

## III. Specific APO Breach Investigations

### A. Fiscal Year 2020

*Case 1.* The Commission determined that a supervisory attorney at a law firm breached an APO in a title VII investigation when he directed legal support staff at his firm to distribute two APO releases containing BPI to consultants before the filing, and the Commission's acceptance, of the

consultants' APO amendment application. The Commission issued a warning letter to the supervisory attorney but found that the supervisory attorney's legal support staff and the consultants had not breached the APO.

Before the first APO release at issue, the supervisory attorney, an APO signatory, directed his legal assistant to file an APO amendment application for the consultants. Due to technical issues, the legal assistant did not file the APO amendment application and did not inform anyone that she never completed the filing. The legal assistant stated that she was not aware of the time sensitivity of the APO amendment application. Without confirming whether the retained consultants had been added to the APO, the supervisory attorney instructed legal support staff to provide APO release materials from two releases to the retained consultants. Legal support staff at the firm did not confirm whether the consultants had been added to the APO before transferring the APO release materials. The day after the second release, the firm's staff discovered that the consultants' APO amendment application had not been filed with the Commission, and staff filed the APO amendment application on the same day as this discovery. The Commission ultimately granted the application and placed the consultants on the APO.

The Commission first became aware of this breach through opposing counsel. The supervisory attorney did not notify the Secretary of the potential breach until twelve days after his firm's discovery.

In determining whether to issue a sanction for the breach, the Commission considered mitigating factors, including that: (1) The breach was unintentional; (2) the supervisory attorney had not previously been found in breach of an APO; (3) he and his firm took immediate corrective action upon discovery of the breach; (4) his firm implemented new procedures to prevent similar breaches in the future; and (5) the retained consultants were eventually added to the APO, handled the BPI at all times as if they were subject to the APO, and did not disclose the BPI to unauthorized individuals. The Commission also considered the following aggravating factors: (1) The retained consultants were not authorized under the APO when they first received and viewed BPI; (2) opposing counsel, not the supervisory attorney or his firm, first notified the Commission of the breach; and (3) the supervisory attorney and his firm waited twelve days after discovering the breach to report it to the

Commission. Ultimately, the Commission determined that the mitigating factors outweighed the aggravating factors, and it issued a warning letter rather than a sanction. The consultants were the only non-signatories to view the BPI, and they were eventually added to the APO.

The Commission also considered whether to find the supervisory attorney's legal support staff and the consultants in breach of the APO, and it determined not to do so. The Commission found that the supervisory attorney's lack of oversight resulted in his staff's failure to comply with APO procedures. He had not relayed the urgency of the APO amendment application filing, and he did not instruct his staff to ensure that the consultants were on the APO before transferring APO release materials to them. The Commission similarly determined not to find the consultants in breach because they did not know that they were not authorized under the APO to view the BPI when they received it. Further, the consultants handled the BPI at all times as if they were under the APO, and they did not share the APO materials with unauthorized individuals.

*B. Fiscal Year 2021*

*Case 1.* The Commission determined that an attorney breached the APO in a section 337 investigation when he disclosed CBI in open court before the U.S. Court of Appeals for the Federal Circuit ("CAFC"). The Commission issued a private letter of reprimand.

The attorney's disclosure of CBI occurred during his rebuttal to opposing counsel's opening oral argument. Opposing counsel objected to the disclosure and moved that the CAFC not post a transcript or recording. In response to opposing counsel's objection, the attorney ended his rebuttal. A Commission attorney was present at the time of the disclosure and notified the Secretary of the breach. Following additional briefing from the parties on the disclosure, the CAFC ultimately granted opposing counsel's motion to withhold the transcript and recording of the oral argument from its website, and no transcript or recording was ever posted. However, individuals not authorized to receive CBI under the APO were present at the CAFC oral argument at the time of the disclosure.

In determining the appropriate sanction in response to the breach, the Commission considered mitigating factors, including: (1) The breach was inadvertent and unintentional; (2) the Commission was immediately aware of

the breach due to its staff's presence at the oral argument; and (3) the attorney took prompt corrective action to mitigate the effect of the breach. The Commission also considered the following aggravating factors: (1) Opposing counsel discovered the breach; and (2) the Commission presumed that non-signatories to the APO who were present at the CAFC oral argument heard the CBI, and the attorney did not present any evidence to the contrary. The Commission determined to issue a private letter of reprimand.

By order of the Commission.

Issued: December 14, 2021.

**Lisa Barton,**

*Secretary to the Commission.*

[FR Doc. 2021–27413 Filed 12–17–21; 8:45 am]

**BILLING CODE 7020–02–P**

---

**JUDICIAL CONFERENCE OF THE UNITED STATES**

**Advisory Committee on Appellate Rules; Meeting of the Judicial Conference**

**AGENCY:** Judicial Conference of the United States.

**ACTION:** Advisory Committee on Appellate Rules; Notice of cancellation of open hearing.

**SUMMARY:** The following virtual public hearing on proposed amendments to the Federal Rules of Appellate Procedure has been canceled: Appellate Rules Hearing on January 14, 2022. The announcement for this hearing was previously published in the **Federal Register** on August 11, 2021.

**DATES:** January 14, 2022.

**FOR FURTHER INFORMATION CONTACT:** Bridget Healy, Esq., Acting Chief Counsel, Rules Committee Staff, Administrative Office of the U.S. Courts, Thurgood Marshall Federal Judiciary Building, One Columbus Circle NE, Suite 7–300, Washington, DC 20544, Phone (202) 502–1820, *RulesCommittee_Secretary@ao.uscourts.gov.*

(Authority: 28 U.S.C. 2073.)

Dated: December 15, 2021.

**Shelly L. Cox,**

*Management Analyst, Rules Committee Staff.*

[FR Doc. 2021–27468 Filed 12–17–21; 8:45 am]

**BILLING CODE 2210–55–P**