Slip Op. 22-124

## UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| AMSTED RAIL COMPANY, INC.,<br>ASF-K DE MEXICO S. DE R.L. DE C.V.,<br>STRATO, INC., WABTEC CORP.<br>AND TTX COMPANY,<br><br>                Plaintiffs,<br><br>       v.<br><br>UNITED STATES INTERNATIONAL<br>TRADE COMMISSION, and ACTING<br>SECRETARY KATHERINE M. HINER,<br>in her official capacity,<br><br>                Defendants,<br><br>and<br><br>COALITION OF FREIGHT RAIL COUPLER<br>PRODUCERS,<br><br>             Defendant-Intervenor. | Before: Judge Gary S. Katzmann<br>Court No. 22-00307<br><br>*PUBLIC VERSION* |

## OPINION AND ORDER

[The Amended Complaint is dismissed without prejudice to refiling under 28 U.S.C. § 1581(c).]

Dated: <u>November 15, 2022</u>

<u>Brian B. Perryman</u>, Faegre Drinker Biddle & Reath, LLP, of Washington, D.C., argued for Plaintiffs Amsted Rail Company, Inc. and ASF-K de Mexico S. de R.L. de C.V. With him on the briefs were <u>Richard Ferrin</u>, <u>Douglas J. Heffner</u> and <u>Carolyn Bethea Connolly</u>.

<u>Ryan M. Proctor</u>, Jones Day, of Washington, D.C., argued for Plaintiff Wabtec Corp. With him on the joint briefs was <u>David M. Morrell</u>.

<u>Ned H. Marshak</u>, Grunfeld, Desiderio, Lebowitz, Silverman & Klestadt LLP, of New York, N.Y., argued for Plaintiff Strato, Inc. With him on the joint briefs was <u>Andrew T. Schutz</u>.

James M. Smith, Covington & Burling LLP, of Washington, D.C., argued for Plaintiff TTX Company.  With him on the joint briefs were Shara L. Aranoff and Sooan (Vivian) Choi.


Andrea C. Casson, Assistant General Counsel for Litigation and Jane C. Dempsey, Attorney-Advisor, Office of the General Counsel, U.S. International Trade Commission, of Washington, D.C., argued for Defendants U.S. International Trade Commission and Acting Secretary Katherine M. Hiner, in her official capacity.  With them on the briefs were David A.J. Goldfine and Brian R. Allen.

   Katzmann, Judge:  At the heart of this case are sensitive and time-honored questions of federal jurisdiction and agency power, protection of confidential information, and professional responsibility.  Plaintiffs Amsted Rail Company, Inc., ASF-K de Mexico S. de R.L. de C.V., Strato, Inc., Wabtec Corp., and TTX Company (together, "Plaintiffs") are parties subject to ongoing antidumping and countervailing duty investigations by Defendants the U.S. International Trade Commission and Acting Secretary Katherine M. Hiner, in her official capacity (together, the "Commission") into freight rail couplers ("FRCs")[1] and related parts from China and Mexico, which were initiated by a petition filed by Defendant-Intervenor Coalition of Freight Rail Coupler Producers ("Coalition").  See Certain Freight Rail Couplers and Parts Thereof from China and Mexico, USITC Inv. Nos. 701-TA-682 & 731-TA-1592-1593 (Preliminary) ("Current Investigations").  In the course of the Current Investigations, Plaintiffs allege two instances of attorney misconduct: (1) [[                              ]] ("Attorney") of [[

]] ("Law Firm"), the Coalition's counsel before the Commission, violated the Commission's

---

[1] FRCs are "used to connect freight railcars together. The coupler resembles a curved human hand and holds the train cars together to eliminate the dangerous task for a railroad worker to stand between cars in order to join them together."  Petitions at 8, Certain Freight Rail Couplers and Parts Thereof from China and Mexico, USITC Inv. Nos. 701-TA-682 & 731-TA-1592-1593, EDIS No. 781165.

administrative protective order[2] ("APO") for having used business proprietary information[3]

("BPI") for improper purposes; and (2) Attorney and Law Firm continue to participate in the

---

[2] The APO statute relevant to this case reads:

> Upon receipt of an application . . . which describes in general terms the information requested and sets forth the reasons for the request, . . . the Commission shall make all business proprietary information presented to, or obtained by it, during a proceeding . . . available to interested parties who are parties to the proceeding under a protective order.

19 U.S.C. § 1677f(c)(1)(A).  The APO process is also governed by regulation in 19 C.F.R. Parts 201, 206, 207, and 208.  See generally U.S. Int'l Trade Comm'n, An Introduction to Administrative Protective Order Practice in Import Injury Investigations (6th ed. 2022), https://www.usitc.gov/publications/701_731/pub5280.pdf [hereinafter APO Handbook].

Safeguarding the laws regulating APOs and confidential information is critical to the larger administration of international trade law in the United States.  The Department of Commerce ("Commerce") and the Commission must both be able to "obtain meaningful business data, much of which is confidential, from domestic and foreign enterprises alike.  If either side develops doubts about the mechanism for protecting its property rights . . . , [Commerce's and the Commission's] task becomes much more difficult, and the public interest suffers."  Hyundai Pipe Co. v. U.S. Dep't of Com., 11 CIT 238, 243–44, 1987 WL 8807, at *5 (Apr. 1, 1987).

[3] The Commission defines "confidential business information," which includes the term "'proprietary information' within the meaning of section 777(b) of the Tariff Act of 1930 (19 U.S.C. [§] 1677f(b))," to mean:

> [I]nformation which concerns or relates to the trade secrets, processes, operations, style of works, or apparatus, or to the production, sales, shipments, purchases, transfers, identification of customers, inventories, or amount or source of any income, profits, losses, or expenditures of any person, firm, partnership, corporation, or other organization, or other information of commercial value, the disclosure of which is likely to have the effect of either impairing the Commission's ability to obtain such information as is necessary to perform its statutory functions, or causing substantial harm to the competitive position of the person, firm, partnership, corporation, or other organization from which the information was obtained, unless the Commission is required by law to disclose such information.

19 C.F.R. § 201.6(a)(1).  "The Commission collects both public and confidential business information in the course of conducting investigations under the statutory authorities it administers. . . .  In antidumping and countervailing duty (AD/CVD) investigations . . . , the Commission refers to the CBI that it collects as 'business proprietary information' (BPI), such as data on private companies' profits, investments, and production processes."  U.S. Int'l Trade Comm'n, APO Handbook, supra note 2, at 1.

Current Investigations despite a disabling conflict of interest.  The Commission denied Plaintiffs'

requests for further investigation of these claims.

Plaintiffs filed the instant action before the conclusion of the Current Investigations.  They

seek review of the Commission's actions under the Administrative Procedure Act ("APA"), 5

U.S.C. § 706,[4] and ask this court for declaratory and injunctive relief to (1) block disclosure of

Plaintiffs' BPI to the Attorney and Law Firm for the remainder of the Current Investigations; (2)

disqualify the Law Firm from participating in the investigations; and (3) direct the Commission to

dismiss the petition that initiated the Current Investigations.  Plaintiffs plead subject matter

jurisdiction under 28 U.S.C. § 1581(i), which grants to "the Court of International Trade . . .

exclusive jurisdiction of any civil action commenced against the United States, its agencies, or

officers, that arises out of any law of the United States providing for . . . [the] administration and

enforcement" of "tariffs, duties, fees, or other taxes on the importation of merchandise for reasons

other than the raising of revenue."  28 U.S.C. § 1581(i)(1)(B), (D).   Plaintiffs alternatively plead

jurisdiction pursuant to the court's power to supervise members of its bar and as a petition for writ

of mandamus.

After successfully petitioning the court for a temporary restraining order, Plaintiffs now

move for a preliminary injunction against the Commission to block disclosure of Plaintiffs' BPI

to Attorney and Law Firm for the remainder of the Current Investigations.  The Commission argues

---

[4] Specifically, Plaintiffs allege that (1) the Commission's refusal to disqualify the Law Firm
was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," 5
U.S.C. § 706(2); (2) the Commission's decision to release Plaintiffs' BPI to the Law Firm was
similarly arbitrary and capricious; and (3) the Commission's decision to release Plaintiffs' BPI
to the Law Firm was a violation of procedural due process, U.S. Const. amend. V, and therefore
"contrary to constitutional right," 5 U.S.C. § 706(2).  Plaintiffs also make an analogous charge as
a petition for writ of mandamus.  As explained below, today's holding expresses no views on the
merits of Plaintiffs' claims.

that the court must deny Plaintiffs' Motion for Preliminary Injunction because the court lacks

subject matter jurisdiction over Plaintiffs' claims.  The Commission first contends that 28 U.S.C.

§ 1677f(c)(2) removes Plaintiffs' claims from the court's subject matter jurisdiction because §

1677f is limited to judicial review of denials, not grants, of information access.  The Commission

alternatively argues that 28 U.S.C. § 1581(i) jurisdiction is improper because a claim brought under

28 U.S.C. § 1581(c) would not be "manifestly inadequate," Miller & Co. v. United States, 824

F.2d 961, 963 (Fed. Cir. 1987), and Plaintiffs should wait until their claims ripen.  The Commission

also contests Plaintiffs' alternative bases for jurisdiction.

The court holds that § 1677f does not preclude jurisdiction, § 1581(c) jurisdiction is not

manifestly inadequate in this case, and alternative bases for jurisdiction are unavailable.  The court,

therefore, lacks subject matter jurisdiction to hear Plaintiffs' claims and grant their requested relief.

The court dismisses the Amended Complaint without prejudice to refiling once a claim under 28

U.S.C. § 1581(c) is ripe, vacates the Temporary Restraining Order, and denies Plaintiffs' Motion

for Preliminary Injunction and other outstanding motions as moot.

## BACKGROUND

### I.    *The Predecessor Investigations*

The facts necessary for the court to determine jurisdiction are as follows.[5]  Amsted Rail

Company, Inc. ("ARC") is a U.S. producer and importer of FRC systems and components.  Am.

Verified Compl. or, in the Alternative, Petition for Writ of Mandamus ¶ 9 ("Am. Compl."), Oct.

24, 2022, ECF No. 44.  On June 17, 2021, ARC engaged Wiley Rein LLP ("Wiley") for legal

---

[5] "Although jurisdictional facts normally are stated in the complaint, the court may consider matters outside the pleadings," including exhibits to the Commission's and Coalition's filings. JSC Acron v. United States, 37 CIT 120, 126, 893 F. Supp. 2d 1337, 1344 (2013) (citing Land v. Dollar, 330 U.S. 731, 735 n.4 (1947); Cedars–Sinai Med. Center v. Watkins, 11 F.3d 1573, 1583–84 (Fed. Cir. 1993)).

advice related to the potential prosecution of FRC imports.  Id. ¶ 20.  The Attorney, then a partner

at Wiley, executed the engagement letter on Wiley's behalf.  Id. ¶ 22.  Attorney was at the time,

and is still, a member of the Bar of the District of Columbia and admitted to practice before the

Court of International Trade.  Id.

       The Coalition is a domestic trade association.  Id. ¶ 16.  Through the Attorney, the Coalition

filed a petition with the Commission and Commerce on September 28, 2021.  Id. ¶ 25.  At the time

of filing, it comprised ARC and McConway and Torley, LLC ("M&T"), a domestic producer of

FRCs.  Id. ¶ 26.  The petition alleged that certain FRCs from China were being sold in the United

States at less than normal value and were being subsidized by the Chinese government, which was

causing material injury to the domestic industry producing FRCs.  See Freight Rail Coupler

Systems and Components from China, USITC Inv. Nos. 701-TA-670 & 731-TA-1570

("Predecessor Investigations").  The next day, the Attorney applied for access to BPI under the

Commission's APO.  Ex. 1 to Def.'s Resp. to Mot. for Prelim. Inj. ("Def.'s Resp."), Oct. 21, 2022,

ECF No. 42.  On October 6, 2021, seven days after the petition's filing, ARC filed a letter

withdrawing from the petition and explained that United Steel, Paper and Forestry, Rubber,

Manufacturing, Energy, Allied Industrial and Service Workers International Union, AFL-CIO,

CLC would take its place as a member in the Coalition.  Am. Compl. ¶ 29.  The Commission

approved the Attorney's request to access BPI on October 12, 2021.  Ex. 4 to Def.'s Resp.  On

October 14, 2021, the Commission issued the list of parties subject to the APO, which included

the Attorney, Wiley, and counsel for Plaintiffs Strato, Inc. and Wabtec Corp.  Ex. 5 to Def.'s Resp.

       The Commission issued its preliminary determinations on November 15, 2021, and found

reasonable indication of material injury to U.S. industry.  See Freight Rail Coupler Systems and

Components from China, 86 Fed. Reg. 64,958, 64,958 (Nov. 19, 2021).  On March 1, 2022, the

Attorney amended his entry of appearance and advised parties of a change in firms from Wiley to

the Law Firm.  Am. Compl. ¶ 39.  On July 5, 2022, the Commission issued its final determinations

and found that U.S. industry was not materially injured or threatened with material injury by FRC

imports from China.[6]  See Freight Rail Coupler Systems and Components from China, 87 Fed.

Reg. 41,144, 41,145 (July 11, 2022).  After the final determination, but within the 30-day period

to file an action for judicial review of the Commission's negative determinations, see 19 U.S.C. §

1516a(1)(C), the Attorney amended the APO to include other applicants from the Law Firm.  Ex.

6 to Def.'s Resp.  The Coalition did not file an appeal.  On September 26, the Attorney certified

destruction of all BPI released to the Law Firm under the Predecessor Investigations' APO.  Ex. 7

to Def.'s Resp.

## II.    The Current Investigations

On September 28, 2022, the Coalition, again through the Attorney, filed new petitions

alleging that FRC imports from China and Mexico were being sold at less than normal value and

FRC imports from China were being subsidized, resulting in material injury to U.S. FRC

producers.  See Certain Freight Rail Couplers and Parts Thereof from China and Mexico, USITC

Inv. Nos. 701-TA-682 & 731-TA-1592-1593 (Preliminary) ("Current Investigations").   On

September 29, the Law Firm filed an APO application with the Commission covering the same set

of lawyers and staff covered under the APO in the Predecessor Investigations.  Am. Compl. ¶ 51.

---

[6] The Commission noted that Mexico was the largest source of nonsubject FRC imports, that "nonsubject imports correlate with meaningful decreases [of domestic prices] to a greater degree than do subject imports," and the Coalition's contentions that ARC's "outshore[d] some of its FRC production operations to Mexico."  See, e.g., Final Determinations at 15, 29 & n.149, Freight Rail Coupler Systems and Components from China, USITC Inv. Nos. 701-TA-670 & 731-TA-1570.

As the preliminary investigation proceeded, Plaintiffs "each submitted significant amounts of extraordinarily detailed BPI in response to the Commission's questionnaires." Id. ¶ 53.

From October 11 to 14, Plaintiffs separately filed letters with the Commission challenging the Attorney and Law Firm's participation in the Current Investigations. See id. ¶¶ 64–73. Plaintiffs asked the Commission to: (1) disqualify the Law Firm from further participation as counsel for the Coalition in the Current Investigations; (2) rescind the Law Firm's authorization to receive BPI under the Current Investigations APO; and (3) not require Plaintiffs to serve BPI questionnaire responses on the Law Firm until the Commission made a determination regarding the allegations. See id. Plaintiffs challenged the Attorney and Law Firm's access to BPI by making two allegations of misconduct. First, Plaintiffs alleged that the Attorney's prior representation of ARC gave rise to an ongoing and unconsented conflict of interest in the Current Investigations, a proceeding that is substantially related to the Predecessor Investigations and where ARC's interests are materially adverse to those of the Coalition. See Am. Compl. ¶¶ 92–94; see also D.C. Rules of Pro. Conduct r. 1.9 ("A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent."). Second, Plaintiffs alleged that the Law Firm "abused the Predecessor APO by using ARC's and others' BPI as a springboard for the Current Investigations" because the Law Firm "added nine attorneys and non-attorneys to the Predecessor APO after the Commission had already issued its determinations in the Predecessor Investigations."[7] Am. Compl. ¶ 71; see also 19 C.F.R. § 207.7(b)(2) (parties to an APO may "[u]se

---

[7] Defendant-Intervenor disputes the number of attorneys and non-attorneys added after the Commission's final determination. See Def.-Inter.'s Resp. to Mot. for Temporary Restraining

Court No. 22-00307

such business proprietary information solely for the purposes of representing an interested party in the Commission investigation <u>then in progress</u>" (emphasis added)).

The Commission deemed several of these letters as improperly filed because they mentioned both the ethical and APO breach allegations on the public record, which was contrary to Commission policy to address APO breach allegations confidentially and off the record.[8]  Ex. 8 to Def.'s Resp. ("Hiner Declaration"); <u>see also</u> U.S. Int'l Trade Comm'n, <u>APO Handbook</u>, <u>supra</u> note 2, at 12 ("[T]he Commission keeps all correspondence between the Commission and an alleged breaching party confidential. . . . This correspondence is not served on parties to the investigation or available for public access on EDIS.").  On an October 13 phone call from Acting Secretary Hiner to counsel for ARC, the Acting Secretary stated that, regarding the APO breach allegations, "in general, parties submitting such allegations should provide details about the information compromised.  Counsel said that they did not have those specifics, but rather that the circumstances regarding the timeline for APO applications on the predecessor investigation post-Commission vote and filing of the new petition 'smelled untoward.'"  Hiner Declaration ¶ 5.  Later that day, the Commission released the APO and Public Service Lists, which included the Attorney. Ex. 10 to Def.'s Resp.  On the morning of October 14, ARC filed a letter regarding the APO breach to the Acting Secretary regarding the APO breach allegations, requesting that the Commission rescind the Attorney's APO access and not compel Plaintiffs to serve their BPI questionnaires on the Attorney.  Hiner Declaration ¶ 3.

---

Order and Mot. to Vacate Temporary Restraining Order at 3–4, Oct. 26, 2022, ECF No. 52 ("Def.-Inter.'s Br.").

[8] Since February 1991, the Commission has published periodic reports in the Federal Register that summarize its APO breach practices and discuss specific APO breach investigations without disclosing identifying details.  <u>See, e.g.</u>, <u>Summary of Commission Practice Relating to Administrative Protective Orders</u>, 86 Fed. Reg. 71,916 (Dec. 20, 2021).

### III.   *Procedural History*

Plaintiffs filed the instant action against the Commission on the evening of October 14, 2022 to challenge the Commission's determination that BPI would not be withheld before its conclusion of the Attorney Investigations.  See Compl. at 11–14, Oct. 14, 2022, ECF No. 14. Plaintiffs filed a Motion for Temporary Restraining Order ("TRO Motion") on the same day.  See Mot. for Temporary Restraining Order, Oct. 14, 2022, ECF No. 15.  Plaintiffs provided the Commission with telephonic notice of the TRO Motion on October 14, 2022, Compl. at 11, and served the Commission on October 17, 2022, see Certificate of Service, Oct. 17, 2022, ECF No. 18.  The court scheduled a status conference with the parties that same day, Order Scheduling Status Conference, Oct. 17, 2022, ECF No. 19, and issued a temporary stay in order to consider the arguments raised by the Commission during the status conference before the Commission's 5:15 p.m. deadline that day to serve Plaintiffs' BPI on the parties.  See Amended Procedural Order, Oct. 17, 2022, ECF No. 26.

The court granted Plaintiffs' TRO Motion the following day.  See Temporary Restraining Order, Oct. 18, 2022, ECF No. 28; Erratum Order, Oct. 18, 2022, ECF No. 30.  The court deemed Plaintiffs' TRO Motion to be a Motion for Preliminary Injunction and ordered a response by the Commission, a reply by Plaintiffs, and a hearing.  Temporary Restraining Order at 2.  On October 20, 2022, the Coalition filed an unopposed motion to intervene as Defendant-Intervenor, see Def.-Inter.'s Mot. to Intervene, Oct. 18, 2022, ECF No. 35, which the court granted, see Order Granting Def.-Inter.'s Mot. to Intervene, Oct. 20, 2022, ECF No. 38.  The Commission filed its response brief on October 21, 2022.  See Def.'s Resp.

On the same day, the Commission also issued its decisions not to investigate the misconduct allegations.  In a declaration setting forth a chronology of events made by the

Commission to the court, Acting Secretary Hiner stated:  "Regarding the alleged APO violation, I, as Acting Secretary, have determined that the evidence is insufficient to warrant institution of an APO breach at this time."  Hiner Declaration ¶ 16.  Similarly, in a letter from Acting Secretary Hiner to Plaintiffs, the Commission "determined that there is not good cause under Rule 201.15(a), at this time, to disqualify [[              ]] from participation in this investigation based on the ethical issues that ARC has raised."  Ex. 13 to Def.'s Resp. at 3.  The Commission further stated that it "does not adjudicate alleged violations of the Rules of Professional Conduct of a state Bar, nor does it determine whether conduct has violated the Model Rules of Professional Conduct of the American Bar Association," concluding that "[s]uch a determination falls under the purview of the relevant state bar association" and noting that "no such determination has been made."  Id. at 2–3.

With determinations having been made by the Commission that the evidence was insufficient to warrant an institution of an APO breach and that the allegations of ethical misconduct were not subject to further review, Plaintiffs filed an Amended Complaint three days later as a matter of course.  See Am. Compl.; see also USCIT R. 15(a)(1)(A).  Plaintiffs ask for declaratory and injunctive relief to direct the Commission to disqualify the Law Firm from further participation in the Current Investigations, forbid the Commission's disclosure of BPI to the Law Firm, and direct the Commission to dismiss the petition filed in the Current Investigations without prejudice to refiling.[9]  Id. at 26–27.  Less than half an hour later, the Commission also moved to

---

[9] Also on October 24, 2022, Plaintiffs filed a Second Motion for Preliminary Injunction ("Second PI Motion").  See Pls.' Second Mot. for Prelim. Inj., Oct. 24, 2022, ECF No. 48.  The Second PI Motion seeks to forbid the Commission from allowing the Attorney and the Law Firm any access to the Current Investigations.  Id. at 1–2.  The Second PI Motion has not yet fully been briefed.

On November 1, 2022, Plaintiffs filed another action seeking similar relief against the United States Department of Commerce ("Commerce").  See Amsted Rail Co. v. U.S. Dep't of Com. ("Amsted Rail II"), No. 22-00316 (CIT Nov. 1, 2022).  The court does not express any view on Amsted Rail II.

**PUBLIC VERSION**

dismiss the case, without reference to the Amended Complaint, for failure to exhaust administrative remedies and mootness, lack of subject matter jurisdiction, and failure to state a claim.  See Def.'s Mot. to Dismiss, Oct. 24, 2022, ECF No. 46.

On October 26, 2022, Plaintiffs filed a reply to the Commission's Response, see Pls.' Reply, Oct. 26, 2022, ECF No. 50, and Defendant-Intervenor filed a response to the preliminary injunction motion that also moved to vacate the Temporary Restraining Order, see Def.-Inter.'s Br.  The Commission filed a joint motion for protective order, see Joint Mot. for Protective Order, Oct. 26, 2022, ECF No. 49, which the court granted the next day, see Protective Order, Oct. 27, 2022, ECF No. 53.

Having determined that the preservation of the status quo while parties responded to arguments raised after the filings of the Amended Complaint and Motion to Vacate was good cause, the court extended the Temporary Restraining Order to November 15, 2022, on October 27, 2022, and ordered further briefing.  See Order Extending Temporary Restraining Order, Oct. 27, 2022, ECF No. 54.  The Commission filed a sur-reply to Plaintiffs' reply, see Def.'s Sur-Reply, Nov. 2, 2022, ECF No. 60, and Plaintiffs filed a response to Defendant-Intervenor's Motion to Vacate, see Pls.' Reply to Def-Inter., Nov. 2, 2022, ECF No. 61.  Plaintiffs also filed a response to the Commission's Motion to Dismiss that same day.  See Pls.' Resp. to Mot. to Dismiss, Nov. 2, 2022, ECF No. 63.  On November 7, 2022, the Commission filed another Motion to Dismiss, this time challenging the Amended Complaint for lack of subject matter jurisdiction and failure to state a claim.  See Def.'s Mot. to Dismiss Am. Compl., Nov. 7, 2022, ECF No. 73.  The court held a closed hearing to consider the Motion for Preliminary Injunction on November 9, 2022, in advance of the expiration of the Temporary Restraining Order on November 15, 2022.  See Courtroom Proceeding, Nov. 9, 2022, ECF No. 76.  Plaintiffs and the Commission filed supplemental

authority later that day.  See Pls.' Notice of Suppl. Authority, Nov. 9, 2022, ECF No. 77; Def.'s

Notice of Suppl. Authority, Nov. 9, 2022, ECF No. 78.  The court invited parties to file post-

hearing submissions, and on November 10, 2022, Plaintiffs filed such a submission.  See Pls.'

Post-Hearing Submission, Nov. 10, 2022, ECF No. 79.  The briefing and hearing on the Motion

for Preliminary Injunction included arguments relating to both subject matter jurisdiction and the

merits.

## DISCUSSION

"Federal courts are courts of limited jurisdiction."  Kokkonen v. Guardian Life Ins. Co. of

Am., 511 U.S. 375, 377 (1994).  And thus the "court may and should raise the question of its

jurisdiction sua sponte at any time it appears in doubt."  Arctic Corner, Inc. v. United States, 845

F.2d 999, 1000 (Fed. Cir. 1988).  The court must evaluate and "enforce the limits of its jurisdiction"

in all cases, especially those that invoke its powers in law and equity to intervene in an ongoing

agency proceeding.  Borusan Mannesmann Boru Sanayi ve Ticaret A.Ş. v. United States, 38 CIT

__, __, 986 F. Supp. 2d 1381, 1384 (2014).

### I.   *19 U.S.C. § 1677f(c)(2) Does Not Remove Plaintiffs' Claims from the Court's Subject Matter Jurisdiction*

Plaintiffs seek review of the Commission's decision to grant the Attorney and Law Firm

access to BPI under the APO.  The Commission contests the court's jurisdiction to hear such a

claim by drawing a negative inference from 19 U.S.C. § 1677f(c)(2), which reads in relevant part:

> If the administering authority denies a request for information . . . , then application may
> be made to the United States [Court of International Trade] for an order directing the
> administering authority or the Commission to make the information available.

19 U.S.C. § 1677f(c)(2) (emphasis added); see also 28 U.S.C. § 1581(f) ("The Court of

International Trade shall have exclusive jurisdiction of any civil action involving an application

for an order directing . . . the International Trade Commission to make confidential information

available . . . .").  In short, the Commission contends that because Congress limited the language

of § 1677f(c)(2) to <u>denials</u> of information access, Congress did not vest the Court of International

Trade with jurisdiction to review <u>grants</u> of information access.  <u>See</u> Def.'s Sur-Reply at 4.

     "The force of any negative implication, however, depends on context."  <u>Marx v. Gen.</u>

<u>Revenue Corp.</u>, 568 U.S. 371, 381 (2013).  While it is well established that "[c]ourts created by

statute can have no jurisdiction but such as the statute confers," <u>Sheldon v. Sill</u>, 49 U.S. (8 How.)

441, 449 (1850), "jurisdiction is not defeated by implication."  <u>Galveston, Harrisburg & San</u>

<u>Antonio Ry. v. Wallace</u>, 223 U.S. 481, 490 (1912).  And when applying administrative law, courts

must also consider "a familiar principle of statutory construction: the presumption favoring judicial

review of administrative action."  <u>Guerrero-Lasprilla v. Barr</u>, 140 S. Ct. 1062, 1069 (2020)

(internal quotation marks omitted) (quoting <u>Kucana v. Holder</u>, 558 U.S. 233, 251 (2010)).  "The

presumption can only be overcome by 'clear and convincing evidence' of congressional intent to

preclude judicial review."  <u>Id.</u> (quoting <u>Reno v. Catholic Soc. Servs., Inc.</u>, 509 U.S. 43, 64 (1993)).

     The relevant evidence of congressional intent falls far short of "clear and convincing."

First, the text and structure of § 1581 counsel against the Commission's interpretation.  § 1581(i)

authorizes this Court to hear "<u>any</u> civil action . . . that arises out of <u>any</u> law of the United States

providing for . . . tariffs, duties, fees, or other taxes on the importation of merchandise for reasons

other than the raising of revenue . . . ; or . . . <u>administration and enforcement</u> with respect to [those]

matters."  28 U.S.C. § 1581(i) (emphasis added).  The text clearly implements Congress's intent

to grant "broad residual jurisdiction to the United States Court of International Trade."  H.R. Rep.

No. 96-1235, at 33 (1980).  Furthermore, under 28 U.S.C. § 1581(c) and 19 U.S.C. § 1516a, "the

procedural correctness" of any determination listed under 19 U.S.C. §§ 1516a and 1517, "as well

as the merits, are subject to judicial review."  <u>Miller & Co.</u>, 824 F.2d at 964.  Negative implications

from the text of one jurisdictional statute, without more, should not be used to undo another unless the two are impossible to reconcile.  Cf. Conn. Nat. Bank v. Germain, 503 U.S. 249, 253 (1992) ("Redundancies across statutes are not unusual events in drafting, and so long as there is no 'positive repugnancy' between two laws, a court must give effect to both." (quoting Wood v. United States, 41 U.S. 342, 363 (1842)).  Congress's design in § 1581 does not compel a conflict between 19 U.S.C. § 1677f and 28 U.S.C. § 1581(f), which authorize the court's review of denials of access to confidential information, and other provisions of § 1581, which, if applicable, authorize review of a grant of access to confidential information.[10]

Second, while "jurisdiction is 'governed by the intent of Congress,'" Nat. Ass'n of Mfrs. v. Dep't of Def., 138 S. Ct. 617, 634 (2018) (quoting Fla. Power & Light Co. v. Lorion, 470 U.S. 729, 745 (1985)), the Commission's cited legislative history does not evince congressional intent to limit judicial review.  The Commission argues that the legislative history "regarding 19 U.S.C. § 1677f shows that the congressional intent was to ensure that parties could access BPI and do so expeditiously without undue hindrance."  Def.'s Mot. to Dismiss Am. Compl. at 4.  The Senate report accompanying the 1987 amendment to Section 777 of the Tariff Act of 1930 -- which does not once mention the grant of APO access -- emphasized the Commission's "broad authority to frame such regulations as are necessary to ensure maximum possible access to information without impeding the ITC's ability to complete its investigations within the tight time limits for investigation provided by statute."  S. Rep. No. 100-71, at 113 (1987).  That amendment sought to correct the disclosure statute, which left the Commission's disclosure of confidential information

---

[10] Congress's design does apply de novo review to 28 U.S.C. § 1581(f) actions, which differs from the more deferential standards of review in 28 U.S.C. § 1581(c) and (i) actions.  See 19 U.S.C. § 1516a(b)(1); 28 U.S.C. § 2640(a)(4), (e).  The parties do not dispute that judicial review of the grant of information access, if extant, would be subject to these deferential standards.

to parties to the Commission's discretion; the Committee was in turn "concerned that the ITC's practice creates difficulties for parties to ITC investigations." Id. at 112.  Congress sought to promote expeditious and accurate proceedings, but it opted to do so by allowing for more input from parties interpreting confidential information, not expanding agency discretion.  Id. (noting that pre-amendment practices prevent parties from "present[ing] their cases effectively" or correcting the Commission's "error[s] in the presentation or interpretation in the data").  In other words, the 1987 amendment was about limiting agency discretion.  Nor did Congress intend for the promulgation of information to be unfettered.  E.g., id. at 113 ("Information should only be made available if the ITC is satisfied that adequate sanctions for disclosure are available against the proposed recipient of the information.").  To draw from a Senate Report, which does not expressly address review of agency decisions granting information access, that such an action is unreviewable and committed to agency discretion is a strained reading of Congress's intent.

It is therefore unsurprising that prior cases of this court have held that 19 U.S.C. § 1677f(c)(2) does not preclude jurisdiction over agency decisions to grant information access.  See SNR Roulements v. United States, 13 CIT 1, 4, 704 F. Supp. 1103, 1107 (1989); Sacilor, Acieries et Laminoirs de Lorraine v. United States, 3 CIT 191, 193, 542 F. Supp. 1020, 1023 (1982).  The Commission relies on the subsequent case General Electric Company v. United States, which stressed that "[t]he statutory scheme clearly requires that the [International Trade Administration] deny an application for an APO before an interested party can avail itself of judicial intervention." 16 CIT 864, 870, 802 F. Supp. 474, 479 (1992) (emphasis in original).  But that case did not involve a grant of information access at all; the court considered whether a claim of constructive denial could satisfy § 1677f(c)(2) and emphasized the word "deny" to admonish the agency for

not issuing an actual denial.  Seeing little reason to depart from prior interpretations of § 1677f,[11]

the court holds once again that "the grant of jurisdiction in section 1581(f) over actions to force

disclosure under section 777(c)(2) of the Tariff Act of 1930, 19 U.S.C. § 1677(f), does not operate

to bar jurisdiction over an action to block disclosure, which action has its origin elsewhere."

Sacilor, 3 CIT at 193, 542 F. Supp. at 1023.

### II.    28 U.S.C. § 1581(i) Jurisdiction Is Improper Because § 1581(c) Jurisdiction Is Not Manifestly Inadequate

Under 28 U.S.C. § 1581(i), the Court of International Trade has "exclusive jurisdiction of

any civil action commenced against the United States, its agencies, or officers, that arises out of

any law of the United States providing for . . . [the] administration and enforcement" of "tariffs,

duties, fees, or other taxes on the importation of merchandise for reasons other than the raising of

revenue."  28 U.S.C. § 1581(i)(1)(B), (D).  But the court does not possess jurisdiction "over an

antidumping or countervailing duty determination which is reviewable by . . . the Court of

International Trade under section 516A(a) of the Tariff Act of 1930."  Id. § 1581(i)(2)(A).

Consistent with these principles, the court begins by applying the familiar holding from the

Federal Circuit that "[s]ection 1581(i) jurisdiction may not be invoked when jurisdiction under

another subsection of § 1581 is or could have been available, unless the remedy provided under

---

[11] Heckler v. Cheney establishes a "presumption . . . that judicial review is not available"
for an agency's "[r]efusals to take enforcement steps."  470 U.S. 821, 831 (1985).  To the extent
that the Commission alternatively argues that its actions are unreviewable enforcement decisions,
the court is not persuaded.  Plaintiffs, among other claims, challenge the reasonableness of the
Commission's decisions to disclose BPI and not to disqualify the Law Firm for lack of good cause
pursuant to 19 C.F.R. §§ 201.15(a), 207.7(a)(3)(iii).  See Am. Compl. ¶¶ 88, 105.  Those actions
appear to be more similar to an agency's "exercise [of] its coercive power over an individual's
liberty or property rights," which courts "often are called upon to protect," than to the category of
agency decisionmaking that necessitates "the proper ordering of its priorities" and evaluates
"whether the agency has enough resources to undertake the action at all."  Heckler, 470 U.S. at
831–32.

that other subsection would be manifestly inadequate." Miller & Co., 824 F.2d at 963.  But

applying Miller & Co. to requests for review of agency actions during an ongoing investigation

requires a slightly more specialized inquiry.  "[I]n the case of actions potentially reviewable under

§ 1581(c), section 1581(i) review is appropriate where eventual standing may be speculative, or

the opportunity for full relief would be lost by awaiting the final determination." Dofasco Inc. v.

United States, 28 CIT 263, 270, 326 F. Supp. 2d 1340, 1346 (2004), aff'd on other grounds, 390

F.3d 1370 (Fed. Cir. 2004) (internal quotation marks omitted) (quoting Associacao Dos Industriais

de Cordoaria E Redes v. United States, 17 CIT 754, 757, 828 F. Supp. 978, 983 (1993)).  "[T]he

party asserting § 1581(i) jurisdiction has the burden to show how that remedy would be manifestly

inadequate." Miller & Co., 824 F.2d at 963.

Shakeproof Industrial Products Division of Illinois Tool Works Inc. v. United States, 104

F.3d 1309 (Fed. Cir. 1997), is instructive.  The plaintiff, Shakeproof, objected to a law firm's

access under APO and continued participation in Commerce's review of an antidumping order

because a partner of that law firm had served as Assistant Secretary of Commerce for Import

Administration at the time the original antidumping investigation had begun. Id. at 1311.  After a

formal ruling from Commerce denying Shakeproof's request for disqualification, Shakeproof filed

action in the Court of International Trade challenging Commerce's ruling and seeking

disqualification. Id. at 1312.  Shakeproof sought the same relief as Plaintiffs in the instant case --

revocation of APO access and disqualification -- and, again like Plaintiffs here, "sought

interlocutory review under [§ 1581] on the ground that judicial review after the conclusion of the

administrative review would be 'manifestly inadequate.'" Id.  But the Federal Circuit questioned

the basis for jurisdiction under § 1581(i):

> We have serious doubts that judicial review of the disqualification issue would be
> manifestly inadequate if it were postponed until Commerce's final decision on the first

> review of the antidumping order.  For that reason, we believe there is substantial force to
> the government's suggestion that Shakeproof's request for judicial review in this case was
> premature.

Id. at 1313.  The Shakeproof court ultimately "found it unnecessary to decide that issue when it

has concluded that the plaintiff was not entitled to relief in any event," id., rendering its language

opining on jurisdiction dicta.

Guided by Shakeproof's "serious doubts," the court holds that Plaintiffs here fail to meet

their "burden to show how that remedy would be manifestly inadequate."  Miller & Co., 824 F.2d

at 963.  The antidumping and countervailing duty investigations are still underway before the

Commission and Commerce, and neither agency has yet issued a reviewable determination under

19 U.S.C. § 1516a.  It is still entirely possible that the Commission may even reach a negative

injury determination, in which case Plaintiffs would likely lack standing to bring their claims.

Furthermore, Plaintiffs may easily reframe the three counts of arbitrary and capricious refusal to

disqualify, arbitrary and capricious disclosure of BPI, and disclosure of BPI in violation of

constitutional due process as components of challenges to final determinations "unsupported by

substantial evidence on the record, or otherwise not in accordance with law."  19 U.S.C. §

1516a(b)(1)(B)(i).  Neither party disputes that "[u]nder 28 U.S.C. § 1581(c) and 19 U.S.C. § 1516a,

the procedural correctness" of any determination listed under 19 U.S.C. §§ 1516a and 1517, "as

well as the merits, are subject to judicial review."  Miller & Co., 824 F.2d at 964; see also Koyo

Seiko Co. v. United States, 13 CIT 461, 464, 715 F. Supp. 1097, 1100 (1989) ("[Congress]

intended that [§ 1851(i)] should not be used to permit the appeal of a procedural determination,

but rather, that all procedural considerations should be decided by this court when the final agency

determination is made." (internal quotation marks omitted) (quoting PPG Indus. Inc. v. United

States, 2 CIT 110, 112–13, 525 F. Supp. 883, 885 (1981))).

Plaintiffs instead ask the court to follow another Federal Circuit case, NEC Corp. v. United States, 151 F.3d 1361 (Fed. Cir. 1998).  NEC's competitor filed an antidumping petition with Commerce and the Commission against vector supercomputers from Japan.  Id. at 1366.  But after the Commission notified Commerce that the Commission had made an affirmative determination in the preliminary injury phase of the antidumping investigation, NEC filed suit before this court under § 1581(i) to "enjoin Commerce's investigation . . . on the grounds that its due process rights were violated."  Id. at 1366.  NEC alleged that Commerce was "a partisan ally" of its competitor after Commerce's involvement in the National Science Foundation's potential contract award to the competitor, which "rendered [Commerce] constitutionally incapable of adjudicating the merits of [the competitor's] dumping allegation."  Id. at 1366–67.  The court denied Commerce's motion to dismiss for subject matter jurisdiction but ultimately dismissed the case for failing to satisfy the burden for statutory prejudgment claims.  Id. at 1367.  The Federal Circuit affirmed this court's ruling on jurisdiction, holding that "[r]equiring NEC to appeal from the conclusion of an investigation that, allegedly, was preordained because of impermissible prejudgment is a classic example of a remedy that was 'manifestly inadequate.'"  Id. at 1368 (collecting cases).  The court further reasoned that "NEC is attempting to adjudicate an issue that goes to the very heart of the administrative system—neutrality—using the only adequate avenue available."  Id. at 1368–69.  The holding on jurisdiction in NEC was dispositive to the appellate judgment and therefore is binding on this court.

Shakeproof and NEC represent two sides of the same jurisdictional coin.  See also NEC Corp., 151 F.3d at 1368 (citing approvingly to Shakeproof for the manifestly inadequate principle).  The key fact that satisfied the manifestly inadequate burden in NEC was the plaintiff's challenge to the agency's authority to bring the investigation.  With the notable exceptions of Hyundai Corp.

and Makita, discussed below, cases before the Court of International Trade that have proceeded on § 1581(i) jurisdiction have "all sought to stop an allegedly unnecessary or ultra vires administrative proceeding before plaintiffs were burdened with them." Borusan, 986 F. Supp. 2d at 1388 (emphasis added); see also, e.g., Dofasco Inc. v. United States, 28 CIT 263, 270, 326 F. Supp. 2d 1340, 1346 (2004), aff'd, 390 F.3d 1370 (Fed. Cir. 2004) (considering a challenge to Commerce's initiation of an administrative review and reasoning that "forcing Dofasco to wait until a final determination has been issued before it may challenge the lawfulness of the administrative review, would mean that Dofasco's opportunity for full relief -- i.e., freedom from participation in the administrative review -- would be lost"); Carnation Enterprises v. U.S. Dep't of Com., 13 CIT 604, 604–05, 719 F. Supp. 1084, 1085 (1989) (§ 1581(i) jurisdiction was proper where the plaintiffs challenged the legal validity of the order underlying the two administrative reviews to which the plaintiffs were named mandatory respondents); Nissan Motor Corp. v. United States, 10 CIT 820, 822, 651 F. Supp. 1450, 1453 (1986) (§ 1581(i) jurisdiction was proper where there was possibility Commerce would never complete its § 751 administrative review and thereby "escape judicial scrutiny"). The Shakeproof court, by contrast, did not consider Commerce's decision not to investigate a naked assertion of an ethical issue to rise to the level of cases that collaterally attack an agency proceeding and require interlocutory judicial review. Under § 1581(c), if the court finds the Commission's actions to be unreasonable, it may remand the matter for further investigation as appropriate. And "if after remand the court determines that the agency determination was tainted by an improper predisposition, the court can again remand for reconsideration." Koyo Seiko, 13 CIT at 464, 715 F. Supp. at 1099.

But Plaintiffs maintain that this case does indeed rise to NEC's level and that attack on the entirety of the Commission's investigation is warranted. See Am. Compl. at 27 (requesting

**PUBLIC VERSION**

dismissal of the Commission's investigations without prejudice to refiling the petition).

Determining whether full relief would be lost requires the court not only to compare the remedies

available but also to evaluate the nature of the harm in waiting for review to ripen under § 1581(c).

This court has repeatedly held that "[t]hat judicial review may be delayed by requiring a party to

wait for Commerce's final determination is not enough to render judicial review under § 1581(c)

manifestly inadequate." Valeo N. Am., Inc. v. United States, 41 CIT __, __, 277 F. Supp. 3d 1361,

1365 (2017); see also M S Int'l, Inc. v. United States, 44 CIT __, __, 425 F. Supp. 3d 1332, 1337

(2020), appeal voluntarily dismissed, No. 2020-1670, 2020 WL 9171126 (Fed. Cir. June 16, 2020)

("Participating in an administrative proceeding, incurring the attendant litigation expense, and

enduring the collateral consequences of such participation, business or otherwise, does not, and

cannot, constitute irreparable harm." (citing FTC v. Standard Oil, 449 U.S. 232, 244 (1980))).   In

turn, Plaintiffs present two separate but interrelated theories of why relief under § 1581(c) would

be manifestly inadequate.  First, because Plaintiffs seek to block disclosure of BPI to an attorney

accused of misconduct, "any rights of a party injured by either advertent or inadvertent use of

confidential information in violation of a protective order could not redress that particular,

irreparable harm."  Pls.' Reply at 5 (internal quotation marks omitted) (quoting Hyundai Pipe, 11

CIT at 243).  Second, because Plaintiffs seek to disqualify the Law Firm due to an alleged ongoing

ethical violation, the Law Firm's continued participation "will bring about the very evil which the

rule against his participation is designed to prevent, and a subsequent reversal . . . cannot undo the

damage that will have been done as a result of such participation."  Id. at 5–6 (internal quotation

marks omitted) (first quoting Yablonski v. United Mine Workers of Am., 454 F.2d 1036, 1039

(D.C. Cir. 1971); then citing Makita Corp. v. United States, 17 CIT 240, 250, 819 F. Supp. 1099,

1108 (1993)).  Plaintiffs' support is grounded in two cases from this court:  Hyundai Pipe, 11 CIT

238, 1987 WL 8807, and <u>Makita</u>, 17 CIT 240, 819 F. Supp. 1099.  We address each in turn and

hold that Plaintiffs' reading of both cases is ultimately overbroad.[12]

In <u>Hyundai Pipe</u>, respondents to a Commerce review of circular welded carbon steel pipes

and tubes from Korea objected to the release of their confidential information to petitioners'

counsel in January 1987.  <u>Id.</u> at 239.  Respondents alleged that petitioners' counsel had violated

the terms of the APO and disclosed confidential information.  <u>Id.</u>  In March 1987, Commerce

notified the respondents of its decision to release their confidential information even though "[t]he

Department has not yet completed its investigation into the alleged violation."  <u>Id.</u>  Respondents

brought suit before this court and sought "a permanent injunction restraining the defendants from

disclosing business proprietary information submitted by plaintiffs <u>until Commerce makes a final</u>

<u>determination</u> in accordance with law concerning APO violations."  <u>Id.</u> (emphasis added) (internal

quotation marks and citation omitted).

The dispositive fact in <u>Hyundai Pipe</u> was that Commerce sought to release BPI <u>before</u> it

made an administrative determination as to whether the APO breach allegations had merit.  Two

months after respondents' counsel had filed the objection, Commerce had still not completed its

investigation of APO breach and yet found "no basis for not releasing the proprietary information

under APO."  <u>Id.</u> at 239.  The court emphasized that Commerce did "not offer any timetable for

completion of the investigation," characterized "their sense of the stakes" as "mystifying," and

admonished Commerce for "an inability or an unwillingness to state how much additional time is

required for the Department to reach a final decision . . . , although this court is not persuaded that

---

[12] While the decisions of other trial courts are not binding, <u>Algoma Steel Corp. v. United States</u>, 865 F.2d 240, 243 (Fed. Cir. 1989), it is within the discretion of a court to consider and address them, particularly where they are cited and debated by the litigants, and facilitate the analysis of the case now before the court.

a considerable, additional amount should be necessary." Id. at 240. Commerce's delay and decision to disclose BPI before conclusion of its investigation are the facts that contextualize these two sentences of the Hyundai Pipe opinion:

> Clearly, the plaintiffs are faced with a threat of immediate irreparable harm. Not only is the revelation of a secret an irrevocable act, but this and other courts have concluded that any rights of a party injured by either advertent or inadvertent use of confidential information in violation of a protective order could not redress that particular, irreparable harm.

Id. at 243 (footnote omitted) (emphasis in original). The court further reasoned "that sufficient uncertainty [of attorney misconduct] . . . exist[ed] to constitute a threat" and that "[p]erhaps caution has led Commerce to prolong its consideration of the alleged violations. But in taking its time to deal with the lawyers in question, the Department cannot act in haste to disclose the other side's secrets." Id. (emphasis added). Plaintiffs graft the irreparable harm language from Hyundai Pipe into this case's manifestly inadequate inquiry, arguing that "[i]f their BPI is wrongfully released, any rights of a party injured by either advertent or inadvertent use of confidential information in violation of a protective order could not redress that particular, irreparable harm.'" Pls.' Reply at 5 (quoting Hyundai Pipe, 11 CIT at 243).

The court declines to read Hyundai Pipe so expansively. The court found "sufficient uncertainty" of attorney misconduct to constitute a threat, Hyundai Pipe, 11 CIT at 243 (emphasis added), and the "threat of immediate harm" was tied to the fact that respondents would be deprived of any opportunity to have their APO allegations reviewed in any administrative or judicial forum. Because Commerce was poised to strip respondents of any remedy by prematurely releasing BPI, the court was compelled to intervene under § 1581(i). But those are not the facts in the instant case. Plaintiffs already had the opportunity to have their APO- and ethics-related evidence weighed before the Commission. Put simply, the respondents in Hyundai Pipe asked for just one

bite at the apple.  Plaintiffs today ask for two.   Hyundai Pipe does not grant us free license to

intervene in agency proceedings when allegations of APO violations are made; a more specific

showing of irreparable harm or, in this case, manifest inadequacy is required.[13]

Plaintiffs ground an analogous argument for allegations of attorney misconduct in Makita,

which allowed § 1581(i) review of an agency decision during the pendency of an investigation to

not investigate alleged ethical violations.  In that case, the International Trade Administration

("ITA") initiated antidumping duty investigations into electric cutting, sanding, and grinding tools.

Makita, 17 CIT at 241, 819 F. Supp. at 1100.  The company that was the primary focus of the

investigations, Makita Corporation ("Makita"), objected to the petitioner's inclusion of a particular

attorney on the APO list because he had "a significant and substantial involvement in a Section

337 case Makita had brought before the ITC in 1988–1989.  At that time he was working for

Makita, and became privy to Makita's sensitive financial and marketing data."  Id. at 240–241,

819 F. Supp. at 1101.  After six months of Makita's opposition to the attorney's inclusion on

professional ethics grounds, the ITA issued a "limited decision for the sole purpose of determining

if the relationship in question would compromise proprietary information to be released under

APO, now or in the future," and granted the attorney access to the confidential information.  Id. at

241, 819 F. Supp. at 1101.  The ITA also determined that "such allegations would seem to be more

appropriately decided by the Bar in which [the attorney] is a member, or in some other forum

which has jurisdiction over such matters."  Id.  Makita then filed suit before the Court of

International Trade pursuant to § 1581(i) seeking the withholding of BPI disclosure and

disqualification of the attorney.  The defendants did not challenge subject matter jurisdiction, id.

---

[13] While the Hyundai Pipe court did not consider § 1581(c) jurisdiction or the manifestly inadequate standard, its presumptive exercise of § 1581(i) jurisdiction is consistent with the manifestly inadequate standard.

at 245, 819 F. Supp. at 1104 n.6, and the court preliminarily enjoined the attorney from access to

the ongoing agency proceedings, id. at 251, 819 F. Supp. at 1108.

The court once again declines to rely on an overbroad reading.  Plaintiffs in the instant case

urge the court to apply Makita's holding on irreparable harm:

> In Hyundai Pipe Co., this court held that, not only is the revelation of a secret an irrevocable
> act, any rights of a party injured by either advertent or inadvertent use of confidential
> information could not redress that particular, irreparable harm.  Of course, unlike those
> cases, disclosure is not quite the point here.  According to the plaintiffs, they have already
> shared much inside information with [the attorney] while in their employ.  [An attorney for
> Makita] testifies to that employment in a wholly-complimentary fashion, so much so that
> his clients claim fear of unfair advantage if their adversary Black & Decker is at liberty to
> avail itself of [the attorney's] accumulated knowledge.  Whatever has already happened
> independent of these proceedings, this case requires the court to look to the present and the
> future, and, from this perspective, it cannot be said with certainty that any taking of unfair
> advantage could be remedied ex post facto.  Ergo, the plaintiffs are confronted with the
> threat of irreparable harm.

Id. at 250, 819 F. Supp. at 1107–08 (citations omitted).  But the facts that gave rise to the need for

immediate relief in Makita are vastly different from the facts here.  Most notably, the Makita

plaintiffs had furnished affidavits and live testimony that detailed the precise nature of the

information that the potentially conflicted attorney had acquired.  He had been a paralegal, part-

time law clerk, and summer associate at the law firm representing Makita before the ITC and had

worked on that matter for a period of fifteen months between January 1989 and April 1990.  Id. at

242, 819 F. Supp. at 1102.  He had discussed "pricing comparisons of Makita's and competitors'

products," provided input "into a large number of the pleadings . . . in the Section 337 proceeding,"

had access and likely reviewed "thousands (at least 80,000) of documents . . . submitted under the

ITC protective order" that "contained confidential information regarding Makita's competition,

Makita's distribution practices, its pricing practices, operations and sales figures," among other

confidential information.  Id. at 242–43, 819 F. Supp. at 1102.  The plaintiffs' submitted evidence

in Makita made it abundantly clear that the attorney was aware of specific categories of

information relevant to Makita's defense in the antidumping investigations and that those categories of information extended far beyond what Makita would have otherwise revealed under APO.  Comparatively, the facts that Plaintiffs offer in the instant case -- looking only to the pleaded complaint and filings, as no additional affidavits or testimony is available -- fall far short of establishing "sufficient uncertainty" of attorney misconduct that necessitates relief under § 1581(i).  In so holding, the court expresses no view as to the merits of the ethical misconduct allegations nor forecloses consideration of these issues as might be appropriate.[14]  Yet Plaintiffs' allegations of attorney misconduct in this case, just like their APO breach allegations, are too threadbare to meet the more specific showing that manifest inadequacy under § 1581(i).

It could be argued that § 1581(i) jurisdiction was present in this case at one point, in that Plaintiffs' first Complaint mirrored the facts of Hyundai Pipe closely and limited its injunctive relief to block BPI disclosure to only the pendency of the Commission's determination whether to further investigate the APO- and ethics-related allegations.  See First Compl. at 13–14.  But once the Commission's decided not to investigate further, Plaintiffs filed the Amended Complaint and requested significantly broader relief.  See Am. Compl. at 26–27; see also supra p. 11.  Now that the Commission has issued its formal determinations that are subject to review under § 1581(c), see Miller & Co., 824 F.2d at 964, the court must also consider the fact that holding for Plaintiffs would disrupt the Commission's ongoing antidumping and countervailing duties investigations.  Three reasons further support today's decision not to intervene.

First, we find Firestone Tire & Rubber Co. v. Risjord, 449 U.S. 368 (1981), persuasive in counseling against interlocutory appeals of attorney disqualification denials.  In Firestone, the

---

[14] For example, the District of Columbia Court of Appeals has its own procedures for interpreting the D.C. Rules of Professional Conduct and opinions associated with those ethical rules.

Supreme Court held that a district court's denial of a motion to disqualify counsel "plainly falls

within the large class of orders that are indeed reviewable on appeal after final judgment, and not

within the much smaller class of those that are not." Id. at 377.  But the Court did not categorically

exclude such denials from the collateral order doctrine:

> In support of its assertion that it will be irreparably harmed, petitioner hints at "the
> possibility that the course of the proceedings may be indelibly stamped or shaped with the
> fruits of a breach of confidence or by acts or omissions prompted by a divided loyalty,"
> and at "the effect of such a tainted proceeding in frustrating public policy."  But petitioner
> fails to supply a single concrete example of the indelible stamp or taint of which it warns.
> The only ground that petitioner urged in the District Court was that respondent might shape
> the products–liability plaintiffs' claims for relief in such a way as to increase the burden
> on petitioner. Our cases, however, require much more before a ruling may be considered
> "effectively unreviewable" absent immediate appeal.

Id. at 376; see also Unified Sewerage Agency of Wash. Cnty. v. Jelco Inc., 646 F.2d 1339, 1343

(9th Cir. 1981) (finding that some clients "could suffer irremediable damage if forced to wait until

after trial to appeal").

So too here.  Plaintiffs allege that the Law Firm may "overtly us[e] confidences in the

Current Investigations" or "may use such confidences to shape its prosecution of the Current

Investigations, including guiding what lines of attack to pursue and what lines to abandon."  Am.

Compl. ¶ 95.  That is exactly the kind of harm that the Firestone Court found insufficient to warrant

interlocutory review.  See 449 U.S. at 376.  Plaintiffs, either in the briefing or at oral argument,

fail to "supply a single concrete example of the indelible stamp or taint of which they warn[]."  Id.;

cf. Makita at 242–43, 819 F. Supp. at 1102.  And while Firestone interpreted the collateral order

exception to 28 U.S.C. § 1291,[15] a different jurisdictional statute than in the instant case, its

reasoning remains persuasive.  Apart from the factual similarities between Firestone and the case

---

[15] The statute states in relevant part:  "The courts of appeals (other than the United States
Court of Appeals for the Federal Circuit) shall have jurisdiction of appeals from all final decisions
of the district courts of the United States . . . ."  28 U.S.C. § 1291.

at bar, a reviewable collateral order must, among other elements, "be effectively unreviewable on appeal from final judgment," 449 U.S. at 378 (internal quotation marks and citation omitted), which is analogous to a showing of manifest inadequacy under Miller & Co.  The Supreme Court found the petitioners "unable to demonstrate that an order denying disqualification is 'effectively unreviewable on appeal from a final judgment.'"  Firestone, 449 U.S. at 376.  Under 28 U.S.C. § 1581(i), we do the same here.[16]

Second, legislative history counsels against using § 1581(i) jurisdiction to interfere with the exercise of agency power.  Congress "intend[ed] that any determination specified in section 516A of the Tariff Act of 1930, or any preliminary administrative action which, in the course of proceeding, will be, directly or by implication, incorporated in or superseded by any such determination, is reviewable exclusively as provided in section 516A."  H.R. Rep. No. 96-1235, at 48 (1980) (emphasis added).  "The legislative history to [§] 1581(i), the case law, and the Administrative Procedure Act all discourage piecemeal review of [administrative] international trade proceedings."  M S Int'l, 425 F. Supp. 3d at 1337; see also H.R. Rep. No. 98-725, at 47 (1984) ("The purpose of eliminating interlocutory judicial review is to eliminate costly and time-consuming legal action where the issue can be resolved just as equitably at the conclusion of the administrative proceedings.").

Finally, as a prudential matter, the court ultimately struggles to differentiate between (1) the immediate harm alleged by Plaintiffs in this case and (2) the immediate harm that could be alleged by a hypothetical party in a Commission investigation that raises threadbare accusations

---

[16] Today's holding does not foreclose any interlocutory judicial review of APO breach or attorney misconduct allegations.  By applying the manifestly inadequate test to determine § 1581(i) jurisdiction on a case by case basis, there may indeed be fact patterns involving APO violations or ethical violations that rise to the level of interlocutory review.  We limit today's holding to the facts at bar and conclude that Plaintiffs have not met their burden under Miller & Co.

of APO breach and attorney misconduct.   A party could challenge APO access or attorney participation based on skeletal facts without alleging how precisely the attorney could use that confidential information to the detriment of that party and, once the agency finds no reason to investigate further, bring proceedings to court.   Cf. Firestone, 449 U.S. at 378 ("[p]ermitting wholesale appeals" of attorney disqualification denials would, among other consequences, "constitute an unjustified waste of scarce judicial resources").   To rule for Plaintiffs would add an avenue of interlocutory review that runs counter to prior cases: Miller & Co., Shakeproof, NEC Corp., Firestone, the relevant CIT case law, and the legislative history of § 1581(i) all counsel against such an outcome.   Hyundai Pipe and Makita may not be read so broadly as to outweigh those authorities.   The court, therefore, lacks subject matter jurisdiction under § 1581(i) to grant Plaintiffs' preliminary relief.

### III.   *Alternative Bases for Jurisdiction Are Unavailable*

Plaintiffs plead two alternative bases for jurisdiction in the Amended Complaint.   First, Plaintiffs argue that the court may exercise jurisdiction because it "has plenary authority and responsibility to supervise professional conduct" over any attorney who is "a member of the Bar of this Court of International Trade." Makita, 17 CIT at 245, 819 F. Supp. at 1104 (citing 28 U.S.C. § 1585).   The Court of International Trade "possess[es] all the powers in law and equity of, or as conferred by statute upon, a district court of the United States," 28 U.S.C. § 1585, which includes the power to remedy violations of professional ethics with disqualification, sanctions, or other relief.[17] See, e.g., Makita, 17 CIT at 251, 819 F. Supp. at 1108 (extending this power to

---

[17] The court expresses no view as to whether the court's powers to remedy violations of professional ethics pursuant to 28 U.S.C. § 1585 may extend to violations of professional ethics before an agency, as opposed to the litigation before it.   Cf. Makita, 17 CIT at 251, 819 F. Supp. at 1108.

disqualifying counsel before an agency); Nat'l Bonded Warehouse Ass'n, Inc. v. United States, 13

CIT 590, 597, 718 F. Supp. 967, 972–73 (1989) (declining a motion to disqualify an attorney

before the CIT).

But Plaintiffs confuse jurisdiction with remedy.  § 1585 "relates only to the powers of the

Court to render an effective judgment once jurisdiction is established."  Sioux Honey Ass'n v.

Hartford Fire Ins. Co., 672 F.3d 1041, 1052 (Fed. Cir. 2012) (internal quotation marks omitted)

(quoting Star Sales & Distrib. Corp. v. United States, 10 CIT 709, 712, 663 F. Supp. 1127, 1130

(1986)).  Furthermore, in the absence of subject matter jurisdiction, the court's powers are limited

only to attorney conduct exercised pursuant to its rules during the litigation.  See Retamal v. U.S.

Customs & Border Prot., 439 F.3d 1372, 1376 (Fed. Cir. 2006) ("Although we conclude that the

trial court lacked jurisdiction over the merits of this case, we recognize that under Court of

International Trade Rule 16 and its inherent power, the court has the authority to discipline

attorneys appearing before it." (emphasis added)).  Because Plaintiffs cannot independently

establish subject matter jurisdiction over the merits, the court's authority to supervise attorney

conduct is narrowed to misconduct before the court in the instant case.  The court's powers under

§ 1585 cannot otherwise authorize review of Plaintiffs' claims.

Second, the Amended Complaint is alternatively pleaded as a petition for writ of

mandamus.  The Court of International Trade may "order any other form of relief that is

appropriate in a civil action, including . . . writs of mandamus," 28 U.S.C. § 2643(c)(1), which

provides the court with authority over "any action in the nature of mandamus to compel an officer

or employee of the United States or any agency thereof to perform a duty owed to the plaintiff."

28 U.S.C. § 1361.  But "the remedy of mandamus is a drastic one, to be invoked only in

extraordinary situations."  Allied Chem. Corp. v. Daiflon, Inc., 449 U.S. 33, 34 (1980).  "[T]hree

conditions must be satisfied before it may issue.  First, 'the party seeking issuance of the writ

[must] have no other adequate means to attain the relief he desires . . . . Second, the petitioner must

satisfy 'the burden of showing that [his] right to issuance of the writ is clear and indisputable.'

Third, even if the first two prerequisites have been met, the issuing court, in the exercise of its

discretion, must be satisfied that the writ is appropriate under the circumstances." <u>Cheney v. U.S.

Dist. Ct. for D.C.</u>, 542 U.S. 367, 380–81 (2004) (citations omitted) (quoting <u>Kerr v. U.S. Dist. Ct.

for N. Dist. of Cal.</u>, 426 U.S. 394, 403 (1976)).

The first condition for mandamus is not satisfied here.  Because Plaintiffs may adequately

obtain relief through a potential suit challenging the Commission's injury determination under §

1581(c) for the reasons above, relief cannot lie in mandamus.  Accordingly, the court need not

reach the question of whether there is a "clear and indisputable" right to issuance at stake.  <u>Cf.</u> <u>In

re Shared Memory Graphics LLC</u>, 659 F.3d 1336, 1342 (Fed. Cir. 2011) (issuing the writ to reverse

district court order disqualifying counsel).  The petition for writ of mandamus is denied.

## CONCLUSION

The federal courts "possess only that power authorized by Constitution and statute."

<u>Kokkonen</u>, 511 U.S. at 377.  Plaintiffs have not met their burden of establishing that, under the

unique facts of this case, the court has subject matter jurisdiction under § 1581(i) or the alternative

bases they have asserted.  Because the court holds that the remedy available to Plaintiffs under §

1581(c) is not manifestly inadequate, the court will not address whether the Commission's

determinations not to investigate Plaintiffs' allegations further constitute final agency action as

required by APA § 704, whether Plaintiffs have exhausted remedies, or other threshold issues.

Subject matter jurisdiction is lacking in the instant action, and the court does not reach the

substantive issues raised by the Motion for Preliminary Injunction.  <u>See also</u> <u>supra</u> note 16.

Court No. 22-00307                                                                Page 33
***PUBLIC VERSION***

      For the foregoing reasons, Plaintiffs' Amended Complaint is dismissed for lack of subject

matter jurisdiction, without prejudice to refiling once a claim under 28 U.S.C. § 1581(c) is ripe.

In so holding, the Temporary Restraining Order is vacated and any outstanding motions are denied

as moot.

      **SO ORDERED.**

/s/    *Gary S. Katzmann*
Judge

Dated: <u>November 15, 2022</u>
      New York, New York