**IN THE UNITED STATES COURT OF INTERNATIONAL TRADE**

| | |
|---|---|
| **AMSTED RAIL COMPANY, INC., ASF-K DE MEXICO S. DE R.L. DE C.V., STRATO, INC., WABTEC CORP., and TTX COMPANY,** | |
| **Plaintiffs,** | Court No. 22-00307 |
| **v.** | |
| **UNITED STATES INTERNATIONAL TRADE COMMISSION,** | Before: Hon. Gary S. Katzmann |
| **Defendant,** | **PUBLIC VERSION** |
| **and** | |
| **COALITION OF FREIGHT COUPLER PRODUCERS,** | |
| **Defendant-Intervenor.** | |

**RESPONSE TO MOTION FOR INJUNCTION PENDING APPEAL**

The Coalition of Freight Coupler Producers ("CFCP" or the "Coalition"), by and through its attorneys, respectfully submits these comments in response to the motion for injunction pending appeal filed by certain plaintiffs, Amsted Rail Company, Inc. ("ARC"), ASF-K de Mexico S. de R.L. de C.V. ("ASF-K"), Strato, Inc. ("Strato"), and TTX Company ("TTX") (collectively, "Plaintiffs"). *See* Certain Plaintiffs' Mot. For Injunction Pending Appeal, ECF No. 89 ("Plaintiffs' Motion"). We request that the Court deny Plaintiffs' motion for an injunction.

**I.**     **There is No Subject Matter Jurisdiction to Support Issuance of an Injunction**

As an initial matter, Plaintiffs have not provided justification for the Court's exercise of jurisdiction to grant its motion for injunction pending appeal when the Court has found that it lacks jurisdiction over Plaintiffs' case. *See Amsted Rail Co. v. U.S. Int'l Trade Comm'n*, ECF

Ct. No. 22-00307

No. 88, slip op. 22-124 at 5. Plaintiffs claim only that the Court should "redeliberate its jurisdictional conclusion" because they have "raised serious legal questions going to the merits . . . ." Plaintiffs' Motion at 3, *citing Population Inst. v. McPherson*, 797 F.2d 102, 1078 (D.C. Cir. 1986). Plaintiffs have not provided any example or authority of this Court issuing an injunction after it has found a lack of subject matter jurisdiction. It is a seminal principle of the law that, "without proper jurisdiction, a court cannot proceed at all . . . ." *Steel Co. v. Citizens for Better Environment*, 523 U.S. 83, 84. The Court has concluded that it does not have jurisdiction here, and accordingly the motion for an injunction should be denied.

However, Plaintiffs' motion for injunction pending appeal should fail even if the Court determined that jurisdiction exists. This Court has been reticent to grant an injunction pending appeal when it denied a preliminary injunction. "Since the plaintiffs have failed to carry their burden of persuasion to grant a preliminary injunction . . . they are not entitled to that kind of extraordinary relief pending appeal to another court on the very same grounds." *Ugine & Alz Belgium N.V. v. United States*, 29 C.I.T. 1077, 1082 (2005). The Court dismissed the preliminary injunction in this case, and Plaintiffs' newest motion should be denied as well.. *See Amsted Rail Co. v. U.S. Int'l Trade Comm'n*, ECF No. 88, slip op. 22-124 at 5.

Plaintiffs nonetheless claim that they meet the four factors necessary for the Court to grant a motion for injunction pending appeal: (1) likelihood of success on the merits, (2) irreparable injury absent relief, (3) whether issuance of the order would substantially injure other parties interested in the proceeding, and (4) where the public interest lies. *Celsis In Vitro, Inc. v. CellzDirect, Inc.*, 428 F. App'x 987, 987 (Fed. Cir. 2011).  However, their arguments as to each of the four factors, as discussed below, are without merit.

*PUBLIC VERSION*

Ct. No. 22-00307

## II.   <u>Plaintiffs Are Unlikely to Succeed on the Merits</u>

As to likelihood of success on the merits, Plaintiffs have failed to allege facts, even if considered true, that would demonstrate a conflict of interest. Plaintiffs now brazenly claim that they do not bear the burden of providing evidence of a conflict of interest and that the Court erred in "shifting" the burden to Plaintiffs. Plaintiffs' Motion at 4. Plaintiffs however fail to overcome the facts that: (1) the adverse party at interest here, the Mexican producer, has never been a client of the attorney and thus there is no conflict arising from a former representation; (2) an advance waiver and agreement not to seek disqualification of the attorney was agreed to by ARC (and relied upon in good faith by both the Coalition and the Attorney); (3) ARC agreed in writing to "surrender unconditionally" its rights to materials, analysis, and information prepared in furtherance of the petitions for relief against unfair imports; and (4) the joint nature of the Coalition representation bars any claim for disqualification based upon a proposed misuse of confidential information by the Coalition or its attorney.

Indeed, throughout these proceedings, ARC has attempted to [


]. [




]." *See* **Exhibit 1**. ASF-K was never a client of the Attorney or the Firm and a lawyer who represents a corporate client is not typically barred from a representation that is adverse to a corporate affiliate of that client in a different matter, as

Ct. No. 22-00307

is the case here. *See* DC Bar Rule 1.9; *see also* ABA Comm'n on Ethics & Prof'l Responsibility, Formal Opinion 390 (1995).

Even assuming *arguendo* that there was a conflict with a former client, it does not follow that the two different trade cases are "substantially related." Plaintiffs have claimed that the conflict is nonconsentable because the predecessor investigations and these investigations are "substantially related." *See* Second Motion for Prelim. Injunction, ECF No. 48 at 19. However, that two investigations involve the same statutory scheme and similar facts does not demonstrate that the two cases are substantially related. In *Watkins v. Trans Union, LLC*, the Court of Appeals for the Seventh Circuit declined to disqualify counsel to Watkins in a Federal Credit Reporting Act ("FCRA") case against Trans Union, even though Watkins's counsel had previously represented Trans Union in FCRA cases while at a different law firm. 869 F.3d at 520-21. The Court found that the present and prior cases were different transactions and that there was no substantial risk of Watkins's counsel using confidential information. *Id.* at 521-23.

Moreover, and specific to antidumping issues, in *GEO Specialty Chemical, Inc. v. Husisian*, the U.S. District Court for the District of Columbia found that two antidumping related proceedings involving the same product from the same country and arising from the same investigation were not substantially related:

> {E}ach Commerce Department review or proceeding . . . is its own "administrative proceeding, . . . claim, {or} investigation" and therefore qualifies as its own "matter." . . . It would be contrary to this definition, not to mention common sense, for this Court to lump together every glycine review that has occurred in the past eighteen years and that occurs indefinitely into the future simply because they deal with the same general matter under the same administrative I.D. number.

951 F. Supp. 2d 32, 43 (D.D.C. 2013). It is worth noting that *GEO Specialty Chemical* dealt with two matters connected to the very same antidumping investigation. Here, the predecessor

*PUBLIC VERSION*

Ct. No. 22-00307

investigations and the current investigations are different cases, with different records, different countries, different scopes, and different parties. Consequently, even assuming that the conflict as to ASF-K was somehow transferable to ARC, there are still distinct investigations.

In addition, in the current matter there is an explicit waiver of conflicts and an agreement not to seek disqualification in a joint representation of a coalition. In order to retain counsel, ARC (who is not the subject of Commerce's investigation here) expressly agreed [

]. To be clear, not only did ARC [

].

Moreover, [

].

The suggestion that the written consent previously provided by Amsted to Wiley Rein does not apply to [            ], "due to his change of firms, has no basis in either the rules of ethics or substantive law." Affidavit of Prof. Michael Frisch, attached at **Exhibit 2**.   The ethics rules are rules of reason. *See* ABA Model Rules, Scope at [      ]. The documents here show that [            ] was clearly both the intended and actual beneficiary of the consent, as the primary attorney actively involved in the matter which was covered by the waiver agreement, and [            ] subsequent move to a different law firm has no relevance to its continuing vitality." Affidavit of Prof. Michael Frisch, attached at **Exhibit 2**.   Specifically, the potential conflict arising from the work performed by counsel was waived and cannot now be imputed to counsel's new firm, further undermining Plaintiffs likelihood of success on the merits.

***PUBLIC VERSION***

Ct. No. 22-00307

Plaintiffs claim that the waiver was invalid due to it allegedly being "nonconsentable." However, this is incorrect. Specifically, Comment 4 to Rule 1.9 explicitly confirms that such conflicts are indeed waivable ("Disqualification from subsequent representation is for the protection of clients and can be waived by them. . . . .")

Again, even assuming that there is a finding of a conflict, which is substantially related, and that the waiver is inoperable, ARC also agreed that upon termination of the representation that it surrendered "unconditionally" the rights to the information, data, and intellectual property collected for purposes of preparing petitions against unfairly priced imports. Specifically, ARC agreed that:

[

]

ARC terminated the representation and as per the terms of its engagement letter, it surrendered the rights to any of the information collected for the purposes of bringing the trade case (the very information complained of in the present matter). Even should the Court determine that this information was not the property of the Coalition or of the Firm in its representation of the Coalition, the fact remains that ARC has surrendered its rights, including as to confidentiality, of the information that was created for purposes of the trade remedy investigation.

If that was not enough to demonstrate that Plaintiffs are unlikely to succeed on the merits (due to a lack of conflict, the existence of different matters, the waiver of conflicts, and the surrender of any rights to the information prepared for the previous antidumping investigation), it is also worth noting that in the initial investigation counsel jointly represented ARC and McConway and Torley LLC ("McConway") as co-coalition members. As such, counsel had an

6

Ct. No. 22-00307

equal duty of loyalty to both clients, requiring it to inform each member of any information counsel obtained from another member that might affect the coalition's interests. See D.C. Bar Rule 1.7, Comment 16. As McConway remains a coalition member in the current petition, any information obtained from ARC that was relevant to the trade proceedings was already accessible to the Coalition. Accordingly, counsel's joint representation of the Coalition for purposes of petitioning for relief requires a finding that there can be no use of information such to create a conflict in the current investigation. Indeed, the DC Bar has recognized that the prevailing rule is that, as between commonly represented clients, the privilege does not attach. Hence, it must be assumed that if litigation eventuates between the clients, the privilege will not protect any such communications. Accordingly, the information shared in a joint representation is not treated as confidential as to the other Coalition member and cannot serve as a basis for a conflict claim. See D.C. Bar Rule 1.7, Comment 15.

### III.  Plaintiffs Fail to Demonstrate Irreparable Harm

In evaluating irreparable harm, the Court considers "the magnitude of the injury, the immediacy of the injury, and the inadequacy of future corrective relief." *CannaKorp, Inc. v. United States*, 234 F. Supp. 3d 1345, 1350 (Ct. Int'l Trade 2017). Here, Plaintiffs have not suffered an injury, much less an injury of any magnitude or immediacy. Plaintiffs have not identified any actual breach of the APO in the predecessor investigations, nor have they claimed that an injury resulted from counsel's previous representation of an affiliated corporate entity. Plaintiffs, in seeking to limit information releasable in the current investigation, anchored their claim in large part on a completely unsupported allegation of a previous APO breach, with no reference to any evidence, and a bald assertion that APO material could have been used

Ct. No. 22-00307

inappropriately to "springboard" the current investigation.   Consequently, the ITC determined that there was insufficient information to initiate an APO breach investigation.

To the extent that ARC has argued since the beginning of these proceedings that release of information under the newly issued APO would be irreparable harm, this issue is now moot. Following the Court's order lifting the temporary restraining order and dismissing the case, and after it filed its motion for injunction pending appeal, Amsted properly provided service of its business proprietary information in the ITC's investigations to the Attorney. *See* **Exhibit 3**. In light of this of this disclosure, it is even more unclear what injury Plaintiffs seek to remedy by filing this motion.  In other words, the service of ARC's business proprietary information has already occurred and the request for an injunction cannot prevent any alleged irreparable harm that would occur as to the release of the information which has already taken place.

Plaintiffs have also alleged that their injury is the so-called ongoing, disabling conflict of interest. Plaintiffs' Motion at 5. However, the request for a preliminary injunction is limited to the release of information under the Commission's APO and it is not at all clear how the grant (or denial) of their motion protects Plaintiff from an irreparable harm. Nor have Plaintiffs pointed to any specific information that CFCP allegedly used resulting in any harm. Plaintiffs essentially claim that one cannot unring the injury bell. *See* Plaintiffs' Motion at 5. In fact, the bell has not been rung at all, and Plaintiffs have not specified any information to prove otherwise.  But as noted above, following the Court's order lifting the temporary restraining order and dismissing the case, and after it filed its motion for injunction pending appeal, Amsted properly provided service of its business proprietary information in the ITC's investigations to the Attorney. *See* **Exhibit 3**. In light of this of this disclosure, the action for which ARC requests an injunction has already occurred and therefore is moot.

Ct. No. 22-00307

Lastly, it has been settled law for several decades that mere disagreement with a lower tribunals' decision not to disqualify counsel does not cause irreparable harm. *See Firestone Tire & Rubber Co. v. Risjord*, 449 U.S. 368, 376 (1981). In *Firestone Tire*, the Supreme Court rejected a claim of irreparable harm, explaining that "petitioner fails to supply a single concrete example of the indelible stamp or taint of which it warns." *Id.* The nature of disqualification motions, moreover, meant that "{t}he propriety of the district court's denial of a disqualification motion will often be difficult to assess until its impact on the underlying litigation may be evaluated, which is normally only after final judgment." *Id.* at 377. "The decision whether to disqualify an attorney ordinarily turns on the peculiar factual situation of the case . . . , and the order embodying such a decision will rarely, if ever, represent a final rejection of a claim of fundamental right that cannot effectively be reviewed following judgment on the merits." *Id.* As the Government's papers indicate, consistent with *Firestone Tire*, Plaintiffs here make broad claims regarding the harm flowing from the alleged conflict of interest but fail to demonstrate that such harm is without a remedy upon judicial review of final agency action.

## IV.   Issuance of an Injunction Would Substantially Injure Other Parties to the Proceeding

Issuance of the injunction would substantially injure the other parties to the proceeding. "An injunction should not be granted if its impact on the enjoined party would be more severe than the injury the moving party would suffer if it is not granted." *Litton Sys., Inc. v. Sundstrand Corp.*, 750 F.2d 952, 959-60 (Fed. Cir. 1994). While Plaintiffs have provided the Attorney with the business proprietary information it has already disclosed in the ITC's investigations, an injunction pending appeal could prevent the Coalition from the receipt of full and effective legal counsel. Plaintiffs have made speculative and supported claims of potential harm, while the harm

9

Ct. No. 22-00307

to Defendant-Intervenor would be definitive, concrete and significant. Specifically, granting of the injunction would result in a lack of access by counsel to the proprietary record as the investigations progress (in contravention of the statutory scheme for APOs), potentially preventing Defendant-Intervenor from receiving effective assistance of counsel. Indeed, any such injunction would frustrate the ability of the Coalition to comment on evidence, develop strategy, or submit argument in the ITC's investigations. A balancing of Plaintiffs' asserted, theoretical, and unsubstantiated claim versus the real and significant harm to the Coalition supports a denial of the request for an injunction pending appeal.

## V.     The Public Interest Weights in Favor of Denial of the Motion

The public interest weighs in favor of denial of Plaintiffs' motion for a preliminary injunction pending appeal. Congress gave the ITC the authority to conduct antidumping and countervailing duty investigations to determine whether the domestic industry is materially injured or threatened with material injury as a result of subject imports. *See* 19 U.S.C. §§ 1671(2), 1673(2). Plaintiffs claim that the public interest would not be "enhanced by dismissing this case summarily." Plaintiffs' Motion at 7, *quoting Makita Corp. v. United* States, 17 C.I.T. 240, 819 F. Supp. 1099, 1107 (1993). However, the Court has already dismissed this case for lack of jurisdiction. It is contrary to the public interest to allow Plaintiffs a second (or third) bite at the apple, much less in a case where the Court does not have jurisdiction over the matter at bar.

Lastly, there is substantial evidence that indicates that (1) the allegation of a breach of an Administrative Protective Order was made wholly devoid of any evidence to support such a serious charge and (2) a conflict of interest allegation was made in the absence of any actual conflict with a former client, but with an explicit agreement not to seek disqualification, an

Ct. No. 22-00307

agreement to surrender "unconditionally" the information used for purposes of putting a trade case together, and in the context of representation of a Coalition that "consistent with established principles of ethics, the very nature of the joint representation fatally undermines any attempt at disqualification on the bases alleged here." *See* **Exhibit 2**. There is a clear public interest in not tolerating abuses of the litigation process. Under such circumstances as exist here, courts have long been justifiably loath to grant disqualification.  And as the ABA Model Rules make clear, the purpose of the Rules can be subverted when they are invoked by parties as procedural weapons. *See* **Exhibit 2**. Accordingly, the public interest also supports a denial of the requested injunction.

For the foregoing reasons, we respectfully request that the Court deny Plaintiffs' motion for an injunction pending appeal.

Respectfully submitted,

/s/ Daniel B. Pickard
Daniel B. Pickard, Esq.
Amanda L. Wetzel, Esq.
Claire M. Webster, Esq.

**Buchanan Ingersoll & Rooney PC**
1700 K Street, NW, Suite 300
Washington, DC 20006
(202) 452-7000

*Counsel to Coalition of Freight Coupler Producers*

Dated: December 6, 2022

11